# EXHIBIT A

ACLU
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Southern California

April 29, 2022

**SENT VIA E-MAIL**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov

DHS Office of Inspector General
Office of Counsel
245 Murray Lane SW
Mail Stop - 0305
Washington, D.C. 20528-0305
Email: FOIA.OIG@oig.dhs.gov

Senior Director of FOIA Operations
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW
STOP-0655
Washington, D.C. 20528-0655
Email: foia@hq.dhs.gov

**RE: Request under the Freedom of Information Act**
***Expedited Processing and Fee Waiver Requested***

Dear Sir or Madam:

This letter constitutes a request for records made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, on behalf of the ACLU of Southern California (hereinafter "Requestor" or "ACLU SoCal"). The Requestor also seeks a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k), and expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). The justification for the fee waiver and expedited processing are set out in detail following the Request.

ICE claims that the agency takes "very seriously the health, safety and welfare of those in our care," and that "any death that happens in ICE custody is a cause for concern." *See*

**EXECUTIVE DIRECTOR** Hector O. Villagra

**CHAIR** Michele Goodwin **VICE CHAIRS** Rob Hennig and Stacy Horth-Neubert
**CHAIRS EMERITI** Marla Stone Shari Leinwand Stephen Rohde Danny Goldberg Allan K. Jonas* Burt Lancaster* Irving Lichtenstein, MD* Jarl Mohn Laurie Ostrow* Stanley K. Sheinbaum*
*deceased

https://www.ice.gov/detain/detainee-death-reporting. According to agency policy, "[u]pon an official report of a detainee death, ICE Enforcement and Removal Operations (ERO) makes official notifications to Congress, non-governmental organization (NGO) stakeholders, and the media and posts a news release with relevant details on the public website, at https://www.ice.gov/newsroom, within two business days." *Id*.

While ICE's news releases concerning individual detainee deaths are publicly available, the agency has not provided public transparency into its policies and procedures for notifications to Congress and the public.

ICE has not explained how it determines whether an individual's death is deemed "in custody" in circumstances in which the individual passes away at a hospital or at home following release, after developing a fatal illness or medical condition at an immigration detention center. As news media have documented, ICE's practices raise questions regarding whether ICE has undercounted the number of deaths for which the agency bears responsibility. *See, e.g.*, Dan Glaun, "How ICE Data Undercounts COVID-19 Victims," PBS FRONTLINE (Aug. 11, 2020), *available at* https://www.pbs.org/wgbh/frontline/article/how-ice-data-undercounts- covid-19-victims/.

ICE's policies and procedures for notifications of detainee deaths are plainly a matter of public concern, as the agency itself has recognized by providing notifying to Congress and the public. This information has taken on a heightened importance due to the troubling increase in deaths in ICE detention in recent years. *See, e.g.*, Catherine E. Shoichet, "The death toll in ICE custody is the highest it's been in 15 years," CNN (Sep. 20, 2020), *available at* https://www.cnn.com/2020/09/30/us/ice-deaths-detention-2020/index.html.

Because ICE's policies and procedures for detainee death notifications concern a critical function of the government on a matter of significant public interest and concern, FOIA mandates their disclosure. *See* 5 U.S.C. § 552.

## I. REQUESTOR

ACLU SoCal is a non-profit organization dedicated to defending and securing the rights granted by the U.S. Constitution and Bill of Rights. ACLU SoCal's work focuses on immigrants' rights, the First Amendment, equal protection, due process, privacy, and furthering civil rights for disadvantaged groups. As part of its work, ACLU SoCal monitors ICE enforcement practices and detention conditions. ACLU SoCal disseminates information to the public through its website and social media platforms, "Know Your Rights" documents, and other educational and informational materials. The ACLU SoCal regularly submits FOIA requests to DHS and other agencies – including, for example, on ICE's policies and practices for worksite immigration enforcement, and USCIS's policies and practices for the adjudication of naturalization applications – and publicizes the information it obtains through its website, newsletters, reports and "Know Your Rights" presentations and materials.

## II. REQUEST FOR INFORMATION

The Requestor seeks any and all records that were prepared, received, transmitted, collected, and/or maintained by Immigration and Customs Enforcement ("ICE") or the

Department of Homeland Security that describe, refer, or relate to the release of hospitalized detainees from custody prior to their death; any records related to release of individual detainees once hospitalized; and any records related to the death of such detainees after their release from custody, including any communications or investigations. Unless otherwise noted, we request the records specified below from January 1, 2016 to the present.

