LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, | Case No. 2:22-CV-04760-SB-AFM |
| | **JOINT REPORT OF CONFERENCE OF PARTIES** |
| *Plaintiff,* | [Fed. R. Civ. P. 26(f)] |
| v. | Original Complaint |
| UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | Filed:                        July 12, 2022<br>Answer Filed:          October 18, 2022<br>Proposed Trial Date:  September 18, 2023 |
| | Conference Date:     December 9, 2022<br>Time:                      8:30 a.m.<br>Courtroom:              6C |
| *Defendants.* | Hon. Stanley Blumenfeld, Jr. |

1     EUNICE CHO (*pro hac vice*)
           *echo@aclu.org*
2     AMERICAN CIVIL LIBERTIES UNION FOUNDATION
           NATIONAL PRISON PROJECT
3     915 Fifteenth Street NW, 7th Floor
           Washington, DC 20005
4     Telephone: (202) 548-6616

5     KYLE VIRGIEN (SBN 278747)
           *kvirgien@aclu.org*
6     AMERICAN CIVIL LIBERTIES UNION FOUNDATION
           NATIONAL PRISON PROJECT
7     39 Drumm Street
           San Francisco, CA 94111
8     Telephone: (202) 393-4930

9     Attorneys for Plaintiff

On November 17, 2022, the Plaintiff and Defendants, through their undersigned counsel, held their Conference of Parties pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. The Parties hereby submit their Rule 26(f) Joint Report of Conference of Parties pursuant to the Court's Mandatory Scheduling Conference (MSC) Order.

**(1)** **SUBJECT MATTER JURISDICTION**

The Court has original subject matter jurisdiction over Plaintiff's claims under the federal Freedom of Information Act ("FOIA"), pursuant 5 U.S.C. § 552, as well as 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-06.

**(2)** **STATEMENT OF THE CASE**

Per the Court's October 18, 2022 Order, Dkt. 25, the Parties include the following: "The parties are advised that this extension will not extend the case management deadlines that will be set, and they are ordered to include this entire paragraph verbatim in their Joint Rule 26(f) Report in the statement of the case."

**a.** **Plaintiff's Statement**

This FOIA case brought by Plaintiff ACLU of Southern California seeks public transparency into Defendant U.S. Immigration and Customs Enforcement's troubling practices of releasing immigration detainees suffering grave illnesses from custody prior to their imminent death. ICE's practices raise questions of significant public concern – both generally and to the families of the impacted detainees – particularly regarding its failure to account and take responsibility for deaths of detained immigrants, including those who fall ill in custody and are released from custody upon their imminent death. *See, e.g.,* Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, Los Angeles Times (May 13, 2022), available at https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees; Amy Taxin, *Family Seeks Answers in Immigrant's Death After Detention*, AP News (Apr. 10, 2019),

https://apnews.com/article/immigration-us-news-ap-top-news- caribbean-california-8775303f79ee4d44a5959c34a8f3d99d; Adolfo Flores, *A Transgender Woman Died After Being Held For Weeks In ICE Custody*, BuzzFeed News (June 3, 2019), https://www.buzzfeednews.com/article/adolfoflores/transgender-woman-dies-ice-custody-asylum; William Thornton, '*One Who Could Have Been You': Group Protests Former Detainee's Death*, Advance Local (Feb. 28, 2016), https://www.al.com/news/anniston-gadsden/2016/02/one_who_could_have_been_you_gr.html; Complaint from CIVIC to John Roth, Inspector General, DHS, et al. (Mar. 31, 2016), http://www.endisolation.org/blog/wp-content/uploads/2016/02/Complaint-Etowah-Medical__1.pdf.

While ICE's practices resulted in an investigation by Defendant DHS-OIG, *see* Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, Los Angeles Times (May 13, 2022), available at https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees, Defendants have yet to disclose their full scope and scale. In 2020 ICE reported its highest annual death toll in immigration detention in fifteen years, yet this number likely undercounts the true number of detained immigrants who died as a result of illnesses contracted while in ICE detention. *See* Dan Glaun, *How ICE Data Undercounts COVID-19 Victims*, PBS Frontline (Aug. 11, 2020), https://www.pbs.org/wgbh/frontline/article/how-ice-data-undercounts-covid-19-victims/.

