E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
       Federal Building, Suite 7516
       300 North Los Angeles Street
       Los Angeles, California 90012
       Telephone: (213) 894-3989 | 8790
       Facsimile: (213) 894-7819
       E-mail: Joseph.Tursi@usdoj.gov
              Jason.Axe@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>             Plaintiff,<br><br>        v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>             Defendants. | No. 2:22-cv-04760-SHK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>(Filed concurrently with [Proposed] Order)<br><br>Hearing Date:      August 8, 2023<br>Hearing Time:      11:00 a.m.<br>Courtroom:          3 or 4<br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES ..................................................................ii

NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE
    PLEADINGS ..................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

I.     INTRODUCTION ....................................................................1

II.    STATEMENT OF FACTS & PROCEDURAL HISTORY ..................1

III.   LEGAL STANDARD ..............................................................5

    A.    Fed. R. Civ. P. 12(c) ......................................................5

IV.   ARGUMENT ........................................................................6

    A.    The First Amended Complaint Fails to State a Claim that Defendants
         Are Improperly Withholding Records Responsive to a "Reasonably
         Described" FOIA Request. ................................................6

         1.    Plaintiff's FOIA Requests are too Vague and Overbroad to
              Reasonably Describe the Records Sought .........................8

V.    CONCLUSION.....................................................................14

1

## TABLE OF AUTHORITIES

2

DESCRIPTION                                                                                           PAGE

3

**Federal Cases**                                                                                     **Page(s)**

4

*Am. Center for Law and Justice v. U.S. Dep't of Homeland Security*,
   573 F. Supp. 3d 78 (D.C. 2021) ................................................................. 6, 9-11

5

6

*Am. Fed'n Gov't Emps. ("AFGE") v. Dep't of Com.*,
   907 F.2d 203 (D.C. Cir. 1990) ...................................................................... 10, 11

7

*Antonelli v. Fed. Bureau of Prisons*,
   591 F. Supp. 2d 15 (D.D.C. 2008) ................................................................... 6-7

8

9

*Assassination Archives & Rsch. Ctr., Inc. v. CIA*,
   720 F. Supp. 217 (D.D.C. 1989) .................................................................. 10, 13

10

*Borden v. FBI*,
   1994 U.S. App. LEXIS 16157 (1st Cir. 1994) (per curiam) ................................... 8

11

*Bristol-Myers Co. v. FTC*,
   424 F.2d 935 (D.C. Cir. 1970) .............................................................................. 7

12

13

*Burrus v. U.S. Dep't of Agric. Forest Service*,
   2023 WL 3456832 (E.D. Cal. May 15, 2023) ....................................................... 6

14

*Chiquita Brands Int'l, Inc. v. SEC*,
   805 F.3d 289 (D.C. Cir. 2015) .............................................................................. 8

15

*Dale v. IRS*,
   238 F. Supp. 2d 99 (D.D.C. 2002) .................................................................. 8-9,11

16

17

*Doleman v. Meiji Mut. Life Ins. Co.*,
   727 F.2d 1480 (9th Cir. 1984) ............................................................................... 5

18

*Evans v. Bureau of Prisons*,
   951 F.3d 578 (D.C. Cir. 2020) .............................................................................. 7

19

20

*FCC v. AT&T Inc.*,
   562 U.S. 397 (2011) .............................................................................................. 8

21

*Freedom Watch, Inc. v. Dep't of State*,
   925 F. Supp. 2d 55 (D.D.C. 2013) ..................................................................... 6, 9

22

23

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ............................................................................... 5

24

*Hall & Assocs. v. EPA*,
   83 F. Supp. 3d 92 (D.D.C. 2015) ......................................................................... 12

25

26

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................... 5

27

*Irons v. Schuyler*,
   465 F.2d 608 (D.C. Cir. 1972) .............................................................................. 7

28

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ........................................................................ 5

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..................................................................... 6

*Kowalczyk v. Dep't of Just.*,
   73 F.3d 386 (D.C. Cir. 1996) ...................................................................... 10

*Krohn v. Dep't of Justice*,
   628 F.2d 195 (D.C. Cir. 1980) ................................................................... 12

*Latham v. Dep't of Just.*,
   658 F. Supp. 2d 155 (D.D.C. 2009) ............................................................ 9

*Lee v. City of L.A.*,
   250 F.3d 266 (9th Cir. 2001) ....................................................................... 6

