E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal. Bar No. 187101)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989 | 8790
    Facsimile: (213) 894-7819
    E-mail: Joseph.Tursi@usdoj.gov
          Jason.Axe@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.<br><br>Defendants. | No. 2:22-cv-04760-SHK<br><br>**DECLARATION OF FERNANDO PINEIRO**<br><br>Honorable Shashi H. Kewalramani<br>United States District Judge |

1

EXHIBIT 1

3

**DECLARATION OF FERNANDO PINEIRO**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act Office (the "ICE FOIA Office"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2. As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3. I make this declaration in my official capacity in support of Defendant's ICE's Supplemental Status Report in the above-captioned action. I make this based on my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

**RECENT STATISTICS REGARDING FOIA REQUESTS SUBMITTED TO ICE**

4. As of July 2023, the ICE FOIA Office is processing approximately 29,131 open FOIA requests addressing a backlog of 26,256 FOIA requests. There are approximately 151 open federal district court cases, and 69 cases in active record production.

5. In fiscal year ("FY") 2020, the number of FOIA requests the ICE FOIA Office handled dramatically increased to over 100,000 from approximately 64,000 in FY 2019. Since FY 2020, that number has continued to increase, with the ICE FOIA Office handling approximately 105,000 requests

1

EXHIBIT 1
4

in FY 2021 and over 110,000 requests in FY 2022. This spike in ICE FOIA's workload is attributed to an increase in the number of requests from individuals for documents in their immigration file coupled with increased public interest in the Department's implementation of Presidential and/or Executive Orders.[1]

**COMPLEXITY AND VOLUME OF FOIA REQUESTS RECEIVED BY ICE**

6.  In addition to the increasing volume of FOIA requests, ICE has also experienced an increase in the complexity of FOIA requests, both in terms of volume and substance. For example, the ICE FOIA Office frequently receives requests with 50 to 60 sub-parts comprising several pages, searches of numerous program offices, and a universe of records that has thousands of pages to review and process. These FOIA requests take considerably longer to process due to extensive searches and the intricacy of the documents and/or data produced. In FY 2019, one FOIA requester alone – a data clearing house – filed more than 370 FOIA requests seeking extensive data extracts. In FY 2020, the same requester filed more than 480 similar FOIA requests and over 520 in FY 2021.

7.  In response to the increasingly heavy workload, the ICE FOIA Office has adopted the court-sanctioned practice of generally handling backlogged requests on a "first-in, first-out basis," which ensures fairness to all FOIA requestors by not prioritizing one request over another. This practice applies to requests that are in litigation. The reason for this is that the principle of fairness to all requestors would be jeopardized were a requestor permitted to "jump the line" simply by virtue of filing a case in U.S. District Court. Generally, the only exception to this is where a court orders processing at rates above the ICE FOIA Office's current processing rate for all cases.

**CURRENT WORKLOAD OF THE ICE FOIA LITIGATION PROCESSING UNIT**

8.  The increasing complexity and volume of ICE FOIA's workload and backlog (*see* paragraphs 5-8) creates the potential that some FOIA requests could become subject to litigation in U.S. District Court.

9.  The ICE FOIA Litigation Processing Unit's workload has increased such that as of July 2023, it is handling 151 active FOIA litigations, of which, 69 litigations have monthly rolling productions. ICE's normal processing rate for cases in litigation is 750 pages or 7.5 minutes of media

---

[1] The FOIA Project Freeing Information through Public Accountability (December 14, 2021) http://foiaproject.org/2021/12/14/november-2021-foia-litigation-with-five-year-monthly-trends/.

files, per month, per case. This means, on average, the ICE FOIA Litigation Unit is currently processing approximately 27,000 pages of potentially responsive records, and producing approximately 18,000 pages of responsive records each month.

10. The ICE FOIA Litigation Processing Unit also drafts, assigns, and tracks any and all searches for responsive documents concerning FOIA litigations. The FOIA litigation search taskings frequently span dozens of ICE program and field offices and require the Unit to keep track of hundreds of thousands of responsive records, as well as the documentation from searches of the program offices and field offices.

11. The ICE FOIA Litigation Processing Unit has collateral duties, in addition to processing documents pursuant to litigation. For example, the processing unit prepares various reports for statistical tracking, responds to Congressional inquiries and requests for records, redacts Prison Rape Elimination Act reports, sends out FOIA Exemption (b)(4) submitter notices, and manages litigation consults and referrals from other agencies. Additionally, the processing unit supports attorneys in the ICE Office of the Principal Legal Advisor with federal FOIA litigation, by assisting in the creation of Vaughn indexes, reviewing declarations, and coordinating on joint status reports to the court. These collateral duties are within the scope of the FOIA and are required.

