LABONI A. HOQ (SBN 224140)
*laboni@hoqlaw.com*
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

MICHAEL KAUFMAN (SBN 254575)
*MKaufman@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiffs
*(additional counsel information on next page)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> *Defendants*. | Case No. 2:22-CV-04760-SB-AFM <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> (Filed concurrently with Declaration of Laboni Hoq and Exhibits Thereto) <br><br> Hearing Date:  August 8, 2023 <br> Hearing Time: 11:00 a.m. <br> Courtroom: *Via Zoom* <br> Honorable Shashi H. Kewalramani <br> United States Magistrate Judge |

EUNICE CHO (*pro hac vice*)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930

Attorneys for Plaintiff

# **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.....................2

        A.      ICE Releases Detained Immigrants Facing Imminent Death
                from Custody, Avoiding Investigation and Accountability.................2

        B.      Procedural History .............................................................................4

III.    LEGAL STANDARD .....................................................................................7

IV.     ARGUMENT ..................................................................................................8

        A.      Defendants Had a Duty to Confer in Good Faith with Plaintiffs
                Before Refusing to Respond to the FOIA Request..............................8

        B.      The Plaintiff's FOIA Request Provides Reasonable and Specific
                Descriptions of the Requested Records. .............................................11

        C.      Defendants' Undue Burden Argument Is Flawed. .............................15

V.      CONCLUSION ............................................................................................21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU of N. Cal. v. Dep't of Just.*,
    No. 12-CV-04008-MEJ, 2014 WL 4954121 (N.D. Cal. Sept. 30,
    2014) ................................................................................................ 13, 16

*Atiqi v. Acclaim Technical Servs.*,
    No. 14-00628, 2014 WL 12965984 (C.D. Cal. Jul. 3, 2014) ...................... 8

*Biear v. Att'y Gen. U.S.*,
    905 F.3d 151 (3d Cir. 2018) ................................................................ 19

*Borden v. FBI*,
    No. 94-1029, 1994 U.S. App. LEXIS 16157 (1st Cir. 1994)
    (unpublished, per curiam) ..................................................................... 18

*Brayton v. Office of U.S. Trade Representative*,
    641 F.3d 521 (D.C. Cir. 2011) .............................................................. 4

*Bristol-Myers Co. v. FTC*,
    424 F.2d 935 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 824 (1970)..................... 9

*Charles v. United States*,
    No. CV 21-1983 (BAH), 2022 WL 951242 (D.D.C. Mar. 30, 2022)............... 10

*Colgan v. Dep't of Just.*,
    No. 14-cv-740, 2020 WL 2043828 (D.D.C. Apr. 28, 2020) ...................... 16

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976) ............................................................................ 7

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
    132 F.3d 526 (9th Cir. 1997)................................................................. 7

*Fekete v. Uniworld River Cruises, Inc.*,
    No. cv-15-0211, 2018 WL 6332284 (C.D. Cal. July 10, 2018)........................ 8

*Ferri v. Bell*,
    645 F.2d 1213 (3d Cir. 1981), *modified on other grounds*, 671 F.2d
    769 (3d Cir. 1982) .............................................................................. 8

ii

*Fraihat v. ICE*,
  445 F. Supp. 3d 709 (C.D. Cal. 2020), *order clarified*, No.
  EDCV191546, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020) .............................. 21

*Getman v. NLRB*,
  450 F.2d 670 (1971) ......................................................................... 17

*Hall v. CIA*,
  881 F. Supp. 2d 38 (D.D.C. 2012) .................................................... 19

*Immigrant Def. Project v. U.S. Immigration & Customs Enf't*,
  208 F. Supp. 3d 520 (S.D.N.Y. 2016) .................................................. 9

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ......................................................................... 16

*Leopold v. Dep't of Justice*,
  130 F. Supp. 3d 32 (D.D.C. 2015) ....................................................... 9

*Nat'l Sec. Couns. v. CIA*,
  960 F. Supp. 2d 101 (D.D.C. 2013) .................................................... 18

*Nation Magazine v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) .............................................................. 18

*New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. &
  Customs Enf't*,
  373 F. Supp. 3d 16 (D.D.C. 2019) ........................................... 9, 10, 14

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ........................................................................... 7

*Parker v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys*,
  852 F. Supp. 2d 1 (D.D.C. 2012) ....................................................... 10

*Pub. Emps. for Env't Resp. v. U.S. Env't Prot. Agency*,
  314 F. Supp. 3d 68 (D.D.C. 2018) ..................................................... 13

*In re Rothery*,
  143 F.3d 546 (9th Cir. 1998) ............................................................... 8

*Ruotolo v. Dep't of Justice*,
  53 F.3d 4 (2d Cir. 1995) ............................................................... 8, 10

iii

*Sanchez v. Decker*,
  No. 19-cv-8354, 2019 WL 6311955 (S.D.N.Y. 2019)........................ 19

*Shapiro v. Cen. Intel. Agency*,
  170 F. Supp. 3d 147 (D.D.C. 2016) ................................ 13, 15, 18, 19

*Tereshchuk v. Bureau of Prisons*,
  67 F. Supp. 3d. 441 (D.D.C. 2014) ........................................ 18

*Transgender L. Ctr. v. Immigr. & Customs Enf't*,
  46 F.4th 771 (9th Cir. 2022) ............................................ 1, 7

*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990) ...................................... 17, 19

*United States v. Diebold, Inc.*,
  369 U.S. 654 (1992) ......................................................... 8

*Wolf v. CIA*,
  569 F. Supp. 2d 1 (D.D.C. 2008) ......................................... 18

*Yagman v. Pompeo*,
  868 F.3d 1075 (9th Cir. 2017) ...................................... *passim*

*Yeager v. Drug Enf't. Admin.*,
  678 F.2d 315 (D.C. Cir. 1982) ........................................... 16

**Statutes**

U.S.C. § 552(a)(3)(A)(i) ..................................................... 16

