UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 2:22-cv-04760-SHK | Date: | August 29, 2023 |
|---|---|---|---|

| Title: | *American Civil Liberties Union Foundation of Southern California v. United States Immigration and Customs Enforcement, et al.* |
|---|---|

Present: The Honorable   Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):   ORDER RE: MOTION FOR JUDGMENT ON THE PLEADINGS**

    On July 5, 2023, defendants U.S. Department of Homeland Security ("DHS"), U.S. Department of Homeland Security Office of Inspector General ("OIG"), and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants") moved the Court for an order entering judgment in Defendants' favor on the pleadings ("Motion" or "Mot.") under Federal Rule of Civil Procedure ("Rule") 12(c).  Electronic Case Filing Number ("ECF No.") 44, Motion.  For the reasons discussed in this Order, Defendants' Motion is **DENIED**.

    **I.     RELEVANT BACKGROUND, FACTS, AND ARGUMENTS**

    On April 29, 2022, plaintiff American Civil Liberties Union Foundation of Southern California ("Plaintiff" or "ACLU") submitted a Freedom of Information Act ("FOIA") request ("Request") to Defendants "seeking records relating to Defendants' treatment of hospitalized detainees and detainees released from custody prior to their death."  See ECF No. 24, First Amended Complaint ("FAC") at 17.  Defendants allegedly failed to timely produce documents pursuant to Plaintiff's FOIA request.  Id.  Consequently, on July 12, 2022, Plaintiff filed a complaint ("Complaint" or "Compl.") in this Court under FOIA "seeking public transparency into the [ICE] practice of releasing detained people from custody prior to their imminent death."  ECF No. 1, Compl.  On October 4, 2022, Plaintiff filed the operative FAC.  ECF No. 24, FAC. On October 18, 2022, Defendants answered ("Answer") Plaintiff's FAC.  ECF No. 26, Answer.

    On November 29, 2022, the parties filed a Joint Report of Conference of Parties ("Joint Report"), in which Defendants indicated, in relevant part, that "ICE ha[d] already produced

2,444 pages of documents[,]" and that "OIG processed 701 pages of records and ha[d] already produced 121 pages of records" at that time.  ECF No. 28, Joint Report at 9.  Defendants added that they were still "processing Plaintiff's FOIA request and ha[d] initially identified approximately 8,050 pages of potentially responsive records (with ICE FOIA identifying approximately 5,550 pages and DHS-OIG identifying 2,500 pages)." Id. at 13.  Defendants indicated that "[a]ny segregable, non-exempt portion of those documents w[ould] be released to Plaintiffs, in whole or in part, subject to any applicable FOIA exemptions." Id. (citing 5 U.S.C. §552(b)).  Defendants also indicated that "ICE can commit to processing 500 pages per month and DHS-OIG can commit to processing between 500-750 pages per month" and that "each agency will submit to the Court explaining the current workloads and resources before the scheduling conference." Id.

On January 10, 18, and 24, 2023, the Court held case management conferences ("CMCs") where the parties discussed, in relevant part, the rate of review of documents.  ECF Nos. 36-38, CMCs.  On February 6, 2023, the parties filed a Proposed Order Re: Case Management ("Proposed CMO"), wherein Defendants ICE and OIG each committed to reviewing and processing "no less than 1,000 pages per month," and to "release all responsive non-exempt records and an accounting of any withheld records" to Plaintiff monthly.  ECF No. 39-1, Proposed CMO at 2.  Defendants anticipated that their review and production of records would be complete in "May 2023." Id. at 3.  On February 9, 2023, the Court issued the Proposed CMO ("CMO"), setting out deadlines and document production rates in accordance with the dates and rates proposed by the parties.  ECF No. 40, CMO.

On July 5, 2023, Defendants filed the instant Motion under Rule 12(c).  ECF No. 44, Mot.  On July 25, 2023, Plaintiff opposed Defendants' Motion ("Opposition" or "Opp'n").  ECF No. 50, Opp'n.  On August 4, 2023, Defendants filed a Reply in support of their Motion ("Reply").  ECF No. 51, Reply.  On August 11, 2023, the Court held a status conference ("Status Conference") regarding the Motion.  ECF No. 52, Status Conference.  The Motion now stands fully briefed and ready for decision.

