E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-3989 | 8790
     Facsimile: (213) 894-7819
     E-mail: Joseph.Tursi@usdoj.gov
         Jason.Axe@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>        Plaintiff,<br><br>        v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>        Defendants. | No. 2:22-cv-04760-SHK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S REQUEST FOR SCHEDULING ORDER AND FOIA PROCESSING RATE**<br><br>(Concurrently filed with Declaration of Fernando Pineiro)<br><br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS & PROCEDURAL HISTORY ...................................1

III.    ICE FOIA STAFF'S CURRENT WORKLOAD & PROCESSING OF
        PLAINTIFF'S FOIA REQUEST ..........................................................................3

        A.    Plaintiff's FOIA Request ...........................................................................4

              1.     Parts 1-3. .........................................................................................4

              2.     Part 4. ..............................................................................................5

              3.     Part 5 ...............................................................................................5

              4.     Part 6 ...............................................................................................5

              5.     Part 7 ...............................................................................................5

              6.     Part 8 ...............................................................................................6

              7.     Part 9 ...............................................................................................6

IV.     ARGUMENT ........................................................................................................7

        A.    Plaintiff Is Not Entitled to Formal or Informal Discovery at This
              Point of the Litigation................................................................................7

        B.    Plaintiff's Request is an Improper Attempt to Impermissibly
              Micromanage ICE's Ongoing Processing of the FOIA Request .................9

        C.    An Increase to the Processing Rate Is Unwarranted as ICE Is Already
              Processing Plaintiff's FOIA Request on an Expedited Basis. ...................14

V.      CONCLUSION...................................................................................................20

i

# TABLE OF AUTHORITIES

DESCRIPTION                                                                    PAGE(S)

*ACLU v. DHS*,
   2021 WL 5449733 (S.D.N.Y. 2021) ............................................... 17

*Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*,
   325 F. Supp. 3d 162 (D.D.C. 2018) .............................................. 14

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*,
   470 F. Supp. 3d 32 (D.D.C. 2020) .............................................. 18

*Animal Legal Def. Fund v. FDA*,
   836 F.3d 987 (9th Cir. 2016) .................................................. 10

*Bigwood v. United States Dep't of Def.*,
   132 F. Supp. 3d 124 (D.D.C. 2015) ............................................. 11

*Broemer v. FBI, CV 08-05515 MMM*,
   2010 WL 11474673 (C.D. Cal. 2010) ............................................. 9

*CareToLive v. FDA*,
   631 F.3d 336 (6th Cir. 2011) .................................................. 8

*Chaverra v. U.S. Immigr. & Customs Enf't*,
   2020 WL 7419670 (D.D.C. Nov. 5, 2020) ......................................... 18

*City of Los Angeles v. FAA*,
   2020 WL 10573270 (C.D. Cal. 2020) ............................................. 8

*Colbert v. Fed. Bureau of Investigation, No.16-cv-1790
   (DLF)*, 2018 WL 6299966 (D.D.C. Sept. 3, 2018) ................................ 17

*Daily Caller News Found. v. FBI*,
   387 F. Supp. 3d 112 (D.D.C. 2019) ............................................. 19

*DiBacco v. U.S. Dep't of the Army*,
   795 F.3d 178 (D.C. Cir. 2015) ................................................. 11

*Dillon v. U.S. Dep't of Just.*,
   444 F. Supp. 3d 67 (D.D.C. 2020) ............................................. 14, 15

*Documented NY v. U.S. Dept. of State*,
   2021 WL 4226239 (S.D.N.Y. Sept. 16, 2021) ..................................... 19

*Hoffman v. U.S. Customs & Boarder Prot.*,
   2023 WL 4237096 (E.D. PA. 2023) .............................................. 11

*Inter-Coop. Exch. v. United States Dep't of Com.*,
   36 F.4th 905 (9th Cir. 2022) ................................................. 11

*Johnson v. Exec. Off. for U.S. Att'ys*,
   310 F.3d 771 (D.C. Cir. 2002) ................................................ 11

*Jud. Watch, Inc. v. U.S. Secret Serv.*,
   726 F.3d 208 (D.C. Cir. 2013) ................................................ 10

ii

*Lane v. Dep't of Interior,*
  523 F.3d 1128 (9th Cir. 2008) ............................................................ 7, 8

*Lion Raisins, Inc. v. USDA,*
  2009 WL 160283 (E.D. Cal. 2009) ............................................................ 8

*Long v. Dep't of Homeland Sec.,*
  436 F. Supp. 2d 38 (D.D.C. 2006) ...................................................... 10-11

*Los Angeles Times Commc'ns LLC v. U.S. Dep't of Homeland Sec.,*
  2020 WL 7055904 (C.D. Cal. 2020) ........................................................ 16

*Marino v. DOJ,*
  993 F. Supp. 2d 1 (D.D.C. 2013) ............................................................ 12

*McGehee v. U.S. Dep't of Just.,*
  362 F. Supp. 3d 14 (D.D.C. 2019) .......................................................... 15

*Meeropol v. Meese,*
  790 F.2d 942 (D.C. Cir. 1986) ............................................................... 12

*Middle E. Forum v. DHS,*
  297 F. Supp. 3d 183 (D.D.C. 2018) ........................................................ 19

*Miscavige v. IRS,*
  2 F.3d 366 (11th Cir. 1993) .................................................................... 8

*Nat'l Day Lab. Org. Network v. U.S. Immigr. & Customs Enf't Agency,*
  811 F. Supp. 2d 713 (S.D.N.Y. 2011) ..................................................... 16

*Nat'l Sec. Counselors v. U.S. Dep't of Just.,*
  848 F.3d 467 (D.C. Cir. 2017) ............................................................... 17

