

**United States Department of Justice**

**United States Attorney's Office**
**Central District of California**

---

*JOSEPH W. TURSI*
*JASON K. AXE*
*Assistant United States Attorney*
*Phone: (213) 894-3989/8790*
*E-mail: Joseph.Tursi@usdoj.gov*
*Jason.Axe@usdoj.gov*

*Federal Building*
*300 N. Los Angeles Street, Suite 7516*
*Los Angeles, California 90012*

November 2, 2023

<u>VIA E-MAIL</u>

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

   Re: ACLU of SoCal v. ICE, et al.
     C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

  The following responds to Plaintiff's October 19, 2023 correspondence. Many of the issues raised therein also appear in Plaintiff's Brief in Support of Request for Scheduling Order and FOIA Processing Rate [Dkt. 57], which was filed on October 23, 2023. Defendants' Opposition will address those issues in full. Still, in an effort to try and reach agreement (and thus narrow the issues for the Court's ultimate consideration), Defendants respond to the issues raised by Plaintiff in order:

  **A. Production Rate**

  Defendants' October 10, 2023 correspondence put forth ICE's position on an "expedited processing rate." As explained in greater detail in Defendants' Opposition to Plaintiff's Request, the processing rate here – 1,000 pages per month – *exceeds* the normal rate. Therefore, Defendants oppose Plaintiff's request to deviate from the current processing rate.

  **B. DHS-OIG Production**

  As explained in OIG's October 2, 2023 correspondence, records originating with ICE have been referred to ICE for its review, processing, and direct response to Plaintiff. ICE is the component best able to review and produce those records, and therefore, referral of them back to OIG would be inappropriate.

  As for Plaintiff's request that ICE and OIG conduct independent searches of other components, neither Defendant will do so. The FOIA process is decentralized in DHS, and therefore neither ICE nor OIG can conduct independent searches of another component.

  In Plaintiff's brief, it states with respect to OIG that there are "some remaining

EXHIBIT 3

26

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
November 2, 2023
Page 2

disagreements, but they are now ready to address those issues either informally or through summary judgment." Dkt. 57 at 2-3. What are the issues Plaintiff is referring to?

### C. ICE Production of Parts 1 – 3

At present, there are approximately 9,000-10,000 pages remaining to be processed for the four individuals identified. That said, ICE has finished producing records related to Leon.

With respect to records dated October 1, 2015 or after related to Mr. Gulema, ICE has now been able to identify approximately 318 pages that remain to be processed. ICE was able to identify these records, after previously not having success, by using the entire set of responsive records, rather than just the records that had been "email threaded."

ICE can agree to use best efforts to produce records in the sequence Plaintiff requests on page 3 of its letter (Gulema records from October 1, 2015 and after, followed by Bucio, Arellano, and then the remainder of the Gulema records unless Plaintiff has waived production of them). Relatedly, what information does Plaintiff anticipate it will glean from the October 1, 2015 and after Gulema records that will inform its decision whether to waive the remaining pages?

Finally, ICE is working to obtain the originals of Bates 7197-7200, 2648, and 7504. It has obtained Bates 8313. All documents will be processed and reproduced in due course.

### D. Parts 4 – 9

As an initial comment, ICE reiterates that Plaintiff's demand that the agency justify its search terms and locations at this stage is improper. So too is Plaintiff's effort to direct (or ask the Court to direct) the search at this stage only because Plaintiff disagrees with the "adequacy" of ongoing searches and productions. "In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that it believes to be reasonably tailored to uncover documents responsive to the FOIA requests. Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (an agency "need not knock down every search design advanced by every requester[.]"). Nor is a search's adequacy determined by its fruits. *See Hoffman*, 2023 WL 4237096, at *5.

In any event, there seems to be a miscommunication. Searches for several of the subparts

EXHIBIT 3
27

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
November 2, 2023
Page 3

have either been tasked or completed. ICE addresses each in turn.

    **A. Part 4**

ICE agreed to search the emails of Tae Johnson (former Acting Director of ICE), Deborah Fleischaker (Assistant Director for Regulatory Affairs and Policy at ICE), and Scott Schuchart (Senior Advisor to the ICE Director) for the following agreed upon search terms:

(1) Directive; (2) Policy; (3) Protocol; (4) Procedure; (5) Training; (6) Guidance; (7) Instruction; (8) Standard; (9) Death; (10) "offsite referral"; (11) "emergency room"; (12) "emergency department"; (13) "life support"; (14) Coma; (15) Ventilator; (16) "intensive care"; (17) Hospice; (18) palliative; and (19) release.

The search resulted in approximately 530,000 documents (not pages). The parties agreed that the second part of the search would involve using Relativity software to search for Boolean connectors. The agreed upon Boolean connectors were as follows:

(directive or policy or policies or protocol or procedure or training or guidance or instruction or standard) AND (custody or death or died or deceased or decedent or discharge or surgery or specialist or COVID-19 or hospital or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal) AND (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian).

ICE attempted to run the Boolean connector search, however, the search could not be run as it exceeded the allowable number of characters. In an effort to complete the search, ICE proposed using the following connector terms, essentially removing the terms that were already included in the initial search:

custody OR death OR died OR deceased OR decedent OR discharge OR surgery OR specialist OR COVID-19 OR hospital OR ambulance OR "emergency services" OR "poor outcome" OR "offsite referral" OR unconscious OR "medical observation" OR ICU OR "critical condition" OR fatal) AND (release OR transfer OR benefits OR parole OR "alternative detention" OR discharge OR OSUP OR "order of supervision" OR humanitarian).

Plaintiff rejected ICE's suggestions and has instead suggested in its October 19, 2023 correspondence that ICE run the Boolean search in two separate parts. ICE has no objection to this and has run the search in the manner suggested by Plaintiff. The search resulted in over 142,000 documents (not pages).

