1   LABONI A. HOQ (SBN 224140)
    *laboni@hoqlaw.com*
2   HOQ LAW APC
    P.O. Box 753
3   South Pasadena, California 91030
    Telephone: (213) 973-9004
4
    MICHAEL KAUFMAN (SBN 254575)
5   *MKaufman@aclusocal.org*
    ACLU FOUNDATION OF SOUTHERN
6   CALIFORNIA
    1313 West Eighth Street
7   Los Angeles, California 90017
    Telephone: (213) 977-9500
8   Facsimile: (213) 915-0219

9   Attorneys for Plaintiffs
    *(additional counsel information on next page)*
10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  AMERICAN CIVIL LIBERTIES              Case No. 2:22-CV-04760-SB-AFM
    UNION FOUNDATION OF
15  SOUTHERN CALIFORNIA,                  **PLAINTIFF'S REPLY BRIEF**
                                          **REQUESTING SCHEDULING**
16          *Plaintiff*,                  **ORDER AND FOIA PROCESSING**
                                          **RATE**
17      v.

18  UNITED STATES IMMIGRATION
    AND CUSTOMS ENFORCEMENT,              Honorable Shashi H. Kewalramani
19  UNITED STATES DEPARTMENT              United States Magistrate Judge
    OF HOMELAND SECURITY,
20
            *Defendants*.
21

22

23

24

25

26

27

28

1    EUNICE CHO (*pro hac vice*)
     *echo@aclu.org*
2    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
     NATIONAL PRISON PROJECT
3    915 Fifteenth Street NW, 7th Floor
     Washington, DC 20005
4    Telephone: (202) 548-6616

5    KYLE VIRGIEN (SBN 278747)
     *kvirgien@aclu.org*
6    AMERICAN CIVIL LIBERTIES UNION FOUNDATION
     NATIONAL PRISON PROJECT
7    39 Drumm Street
     San Francisco, CA 94111
8    Telephone: (202) 393-4930

9    Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ..................................................... 1

II.  UPDATED FACTUAL BACKGROUND ...................................... 2

III. ARGUMENT ........................................................ 6

   A.  The Court Has Broad Authority to Ensure Prompt Disclosure
       of Records Under FOIA ........................................ 6

   B.  Plaintiff's Proposed Scheduling Order Seeks a Clear and
       Timely Process to Ensure Prompt Production and Is Not
       "Micromanagement." ........................................... 7

   C.  Plaintiff's Request to Confer with ICE's Technical Staff to
       Overcome Search Impediments Is Necessary to Avoid
       Continued Delay and Does Not Constitute Discovery ........... 10

IV.  THE COURT HAS AUTHORITY TO ORDER DEFENDANTS TO
     INCREASE THEIR PROCESSING RATE ................................ 11

V.   CONCLUSION ...................................................... 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ACLU v. Dep't of Defense*,

5

339 F. Supp. 2d. 501 (S.D.N.Y. 2004) ...................................................... 13

6

*ACLU v. DHS*,

7

No. 20 CIV. 10083 (PGG), 2021 WL 5449733 (S.D.N.Y. Nov. 19, 2021) ........................................................................................................ 13

8

*Allen v. F.B.I.*,

9

716 F. Supp. 667 (D.D.C. 1988) .............................................................. 14

10

*Clemente v. FBI*,

11

71 F. Supp. 3d 262 (D.D.C. 2014) ........................................................... 14

12

*Dietz v. Bouldin*,

13

579 U.S. 40 (2016) ...................................................................................... 7

14

*Fiduccia v. U.S. Dep't of Just.*,

15

185 F.3d 1035 (9th Cir. 1999) .................................................................. 13

16

*Halpern v. FBI*,

181 F.3d 279 (2d Cir. 1999) ...................................................................... 13

17

*Inst. for Just. v. Internal Revenue Serv.*,

18

547 F. Supp. 3d 1 (D.D.C. 2021) ............................................................. 14

19

*L.A. Times Commc'ns v. U.S. Dep't of Homeland Sec.*,

20

No. 2:20-cv-10911-FLA-MRW (C.D. Cal.) .......................................... 6, 7

21

*Lane v. Dep't of Interior*,

22

523 F.3d 1128 (9th Cir. 2008) .................................................................. 10

23

*Long v. IRS*,

24

693 F.2d 907 (9th Cir. 1982) ............................................................. 2, 6, 8

25

*McGehee v. U.S. Dep't of Just.*,

362 F. Supp. 3d 14 (D.D.C. 2019) ........................................................... 15

26

*McGehee v. U.S. Dep't of Just.*,

27

800 F. Supp. 2d 220 (D.D.C. 2011) ......................................................... 15

28

ii

*Nat'l Pub. Radio, Inc. v. U.S. Dep't of Treasury*,
No. CV 19-17 (JDB), 2019 WL 12262726 (D.D.C. Aug. 23, 2019)................ 12