For purposes of this request, the term "communications" means any transmittal of information from one person or entity to another by any means, including letters, correspondence, notes, memoranda, records, reports, papers, facsimiles, electronic mail (whether to, from, copied or blind copied), electronic mail generated from a hand held personal device including a BlackBerry, iPhone, smart phone, instant messaging, electronic mail generated from business or personal email accounts, internet relay chat, news group, group or collaboration servers, electronic bulletin boards, electronic discussion boards, dictation tapes, video recordings, audio recordings, digital recordings, memoranda, telegrams, telecopies and telexes, teleconference, collaboration servers (including share point servers), web-based or software virtual meetings including Microsoft Teams, Zoom, Web-X and any other meeting software and share point servers, and oral contact such as face-to-face discussions or meetings, telephone conversations, and voice mail messages.

For purposes of this request, the term "documents" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of ICE and its employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks, diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, agendas, minutes, data compilations, and statistical compilations, regardless of whether a particular document is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device).

For purposes of this request, "data compilations" has the same scope used in Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

For purposes of this request, the term "DHS" means Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

For purposes of this request, the term "ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein.

For purposes of this request, the term "ICE-ERO" means Immigration and Customs Enforcement's Enforcement and Removal Office, and any components, subcomponents, offices, or personnel therein.

For purposes of this request, "IHSC" means the U.S. Immigration and Customs Enforcement Health Services Corps.

For purposes of this request, "ICE OPR" means the Immigration and Customs Enforcement Office of Professional Responsibility and any components and offices therein including the Office of Detention Oversight.

For purposes of this request, "DHS OIG" means the Department of Homeland Security Office of Inspector General and any component and offices therein.

For purposes of this request, the term "immigration detention facility" means Service Processing Centers, Contract Detention Facilities, Family Residential Facilities, Intergovernmental Service Agreement (IGSA) Facilities, Dedicated Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental Agreement (IGA) Facilities, and any other facilities where individuals may be held in ICE custody for 72 hours or more.

For purposes of this request, "detainee" means any person detained or formerly detained in an immigration detention facility or holding facility.

For purposes of this request, "SEN" means the Significant Event Notification system utilized by ICE.

For purposes of this request, "SIR" means the Significant Incident Reports utilized by ICE.

## III. SPECIFIC RECORDS REQUESTED

1. Any and all documents, without limitation to date, including any communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals.

| Name | Country of Origin | Approximate Date of Death | ICE Detention Facility Prior to Hospitalization and Death | Location at Death |
|---|---|---|---|---|
| Teka Gulema | Ethiopia | January 18, 2016 | Etowah County Detention Center, Alabama | Riverview Medical Center, Gadsden, AL |
| Johana Medina Leon | El Salvador | May 23-June 1, 2019 | Otero County Processing Center, New Mexico | Del Sol Medical Center, El Paso, TX |
| Jose Ibarra Bucio | Mexico | March 21, 2019 | Adelanto ICE Processing | Loma Linda University |

| | | | | |
|---|---|---|---|---|
| | | | Center, California | Medical Center, Loma Linda, CA |
| Martin Vargas Arellano | Mexico | March 6, 2021 | Adelanto ICE Processing Center, California | St. Jude Medical Center, Fullerton, CA |

2. Any and all DHS OIG reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OIG reports of investigation.

3. Any and all ICE OPR reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OPR reports of investigation.

4. Any and all documents and communications, including ICE and IHSC directives, policies, procedures, protocols, or trainings that contain guidance, instructions, or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities. Detainees specified in (a) and (b) above shall include those being treated for COVID-19 during their hospitalization or treatment at external healthcare providers or facilities.

5. Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

6. Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that

mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

7. Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or ICE OPR that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

8. Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

9. Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment

Please construe this as an ongoing FOIA request, so that any records that come within the possession of the agency prior to your final response to this FOIA Request should also be considered within the Request's scope.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the Requestor requests that responsive electronic records be provided electronically in their native file format, if possible, with all metadata and load files. Alternatively, and only if the native file format production is not possible, the Requestor requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files. We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits. However, to the extent that a response to this request would require you to provide multiple copies of identical material, the request is limited so that only one copy of the identical material is requested. We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits. Please do not compress images or downsample the resolution, as this interferes with their legibility. To facilitate a speedy response, we ask that records responsive to this request be produced on a rolling basis. The Requestor will accept records and other information that has been redacted pursuant to the

Health Insurance and Portability Accountability Act or other statutes or regulations protecting the privacy of individual detainees.