In addition to information regarding ICE's policies, procedures and practice of releasing detainees on their death beds, Plaintiff also seeks the medical records of four detainees who suffered illnesses while in ICE custody, who died shortly after they were suddenly and inexplicably released from ICE custody: Martin

2

Vargas Arellano, Jose Ibarra Bucio, Johana Medina Leon, and Teka Gulema. Plaintiff seeks an adequate search for and disclosure of the following records:

(1)  Any and all documents, without limitation to date, including any communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals.

| Name | Country of Origin | Approximate Date of Death | ICE Detention Facility Prior to Hospitalization and Death | Location at Death |
|------|-------------------|---------------------------|----------------------------------------------------------|-------------------|
| Teka Gulema | Ethiopia | January 18, 2016 | Etowah County Detention Center, Alabama | Riverview Medical Center, Gadsden, AL |
| Johana Medina Leon | El Salvador | May 23-June 1, 2019 | Otero County Processing Center, New Mexico | Del Sol Medical Center, El Paso, TX |
| Jose Ibarra Bucio | Mexico | March 21, 2019 | Adelanto ICE Processing Center, California | Loma Linda University Medical Center, Loma Linda, CA |
| Martin Vargas Arellano | Mexico | March 6, 2021 | Adelanto ICE Processing Center, California | St. Judge Medical Center, Fullerton, CA |

(2)  Any and all DHS OIG reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OIG reports of investigation.

(3)  Any and all ICE OPR reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all

exhibits, appendices, or attachments to the DHS OPR reports of investigation.

(4) Any and all documents and communications, including ICE and IHSC directives, policies, procedures, protocols, or trainings that contain guidance, instructions, or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities. Detainees specified in (a) and (b) above shall include those being treated for COVID-19 during their hospitalization or treatment at external healthcare providers or facilities.

(5) Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including

4

for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

(6) Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

(7) Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or ICE OPR that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

(8) Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

(9) Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment.

Even though Plaintiff filed its FOIA Request eight months ago on April 29, 2022, only Defendant ICE has produced some responsive documents, and it only did so on November 18, 2022, the day after the Parties Rule 26(f) Conference. This is so even though a significant time ago ICE produced documents responsive to Plaintiff's Request in other litigation. *See Los Angeles Times Commc'ns LLC v. U.S. Dep't of Homeland Sec.*, No. 2:20-cv-10911-FLA-MRW, 2020 WL 7055904 (C.D. Cal. 2020); Andrea Castillo and Jie Jenny Zou, *L.A. Times Files Lawsuit Seeking Records on Abuse Claims at U.S. Immigration Detention Centers*, Los Angeles Times (Dec. 1, 2020), https://www.latimes.com/politics/story/2020-12-01/la-times-sues-for-federal-records-on-abuse-claims-ice-centers; Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, Los Angeles Times (May 13, 2022), https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees; *Martin Vargas v. U.S. ICE et al.*, No. 5:22-cv-287-JWH-SP (C.D. Cal.). Moreover, Defendants DHS produced no responsive documents to date, and DHS-OIG produced a sub-set of documents as this report was being drafted.

**b.    Defendants' Statement**

Defendants are unable to comment Plaintiff's characterization of their FOIA request in this action as the agency is continuing to process and produce documents while meeting and conferring with Plaintiff about the scope of their request. That

said, ICE has already produced 2,444 pages of documents.[1] Relatedly, DHS-OIG processed 701 pages of records and has already produced 121 pages of records.[2]

While Plaintiff has raised concerns over the pace of the productions and complains that its request has been pending since May 2022, Defendants note that the American Civil Liberties Union, represented by at least one of the same attorneys as is counsel of record for ACLU SoCal in this action, submitted a nearly identical FOIA request and then initiating litigation in the District Court for the District of Columbia. *See ACLU v. DHS*, DC District Court Case No. 1:21-cv-02627. Facing Defendants' Motion to Dismiss in that case, the ACLU voluntarily dismissed that action on June 28, 2022. *See id*. at Dkt. 17. Less than a month later, ACLU SoCal filed this action. While it appears ACLU and ACLU SoCal submitted separate FOIA requests, it is unclear why a decision was made to voluntarily dismiss the DC District Court litigation and instead pursue litigation here in the Central District given that the requests effectively seek the same information.