*Marks v. United States*,
   578 F.2d 261 (9th Cir. 1978) ............................................................. 7, 9, 11

*Miller v. Casey*,
   730 F.2d 773 (D.C. Cir. 1984) .............................................................. 10, 13

*Nat'l Sec. Couns. v. CIA*,
   960 F. Supp. 2d 101 (D.D.C. 2013) ...................................................... 10, 12

*Porter v. CIA*,
   579 F. Supp. 2d 121 (D.D.C. 2008) ............................................................ 6

*Sanchez v. Decker, Civ. A.*
   2019 WL 6311955 (S.D.N.Y. 2019) ........................................................ 11

*Shapiro v. CIA*,
   170 F. Supp. 3d 147 (D.D.C. 2016) ............................................................ 9

*Tax Analysts v. IRS*,
   117 F.3d 607 (D.C. Cir. 1997) ................................................................... 10

*Truitt v. Dep't of State*,
   897 F.2d 540 (D.C. Cir. 1990) ..................................................................... 7

*United States v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ....................................................................... 6

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................... 5-6

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
   65 F. Supp. 3d 932 (C.D. Cal. 2014) .......................................................... 5

*Weisbuch v. Cnty. of Los Angeles*,
   119 F.3d 778 (9th Cir. 1997) ....................................................................... 5

*Yagman v. Pompeo*,
   868 F.3d 1075 (9th Cir. 2017) ..................................................................... 9

*Yeager v. DEA*,
   678 F.2d 315 (D.C. Cir. 1982) ................................................................... 13

iii

**Federal Statutes**

5 U.S.C. § 552 ................................................................................. vi

5 U.S.C. § 552(a)(3)(A) ........................................................... 1, 4, 6, 7

5 U.S.C. § 552(b) ............................................................................ 6

**Rules**

6 C.F.R. § 5.3(b) ....................................................................... 6, 13

6 C.F.R. §5.4 ................................................................................. 6

Federal Rule of Civil Procedure Rule 12 ...................................... vi, 5

Federal Rule of Civil Procedure Rules 12(b)(6) ............................. 5

Federal Rule of Civil Procedure 32(b) ......................................... 12

## NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

PLEASE TAKE NOTICE that, on August 8, 2023 at 11:00 a.m., as soon thereafter as they may be heard, Defendants U.S. Department of Homeland Security, U.S. Department of Homeland Security Office of Inspector General, and U.S. Immigration and Customs Enforcement (collectively, "Defendants") will, and hereby do, move this Court for an order entering judgment in Defendants' favor on the pleadings. This motion will be made in the George E. Brown, Jr. Federal Building and Courthouse before the Honorable Shashi H. Kewalramani, United States Magistrate Judge, located at 3470 Twelfth Street, Riverside, CA 92501, Courtroom 3 or 4, 3rd Floor.

Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(c) on the ground that Plaintiff American Civil Liberties Union of Southern California ("ACLU SoCal") failed to submit a request to Defendants under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, that "reasonably describes" the records sought, and therefore, Plaintiff fails to plausibly allege a violation of the FOIA.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which was held on June 21, 2023.

Dated: July 5, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section


 /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attorneys for Defendants

vi

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

Federal agencies are only required to respond to Freedom of Information

4

("FOIA") requests that "reasonably describe[]" the records requested. *See* 5 U.S.C.

5

§ 552(a)(3)(A). Plaintiff's FOIA requests fail to do so because they are impermissibly

6

overbroad in their scope. Not only does Plaintiff seek nine overly broad categories of

7

records, but within each category it relies on its own specially defined and expansive

8

definitions such that it cannot be said the requests provide a reasonable description

9

enabling Defendants to locate the requested records. Compounding the requests'

10

deficiencies, many are "springing requests" that would necessarily require Defendants to

11

not only try to locate responsive records as to certain requests but then engage in an

12

evaluation of those records to formulate further searches to respond to other categories

13

included within the requests. This is improper and seeks to put on Defendants

14

obligations not otherwise imposed under the FOIA.

15

Because Plaintiff has failed to plausibly allege a FOIA violation, Defendants are

16

entitled to judgment on the pleadings.