12. To meet its obligations for all cases in litigation by ensuring that all of the FOIA matters progress, and each requester receives a response, the ICE FOIA Office typically cannot process more than 750 pages or 7.5 minutes of media files per month per case. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters.

13. Moreover, the ICE FOIA Office typically cannot *produce* a set number of pages per month. Depending on the volume of records located in the search tasking phase of the administrative stage and/or FOIA litigation, if the Court would order ICE FOIA to *produce rather than a review/process* a certain number of pages per month, it is entirely plausible that the processors would have to review hundreds, or even thousands, of additional pages on top of the 500 pages that are attainable, in order to get to the requisite *production* number. ICE FOIA is incapable of achieving this outcome based on finite resources competing priorities, litigation and non-litigation deadlines, and the sheer volume of overall work.

14. Due to the FOIA Office's limited resources, requiring ICE to process significantly more pages per month in this case, would divert resources to Plaintiff's FOIA requests at the expense of other FOIA requesters. ICE respectfully requests that the Court issue a scheduling order that is consistent with the approach outlined above.

**PROGRESS ON THE INSTANT CASE**

15. ICE has conducted multiple searches in response to Plaintiffs' FOIA requests in this current lawsuit and has gathered approximately 41,000 additional potentially responsive pages, which need to be further narrowed based upon parameters hopefully to be jointly set by Plaintiffs and Defendant.

16. The current processing rate is 1,000 pages per month. ICE has agreed to de-duplicate the remaining records, as well as conduct email threading in an attempt to reduce the number of potentially responsive pages.

17. The process of de-duplication and email threading first involves pulling all the records into the Relativity share drive. Once the records are there, the workspace/profile is prepared for the de-duplication process. We proceed to select the custodian of records and load the records from the share drive that belong to that Custodian. A script is selected and the system then finds documents and family of documents (attachments) within that batch that are duplicates. For the system to mark a document as a duplicate, the documents must be the same.

18. When this process is completed, the analytic structure is moved to complete the threading of emails. An email thread is a single email conversation that starts with an original email, the beginning of the conversation, and includes all of the subsequent replies and forwards pertaining to that original email. The analytics engine uses a combination of email headers and email bodies to determine if emails belong to the same thread. Data inconsistencies can still occur, such as timestamp differences generated by different servers. The Analytics engine then determines which emails are inclusive, meaning that it contains unique content and should be reviewed. The steps include:

   a. Segmenting emails into the component emails, such as when a reply, reply-all, or forward occurred.
   b. Examining and normalizing the header data, such as senders, recipients, and dates. This happens with both the component emails and the parent email, whose headers are usually passed explicitly as metadata.

    c. Recognizing when emails belong to the same conversation, referred to as the Email thread group, using the body segments along with headers, and determining where in the conversation the emails occur. Email thread groups are created using the body segments, Email From, Email To, Email Date, and Email Subject headers.

    d. Determining inclusiveness within conversations by analyzing the text, the sent time, and the sender of each email.

19. After completing an email threading operation, search terms and date ranges can be applied to further narrow the scope. When records are ready to be extracted, the RDC (Relativity Desktop Client) system is used to move the results from Relativity to the litigation folder in the share drive in preparation for processing and production.

20. De-duplication and email threading should reduce the volume of pages and eliminate duplicates of both emails and attachments. In some instances, however, duplicate attachments may still be found even after the process has been completed. This could be for reasons as little as a variation on the name or something that the system will not read as a duplicate. For example, if email headers contain typos or extra characters, the operation does not recognize the text as email header fields and the files are not recognized as duplicate email files. If documents have been produced with Bates stamps in the text, this results in extra inclusive flags. If some emails in a thread contain extra text in the bottom segment, most commonly found from confidentiality footers being applied by a server, this results in extra inclusive flags and might not read as a duplicate.

21. Due to the FOIA Office's limited resources, requiring ICE to process significantly more pages per month in this case would divert resources to Plaintiffs' FOIA requests at the expense of other FOIA requesters. ICE respectfully requests that the Court issue a scheduling order to allow the agency to process no more than 1,000 pages moving forward in this case, which is well above the normal processing rate.

1   I declare under penalty of perjury under the laws of the United States of America that the foregoing is
2   true and correct to the best of my knowledge and belief.

5        Executed on _____, at Washington, D.C.

FERNANDO PINEIRO JR
Digitally signed by FERNANDO PINEIRO JR
Date: 2023.07.11 15:06:34 -04'00'

_____
Fernando Pineiro FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009