5 U.S.C. § 552(a)(3)(A) ...................................................... 11

5 U.S.C. § 552(a)(4)(B) ...................................................... 17

5 U.S.C. § 552(a)(6)(B)(iii)(II) ............................................. 16

**Other Authorities**

6 C.F.R. § 5.3 ................................................................ 2

6 C.F.R. § 5.3(b) (2022) ................................................ 9, 11

Fed. R. Civ. P Rule 12(c)............................................. *passim*

Fed. R. Civ. P Rule 12(d) ............................................ *passim*

1

Fed. R. Civ. P Rule 26(b) .............................................................................. 7

2

Fed. R. Civ. P. 56(a) ...................................................................................... 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

This case involves Plaintiff American Civil Liberties Union of Southern California's right to obtain records from government agencies Department of Homeland Security ("DHS"), the DHS Office of Inspector General ("OIG"), and Immigration and Customs Enforcement ("ICE") under the Freedom of Information Act ("FOIA"). Plaintiff's FOIA request ("Request") seeks information regarding an issue of significant public interest and importance: ICE's practice of releasing critically-ill detained immigrants from its custody shortly before their deaths, in an apparent effort to avoid accountability and reporting requirements. Plaintiff's request directly serves FOIA's purpose to "ensure an informed citizenry, promote official transparency, and provide a check against government impunity." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022).

Plaintiff's Request, which included nine numbered parts, sought information about four named individuals released from ICE custody on their death beds, as well as information about ICE's broader policies and practices related to releasing critically-ill detained people in this manner. Defendants failed to timely respond to the Request as required under statute. After Plaintiff filed suit, Defendants agreed to conduct a search, and began production on a schedule based on Plaintiff's understanding that Defendants had conducted a complete search for the entire Request. Several months later, however, Defendants admitted that they had only searched for records related to the four named individuals. They had not conducted *any* search for records in response to Parts 4 to 9 of the Request, which address ICE's broader policies and practices of releasing critically-ill detained people from custody. After Plaintiff requested that Defendants complete a search for those records, Defendants asked Plaintiff to provide suggested search terms and locations, which Plaintiff has done. The parties then engaged in multiple exchanges regarding search terms and locations. In spite of these efforts, and almost twelve months after Plaintiff filed its complaint, Defendants now argue in their Rule 12(c)

1

motion that they are not obligated to conduct any search, claiming that they cannot discern how to respond to the Request. Defs.' Mot. J. Pleadings, Dkt. 44 ("Defs.' Br.").

Defendants' motion fails. First, the government "has no right to resist disclosure because the request fails reasonably [to] describe records unless it has first made a good faith attempt to assist the requester in satisfying that requirement." *Yagman v. Pompeo*, 868 F.3d 1075, 1084 (9th Cir. 2017); *see also* 6 C.F.R. § 5.3 (requiring same). To the extent Defendants claim confusion regarding the terms of the Request, no confusion can credibly exist: Plaintiff has provided responses to each of Defendants' queries, and suggested search terms and locations at Defendants' behest. Second, on its face, the Request provides clear and specific descriptions of the requested records, that would "enable a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Yagman*, 868 F.3d at 1081. Defendants ignore clarifying information contained in the Request, and instead, focus on commonly used introductory and connector words that, they contend, render the requests indecipherable or overly broad. Third, Defendants complain—without support—that complying with the requests is unreasonably burdensome and will require the agencies to "become wide-ranging investigators." That is wrong, and is not a reason to dismiss the case at the pleading stage, particularly where there is ample reason to believe that responsive information exists and can be produced by knowledgeable agency personnel. Accordingly, the Court should deny the Defendants' motion for judgment on the pleadings.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     ICE Releases Detained Immigrants Facing Imminent Death from Custody, Avoiding Investigation and Accountability.

Media accounts have documented multiple occasions where ICE has released detained immigrants from custody on their death beds, and where ICE has

2

not publicly reported or disclosed the deaths of these individuals. First Am. Compl., Dkt. 24 ¶ 2-6.[1] For example, Martin Vargas Arellano, a 55-year-old immigrant held at ICE's Adelanto, California detention facility, died three days after ICE released him, while hospitalized, from its legal custody. A federal judge noted that it appeared that ICE had "actively conceal[ed]" his death from the court, raising "significant concerns regarding the Government's actions and lack of candor." *Id.* ¶ 6(a) (quoting Order, *Roman v. Wolf,* ED CV 20-00768-TJH, Dkt. 1031 (C.D. Cal. Mar. 20, 2021)). ICE similarly released Jose Ibarra Bucio, a 27-year-old man, after he suffered a brain hemorrhage and fell into a coma while detained at ICE's Adelanto, California facility. ICE released him from custody in the hospital, where he died four weeks later, when he was removed from life support. *Id.* ¶ 6(b). Teka Gulema was hospitalized for a bacterial infection contracted at ICE's Etowah, Alabama facility. After a year of hospitalization, he fell into a coma, at which point ICE released him from custody. He died soon after. *Id.* ¶ 6(d). Johana Medina Leon, a 25-year-old transgender asylum seeker, died from pneumonia four days after ICE released her from custody while hospitalized. *Id.* ¶ 6(c).

It is likely that the total number of deaths of detained immigrants is much higher than those reported by ICE, particularly in light of the COVID-19 pandemic. In June 2020, ICE detention facilities "had an average infection rate five times that of prisons and 20 times that of the general population." *Id.* ¶ 27. Media reports have noted that on multiple occasions during the pandemic, ICE released immigrants from detention on their death beds. *Id.* ¶ 29.

---

[1] Dkt. 24 ¶¶ 4-6 (citing Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, Los Angeles Times (May 13, 2022), available at https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees; Dan Glaun, *How ICE Data Undercounts COVID-19 Victims*, PBS Frontline (Aug. 11, 2020), https://www.pbs.org/wgbh/frontline/article/how-ice-data-undercounts-covid-19-victims/).