### A. Plaintiff's FOIA Request

Plaintiff submitted its Request to Defendants on April 29, 2022.  ECF No. 50-1, Declaration of Laboni Hoq ("Hoq Declaration" or "Hoq Decl.") at 3; see also ECF No. 1-1, FOIA Request Letter ("FOIA Letter"); ECF No. 24-1, FOIA Letter.[1]  The Request consisted of nine parts.

In sum, parts 1-3 sought information about Martin Vargas Arellano ("Arellano"), Jose Ibarra Bucio ("Bucio"), Teka Gulema ("Gulema"), and Johana Medina Leon ("Leon"), who were all allegedly detained at ICE facilities, and "whom ICE released from custody while on their

---

[1] Plaintiff attached what appear to be identical copies of the original FOIA Letter it sent to Defendants to the Complaint and FAC.  See ECF No. 1-1, FOIA Letter; see also ECF No. 24-1, FOIA Letter.  Defendants cite the FOIA Letter attached to Plaintiff's Complaint, rather than the FOIA Letter attached to Plaintiff's operative FAC in Defendants' instant Motion.  See, e.g., ECF No. 44, Mot. at 11.  Consequently, because the FOIA Letters attached to the Complaint and FAC appear to be identical, the Court refers to both FOIA Letters attached to the Complaint and FAC as "FOIA Letter" in this Order.

deathbeds." ECF No. 50, Opp'n at 10-11. "Parts 4-9 sought information about ICE's policies and practices of releasing critically-ill detainees from custody prior to their deaths, as well as information about other ICE detainees who met a similar fate." Id. at 11.

More specifically, the records Plaintiff sought in the Request included the following:

1) Any and all documents, without limitation to date, including any communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals[: Arellano, Bucio, Gulema, and Leon].
2) Any and all DHS OIG reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OIG reports of investigation.
3) Any and all ICE OPR reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OPR reports of investigation.
4) Any and all documents and communications, including ICE and IHSC directives, policies, procedures, protocols, or trainings that contain guidance, instructions, or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities. Detainees specified in (a) and (b) above shall include those being treated for COVID-19 during their hospitalization or treatment at external healthcare providers or facilities.
5) Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.
6) Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that mention the release from custody of (a) hospitalized detainees; (b)

      detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

7) Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or ICE OPR that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

8) Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for offsite medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

9) Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment.

ECF No. 24, FAC at 17-20. "The Request sought all responsive records 'from January 1, 2016 to the present.'" Id. at 20.

    **B.**     **Plaintiff's FAC**

Plaintiff alleges the following facts in the FAC. On May 26, 2022, ICE and OIG "acknowledged receipt of [Plaintiff's] Request" and on July 5, 2022, OIG sent Plaintiff "an email with suggestions for how to proceed with its search for records responsive to its Request." Id. at 21. From July through September 2022, the parties communicated via telephone, letter, and email regarding the search methodology Defendants would employ to satisfy Plaintiff's Request. Id. at 21-22. As of October 4, 2022, the date the FAC was filed, "Defendant DHS ha[d] failed to respond to the Request" and all Defendants had "failed to produce a single document in response to Plaintiff['s] FOIA Request." Id. at 22.

Plaintiff, thus, sued Defendants in this Court, raising two claims for relief in the FAC for "violation of FOIA"[2] under 5 U.S.C. § 552. Id. at 22-24. Specifically, Plaintiff claims: (1)

---

[2] The Court normalizes the capitalization of the parties' arguments from the briefing in this Order unless otherwise stated.

"wrongful withholding of non-exempt responsive records"; and (2) "failure to conduct adequate searches for responsive records." Id. at 22-23.

For relief, Plaintiff requests the Court to: (1) "declare unlawful the Defendants' failure to comply with FOIA"; (2) declare that [Plaintiff] is entitled to disclosure of the requested records"; (3) "order Defendants to immediately process the Request and to disclose, in their entirety, unredacted versions of all records responsive to the Request that are not specifically exempt from disclosure under FOIA, including any non-identical copies of any such records"; (4) "enjoin Defendants from charging [Plaintiff] search, review, or duplication fees of the processing of the requests"; (5) "enjoin Defendants from continuing to withhold any and all nonexempt records responsive to the Request"; (6) "retain jurisdiction of this action to ensure that no agency records are wrongfully withheld"; (7) "award [Plaintiff] its reasonable attorney's fees and litigation costs incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E)"; and (8) "grant such other relief as the Court may deem just and proper." Id. at 24-25.