*Negley v. U.S. Dep't of Just.,*
  305 F. Supp. 3d 36 (D.D.C. 2018) .......................................................... 17

*Oglesby v. U.S. Dep't of the Army,*
  920 F.2d 57 (D.C. Cir. 1990) ................................................................. 12

*Our Child.'s Earth Found. v. Nat'l Marine Fisheries Serv.,*
  85 F. Supp. 3d 1074 (N.D. Cal. 2015) ..................................................... 10

*Pollard v. F.B.I.,*
  705 F.2d 1151 (9th Cir. 1983) ................................................................. 8

*Reps. Comm. For Freedom of the Press v. FBI,*
  3 F.4th 350 (D.C. Cir. 2021) .................................................................. 15

*Republican Nat'l Comm. v. U.S. Dep't of State,*
  2016 WL 9244625 (D.D.C. Sept. 16, 2016) .............................................. 19

*Schrecker v. DOJ,*
  217 F. Supp. 2d 29 (D.D.C. 2002) ........................................................ 7-8

*United States Comm. on Refugees v. Dep't of State, Civil Action No. 91–3303,*
  1992 WL 35089 (D.D.C. Feb. 7, 1992) ..................................................... 11

*U.S. Dep't of State v. Ray,*
  502 U.S. 164 (1991) ............................................................................. 10

iii

*Weisberg v. U.S. Dep't of Justice,*
    745 F.2d 1476 (D.C.Cir.1984) ................................................................ 12-13

*White v. Exec. Off. of U.S. Att'ys,*
    444 F. Supp. 3d 930 (S.D. Ill. 2020) ...................................................... 17

*Yonemoto v. Dep't of Veterans Affairs,*
    686 F.3d 681 (9th Cir. 2011) .................................................................. 10

*Zemansky v. EPA,*
    767 F.2d 569 (9th Cir.1985) .................................................................. 12

**Federal Statutes**

5 U.S.C. § 552(a)(4)(B) ............................................................................ 10

## I.   <u>INTRODUCTION</u>

Plaintiff American Civil Liberties Union of Southern California's Request for Scheduling Order and Processing Rate, Dkt. 57 (the "Request"), lacks merit and should be denied. Relying on its disagreement with the sequence in which Defendant Immigration and Customs Enforcement ("ICE") is processing the nine-part FOIA request at issue in this litigation – which happens to be the same sequence Plaintiff drafted it – Plaintiff now demands that this Court order Defendant ICE to: (1) provide Plaintiff's counsel with direct access to an employee within ICE's FOIA Office to discuss the request, (2) justify its searches *prior* to summary judgment briefing, and (3) process documents at a pace faster than the *expedited* rate already ordered by the Court (Dkt. 40). Plaintiff offers no legal authority for any of its requested relief.

As for Plaintiff's demand for its counsel to be provided access to speak with an ICE employee, that is, in effect, a demand for informal discovery that is not appropriate at this stage of the litigation. Plaintiff's demands for formal responses to its inquiries related to the status of ICE's *ongoing* searches is similarly premature because they, in effect, require ICE to justify its searches *before they have concluded*. Finally, Plaintiff's request for a processing rate even greater than what it has already been given lacks justification.

As explained below, the Court should deny Plaintiff's Request.

## II.   <u>STATEMENT OF FACTS & PROCEDURAL HISTORY</u>

The American Civil Liberties Union's efforts to pursue its request for documents began on July 14, 2021, when it served a FOIA request on ICE, DHS, and DHS's Office of Inspector General. Having not received a response to its request, the ACLU filed an action in the District Court for the District of Columbia on October 7, 2021, challenging the improper withholding of agency records. *See ACLU v. DHS*, D.C. District Court Case No. 1:21-cv-02627. There, the defendants moved to dismiss, but as that motion was pending, the ACLU voluntarily dismissed the action on June 28, 2022, abandoning any challenge to that FOIA request. *See id.* at Dkt. 17.

On April 29, 2022, the ACLU of Southern California ("ACLU SoCal"), the plaintiff in this action, submitted a nine-part FOIA request that sought documents substantially similar to those requested by the ACLU in the D.C. District Court in July 2021. *See* Dkt. 1-1. In October 2022, Plaintiff filed its operative First Amended Complaint, alleging the improper withholding of records. Dkt. 24. On November 29, 2022, the parties filed their Joint Rule 26(f) Report with the Court.  Dkt. 28. In that report, Defendants noted that they had "initially identified approximately 8,050 pages of potentially responsive records." Dkt. 28 at 13. Defendants did not define the 8,050 pages of potentially responsive records as the entire universe of records that would be identified in response to the FOIA request.  *See* Dkt. 28.

In January 2023, the Court held three case management conferences in which the parties discussed, in relevant part, the rate of processing of documents. *See* Dkts. 36-38. Defendants' counsel was also ordered to provide "a list of citations to cases that provide for a different rate of production than those provided by Plaintiff's counsel." Dkt. 36. Defendants' counsel did so by email on January 13, 2023.  (Attached hereto as Exhibit "1" is a true and complete copy of defense counsel's January 13, 2023 email.) After discussions, the parties reached an agreement as to the rate of review of documents by Defendants. Dkt. nos. 37, 38.

In February 2023, the Court issued a Case Management Order ("CMO"), wherein Defendants ICE and OIG were ordered to review and process "no less than 1,000 pages per month," and to "release all responsive non-exempt records and an accounting of any withheld records" to Plaintiff monthly. Dkt. 40 at 2. The CMO noted that Defendants anticipated that the review and production of the documents that had already been identified would be concluded by May 2023. Dkt. 40 at 3. However, the CMO also acknowledged that searches for records were ongoing and that Defendants would inform Plaintiff's counsel "if the locations/databases and/or search terms utilized or searched deviate from those locations previously represented as being searched." Dkt. 40 at 2. As the searches continued, Defendants identified additional documents that were potentially

responsive to Plaintiff's requests. Dkt. 57-2 at 46 (noting recent identification of 40,000 pages to be processed).