Plaintiff has also requested that the emails of the Directors of ICE prior to Tae Johnson

EXHIBIT 3
28

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
November 2, 2023
Page 4

from 2016 through 2021 be searched. This includes emails of five additional individuals. ICE has no objection to running these searches, although obtaining and searching their archived emails could take several weeks.

With respect to Plaintiff's position that ICE's search has been "insufficient" and that it "must remedy this deficiency by including an IHSC custodian to be searched for this Part," there is no basis for Plaintiff to make such a demand.

### B.  Part 5

ICE ran a search of the emails of Dr. Stewart Smith, Assistant Director for IHSC. The search was made using agreed upon search terms. After obtaining the search results, the records were then searched using agreed upon Boolean connectors. The search resulted in 551 pages of potentially responsive documents, and the records will be processed in due course.

Plaintiff has requested that, in response to Request No. 5, ICE conduct a search of *all* ICE officials who participate in the Significant Detainee Illness process, *all* of ICE's Medical Case Management Unit, and *all* Medical Care Coordination staff. There are 233 IHSC employees who participated in the Signification Detainee Illness process from 216 to present. The number of ICE employees that have been a part of ICE's Medical Case Management Unit from 2016 to present is 376. The number of ICE employees that have been part of the Medical Care Coordination staff (i.e., managed care coordinators) from 2016 to present is 35. As a result, this request is overly broad and unduly burdensome. It is ICE's position that this search is complete, and the records will be processed in due course.

### C.  Part 6

ICE reads this request as specifically seeking documents *created by* DHS OIG or ICE OPR. As such, ICE OPR was tasked with a search and did not find any responsive records. Plaintiff claims that ICE is reading the request too narrowly and that it is not only seeking documents created by DHS OIG and ICE OPR, but also requesting spreadsheets, emails, SIRs and SENs within the possession of ICE. As Plaintiff has been made aware, SIRs and SENs are generated at the field office level. There are 25 field offices. In order to conduct a search for SIRs and SENs that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility, each ERO field office would need some type of identifying information, such as name, date of event or alien number.

### D.  Part 7

ICE agreed to ask OPR to run a search of agreed upon search terms. OPR found no responsive records. Just as in Request No. 6, if Plaintiff would like SIRs and SENs from a specific field office that mention the death of any detainee who had been previously released

EXHIBIT 3
29

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
November 2, 2023
Page 5

from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility, then they need to provide identifying information, such as name, date of event or alien number.

### E. Part 8

A search was run of the emails of Dr. Stewart Smith using agreed upon search terms. A secondary search was run using agreed upon Boolean connectors. The search resulted in 1,711 pages of potentially responsive documents. This search is complete, and these records will be processed in due course.

To be clear, *if* documents pertaining to *Fraihat* appear in the responsive records, then they will be produced. ICE will not search for *"Fraihat* records" simply because Plaintiff chose to add this request on later. *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (emphasizing that agency is required to read FOIA request as drafted, "not as either [an] agency official or [requester] might wish it was drafted"); *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 66 (D.D.C. 2017) (finding search adequate when based on plain language of original request, and holding plaintiff must make new request for additional records first mentioned in clarification emails); *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 363 (4th Cir. 2009) (rejecting argument that searches were inadequate merely because "responsive documents refer to other documents that were not produced" and agency did not pursue "leads" appearing in uncovered documents, and explaining that search need only be "reasonably calculated to uncover all relevant documents" based upon request).

### F. Part 9

ICE tasked nine Regional Field Medical Coordinators (FMCs) and Regional Health Service Administrators (HSAs) to search their emails for search terms that were agreed upon with the Plaintiff. A preliminary search by just one of ICE's HSAs yielded over 16,000 emails (not pages), most of which appeared not to be related (or only peripherally related) to one of the proposed search terms.

As a result, ICE requested clarification from Plaintiff regarding the specific types of records Plaintiff was seeking so that ICE could adequately craft a search that would result in fewer initial hits. Alternatively, ICE proposed (a) adding a second term such as "bill," "invoice," etc. to the preliminary search to reduce the number of records initially identified, or (2) pairing search terms, e.g., "Death + record," "Ambulance + invoice," and "Hospital + bills."

Plaintiff suggests using different search terms and Boolean connectors. Plaintiff further requests that ICE search the Resource Management Unit Staff and the ICE Office of the Chief Financial Officer. Individuals at ICE who are subject matter experts on the information requested believe that the custodians most likely to possess responsive records are the Regional Field Medical Coordinators and the Regional Health Service Administrators within IHSC. If Plaintiff

EXHIBIT 3
30

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
November 2, 2023
Page 6

agrees with this approach, ICE will task these nine individuals with conducting searches using the search terms and connectors suggested by Plaintiff.

    Thus, the search terms will be:

    bill!; invoice!; charges; payment; benefits; discharge; transfer; release or custody; Medicare; PRUCOL; Martin Vargas Arellano, Teka Gulema, Jose Ibarra Bucio, Johana Medina Leon, Jonathan Alberto Medina Leon

    And the Boolean connectors will be:

    (bill!; invoice!; charges; payment; benefits) AND (discharge or transfer or custody or release or Medicare or PRUCOL or Martin Vargas Arellano or Teka Gulema or Jose Ibarra Bucio or Johana Medina Leon or Jonathan Alberto Medina Leon)

Please confirm that the above is agreeable. ICE will then conduct those searches.

Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

cc: Ms. Eunice Cho (by email)
   Mr. Michael Kaufman (by email)
   Mr. Kyle Virgien (by email)

EXHIBIT 3
31