*Nat'l Sec. Archive Fund, Inc. v. U.S. Dep't of Air Force*,
No. 5-571, 2006 WL 1030152 (D.D.C. 2006) ...................................... 7

*Nat'l Sec. Counselors v. U.S. Dep't of Just.*,
848 F.3d 467 (D.C. Cir. 2017) ...................................................... 15

*NRDC v. Dep't of Energy*,
191 F. Supp. 2d 41 (D.D.C. 2002) ................................................ 14

*Open Soc'y Justice Initiative v. CIA*,
399 F. Supp. 3d 161 (S.D.N.Y. 2019)................................... 6, 13, 14

*Payne Enters. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) .................................................... 11

*Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*,
415 U.S. 1 (1974) ...................................................................... 6

*Reps. Comm. For Freedom of the Press v. FBI*,
3 F.4th 350 (D.C. Cir. 2021) ...................................................... 14

*Seavey v. Dep't of Just.*,
266 F. Supp. 3d 241 (D.D.C. 2017) ......................................... 12, 13

*Sierra Club v. U.S. Env. Prot. Agency*,
No. 18-cv03472-EDL, 2018 WL 1049238 (N.D. Cal. Dec. 26,
2018).......................................................................................... 7

*Transgender L. Ctr. v. Immigr. & Customs Enf't*,
46 F.4th 771 (9th Cir. 2022)........................................................ 9

*Villanueva v. United States Dep't of Just.*,
No. 19-23452-CIV, 2021 WL 5882995 (S.D. Fla. Dec. 13, 2021).................... 14

**Statutes**

FOIA .........................................................................................*passim*

**Other Authorities**

*Her Death. She Isn't Alone*, Los Angeles Times (May 13, 2022),
available at https://www.latimes.com/world-nation/story/2022-05-
13/ice-immigration-detention-.......................................................... 6

iii

I.      **INTRODUCTION**

For the past 18 months, Plaintiff ACLU of Southern California has sought information under FOIA regarding Immigration and Customs Enforcement's ("ICE") practice of releasing detained immigrants facing imminent death from custody. In response to Plaintiff's request for a revised Scheduling Order and revised production rate to ensure prompt production of the tens of thousands of pages of remaining FOIA records, Defendants do not dispute that this case remains far from resolution. Defendants have thousands more pages to produce that are responsive to Parts 1 to 3 of the Request, and they have yet to complete searches for or produce a single page responsive to Parts 4 to 9. Defendants do not deny that they have repeatedly claimed that ICE's FOIA Office cannot perform routine document management tasks in response to Plaintiff's attempts to streamline the process, such as de-duplicating files or sorting by date, only to recant after such justifications have been questioned before the Court. In light of ICE's prolonged and repeated delay of its search for records responsive to Parts 4 to 9 of the Request, Plaintiff asks the Court to require the Parties to confer on final search parameters and avenues to narrow search results, set a deadline for Defendants to conduct their searches, and revise document processing rates towards prompt resolution of the case.

In response to Plaintiff's motion, Defendants make meritless arguments that distract from the core case management needs of the case and resist the Court's exercise of its routine case management authority. Defendants construe Plaintiff's reasonable request as "micromanagement of the process," and provide no good reason why the Court should not require the Parties to meet and confer to set search parameters and set a deadline for Defendants to complete their search—a routine occurrence in FOIA litigation. Likewise, Plaintiff's request to speak directly with ICE's technical staff and collaboratively address Defendants' technical search issues does not, as Defendants claim, constitute discovery.

1

1    Defendants also provide no specific evidence that Plaintiff's proposed
2    increased production rate, which ample caselaw supports, would be impracticable
3    for the agency, particularly in light of their repeated search and processing delays.
4    Plaintiff's proposal to increase the rate of document production to ensure
5    completion of production within six months, not to exceed 5,000 pages per month,
6    is particularly appropriate here, given the government's unreasonable delay in
7    disclosure. *See Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982).
8    In light of ICE's demonstrated and repeated delay, the Court should grant
9    Plaintiff's requests, and adopt the proposed case management and document
10   production schedule to ensure prompt resolution of this case.

11   **II.    UPDATED FACTUAL BACKGROUND**

12   Defendants have unreasonably delayed in conducting searches and providing
13   information necessary to set a production deadline and schedule for Parts 4 to 9 of
14   the Request. Court intervention is now necessary. Plaintiff continues to seek ways
15   to tailor search terms and locations to ensure efficient resolution of the case, but
16   conferral, timely information from Defendants, and clear deadlines are necessary
17   to resolve these matters.