In the event you determine that materials contain information that falls within the statutory exemptions to mandatory disclosure, we request that such information be reviewed for possible discretionary disclosure. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 293 (1979). *See* Memorandum from Attorney General, to Heads of Executive Departments and Agencies, *Freedom of Information Act Guidelines* (Mar. 15, 2022), https://www.justice.gov/ag/page/file/1483516/download ("Information that might technically fall within an exemption should not be withheld from a FOIA requester unless the agency can identify a foreseeable harm or legal bar to disclosure. In case of doubt, openness should prevail. Moreover, agencies are strongly encouraged to make discretionary disclosures of information where appropriate."). We also request that, in accordance with 5 U.S.C. § 552(b), any and all reasonably segregable portions of otherwise exempt materials be produced. To the extent the request is denied, we expect to receive notice in writing, including a description of the information withheld, the reasons for denial, and any exemptions relied upon.

## IV. LIMITATION OR WAIVER OF SEARCH AND REVIEW FEES

We request a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . educational or noncommercial scientific institution . . . or a representative of the news media") and 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged to "representatives of the news media").

The information sought in this request is not sought for a commercial purpose. The Requestor is a non-profit organization that intends to disseminate the information gathered by this request to the public at no cost, including through the Requestor's website and social media. The ACLU SoCal regularly disseminates information to its members through action alerts, emails and newsletters (the ACLU SoCal has more than 28,000 members). *See* http://www.aclusocal.org/about/. Requestor may also compile a report or other publication on the government's treatment of immigrants based on information gathered through this FOIA. Requestor has repeatedly used information gathered through FOIA to disseminate information to the public through such forums. *See, e.g.*, http://www.aclu.org/immigrants-rights/immigrant-detainee-rights-are-routinely-systematically-violated-new-report-finds (ACLU SoCal report based on documents disclosed through FOIA). *See also* http://www.aclusocal.org/about/report-directory/ (compiling recent ACLU SoCal reports).

The "term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). The statutory definition does not require that the requestor be a member of the traditional media. As long as the requestor meets the definition in any aspect of its work, it qualifies for limitation of fees under this section of the statute

Requestor qualifies as a "representative of the news media" under the statutory definition, because it routinely gathers information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public. *See Electronic Privacy Information*

*Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Courts have reaffirmed that non-profit requestors who are not traditional news media outlets can qualify as representatives of the new media for the purposes of the FOIA, including after the 2007 amendments to the FOIA. *See ACLU of Washington v. U.S. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *18 (D. Wash. Mar. 10, 2011) (finding that the ACLU qualifies as a "representative of the news media"). Accordingly, any fees charged must be limited to duplication costs

## V. WAIVER OR REDUCTION OF ALL COSTS

We request a waiver or reduction of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester"); *see also* 6 C.F.R. § 5.11(k).

The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987). The Requestor need not demonstrate that the records would contain evidence of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, good or bad. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003).

The requested records will contribute substantially to the public's understanding of ICE's role in this matter of great public concern. For example, ICE has reported that nine detainees have died while in custody as a result of COVID-19 since the start of the pandemic, but has declined to publicly report the number of detainees hospitalized due to the virus, or the number of detainees who were hospitalized for COVID-19, but who died after release from custody while hospitalized.[i] This omission may be instructive: as the *New York Times* recently reported, the official release of hospitalized prisoners from custody has led to an undercount and underreporting of COVID-19 deaths in prison.[ii] In a recent investigation into ICE's management of COVID-19 in detention, the GAO noted that 209 immigrant detainees required hospitalization as a result of COVID-19, but did not provide information as to the number of detainees who were released from custody in the hospital, or the number of detainees who died after release from custody.[iii]

The records related to the four hospitalized immigrant detainees who died shortly after release by ICE named in Requests #1-3 are also of particular interest to the public. In March 2021, ICE hospitalized Martin Vargas Arellano, a 55-year-old man, after he contracted COVID-19 at an ICE detention facility in Adelanto, California. Although his counsel had on several occasions requested Mr. Vargas Arellano's release in prior months due to his medical vulnerability to the virus, ICE had refused to release him from custody. It was not only until Mr. Vargas contracted COVID-19 and was hospitalized that ICE released him from custody, shortly before his death in the hospital. Because Mr. Vargas Arellano was not formally in ICE's custody at the time of his death, ICE avoided mandatory reporting and investigation requirements for the

death. Mr. Vargas Arellano's family and counsel learned of his death weeks later only after filing a missing person's report.[iv]

Mr. Vargas Arellano's case is not an isolated incident. Less than two years before, Jose Ibarra Bucio, a 27-year-old man, suffered a brain hemorrhage while detained at the same Adelanto, California detention center, and fell into a coma. ICE transferred Mr. Ibarra Bucio to a local hospital, where he was placed in an intensive care unit, and soon after released him from custody on an order of recognizance. Mr. Ibarra Bucio never awoke from his coma, and died six weeks later. ICE did not publicly report his death because he was not formally in custody at the time of his death.[v]