**(3)   DAMAGES/INSURANCE**

Because this is a FOIA action against the federal government for which damages are not available, issues of damages and insurance are not applicable.

**(4)   PARTIES/EVIDENCE**

This is an action by Plaintiff American Civil Liberties Union of Southern California ("ACLU SoCal") under FOIA for injunctive relief seeking disclosure and release of agency records allegedly improperly withheld. Plaintiff submitted its FOIA Request to the Defendants U.S. Immigration and Customs Enforcement

---

[1] ICE reviewed 2,769 pages of potentially responsive records. Of those 2,769 pages, 26 were determined to be non-responsive, and 299 pages were determined to be duplicates.

[2] DHS OIG processed 701 pages of potentially responsive records. Of those 701 pages, 127 were determined to be duplicates; 453 were referred to other agencies for processing and direct response to the plaintiff; and 121 pages have been released to Plaintiff.

("ICE"), U.S. Department of Homeland Security ("DHS"), and DHS's Office of Inspector General ("DHS-OIG") on April 29, 2022. Having received no documents from Defendants, Plaintiff filed the Complaint in this action on July 12, 2022 against Defendants ICE and DHS. Defendants ICE and DHS answered Plaintiff's Complaint on September 29, 2022. Plaintiff filed a First Amended Complaint ("FAC") on October 4, 2022 against Defendants ICE and DHS, and added DHS's Office of Inspector General ("DHS-OIG") as a Defendant.

Plaintiff's FOIA claims seek the adequate search for and release of non-exempt public records, and as such issues of evidence will arise in the context of the sufficiency of Defendants' production of documents and their declarations justifying the adequacy of their document searches and withholding of purportedly exempt information. If discovery into these matters warranted, issues of evidence may also arise in the context of potential testimony of witnesses who conducted the search for, production and/or withholding of responsive documents.

**(5)    DISCOVERY**

    **a.    Status of Discovery**

No discovery has been conducted to date.

    **b.    Discovery Plan:**

        **1.    Plaintiff's Position**

While Plaintiff does not anticipate the need for discovery at this time, discovery may become necessary in light of issues that become apparent as Defendants continue to produce documents. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (noting availability of limited discovery in FOIA cases); *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), aff'd, 349 F.3d 657 (D.C. Cir. 2003) (Discovery may not be necessary "when an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains.") Plaintiff reserves the right to seek discovery on matters including the scope and adequacy of Defendants' search,

Defendants' systems for storing responsive information, review of segregable non-exempt information, indexing and classification procedures, and other similar matters should Plaintiff believe such discovery is necessary to ensure Defendants' compliance with their FOIA obligations.

Regarding search adequacy, depending on the positions Defendants take regarding their search obligations, Plaintiff may need to depose appropriate individuals familiar with document databases where responsive documents may reside, individuals who conducted the searches, and/or appropriate custodians of records. Plaintiff also anticipates discovery may be necessary upon Defendants providing Plaintiff with indices of documents withheld in whole or part based on purported exemptions, pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

Further, discovery may also be necessary depending on the outcome of any summary judgment motions filed in the case, particularly as to issues of factual disputes regarding the adequacy of Defendants declarations on search adequacy and segregability of exempt information from disclosable information.

For these reasons, Plaintiff propose that discovery remain open until at least 120 days after the Court rules on any summary judgment motions, and that no limitations be placed on discovery other than those prescribed by the Federal Rules of Civil Procedure.

## 2.   <u>Defendants' Position</u>

Defendants maintain that because this is a FOIA action, the usual discovery process does not apply. FOIA cases are different from other civil matters subject to the discovery provisions of the Federal Rules of Civil Procedure because the government bears the burden to justify non-disclosure of documents. *See* 5 U.S.C. §552(a)(4)(B); *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987); *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979). Because the government bears the burden of justifying non-disclosure in a FOIA case,

1    discovery is not essential.