17

**II.   STATEMENT OF FACTS & PROCEDURAL HISTORY**

18

On April 29, 2022, Plaintiff submitted a FOIA request to Defendants seeking "any

19

and all records that were prepared, received, transmitted, collected, and/or maintained by

20

Immigration and Customs Enforcement ("ICE") or the Department of Homeland

21

Security ("DHS") that describe, refer, or relate to the release of hospitalized detainees

22

from custody prior to their death; any records related to release of individual detainees

23

once hospitalized; and any records related to the death of such detainees after their

24

release from custody, including any communications or investigations" Dating from

25

January 1, 2016. Dkt. 1-1 at 3-4.

26

In that request, Plaintiff specified that it was seeking records in the following nine

27

categories:

28

1. Any and all documents, without limitation to date, including any

1

communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals.

| Name | County of Origin | Approximate Date of Death | ICE Detention Facility Prior to Hospitalization and Death | Location at Death |
|------|------------------|---------------------------|-----------------------------------------------------------|-------------------|
| Teka Gulema | Ethiopia | January 18, 2016 | Etowah County Detention Center, Alabama | Riverview Medical Center, Gadsden, AL |
| Johana Medina Leon | El Salvaor | May 23-June 1, 2019 | Otero County Processing Center, New Mexico | Del Sol Medical Center, El Paso, TX |
| Jose Ibarra Bucio | Mexico | March 21, 2019 | Adelanto ICE Processing Center, California | Loma Linda University Medical Center, Loma Linda, CA |
| Martin Vargas Arellano | Mexico | March 6, 2021 | Adelanto ICE Processing Center, California | St. Judge Medical Center, Fullerton, CA |

2. Any and all DHS OIG reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OIG reports of investigation.

3. Any and all ICE OPR reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OPR reports of investigation.

4. Any and all documents and communications, including ICE and IHSC directives, policies, procedures, protocols, or trainings that contain guidance, instructions, or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities. Detainees specified in (a) and (b) above shall include those being treated for COVID-19 during their hospitalization or

2

treatment at external healthcare providers or facilities.

5. Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

6. Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

7. Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or ICE OPR that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

8. Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of

3

hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

9. Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment[.]

Dkt. 1-1 at 5-7.

In regard to the categories sought, Plaintiff defined the scope with overly broad terms and definitions. *See id.* at 1-1 at 4-5. And the requests were not limited to certain individuals, offices, or divisions, but encompass all of ICE and DHS OIG if not also DHS. ICE is defined as "Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein." *Id.* at 4. Similarly, DHS OIG is defined as the "Department of Homeland Security Office of Inspector General and any component and offices therein." *Id.* at 5. Although some requests relate to certain named detainees, most of the requests seek records regarding detainees more broadly, as Plaintiff defined "detainee" as "any person detained or formerly detained in an immigration facility or holding facility." *Id.* In turn, "immigration detention facility" is defined broadly as "Service Processing Centers, Contract Detention Facilities, Family Residential Facilities, Intergovernmental Service Agreement (IGSA) Facilities, Dedicated Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental Agreement (IGA) Facilities, and any other facilities where individuals may be held in ICE custody for 72 hours or more." *Id.*

Both ICE and DHS OIG acknowledged receipt of Plaintiff's request on May 16, 2022. Dkt. 1-2, 1-3. Two months later, after not receiving responsive documents, Plaintiff filed this action. Dkt 1. In October 2022, Plaintiff filed its operative First Amended Complaint, adding DHS OIG as a defendant. Dkt. 24. After Defendants

4

1    answered, Dkt. 26, the parties filed their Joint Rule 26(f) Report. Dkt. 28 at 9.[1]

2    **III.    LEGAL STANDARD**

3        **A.    Fed. R. Civ. P. 12(c)**

4            "After the pleadings are closed but within such time as not to delay the trial, any

5    party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rules 12(b)(6)

6    and 12(c) are substantively identical. *See* William W. Schwartzer, A. Wallace Tashima

7    & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:319. For a Rule 12(c)

8    motion, the Court accepts the allegations of the non-moving party as true. *Hal Roach*

9    *Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *Doleman v.*

10   *Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). If the complaint fails to

11   articulate a legally sufficient claim, the complaint should be dismissed or judgment

12   granted on the pleadings. *Id*. Courts do not "accept as true allegations that are merely

13   conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

14   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even when a court accepts

15   facts as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which

16   establish that he cannot prevail on his … claim." *Weisbuch v. Cnty. of Los Angeles*, 119

17   F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

18           A court may consider the allegations in the complaint as well as documents

19   attached to the complaint, incorporated by reference in the complaint, matters of public