By releasing detained immigrants from custody shortly before their deaths, ICE can avoid requirements to publicly report detainee deaths, investigate circumstances of these deaths, and pay for medical costs. *Id.* ¶ 31. This practice also reinforces ICE's lack of transparency regarding the death of detained immigrants. A House Committee on Oversight and Reform report recently found that ICE "failed to release investigative reports on detainee deaths in custody in violation of federal law." *Id*. ¶ 33.

### B.     Procedural History

Plaintiff submitted its Request to ICE, DHS, and OIG on April 29, 2022. The Request included nine separate parts. Declaration of Laboni Hoq ("Hoq Decl."), Exhibit ("Exh.") A.[2] Parts 1-3 sought information about four named individuals whom ICE released from custody while on their deathbeds. *Id*. Parts 4-9 sought information about ICE's policies and practices of releasing critically-ill detainees from custody prior to their deaths, as well as information about other ICE detainees who met a similar fate. *Id*. ICE, DHS, and OIG failed to respond to the Request within the statutorily required deadline. On July 12, 2022, Plaintiff filed this lawsuit against DHS and ICE, Dkt. 1, and on October 4, 2022, added OIG as a Defendant in the operative First Amended Complaint. Dkt. 24.

During the Parties' Rule 26(f) Conference, ICE informed Plaintiff that it would begin to produce responsive records starting on December 21, 2022, in advance of the Rule 16 conference on January 10, 2023. Dkt. 28 at 13. ICE also indicated that it had conducted a search and identified a universe of approximately 5,550 responsive records. Dkt. 28 at 11, 13. The Parties agreed that ICE would process 1,000 of these records each month, and upon completion, that the Parties would commence summary judgement briefing on June 6, 2023. Dkt. 38, 40. Although FOIA cases are generally resolved on motions for summary judgment, Parties agreed to a trial date of January 17, 2023, to conclude the case. *Id*.; *Brayton*

---

[2] Hereinafter, all references to Exhibits are those attached to the Hoq Declaration.

*v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 ("Although the vast majority of FOIA cases can be resolved on summary judgment … this is not always the case.") (D.C. Cir. 2011). The Court memorialized this schedule in an Order on February 9, 2023. Dkt. 40.

At no time did ICE inform Plaintiff that it would not specifically search for or produce records responsive to Parts 4-9 of the Request. However, on February 1, 2023, after Plaintiff asked Defendants what search terms they had used, ICE revealed that it had conducted only a targeted search for Parts 1-3, and had conducted no additional search for Parts 4-9. Exh. B. The Parties thereafter engaged in several rounds of communication about ICE's failure to search for responsive records. Exhs. C-E. On March 29, 2023, Defendants claimed for the first time that Parts 4-9 of the Request were "vague" and "overbroad." Exh. F. Defendants also requested that Plaintiff provide search terms and locations for the searches. *Id*. at 6.

Plaintiff responded on April 14, 2023, providing authority as to why the Requests were sufficiently described, but also provided ICE with proposed search terms and locations for Parts 4-9. Exh. G. Between April 14 and July 12, 2023, the Parties exchanged no less than 14 written communications and held three videoconferences to address search parameters and Defendants' questions regarding the Request.  Hoq Decl. ¶¶ 9-17, 20, 22, 24, 27-29, Exhs. G-O, R-S, U, W, X. During that time, Plaintiff provided multiple iterations of search terms and locations for each of Parts 4-9. *Id*. Exhs. G, M, R, U, X. In response, while ICE repeatedly represented that it was committed to conducting additional searches, it unreasonably prolonged the negotiations over search parameters, and refused to commit to a date by which it would commence any initial search to obtain hit counts to further refine searches. *See, e.g.* Exhs. H-J, L, N, O, R, W. By June 9, 2023, when it became clear to Plaintiff that Court intervention would be required to ensure ICE's complete and timely production of records consistent with the

Scheduling Order, Plaintiff requested a Status Conference.  Exh. P. Defendants opposed Plaintiff's request, stating that the parties were not at impasse and that the Defendants were working towards agreement. *Id*. However, minutes later, Defendants separately emailed Plaintiff, stating that they planned to file a Rule 12(c) motion challenging Plaintiff's requests as too vague and overbroad to warrant any further response. Exh. Q.

On June 21, 2023, the Parties held a Local Rule 7-3 conference regarding Defendants' Rule 12(c) motion, at which time counsel for ICE represented it would move to challenge Parts 4-9, and *not* Parts 1-3. Hoq Decl. ¶ 22. ICE reiterated in a Status Report to the Court that it would only bring its Rule 12(c) motion as to "most" of the Requests, and that it would "substantially reduce the number of issues remaining for this Court to determine."  Exh. V at 13. Thereafter, on June 23, 2023, Plaintiff informed ICE that it planned to submit evidence outside of the pleadings in response to Defendants' motion, and would request that the Court provide Defendants with an opportunity to respond to the consideration of such evidence under Rule 12(d) in their Reply.  Exh. T.

At a Status Conference on July 5, 2023, ICE represented for the first time that it its Rule 12(c) motion would also challenge Parts 1-3. Plaintiff noted that ICE had changed its position from the Rule 7-3 conference. Hoq Decl. ¶ 27. Notably, despite its claim that Parts 1-3 are not sufficiently reasonably described to enable a search, ICE has conducted a search without ever seeking clarification from Plaintiff about their scope. In fact, on June 9, 2023, the same date that Plaintiff requested a status conference, Defendants reported that ICE had newly located 41,000 records responsive to Parts 1-3. Exh. O.

ICE stated on July 11, 2023 that it would commence a search in response to Part 4, and agreed to search terms for Part 8. Exh. W. On July 12, 2023, despite its disagreement with ICE's proposed limits on Parts 5-9, Plaintiff asked ICE to commence search based on agreed parameters to date, without waiving its right to

1  resolve search adequacy issues at a later date. Exh. X. ICE, however, still has not

2  reported any search, nor has it produced any documents in response to Parts 4-9 to

3  date. Hoq Decl. ¶ 31.