### C. Parties' Arguments

#### 1. Defendants' Arguments

Defendants assert that "[f]ederal agencies are only required to respond to [FOIA] requests that 'reasonably describe[]' the records requested" and argue that "Plaintiff's FOIA requests fail to do so because they are impermissibly overbroad in their scope." ECF No. 44, Mot. at 8 (quoting 5 U.S.C. § 552(a)(3)(A)). Thus, in sum, Defendants appear to challenge Plaintiff's Request on the grounds that: (1) Plaintiff failed to reasonably describe the records requested; and (2) Plaintiff's request was impermissibly overbroad. The Court summarizes each argument in turn below.

##### a. Defendants' Reasonableness of Description Arguments

With respect to Defendants' argument that Plaintiff failed to reasonably describe the records sought in the Request, Defendants assert that "[a] request 'reasonably describes' agency records when it 'would be sufficient [to enable] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" Id. at 14-15 (quoting Truitt v. Dep't of State, 897 F.2d 540, 544 (D.C. Cir. 1990)). Defendants argue that "[e]ven a cursory review reveals that most requests—including Nos. 1, 4 & 8—do not request identifiable records at all but request 'any and all' documents and 'communications' 'relating to,' 'regarding,' 'related to,' or that 'identify' certain subjects." Id. at 16. Defendants assert that "[r]equests that include language such as 'relate in any way to' are too vague." Id. (citing Freedom Watch, Inc. v. Dep't of State, 925 F. Supp. 2d 55, 61 (D.D.C. Feb. 27, 2013); Shapiro v. CIA, 170 F. Supp. 3d 147, 155 (D.D.C. 2016); Latham v. Dep't of Just., 658 F. Supp. 2d 155, 161 (D.D.C. 2009); Dale v. IRS, 238 F. Supp. 2d 99, 104 (D.D.C. 2002)).

##### b. Defendants' Overbreadth Arguments

With respect to Defendants' argument that Plaintiff's Request is impermissibly overbroad, Defendants argue first that "[n]ot only does Plaintiff seek nine overly broad

categories of records, but within each category it relies on its own specially defined and expansive definitions such that it cannot be said the requests provide a reasonable description enabling Defendants to locate the requested records." Id. at 8.

For example, Defendants assert that in Plaintiff's FOIA Letter, "ICE is defined as 'Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein[]'" and DHS OIG is defined as the "Department of Homeland Security Office of Inspector General and any component and offices therein." Id. at 11 (citing ECF No. 1-1, FOIA Letter at 4-5). Defendants add that "[a]lthough some requests relate to certain named detainees, most of the requests seek records regarding detainees more broadly, as Plaintiff defined 'detainee' as 'any person detained or formerly detained in an immigration facility or holding facility.'" Id. (citing ECF No. 1-1, FOIA Letter at 5). Defendants also add that "'immigration detention facility' is defined broadly as 'Service Processing Centers, Contract Detention Facilities, Family Residential Facilities, Intergovernmental Service Agreement (IGSA) Facilities, Dedicated Intergovernmental Service Agreement (DIGSA) Facilities, Intergovernmental Agreement (IGA) Facilities, and any other facilities where individuals may be held in ICE custody for 72 hours or more." Id. (citing ECF No. 1-1, FOIA Letter at 5). Defendants argue that by defining the categories of information sought "with overly broad terms and definitions[,]" Plaintiff's "requests were not limited to certain individuals, officers, or divisions, but encompass all of ICE and DHS OIG if not also DHS." Id.

Defendants next argue that "'[a]gencies must read FOIA requests as drafted,' . . . and thus are not obligated to construe FOIA requests to be less vague and less burdensome than the text of the requests." Id. at 17 (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir. 1984)). Defendants add that "[a]ccording to the plain language of the FOIA requests here, Plaintiff requests that Defendants search and review the records of any and all employees that might possess records 'regarding' the foregoing subjects or 'identify' 'detainees'" and Defendants argue that "Plaintiff does not try to cabin its requests to particular employees at those agencies." Id. (citation, internal quotation marks, and brackets from original omitted). Defendants assert that "ICE alone has about 20,000 personnel" and that "Plaintiff's national affiliate has estimated that there are over 200 immigration detention facilities." Id. at 18 (citations omitted). Defendants argue that "Plaintiff's requests, therefore, seek in essence 'an all-encompassing search of the records of every field office' even though 'the FOIA does not mandate that [an agency] comply' with such a request." Id. (quoting Marks v. Dep't of Just., 578 F.2d 261, 263 (9th Cir. 1978); other citation omitted).