The parties have been in regular communication about Plaintiff's FOIA request. *See* Dkt. 57-1, ¶¶ 2-19.[1] These communications have resulted in Defendants having a clearer understanding regarding portions of Plaintiff's request and have helped to identify search terms and search locations preferred by Plaintiff. *Id.* The parties' communications regarding the issues raised by Plaintiffs has continued, including in their most recent correspondence.  Dkt. 57-2 at 128-132; Ex. 2 attached hereto. From March 2023 to the present, Defendants ICE and OIG have complied with the Court's CMO and processed records at the expedited rate of 1,000 pages per month. As of the date of this filing, OIG has completed its search and production, and ICE continues to make its monthly productions in full compliance with the CMO. ICE has further continued to engage in discussions with Plaintiff to narrow the scope of the requests and reach agreement (if possible) as to search terms and search locations.

## III.   ICE FOIA STAFF'S CURRENT WORKLOAD & PROCESSING OF PLAINTIFF'S FOIA REQUEST

For context, Defendant ICE submits an updated declaration from Fernando Pineiro, the FOIA Director for the ICE FOIA Office.[2] As Mr. Pineiro explains, the ICE FOIA Office is processing approximately 32,456 open FOIA requests addressing a backlog of 29,398 FOIA requests. Declaration of Fernando Pineiro, ¶ 4. There are approximately 161 open federal district court cases, and 69 cases in active record production. *Id.*

In response to the increasingly heavy workload facing the ICE FOIA Office, it has

---

[1] Plaintiff's October 19, 2023 correspondence was omitted as an exhibit. *See* Dkt. 57-1, ¶ 19 (referencing the attachment of an Exhibit R). Attached hereto as Exhibit 2 is Plaintiff's October 19, 2023 correspondence.

[2] This is the third declaration from Mr. Pineiro that ICE has filed here. *See* Dkt. nos. 29-1 & 48-1.

adopted a "first-in, first-out basis" for processing records, which ensures fairness to all FOIA requestors by not prioritizing one request over another. *Id.*, ¶¶ 6-7.

The sixty-nine cases in active production have an average processing rate of 750 pages per month, per case. *Id.*, ¶ 8. This means, on average, the ICE FOIA Litigation Unit is currently processing approximately 51,000 pages of potentially responsive records per month. *Id.* To meet its obligations for all cases in litigation by ensuring that all of the FOIA matters progress, and so each requester receives a response, the ICE FOIA Office typically cannot process more than 750 pages or 7.5 minutes of media files per month per case. *Id.*, ¶ 11. Any increase in production for one case will inevitably hinder ICE FOIA's ability to process records for production in other matters. *Id.*

### A.    Plaintiff's FOIA Request

Here, with respect to Plaintiff's nine-part request, ICE initially estimated that the number of responsive pages was far less than the approximately 48,000 pages that have been identified to date. *Id.*, ¶ 16. However, it is common in FOIA cases that estimates made regarding total number of responsive records at the beginning of litigation often change drastically once a search is initiated. *Id.* This is especially true here, where the parties are actively engaged in negotiations regarding the FOIA request.

#### 1.    Parts 1-3.

With respect to Request Nos. 1-3, the search resulted in over 41,000 pages of potentially responsive documents. *Id.*, ¶ 17. ICE was able to de-duplicate the records and conduct email threading to reduce the number to approximately 12,000 pages. *Id.* There are currently approximately 9,000 pages remaining to be processed for Request Nos. 1-3. *Id.*

Plaintiff requested that the records of one of the decedents identified in Parts 1-3, Teka Gulema, be sorted by date, specifically seeking records dated October 1, 2015 and after. *Id.*, ¶ 18. ICE has now determined that it is able to perform this task, and it has identified approximately 318 pages of records dated October 1, 2015 and after that remain to be processed for Mr. Gulema. *Id.*

4

### 2.   Part 4.

With respect to Part 4, the search there initially resulted in over 530,000 documents (not pages), and after Boolean connectors were run, that amount was reduced to 142,000 documents (not pages). *Id.*, ¶ 20-22. Plaintiff has also requested that the emails of the Directors of ICE prior to Tae Johnson from 2016 through 2021 be searched. This includes emails of five additional individuals. ICE has no objection to running these searches, although obtaining and searching their archived emails could take several weeks.

### 3.   Part 5

It is ICE's position that this search is complete, and the records will be processed in due course. *Id.*, ¶ 25.

### 4.   Part 6

ICE reads this request as specifically seeking documents *created by* DHS OIG or ICE OPR. *Id.*, ¶ 26. As such, ICE OPR was tasked with a search and did not find any responsive records. *Id.* As Plaintiff has been made aware, SIRs and SENs are generated at the field office level. *Id.* There are 25 field offices. *Id.* In order to conduct a search for SIRs and SENs that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility, each ERO field office would need some type of identifying information, such as name, date of event or alien number. *Id.*

### 5.   Part 7

ICE agreed to ask OPR to run a search of agreed upon search terms. *Id.*, ¶ 27. OPR found no responsive records. *Id.* Just as in Request No. 6, if Plaintiff would like SIRs and SENs from a specific field office that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody

5

immediately prior to transfer to an emergency room, hospital, or external care facility, then they need to provide identifying information, such as name, date of event or alien number. *Id.*

### 6.   Part 8

A search was run of the emails of Dr. Stewart Smith using agreed upon search terms. *Id.*, ¶ 28. A secondary search was run using agreed upon Boolean connectors. *Id.* The search resulted in 1,711 pages of potentially responsive documents. *Id.* This search is complete, and these records will be processed in due course. *Id.*