18   **Parts 1-3**. Parts 1-3 seek information about four named detained immigrants
19   who died shortly after ICE released them from custody. Defendants report
20   approximately "9,000-10,000" pages left for production. Defs.' Nov. 2, 2023
21   Letter, ECF No. 60-4 at 2.[1]  Plaintiff repeatedly requested that Defendants filter
22   Mr. Teka Gulema's records, which comprise the majority of these documents, by
23   date, which Defendants claimed it could not perform. *See* Pl.'s Br., ECF No. 57 at
24   9-10 (detailing history). After Plaintiff filed the instant motion, requesting that the
25   Court require Defendants to make available its technical staff, ICE concluded that
26   it is indeed able to sort records by date. Defs.' Opp. Br., ECF No. 60 at 9. Plaintiff

27
28   _____
     [1] For consistency, Plaintiff has cited to pagination as assigned by ECF, and not to
     pagination of the original document throughout this brief.

2

is now awaiting Defendants' production of the date-filtered information, which may ultimately enable Parties to streamline production of records related to Mr. Gulema. Declaration of Laboni Hoq ("Hoq Decl."), Ex. 1 at 6 (Pl.'s Letter, Nov. 9, 2023). Plaintiff also requested that ICE produce complete versions of several significant documents in its next production. *Id.*

**Part 4**. The Parties are currently conferring as to how to narrow Defendants' latest search result of 142,000 documents (not pages). *See* Defs.' Nov. 2, 2023 Letter at 3; Pl's. Nov. 9, 2023 Letter at 6-7. When Plaintiff filed the instant motion, Defendants had taken the position that it could not conduct a Boolean search proposed by Plaintiff to narrow the search results of over 530,000 documents. Defs.' Oct. 10, 2023 Letter, ECF No. 57-2 at 129-30. Since Plaintiff's filing, Defendants conducted a revised Boolean search, resulting in 142,000 documents. Defs.' Br. at 10. In light of this voluminous result, Plaintiff requested on November 9, 2023 that Defendants provide hit count information for individual search terms so Parties can further narrow the search, and suggested that Defendants search server files and ICE Health Service Corps ("IHSC") records instead of emails. Pl.'s Nov. 9, 2023 Letter at 7.

**Part 5**. ICE has thus far located 551 pages of responsive records. Defs.' Nov. 2, 2023 Letter at 4. Although ICE claims that its search is complete, Defs.' Opp. Br. at 10, Plaintiff disagrees. Defendants have searched only one custodian employed by *one* agency component (IHSC) for this request. Defs.' Nov. 2, 2023 Letter at 4. Part 5, however, requested records related to these deathbed releases "in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility," including "the Significant Detainee Illness ["SDI"] Spreadsheet." Pl.'s FOIA Request, ECF No. 1-1 at 6. Records related to the SDI list, in particular, are highly responsive, as it identifies detainees who have been "hospitalized . . . the date of admission, and the date of discharge," and criteria for placement on the SDI list

1   includes "[a]nyone who is in intensive care for 24 hours or more" or detainees

2   requiring "[s]ignificant coordination" for "release" "in the United States due to

3   their medical condition." *See* Pl.'s Opp. Br. to Mot. for J. on the Pleadings, ECF

4   No. 50 at 27-28 (discussing SDI list).

5          In light of the large number of potential custodians identified by Defendants,

6   and because a search that consists of one custodian from *one* specified subagency

7   is incomplete, Plaintiff on November 9, 2023 proposed a compromise that

8   Defendants limit the search to staff (including from IHSC, ICE ERO, and OPLA)

9   who participate in the weekly SDI meeting, and any custodians who possess the

10  SDI list and documents related to individuals placed on the SDI list. Pl.'s Nov. 9,

11  2023 Letter at 3. Plaintiff requested that Defendants provide a hit count of such

12  records by November 20, 2023. *Id*.

13         **Part 6**. Defendants claim that they have located no responsive records, and

14  the Parties continue to confer about whether ICE will conduct a search for two

15  categories of responsive documents. Defs.' Br. at 10; Pl.'s Nov. 9, 2023 Letter at 8.

16  Part 6 requests "significant Incident Reports (SIRs), significant event notification

17  reports (SENs), or documents created by DHS OIG or ICE OPR that mention the

18  release" of hospitalized detainees. ECF No. 1-1 at 6-7. Defendants claim to have

19  located no records responsive to Part 6, despite the fact that Parties have agreed to

20  search terms, and Plaintiff has identified locations likely to have responsive

21  records that Defendants have yet to search.

22         Defendants first argue that its search, limited to OIG and OPR, completes its

23  search obligations, because "ICE reads this request as specifically seeking

24  documents *created by* DHS OIG or ICE OPR," which yielded no records. Defs.'

25  Nov. 2, 2023 Letter at 4 (emphasis in original). But neither OIG or OPR, as

26  oversight agencies, create SIRs or SENs, which are created by line staff in contact

27  with detainees at the time of an incident. Pl.'s Oct. 19, 2023 Letter at 6. Moreover,

28  as Plaintiff has already noted, the word "or" is a disjunctive term, and ICE should

1   thus search for SIRs and SENs, even if they are not created by OIG or OPR. *Id.*

2   (citing *United States v. Nishiie*, 996 F.3d 1013, 1023 (9th Cir. 2021) (noting that

3   "or" is a disjunctive term that "requires that they be treated separately") (citation

4   omitted)).