Likewise, ICE released Johana Medina Leon, a 25-year-old transgender asylum seeker from El Salvador, from custody the same day that she was hospitalized. Leon had fallen ill in immigration detention at an Otero County, New Mexico facility, after she was repeatedly denied medical care. Although she had been eligible for release on parole for several months, ICE only released her from custody on the same day she was hospitalized, shortly before her death. Because she was not in ICE custody at the time of her death, ICE did not issue a public report or investigatory information regarding the circumstances of her medical care, hospitalization, or death.[vi]

ICE also released Teka Gulema, an immigrant from Ethopia, from custody at the Etowah County Detention Center in Gadsden, Alabama, shortly before his death. Mr. Gulema became paralyzed from the neck down as a result of an infection that he had contracted at the detention facility, and was transferred to a nearby hospital, where he remained in ICE custody for approximately one year. Weeks before his death, ICE formally released Mr. Gulema from custody, although he remained immobile and confined to his hospital bed. Because Mr. Gulema was not formally in ICE's custody at the time of his death, ICE was not required to publicly report or investigate the causes of his death.[vii]

Given the substantial attention to this issue by legislators, the media, and advocacy groups, the requested records will contribute significantly to the public's understanding of the treatment of detained immigrants, and ICE's decisions to release hospitalized detainees on their deathbeds.

The requested records relate directly to the operations or activities of the government that potentially impact fundamental rights and freedoms. The records are not sought for commercial use, and the Requestor plans to disseminate the information disclosed through print and other media to the public at no cost. As demonstrated above, the Requestor has both the intent and ability to convey any information obtained through this request to the public.

The Requestor states "with reasonable specificity that [their] request pertains to operations of the government," and "the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Health and Human Services*, 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006).

In the event a waiver or reduction of costs is denied, please notify me in advance if the anticipated costs exceed $100.

## VI. EXPEDITED PROCESSING REQUEST

The Requestor requests expedited processing of this Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); see also 6 C.F.R. 5.5(e)(1)(ii).

ACLU SoCal is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). As detailed *supra*, the ACLU SoCal has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Indeed, obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU SoCal's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information"). Moreover, as mentioned supra, the ACLU So Cal intends to distribute the information obtained through this FOIA request via its website and/or means available to us.

The requested records are also urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).

Deaths in ICE custody are a matter of widespread media and public interest, and the requested records will inform the public concern this activity by ICE. As mentioned *supra*, the deaths of ICE detainees—including those released from custody shortly before their deaths—have been a significant topic of news media coverage, and continue to receive ongoing public, media, and congressional attention. Members of Congress have expressed serious concerns about medical care and conditions of confinement in detention recently. Thus, the urgency to inform the public goes beyond the general public interest in government transparency—it responds to ongoing serious concerns from Congress and the public, and will answer specific questions that have very recently been raised regarding ICE's treatment of people in detention, decisions to release people from custody prior to death, and full accountability and investigation of deaths caused by poor medical care or conditions of confinement in detention.

Given the foregoing, the ACLU SoCal has satisfied the requirements for expedited processing of this Request.

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(d)(3).

## VII. CONCLUSION

We look forward to your reply to the records request within ten (10) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I).

Please contact Michael Kaufman at (213) 977-5232 with any questions. Please supply all records to:

Michael Kaufman
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017

Or via email to: mkaufman@aclusocal.org.

Thank you for your prompt attention.

Sincerely,

/s/ *Michael Kaufman*

Michael Kaufman
Senior Staff Attorney

---

[i] ICE, *COVID-19 ICE Detainee Statistics by Facility*, https://www.ice.gov/coronavirus#detStat (last visited Jul. 8, 2021).

[ii] Maura Turcotte et al., *The Real Toll from Prison Covid Cases May Be Higher Than Reported*, NY Times, Jul. 7, 2021, https://www.nytimes.com/2021/07/07/us/inmates-incarcerated-covid-deaths.html (noting large number of unreported COVID-19 deaths because hospitalized prisoners were officially released from custody before they died).

[iii] U.S. Government Accountability Office, *Immigration Detention: ICE Efforts to Address Covid-19 in Detention Facilities* 22 (June 2021), https://www.gao.gov/assets/gao-21-414.pdf.