2        Moreover, discovery is greatly restricted in FOIA actions. *See Katzman v.*

3    *Freeh*, 926 F. Supp. 316, 319 (E.D.N.Y. 1996). It is generally limited to the scope

4    of an agency's search, its indexing and classification procedures, and similar

5    factual matters. *Id.* Permissible discovery concerning such factual issues generally

6    takes place, if at all, after the government moves for summary judgment and

7    submits supporting affidavits and memorandum of law. *See, e.g., Miscavige v. IRS*,

8    2 F.3d 366, 369 (11th Cir. 1993).

9        Defendants reserve the right to object to any discovery requested by

10   Plaintiff.

11   **(6)   LEGAL ISSUES**

12       a.   **Plaintiff's Statement**

13       The primary legal disputes will be whether Defendants have satisfied their

14   obligations under FOIA to (1) "make available" responsive records by conducting

15   an adequate search or documents sought in Plaintiff's FOIA Request, *see*

16   *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 33 F.4th 1186, 1194 (9th Cir.

17   2022) (*quoting Hamdan v. Dep't of Just.*, 797 F.3d 759, 770 (9th Cir. 2015)), (2)

18   produce responsive, non-exempt records with appropriately tailored redactions if

19   need be to ensure production of all reasonably segregable information, 5 U.S.C. §

20   552(a)(3)(A) and (a)(8)(A)(ii)(II), (3) withhold only those records that properly fall

21   within a statutory exemption, 5 U.S.C. §§ 552(a)(3)(A), 552(b)(1)-(9), and (4)

22   promptly produce records and justify any delay in doing so by demonstrating

23   exceptional circumstances and due diligence in its processing the Request, 5

24   U.S.C. § 552(a)(6)(C).

25       b.   **Defendants' Statement**

26       The waiver of sovereign immunity under the FOIA gives the Court

27   jurisdiction to enjoin the agency from withholding agency records improperly

28   withheld and to order the production of any agency records improperly withheld

from the Plaintiff. 5 U.S.C. §552(a)(4)(B); *Spurlock v. FBI*, 69 F.3d 1010, 1015 (9th Cir. 1995).

Under FOIA, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the courts. *Hayden v. National Security Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980). The agency has the burden to justify the non-disclosure of documents and establish that a particular document is exempt from disclosure. *Citizens Commission on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995).

In this case, Defendants are currently processing Plaintiff's FOIA request and have initially identified approximately 8,050 pages of potentially responsive records (with ICE FOIA identifying approximately 5,550 pages and DHS-OIG identifying 2,500 pages). Any segregable, non-exempt portion of those documents will be released to Plaintiffs, in whole or in part, subject to any applicable FOIA exemptions. 5 U.S.C. §552(b). That said, as noted above, ICE has already produced 2,444 pages of documents. Relatedly, DHS-OIG processed 701 pages of records and has already produced 121 pages of records.

Accordingly, Defendants propose a stay of this action to allow ICE and DHS-OIG to complete their processing and supplement their responses to Plaintiff's FOIA request. ICE can commit to processing 500 pages per month and DHS-OIG can commit to processing between 500-750 pages per month. Neither agency can commit to processing more than the amounts stated due to current workloads and available resources. To that end, each agency will submit to the Court explaining the current workloads and resources before the scheduling conference.

While Plaintiff has cited various orders from other cases where an agency has been ordered to process or produce more than the ranges here, many of those cases languished for months before any documents were produced. Here, however,

1  both ICE and DHS-OIG have already made initial productions and are committed
2  to continuing to make monthly productions.

3  **(7)**   **MOTIONS**

4      **a.**   **Procedural Motions:**

5          **i.**   **Plaintiff's Statement**

6      Plaintiff does not anticipate the need to add other Parties or claims, file
7  amended pleadings, transfer, venue, or address other procedural matters at this
8  time. However, Plaintiff requests that to the extent the Court sets a deadline to
9  amend the pleadings, it set that deadline for 30 days after the Court rules on any
10 summary judgment motions.