20   record, or facts otherwise subject to judicial notice in ruling on a Rule 12 motion. *See*

21   *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Vasserman v. Henry*

22   *Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 942 (C.D. Cal. 2014). "A court may,

23   however, consider certain materials…without converting the motion to dismiss into a

24   motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

25

26           [1] In that report, Defendants observed the similarity between the FOIA request at
27   issue here and a nearly identical one submitted by the ACLU in *ACLU v. DHS*, D.C.
     District Court Case No. 1:21-cv-02627. Facing Defendants' Motion to Dismiss in that
28   case, the ACLU voluntarily dismissed that action on June 28, 2022. *See id*. at Dkt. 17.
     Just two weeks later, Plaintiff filed this action.

5

1   2003).[2] For instance, a court may take judicial notice of material even if not physically

2   attached to the complaint if its authenticity is uncontested and it is necessarily relied on

3   within the complaint. *Lee v. City of L.A.*, 250 F.3d 266, 288 (9th Cir. 2001), *overruled on*

4   *other grounds, Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002);

5   *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011); *Knievel v.*

6   *ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

7   **IV.   ARGUMENT**

8   　　　**A.   The First Amended Complaint Fails to State a Claim that Defendants**

9   　　　　　**Are Improperly Withholding Records Responsive to a "Reasonably**

10   　　　　　**Described" FOIA Request.**

11   　　　The FOIA provides that an agency must respond to any request for records that

12   "(i) reasonably describes such records and (ii) is made in accordance with published

13   [agency] rules" by promptly making the requested records available, 5 U.S.C.

14   § 552(a)(3)(A), or, if applicable, by invoking one of FOIA's exemptions. *Id.* § 552(b).[3]

15   "An agency's disclosure obligations are not trigged, however, until it has received a

16   proper FOIA request in compliance with [the agency's] published regulations." *See*

17   *Burrus v. U.S. Dep't of Agric. Forest Service,* 2023 WL 3456832, at *2 (E.D. Cal. May

18   15, 2023) (quoting *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 26 (D.D.C.

19

20   　　　[2] During the parties' L.R. 7-3 conference, Plaintiff stated it intends to ask the
Court to convert this motion to one for summary judgment. This is unnecessary because

21   any post-filing discussions between the parties are not relevant to the scope of this
motion. *See Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 62 (D.D.C.

22   2013) ("[Plaintiff's] realization that its requests may have been too broadly framed is not
relevant to the question before this Court: the sufficiency of the requests submitted to the

23   Defendant Agencies challenged for insufficient (or no response) in the Complaint.")
(citation); *see also Porter v. CIA*, 579 F. Supp. 2d 121, 128 n. 7 (D.D.C. 2008)

24   (cautioning against "[a]llowing a plaintiff who circumvents a detailed administrative
scheme to seek judicial review in federal court.")

25   　　　[3] DHS's regulations also require that DHS and its components produce non-
exempt records after a requestor reasonably describes the records sought. 6 C.F.R.

26   §§ 5.3(b), 5.4. However, this Court need not analyze whether Plaintiff's request violates
DHS regulations because if the request violates FOIA's "reasonably describes"

27   requirement, it also violates those regulations. *See Am. Center for Law and Justice v.*
*U.S. Dep't of Homeland Security*, 573 F. Supp. 3d 78 (D.C. 2021) (citing *Freedom*

28   *Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 60 n.1 (D.D.C. 2013)). "DHS rules
incorporate the Act's "reasonably describes" requirement." *Id.* (citing 6 C.F.R. § 5.3(b)).

2008). Thus, a plaintiff fails to state a FOIA claim where its request does not reasonably describe the records sought. *See Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(3)(A)) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records."). Although "courts have been wary to prohibit this requirement from becoming a loophole through which federal agencies can deny the public access to legitimate information, it has been held that broad, sweeping requests lacking specificity are not permissible." *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978).

The history of 5 U.S.C. § 552(a)(3)(A) helps clarify the meaning of the term "reasonably describes" as it applies to FOIA. The counterpart to Section 552(a)(3)(A) that existed in the 1967 enactment of FOIA stated: "Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person." Pub. L. No. 90-23, 81 Stat. 54 (1967). In *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), the D.C. Circuit explained that the "identifiable records" requirement "calls for a reasonable description enabling the Government employee to locate the requested records." *Id*. at 612 (quoting *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970)). Accordingly, it held that a request—for "all unpublished manuscript decisions of the Patent Office, together with such indices as are available"—was not a request for "identifiable records" because "the contours of the records . . . described are so broad in the context of the Patent office files as not to come within a reasonable interpretation of 'identifiable records[.]'" *Id*. at 610, 613.