4  ## III.   LEGAL STANDARD

5      Congress enacted FOIA to "pierce the veil of administrative secrecy and to

6  open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425

7  U.S. 352, 361 (1976). In contrast to Rule 26(b)'s "proportional" standard for civil

8  discovery, FOIA dictates a "strong presumption … of disclosure." *NLRB v.*

9  *Robbins Tire & Rubber Co*., 437 U.S. 214, 236 (1978). The government must

10  conduct a search that is "reasonably calculated to uncover all relevant documents,"

11  demonstrating "adequacy beyond material doubt." *Transgender Law Ctr.*, 46 F.4th

12  at 779, 781 (citation omitted). "Agencies have a duty to construe FOIA record

13  requests liberally." *Yagman*, 868 F.3d at 1079 (citations omitted).

14      Although a FOIA request must "reasonably describe" the records sought, the

15  government "has no right to resist disclosure because the request fails reasonably

16  [to] describe records unless it has first made a good faith attempt to assist the

17  requester in satisfying that requirement." *Yagman*, 868 F.3d at 1084 (brackets in

18  original). Defendants seek judgment on the pleadings under Federal Rule of Civil

19  Procedure 12(c). Judgment on the pleadings "may only be granted when the

20  pleadings show that it is beyond doubt that the plaintiff can prove no set of facts in

21  support of his claim which would entitle him to relief." *Enron Oil Trading &*

22  *Transp. Co. v. Walbrook Ins. Co*., 132 F.3d 526, 529 (9th Cir. 1997) (citation

23  omitted).

24      Plaintiff prevails under the Rule 12(c) standard because its FOIA request is

25  clear on its face. However, should the Court consider matters outside the pleadings,

26  the motion "must be treated as one for summary judgment under Rule 56." Fed. R.

27

28

Civ. P. 12(d).[3] The court is not required to give official notice when converting a Rule 12(c) motion to one for summary judgment, but must allow "the parties a reasonable opportunity to present material that would be pertinent under the summary judgment motion." *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998).

Summary judgment is proper if "the movant [here Defendants] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court must view the facts and draw inferences in the manner most favorable to the non-moving party—here, the Plaintiff. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992).

## IV.   ARGUMENT

### A.   Defendants Had a Duty to Confer in Good Faith with Plaintiffs Before Refusing to Respond to the FOIA Request.

Defendants' motion fails because it does not demonstrate, let alone address, the requirement that Defendants work in good faith with Plaintiff to clarify the Request.

It is well-established that the government has a duty to work in good faith with the requestor to clarify a FOIA request before resisting disclosure of responsive documents. In *Yagman v. Pompeo*, the Ninth Circuit noted that "an agency has 'no right to resist disclosure because the request fails reasonably to describe records unless it has first made a good faith attempt to assist the requester in satisfying that requirement.'" 868 F.3d at 1084 (citation omitted). *Accord Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir. 1981), *modified on other grounds*, 671 F.2d 769 (3d Cir. 1982); *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995). The requirement for records to be reasonably described is "not to be used as a method

---

[3] Notably, Defendants also ask that the Court consider extrinsic evidence. Defs.' Br. at 11. *See, e.g. Fekete v. Uniworld River Cruises, Inc.*, No. cv-15-0211, 2018 WL 6332284, at *2 (C.D. Cal. July 10, 2018) (converting Defendants' Rule 12(c) motion to summary judgment after considering extrinsic evidence by both parties); *Atiqi v. Acclaim Technical Servs.*, No. 14-00628, 2014 WL 12965984, at *4 (C.D. Cal. Jul. 3, 2014) (same).

1  of withholding records," much less used for the wholesale dismissal of a complaint

2  seeking to enforce a valid FOIA request. *Bristol-Myers Co. v. FTC*, 424 F.2d 935,

3  938 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 824 (1970). If an agency is "at all

4  uncertain about the scope of Plaintiff's request, it could have asked [the Plaintiff

5  what [it] meant." *Leopold v. Dep't of Justice*, 130 F. Supp. 3d 32, 43-44 (D.D.C.

6  2015).

7       This same duty also arises independently from DHS's own FOIA

8  regulations, which also apply to its component ICE. These regulations set out a

9  process where, "[i]f after receiving a request, a component determines that it does

10 not reasonably describe the records sought, the component should inform the

11 requester what additional information is needed or why the request is otherwise

12 insufficient." 6 C.F.R. § 5.3(b) (2022). After the agency reaches out, it also has the

13 responsibility to work with the requester to reformulate the request: "Requesters

14 who are attempting to reformulate or modify such a request may discuss their

15 request with the component's designated FOIA Officer, its FOIA Public Liaison, or

16 a representative of the DHS Privacy Office, each of whom is available to assist the

17 requester in reasonably describing the records sought." *Id.* When DHS "fail[s] to

18 follow its own administrative process," it cannot argue that "any failure by the

19 plaintiffs to reasonably describe the records sought supports the defendant's

20 position that it is entitled to … judgment as to the adequacy of its search." *New*

21 *Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. & Customs Enf't*, 373 F.