Finally, Defendants argue that "[c]ompounding the [R]equests' deficiencies, many are 'springing requests' that would necessarily require Defendants to not only try to locate responsive records as to certain requests but then engage in an evaluation of those records to formulate further searches to respond to other categories included within the requests." Id. at 8. Defendants argue that "[t]his is improper and seeks to put on Defendants obligations not otherwise imposed under the FOIA." Id. Defendants note, for example, that "[r]equests nos. 2 and 3 also do not reasonably describe the records sought and are impermissibly vague" and that "[o]ne could characterize these as 'springing' requests." Id. at 19-20. Defendants, thus, assert that "Plaintiff requests Defendants not only produce records responsive to [r]equest No. 1 but review those records to determine whether further searches should be conducted based on the

content of those records." Id. at 20. Defendants assert, however, that "'FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters.'" Id. (quoting Assassination Archives & Rsch. Ctr., Inc. v. CIA, 720 F. Supp. 217, 219 (D.D.C. 1989)).

Defendants conclude that:

> Th[e] [M]otion should be granted because the FAC fails to state a claim that Defendants improperly withheld documents responsive to FOIA requests that "reasonably describe" the records sought. As explained, the requests are vague (i.e., "regarding" any detainees), unreasonably burdensome (i.e., "any and all" records agency-wide involving any "immigrant detention facility" across the country), and impermissibly place the onus on Defendants to become wide-ranging investigators and researchers (i.e., collecting data on all hospitalized detainees) rather than producers of identifiable, existing records. Accordingly, an agency employee familiar with the requests' subject matter would be unable to locate the records with a "reasonable amount of effort."

Id. at 21.

### 2.    Plaintiff's Response

Plaintiff responds with three primary arguments. First, Plaintiff argues that "the government 'has no right to resist disclosure because the [R]equest fails reasonably [to] describe records unless it has first made a good faith attempt to assist the requester in satisfying that requirement.'" ECF No. 50, Opp'n at 9 (quoting Yagman v. Pompeo, 868 F.3d 1075, 1084 (9th Cir. 2017)); (citing 6 C.F.R. § 5.3). Plaintiff adds that "[t]o the extent Defendants claim confusion regarding the terms of the Request, no confusion can credibly exist: Plaintiff has provided responses to each of Defendants' queries, and suggested search terms and locations at Defendants' behest." Id.

Second, Plaintiff argues that "on its face, the Request provides clear and specific descriptions of the requested records, that would 'enable a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" Id. (quoting Yagman, 868 F.3d at 1081). Plaintiff adds that "Defendants ignore clarifying information contained in the Request, and instead, focus on commonly used introductory and connector words that, they contend, render the requests indecipherable or overly broad." Id.

Third, Plaintiff argues that "Defendants complain—without support—that complying with the requests is unreasonably burdensome and will require the agencies to 'become wide-ranging investigators'" but, Plaintiff asserts, "[t]hat is wrong, and is not a reason to dismiss the case at the pleading stage, particularly where there is ample reason to believe that responsive information exists and can be produced by knowledgeable agency personnel." Id. Accordingly, Plaintiff argues that "the Court should deny the Defendants' [M]otion." Id.

### 3. Defendants' Reply

Defendants reply first that Plaintiff's argument "that Defendants cannot bring this [M]otion because they failed to work in good faith with Plaintiff to clarify the Request" is not persuasive because "[t]hat argument is not a basis to preclude this Court from considering whether, in the first instance, the FOIA request 'reasonably describes' the requested records." ECF No. 51, Reply at 6 (citation and internal quotation marks omitted). Defendants assert that "even assuming that Defendants had a requirement to confer, the undisputed facts contradict Plaintiff's argument that DHS failed to do so" and even "[t]he FAC itself references discussions Plaintiff had with DHS and [Plaintiff] attache[d] correspondence between the parties before litigation." Id. (citations omitted). Defendants add that "Plaintiff provides no support for its implied assertion that Defendants cannot move to dismiss (or in this case, for judgment on the pleadings) when a request fails to reasonably describe the records requested[]" and "[t]herefore, neither 6 C.F.R. § 5.3 nor any general duty to confer with a FOIA Requester precludes Defendants from being entitled to judgment on the pleadings." Id. at 10.