### 7.   Part 9

ICE tasked nine Regional Field Medical Coordinators (FMCs) and Regional Health Service Administrators (HSAs) to search their emails for search terms that were agreed upon with the Plaintiff. *Id.*, ¶ 29. A preliminary search by just one of ICE's HSAs yielded over 16,000 emails (not pages), most of which appeared not to be related (or only peripherally related) to one of the proposed search terms. *Id.*

As a result, ICE requested clarification from Plaintiff regarding the specific types of records Plaintiff was seeking so that ICE could adequately craft a search that would result in fewer initial hits. *Id.*, ¶ 30. Alternatively, ICE proposed (a) adding a second term such as "bill," "invoice," etc. to the preliminary search to reduce the number of records initially identified, or (2) pairing search terms, e.g., "Death + record," "Ambulance + invoice," and "Hospital + bills." *Id.* In their October 19, 2023 correspondence, Plaintiff suggests using different search terms and Boolean connectors. Plaintiff further requests that ICE search the Resource Management Unit Staff and the ICE Office of the Chief Financial Officer. *Id.* Individuals at ICE who are subject matter experts on the information requested believe that the custodians most likely to possess responsive records are the Regional Field Medical Coordinators and the Regional Health Service Administrators within IHSC. *Id.* If Plaintiff is agreeable, ICE will task these nine individuals with conducting searches using the search terms and connectors suggested by Plaintiff. *Id.*; *see also* Defendants' November 2, 2023 correspondence (attached hereto as

6

1  Exhibit 3).

2  **IV.**   <u>**ARGUMENT**</u>

3        Plaintiff seeks an order directing: (1) ICE to make available one of its employees

4  to speak directly with Plaintiff's counsel, (2) the parties to meet and confer to narrow

5  responsive records and set search parameters, and (3) increasing the processing rate for

6  responsive records. As explained below, these requests are improper.

7        First, Plaintiff is not entitled to formal or informal discovery at this juncture,

8  which is precisely what an order directing ICE to made available an employee to confer

9  with over the substance of the FOIA request and ICE's technical procedures for

10  conducting its searches.

11        Second, the agency has discretion in conducting a search for responsive

12  documents, to include both the terms used and the locations searched. The weight of

13  authority favors Defendants' position that requiring it to justify its searches and

14  productions while they are still taking place is improper. Instead, the agency bears the

15  burden of justifying the search at the summary judgment stage. Plaintiff should not be

16  permitted to micromanage that process.

17        Third, the expedited processing rate already in effect in this case is already well

18  above what courts generally order. That a broad FOIA request has returned a large

19  number of documents does not entitle the requestor to demand that its FOIA request take

20  precedence over all others.

21        **A.**   <u>**Plaintiff Is Not Entitled to Formal or Informal Discovery at This Point**</u>

22              <u>**of the Litigation**</u>

23        Discovery is the exception, not the rule, in FOIA cases. *Lane v. Dep't of Interior*,

24  523 F.3d 1128, 1134 (9th Cir. 2008) (noting that in a FOIA case "discovery is limited

25  because the underlying case revolves around the propriety of revealing certain

26  documents"). Discovery is generally not available "when an agency's declarations are

27  reasonably detailed, submitted in good faith and the court is satisfied that no factual

28  dispute remains." *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349

F.3d 657 (D.C. Cir. 2003). Even if a court determines that the government's declarations are insufficient, a court may order the government to submit additional declarations as an alternative to permitting discovery. *See Pollard v. F.B.I.*, 705 F.2d 1151, 1154 (9th Cir. 1983).

Unsubstantiated claims that an agency has acted in bad faith, are not sufficient to warrant discovery. *CareToLive v. FDA*, 631 F.3d 336, 345-46 (6th Cir. 2011). District courts typically stay discovery in cases brought under the FOIA on the grounds that it is premature. *See, e.g.*, *Lane*, 523 F.3d at 1134-35 (holding that district court's "delay of discovery" with respect to plaintiff's FOIA claim until after summary judgment "was certainly within its discretion"); *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("The plaintiff's early attempt in litigation of this kind . . . to take discovery depositions is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions."); *Lion Raisins, Inc. v. USDA*, 2009 WL 160283, at *3 (E.D. Cal. 2009) (denying discovery request before summary judgment stage because "there is not enough information to conclusively determine, at this time, whether or to what extent discovery should be permitted, or whether the case or particular issues can be properly decided without discovery").

Courts in this district have also generally followed that approach. *See, e.g.*, *Bader v. U.S. Dep't of Justice*, 2:22-cv-00202 PA (MRWx) (Minute Order [Dkt. 26], "Courts routinely delay discovery until after summary judgment in Freedom of Information Act ("FOIA") cases."); *City of Los Angeles v. FAA*, 2020 WL 10573270 (C.D. Cal. 2020) (Order Granting Defendant's Motion to Stay Discovery Pending Hearing on Defendant's Motion for Summary Judgment); *Pusa v. FBI*, 2:13-cv-04658 BRO (PLAx) (Order Staying Discovery, March 7, 2014 [Dkt. 54]) (staying discovery pending a hearing on defendants' motions for summary judgment); *Yagman v. U.S. Dep't of Justice*, 2:13-cv-00354 PA (Ex) (In Chambers Minute Order, August 2, 2013 [Dkt. 16]) (staying discovery "pending a hearing on the Defendants' motions for summary judgment");

*Broemer v. FBI*, CV 08-05515 MMM, 2010 WL 11474673 (C.D. Cal. 2010) ("Because the Ninth Circuit's holding in Lane establishes that discovery in FOIA cases prior to summary judgment is inappropriate, the court grants the government defendants' ex parte application and stays discovery in this matter until it issues an order on the government defendants' anticipated motion for summary judgment.").