5          Second, Defendants argue that it cannot search SIR or SEN records without

6   entering specific names, dates, or A numbers. Defs.' Br. at 10. But Defendants

7   have repeatedly failed to address that ICE can search the records of the ICE Joint

8   Intelligence Operations Center (JIOC), which analyzes SIRs and sends summaries

9   to appropriate field offices, without such individual identifiers, and with the

10  agreed-upon search terms. *See* Pl.'s Oct. 19, 2023 Letter at 6; Pl.'s Sept. 14, 2023

11  Letter, ECF No. 57-2 at 124; Pl.'s Jul. 12, 2023 Letter, ECF No. 57-2 at 85-86

12  (requesting JIOC search). Plaintiff has requested that Defendants conduct a search

13  of SIRs and SENs through a search of the JIOC by November 20, 2023. Pl.'s Nov.

14  9, 2023 Letter at 8.

15         **Part 7**. As with Part 6, which seeks similar information, Defendants state

16  that they have located no responsive records to Part 7. Defs.' Br. at 10. Part 7

17  requests SIRs and SENs that mention the death of detainees previously released

18  from custody while hospitalized or in the care of external health facilities. Pl.'s

19  FOIA Request, ECF No. 1-1 at 7. Plaintiff has asked Defendants to expand its

20  search to include the JIOC as discussed above. Pl.'s Nov. 9, 2023 Letter at 8.

21         **Part 8**. Defendants have searched the emails of Dr. Stewart Smith of IHSC

22  with the agreed-upon search terms, and have located 1,171 pages of potentially

23  responsive records, but Defendants have yet to produce these records. Defs.' Br. at

24  11.

25         **Part 9**. As of November 9, 2023, the Parties have agreed to initial search

26  terms and locations for Part 9. Plaintiff has requested that Defendants provide a hit

27  count for the search, and awaits further information. Pl.'s Nov. 9, 2023 Letter at 9.

28  //

5

III.   **ARGUMENT**

A.   **The Court Has Broad Authority to Ensure Prompt Disclosure of Records Under FOIA.**

Throughout their Opposition, Defendants question the Court's fundamental authority to issue the Proposed Scheduling Order to ensure Defendants' prompt disclosure of FOIA records. Courts have broad equitable powers in FOIA cases to effectuate the statute's "obvious emphasis on disclosure." *Renegotiation Bd. v. Bannercraft Clothing Co. Inc.*, 415 U.S. 1, 19 (1974). "[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982).

Courts routinely exercise their authority to effectuate prompt production in cases where the information sought under FOIA is of "paramount public importance" and where the government has taken an unreasonable length of time to respond to a request. *Open Soc'y Justice Initiative v. CIA*, 399 F. Supp. 3d 161, 167 (S.D.N.Y. 2019); *see, e.g. L.A. Times Commc'ns v. U.S. Dep't of Homeland Sec.,* No. 2:20-cv-10911-FLA-MRW (C.D. Cal.), Min. Order, Dec. 3, 2021, ECF No. 35 (noting that "courts … tak[e] into account the seriousness of the underlying allegations for which information is sought," to "impose[] review timetables" in FOIA cases). This Request addresses an issue of paramount public importance and interest: ICE's release of detained immigrants facing imminent death from custody, which has allowed the agency to avoid public reporting and accountability for an untold number of deaths.[2] Over 18 months have passed since Defendants received Plaintiff's FOIA Request. Pl.'s FOIA Request, ECF No. 1-1. While ICE has

---

[2] *See, e.g.,* Andrea Castillo & Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, Los Angeles Times (May 13, 2022), available at https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention- deaths-sick-detainees; *see also* Pl.'s FOIA Request, ECF No. 1-1 at 9-10 (detailing depth of public interest and concern).

belatedly acknowledged that it possesses records that would shed much-needed light on this practice, it has yet to produce a single document in response to Parts 4 to 9 of the Request.

In response to this unjustified delay, Plaintiff asks the Court to exercise both its broad authority under FOIA, and its "inherent authority to manage [its] docket[] … with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). As discussed in Plaintiff's opening brief and below, this Court has good cause to do so.

### B. Plaintiff's Proposed Scheduling Order Seeks a Clear and Timely Process to Ensure Prompt Production and Is Not "Micromanagement."

Defendants argue that there is no legal basis for the Court to issue an order for Parties to meet and confer and work collaboratively to set search parameters and finalize a production schedule. This, of course, is not the case, as courts routinely issue similar orders in FOIA cases. *See, e.g. Nat'l Sec. Archive Fund, Inc. v. U.S. Dep't of Air Force*, No. 5-571, 2006 WL 1030152, at *6 (D.D.C. 2006) (ordering parties to meet and confer to determine production framework after delay, and that government make available ranking officer at status conference to ensure implementation); *Sierra Club v. U.S. Env. Prot. Agency*, No. 18-cv03472-EDL, 2018 WL 1049238 (N.D. Cal. Dec. 26, 2018). In fact, this court has issued a similar case management order against the same Defendants in another FOIA case. *See L.A. Times Commc'ns*, Minute Order, December 3, 2021, ECF No. 35 at 3 (ordering DHS, OIG and ICE to increase their processing rate, and setting deadline "to complete all review.").