[iv] Alene Tchekmedyian and Andrea Castillo, *ICE Released a Sick Detainee from Adelanto Immigration Facility. He Died Three Days* Later, LA Times, Mar. 20, 2021, https://www.latimes.com/california/story/2021-03-20/adelanto-detainee-death; Joe Nelson, *Detainee Who Pleaded for Release from ICE Immigration Center in Adelanto Dies from COVID-19*, The San Bernardino Sun, Mar. 22, 2021, https://www.sbsun.com/2021/03/22/detainee-who-pleaded-for-release-from-ice-immigration-center-in-adelanto-dies-from-covid-19/; Norma Riberiro, *Man Dies After Contracting COVID-19 While in ICE Custody, Lawsuit Says*, NBC Los Angeles, Mar. 23, 2021, https://www.nbclosangeles.com/news/local/man-dies-after-contracting-covid-19-while-in-ice-custody-lawsuit-says/2556682/; Francisco Castro, *ICE Center Accused of Releasing Critically Ill Detainee So He Doesn't Die in the Facility,* San Fernando Valley Sun, Mar. 24, 2021, https://sanfernandosun.com/2021/03/24/ice-center-accused-of-releasing-critically-ill-detainee-so-he-doesnt-die-in-the-facility/.

[v] Paloma Esquivel, *An Immigration Detainee Fell into a Coma and Died at 27. His Family Wants to Know Why*, LA Times, Apr. 10, 2019, https://www.latimes.com/local/lanow/la-me-ln-adelanto-detainee-death-20190410-story.html; Associated Press, *Family Wants Answers After Immigrant Dies*, Apr. 10, 2019, https://www.citynews1130.com/2019/04/10/the-latest-family-wants-answers-after-immigrant-dies/; Garret Bergthold, *Family Wants Answers in Death After Detention*, Victorville Daily Press, Apr. 10, 2019, https://www.vvdailypress.com/news/20190410/family-wants-answers-in-death-after-detention; Voice of America News, *Family Seeks Answers in Immigrant's Death After Detention*, Apr. 10, 2019, https://www.voanews.com/usa/immigration/family-seeks-answers-immigrants-death-after-detention; Jovana Lara,

---

*Family Seeking Answers After Man, 27, Dies in ICE Custody in Adelanto*, ABC7 News, Apr. 10, 2019, https://abc7.com/amp/5242925/; Roxana Kopetman, *ICE Set a 27-Year-Old Detainee in a Coma Free, Weeks Before He Died*, Orange County Register, Apr. 11, 2019, https://www.ocregister.com/2019/04/10/ice-released-detainee-while-he-was-in-a-coma-weeks-before-his-death/.

[vi] Robert Moore, *Transgender Woman Migrant Who Had Been in ICE Custody Dies after Falling Ill,* Washington Post, June 2, 2019, https://www.washingtonpost.com/immigration/transgender-woman-migrant-who-had-been-in-ice-custody-dies-after-falling-ill/2019/06/02/d194528a-85a6-11e9-98c1-e945ae5db8fb_story.html; Ben Kesslen, *Transgender Asylum-Seeker After Six Weeks in Custody*, NBC News, June 3, 2019, https://www.nbcnews.com/news/us-news/transgender-asylum-seeker-dies-after-six-weeks-ice-custody-n1012956; Adolfo Flores, *A Transgender Woman Died After Being Held for Weeks in ICE Custody*, Buzz Feed News, Jun. 3, 2019, https://www.buzzfeednews.com/article/adolfoflores/transgender-woman-dies-ice-custody-asylum; Lucy Diavolo, *Transgender Woman Johana Medina Leon Died Shortly After Being Paroled from ICE Custody,* Teen Vogue, June 3, 2019, https://www.teenvogue.com/story/transgender-woman-johana-medina-leon-died-ice-custody; Daniel Borunda, *Transgender Asylum Seeker from El Salvador Held by ICE Dies at El Paso Hospital*, El Paso Times, June 3, 2019, https://www.elpasotimes.com/story/news/immigration/2019/06/03/transgender-migrant-johana-medina-leon-dies-el-paso-hospital/1332236001/; Sam Levin, *Trans Woman Who Died After Illness in U.S. Custody Had Asked to Be Deported, Family Says*, The Guardian, Jun. 12, 2019, https://www.theguardian.com/us-news/2019/jun/12/trans-woman-death-us-custody-ice-deportation.

[vii] William Thornton, *'One Who Could Have Been You:' Group Protests Former Detainee's Death*, AL.com, Feb. 28, 2016, https://www.al.com/news/anniston-gadsden/2016/02/one_who_could_have_been_you_gr.html; Complaint from CIVIC to John Roth, Inspector General, DHS, et al. (Mar. 31, 2016), http://www.endisolation.org/blog/wp-content/uploads/2016/02/Complaint-Etowah-Medical__1.pdf.