11         **ii.**   **Defendants' Statement**

12     Defendants do not anticipate filing any procedural motions.

13     **b.**   **Dispositive Motions**

14         **i.**   **Plaintiff's Statement**

15     As is customary in FOIA cases, the Parties anticipate that this action will be
16 resolved on summary judgment. The schedule for filing summary judgment
17 motions will be dependent on Defendants' completion of their search for and
18 production of documents responsive to Plaintiff's FOIA Request, together with any
19 *Vaughn* indices of any purportedly exempt or otherwise withheld documents.
20 Based on Defendants' representations regarding the volume of documents
21 responsive to Plaintiff's Request, and assuming Defendants promptly process those
22 documents as outlined below, Plaintiff proposes that the Parties brief summary
23 judgement motions in March and April of 2023. Plaintiffs do not believe that a stay
24 of this litigation is appropriate, as such a stay may only further delay adjudication
25 and resolution of the case.

26     Plaintiff emphasizes that its ability to meet this briefing schedule depends
27 significantly on a single factor: the rate at which Defendants produce documents
28 responsive to Plaintiff's FOIA requests. Defendants have agreed to produce some

responsive documents, and the particular documents that Defendants produce (and those they do not produce) will dictate the issues to be litigated in this case. This production is thus a gating item that must be completed for summary judgment briefing to take place.

To this end, Plaintiff respectfully requests that the Court order each Defendant to process 3,000 documents per month, and further order Defendants to complete their production and produce *Vaughn* indices by the end of January 2023. *See Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) ("unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses."); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) ("A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline."); *See also Electronic Privacy Information Center v. DOJ*, 416 F. Supp. 2d 30, 38 (D.D.C. 2006) ("courts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition").

This rate of production is also necessary to resolve this case expeditiously. At the Rule 26(f) conference, Defendants indicated that Defendant ICE has identified at least 5,500 documents responsive to the Request, and that it would make an initial production of 2,400 pages of documents that it produced in a separate FOIA case seeking overlapping documents (Defendants represented certain of those 2,400 documents may overlap with the 5,500 it has separately identified as responsive to Plaintiff's Request, but it was not certain whether this overlap would speed its processing of the 5,500 documents). Defendant ICE produced these 2,400 documents the following day. Defendants also indicated that DHS-OIG identified 2,500 responsive documents. As proposed by Defendants, both ICE and DHS-OIG would each process 500 pages of documents per month, with the first of those rolling productions starting on December 21, 2022. In other

words, Defendants propose that they will complete this production, delaying the resolution of the merits of this case to at least October of 2023.

Based on Defendants' representations regarding the scope of responsive records, Plaintiff questioned both the adequacy of Defendants' search, as well as the sufficiency of the quantity of its proposed rolling production. As discussed, Plaintiff's FOIA Request has been outstanding for eight months, with only one of the three Defendants recently producing a subset of responsive documents. Given this already lengthy delay, the significant public importance of and keen interest in the information Plaintiff seeks, and because many of the documents at issue have been processed and released in other cases, Defendants should be required to produce significantly more than 500 documents each month. *See Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161 (S.D.N.Y. 2019) (while acknowledging the agency's "resource constraints and competing priorities" the court ordered processing of 5,000 documents per month in light of the significant public interest and time sensitivity in the information sought).

Defendants' proposal to limit their monthly processing (not production) of documents to 500 pages for ICE and 500-750 pages for DHS-OIG is clearly insufficient based on the following facts and circumstances. First, these same Defendant agencies have been ordered to produce 3,000 documents per month in another FOIA case being litigated in this district, which seeks documents overlapping with those Plaintiff seeks here. *See Los Angeles Times Commc'ns LLC v. U.S. Dep't of Homeland Sec.*, No. 2:20-cv-10911-FLA-MRW, 2020 WL 7055904 (C.D. Cal. 2020), December 3, 2021 Minutes Order, Dkt. 35 (*citing Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 164 (S.D.N.Y. 2019)), attached as Exhibit A hereto. Further, as in the *Los Angeles Times* case, Defendants also produced overlapping documents Plaintiff seeks in other cases, including cases brought on behalf of Johana Medina Leon and Martian Vargas Arellano. As such, Defendants have had an ample head start in processing the documents at issue