Congress inserted the term "reasonably describes" "in 1974 in replacement of the words 'request for identifiable records,' the terminology of Section 3 [of FOIA] as originally enacted in 1967." *Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990). A request "reasonably describes" agency records when it "would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of

7

1    the request to locate the record with a reasonable amount of effort."[4] *Id*. at 545 n.36. The

2    professional-employee test is an objective test, and courts are equipped to make this

3    determination by resort to the FOIA request alone. *See Dale v. IRS*, 238 F. Supp. 2d 99,

4    105 (D.D.C. 2002) (noting that document request was deficient "on its face"). In other

5    words, agencies need not introduce evidence showing that, based on a particular

6    document request, their professionals are incapable of locating the requested records

7    with a reasonable amount of effort. *See Borden v. FBI*, No. 94-1029, 1994 U.S. App.

8    LEXIS 16157, at *1-2 (1st Cir. 1994) (per curiam) ("[T]he request which plaintiff

9    allegedly presented . . . does not reasonably describe the records sought. Since the

10   complaint shows on its face that the plaintiff did not present a proper request, we need

11   not consider defendant's remaining arguments." (citations omitted)). Ultimately, FOIA

12   does not require an agency to engage in such "an all-encompassing fishing expedition

13   . . . at taxpayer expense." *Dale*, 238 F. Supp. 2d at 105.

14          Thus, the FOIA requests here, along with the operative First Amended Complaint,

15   must be analyzed in relation to whether the requests satisfy the requirements of a

16   reasonably described request for records.

17          1.    **Plaintiff's FOIA Requests are too Vague and Overbroad to**
18                **Reasonably Describe the Records Sought**

19          "Broad, sweeping requests lacking specificity are not permissible," nor are

---

[4] The Attorney General's Memorandum on the 1974 Amendments to FOIA promulgated by Attorney General Edward H. Levi (the "Attorney General's Memorandum") in 1975 contains the Executive Branch's contemporaneous interpretation of the 1974 amendments to FOIA, which the Supreme Court and the D.C. Circuit have viewed as "a reliable guide in interpreting FOIA." *Chiquita Brands Int'l, Inc. v. SEC*, 805 F.3d 289, 295-96 (D.C. Cir. 2015) (quoting *FCC v. AT&T Inc.*, 562 U.S. 397, 409 (2011)). The Attorney General's Memorandum explains the change from "identifiable" to "reasonably describes" as "serv[ing] basically to clarify rather than to alter the law as it has been understood by several courts and many agencies." Attorney General's Mem. at 22. "It is not enough that the request provide enough data to locate the record; it must enable it to be located in a manner which does not involve an unreasonable amount of effort." *Id*. at 23. The Attorney General's Memorandum was reprinted in the House Committee on Government Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974 (P.L. 93-502), 94th Cong., 1st Sess., 507, 518-19 (Jt. Comm. Print 1975).

requests that would require the agency to "engage in quite a bit of guesswork to execute." *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)). Even a cursory review reveals that most requests – including Nos. 1, 4 & 8 – do not request identifiable records at all but request "any and all" documents and "communications" "relating to," "regarding," "related to," or that "identify" certain subjects. Requests that include language such as "relate in any way to" are too vague. *See, e.g.*, *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. Feb. 27, 2013) (holding request for " 'all' records that 'relate to' each subject area" "overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion") (citation omitted); *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) ("[T]here is a difference in kind between requests for documents that 'mention' or 'reference' a specified person or topic and those seeking records 'pertaining to,' 'relating to,' or 'concerning the same.'"); *Latham v. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (a request for records "that pertain in any form or sort to [the plaintiff]" was "overly broad"); *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (request for documents "that refer or relate in any way to [the plaintiff]" did not reasonably describe the records sought).[5]

To illustrate the vagueness of Plaintiff's requests, Request No. 8 seeks "[a]ny and all documents, communications, and other records . . . that identify detainees who were hospitalized or transferred for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized . . . . Requested information includes, but is not limited to . . . name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody." Putting aside the potential applicability of

---

[5] Nor is the argument that Plaintiff's expansive definitions of "communications" and "documents" tracks the use of those terms in civil discovery under the Federal Rules of Civil Procedure. Putting aside for the moment that this is FOIA and not civil discovery, those definitions "only further broaden" the request. *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 85.