22 Supp. 3d 16, 34 (D.D.C. 2019); *accord Immigrant Def. Project v. U.S. Immigration*

23 *& Customs Enf't*, 208 F. Supp. 3d 520, 532 (S.D.N.Y. 2016).[4] Defendants'

24 ─────────────────
[4] Defendants may contend that the law cited addresses a prior version of 6 C.F.R. §

25 5.3(b), and that the regulation has since replaced "shall" with "should." However,
   the only effect of this change is to "permit[] the defendant, upon determining that 'a

26 request does not adequately describe the records sought,' to 'administratively close
   the request ***or*** seek additional information from the requester'" within the statutory

27 timeframe to respond to the request. *New Orleans Workers' Ctr. for Racial Just.*,

28 373 F. Supp. 3d at 33 n.5 (quoting 6 C.F.R. § 5.3(c)) (emphasis added). An
   <span style="float:right">(cont'd)</span>

regulatory duty to provide Plaintiff notice and an opportunity to clarify its requests persists during the litigation process. *New Orleans Workers' Ctr. for Racial Justice*, 373 F. Supp. 3d at 33-34. This duty to confer is consistent with courts' treatment of similar FOIA regulations by other agencies. *Charles v. United States*, No. CV 21-1983 (BAH), 2022 WL 951242, at *5 (D.D.C. Mar. 30, 2022); *Parker v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys*, 852 F. Supp. 2d 1, 14 (D.D.C. 2012); *Ruotolo*, 53 F.3d at 10.

Defendants' motion does not even attempt to argue that they complied with these duties. Defendants cannot, as a matter of logic, make this showing in the Rule 12(c) posture. Plaintiff's complaint reasonably contains no facts about post-filing communications between the parties, so Defendants cannot show based on the face of the pleadings that they complied with their duty to provide Plaintiff in good faith with an opportunity to clarify its requests. The Court should thus deny Defendants' motion for its failure to address this requirement.

Plaintiffs also ask that the Court consider evidence pursuant to Rule 12(d) about Defendants' invitation to Plaintiff to propose search parameters for the Request, and the parties' subsequent discussions. This evidence demonstrates—at a minimum—a fact question as to Defendants' compliance with the duty explained above, which would warrant denial of Defendants' motion.

Defendants first communicated to Plaintiff their contention that Parts 4-9 did not reasonably describe the records sought on March 29, 2023. Exh. F. Defendants requested clarification in the form of specific proposed search terms and locations that Plaintiff believes will return responsive documents. *Id.* Since that date, Plaintiff has written to Defendant on five separate occasions, each time answering

administrative closure within the statutory timeframe would not have caused Plaintiff much harm; Plaintiff could have responded by submitting a new request addressing Defendants' issues. But because the Defendants did not administratively close the request within the statutory timeframe, they cannot now do so and send Plaintiff back to square one. Defendants' only option is to seek additional information from Plaintiff.

Defendants' specific queries about the scope of the requests, providing proposed search terms, custodians, and locations, and explaining why specified custodians and locations likely possess responsive documents. *See* Exhs. G, M, R, U, X. These communications represent meaningful attempts by Plaintiff to clarify any ambiguities in its Request. Defendants' contention that they may ignore these communications and that the Court should reach judgment on the pleadings disregards their duties to engage in good faith efforts to clarify any confusion about the Request.

Defendants' failures to comply with this duty is even more clearly apparent for Parts 1-3. By filing this motion, Defendants ask the Court to excuse their obligation to produce records. Before resisting disclosure in this manner, Defendants should have complied with their duties to make good-faith efforts to clarify Plaintiff's Parts 1-3, and their failure to do so dooms their motion—either under the Rule 12(c) or Rule 12(d) standard. [5]

## B.    The Plaintiff's FOIA Request Provides Reasonable and Specific Descriptions of the Requested Records.

Defendants' sole argument for dismissal of the complaint on the pleadings is that the Plaintiff failed to "reasonably describe[]" the records sought. Defs.' Br., 6-14 (quoting 5 U.S.C. § 552(a)(3)(A); 6 C.F.R. § 5.3(b)). [6] A "reasonable description" "should 'enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" *Yagman*, 868 F.3d at 1081 (citation omitted); *see* 6 C.F.R. § 5.3(b) (description must allow personnel to locate records "with a reasonable amount of effort" through an "organized, non-random search").

---

[5] Notably, Defendants also failed to confer with Plaintiffs as to Parts 1-3 as the grounds for the instant motion, in violation of Local Rule 7.3. Hoq Decl. ¶¶ 22, 27.
[6] Plaintiff agrees that the question of whether the Request complies with DHS regulations is not materially different from whether the request complies with 5 U.S.C. § 552(a)(3)(A). *See* Defs.' Br. 6 n.3.

11

On its face, Plaintiff's Request provides a reasonable, specific, and cognizable description of what is sought. The Request "identif[ies] specific persons," "specific documents, types of documents [and] types of information," and specifies "locations" and "dates" that would enable an agency search. *Yagman*, 86 F.3d at 1081. For example:

- **Parts 1 through 3** of the Request specifies documents related to four named individuals who were released from custody shortly prior to death. First Am. Compl. ¶ 36(1)-(3).

- **Part 4** specifies "ICE and [ICE Health Service Corps] directives, policies, procedures, protocols, or trainings" that relate to the release of hospitalized detainees or those receiving external medical care. *Id.* ¶ 36(4).

- **Part 5** specifies types of documents, information, and locations for the search, seeking "[s]preadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility" related to detainees released from custody while receiving medical treatment. Part 5 further identifies specific databases and spreadsheets, such as "Medical Transfer Summary documents from DHS's eHR system and Alien Medical Records System," and the "Significant Detainee Illness Spreadsheet." *Id.* ¶ 36(5).

- **Part 6** further specifies "spreadsheets, emails, significant incident reports (SIRs), [and] significant event notification reports (SENs)" that mention the release from custody of such detainees. *Id.* ¶ 36(6).

- **Part 7** specifies "[s]preadsheets, emails, SIRs, [or] SENs" that mention the death of any detainee previously released from custody while hospitalized, receiving external medical care, or immediately prior to transfer to an emergency room, hospital, or external care facility. *Id.* ¶ 36(7).

- **Part 8** specifies "databases, spreadsheets, lists, and other data compilations" identifying "detainees who were hospitalized or transferred from detention

for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer … to receive treatment for COVID-19." *Id.* ¶ 36(8).