Second, Defendants reply that "[a] plain reading of the [R]equest reveals that it fails to reasonably describe the records sought[]" and that "[r]ather than try to defend the nine-part request in whole, Plaintiff offers nothing more than its own summary while avoiding an analysis of the [R]equest as drafted." Id. at 7. Defendants add that "the main defect in Plaintiff's FOIA request is not that it lacks specified subjects, but rather that the requests do not reasonably describe what records are being sought about those subjects such that they can be located with reasonable effort." Id. at 12.

Third, Defendants reply that the "nearly 200 pages of correspondence between the parties over the deficient [R]equest" that Plaintiff attached to Plaintiff's Opposition "undermines Plaintiff's arguments as it reveals Defendants' good faith attempts to clarify and narrow the scope of Plaintiff's deficient request[]" and "establishes that at no point has Plaintiff ever offered to amend, modify, or narrow the scope of its [R]equest." Id. Defendants add that they "are not asking this Court to consider extrinsic evidence in adjudicating Defendants' [M]otion, nor is it needed." Id. Defendants also add that "even if the Court were to consider Plaintiff's extrinsic evidence, that evidence supports Defendants' arguments." Id. at 16.

Fourth, Defendants clarify—in response to Plaintiff's "argu[ment] that Defendants' Motion must be denied because it is based 'on pure speculation' and not supported by affidavits or declarations to substantiate a claim of undue burden"—that they are "not seeking dismissal of this action on the ground that responding to the Request[] would be an undue burden." Id. (quoting ECF No. 50, FAC at 26-27). Defendants add that, instead, "Defendants' Motion is focused on the threshold issue whether the requests 'reasonably describe the records' sought[]" and "[t]o the extent that a court's consideration of whether a request reasonably describes the records sought necessarily considers the nature of the request and the likely burden it would impose, Defendants do argue that the requests would create an undue burden." Id. Defendants also add, however, that "Defendants have not, in this Motion, sought summary judgment based on affidavits explaining the burden of responding to the [R]equest[]" and, "[t]herefore, Plaintiff's citation to cases discussing undue burden, . . . are not relevant to this Court's consideration of the [M]otion." Id.

Defendants conclude that "Plaintiff's [O]pposition fails to explain how its overly broad request fits and complies with the FOIA's regulations[]" and, therefore, "this Court should grant Defendants' [M]otion." Id. at 8.

## II.     LEGAL STANDARDS

### A.     Rule 12(c) Motions

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Like a Rule 12(b)(6) motion, a motion for judgment on the pleadings under . . . Rule . . . 12(c) challenges the legal sufficiency of the opposing party's pleadings. Quonset Partners, LLC v. City of Coachella, No. EDCV 22-672 JGM (KKx), 2022 WL 18359138, at *2 (C.D. Cal. Dec. 9, 2022).

"For purposes of a Rule 12(c) motion, the non-moving party's allegations must be accepted as true, while the moving party's allegations that have been denied are assumed to be false." Id. (citing Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted)). "In addition, the non-movant's allegations must be construed in her favor." Id. (citing Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Id. (citing Hal Roach, 896 F.2d at 1550).

"A court typically cannot go beyond the pleadings to resolve an issue in a motion for judgment on the pleadings without converting the motion into one for summary judgment." Id. at *3 (citing Hal Roach, 896 F.2d at 1550); see also Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health, 654 F.3d 919, 925 n.6 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings . . . [o]therwise, the proceeding is converted to summary judgment." (citations omitted)). "However, there are several exceptions to this rule: a court may still properly consider exhibits attached to the non-movant's pleading, documents referred to in the non-movant's pleading, and judicially noticeable facts." Id. (citing Yang v. Dar Al-Handash Consultants, 250 F. App'x 771, 772 (9th Cir. 2007); Signal Hill Serv., Inc. v. Macquarie Bank Ltd., No. CV 11-01539 MMM (JEMx), 2013 WL 12243947, at *2 (C.D. Cal. Feb. 19, 2013)). District courts have "discretion not to convert the motion for judgment on the pleadings into a summary judgment motion." Yakima Valley Mem'l Hosp., 654 F.3d at 925 n.6 (citation omitted).

"Where granting a motion for judgment on the pleadings, a court should grant leave to amend if the complaint can be cured by additional factual allegations." Quonset Partners, 2022 WL 18359138, at *3 (citing Somers v. Apple, Inc., 729 F.3d 953, 960 (9th Cir. 2013)). However, "dismissal without leave to amend is proper if it is clear that the complaint [cannot] be saved by amendment." Id. (citing Somers, 729 F.3d at 960).