Here, Plaintiff's request for an order requiring Defendants to "make available the ICE FOIA Office responsible for this Request, to address ways to reduce the total number of responsive FOIA records Defendants have located for processing including as to Parts 1 to 3 of the Request, and to finalize the search parameters for remaining searches for Parts 4 to 9 of the Request" (Dkt. 57-3 at 2) is an improper effort to obtain informal discovery regarding ICE's search. To the extent that Plaintiff or its counsel would like to communicate any information to ICE's FOIA Office, they are free to do so in writing, through ICE's counsel. Indeed, they have been offered the opportunity on multiple occasions to do so (Dkt. 57-2 at 10, 46, 58, 113, 116, and 129), but continue to decline that request as they hope that this Court will acquiesce to their improper demand for direct access to an employee of Defendant.

**B.** **Plaintiff's Request is an Improper Attempt to Impermissibly Micromanage ICE's Ongoing Processing of the FOIA Request**

ACLU SoCal offers no legal support for its request that the Court order the parties to meet and confer with the ICE FOIA Office and to "finalize search parameters." This is because Plaintiff's Request is inappropriate and stands counter to legal authority. ICE continues to process Plaintiff's FOIA request. It is left to the agency's discretion how and where to search. While ICE remains open to considering any suggestions Plaintiff wishes to offer over search terms and locations, Plaintiff cannot demand that the parties agree over them. Nothing in the FOIA or case law supports such a demand while a search is ongoing. Nor does Plaintiff's Request account for the possibility that the parties may well reach an impasse which can then be addressed during summary judgment briefing. Disagreements over search adequacy are common in FOIA cases, but they are

9

not adjudicated in the middle of ongoing searches and productions.

"FOIA cases are typically decided on motions for summary judgment." *Our Child.'s Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1081 (N.D. Cal. 2015) (citing *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2011) *as amended* (Jan. 18, 2012), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987, 990 (9th Cir. 2016)). An agency bears the burden of demonstrating that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B). Specifically, an agency bears the burden of demonstrating that it conducted an adequate search and properly withheld documents under one of the recognized exemptions. *Id.*; *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). An agency may meet its burden by submitting affidavits or declarations that "contain reasonable specificity of detail rather than merely conclusory statements." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).

Through the Request, Plaintiff seeks to depart from typical resolution of FOIA cases and place on ICE what the FOIA and case law does not – justification of its search terms, locations, and productions while the searches and processing are *ongoing*. This is not conjecture on Defendants' part. As Plaintiff has communicated, "While we appreciate Defendants may not agree to all of Plaintiff's proposed search parameters, we need to know Defendants' positions relating to them to assess whether Plaintiff will need to move the Court to address the adequacy of Defendants' searches and productions." Dkt. 57-2 at 118.[3] There is no authority for Plaintiff to seek such relief.

Other courts have rejected such this very approach. *See Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) ("[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the

---

[3] So too does Plaintiff make a similar improper demand in its October 19, 2023 correspondence as it states, with respect to Part 4 "ICE's search was certainly deficient at least in that was not calculated to return any IHSC policies … ICE's searches for those Parts lack terms related to training and protocols. ICE must remedy this deficiency by including an IHSC custodian to be searched for this Part." *See* Ex. 2 hereto at 4.

Court the information necessary to make a decision on any material that might be subject to an exemption"); *see also United States Comm. on Refugees v. Dep't of State,* Civil Action No. 91–3303, 1992 WL 35089, at *1 (D.D.C. Feb. 7, 1992) ("the preparation of a *Vaughn* index is unwarranted before the filing of dispositive motions."). But in seeking the Request here, Plaintiff effectively asks that the Court take on the role of a special master and ensure that the parties agree over search terms and parameters. *See* Dkt. 57-3 at 2. This contradicts case authority.

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA requests. Where the search terms are reasonably calculated to lead to responsive documents, **a court should neither micromanage nor second guess the agency's search**." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (emphasis added); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (an agency "need not knock down every search design advanced by every requester[.]"). Nor is a search's adequacy determined by its fruits. *See Hoffman v. U.S. Border Prot.*, 2023 WL 4237096, at *5 (E.D. PA. 2023). Yet Plaintiff ignores this precedent and instead seeks an interim order from the Court regarding ICE's ongoing search and production.

As has been its objective for some time, Plaintiff improperly seeks the Court's assistance in micromanaging the processing of the FOIA request. Worse, even if the Court granted the Request, it would not bring finality to the concerns Plaintiff advances because ACLU SoCal notes in its proposed order that it would have the right to

1  challenge searches and withholdings in the future. *See* 57-3 at 4.

2       Plaintiff takes issue that ICE has not completed searches for certain sub-parts of

3  the FOIA request with terms that Plaintiff subjectively believes would be appropriate or

4  provided the searched locations. *See* Dkt. 57 at 12. But they offer no authority suggesting

5  that, at this time, ICE is obliged to do so. For a search to be reasonably calculated to

6  uncover all relevant documents, the agency does not need to search "every record

7  system" for the requested documents. *Marino v. DOJ*, 993 F. Supp. 2d 1, 9 (D.D.C.

8  2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Nor

9  must the agency's search be perfect. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir.

10  1986).

11       Plaintiff next charges that ICE is "far behind" schedule in responding to Plaintiff's

12  FOIA request. Not so. ICE's initial estimate, made in January 2023, that it anticipated

13  completing the search and processing by May 2023 was based on the initial

14  identification of approximately 8,050 pages of potentially responsive records. But

15  Plaintiff overlooks that it has continued to read its request amorphously and, through

16  ongoing meet and confer efforts, ICE has gleaned a better understanding of what

17  documents Plaintiff seeks. This has understandably led to a broadening of the search

18  which, in turn, has resulted in the identification of a greater number of potentially

19  responsive records. Indeed, Plaintiff argued that Defendants must "construe [the] request

20  liberally, particularly when a request is reasonably susceptible to a broader reading."