Defendants, moreover, omit that they in fact *initiated* the conferral process by requesting Plaintiff's assistance in setting search parameters and narrowing responsive records for processing. Pl.'s Br. at 10. Instead, Defendants now characterize these mutually beneficial efforts as unwarranted "micromanaging,"

7

1    even though Plaintiff's suggestions, to many of which Defendants have agreed,
2    have lightened Defendants' burden. After engaging in the meet and confer process,
3    ICE has unjustifiably delayed finalizing search parameters and production of
4    responsive records. Eighteen months have now passed since ICE received
5    Plaintiff's Request. ICE has yet to complete its search for Parts 4 to 9, or to
6    commit to a reasonable schedule in which to complete its production of these
7    records. This delay warrants the Court's exercise of its routine and inherent power
8    to manage the case. *See, e.g. Long*, 693 F.2d at 910 (determining that a 17-month
9    delay in producing FOIA records warranted Court intervention).

10          Indeed, in response to Plaintiff's common-sense proposals to efficiently
11   move this case forward, Defendants avoid addressing the core case management
12   issues at the heart of the proposals. Instead, they take the unsupported position that,
13   so long as there are documents in Defendants' production queue, this Court has no
14   authority to take any measures that would speed the resolution of the case. Defs.'
15   Br. at 15. Defendant's Opposition ignores the Court's prior order requiring
16   Defendants to "meet and confer to discuss the responses and rate of productions on
17   a rolling basis," and permitting the parties to "contact the Court if the rate of
18   production is not efficiently moving along," with an eye toward re-setting the
19   summary judgment schedule upon "completion of the production of documents."
20   *See* Order, Aug. 11, 2023, ECF No. 53.

21          Defendants also erroneously claim that Plaintiff is attempting to force
22   Defendants to justify the adequacy of their searches in the meet and confer process.
23   This claim is baseless, as evidenced by the procedural history of this case. ICE
24   voluntarily initiated the meet and confer process, and invited Plaintiff to propose
25   search parameters to locate responsive records. Defs.' Mar. 29, 2023 Letter, ECF
26   No. 57-2 at 10. ICE refused to identify search parameters in the first instance,
27   despite its obligation to do so given its greater knowledge of ICE's record-keeping
28   systems. Pl.'s Apr. 14, 2023 Letter, ECF No. 57-2 at 17 (citing *Biear v. Att'y Gen.*

*United States*, 905 F.3d 151, 157 (3d Cir. 2018)). Since that time, Plaintiff has actively endeavored to work with ICE to refine and narrow these parameters, which serves the interests of both Parties. *See, e.g.* Pl.'s May 19, 2023 Letter, ECF No. 57-2 at 22; Pl.'s June 1, 2023 Letter, ECF No. 57-2 at 37, 41-43, Pl.'s June 12, 2023 Letter, ECF No. 57-2 at 49, 52-55; Pl.'s Jul. 12, 2023 Letter, ECF No. 57-2 at 82, 87; 87; Pl.'s Oct. 19, 2023 Letter, ECF No. 60-3 at 7.[3]

Nothing in Plaintiff's Proposed Order requires that Defendants justify the adequacy of their searches at this time. Plaintiff's search suggestions serve only to narrow issues in dispute regarding the adequacy of Defendants' search at issue upon any potential summary judgment motion. Nor would the Proposed Order require Defendants to run the precise searches Plaintiff suggests. It merely requires Parties to confer, in good faith, Parties to eliminate as many issues as possible prior to summary judgment, and to ensure that Defendants conduct their search and production under a concrete timeline.

Defendants fully acknowledge Plaintiff has "not 'demand[ed] the parties agree over [search terms or locations]'" and that "'Defendants may not agree to all of Plaintiff's proposed search parameters.'" Defs.' Br. at 9, 15. Yet Defendants then mischaracterize Plaintiff's request by claiming that "Plaintiff effectively asks that the Court take on the role of a special master and ensure that the parties agree over search terms and parameters." *Id.* at 15. Again, nothing in Plaintiff's Proposed Scheduling Order puts the Court in this position, and the Court has broad authority

---

[3] Plaintiff need not distinguish the cases Defendants cite for the proposition that plaintiffs cannot dictate search parameters. *See* Defs.' Br. at 16-17. Plaintiff does not claim to have the authority to do so, at least not at this pre-summary judgment stage. However, Defendants' search parameters may become the subject of challenge at summary judgment if Plaintiff can show, for example, that the searches could have been, but were not, designed to locate responsive records. *See Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022) (holding that "agencies failed to meet their burden [to establish search adequacy] because they did not appropriately respond to 'positive indications of overlooked materials' provided by [Plaintiff], and did not hew to their duty to follow 'obvious leads') (citations omitted).