here. Moreover, Plaintiff submitted its FOIA Request to Defendants eight months ago on April 29, 2022, and it is Plaintiff's understanding that they have already begun processing Plaintiff's requested documents. Indeed, Defendant DHS-OIG communicated with Plaintiff regarding the scope of its search for and production of documents five months ago on July 5, 2020. *See* First Amended Complaint at ¶ 41. For these reasons, Plaintiff's proposal that each Defendant be required to process 3,000 pages of documents per month is appropriate given Defendants' obligation to demonstrate "exceptional circumstances" and "due diligence" for its failure to promptly produce records under FOIA, which they have not done. *See* 5 USC § 552(a)(6)(C).

This production schedule Plaintiff proposes is well within the range ordered by courts in comparable FOIA cases. *See, e.g., Seavey v. DOJ*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017) (ordering production at a rate of "at least 2,850 pages per month" and finding this pace "well within the range of what other courts have ordered," despite agency's claim that 500 pages would be consistent with its policy); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering agency to process 5,000 records a month); *Elec. Privacy Info. Ctr. v. FBI*, 933 F. Supp. 2d 42, 48-50 (D.D.C. 2013) (rejecting claim that "'exceptionally large number' of FOIA cases involving the agency currently in litigation" justified only processing 1,500 pages per month, and ordering significantly higher volume in response to plaintiff's request); *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 731 (S.D.N.Y. 2011) (ordering ICE to fully respond to an outstanding FOIA request that required producing over 14,000 pages in one month); *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138, 140-41 (D.D.C. 2002) (ordering agencies to process over 6,000 pages of material within 60 days); *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002).

//

//

1

ii.     **Defendants' Position**

2      Defendants believe that this case should be administratively stayed while

3    they complete their productions in response to Plaintiff's FOIA request.

4    Defendants object to Plaintiff's demand that each process 3,000 pages per month.

5    At present, DHS-OIG can only commit to processing between 500-750 pages per

6    month and for its recent production, processed 701 pages. ICE can commit to

7    processing 500 pages per month. As previously stated, neither agency can commit

8    to processing more than the amounts stated due to current workloads and available

9    resources. In Defendants' view, following production, the Parties will be able to

10   meet and confer regarding the FOIA responses and any remaining issues regarding

11   withholdings of information/documents. Thereafter, the Parties will be better able

12   to estimate the time it will take to produce a *Vaughn* Index of any documents that

13   remain at issue, and a realistic briefing schedule.

14      Once production is complete, Defendants propose that the Parties will

15   provide a proposed briefing schedule including the following:

16      •      The date by which Defendants will file and serve a Motion for

17   Summary Judgment and *Vaughn* Index/Declaration(s);

18      •      The date by which Plaintiff will file any Cross-Motion for Summary

19   Judgment and Opposition to Defendants' Motion;

20      •      The date by which Defendants will file a Reply; and

21      •      A hearing date, if necessary, convenient to the Court's schedule at that

22   time.

23      **c.     Class Certification**

24      Not applicable.

25   //

26   //

27   //

28   //

**(8)  ALTERNATIVE DISPUTE RESOLUTION (ADR)**

    **a.  Prior Discussions:**

    The Parties have not had prior settlement discussions. However, the Parties are currently working in good faith to resolve the outstanding claims and issues in this litigation, and with limited Court intervention.

    **b.  ADR Selection:**

    Pursuant to the Notice to Parties of Court-Ordered ADR Program, Plaintiff believes this case is best suited for mediation with a neutral from the Court Mediation Panel. Plaintiff is also open to mediation before the magistrate judge. Defendants are open to either mediation before a neutral from the Court Mediation Panel or with the magistrate judge. To Defendants knowledge, however, there are not panel mediators with FOIA subject matter expertise.

**(9)  TRIAL**

    **a.  Proposed Trial Date:**

    As discussed above, the Parties anticipate that this matter will be resolved at the summary judgment stage because cases brought pursuant to FOIA are typically resolved by motions for summary judgment. If the Court denies the motions for summary judgment in whole or part, the Parties propose that the Court set a further case management conference to set a schedule for limited discovery and further summary judgment motions as needed, and/or a Final Pretrial Conference.