FOIA exemptions, it is unclear whether the search should seek documents limited to records showing that the reason for release was because of or "due to COVID-19" or whether the search should seek documents showing that a detainee was released from custody while in the process of receiving off-site treatment for COVD-19 at the time of release or whether the search should seek documents showing that a detainee was released from custody who had at one point been treated off-site "due to COVID-19." And because the terms of the request seek "any and all" records that "identify" the release of detainees, that would appear to encompass documents about the release (i.e., logistics, notices to appear) that do not themselves reflect a COVID-19 diagnosis or treatment. Plaintiff's broad descriptions do not allow the agency "to determine precisely what records are being requested." *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (quoting *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996)).

Second, the FOIA requests are exceedingly and impermissibly broad. "Even where a request 'identif[ies] the documents requested with sufficient precision to enable the agency to identify them,' the request may still fail to 'reasonably describe[ ]' the records sought if it is 'so broad as to impose an unreasonable burden upon the agency.'" *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 163 (D.D.C. 2013) (quoting *Am. Fed'n Gov't Emps. ("AFGE") v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990)). "[I]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. 1990). "Agencies must read FOIA requests as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and thus are not obligated to construe FOIA requests to be less vague and less burdensome than the text of the requests.

According to the plain language of the FOIA requests here, Plaintiff requests that Defendants search and review the records of any and all employees that might possess records "regarding" the foregoing subjects or "identify" "detainees." Plaintiff "does not try to cabin [its requests] to particular employees at those agencies." *Am. Ctr. for L. &*

*Just. v. U.S. Dep't of Homeland Security,* 573 F. Supp. 3d 78, 86 (D.D.C. 2021). ICE alone has about 20,000 personnel. *See* ICE's Mission, at https://www.ice.gov/mission. Further, the FOIA requests encompass any "immigration detention facility," which is defined to include not just ICE-run facilities, but "contract detention facilities" run by private companies. Dkt. 24-1 at 5. The definition also includes "intergovernmental service agreement facilities," which are state, county, and local jails that by agreement with ICE, house detainees. *See Sanchez v. Decker*, Civ. A. No. 19-8354, 2019 WL 6311955, at *5 n.4 (S.D.N.Y. 2019). Plaintiff's national affiliate has estimated that there are over 200 immigration detention facilities.[6] Plaintiff's requests, therefore, seek in essence "an all-encompassing search of the records of every field office" even though "the FOIA does not mandate that [an agency] comply" with such a request. *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978); *see also AFGE*, 907 F.2d at 208-09 (holding request that "would require the Bureau to locate 'every chronological office file and correspondent file, internal and external, for every branch office, staff office' does not "'reasonably describe[]' a class of documents subject to disclosure"). And almost all the requests—Nos. 1, 4 & 8 —seek "[a]ny and all documents and communications" regarding certain subjects. "The phrase 'any and all' is capacious, involving a huge number of potentially responsive documents." *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 85; *Dale*, 238 F. Supp. 2d at 104 ("FOIA requests for all documents concerning a requester are too broad.").

As drafted, the requests do not reasonably describe records that can be located without an unreasonable burden. Request No. 8, for example, requests "any and all" documents, communications, and other records that "identify" any "detainees" (and by definition, from any "immigration detention facility") "hospitalized"[7] and "subsequently

---

[6] ACLU, Why We're Joining the Call to Shut Down ICE Detention Centers, *at* https://www.aclu.org/news/immigrants-rights/why-were-joining-the-call-to-shut-down-icedetention-centers/.

[7] Defendants' use only the term "hospitalized" but the FOIA requests also encompass detainees "transferred from detention for off-site medical care."

1    released from ICE custody while hospitalized." Responding to this request would be a

2    "massive undertaking," *see Nat'l Sec. Couns.. v. CIA*, 969 F.3d 406, 410 (D.C. Cir.