- **Part 9** specifies "[b]ills, invoices, charges, or records of payment" made for such detainees. *Id.* ¶ 36(9).

Finally, the Request provides an applicable date range: between January 1, 2016, to the date of production. *Id.* ¶ 37. The Request "convey[s] exactly which records [plaintiff] seeks." *Shapiro v. Cen. Intel. Agency*, 170 F. Supp. 3d 147, 152, 156 (D.D.C. 2016).

Defendants construe the Request "far more broadly than the text supports," characterizing it as significantly "more complex and burdensome than it is." *Pub. Emps. for Env't Resp. v. U.S. Env't Prot. Agency*, 314 F. Supp. 3d 68, 79 (D.D.C. 2018). They grasp onto the introductory language "any and all," as well as connector words "regarding," "relating to," and "related to," and claim that the requests are insufficiently clear based solely on the inclusion of those words. Defs.' Br. 9. Contrary to Defendants' assertions, these phrases are not determinative of whether records are reasonably described. *E.g.*, *Pub. Emps. For Env't Resp.*, 314 F. Supp. 3d at 72, 80 (holding that FOIA request for "any EPA documents that support the conclusion that human activity is not the largest factor driving global climate change" was reasonably described); *Shapiro*, 170 F. Supp. 3d at 152, 157 (similar); *cf. ACLU of N. Cal. v. Dep't of Just.*, No. 12-CV-04008-MEJ, 2014 WL 4954121, at *6 (N.D. Cal. Sept. 30, 2014) ("When the request demands all agency records on a given subject, the agency is obliged to pursue any 'clear and certain' lead it cannot in good faith ignore.") (citation omitted).

Defendants offer one example of a request that they contend is not reasonably described: Part 8, which requests documents "identify[ing] detainees who were hospitalized or transferred from detention for off-site medical care due

13

to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19."[7] Exh. A.  Defendants profess to be confused about whether the request could be interpreted as seeking documents relating to the release of any detainee "who had at one point been treated off-site 'due to COVID-19.'" Defendants further claim confusion as to whether they should produce documents related to detainees' release, including logistics or notices to appear. Defs.' Br. 9-10.

This purported confusion, however, is not sufficient basis to refuse to conduct a search or produce documents in light of the government's "duty of liberal construction" under FOIA. *Yagman*, 868 F.3d at 1080. If Defendants are unclear about the scope of the request, they must "'construe [the] request liberally,' particularly when a 'request is reasonably susceptible to a broader reading.'" *New Orleans Workers' Ctr. for Racial Just.* 373 F. Supp. 3d at 34 (citation omitted).

Defendants, moreover, cannot credibly profess confusion on the matter, as the Plaintiff has already clarified these issues. Defendants raised these very issues with Plaintiff on March 29, 2023. Exh. F at 4. On April 14, 2023, Plaintiff responded, stating that "[t]he request does not require production of documents 'showing that a detainee was released from custody who at one point [had] been treated off-site 'due to COVID-19.'" Exh. G at 4. Plaintiff further noted that "[d]ocuments about the release itself (*i.e.* logistics, notices to appear) are highly relevant and encompassed in the request, as they provide the public with critical information regarding the terms of release from custody." *Id.*

---

[7] Part 8 of Plaintiff's Request further specifies that "[r]equested information includes but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any) . . . , and/or reason for release from custody." First Am. Compl. ¶ 36(8).

14

Moreover, the cases Defendants cite are inapposite. Unlike the requests in those cases, the Request seeks a limited amount of information on a defined subject matter, with specific times, names, and types of documents requested. The cases Defendants cite involve far more expansive and open-ended requests. For example, in *Freedom Watch v. Dep't of State*, the plaintiff requested "any and all" communications between multiple offices for which "neither time limitation nor subject matter … is suggested" and records that "refer or relate … *in any way*" to topics. 925 F. Supp. 2d 55, 62 (D.D.C. 2013) (emphasis added). In *Latham v. Dep't of Justice*, the request did not specify any "type of record," or "date of any record that would be responsive" or "time period or date when any record may have been created". 658 F. Supp. 2d 155, 161 (D.D.C. 2009). In *Dale v. Internal Revenue Service*, the plaintiff's request did not specify what records he sought or for what years. The case was dismissed in large part because "to do otherwise might reward [plaintiff's counsel] for its failure to engage in meaningful and reasonable discussions" with the agency "despite repeated IRS requests to do so." 238 F. Supp. 2d 99, 105 (D.D.C. 2002). Notably, in *Shapiro*, the court concluded that a request for "any and all records that were prepared, received, transmitted, collected and/or maintained by the [agencies] mentioning Nelson Mandela" was "reasonably described." 170 F. Supp. 3d 147, 155 (D.D.C. 2016). Plaintiff's Request does not suffer from these flaws.

## C.   Defendants' Undue Burden Argument Is Flawed.

Defendants next argue that the Court should grant judgment in their favor because each request is "exceedingly and impermissibly broad."  Defs.' Br. 10. This argument fails for several reasons.

First, Defendants incorrectly assume that the sweeping overbreadth objection from civil discovery applies to FOIA requests. In contrast to civil discovery, an agency can only point to breadth to avoid an otherwise valid FOIA request in a narrow set of circumstances. "[D]isclosure, not secrecy, is the

15

1  dominant objective" of FOIA. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146,

2  152 (1989) (quotation and citation omitted). In enacting FOIA, Congress

3  recognized that this interest in disclosure could at times demand that agencies

4  produce "a voluminous amount of separate and distinct records." 5 U.S.C. §

5  552(a)(6)(B)(iii)(II)). The only statutory limitation on the scope of a request is the

6  requirement that it "reasonably describes" the records sought. 5. U.S.C. §

7  552(a)(3)(A)(i). Thus, "the fact that a FOIA request is very broad or 'burdensome'

8  in its magnitude does not, in and of itself, entitle an agency to deny that request on

9  the basis that it does not 'reasonably describe' the records sought." *ACLU of N.*

10  *Cal.*, 2014 WL 4954121, at *8; *Colgan v. Dep't of Just.*, No. 14-cv-740, 2020 WL

11  2043828, at *9 (D.D.C. Apr. 28, 2020) ("[T]he quantity of responsive records is

12  not a basis on which to deny a FOIA request."); *Yeager v. Drug Enf't. Admin.*, 678

13  F.2d 315, 326 (D.C. Cir. 1982) ("[T]he number of records requested appears to be

14  irrelevant to the determination of whether they have been 'reasonably

15  described.'").