B. **FOIA Requests**

"Congress enacted FOIA in recognition of the fact that government transparency is critical to a functioning democracy, but may be difficult to achieve against unwilling officials." Yagman v. Pompeo, 868 F.3d 1075, 1078-79 (9th Cir. 2017) (citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 151-52 (1989)). "FOIA is therefore 'broadly conceived,' . . . favoring 'full agency disclosure unless information is exempted under clearly delineated statutory language[.]'" Id. at 1079 (quoting John Doe Agency, 493 U.S. at 152; EPA v. Mink, 410 U.S. 73, 80, 93 (1973); Dep't of Air Force v. Rose, 425 U.S. 352, 360-61 (1976)). "Even the clearly delineated exemptions, however, 'do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.'" Id. (quoting John Doe Agency, 493 U.S. at 152; Rose, 425 U.S. at 361); see also id. ("[A] duty of liberal construction accords with the basic purpose of FOIA 'to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.'" (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978)). Moreover, "[t]hese exemptions are explicitly made exclusive and must be narrowly construed." Ctr. for Investigative Reporting v. United States Dep't of Just., 14 F.4th 916, 923 (9th Cir. 2021) (internal quotations and citations omitted). In fact, "[o]ver the years, Congress has repeatedly updated and strengthened FOIA." Id. (citations omitted).

"Accordingly, an agency must respond to any request for records that '(i) reasonably describes such records and (ii) is made in accordance with published [agency] rules' by promptly making the requested records available, . . . or, if applicable, by invoking one of FOIA's narrowly construed exemptions[.]" Yagman, 868 F.3d at 1079 (quoting 5 U.S.C. § 552(a)(3)(A); 5 U.S.C. § 552(b)); see also id. at 1081 ("FOIA requires that federal agencies make records available only upon a request which reasonably describes the records sought." (citations and internal quotation marks omitted)). Further, "[a]lthough 'courts have been wary to prohibit this requirement from becoming a loophole through which federal agencies can deny the public access to legitimate information, it has been held that broad, sweeping requests lacking specificity are not permissible.'" Id. (quoting Marks v. United States, 578 F.2d 261, 263 (9th Cir. 1978); 5 U.S.C. § 552(a)(3)).

III. **DISCUSSION**

Here, Defendants' Motion fails for two reasons. First, and primarily, Defendants have not established that the individual requests in Plaintiff's Request are vague or overbroad when Plaintiff's Request is viewed broadly and liberally, Yagman, 868 F.3d at 1079, and when the Court construes Plaintiff's allegations in Plaintiff's favor, as it must at this stage of the litigation, Quonset Partners, 2022 WL 18359138, at *2 (citing Gen. Conf. Corp. of Seventh-Day Adventists, 887 F.2d at 230).

Defendants argue that "most requests—including Nos. 1, 4 & 8—do not request identifiable records at all but request 'any and all' documents and 'communications' 'relating to,' 'regarding,' 'related to,' or that 'identify' certain subjects." ECF No. 44, Mot. at 16. Defendants assert, and appeared to confirm during argument, that, categorically, "[r]equests that include

language such as 'relate in any way to' are too vague." Id. (citing, in relevant part, Freedom Watch, 925 F. Supp. 2d at 61 ("Freedom Watch")) (other citations omitted).[3]

The Court, however, observes that the facts of this case are distinguishable from the facts of Freedom Watch, which Defendants principally rely on, because Plaintiff's Request in this case appears to be more precise and narrowly tailored than the Plaintiff's FOIA request in Freedom Watch. For example, when discussing the plaintiff's FOIA request in Freedom Watch, the district court in that case agreed with the defendants' assertion "that none of the records were described in reasonable detail and that [the plaintiff] asked seven agencies to look for just about everything they have regarding, among other things, Iran, China, Venezuela, Russia, sanctions, waivers, and communications between the Secretary of State, the Secretary of the Treasury, and the President." Freedom Watch, 925 F. Supp. 2d at 61 (citation and brackets from original omitted). The district court in Freedom Watch noted that "a useful example of the insufficiently precise nature of the FOIA requests" was the plaintiff's request that "sought 'all' records that 'refer or relate to . . . [a]ny and all communications to or from President Obama, his administration, or the White House **in general** regarding China.'" Id. (citation omitted) (emphasis added).