21  Dkt. 50 at 21 (citations and internal quotations omitted). ACLU SoCal now apparently

22  takes issue that Defendant is doing just that as Plaintiff complains that "ICE has

23  produced ballooning numbers of records **responsive** to Parts 1 to 3…." Dkt. 57 at 5

24  (emphasis added). This admission – that ICE is processing responsive records –

25  contradicts Plaintiff's argument that somehow ICE is not timely meeting its FOIA

26  obligations. Rather, the opposite is true. To comply with the FOIA, an agency must

27  conduct a "'search reasonably calculated to uncover all relevant documents.'" *Zemansky*

28  *v. EPA*, 767 F.2d 569, 571 (9th Cir.1985) (quoting *Weisberg v. U.S. Dep't of Justice*, 745

F.2d 1476, 1485 (D.C.Cir.1984)). That ICE has uncovered more documents than originally located in its preliminary search confirms that it is complying with its FOIA obligations here. As seen, Plaintiff does not complain that the produced documents are non-responsive. Instead, it appears that Plaintiff is upset that its broad FOIA request has resulted in the production of documents that it is less interested in, but which are still responsive nonetheless.

To that end, Plaintiff further seeks micromanagement in the form of an order requiring ICE to provide information over "the total number of pages of documents yet to be produced by ICE, disaggregated by individual" for Parts 1-3 as well as "hit counts" for Parts 4 to 9. Dkt. 57 at 14-15. In return, Plaintiff will "inform ICE the order in which ICE should process these four individuals' records" and consider *whether* it will waive to production of certain documents related to only one individual. *See* Ex. 2 at 2-3; *see also* Dkt. 57-3 at 3. Left unexplained is what authority Plaintiff relies on for requiring ICE to process records in Plaintiff's preferred order, the authority requiring ICE to provide such additional information, or how it would enable Plaintiff to "consider" waiving a small part of its broad FOIA request.

As the robust meet and confer correspondence attached to the Declaration of Laboni Hoq, Dkt. 57-1, demonstrates, both Defendants have gone beyond what FOIA requires as they have repeatedly responded to Plaintiff's inquiries and tried to find areas of compromise to narrow the scope of the FOIA request while continuing to process at the expedited rate ordered by the Court. Absent from Plaintiff's brief (or any of its correspondence) is an agreement to narrow the request without pre-condition.[4]

Again, ACLU SoCal cites no authority supporting the proposition that a FOIA requestor may submit a nine-part request and then be entitled to have a Court order how an agency conducts its search and processes potentially responsive records. Nor is there

---

[4] In any event, these arguments are moot. ICE provided this information to Plaintiff on November 2, 2023, in response to Plaintiff's October 19, 2023 correspondence. *See* Ex. 3.

any authority providing that a party may limit the scope of its request but nonetheless reserve the right to challenge the sufficiency of the search. Rather, it is the opposite. "[W]hen a plaintiff narrows [its] FOIA request[,] ... it supersedes any broader request set forth in the plaintiff's complaint[,]" *Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018), and a plaintiff "cannot, having limited the scope of [a] search, turn around and say that th[e] limited search is inadequate in its scope[,]" *Dillon v. U.S. Dep't of Just.*, 444 F. Supp. 3d 67, 87 (D.D.C. 2020).

Plaintiff puts forth strawman arguments to try to compensate for the lack of legal authority to support the Request. For example, Plaintiff contends "ICE's delay in finalizing search locations for records responsive to Parts 4 to 9, and its refusal in the first instance to use suggested tailored search terms, and search in locations and custodians obviously likely to have responsive records, has also unreasonably prolonged efficient resolution of this case." Dkt. 57 at 10. Again, a requestor cannot dictate the search terms and locations an agency uses, especially while the search is ongoing. Nor does the fact that searches remain ongoing indicate there has been a delay here given that ICE, as Plaintiff concedes, still has approximately 9,000 pages to process in response to Parts 1 to 3. Dkt. 57 at 5.[5]

As explained above, there is no authority to support Plaintiff's Request that ICE make available the ICE FOIA Office, that the parties be directed to reach agreement over search terms and locations, or that Plaintiff may micromanage the manner in which ICE conducts its searches and processes responsive records. What there is authority for, however, is for Plaintiff to narrow its FOIA request, which it has elected not to do.

**C.    <u>An Increase to the Processing Rate Is Unwarranted as ICE Is Already Processing Plaintiff's FOIA Request on an Expedited Basis.</u>**

To begin, Plaintiff's proposal over an increase to the processing rate does not logically make sense. Plaintiff requests that the Court enter an order "such that

---

[5] Plaintiff also paints an inaccurate picture – ICE has completed searches for Parts 5 and 8, as detailed above.

production of documents responsive to the FOIA Request shall be completed within six months." Dkt. 57 at 16. According to Plaintiff, this can be accomplished by ICE "process[ing] documents at a rate equal to the total page count for Parts 1 to 9 divided by six, rounding up to the nearest whole page, not to exceed 5,000 pages per month." *Id.* This presumes that the entire universe of documents would be under 30,000 pages. As Plaintiff notes, "ICE's production rate will depend on the total number of responsive pages for each of Part 1 to 9 of the Request…." Dkt. 57 at 16. But, as Plaintiff acknowledges, ICE has communicated that one of the subparts has returned over 142,000 *records* alone. Pineiro Decl. ¶ 22. Still, it contends that its proposal "will incentivize Plaintiff to work with ICE to cull out the vast majority of those responsive documents in order to ensure timely processing." *Id.* at 17. Plaintiff's statement is unclear to ICE. It appears that Plaintiff is suggesting that there is a "vast majority" of records that it believes are responsive but that it is uninterested in. If ICE's understanding is accurate, why not be explicit and state precisely what it is Plaintiff is most interested in now?