9

1    to issue the requested order.

2          The Defendants' continued delay now requires the Court's intervention to

3    ensure prompt disclosure of FOIA records. As discussed in its opening brief,

4    Plaintiff clearly noted that a significant motivation for its proposal to forego receipt

5    of otherwise responsive records in part is to hasten the pace by which it will

6    receive the core records that it believes will shed the greatest public light on ICE's

7    practice of releasing detained immigrants on their deathbeds. This process of

8    narrowing responsive records is both mutually beneficial and will lead to prompt

9    disclosure of FOIA records. For these reasons, the Court should grant Plaintiff's

10   request and set a timeline for conferral, search, and production.

11   **C.    Plaintiff's Request to Confer with ICE's Technical Staff to**

12   **Overcome Search Impediments Is Necessary to Avoid Continued**

13   **Delay and Does Not Constitute Discovery.**

14         Defendants wrongly characterize Plaintiff's request to make available ICE's

15   technical staff during meet and confer discussions as "improper…informal

16   discovery." Defs.' Br. at 6. There is no factual or legal basis for this assertion.

17   Tellingly, Defendants cite a number of cases related to the propriety and timing of

18   discovery in FOIA cases, but none support its position that Plaintiff's request

19   amounts to discovery, informal or otherwise. Plaintiff does not seek "access to

20   evidence" in support of the claims in this case. *Lane v. Dep't of Interior*, 523 F.3d

21   1128, 1134 (9th Cir. 2008). Nor does Plaintiff seek "the very information that is

22   the subject of the FOIA complaint," which courts have deemed an improper

23   subject of discovery in FOIA cases. *Id.* (citations omitted). Plaintiff only seeks

24   access to ICE's technical staff to ensure that Defendants can resolve purported

25   technical difficulties in its management and production of documents. Any fear of

26   improper discovery should be easily cured by the presence of ICE's counsel; the

27   Court could even instruct the parties that any discussion with technical staff is not

28   for the purpose of discovery.

1    Furthermore, as discussed in Plaintiff's opening brief, there are sound case

2    management reasons to require the availability of ICE's technical staff. Pl.'s Br. at

3    9-10. ICE has repeatedly invoked technical challenges in resisting some of the

4    suggested methods to tailor searches, for example, claiming that it could not sort

5    records by date, or de-duplicate records.  *Id.* Moreover, ICE's insistence that

6    Plaintiff provide technical questions only in writing has significantly delayed the

7    process of conducting searches and narrowing the universe of responsive records.

8    *Id.* Only when Plaintiff has raised these technical issues before the court, after

9    several weeks—even months—of its request to Defendants, have Defendants

10   realized that they could overcome their technical challenges. *See, e.g.* Defs.' Nov.

11   2, 2023 Letter, ECF No. 60-4 at 2 (noting that ICE's FOIA Office had been able to

12   sort records by date). This pattern only bolsters the need for a more streamlined,

13   and court-sanctioned method for Parties to communicate with ICE's technical staff

14   on these matters.

15         Although the imminent need for direct communication with ICE's technical

16   staff has abated with respect to Part 4 and 9, those and other searches are still not

17   complete. Pl.s' Nov. 9, 2023 Letter at 2-5. To ensure that ICE does not encounter

18   further delays with the remaining searches on account of technical difficulties,

19   Plaintiff maintains its request that the Court order ICE to make its technical staff

20   available to address any future challenges.

21   **IV.    THE COURT HAS AUTHORITY TO ORDER DEFENDANTS TO**

22   **INCREASE THEIR PROCESSING RATE**

23         "[U]nreasonable delays in disclosing non-exempt documents violate the

24   intent and purpose of the FOIA, and the courts have a duty to prevent these

25   abuses." *Payne Enters. v. United States,* 837 F.2d 486, 494 (D.C. Cir. 1988). Under

26   ICE's current production rate of 1,000 pages per month, Plaintiff would need to

27   wait anywhere between an additional 30 months and over 12 years for ICE to

28

11

1    complete its current production.[4] Such a schedule "is unreasonable under these

2    circumstances." *Nat'l Pub. Radio, Inc. v. U.S. Dep't of Treasury*, No. CV 19-17

3    (JDB), 2019 WL 12262726, at *2 (D.D.C. Aug. 23, 2019).

4         Plaintiff has thus proposed that the Court increase ICE's production rate,

5    such that the production of documents responsive to all parts of the FOIA Request

6    be completed within six months. Pl.'s Br. at 11-13. Under this proposal, ICE shall

7    process documents at a rate equal to the total page count divided by six, not to

8    exceed 5,000 pages per month. This revised rate provides both parties an incentive

9    to cooperate meaningfully in efforts to further tailor searches and increase

10   efficiency.