    In the event that this matter is not resolved by summary judgment, and for purposes of scheduling pre-trial dates, Plaintiff proposes September 18, 2023 as the date for trial. As Plaintiff discusses above in the context of a summary judgment schedule, the Parties' ability to try the case on this schedule depends significantly on the rate at which Defendants produce documents. Not only will this rate affect the schedule on which the Parties can brief summary judgment, it may also affect the trial date, particularly if the Court issues summary judgment orders requiring Defendants to produce additional documents or perfect their declarations justifying

search adequacy or propriety of any withholdings. Both of these outcomes may require the Parties to engage in targeted discovery and/or further motion practice before trial.

      **b.**    **Time Estimate:** 2-3 days.

      **c.**    **Jury or Court Trial:** Court trial.

      **d.**    **Magistrate Judge:** The Parties does not oppose reference of this matter to a Magistrate Judge, but have not identified one at this time.

      **e.**    **Trial Counsel:**

            **i.**    **Plaintiff**: Laboni Hoq (lead), Michael Kaufman, Eunice Cho, Kyle Virgien

            **ii.**    **Defendants**: Assistant United States Attorney Alarice Medrano and Joseph W. Tursi.

**(10)**  **SPECIAL REQUESTS/OTHER ISSUES**

      **a.**    **Rule 26(a) Disclosures:**

            **i.**    **Plaintiff's Position**

Plaintiff does not propose that any changes be made in the timing, form, or requirement for disclosures under Rule 26(a)(1)(A)(i) regarding the contact information of witnesses and the subjects of their knowledge, (ii) regarding a description of the category and location of relevant documents, including the documents responsive to Plaintiff's Request, and (iv), any insurance agreement that may be available to satisfy or reimburse payments all or part of any judgement in the action. Because this is a FOIA action for which damages are not available, the disclosures under Rule 26(a)(1)(A)(iii) are not applicable.

            **ii.**    **Defendants' Position**

Defendants maintain that because the facts in FOIA cases are rarely in dispute, most such cases are decided on motions for summary judgment. *Yonemoto v. Dep't of Veterans Affairs*, 648 F.3d 1049, 1055 (2011) (citing *Flightsafety Servs. Corp v. Dep't of Labor*, 326 F.3d 607, 610 (5th Cir.

2003)); *see also, South Yuba River Citizens League v. Nat'l Marine Fisheries Servs.*, 2008 WL 2523819, at *3-4 (E.D. Cal., June 20, 2008) ("Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved."); *Lawyers' Comm. for Civil Rights of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (noting that FOIA cases are frequently decided at the summary judgment stage before a plaintiff can conduct discovery).

Accordingly, Defendants submit that this matter will be resolved on summary judgment. There is typically no trial in a FOIA action. Accordingly, no witness lists have been compiled. In regard to documents, Plaintiff attached the relevant correspondence concerning the FOIA request to the First Amended Complaint.

**b.   Disclosure Of Electronically Stored Information:**

As set forth in their Request, Plaintiff has asked that Defendants produce documents responsive to its Request electronically, *i.e.* in their native file format, if possible, with all metadata and load files, or alternatively in text-searchable, static-image format (PDF). Defendants have represented that they will be able to produce responsive documents in this manner.

Respectfully submitted,

Dated: November 29, 2022          HOQ LAW APC

*/s/ Laboni A. Hoq**
Laboni A. Hoq

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

*/s/ Michael Kaufman*
Michael Kaufman

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

1

2

*/s/ Eunice Cho*
Eunice Cho

3

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

4

*/s/ Kyle Virgien*
Kyle Virgien

5

6

*Attorneys for Plaintiff American Civil
Liberties Union of Southern California*

7

8

Dated: November 29, 2022

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

9

10

11

12

13

*/s/ Joseph W. Tursi*
Alarice M. Medrano
Joseph W. Tursi
Assistant United States Attorney

14

15

Attorneys for Defendants

16

17

* Pursuant to Local Rule 5-4.3.4(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

18

19

20

21

22

23

24

25

26

27

28