3    2020), made all the more challenging by the fact that it places on the agency the onus of

4    determining what records "regard[]" these detainees. Layered on top, in Request No. 9,

5    Plaintiff seeks the "bills, invoices, charges, or payment" for all the hospitalizations.

6         Other requests have separate issues. Although Request Nos. 5 and 8 do not seek

7    records "regarding" certain subjects, they seek "any and all" records that "identify

8    detainees who were hospitalized" along with the dates of departure from detention,

9    discharge from hospital, and return to detention; the date of and reason for release; the

10   detention facility; and the medical condition or reason for hospitalization. Request No. 8

11   seeks this and additional information. These requests resemble the request in *Krohn v.*

12   *Dep't of Justice*, 628 F.2d 195, 196 (D.C. Cir. 1980), which sought a variety of

13   information about "each and every criminal case" in which judgment was entered

14   pursuant to Fed. R. Crim. P. 32(b). The D.C. Circuit held that the request was "too

15   vague" and explained that "[a] reasonable description requires the requested record to be

16   reasonably identified as a record not as a general request for data, information and

17   statistics to be gleaned generally from documents which have not been created and

18   which the agency does not generally create or require." *Id*. at 198. The Court continued

19   that "the request is so broad and general as to require the agency to review the entire

20   record of 'each and every . . . criminal case' in order to determine whether it contains

21   any evidence of the data, information or statistics that appellant requests. Such request is

22   fatally flawed by lack of a reasonable description." *Id*. Likewise here, Plaintiff's requests

23   as drafted would require Defendants to review each and every case and record of a

24   detainee who was hospitalized to effectively compile the requested information. But "an

25   agency is not required to 'answer questions disguised as a FOIA request,' . . . nor

26   conduct research in response to a FOIA request." *Hall & Assocs. v. EPA*, 83 F. Supp. 3d

27   92, 102 (D.D.C. 2015) (citations omitted).

28        Request Nos. 2 and 3 also do not reasonably describe the records sought and are

12

impermissibly vague. These requests seek "any and all DHS OIG reports of investigation" or "ICE [Office of Professional Responsibility] reports of investigation" "that are identified in any of the records responsive to Request #1." One could characterize these as "springing" FOIA requests. Thus, Plaintiff requests Defendants not only produce records responsive to Request No. 1 but review those records to determine whether further searches should be conducted based on the content of those records. But "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives*, 720 F. Supp. at 219. Further, the FOIA requests do not define a "report of investigation" or what would constitute "identif[ying]" those reports such that there would be a trigger for Defendants to have to search for and produce them. And again, Request Nos. 2 and 3 are based on the content of "records responsive to Request #1," which ask for records "relating to" the hospitalization, death, decision to release, or release of four named individuals.

The above highlights the issues Defendants have confronted in attempting to respond to the FOIA requests here. Indeed, an agency employee familiar with the requests' subject matter would be unable to locate the records with a "reasonable amount of effort."

For Plaintiff's part, they are apt to argue that the requests satisfy the "linchpin inquiry" when evaluating requests for reasonable description, which is "whether the agency is able to determine precisely what records (are) being requested." *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks omitted); *see* 6 C.F.R. § 5.3(b) (description must allow personnel to locate records "with a reasonable amount of effort" through an "organized, non-random search"). But in advancing this argument, Plaintiff necessary would be asking the Court to do what it cannot – that is, not "read the FOIA requests as drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984). Plaintiff may also try to point to the Court's case management order and the fact that productions have occurred. But to accept Plaintiff's anticipated argument that because there is a case management order requiring monthly productions it necessarily

leads that the requests were reasonable effectively punishes Defendants for acting in good faith to try to surmise what Plaintiff seeks with its overbroad requests rather than litigating in the first instance. (But again, such an inquiry would also enlarge the scope of this motion which looks only on the FOIA request as drafted.)

Ultimately, this motion should be granted because the FAC fails to state a claim that Defendants improperly withheld documents responsive to FOIA requests that "reasonably describe" the records sought. As explained, the requests are vague (i.e., "regarding" any detainees), unreasonably burdensome (i.e., "any and all" records agency-wide involving any "immigrant detention facility" across the country), and impermissibly place the onus on Defendants to become wide-ranging investigators and researchers (i.e., collecting data on all hospitalized detainees) rather than producers of identifiable, existing records. Accordingly, an agency employee familiar with the requests' subject matter would be unable to locate the records with a "reasonable amount of effort."

## V.  CONCLUSION

For the reasons discussed above, Defendants request that the Court grant this motion and enter judgment in their favor. Such a ruling would not foreclose Plaintiff from submitting a new proper FOIA request to obtain the records they seek.

Dated: July 5, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section


 /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attorneys for Defendants

14