16        The case law Defendants cite as supposedly creating a blanket "overbreadth"

17  exception is not so sweeping. *Marks v. U.S.*, the primary opinion on which

18  Defendants rely, *see* Defs.' Br. 7, stands only for the unremarkable proposition that

19  "[t]he requirement of reasonable description relates not only to subject matter, but

20  … also relates to place of search." 578 F.2d 261, 263 (9th Cir. 1978). In that case,

21  the "agency ha[d] made a good faith effort to comply" by searching in several

22  locations and offering to search in other locations that the requestor might specify.

23  *Id.* The court found the requestor's continued insistence that the agency search all

24  locations to fail the "reasonable description" requirement. *Id.* Nor did *Irons v.*

25  *Schuyler*, *see* Defs.' Br. 7, create any blanket overbreadth exception. Instead, it

26  involved a straightforward application of the statutory requirement that a FOIA

27

28

16

1    request be for "identifiable records."[8] 465 F.2d 608, 613 (D.C. Cir. 1972). The

2    request in that case would have required the Patent Office to search "more than

3    3,500,000 files of patents, approximately 100,000 files of patent interferences

4    (terminated or unterminated), approximately 180,000 pending patent applications,

5    and well over a million of abandoned patent applications…." *Id.* at 611 (internal

6    quotation marks and citation omitted). As in *Marks*, the court found that, "in the

7    context of the Patent Office files," the request did not "come within a reasonable

8    interpretation of 'identifiable records.'" *Id.* at 613. In so holding, the court

9    specifically explained that it did not create the sweeping overbreadth exception that

10   Defendants now ascribe to it. It addressed another opinion, *Getman v. NLRB*, 450

11   F.2d 670 (1971), that upheld a FOIA request as valid. *Irons*, 465 F.2d at 613

12   (citing *Getman*). The *Irons* court explained that the FOIA request in *Getman*,

13   although "broad," was valid because "there was no problem of identification of the

14   records requested." *Id.*

15        Defendants' overbreadth arguments fall well short of what this case law

16   requires. Defendants argue, for example, that three of Plaintiffs' requests are

17   "overbroad" simply because they include a preamble seeking "[a]ny and all

18   documents and communications." Defs.' Br. 11. They similarly argue that the

19   requests are overbroad because Plaintiff seeks not just information about four

20   specific people's deaths (Part 1), but also copies of reports of investigations into

21   these four specific people's deaths that are mentioned in the documents responsive

22   to Part 1 (Parts 2 and 3). Defs.' Br. 13. But these complaints do not fit within the

23   narrow exception described in *Marks* and *Irons*.

24        Second, under the Rule 12(c) standard, Defendants' overbreadth argument

25   fails because Defendants point to no factual support that is properly before the

26   Court. In FOIA litigation, "the burden is on the agency to sustain its action." 5

27   ───────────────

28   [8] The "identifiable records" requirement cited in *Irons* was replaced in 1974 with
     the "reasonable description" requirement that exists in the current version of FOIA.
     *See Truitt v. Dep't of State*, 897 F.2d 540, 544 (D.C. Cir. 1990).

U.S.C. § 552(a)(4)(B). The burden thus falls on an agency claiming overbreadth to "provide [a] sufficient explanation as to why [the] search would be unreasonably burdensome." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995); *see also Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d. 441, 455 (D.D.C. 2014) ("[T]he burden of demonstrating overbreadth is substantial."). In determining whether the agency has met this burden, "[c]ourts often look for a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008). Even the case law that Defendants cite is in accord. For example, the *Nat'l Sec. Couns.* court rejected a request only after determining based on an affidavit that the request "would require the CIA to 'search every office for any documents containing the word 'Watson.'" *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 162 (D.D.C. 2013) (quoting affidavit).

Defendants cannot meet this burden on their Rule 12(c) motion. Defendants argue that they "need not introduce evidence," Defs.' Br. 8, but they cite no authority to support this contention in the context of an overbreadth objection.[9] To the contrary, "[w]hether [a] request would require [an agency] to expend an unreasonable amount of effort cannot be determined from [the] request alone, on its face." *Shapiro*, 170 F. Supp. 3d at 155 (quotation omitted).

In their Rule 12(c) motion, Defendants do not seriously attempt to cabin their overbreadth arguments to requests and pleadings. Instead, they rely on evidence they found on the Internet. *E.g.*, Defs.' Br. 11 (citing ICE's website for the fact that ICE has over 20,000 employees); *Id.* n.6 (citing an ACLU website for

---

[9] The only opinion that Defendants cite to support this claim is an unpublished First Circuit opinion dismissing a complaint because a request suffered from several failures to comply with regulation, including a failure to notarize the signature on the request. Defs.' Br. 7 (citing *Borden v. FBI*, No. 94-1029, 1994 U.S. App. LEXIS 16157, at *1-2 (1st Cir. 1994) (unpublished, per curiam). *Borden* involved no overbreadth objection.