In contrast, in this case, Plaintiff seeks, for example in part one of the Request, "[a]ny and all documents, without limitation to date, including any communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals[: Arellano, Bucio, Gulema, and Leon]." ECF No. 24, FAC at 17.

Thus, where the plaintiff in Freedom Watch was seeking any communications regarding an entire country "in general[,]" Freedom Watch, 925 F. Supp. 2d at 61, part one of Plaintiff's Request as discussed above seeks information regarding Defendants' communications as they specifically related to "the hospitalization, death, decision to release from custody, or release from custody" of only four specific people, ECF No. 24, FAC at 17. Accordingly, because Plaintiff's Request in this case is not factually analogous to the plaintiff's request in Freedom Watch that sought information from seven agencies about four countries, the Court finds that Defendants' reliance on Freedom Watch and other cases that also dealt with factually dissimilar situations, is not helpful to analyzing the facts of this case. Consequently, Defendants' Motion fails for this second reason.

Though broader than the first three parts of the Request, the remaining six parts are also not so overbroad as to warrant dismissal at this stage of the litigation. As discussed further in the Order, the parties have been communicating with each other to arrive at appropriate search terms to narrow the request and to identify databases where the information may reside. This is not uncommon, even for appropriate requests, as the practicality of searching for materials without identifying appropriate search terms is nearly impossible with the current mechanisms of document storage.

---

[3] The Court observes that Defendants urged the Court at the August 11, 2023 Status Conference to pay particular attention to the ruling in Freedom Watch when analyzing Defendants' Motion.

Additionally, though not conclusive to this Magistrate Judge, Defendants represented to the Court that they have already identified, processed, and delivered a significant number of documents in response to Plaintiff's Request, which suggests that Plaintiff did not fail to reasonably describe the records Plaintiff seeks in Plaintiff's Request. See Pub. Emps. for Env't Resp. v. U.S. Env't Prot. Agency, 314 F. Supp. 3d 68, 76 (D.D.C. June 1, 2018) (finding that an agency "can claim no confusion over the records sought" in part of a FOIA request where "the agency represented to th[e] Court that [the agency] was processing any responsive records as to [that] part . . . of the request").

Specifically, Defendants indicated in their November 2022 Joint Report that "ICE ha[d] already produced 2,444 pages of documents[,]" and that "OIG processed 701 pages of records and ha[d] already produced 121 pages of records" at that time. ECF No. 28, Joint Report at 9. Defendants added that they "ha[d] initially identified approximately 8,050 pages of potentially responsive records (with ICE FOIA identifying approximately 5,550 pages and DHS-OIG identifying 2,500 pages)" and that "[a]ny segregable, non-exempt portion of those documents w[ould] be released to Plaintiff[], in whole or in part, subject to any applicable FOIA exemptions." Id. at 13 (citing 5 U.S.C. §552(b)). Defendants also indicated at that time that "ICE can commit to processing 500 pages per month and DHS-OIG can commit to processing between 500-750 pages per month." Id.

The production of over 2,500 documents, coupled with the identification of over 8,000 pages of potentially responsive documents by ICE and OIG by November 2022, suggests that Plaintiff's Request was not so vague that a professional employee of Defendants' agencies could not locate the records Plaintiff sought "with a reasonable amount of effort[,]" Truitt, 897 F.2d at 544, as Defendants claim in their Motion.

Moreover, Defendants indicated in their February 2023 Proposed CMO that ICE and OIG could each review and process "no less than 1,000 pages per month," and could "release all responsive non-exempt records and an accounting of any withheld records" to Plaintiff monthly. ECF No. 39-1, Proposed CMO at 2. Defendants' commitment to cumulatively review and process 2,000 pages of records per month further demonstrates that Plaintiff's Request was not so vague that Defendants could not identify the records Plaintiff sought in the Request.

Similarly, Defendants represented to the Court in their February 2023 Proposed CMO that their review and production of records would be complete in "May 2023." Id. at 3. This estimation was presented to the Court after the parties thrice met and conferred and thrice appeared at CMCs before the Court where the parties discussed, in relevant part, the rate of review and production of documents. See ECF Nos. 36-38, CMCs. Thus, the fact that Defendants were able to interpret Plaintiff's Request sufficiently enough to represent to the Court that they could complete their review and production of records by a particular time further suggests that Plaintiff's Request was neither too vague nor overbroad.

As such, Defendants' Motion is **DENIED**.

**IT IS SO ORDERED.**