That aside, in seeking an increase to the processing rate, Plaintiff necessarily implies that its FOIA request is more important than others' as it demands priority such that this matter is resolved by Spring 2024 (or about two years after filing). Yet many FOIA cases take years to resolve. *See, e.g.*, *Reps. Comm. For Freedom of the Press v. FBI,* 3 F.4th 350, 359 (D.C. Cir. 2021) (resolving a FOIA dispute seven years after the plaintiff had originally filed its FOIA request); *McGehee v. U.S. Dep't of Just.*, 362 F. Supp. 3d 14, 16 (D.D.C. 2019) ("In 1998, the Indianapolis Colts drafted Peyton Manning, Britney Spears released her hit single "Baby One More Time," and Fielding McGehee submitted a [FOIA] request to the FBI. While the heydays of Mr. Manning and Ms. Spears have come and gone, Mr. McGehee's FOIA request lingers.").

Plaintiff chose to submit a broad nine-part FOIA request. Plaintiff continues to argue, without factual or legal support, that ICE has failed to meet its obligations under FOIA even though it continues to search for responsive records and has made monthly

15

1    productions pursuant to the Court's case management order.

2        ICE is processing the request in the sequence Plaintiff drafted it. Plaintiff offers no

3    arguments that such is inappropriate or that an agency lacks discretion to process a

4    multi-part request in the same sequence the requestor drafted it.

5        Rather, Plaintiff repeats its unfounded charge that it has suffered some prejudice

6    because it has not received *all* the documents it believes it is entitled to. That argument

7    may be persuasive if ICE was not continuing to process and search for responsive

8    documents. But it is. What this boils down to then is Plaintiff's expectation that its FOIA

9    request be prioritized above all others and, because predictably a broad request has

10   returned a large number of documents, it is entitled to a *further* expedited processing

11   rate. But the number of responsive records is not tied to a processing rate.

12       Plaintiff has repeatedly rebuffed ICE's invitation that it narrow the scope of its

13   FOIA request. Rather, at each juncture, Plaintiff questions the sufficiency of ICE's

14   *ongoing* searches and processing and demands responses from the agency within two

15   weeks under threat of judicial intervention. At no point, however, has Plaintiff argued

16   that ICE is producing unresponsive records. Again, it is just upset that its broad request

17   has resulted in records that, while responsive, are not of the utmost interest to it.

18       With respect to the rate itself, Plaintiff cites only two cases to try to support its

19   request that the processing here increase to 5,000 pages per month. Oddly, one of those

20   cases, *Los Angeles Times Commc'ns LLC v. U.S. Dep't of Homeland Sec.*, No. 2:20-cv-

21   10911-FLA-MRW, 2020 WL 7055904 (C.D. Cal. 2020), ordered a processing rate

22   below what Plaintiff seeks here. The other, *Nat'l Day Lab. Org. Network v. U.S. Immigr.*

23   *& Customs Enf't Agency,* 811 F. Supp. 2d 713 (S.D.N.Y. 2011), involved a single

24   production of over 14,000 pages resulting from the issuance of a preliminary injunction.

25   *See id,* Civil Case no. 10-cv-03488-SAS (Order (Dkt. 25)). It is distinguishable from an

26   ongoing process rate such as is the case here.

27       In a case similar to this one, a district court in the Southern District of New York

28   found that the ACLU's request to DHS to process *more than* 500 pages per month was

16

unreasonable. *See ACLU v. DHS*, 2021 WL 5449733 (S.D.N.Y. 2021).  In that case, as in this one, ICE had identified numerous records (there 9,000 potentially responsive records), and ICE's position was that due to limited resources and FOIA obligations in "approximately 170 open requests in litigation," it could process only 500 pages of potentially responsive material per month. *Id.* at *1.  As in this case, DHS submitted a declaration from Fernando Pineiro explaining ICE's workload and that the normal processing rate was 500 pages per month.  *Id.*

The district court in New York noted that requiring ICE to process 1,000 pages of potentially responsive material per month was "not practicable." *Id.* (citing *Documented NY v. U.S. Dep't of State*, (20 Civ. 1946 (AJN)) (S.D.N.Y. July 28, 2020), (Order (Dkt. No. 26) at 2-3 (approving 300 pages per month)); N.*Y. Civil Liberties Union v. Admin. for Children & Families*, (20 Civ. 183 (MKV)) (S.D.N.Y. Apr. 30, 2020) (Order (Dkt. No. 27) (approving 400 pages per month)). The court also explained that courts have issued orders providing for the processing of 500 pages per month, even where that schedule will result in lengthy production periods. *Id.* (citing *White v. Exec. Off. of U.S. Att'ys*, 444 F. Supp. 3d 930, 965 (S.D. Ill. 2020) (approving 500 pages per month and nine-year production period); *Colbert v. Fed. Bureau of Investigation*, No.16-cv-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (approving 500 pages per month and a decade-long production period); *Negley v. U.S. Dep't of Just.*, 305 F. Supp. 3d 36, 46 (D.D.C. 2018) (approving 500 pages per month and an eighty-year production period).

Similarly, the D.C. Circuit has approved the Government's standard "interim release policy," which provides for "processing requests in 500–page increments." *See Nat'l Sec. Counselors v. U.S. Dep't of Just.*, 848 F.3d 467, 471 (D.C. Cir. 2017). The policy, the Court of Appeals explained, "provides more pages to more requesters, avoiding situations in which a few, large queue requests monopolize finite processing resources." *Id.* at 471-72 (citation omitted).