11        Defendants make wide-ranging arguments in opposition to Plaintiff's

12   proposed production rate, but the most coherent one is the potential impact of an

13   increased production rate in this case on others due to the ICE FOIA Office's

14   resource limits. *See* Defs.' Br. at 15, 19-20. But this argument is unsupported. As

15   another court concluded, the government "has failed to justify its contention that

16   processing particularly large requests. . . at a faster pace would 'monopolize' its

17   resources and delay the processing of smaller requests." *Seavey v. Dep't of Just.*,

18   266 F. Supp. 3d 241, 246 (D.D.C. 2017). Indeed, the data that ICE has produced,

19   via the Declaration of Fernando Pineiro, fails to substantiate Defendants' claim.

20   Decl. Fernando Piniero, ECF No. 60-1. Mr. Pineiro's declaration notes that "the

21   ICE FOIA Office typically cannot process more than 750 pages . . . per month per

22   case" *Id.* ¶ 11. However, this data does not account for potential variations in

23
───────────────
24   [4] Because Defendants have not yet conducted a complete search, and because
     Plaintiff has suggested additional ways for Defendants to tailor the search, this
25   number is indeterminate. Currently, Defendants have identified over 152,722 pages
     as potentially responsive (with a low estimate of 142,000 pages responsive to Part
26   4, which Plaintiff seeks to narrow, and without considering pending searches for
     Parts 9, and excluding any new searches for Parts 6 and 7). Plaintiff has suggested
27   additional ways to more narrowly tailor likely overbroad searches, while
     suggesting searches for custodians and locations likely to possess responsive
28   information. *See* Pl.'s Nov. 9, 2023 Letter.

1    request size, and ultimately "doesn't actually shed any light on the key question:

2    whether processing particularly large requests at a faster rate would materially

3    slow down the processing of other requests." *Seavey*, 266 F. Supp. 3d at 246. For

4    example, ICE does not provide any data needed to draw this conclusion, such as

5    "average number of pages generated by FOIA . . . requests expressed as a rate," or

6    the number of pages associated with the largest requests, which "*might* plausibly"

7    "show that the diversion of resources to this request would substantially delay the

8    processing of smaller requests." *Id.* at 246-47 (emphasis in original).[5]

9         Even where the government might "divert resources from other FOIA

10   requests or . . . mobilize additional resources" due to an increased processing rate,

11   the court must "balance the competing interests at hand, as FOIA case law

12   required." *Open Soc'y*, 399 F. Supp. 3d at 166. As the Ninth Circuit has observed,

13   the "value of information is partly a function of time," *Fiduccia v. U.S. Dep't of

14   Just.*, 185 F.3d 1035, 1041 (9th Cir. 1999), and continued delay will only enable

15   the government to avoid scrutiny in this matter of important public interest. "It is

16   the duty of the court to uphold FOIA by striking a proper balance between

17   plaintiff's right to receive information on government activity in a timely manner"

18   and government concerns. *ACLU v. Dep't of Defense*, 339 F. Supp. 2d. 501, 504

19   (S.D.N.Y. 2004) (citations omitted). *See also Halpern v. FBI*, 181 F.3d 279, 284

20   (2d Cir. 1999) ("[FOIA reflects a] "preference for the fullest possible agency

21   disclosure of such information consistent with a responsible balancing of

---

22   [5] Notably, it also appears that the capacity of ICE's FOIA Office has in fact *increased*
23   during the past two years. Defendants, for example, cite to the 500-page monthly
     production rate in *ACLU v. DHS,* No. 20 CIV. 10083 (PGG), 2021 WL 5449733, at
24   *1 (S.D.N.Y. Nov. 19, 2021), where Defendant had identified 9,000 responsive
     documents. Defs.' Br. at 17.  Mr. Piniero also produced a declaration in that case,
25   but a careful examination reveals that ICE's FOIA office no longer faces the same
     restraints. For example, ICE is now processing fewer active litigation cases (161
26   now, instead of 181 in 2021), and the normal processing rate is now 750 pages per
     month, not 500. Mr. Pineiro no longer cites to labor shortages due to the COVID-19
27   pandemic, which presumably have ebbed. *Compare* Defs.' Br. at 17 (citing *ACLU
     v. DHS,* 2021 WL 5449733, at *1), with Pineiro Decl., ECF No. 60-1 at ¶ 8.
28

competing concerns. . . .”). And “the term ‘practicable’ must be read in the context of FOIA's aims to provide timely information on government activities to the public. A 5,000-page per-month processing rate, which still contemplates a protracted period of review and production, appropriately balances agency constraints against that aim.” *Open Soc'y*, 399 F. Supp. 3d at 168.