18

the fact that there are over 200 ICE detention centers).[10] They also rely on facts that other courts have found based on other records. *E.g.*, Defs.' Br. 11 (describing features of "intergovernmental service agreement facilities" and relying on *Sanchez v. Decker*, No. 19-cv-8354, 2019 WL 6311955, at *5 n.4 (S.D.N.Y. 2019)). And they rely on pure speculation to conclude that they keep their documents in a way that would make searches cumbersome. *E.g.*, Defs.' Br. at 12 (stating, with no support, that "Plaintiff's requests as drafted would require Defendants to review each and every case and record of a detainee who was hospitalized to effectively compile the requested information," and that responding to a request would be a "massive undertaking") (quotation and citation omitted). Such speculation fails: a court "will not find a search unduly burdensome on conclusory statements alone." *Hall v. CIA*, 881 F. Supp. 2d 38, 53 (D.D.C. 2012); *see also Shapiro*, 170 F. Supp. 3d at 156 (rejecting an argument where an agency "simply assert[ed] in its legal briefing that the documents [] request[ed] could not be located with a reasonable amount of effort") (quotation and citation omitted). The Court should address the evidence outside of the pleadings under Rule 12(d), either striking it or considering it along with the evidence that Plaintiff also provides, in the light most favorable to Plaintiff.

Third, should the Court exercise its discretion under Rule 12(d) to consider Plaintiff's evidence, Defendants' overbreadth arguments fail because this evidence

---

[10] If the Court considers this evidence, Defendants are wrong that where Plaintiff declined to specify in its requests the specific people or units to be searched, it necessarily demanded searches of all 20,000 employees at ICE's 200 detention facilities. "It would be counterintuitive in the extreme to require [a FOIA Requestor] to have sufficient knowledge of an agency's organizational units to be able to identify the specific units of an agency that might contain the records sought." *Biear v. Att'y Gen. U.S.*, 905 F.3d 151, 157 (3d Cir. 2018). All a requester must do is describe documents so that "a professional employee of the agency who was familiar with the subject area of the request [may] locate the record with a reasonable amount of effort." *Truitt*, 897 F.2d at 545 n.36. Plaintiff complied with this requirement, and it also further clarified its request by providing a reasonable set of specific search locations likely to possess responsive documents. *Supra* at 7-8.

19

shows that the Request reasonably describes search locations. *See* First Am. Compl. ¶ 36. The Request does not anticipate, as Defendants imply, a search of every ICE employee at every detention facility nationwide. Instead the requests are narrowly tailored, identifying specific locations or topics for search. For example, Parts 5 and 8 of the Request seek information about people released from ICE custody while hospitalized. Defendants speculate that these requests "would require Defendants to review each and every case and record of a detainee who was hospitalized to effectively compile the requested information." Defs.' Br. 12. But the Request itself and supporting evidence demonstrate otherwise. The Request itself identifies particular record locations, including "Medical Transfer Summary documents from DHS's eHR system and Alien Medical Records System," and the "Significant Detainee Illness Spreadsheet." First Am. Compl. ¶ 36(5). Plaintiff targeted the Request based on Defendant ICE's own public announcements about how it keeps the relevant records. ICE keeps a "centralized" "*Hospitalization System*" that is "used to track detainees at any detention facility who are [] sent to the hospital to receive treatment," and a "*Significant Detainee Illness Spreadsheet*," which records detainees who have "been hospitalized, the name of the hospital, the date of admission, and the date of discharge." U.S. Dep't of Homeland Sec., Priv. Impact Assessment for the Alien Med. Tracking Sys. at 3, 8 (Sept. 26, 2011), https://perma.cc/WV9X-VYHS; *see also* U.S. Immigration and Customs Enforcement, IHSC Directive: 03-32, Significant Detainee Illness ("SDI") at 2-4 (Dec. 1, 2015), https://www.documentcloud.org/documents/6025446-IHSC-Policy-Significant-Detainee-Illness; Exh. U at 6-10 (same). Indeed, the criteria for placement on the Significant Detainee Illness List includes "[a]nyone who is intensive care for 24 hours or more" or detainees requiring "[s]ignificant coordination" to "release" "in the United States due to their medical condition"; when a detainee is "released from ICE custody" they may be taken off the SDI List and the removal will be

20

"document[ed] in the health record" by ICE Health Service Corps personnel. Exh. U at 7-8; *see also id.* at 3 (explaining why SDI documents are likely responsive); Exh. X at 3 (same). Likewise, ICE's own employees have testified that the agency compiled lists of related to COVID-19 hospitalizations of ICE detainees to comply with the requirements of preliminary injunction orders in *Fraihat v. ICE*, 445 F. Supp. 3d 709, 751 (C.D. Cal. 2020), *order clarified*, No. EDCV191546, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), and *rev'd and remanded*, 16 F.4th 613 (9th Cir. 2021). *See* Exh. K at 11; Exh. X at 5.

The record demonstrates that Parts 1-3 of the Request are similarly targeted. These requests specifically name four people whose deaths Plaintiff is aware of despite ICE's determination not to report them. Defendants have already performed specific searches for their names and have identified a specific universe of documents. *See supra* at 6-8. At no point during this search process have Defendants reached out to Plaintiff with any concern about the scope of Parts 1-3, and Plaintiff has even, unprompted, provided additional clarification by identifying specific date ranges that appear to be missing from Defendants' production thus far. *E.g.*, Ex. M at 3; Ex. X at 3. Thus, despite the concerns Defendants profess about the supposed breadth of Parts 2 and 3, *see* Defs.' Br. 13, the facts show—at a minimum—a dispute as to whether Defendants can claim any uncertainty about the search they must conduct.

## V.        CONCLUSION

For these reasons, the Defendants' motion to dismiss the complaint on the pleadings should be denied.

//

//

//

//

//

21

Respectfully submitted this 25th of July, 2023.

  */s/ Laboni Hoq*
LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004


MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

EUNICE CHO (pro hac vice)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616


KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

22

1

**CERTIFICATE OF COMPLIANCE**

2

The undersigned, counsel of record for Plaintiff, certifies that this brief

3

contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

4

5

Respectfully submitted this 25th of July, 2023.

6

7

*/s/ Laboni Hoq*
LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28