Judges in the Central District of California have also routinely ordered processing

17

at a rate of 500-1,000 pages per month:

- *Center For Human Rts. and Constitutional Law et al v. Dep't of State*, 2:16-cv-00899-SVW-SS. *See* Stipulation and agreement to process at a rate of 400 pages/month (ECF 14, at 3:12-17) and Order (ECF 15).

- *Craig Scott Rosebraugh v. DOJ*, 2:16-cv-09003-ODW-MRW. *See* Joint Rule 26(f) Report including FBI agreement to process at a rate of 500 pages/month (ECF 12, at 4:26-28; 5:9-16) and Order (ECF 13), Status Report (ECF 14, at 2:11-3:22) and Order (ECF 15), etc.

- *Jason Leopold, Buzzfeed Inc. v. DOJ, et al.*, 2:17-cv-03747-CBM-JEM. *See* Joint Status Report including FBI agreement to process at a rate of 500 pages/month (ECF 31, at 3:16-4:25) and Order (ECF 32).

- *Grayson Flory v. DHS*, 2:19-cv-09735-PSG-MRW. *See* Stipulation to Stay and CBP agreement to process at a rate of 500 pages/month (ECF 17, at 3:17-18) and Order (ECF 18), Stipulation Continuing Stay (ECF 19 at 3:8-11) and Order (ECF 20), etc. The rolling release is continuing in that case.

- *Al Otro Lado et al. v. DHS, et al.*, 2:20-cv-05191-ODW (MRWx). *See* Minute Order (ECF 35) (ordering 1,000 pages per month; citing cases).

So too have judges within the D.C. Circuit ordered processing rates at or below the current rate here:

- *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 39 (D.D.C. 2020) (ordering 400 pages per month pursuant to a preliminary injunction under FOIA in a COVID-related case)

- *Bacardi v. Treasury*, No. 17-1828-CKK (D.D.C. Dec. 19, 2017) (ordering review rate of 350 pages/month over the plaintiff's objection)

- *Blixseth v. DOJ*, No. 18-2281-JEB (D.D.C. Dec. 17, 2018) (ordering 300 page/month review rate)

- *Chaverra v. U.S. Immigr. & Customs Enf't*, 2020 WL 7419670, at *1 (D.D.C. Nov. 5, 2020) (ordering 500 pages/month and collecting similar cases)

- *Citizens United v. State*, No. 16-67-CRC (D.D.C. Aug. 16, 2016) (ordering 300 page/month review rate despite plaintiff's request that agency review 2,000 pages/month)

18

- *Citizens United v. State*, No. 16-108-RMC (D.D.C. July 27, 2016) (ordering 300 page/month review rate)

- *Citizens United v. State*, No. 18-326-CRC (D.D.C. May 30, 2018 & June 6, 2018) (ordering 300 page/month review rate despite plaintiff's request that agency review almost 8,000 pages/month, "in light of the resource constraints and production orders in other cases.")

- *Ctr. for Repro. Rights v. State*, No. 18-2217-DLF (D.D.C. Apr. 3, 2019) (300 page/month processing rate, despite the plaintiff's request for a higher rate, in a case in which there are over 123,000 potentially responsive pages.)

- *Daily Caller News Found. v. FBI*, 387 F. Supp. 3d 112, 121 (D.D.C. 2019) (ordering 500 pages/month and rejecting plaintiffs' request for 1,200 pages/month)

- *Documented NY v. U.S. Dept. of State*, 2021 WL 4226239, at *5 (S.D.N.Y. Sept. 16, 2021) (ordering 400 pages/month and rejecting the plaintiff's request for remaining 2,600 pages to be processed and produced within approximately two-and-a-half months)

- *Jordan v. DOJ*, No. 17-2702-RC (D.D.C. Aug. 28, 2018) (ordering 300 page/month review rate)

- *Jud. Watch v. State*, No. 17-205-CRC (D.D.C. June 30, 2017) (ordering 300 page-per-four-week review rate despite plaintiff's request that agency review on average more than 16,000 pages/month)

- *Middle E. Forum v. DHS*, 297 F. Supp. 3d 183, 185-86 (D.D.C. 2018) (ordering 500 pages/month and rejecting plaintiffs' request for 1,000 pages/month, and collecting similar cases.)

- *Republican Nat'l Comm. v. U.S. Dep't of State*, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (ordering 500 pages/month)

*See also* Dkt. 57-2 at 77-79 (providing the above list to Plaintiff on July 11, 2023).

As explained above, Plaintiff has adduced no applicable authority that would entitle it to a *further* expedited processing rate. Indeed, in this case, ICE is already processing Plaintiff's FOIA request on an expedited basis. *See* Pineiro Decl., ¶¶ 8, 11-12, 31. Although the number of potentially responsive documents is greater now than what

19

ICE initially anticipated, that number has no relation to the processing rate that ICE should be required to undertake. Plaintiff's broad search requests, resulting in potentially large numbers of documents to review, do not take precedence over requests (many of which are more narrowly tailored) submitted by other FOIA requesters. There is a finite limit as to the number of documents that ICE staff can review each month, and every page reviewed with respect to Plaintiff's FOIA request means a page responsive to another person's request that cannot be reviewed. Pineiro Decl., ¶ 32.

The Court should therefore deny Plaintiff's request for a further expedited processing rate.

## V.    **CONCLUSION**

For the reasons discussed above, the Court should deny Plaintiff's Request.

Dated: November 6, 2023                    Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation
Section


 /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attorneys for Defendants

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2</u>

The undersigned, counsel of record for Defendants, certifies that the memorandum of points and authorities contains 7,009 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 6, 2023
                                          /s/ *Joseph W. Tursi*
                                          JOSEPH W. TURSI
                                          Assistant United States Attorney