Defendants also assert that Plaintiff's proposed maximum processing rate of 5,000 pages per month is unsupported. Defs.' Br. at 16. But courts regularly direct agencies to process records at rates of 5,000 or more pages per month, particularly where the government has caused unreasonable delay. *Inst. for Just. v. Internal Revenue Serv.*, 547 F. Supp. 3d 1, 12 (D.D.C. 2021). *See, e.g. NRDC v. Dep't of Energy,* 191 F. Supp. 2d 41, 43 n.5 (D.D.C. 2002) (ordering the majority of 7,500 pages to be processed within thirty-two days); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (5,000 pages per month); *Open Soc'y*, 399 F. Supp. 3d at 162  (5,000 pages per month); *Villanueva v. United States Dep't of Just.*, No. 19-23452-CIV, 2021 WL 5882995, at *3–4 (S.D. Fla. Dec. 13, 2021) (ordering 5,125 pages per month, with completion of full record within four months of order); *cf. Allen v. F.B.I.,* 716 F. Supp. 667, 669 (D.D.C. 1988) (pursuant to agreement between parties, Defendants processed material at 5,000 pages per month).

Defendants suggest that the current processing rate of 1,000 pages per month is reasonable, given the length of time that other FOIA cases may have taken to resolve. Defs.' Br. at 20. But the cases cited by Defendants do not address a processing rate in the context of the government's delay and refusal to conduct a search in the first instance. Rather, these cases stand for the unremarkable proposition that litigation can become prolonged after multiple rounds of summary judgment filings, appeals, and remands, none of which are at issue here. For example, *Reps. Comm. For Freedom of the Press v. FBI*, 3 F.4th 350, 359-361 (D.C. Cir. 2021), is distinguishable as the seven-year period cited by Defendants included a Circuit Court appeal, and consolidation of multiple FOIA requests.

1  Similarly, although *McGehee v. U.S. Dep't of Just.*, 362 F. Supp. 3d 14 (D.D.C.
2  2019) involved several years of litigation, the FBI provided a hit count for its
3  search within two months of the Plaintiff's initial FOIA request; the litigation
4  became prolonged after Plaintiff filed five additional FOIA requests that were
5  eventually consolidated in the case. *See McGehee v. U.S. Dep't of Just.,* 800 F.
6  Supp. 2d 220, 227 (D.D.C. 2011).

7      Defendants also cite numerous cases, all of which had a processing rate of
8  500 to 1,000 pages per month, which are irrelevant here. Defs.' Br. at 21-24. ICE
9  has already agreed to a production rate of 1,000 pages per month in this case, on
10  the basis of a smaller universe of documents than at issue today. Nor does the
11  government have a standard "interim release policy" that provides for "processing
12  requests in 500-page increments." *Id*. at 22 (citing *Nat'l Sec. Counselors v. U.S.*
13  *Dep't of Just.*, 848 F.3d 467, 471 (D.C. Cir. 2017). The "interim release policy" to
14  which Defendants cite refers to the number of pages that the FBI's FOIA office
15  typically includes on a single CD-ROM disc, not the number of pages released per
16  month. *Nat'l Sec. Counselors*, 848 F.3d at 469. No monthly processing rate is even
17  mentioned in that order, which involved a dispute over the cost of CD-ROM discs
18  to the requestor. *Id.* at 471. This claim also conflicts with the Pineiro declaration
19  which attests to a "normal processing rate for cases in litigation" of 750 pages per
20  month. Piniero Decl. ¶ 8. For these reasons, the Court should increase ICE's
21  production schedule.
22  **V.    CONCLUSION**
23      For these reasons, the Court should enter a further Scheduling Order as set
24  forth in Plaintiff's Proposed Order.
25  //
26  //
27  //
28  //

Respectfully submitted this 13th of November, 2023.

*/s/ Laboni Hoq*

| LABONI A. HOQ (SBN 224140) | EUNICE CHO (pro hac vice) |
|---|---|
| laboni@hoqlaw.com | echo@aclu.org |
| HOQ LAW APC | AMERICAN CIVIL LIBERTIES |
| P.O. Box 753 | UNION FOUNDATION |
| South Pasadena, California 91030 | NATIONAL PRISON PROJECT |
| Telephone: (213) 973-9004 | 915 Fifteenth Street NW, 7th Floor |
| | Washington, DC 20005 |
| | Telephone: (202) 548-6616 |
| MICHAEL KAUFMAN (SBN 254575) | KYLE VIRGIEN (SBN 278747) |
| MKaufman@aclusocal.org | kvirgien@aclu.org |
| ACLU FOUNDATION OF | AMERICAN CIVIL LIBERTIES |
| SOUTHERN CALIFORNIA | UNION FOUNDATION |
| 1313 West Eighth Street | NATIONAL PRISON PROJECT |
| Los Angeles, California 90017 | 39 Drumm Street |
| Telephone: (213) 977-9500 | San Francisco, CA 94111 |
| Facsimile: (213) 915-0219 | Telephone: (202) 393-4930 |
| | |
| | *Attorneys for Plaintiff* |