# EXHIBIT A



**OFFICE OF INSPECTOR GENERAL**
Department of Homeland Security

Washington, DC 20528 / www.oig.dhs.gov

August 18, 2022

Sent Via E-mail To: mkaufman@aclusocal.org

Michael Kaufman
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017

Subject:  OIG Freedom of Information Act Request No. 2022-IGFO-00158

Dear Mr. Kaufman:

OIG emailed ACLU on July 5, 2022, with suggestions for perfecting the above-referenced request.  In response to those suggestions, ACLU sent a letter to OIG dated, July 12, 2022 (ACLU's counter- proposal), wherein ACLU requested clarification on the following points:

1.  OIG proposed to respond to items 1-2, and 6-7 from the original FOIA request.

    Response:  ACLU requested that OIG clarify "whether and how" OIG would respond to items 3-5 and 8-9.

2.  Regarding items 1-2 and 6-7, OIG proposed to search "the system utilized by the Office of Investigations".

    Response:  ACLU stated "we cannot at this time agree that solely searching the locations identified in its July 5 email will satisfy DHS OIG's search obligations. To assess the sufficiency of its search, we ask that DHS OIG identify by name each of its records systems, which of those systems it plans to search for responsive records, and why searching other records systems would not likely uncover responsive records… and whether it (OIG) will search additional sources of information likely to have responsive information."

3.  Regarding items 6-7, OIG proposed to use the following search terms: 'Detainee' and 'Custody' and 'death' or 'died' or 'hospitalized' or 'hospital'.

    Response: "ACLU So Cal believes the terms specified are under-inclusive. We ask that in addition to "Detainee" and "Custody" and "death" or "died" or "hospitalized" or "hospital," that DHS OIG also include the following independent search terms: "emergency room," "emergency services," "poor outcome," "life support," "coma," "unconscious," "ventilator," "intensive care," "hospice," "palliative," and "fatal." In addition, we propose that DHS OIG search the terms "release," "transfer," "parole," and "alternative detention" that appear in the same document as the terms "medical," "surgery," "specialist," or "doctor." In addition, we do not believe responsive documents should be limited to those that contain the words "Detainee" and

"Custody" together. Instead, the search results need only contain one or the other of the terms "Detainee" or "Custody" [not case-sensitive], in addition to one of the other proposed connector terms ("death" or "died" or "hospitalized" or "hospital").

4. DHS proposed January 1, 2019, to the present as a time frame for the search.

   Response: "DHS OIG has failed to identify why it is proposing to limit the timeframe of its search to the period January 1, 2019 to the present. The Request specifically indicates that ACLU So Cal seeks responsive records from January 2, 2016 to the present."

OIG and ACLU agreed to discuss the above-referenced points via teleconference on August 17, 2022.

This letter responds to ACLU's July 12, 2022, letter regarding the above-referenced FOIA Request, and documents the points discussed during the teleconference.

First, OIG reiterates that we will respond to items 1-2 and 6-7 of the original FOIA request, because those items request records which would be under the purview of DHS OIG. Additionally, records responsive to item 8 will be returned in the search for items 6-7, with the following additions to the search terms: "Detainee" or "Custody" and "Covid", "Covid 19" or "Coronavirus". The additional data points described in item 8 are not maintained by OIG.

Records requested in items 3-5 and 9 would likely be under the purview of ICE as indicated by their identification as ICE records in items 3 and 5 of the FOIA request, specifically. Therefore, OIG will not include those items in its search. Likewise, any search envisioned for item 8, which is not encompassed by the search for items 6-7, is outside the purview of OIG and will not be conducted.

Second, OIG states that the system we will search for responsive records is EDS – the Enforcement Data System. EDS is the official OIG electronic case management system for the Office of Investigations. OIG uses EDS to manage information relating to complaints and investigations of alleged criminal, civil, or administrative violations by DHS employees, contractors, grantees, beneficiaries, and other individuals and entities associated with DHS. OIG uses EDS to manage investigations born from those complaints to facilitate the tracking of the investigation process, therefore, any records responsive to this FOIA request would be located within this system, including any relevant emails.

OIG understands and acknowledges that human error is always a factor in the maintenance of records in any system. As such, during our search, we will diligently follow-up on any indicators that personnel may have responsive records which were inadvertently maintained outside EDS.

Third, OIG agrees to and accepts the additional search terms requested by ACLU; to wit: "Detainee" or "Custody" with one of the following terms: "death" or "died" or "hospitalized" or "hospital," "emergency room," "emergency services," "poor outcome," "life support," "coma," "unconscious," "ventilator," "intensive care," "hospice," "palliative," or "fatal." "Detainee" and "release" with one of the following terms: "medical," "surgery," "specialist," or "doctor." "Custody" and "release," with one of the following terms: "medical," "surgery," "specialist," or "doctor." "Detainee" and "transfer," with one of the following terms: "medical," "surgery," "specialist," or "doctor." "Custody" and "transfer," with one of the following terms: "medical,"

"surgery," "specialist," or "doctor."  "Detainee" and "parole," with one of the following terms: "medical," "surgery," "specialist," or "doctor."  "Custody" and "parole," with one of the following terms: "medical," "surgery," "specialist," or "doctor."  "Detainee" and "alternative detention," with one of the following terms: "medical," "surgery," "specialist," or "doctor." "Custody" and "alternative detention," with one of the following terms: "medical," "surgery," "specialist," or "doctor."

Fourth, OIG will conduct searches in the time parameters requested by ACLU: January 1, 2016, to the present.


Sincerely,


DHS OIG FOIA Team

# EXHIBIT B

 Laboni Hoq <lhoq@hoqlaw.com>

## Correspondence re ACLU of Southern California FOIA Request 2022-IGFO-00158

**Laboni Hoq** <lhoq@hoqlaw.com>                                                      Mon, Sep 12, 2022 at 8:00 AM
To: FOIA.OIG@oig.dhs.gov
Cc: Eunice Cho <echo@aclu.org>, Kyle Virgien <kvirgien@aclu.org>, Michael Kaufman <MKaufman@aclusocal.org>

Dear DHS FOIA team,

We are following up on this correspondence. Please let us know when we can expect a response.

Thank you.

[Quoted text hidden]

# EXHIBIT C

September 14, 2023

Joseph Tursi
Jason Axe
Alarice Medrano
United States Attorney's Office
Central District of California
300 N. Los Angeles St. Suite 7516
Los Angeles, CA 90012
Joe.Tursi@usdoj.gov
Jason.Axe@usdoj.gov
Alarice.Medrano@usdoj.gov

***SENT VIA EMAIL***

   Re: *ACLU of Southern California v. United States Immigration and Customs Enforcement, et al.,* No. 2:22-cv-4760 (C.D. Cal.)

Dear Joe:

We write in response to Defendants' September 1, 2023 letter and September 12, 2023 email regarding the Parties' ongoing efforts to address the adequacy of Defendants' searches for and production of records in response to Plaintiff's FOIA Request.  We appreciate Defendants' openness to trying to reach agreement on the search and production parameters so the Parties can narrow the issues in dispute and avoid potential motion practice.

To that end, in addition to responding to the issues in Defendants' September 1 letter and September 12 email, we reiterate here issues Plaintiff has raised in prior correspondence to which Defendants have yet to respond. While we appreciate Defendants may not agree to all of Plaintiff's proposed search parameters, we need to know Defendants' positions relating to them to assess whether Plaintiff will need to move the Court to address the adequacy of Defendants' searches and productions. We therefore ask that Defendants respond to each of the outstanding issues below within two weeks of this date, by September 28, 2023

## I. OIG

Thank you for confirming that with its August 2, 2023 correspondence, OIG has completed its searches for and production of records responsive to Plaintiff's FOIA Request.

Based on OIG's accounting of its productions to date, Plaintiff has the following remaining issues with OIG's productions, as also referenced in prior correspondence as indicated below for your reference.

September 14, 2023

### A.      Basis for OIG's Referral of Records to Other DHS Components/Agencies

By our account, OIG has made the following referrals to ICE, other DHS components and other agencies, but has not established a proper basis for doing so.

- November 2022: 220 records to ICE; 233 records to DOJ/EOUSA
- December 2022: 280 records to ICE; 185 records to DOJ/EOUSA
- March 2023: 9 records to ICE; 32 records to CBP
- June 2023: 8 records to an Unidentified Agency (later produced by OIG in August 2023); 328 records to ICE; 1 record to DHS Office of Civil Rights
- July 2023: 583 records to ICE

OIG must establish a proper basis to refer records in its possession to another agency, particularly because such referrals necessarily impede the government's obligation under FOIA to promptly produce records to requesters. We raised this issue with OIG in a letter dated September 2, 2022, and again in an email dated January 9, 2023.

As referenced in Plaintiff's September 2, 2022 letter, to justify these referrals OIG must determine whether the agency to whom OIG referred records had the "intention ... [to] retain the authority to decide if and when materials are released to the public ... by either (i) explicit indications to that effect on the face of each document or (ii) the circumstances surrounding the creation and transfer of the documents." *McGehee v. C.I.A.*, 697 F.2d 1095, 1111 (D.C. Cir. 1983), on *reh'g sub nom. McGehee v. Cent. Intel. Agency*, 711 F.2d 1076 (D.C. Cir. 1983). Furthermore, assuming another agency or component did maintain an "intent to control" specific records responsive to Plaintiff's request, OIG's process of referring the records to another agency or component would have to be "prompt and public." *Id.* As such, we again ask that OIG justify the above-referenced referrals, or process the records itself and promptly produce them to Plaintiff.

Furthermore, it is apparent that other DHS components possess responsive records that have not been searched or produced, as OIG possesses, but has not produced, responsive documents originating from other DHS components. Plaintiff thus requests that DHS search for and produce responsive records of these component agencies. *See Lawyers' Comm. for C.R. Under L. v. United States Dep't of Just.*, No. 18-CV-167 (EGS/GMH), 2020 WL 7319365, at *10 (D.D.C. Oct. 16, 2020) (finding that an agency's obligation to follow leads includes searches of other components). These components include the "Unidentified" component or agency referenced in OIG's June 29, 2023 production letter, as well as the DHS Office of Civil Rights and Customs and Border Protection (CBP), as referenced above. Please inform us whether Defendants will agree to conduct independent searches of these DHS components. If so, we would be open to collaborating with Defendants on appropriate search parameters.

2

September 14, 2023

Regarding the Unidentified DHS component referenced in its June 29, 2023 letter, OIG cited 6 C.F.R. section 5.4(d)(1) as the basis for its consultation with it. However, 6 CFR section 5.4(d)(1) does not provide that OIG can withhold the identity of the component or agency, and doing so violates its obligation to ensure that the referral is "public." *McGehee*, 697 F.2d at 1111. We therefore ask that OIG identify the unidentified component to Plaintiff.

Finally, we specifically request the following documents, referred to in OIG's production of documents to date:

- December 2022 OIG production, pages 80-82, regarding Johana Medina Leon: Please provide the documents referenced in the report, where "copies of the final executive summary and emails documenting Medina's [sic] decision to release her from ICE ERO custody. Copies of the aforementioned documents will be placed in the case file."
- December 2022 OIG production, pages 83-85, regarding Johana Medina Leon. Please provide the documents referenced in the report, where "[a] copy of [REDACTED] emails between the MTC and ICE ERO management, the executive summary, and the OCPC final report of findings will be placed into the case file."
- March 2023 OIG production, page 48, regarding a question about the number of OIG's investigations into out-of-custody deaths, to which the El Paso ICE Field Office, responded, "approximately five investigations." Please provide documents related to these five investigations.
- June 2023 OIG production, page 180, regarding OIG's investigation into Teka Gulema's death, where OIG noted review of "an email dated November 24, 2015 from [REDACTED], Field Office Director, ICE, New Orleans, LA. The email was to [REDACTED], Field Medical coordinator, IHSC, New Orleans, LA. The email stated "FYI, HQ has directed we serve a release letter on Dr. [REDACTED] and release Gulema from ICE custody today." Please provide the document referenced here.

### B.    Unidentified Statue Redaction

In our February 14, 2023 letter, Plaintiff raised the impropriety of withholding information in responsive records based on an "unspecified" statute. See Plaintiff's February 10, 2023 letter. Despite meeting and conferring about this issue, Defendants have yet to provide a valid justification for this withholding, including by: (1) identifying the statute upon which this exemption is claimed, and (2) providing information about the content of the withheld material sufficient to allow an assessment of whether it falls within the statute's protections. Please provide that to us, or reproduce the records to us without the unjustified redactions.

### C.    Total Number of Documents Reviewed

September 14, 2023

In its November 2022 and August 2023 productions, OIG appears to have failed to identify the total number of documents it processed at those times. *See* OIG November 11, 2023 letter; August 2, 2023 letter. We imagine this was simply an oversight on the part of OIG, and ask that it provide this information to us now so we have a proper accounting of its final response to the Request.

## II.   ICE

### A.   Production Rate

Thank you for confirming that ICE has completed the de-duplication and threading process, and that it has approximately 12,000 additional pages responsive to Parts 1-3 in its processing queue. Please also let us know with ICE's next production in September how many of these 12,000 pages remain in its processing queue at that time.

As we have discussed, 12,000 pages for just Request Nos. 1-3 is a large number of pages that brings the total page count to be processed well above the count that Defendants initially provided to Plaintiff and the Court when the parties negotiated a production rate and case schedule. We have discussed several ways to speed ICE's completion of this production, each of which will need to be undertaken to ensure timely completion.

First, regarding documents related to Teka Gulema, we appreciate ICE's willingness to provide clarity on the number of those documents created after October 1, 2015, and to consider prioritizing them in ICE's October production. Please let us know the page count for these documents and confirm that you will prioritize documents related to Mr. Gulema created after October 1, 2015 in your October production. This will allow us to determine whether we can waive production of documents related to Mr. Gulema that were created before October 1, 2015, which we hope would significantly reduce the number of pages ICE must process. A lower page count would benefit all parties.

Second, while we appreciate Defendants commitment to conduct additional searches for Parts 4-9 of the Request, there has been undue delay in ICE's processing of these searches, including providing Plaintiff any hit counts so it can assist in streamlining the production. Please provide a hit count for records responsive to Parts 4-9, to enable the parties and the court to establish a production rate for these records and set the calendar for this case.

Finally, we would also appreciate Defendants' position on Plaintiff's proposal for an expedited processing rate, as we have discussed with the Court at the August 11, 2023 Status Conference.

Please provide the above-referenced information to Plaintiff by September 28, 2023.

4

September 14, 2023

B.      Parts 1-3

We look forward to the continued production of documents responsive to Parts 1-3 of the Request. We raise a few immediate issues with documents that have been produced that we hope that ICE can remedy:

- ICE's December 2022 Production, page 2648: This email appears to be only partially produced. The sender is a commander in the U.S. Public Health Service, responding to an email sent on July 29, 2015, with the subject line: Re: Follow-Up Requested RE: SDI update: Teka Gulema.

- ICE's July 2023 Production, pages 7197-7200. This document, titled "ERO New Orleans-Teka GULEMA, A28021556" is dated "November 10, 2022." However, it appears that this date is incorrect, perhaps an inadvertent automatic update of the processing date, as the document references a recommendation that ERO release Mr. Gulema on a letter of supervision, and because Mr. Gulema died in 2016. Please reprocess this document with the original date of the document.

- ICE's August 2023 Production, page 7504. This document appears to be a partial scan. Please provide the complete document.

- ICE's August 2023 Production, page 8313. This document, which appears to be an email between a Deputy Medical Director and another ICE employee, sent on June 3, 2019, with the subject line "RE: ES – Medina Leon 209378, El Paso AOR, Otero Processing, Detainee Death after ICE Release," appears to be incomplete, as the email produced is cut off at the top. In one part of the email chain, the employee states, "Agreed, several delays and missed opportunities to intervene appropriately. Since she passed away while not in custody then IIU will not investigate-correct?" Please produce the complete document.

- We are glad that ICE has been able to locate and produce documents related to Mr. Ibarra Bucio. However, it appears that all of the documents produced thus far are from staff of the GEO Group, Inc., which operates the Adelanto Detention Center, where Mr. Ibarra Bucio was detained prior to his death. None of the documents produced thus far regarding Mr. Ibarra Bucio originate from ICE. It is clear from the documents produced thus far that ICE employees, including the Assistant Field Office Director, received email updates, discussed custodial decisions, and ultimately decided to release Mr. Ibarra Bucio on February 22, 2019. *See e.g.* page 7848 (ICE's order to release Ibarra-Bucio from custody, Feb. 22, 2019); page 7500 (GEO memo noting "2/22/19 PER THE AFOD

5

September 14, 2023

DETAINEE IBARRA IS NO LONGER IN OUR CUSTODY"). For that reason, please ensure that ICE conducts a search of ICE employees, including the Field Office Director, Assistant Field Office Director, Supervisory Detention and Deportation Officer, and any ICE officers who worked on Ibarra-Bucio's case.

**C.      Parts 4-9**

**1.      Part 4**

In response to Defendants' September 12, 2023 email, regarding ICE's determination that Plaintiff's proposed Boolean search "exceeds the allowable number of characters," please clarify whether ICE is using Relativity software to conduct the search. If so, we believe there are ways to address this technical issue, and ask that the Defendants arrange a call with ICE's FOIA staff who has been responsible for setting up the Boolean search so we can suggest ways to address the technical issues without compromising the agreed upon parameters. Alternatively, we would be glad to request that ICE's FOIA staff be present on a status conference with the court to help resolve the issue.

Importantly, ICE's proposed amendments to the Boolean search as set forth in your September 12 email excludes keywords that are core to the content of Request No. 4, including those that are tailored to locate policies, procedures, protocols, or trainings associated with release from custody of ill detainees. As such, we cannot agree to the proposed amendments, but remain open to working with ICE and its IT staff to fashion an appropriate search consistent with its technological capabilities.

Regarding Defendants' September 1, 2023 letter, we appreciate that you have identified relevant custodians for this search.  While we believe former Acting ICE Director Tae Johnson, Deborah Fleischaker, and Scott Shuchart are appropriate custodians for the search, given that the request specifically seeks documents from ICE Health Service Corps (IHSC), the search should, at minimum, also include a custodian from IHSC. In addition, given the relevant time period of the Request, we believe ICE should also include Tae Johnson's predecessors and successors in this list. Please let us know if ICE is willing to do so.

**2.      Parts 5 and 7**

Regarding the search parameters ICE represents in its September 1, 2023 that it used for Parts 5 and 7, we do not agree that the parameters are adequate. Although the parties have agreed on search terms, as stated in our July 12, 2023 letter, in order to conduct an adequate search, ICE should conduct a search of custodians that include key personnel in its Medical Case Management and Unit Medical Care Coordination Program staff, IHSC participants in

6

September 14, 2023

Significant Detainee Illness (SDI) Meetings, as well as ICE ERO staff in communication with IHSC's Medical Case Management Unit. Plaintiff's June 26, 2023 letter provides further basis why a search of these custodians is necessary for an adequate search. Please confirm whether or not ICE will include these custodians in its search.

### 3.    Part 6

In their September 1, 2023 letter, Defendants claim simply that "OPR has completed its search and it does not have responsive records." However, a search by OPR alone does not constitute an adequate search. We remind Defendants that Part 6 of the Request also seeks spreadsheets, Significant Incident Reports (SIRs), Significant Event Notification (SEN) system, emails and other communications that would identify individuals subject to Defendants' policies and practices related to releasing ill detainees on their deathbeds. As discussed in the Plaintiff's July 12, 2023 letter, Defendants are clearly in possession of such documents, which would be recoverable using the search terms at the suggested search locations provided.

Defendants' production, for example, has indicated that ICE Enforcement and Removal Operations reports the deaths of detainees—even those that took place outside custody. See, e.g. Exh. B, OIG June 2023 Production, p. 1-2 (noting that "[o]n June 3, 2019, ICE ERO El Paso reported the death of [Johana Medina-Leon] to DHS OIG El Paso, TX."). Thus, ICE's search of only OPR, and not ERO is improper. Please let us know if ICE will rectify this issue and conduct the proposed searches.

Again, to the extent that ERO is unable to search the SIR system or the SEN system using the agreed-upon search terms, Plaintiff suggests that ICE search the records of the ICE Joint Intelligence Operations Center (JIOC), which "analyzes the SIRS and sends summaries of them to the appropriate . . . field offices." DHS, Privacy Impact Assessment for the Significant Significant Event Notification (SEN) System 1-2, Oct. 15, 2021, https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice023a-sen-october2021.pdf.

### 3.    Part 8

Regarding the search parameters ICE represents in its September 1, 2023 that it used for Part 8, namely a search of records of Stewart Smith, we do not agree that the parameters are adequate, particularly because it appears ICE will exclude from its search any responsive records that it deems related to the *Fraihat v. ICE* litigation. It appears that ICE has used the *Fraihat* class definition for its internal recordkeeping purposes and labels documents related to COVID risk factors as related to this "*Fraihat*" class definition. However, ICE has cited no exemption—and can point to no basis—that would permit it to withhold documents simply because they involve the class definition in the *Fraihat* litigation. Plaintiff explained in its July 12, 2023, July 26, 2023

7

September 14, 2023

and May 19, 2023 letters that the available evidence indicates that ICE keeps responsive information in its "*Fraihat*" records. Please confirm whether or not ICE will search these *Fraihat* files for responsive records. If ICE will not search these files, please identify any exemption that you contend allows it not to produce responsive records in these files.

### 4. Part 9

We appreciate ICE's further efforts to search for records responsive to Request No. 9. However, we are confused by ICE's approach to these searches, including whether it conducted the Boolean searches Plaintiff suggested. To facilitate the work ICE has done, and to narrow the results, we ask that ICE provide us the hit counts by search term that resulted in its retrieval of 16,000 emails from the Regional Field Medical Coordinators within the Medical Case Management Unit and the Regional Health Service Administrators within the Health Operations Unit. Without this information, Plaintiff does not know which of its search terms to narrow. Once ICE provides this information Plaintiff can suggest further limiting search terms and other means to narrow the results.

Notwithstanding our disagreements over the parameters of ICE's searches for Request Nos. 4-9, as discussed above we ask that ICE provide hit counts for the searches it has conducted to date by September 28, 2023, two weeks from this date. We appreciate your informing us in your September 12 email that you will be in trial next week and have taken that into account in proposing this schedule, together with our understanding that your co-counsel Mr. Jason Axe will be able to assist in timely securing this information from ICE so we can avoid further delay in completion of the searches. Absent complete receipt of this information by the requested timeframe, Plaintiff will seek a Status Conference with the Court to address the delay.

### III. Removal of Password Restrictions on PDF Documents

In recent months, Defendants have begun to produce FOIA records to Plaintiff in pdf files that require the use of a password to access the document. *See, e.g.* OIG productions dated July 2023, August 2023, and March 2023 (provided in September 2023). Password restrictions on pdf documents released under FOIA are unnecessarily burdensome, and restricts anyone, including the media or members of the public from viewing the files without the password. Password-restricted files also hamper the Plaintiff's ability to share excerpts of the pdf documents as exhibits with the Court on the CM/ECF system, which does not allow filing of such documents. *See* U.S. District Court, Central District of California, *Technical PDF Related Questions*, https://www.cacd.uscourts.gov/e-filing/faq/pdf-related%20questions ("PDFs with the following content will be rejected . . . encrypted or password-protected").

September 14, 2023

As referenced in our September 6, 2023 email, Plaintiff requests that Defendants provide the password-restricted pdf documents in a format that does not require the use of a password to open the file, and to ensure continued production of documents without password restrictions. Alternatively, Plaintiff can request the Court's guidance as to how parties should share FOIA documents with password restrictions with the Court in future filings.

\*\*\*

Please do not hesitate to contact me if you would like to address any of these matters by teleconference.

Sincerely,

LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004


MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017 Telephone:
(213) 977-9500
Facsimile: (213) 915-0219

EUNICE CHO (pro hac vice)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616


KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

# EXHIBIT D



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*JOSEPH W. TURSI*
*JASON K. AXE*
*Assistant United States Attorney*
*Phone:  (213) 894-3989/8790*
*E-mail:  Joseph.Tursi@usdoj.gov*
*          Jason.Axe@usdoj.gov*

*Federal Building*
*300 N. Los Angeles Street, Suite 7516*
*Los Angeles, California 90012*

October 2, 2023

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

Re:     ACLU of SoCal v. ICE, et al.
        C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

The following responds to your September 14, 2023 correspondence regarding Plaintiff's FOIA request directed to the DHS Office of Inspector General ("OIG").

**A.     Basis for OIG's Referral of Records to Other DHS Components/Agencies**

In your letter, you suggest that "OIG must establish a proper basis to refer records in its possession to another agency." To the extent that OIG is ultimately required to set forth an explanation for its referrals, it will do so in a declaration as part of its motion for summary judgment in this action. OIG's position is that its referrals were proper in accordance with the DHS FOIA Regulations, 6 CFR §5.4.

Regarding what you described as an "Unidentified DHS component" referenced in OIG's June 29, 2023 letter for consultation on 8 pages, that component was the Department of Homeland Security's Privacy Office.

As for the specific documents identified on page 3 of your correspondence, from your description of those documents, if they were in OIG's possession, they likely would have been referred to ICE for review and processing.

**B.     Unidentified Statute Redaction**

The information at issue consists of the personal privacy information of non-citizens, which was withheld under FOIA exemptions 3, unspecified statute, 6, and 7C.  In addition to Exemptions 6 and 7C, Exemption 3 was applied to protect the privacy interests of the DHS ICE detainee(s). Exemption 3 allows for the withholding of information that is prohibited from disclosure by another federal statute provided that (1) the statute either requires the information

Ms. Laboni A. Hoq
RE:  ACLU of SoCal v. ICE
October 2, 2023
Page 2

to be withheld, and it leaves no room for discretion on the matter, or (2) the statute establishes criteria for withholding or refers to particular types of information to be withheld. Pursuant to 5 U.S.C. § 552(b)(3)(A)(i), DHS OIG determined that disclosure of the personal privacy information of the DHS ICE detainee(s) was properly protected by a confidentiality statute that is applicable in immigration matters. Such confidentiality statute is prohibited from being disclosed as the disclosure, itself, would be a violation. Disclosure of this personal privacy information may subject the individual to physical harm, embarrassment, harassment, intimidation, and legal consequences. Moreover, as stated, none of the individuals named in these records have consented to the disclosure of their information nor the waiver of the confidentiality statute's protection. Additionally, the protections of the confidentiality statute at issue are not automatically removed simply because a non-citizen might be deceased. As with Exemptions 6 and 7C, a balancing test must be evaluated. This withheld information serves no public benefit and would not inform the public on how DHS OIG is executing its statutory duties. Moreover, the limited information that is withheld pursuant to Exemptions 3, 6, and 7C is not directly responsive to the Plaintiff's request; rather it is personal information specifically related to the individual, not whether ICE released the individual prior to the individual being transferred to a hospital.

## C.  Total Number of Documents Reviewed

In November 2022, DHS OIG reviewed 701 pages of records. In August 2023, DHS OIG reviewed 11 pages.

Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph Tursi*

JOSEPH TURSI
Assistant United States Attorney

cc: Ms. Eunice Cho (by email)
    Mr. Michael Kaufman (by email)
    Mr. Kyle Virgien (by email)

# EXHIBIT E

October 10, 2023

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

      Re:    ACLU of SoCal v. ICE, et al.
               C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

The following responds to your September 14, 2023 correspondence regarding Plaintiff's FOIA request directed to ICE. It also follows our letter dated October 2, 2023, providing responses with the portion of the FOIA request directed to OIG.

**A. Production Rate**

As of today's date, with respect to Parts 1-3 of Plaintiff's FOIA request, there are approximately 10,200 pages remaining to be processed out of the approximately 12,000 initially determined to be potentially responsive. Please note that this page number is subject to change as ICE works to ensure that all of Mr. Bucio's records have been located and processed.

Regarding the documents related to Teka Gulema, as noted in our September 1st correspondence, ICE sought to gain further clarity on the remaining Gulema records. However, after further review, ICE is unable to separate out pages for Mr. Gulema created after October 1, 2015. ICE attempted to do so by using the "date created" function, but it did not obtain accurate results. ICE will therefore continue to process the records, which include those related to Mr. Gulema. If your client wishes to waive production of documents related to Mr. Gulema that were created before October 1, 2015, please let us know. It is still not clear to us why the number of documents created after October 1, 2015 is relevant to that determination. Regardless, unless ICE hears otherwise, it will continue processing all records pursuant to the terms of the request.

As set forth in our September 12th email, ICE has obtained a hit count of over 530,000 documents using the terms Plaintiff identified for Part 4 of the FOIA request. As described more fully below, ICE's search for documents responsive to Part 5 resulted in 122 documents (551 pages), and its search for documents responsive to Part 8 resulted in 64 documents (1,711 pages).

Regarding an "expedited processing rate," although the number of potentially responsive documents is greater now than what ICE initially anticipated, that number has no relation to the processing rate that ICE should be required to undertake. Plaintiff's broad search requests, resulting in potentially large numbers of documents to review, do not take precedence over requests (many of which are more narrowly tailored) submitted by other FOIA requesters. There is a finite limit as to the number of documents that ICE staff can review each month, and every page reviewed with respect to Plaintiff's FOIA request means a page responsive to another person's request that cannot be reviewed. Once again, ICE asks that your client work to narrow and focus its requests to bring the total number of potentially responsive documents down to a more reasonable number. But to the extent that your client is unwilling or unable to do so, that decision does not entitle it to priority over other FOIA requesters, including those who are receiving monthly productions without filing lawsuits and those who have court ordered production rates. As explained in the previously filed declaration from ICE's FOIA Director (Dkt. 48-1), the processing rate in this case of 1,000 pages per month *exceeds* the normal rate. Therefore, Plaintiff is already receiving an "expedited processing rate," and an even greater processing rate is neither appropriate nor warranted.

## B.  Parts 1-3

ICE's response to your questions regarding documents that have already been produced is as follows:

- ICE's December 2022 Production, page 2648: ICE will attempt to locate the complete email.

- ICE's July 2023 Production, pages 7197-7200: There appears to be some confusion. These pages are not what consistent with Plaintiff's characterization. Please confirm the Bates Stamp range or provide the three pages of documents you are referring to.

- Bates Stamp 7504: ICE will attempt to locate the complete document.

- Bates Stamp 8313: ICE will attempt to locate the complete email.

- ICE employees, including the AFOD, conducted searches for Mr. Bucio and found records. They will be processed in due course.

## C.  Parts 4-9

### 1.  Part 4

In response to your inquiry, ICE is using Relativity software to conduct the second part of the search involving the Boolean connectors. On September 12, 2023, we explained by email that the first part of the search resulted in over 530,000 potentially responsive documents.

However, Plaintiff's proposed Boolean connector search could not be run because it exceeds the allowable number of characters. ICE proposed using the following connector terms, essentially removing the terms that were *already* included in the initial search: custody OR death OR died OR deceased OR decedent OR discharge OR surgery OR specialist OR COVID-19 OR hospital OR ambulance OR "emergency services" OR "poor outcome" OR "offsite referral" OR unconscious OR "medical observation" OR ICU OR "critical condition" OR fatal) AND (release OR transfer OR benefits OR parole OR "alternative detention" OR discharge OR OSUP OR "order of supervision" OR humanitarian). Please advise if that is acceptable, and if not, please provide alternative connector terms and identify exactly what your client's concerns are with the proposed connectors. Furthermore, if you have any "ways to address . . . technical issues," please provide them to us in writing. ICE declines your request to speak directly with its IT staff on this issue.

ICE does not agree at this time that a search of the predecessors or successors of Tae Johnson is necessary. ICE will reevaluate that position as its search for records responsive to Part 4 progresses. As for your request that a custodian from IHSC conduct a search, such a search was undertaken by Stewart Smith, the Assistant Director of IHSC, who ran a search of his entire email archive, with no date restriction for Parts 5 and 8 using many of the same search terms as in Part 4. As a result, a further search of IHSC is not necessary.

### 2. Parts 5 and 7

With respect to Part 5, the Boolean connector search was run and resulted in 122 documents (551 pages). They will be placed in queue for processing. As for your suggestion that ICE "conduct a search of custodians that include key personnel in its Medical Case Management and Unit Medical Care Coordination Program staff, IHSC participants in Significant Detainee Illness (SDI) Meetings, as well as ICE ERO staff in communication with IHSC's Medical Case Management Unit," such a search would be overly burdensome because it would encompass <u>nearly</u> every staff member in the referenced locations.

### 3. Part 6

This part specifically seeks documents *created by* DHS OIG or ICE OPR. Your characterization of the request as seeking "spreadsheets, Significant Incident Reports (SIRs), Significant Event Notification (SEN) system, emails and other communications that would identify individuals subject to Defendants' policies and practices related to releasing ill detainees on their deathbeds" omits the qualifying language in the request itself, "***created by DHS OIG or ICE OPR***." ICE OPR was tasked with a search and did not find any responsive records. Plaintiff's attempt to amend its request to seek additional information is inappropriate. If Plaintiff would like to obtain information on specific detainees, it can submit a FOIA request providing the identifying information to ICE, and the specific records will be searched for.

### 4. Part 8

The Boolean connector search has now been run for this request, and the resulting hit count is 64 documents, consisting of 1,711 total pages (375 pages if excel files are excluded). These documents will be placed in queue for processing.

The initial search was conducted by Stewart Smith, the Assistant Director of IHSC. Mr. Smith searched the following agreed upon search terms: (1) Ambulance; (2) 911; (3) Emergency; (4) "offsite referral"; (5) "life support"; (6) Coma; (7) Ventilator; (8) "intensive care"; (9) "critical condition"; (10) "poor outcome"; (11) Hospice; (12) Palliative; (13) Death; (14) Died; and (15) Deceased. Once his emails were obtained, the following agreed upon Boolean connectors were used to obtain the final results: (detainee or custody) AND (death or died or deceased or surgery or specialist or COVID19 or hospital! or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal) AND (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian or "order of recognizance").

Your September 14th correspondence appears to misinterpret ICE's intentions with respect to this part. ICE does not intend to exclude from its production *any* records related to the *Fraihat v. ICE* litigation. Should records related to *Fraihat* appear in the search results to this request, and if those records are deemed responsive to Plaintiff's original FOIA request, ICE will process them accordingly. What ICE will not agree to is specifically searching for documents from the *Fraihat* litigation as Plaintiff did not request these documents in its original FOIA request.

### 5. Part 9

In our September 1, 2023 letter, we explained that a preliminary search by just *one* of ICE's Regional Health Service Administrators using the search terms your client proposed ("Death," "Died," "Deceased," "Ambulance," "Emergency," "Hospital," "offsite referral," "life support," "Coma," "Ventilator," "Intensive care," "critical condition," "Hospice," "Palliative," or "Release") yielded 16,000 emails (not pages), most of which appeared not to be related (or only peripherally related) to one of the proposed search terms.

As a result, we wrote that ICE requested clarification from you regarding the specific types of records your client seeks so ICE can adequately craft a search that will result in fewer initial hits. Alternatively, ICE proposed (a) adding a second term such as "bill," "invoice," etc. to the preliminary search to reduce the number of records initially identified, or (2) pairing search terms, e.g., "Death + record," "Ambulance + invoice," and "Hospital + bills."

In your September 14, 2023 letter, you did not respond to ICE's inquiry regarding what specific types of records your client is seeking. That failure makes it harder for ICE to undertake

a search for records. Therefore, we again ask that you clarify what specific types of records your client is seeking here. Your letter also failed to accept either of ICE's proposals to help narrow the search. Instead, you asked ICE to provide hit counts for each separate search term. Part 9 requests "Bills, invoices, charges, or records of payment." Please explain why ICE's proposal to add a second term, such as "bill," "invoice," etc. to the search terms is not acceptable to Plaintiff to help narrow the initial search for records, which yielded 16,000 emails. Alternatively, please explain why ICE's proposal to pair search terms is also not acceptable. Should we not receive a response, ICE will proceed with your request to put the 16,000 emails in Relativity and run the Boolean search. It will thereafter process those records.

### 6.  Referred Documents

In an attempt to clarify some confusion with respect to documents referred to ICE from OIG, ICE has received and is processing the 328 pages from June 2023. ICE will then process the final referral of 583 pages.

### D.  Removal of Password Restrictions

In your September 14th email, you ask that Defendants not produce FOIA records in pdf files that require the use of a password to access. The only records that have been provided that have been password restricted are those sent via email from OIG, as that is their protocol. But OIG has now completed its search and production, so this issue appears to be moot. Regardless, once you receive a PDF that is password protected, you are free to take whatever action you like with that document to remove any password protection, including printing it using, for example, the Microsoft Print to PDF function. We suggest you consult with your IT professionals for further assistance with that process.


Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

cc: Ms. Eunice Cho (by email)
    Mr. Michael Kaufman (by email)
    Mr. Kyle Virgien (by email)

# EXHIBIT F

October 19, 2023

Joseph Tursi
Jason Axe
Alarice Medrano
United States Attorney's Office
Central District of California
300 N. Los Angeles St. Suite 7516
Los Angeles, CA 90012
Joe.Tursi@usdoj.gov
Jason.Axe@usdoj.gov
Alarice.Medrano@usdoj.gov

*SENT VIA EMAIL*

> Re:   *ACLU of Southern California v. United States Immigration and Customs Enforcement, et al.,* No. 2:22-cv-4760 (C.D. Cal.)

Dear Counsel:

We write in response to Defendants' October 10, 2023 letter regarding the Parties' ongoing efforts to address the adequacy of Defendants' searches for and production of records in response to Plaintiff's FOIA Request.

To ensure Defendants' completion of the remaining searches for responsive records, and Plaintiff's prompt receipt of them, we ask that Defendants respond to each of the outstanding issues below within two weeks of this date, by November 2, 2023.

## I.      Processing Rate

Plaintiff initially agreed to a processing rate of 1,000 pages per month by each Defendant based on Defendants' representation that, based on their hit counts, they "currently anticipate[d]" production of all documents responsive to all nine parts of Plaintiff's FOIA request to conclude in "May 2023." Dkt. 39-1 at 3. It is now apparent that Defendants' hit counts significantly undercounted the universe of responsive documents. Based on the current number of pages to be processed, ICE will complete its production in response to Parts 1 to 3 in August of 2024, at which point it will begin processing an as-yet-unknown number of documents for Parts 4 to 9.

ICE has indicated an unwillingness to consider any deviation from the existing processing rate. Thus, in order to remedy this significant delay in the resolution of this case, Plaintiff will request that the court modify the production rates it ordered. Plaintiff will first request that the Court require Defendants to process records responsive to Parts 1 to 3 in parallel with records responsive to Parts 4 to 9. Plaintiff will not request any increase in the rate as to Parts 1 to 3 at

October 19, 2023
2

this time. It will thus request that the Court order each Defendant with remaining records to process them at a rate of 1,000 pages per month for records responsive to Parts 1 to 3.

For Parts 4 to 9, Plaintiff will request a rate calculated to result in completion of Defendants' production responsive to Parts 4 to 9 by June 11, 2024. That is, Plaintiff will request that the Court order each Defendant with remaining records process them at a rate equal to that Defendant's total page count for Parts 4 to 9 divided by six, rounding up to the nearest whole page, not to exceed 5,000 pages per month. *See, e.g., Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering agency to process 5,000 records a month); *Elec. Privacy Info. Ctr. v. FBI*, 933 F. Supp. 2d 42, 48-50 (D.D.C. 2013) (rejecting claim that "'exceptionally large number' of FOIA cases involving the agency currently in litigation" justified only processing 1,500 pages per month, and ordering significantly higher volume in response to plaintiff's request); *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 811 F. Supp. 2d 713, 731 (S.D.N.Y. 2011) (ordering ICE to fully respond to an outstanding FOIA request that required producing over 14,000 pages in one month).

## II.      DHS-OIG Production

With respect to documents located by OIG, but referred to ICE, Defendants have informed us that ICE has received and is processing 328 pages received from OIG from June 2023, and will also process the final referral of 583 pages. Plaintiff requests that after ICE processes these documents, that they be produced by OIG such that Plaintiff can understand which documents were reviewed by OIG as part of its investigation into Mr. Gulema, Mr. Vargas Arellano, Mr. Ibarra Bucio, or Ms. Medina Leon.

For the records OIG referred to DHS components other than ICE, Defendants have not responded to our request that they conduct a search for responsive records in those components, including the DHS Privacy Office, the DHS Office of Civil Rights and Customs and Border Protection (CBP). Please inform us whether Defendants will agree to conduct independent searches of these DHS components.

## III.      Parts 1 to 3: Ordering and Narrowing of Production and Rate of Production

Plaintiff addresses the several issues the parties have discussed related to Parts 1 to 3.

**First**, Plaintiff reiterates its request that ICE provide a hit count for the number of pages remaining to be processed for Parts 1 to 3 that relate to each of the four people Plaintiff identified in its Request. **Please provide those page counts by November 2, 2023.**

**Second**, Plaintiff also reiterates its request that ICE provide a count of the number of pages of documents related to Mr. Gulema dated after October 1, 2015, so that Plaintiff can attempt to

October 19, 2023
3

waive production of the remainder of the documents related to Mr. Gulema by ICE[1] (without waiving Plaintiff's right to later provide "positive indications of overlooked materials" under *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022)). Plaintiff understands ICE's current position that it is "unable to separate out pages for Mr. Gulema created after October 1, 2015." October 10, 2023 Letter. However, this appears to be a result of a document-collection issue that ICE could readily fix. ICE has made clear that it can filter by date, representing in a declaration that "date ranges can be applied to further narrow the scope" of documents after they have been collected and threaded. Dkt. 38-1 at ¶ 19; see also *id*. at ¶ 18.c (explaining that ICE's email collection and processing system is able to use "Email From, Email To, **Email Date**, and Email Subject headers" for processing) (emphasis added). Rather, ICE represented that this filtering "did not obtain accurate results" because the metadata was incorrect. October 10, 2023 Letter. It thus appears that ICE collected the documents in a way that altered their metadata, and that ICE could remedy this issue by simply collecting the documents again in a forensically proper way. Plaintiff is happy to work with ICE's technical staff to assist them in these efforts to collect the documents again. Defendants have declined to make these technical staff available when Plaintiff has made previous, similar requests, so Plaintiff will move the Court for an order requiring ICE to make them available. **If ICE is willing to make these technical staff available, please let us know as soon as possible so that we can avoid taking that issue to the Court.**

*Third*, Plaintiff has consistently requested that ICE sequence their processing of documents responsive to Parts 1 to 3 in the following order:

- Documents related to Mr. Gulema that post-date October 1, 2015
- Documents related to Mr. Ibarra Bucio
- Documents related to Ms. Medina Leon
- Documents related to Mr. Vargas Arellano
- The remainder of the documents related to Mr. Gulema

*See* Plaintiff's June 26 Letter. As discussed above, Defendants have yet to be able to segregate Mr. Gulema's documents by date, so at the moment, Plaintiffs request that Defendants give top priority to documents related to Mr. Ibarra Bucio.

*Fourth*, we had previously identified deficient documents responsive to Parts 1 to 3 in our September 14, 2023 correspondence. Please produce the requested corrected documents by November 20, 2023. To address ICE's confusion about pages 7197-7200, we have attached it for your convenience as Exhibit A.

---

[1] Please note that Plaintiff has requested documents related to Mr. Gulema from DHS-OIG. Although DHS-OIG has referred these documents to ICE, Plaintiff will not waive its request for production of the DHS-OIG documents related to Mr. Gulema dated prior to Oct. 1, 2015.

## IV.     Parts 4 to 9: Finalizing Search Parameters and Proposed Production Rate

The following responds to the remaining issues with ICE's searches for and processing of records for Parts 4 to 9. We again request that ICE make available IT staff tasked with conducting and processing these searches to confer with Plaintiff's counsel, so we can address any technical issues without further delay.

### A.     Part 4

As Plaintiff understands the status of ICE's efforts to respond to this Part, there are two primary issues.

*First*, Plaintiff lacks clarity about what locations Defendant is searching for Part 4. Plaintiff's understanding is that ICE has conducted a search resulting in 520,000 records. However, Defendant has not specified the custodians and search locations for this search. Defendant has previously stated that it would search for records from the following custodians: Tae Johnson, Deborah Fleischacker, and Scott Schuchart. September 1, 2023 Letter.  Please identify and confirm which custodians ICE searched in response to Part 4 so that Plaintiff can assess the adequacy of these efforts.

Plaintiff notes that, although it may identify additional deficiencies, ICE's search was certainly deficient at least in that was not calculated to return any IHSC policies, which explicitly fall under the language of Part 4. Plaintiff understands that ICE did not search any IHSC custodian for Part 4. ICE has taken the position that this search is unnecessary because "such a search was undertaken by Stewart Smith, the Assistant Director of IHSC, who ran a search of his entire email archive, with no date restriction for Parts 5 and 8 using ***many*** of the same search terms as in Part 4.") October 10, 2023 Letter (emphasis added). This is insufficient. Parts 5 and 8 involve different records and different search terms. For example, ICE's searches for those Parts lack terms related to training and protocols. ICE must remedy this deficiency by including an IHSC custodian to be searched for this Part. **Please confirm by November 2, 2023, that ICE will agree to this remedy.**

*Second*, ICE's proposal for search terms is flawed. As Plaintiff explained in its September 14 letter, ICE's proposed Boolean search terms exclude limiting keywords core to the content of Request 4, and the results are accordingly vastly overinclusive. Defendants claim that the Boolean connector search cannot be run because it exceeds the allowable number of characters. Our understanding is that Relativity limits search strings to 450 characters, and that, when a user needs to run a search exceeding this number of characters, the user may do so by using saved searches to break up the search string into multiple searches. Plaintiff thus proposes that Defendants run two separate Boolean searches:

- Defendants first should search for the following keywords: (directive or policy or policies or protocol or procedure or training or guidance or instruction or standard) **AND** (custody or death or died or deceased or decedent or discharge or surgery or specialist or COVID-19 or hospital or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal). This search string is under 450 characters. Defendants should save the results of this Boolean search.
- After running this first Boolean search, Defendants should then conduct a search for documents that fall within these saved search results and include at least one of the following keywords: (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian). This second string, again, is under 450 characters.

**Please provide the page count of the results of this search, along with any additional technical questions you may have for us, by November 2, 2023. If Plaintiff is incorrect about the character limit or this proposal otherwise does not work, please explain specifically why it is not possible by November 2, 2023.**

Additionally, Plaintiff continues to believe that a conversation between Plaintiff's counsel and ICE's FOIA staff would help to overcome this technical issue. Plaintiff thus reiterates its request to speak with ICE's FOIA staff responsible for processing the search for records responsive to Part 4. Given that ICE has refused to do so, Plaintiff will ask the Court to order this conversation in the letter brief that the Court requested. **If ICE is willing to make these technical staff available, please let us know as soon as possible so that we can avoid taking that issue to the Court.**

     **B.**     **Part 5**

Plaintiff appreciates that Defendants have conducted a search with respect to Part 5, resulting in a hit count of 551 pages. However, Defendants do not specify at all which offices, custodians, or search locations were actually searched. As Plaintiff has repeatedly stated, an adequate search requires a search of custodians that include *key personnel* in its Medical Case Management and Unit Medical Care Coordination Program Staff, IHSC and ICE ERO participants in Significant Detainee Illness (often referred to by ICE as "SDI") meetings, as well as ICE ERO staff in communication with IHSC's Medical Case Management Unit. Contrary to Defendants' assertion, Plaintiff does not request a search of every staff member in the referenced locations; only a search reasonably calculated to return responsive records. **Please provide a list of search locations and custodians that ICE has searched for Part 5 by either name or position by November 2, 2023.**

### C.      Part 6

It is clear from the plain language of Part 6 of the Request that it seeks Significant Incident Reports (often referred to by ICE as "SIRs") and significant event notification reports (often referred to by ICE as "SENs"), and ICE's failure to include these documents results in an inadequate search. Part 6 requests "Significant Incident Reports, significant event notification reports or documents created by DHS OIG or ICE OPR." The word "or" stands for the disjunctive or alternative. *See, e.g. United States v. Nishiie*, 996 F. 3d 1013, 1023 (9th Cir. 2021) (Noting that "or" is a disjunctive term, and that use of disjunctive "indicates alternatives and requires that they be treated separately."). Neither OIG or OPR, as oversight agencies, are responsible for creating SIR or SEN reports, which are created by staff in contact with detainees at the time of the incident itself.  Plaintiff has already suggested that ICE search the records of the ICE Joint Intelligence Operations Center (JIOC), which analyzes SIRS and sends summaries to appropriate field offices. **Please conduct a search of this source, with the suggested search terms identified by Plaintiff in its June 12, 2023 letter, and provide a hit count and identify locations searched by November 2, 2023.**

### D.      Part 7

Defendants have not conducted a search for Part 7, which includes Significant Incident Reports and other Significant Event Notification reports that mention (1) the death of any detainee who had been previously released from custody while hospitalized or while a patient in the care of an external healthcare provider or facility, or (2) the death of any detainee who was released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Plaintiff reiterates that Defendants must conduct a search for such records in order to conduct an adequate search. **Please confirm by November 2, 2023, that ICE will conduct a search that includes SIRs and SENs, and explain the specific efforts ICE will undertake to ensure its search returns SIRs and SENs.**

### E.      Part 8

Plaintiff appreciates that Defendant has conducted a search for Part 8, and looks forward to reviewing the documents. However, ICE's continued refusal to "search[] for documents from the *Fraihat* litigation" because "Plaintiff did not request these documents in its original FOIA request," is unjustified. *See* Defendants' October 10, 2023 letter, at 4. Defendants cite no authority for this position, and it is contrary to their obligation to search in locations that they discovery through "leads" are likely to contain responsive records. *Transgender Law Center v.*

October 19, 2023
7

*ICE*, 46 F. 4th 771, 779 (9th Cir. 2022). Plaintiff reserves the right to challenge the adequacy of ICE's search on this and any other basis.

### E.    Part 9

Plaintiff appreciates that Defendants have conducted a search for Part 9, and the additional information regarding the search terms and locations that Defendants used to conduct the search. It appears that Defendants' search terms were overbroad, and did not utilize Boolean searches to narrow the search results, resulting in over 16,000 emails. It appears that Defendants did not conduct a search according to the guidelines that Plaintiff suggested in its June 1, 2023 letter for this part, but rather, used a set of terms for a different Part of the Request.

Plaintiff again suggests the following search terms and locations, as identified on June 1, 2023, which will likely yield a more narrowly-tailored result:

- Search Terms #9: bill!; invoice!; charges; payment; benefits; discharge; transfer; release or custody; Medicare; PRUCOL; Martin Vargas Arellano; Teka Gulema; Jose Ibarra Bucio; Johana Medina Leon; Jonathan Alberto Medina Leon
- Search Locations #9:
    - Resource Management Unit Staff, IHSC: Emails and records
    - ICE Office of the Chief Financial Officer
- Boolean Searches in Relativity #9:
    - (Bill!; invoice!; charges; payment; benefits) AND (discharge or transfer or custody or release or Medicare or PRUCOL or Martin Vargas Arellano or Teka Gulema or Jose Ibarra Bucio or Johana Medina Leon or Jonathan Alberto Medina Leon)

Plaintiff requests that Defendants conduct a search according to the search methodology above, and provide a hit count and list of custodians and search locations by November 2, 2023. Plaintiff also reserves the right to request additional specific information at a later date if Defendants' searches for Parts 4 to 8 identify additional people whose records may be responsive to this request.

***

Please do not hesitate to contact us if you would like to address any of these matters by teleconference.

Sincerely,

LABONI A. HOQ (SBN 224140)                    EUNICE CHO (pro hac vice)

October 19, 2023
8

laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017 Telephone:
(213) 977-9500
Facsimile: (213) 915-0219

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

# EXHIBIT A

Law Enforcement Sensitive – For Official Use Only
**Deliberative**



U.S. Immigration
and Customs
Enforcement

November 10, 2022

# ERO New Orleans – Teka GULEMA, A28 021 556

ISSUE:

On February 8, 2015, ERO New Orleans was notified by the Etowah County Detention Center (ECDC) that an ICE detainee Teka GULEMA, a 53-year-old male citizen of Ethiopia, went into cardiac arrest and coded while under care at the Riverview Regional Medical Center (RRMC) in Gadsden, AL. GULEMA remains hospitalized in the Critical Care Unit at RRMC on a ventilator.

BACKGROUND:

**The following case summary is based on a review of the alien's A-file, Planet, EARM, CIS, NFTS, TECS records checks and data provided by the case management officer.**

On March 27, 1987, GULEMA, entered the United States at Washington, DC and was admitted as a non-immigrant visitor.  On October 1, 1989, GULEMA adjusted his status to that of a Lawful Permanent Resident (AS-6).

On December 17, 1999, the Arlington County General District Court (ACGDC) convicted GULEMA of assault and battery and sentenced him to 12 months confinement.

On September 23, 2000, ACGDC convicted GULEMA of trespassing and sentenced him to 12 months confinement.

On February 13, 2001, the Arlington County, VA Circuit Court convicted GULEMA of assault and battery on a law enforcement officer and sentenced him to nine months confinement.

On April 12, 2002, ACGDC convicted GULEMA of assault and battery and sentenced him to ten months confinement.

On November 14, 2002 and October 21, 2004, ACGDC convicted GULEMA of trespassing and sentenced him to12 month confinement each time.

On May 6, 2005, ACGDC convicted GULEMA of trespassing with intent to damage or the contents there of and sentenced him to 12 months confinement.

On August 10, 2005, ACGDC convicted GULEMA of trespassing and sentenced him to 12 months confinement.

**Deliberative**
**Law Enforcement Sensitive – For Official Use Only**

Hoq Decl. ISO MSJ
Exhibit F
Page 42

2022-ICLI-00048   7197

**ERO New Orleans – Teka GULEMA, A28 021 556**
**Page 2 of 4**

On March 8, 2006, the Arlington County VA Circuit Court convicted GULEMA of drunk in public and obstruction of justice, and sentenced him to 12 months confinement.

On April 3, 2007, GULEMA ERO Washington encountered GULEMA at the Arlington County Jail, Arlington, VA and lodged an immigration detainer.

On May 7, 2007, Arlington County Jail remanded GULEMA to ICE custody.  On May 8, 2007, ERO Washington served GULEMA a Notice to Appear, charging him with removability per section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), as an alien who has been convicted of a crime involving moral turpitude.  On May 31, 2007, ICE served GULEMA form I-261, Additional Charges of Inadmissibility/Deportability, also charging him with violation of 237(a)(2)(A)(iii) of the INA, as an alien who at any time has been convicted of an aggravated felony.

On May 31, 2007, ERO Washington transferred GULEMA to Hampton Roads Regional Jail, Portsmouth, VA.

On October 22, 2007, an immigration judge in Arlington, VA ordered GULEMA removed to Ethiopia.  On November 21, 2007, GULEMA appealed to the Board of Immigration Appeals (BIA).  On February 14, 2008, the BIA dismissed his appeal.

On October 22, 2008, GULEMA was placed in Failure to Comply status for refusing to sign his Ethiopian Travel Document application and refusing to interview with the Ethiopian Consulate.  On the same date, GULEMA sustained minor abrasions to his fingers after he became physically combative with ICE officers during fingerprinting. ICE has followed up with GULEMA on a monthly basis trying to gain compliance since then.

On October 20, 2009, the U.S. Attorney's Office (USAO) for the Eastern District of Virginia declined to prosecute GULEMA for failure to comply, 8 USC 1253(a).

On May 14, 2010, GULEMA was transferred to the Pamunkey Regional Jail, Hanover, VA.

On July 20, 2010, the U.S. District Court for the Western District of Virginia remanded GULEMA to the custody of the U.S. Marshals Service pending prosecution for 8 USC 1253(a). This charge was later dismissed without prejudice.

On May 19, 2011, U.S. Marshals remanded GULEMA to ERO Washington custody.  On July 1, 2011, ERO Washington transferred GULEMA to ERO New Orleans custody, and the following day he was placed in Etowah County Detention Center (ECDC) in Gadsden, AL.

On September 21, 2011, ERO New Orleans batch audited GULEMA's A-file.  On August 8, 2012, GULEMA's A-file was declared lost.  File audits since 2011 have not turned up the missing A-file.

**Deliberative**
**Law Enforcement Sensitive – For Official Use Only**

**ERO New Orleans – Teka GULEMA, A28 021 556**
**Page 3 of 4**

On March 28, 2013, USAO for the Northern District of Alabama declined to prosecute GULEMA for 8 USC 1253(a).

On or about August 30, 2014, GULEMA addressed correspondence to ERO New Orleans titled RE: Inadequate Medical Care at ECDC. On or about September 16, 2014, ERO closed out the grievance stating that ECDC Medical is addressing the situation.

On February 8, 2015, ECDC notified ERO New Orleans that GULEMA had been evaluated by onsite medical staff for dizziness and general fatigue. GULEMA was referred to RRMC for further evaluation and treatment. The attending physician at RRMC admitted GULEMA for diabetic ketoacidosis and dehydration. Prior to this hospital admission, GULEMA had no previous history or treatment for diabetes. While receiving medical care at RRMC, GULEMA went into cardiac arrest. He was revived by the hospital staff and placed on the ventilator.

On February 9, 2015, RRMC diagnosed GULEMA with possible bacterial meningitis.

On February 20, 2015, ERO New Orleans was notified by the ECDC medical staff that GULEMA is now alert and oriented. Medical staff also advised that GULEMA is experiencing unexplained paralysis, and remains on the ventilator.

On February 24, 2015, ERO spoke with GULEMA and asked if he had any next of kin. GULEMA is unable to speak, but indicated though nonverbal signals that he does not have any kin. ERO has made an exhaustive search of all files and contacted previous detention facilities in an unsuccessful attempt to locate and identify a next of kin to no avail.

On February 24, 2015, GULEMA received an external pacemaker to regulate his heart.

On February 27, 2015, the Ethiopian Embassy First Secretary, Mr. Dineka, spoke with ERO New Orleans AFOD Gerald Smith who provided an update on GULEMA's condition. However, due to lack of identity documents and GULEMA's refusal to interview, Mr. Dineka stated that he has been unable to confirm that GULEMA is Ethiopian. Mr. Dineka further stated that the Embassy of Ethiopia does not accept after-hours communications in the event of an emergency.

IHSC has evaluated the records provided on Mr. GULEMA's medical condition and reviewed the status with his on-site medical personnel (Dr. (b)(6). ) All of the treating medical personnel at the Riverview Regional Medical Center in Gadsden, Alabama feel that the long term prognosis for recovery is very poor and the expectation for him to survive this illness has been described by his Riverview Regional Medical Center medical team at <10% chance of living longer than one year. That whatever improvement the patient will have, will not allow him to live independently and not be on a ventilator (this is a breathing machine that forces the patient to breathe). He will require constant intensive nursing and medical care for the rest of life.

RECOMMENDATION

The Embassy of Ethiopia has advised that a telephonic interview is needed to confirm GULEMA's citizenship in the absence of identity documents or other proofs of citizenship.

**Deliberative**
**Law Enforcement Sensitive – For Official Use Only**

Hoq Decl. ISO MSJ
Exhibit F
Page 44

2022-ICLI-00048  7199

**ERO New Orleans – Teka GULEMA, A28 021 556**
**Page 4 of 4**

GULEMA has failed to comply with his removal by repeatedly refusing to interview with the Embassy and ICE has no identification documents available in his record.

IHSC continues to work with RRMC for possible transfer options to provide a higher level of care for GULEMA's current medical condition.  Due to the uncertainty of GULEMA's prognosis and length of recovery it is very unlikely he will be medically approved for removal.

ERO New Orleans recommends releasing GULEMA on an order of supervision based on little likelihood that he will be removed from the United States in the foreseeable future.  As part of this release, it is recommended that ERO New Orleans draft a Sotolongo letter for state authorities giving them 30 days to assist with getting GULEMA benefits prior to his release from U.S. Immigration and Customs Enforcement (ICE) custody

**Deliberative**
~~Law Enforcement Sensitive – For Official Use Only~~

2022-ICLI-00048   7200

# EXHIBIT G

November 2, 2023

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

      Re:    ACLU of SoCal v. ICE, et al.
              C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

The following responds to Plaintiff's October 19, 2023 correspondence. Many of the issues raised therein also appear in Plaintiff's Brief in Support of Request for Scheduling Order and FOIA Processing Rate [Dkt. 57], which was filed on October 23, 2023. Defendants' Opposition will address those issues in full. Still, in an effort to try and reach agreement (and thus narrow the issues for the Court's ultimate consideration), Defendants respond to the issues raised by Plaintiff in order:

**A. Production Rate**

Defendants' October 10, 2023 correspondence put forth ICE's position on an "expedited processing rate." As explained in greater detail in Defendants' Opposition to Plaintiff's Request, the processing rate here – 1,000 pages per month – *exceeds* the normal rate. Therefore, Defendants oppose Plaintiff's request to deviate from the current processing rate.

**B. DHS-OIG Production**

As explained in OIG's October 2, 2023 correspondence, records originating with ICE have been referred to ICE for its review, processing, and direct response to Plaintiff. ICE is the component best able to review and produce those records, and therefore, referral of them back to OIG would be inappropriate.

As for Plaintiff's request that ICE and OIG conduct independent searches of other components, neither Defendant will do so. The FOIA process is decentralized in DHS, and therefore neither ICE nor OIG can conduct independent searches of another component.

In Plaintiff's brief, it states with respect to OIG that there are "some remaining

disagreements, but they are now ready to address those issues either informally or through summary judgment." Dkt. 57 at 2-3. What are the issues Plaintiff is referring to?

### C.  ICE Production of Parts 1 – 3

At present, there are approximately 9,000-10,000 pages remaining to be processed for the four individuals identified. That said, ICE has finished producing records related to Leon.

With respect to records dated October 1, 2015 or after related to Mr. Gulema, ICE has now been able to identify approximately 318 pages that remain to be processed. ICE was able to identify these records, after previously not having success, by using the entire set of responsive records, rather than just the records that had been "email threaded."

ICE can agree to use best efforts to produce records in the sequence Plaintiff requests on page 3 of its letter (Gulema records from October 1, 2015 and after, followed by Bucio, Arellano, and then the remainder of the Gulema records unless Plaintiff has waived production of them). Relatedly, what information does Plaintiff anticipate it will glean from the October 1, 2015 and after Gulema records that will inform its decision whether to waive the remaining pages?

Finally, ICE is working to obtain the originals of Bates 7197-7200, 2648, and 7504. It has obtained Bates 8313. All documents will be processed and reproduced in due course.

### D.  Parts 4 – 9

As an initial comment, ICE reiterates that Plaintiff's demand that the agency justify its search terms and locations at this stage is improper. So too is Plaintiff's effort to direct (or ask the Court to direct) the search at this stage only because Plaintiff disagrees with the "adequacy" of ongoing searches and productions. "In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that it believes to be reasonably tailored to uncover documents responsive to the FOIA requests. Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (an agency "need not knock down every search design advanced by every requester[.]"). Nor is a search's adequacy determined by its fruits. *See Hoffman*, 2023 WL 4237096, at *5.

In any event, there seems to be a miscommunication. Searches for several of the subparts

have either been tasked or completed. ICE addresses each in turn.

### A. Part 4

ICE agreed to search the emails of Tae Johnson (former Acting Director of ICE), Deborah Fleischaker (Assistant Director for Regulatory Affairs and Policy at ICE), and Scott Schuchart (Senior Advisor to the ICE Director) for the following agreed upon search terms:

(1) Directive; (2) Policy; (3) Protocol; (4) Procedure; (5) Training; (6) Guidance; (7) Instruction; (8) Standard; (9) Death; (10) "offsite referral"; (11) "emergency room"; (12) "emergency department"; (13) "life support"; (14) Coma; (15) Ventilator; (16) "intensive care"; (17) Hospice; (18) palliative; and (19) release.

The search resulted in approximately 530,000 documents (not pages).  The parties agreed that the second part of the search would involve using Relativity software to search for Boolean connectors. The agreed upon Boolean connectors were as follows:

(directive or policy or policies or protocol or procedure or training or guidance or instruction or standard) AND (custody or death or died or deceased or decedent or discharge or surgery or specialist or COVID-19 or hospital or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal) AND (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian).

ICE attempted to run the Boolean connector search, however, the search could not be run as it exceeded the allowable number of characters. In an effort to complete the search, ICE proposed using the following connector terms, essentially removing the terms that were already included in the initial search:

custody OR death OR died OR deceased OR decedent OR discharge OR surgery OR specialist OR COVID-19 OR hospital OR ambulance OR "emergency services" OR "poor outcome" OR "offsite referral" OR unconscious OR "medical observation" OR ICU OR "critical condition" OR fatal) AND (release OR transfer OR benefits OR parole OR "alternative detention" OR discharge OR OSUP OR "order of supervision" OR humanitarian).

Plaintiff rejected ICE's suggestions and has instead suggested in its October 19, 2023 correspondence that ICE run the Boolean search in two separate parts. ICE has no objection to this and has run the search in the manner suggested by Plaintiff. The search resulted in over 142,000 documents (not pages).

Plaintiff has also requested that the emails of the Directors of ICE prior to Tae Johnson

from 2016 through 2021 be searched. This includes emails of five additional individuals. ICE has no objection to running these searches, although obtaining and searching their archived emails could take several weeks.

With respect to Plaintiff's position that ICE's search has been "insufficient" and that it "must remedy this deficiency by including an IHSC custodian to be searched for this Part," there is no basis for Plaintiff to make such a demand.

**B. Part 5**

ICE ran a search of the emails of Dr. Stewart Smith, Assistant Director for IHSC. The search was made using agreed upon search terms. After obtaining the search results, the records were then searched using agreed upon Boolean connectors. The search resulted in 551 pages of potentially responsive documents, and the records will be processed in due course.

Plaintiff has requested that, in response to Request No. 5, ICE conduct a search of *all* ICE officials who participate in the Significant Detainee Illness process, *all* of ICE's Medical Case Management Unit, and *all* Medical Care Coordination staff. There are 233 IHSC employees who participated in the Signification Detainee Illness process from 216 to present. The number of ICE employees that have been a part of ICE's Medical Case Management Unit from 2016 to present is 376. The number of ICE employees that have been part of the Medical Care Coordination staff (i.e., managed care coordinators) from 2016 to present is 35. As a result, this request is overly broad and unduly burdensome. It is ICE's position that this search is complete, and the records will be processed in due course.

**C. Part 6**

ICE reads this request as specifically seeking documents *created by* DHS OIG or ICE OPR. As such, ICE OPR was tasked with a search and did not find any responsive records. Plaintiff claims that ICE is reading the request too narrowly and that it is not only seeking documents created by DHS OIG and ICE OPR, but also requesting spreadsheets, emails, SIRs and SENs within the possession of ICE. As Plaintiff has been made aware, SIRs and SENs are generated at the field office level. There are 25 field offices. In order to conduct a search for SIRs and SENs that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility, each ERO field office would need some type of identifying information, such as name, date of event or alien number.

**D. Part 7**

ICE agreed to ask OPR to run a search of agreed upon search terms. OPR found no responsive records. Just as in Request No. 6, if Plaintiff would like SIRs and SENs from a specific field office that mention the death of any detainee who had been previously released

from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility, then they need to provide identifying information, such as name, date of event or alien number.

### E.  Part 8

A search was run of the emails of Dr. Stewart Smith using agreed upon search terms. A secondary search was run using agreed upon Boolean connectors. The search resulted in 1,711 pages of potentially responsive documents. This search is complete, and these records will be processed in due course.

To be clear, *if* documents pertaining to *Fraihat* appear in the responsive records, then they will be produced. ICE will not search for *"Fraihat* records" simply because Plaintiff chose to add this request on later. *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) (emphasizing that agency is required to read FOIA request as drafted, "not as either [an] agency official or [requester] might wish it was drafted"); *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 66 (D.D.C. 2017) (finding search adequate when based on plain language of original request, and holding plaintiff must make new request for additional records first mentioned in clarification emails); *Rein v. U.S. Pat. & Trademark Off.*, 553 F.3d 353, 363 (4th Cir. 2009) (rejecting argument that searches were inadequate merely because "responsive documents refer to other documents that were not produced" and agency did not pursue "leads" appearing in uncovered documents, and explaining that search need only be "reasonably calculated to uncover all relevant documents" based upon request).

### F.  Part 9

ICE tasked nine Regional Field Medical Coordinators (FMCs) and Regional Health Service Administrators (HSAs) to search their emails for search terms that were agreed upon with the Plaintiff. A preliminary search by just one of ICE's HSAs yielded over 16,000 emails (not pages), most of which appeared not to be related (or only peripherally related) to one of the proposed search terms.

As a result, ICE requested clarification from Plaintiff regarding the specific types of records Plaintiff was seeking so that ICE could adequately craft a search that would result in fewer initial hits. Alternatively, ICE proposed (a) adding a second term such as "bill," "invoice," etc. to the preliminary search to reduce the number of records initially identified, or (2) pairing search terms, e.g., "Death + record," "Ambulance + invoice," and "Hospital + bills."

Plaintiff suggests using different search terms and Boolean connectors. Plaintiff further requests that ICE search the Resource Management Unit Staff and the ICE Office of the Chief Financial Officer. Individuals at ICE who are subject matter experts on the information requested believe that the custodians most likely to possess responsive records are the Regional Field Medical Coordinators and the Regional Health Service Administrators within IHSC. If Plaintiff

agrees with this approach, ICE will task these nine individuals with conducting searches using the search terms and connectors suggested by Plaintiff.

Thus, the search terms will be:

bill!; invoice!; charges; payment; benefits; discharge; transfer; release or custody; Medicare; PRUCOL; Martin Vargas Arellano, Teka Gulema, Jose Ibarra Bucio, Johana Medina Leon, Jonathan Alberto Medina Leon

And the Boolean connectors will be:

(bill!; invoice!; charges; payment; benefits) AND (discharge or transfer or custody or release or Medicare or PRUCOL or Martin Vargas Arellano or Teka Gulema or Jose Ibarra Bucio or Johana Medina Leon or Jonathan Alberto Medina Leon)

Please confirm that the above is agreeable. ICE will then conduct those searches.

Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

cc: Ms. Eunice Cho (by email)
   Mr. Michael Kaufman (by email)
   Mr. Kyle Virgien (by email)

# EXHIBIT H

November 9, 2023

Joseph Tursi
Jason Axe
Alarice Medrano
United States Attorney's Office
Central District of California
300 N. Los Angeles St. Suite 7516
Los Angeles, CA 90012
Joe.Tursi@usdoj.gov
Jason.Axe@usdoj.gov
Alarice.Medrano@usdoj.gov

*SENT VIA EMAIL*

Re:     *ACLU of Southern California v. United States Immigration and Customs
        Enforcement, et al.,* No. 2:22-cv-4760 (C.D. Cal.)

Dear Counsel:

We write in response to Defendants' November 2, 2023 letter.

## I.      DHS-OIG Production

Regarding the 911 total pages (328 and 583 pages) of responsive records that OIG referred to ICE for processing, Defendants are mistaken that Plaintiff is asking that OIG to "review" those records. Further, Plaintiff is unaware of any authority indicating that it would be "inappropriate" for ICE to send back to OIG for production to Plaintiff the records that were in its possession, after they have been reviewed by ICE. Rather, Plaintiff's request that OIG produce the records it referred to ICE is consistent with its obligation to ensure that the referral be "prompt and public." *McGehee v. C.I.A.,* 697 F.2d 1095, 1111 (D.C. Cir.), on reh'g sub nom. *McGehee v. Cent. Intel. Agency,* 711 F.2d 1076 (D.C. Cir. 1983) ("as soon as the agency retrieved responsive documents … it would identify those records that originated elsewhere"). If you have authority for this position, please provide it to us. Without such, we again request that DHS-OIG immediately produce the 911 pages that were in its possession, and were referred to ICE, directly to Plaintiff after review. In the alternative, Plaintiff requests that ICE immediately produce the records to Plaintiff, separate from its stipulated monthly production of its own records, identifying that they are the records referred to ICE by OIG.

Regarding the remaining disagreements Plaintiff has with OIG's production, Plaintiff has identified these issues before, including (1) withholding of information pursuant to an "unspecified statute"; (2) improper redactions; and (3) failure to produce complete documents. Plaintiff's will follow up with Defendants within the next few weeks to meet and confer regarding a potential motion for summary judgment schedule for OIG in the event we cannot resolve our disputes.

Further, regarding the records in OIG's possession that it referred to other DHS components, to be clear, we are asking Defendants, including DHS, who is a party to this lawsuit, to ask these

other components to conduct an independent search using the search parameters we have provided. Please confirm whether or not Defendants will do so.

## II.    ICE Production

### A.  Parts 1-3

Thank you for notifying us that ICE was able to isolate 318 pages of records dated after October 1, 2015 regarding Mr. Gulema. We look forward to reviewing those documents in the next production. With respect to these documents, Plaintiff seeks to further understand the circumstances related to Mr. Gulema's hospitalization after this date, his death, ICE's decision to release Mr. Gulema from custody, and Mr. Gulema's release from custody. Review of these documents will also allow us to assess, based on any references therein, whether there are specific documents created before October 2015 that ICE has not produced thus far.

We appreciate that Defendants will produce documents in the sequence requested (first, post-October 1, 2015 Gulema documents; second, Ibarra Bucio; third, Vargas Arrellano; and fourth, the remaining Gulema documents; you have represented that ICE has completed its production regarding Ms. Medina Leon). However, as we requested on October 19, 2023, we again request that Defendants provide a hit count for each of the individuals for which ICE has remaining records, including Mr. Gulema, Mr. Ibarra Bucio, and Mr. Vargas Arellano. Please do so by **November 20, 2023**.

On September 14, 2023, and on repeated occasions since, we have requested that ICE produce deficient documents. You have confirmed that you have obtained Bates 8313. However, we requested that ICE produce the complete email. Please obtain the entire email document, and produce it by **November 20, 2023.**

Likewise, we appreciate ICE's efforts regarding Bates No. 2648. Again, we requested that ICE produce the complete email, as only part of it was partially produced at 2648. Please obtain the entire email document, and produce it by **November 20, 2023.**

We also appreciate ICE's efforts to obtain Bates Nos. 7197-7200, and 7504. Given the length of time that has passed since our initial request, please produce them by **November 20, 2023.** We appreciate that Defendants identify the above documents as corrective supplements to our letters of September 14, 2023, and October 19, 2023.

### B.  Part 4

Thank you for running the revised Boolean search for documents in response to Part 4, as Plaintiff requested on October 19, 2023, and for providing the update that the search resulted in approximately 142,000 documents. In order to tailor the search more narrowly, Plaintiff requests that Defendants provide the following information:

- Please provide a hit count for each of the initial collection search terms below, and by custodian, by **November 20, 2023**. This information will help identify if there are any

2

terms that are overinclusive, and may help craft more tailored search or collection parameters:
- o   Search terms:
  - ▪   (1) Directive; (2) Policy; (3) Protocol; (4) Procedure; (5) Training; (6) Guidance; (7) Instructions; (8) Standard; (9) Death; (10) "offsite referral"; (11) "emergency room"); (12) "emergency department"; (13) "life support"; (14) coma; (15) ventilator; (16) "intensive care"; (17) hospice; (18) palliative; and (19) release. *See* Defs' Jun. 22, 2023 letter at 2 (identifying agreed-upon terms).
- In addition, please identify whether Defendants have searched DHS, ICE, and IHSC server files or any other non-custodial source in response to Part 4 by **November 20, 2023**. Plaintiff suspects that the overbroad search results may be due in part to the fact that Defendants are primarily searching email files, instead of server locations where ICE and IHSC directives, policies, procedures, or trainings would be kept. A targeted search of these files may identify a narrower and more specific universe of results, and Plaintiffs may be able to waive or significantly narrow the email collection in favor of this more specific universe.
  - o   If Defendants' search does not include server files, Plaintiff requests that Defendants perform one with the search terms and Boolean search specifications identified in Plaintiff's October 19, 2023 letter for Part 4, and provide a hit count of those files by **November 20, 2023.** Again, these steps may identify a narrower and more specific universe of results, and Plaintiffs may be able to waive or significantly narrow the email collection as a result.

Plaintiff again reiterates that ICE's search with respect to Part 4 is insufficient as it excludes a search of an ICE Health Service Corps ("IHSC") custodian. Part 4 of Plaintiff's FOIA requests "any and all documents and communications, including ICE and **IHSC** directives, policies, procedures, protocols, or trainings . . . ." Dkt. 1-1. As we have noted, Defendants' search should, at a minimum, include an IHSC source, which it does not. For that reason, Plaintiff requests that Defendants conduct the search parameters identified above to include an IHSC custodian. To the extent that a search of email documents is needed, Plaintiff reiterates that ICE Directors prior to Tae Johnson should be searched.

**C.  Part 5**

Plaintiff appreciates that ICE has run a search of emails of Dr. Stewart Smith, which has resulted in a hit count of 551 pages. However, this search is inadequate, as it plainly fails to respond to the requested search. Part 5 specifies that Defendants produce documents including "spreadsheets, emails, documents, communications, databases, lists, and other data compilations . . . in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees . . . includ[ing] . . . the Significant Detainee Illness Spreadsheet. . . ." A search that consists only of one custodian from *one* subagency is on its face incomplete.

3

Plaintiff previously attempted to narrow the search to ICE staff that are involved in the ICE Significant Detainee Illness Process (which include ICE's Medical Case Management Unit and Medical Care Coordination Staff). *See* Dkt. 50-2 at 164-65 (Significant Detainee Illness). Plaintiff appreciates the additional information regarding custodians, but Defendants' information again misconstrues the request. Plaintiff has requested that ICE conduct a search of ICE officials who participate in the SDI process.

As an effort to narrow the search, Plaintiff requests at this time that Defendants search the ICE (including IHSC, ICE ERO Field Operations, and OPLA) staff who participate in the SDI *meeting*, as well as any custodian who possesses the SDI list and documents related to individuals placed on the SDI list. As documents produced by Defendants indicate, this should result in a more limited set of custodians to be searched. *See id.* at 165 (specifying participants in SDI meeting); *see also* Exhibit A, Bates No. 2466 (Email from Managed Care Coordinator, IHSC/ERO, Feb. 13, 2015, regarding "ERO short list in preparation for this week's SDI meeting."). Please conduct a search of these custodians by **November 20, 2023**, and provide a resulting hit count.

### D. Part 6

The Parties have already agreed to the search terms for Part 6: *See* Plaintiff's Jun. 26, 2023 letter at 3; Email from Jason Axe, Jun. 9, 2023. Defendants have refused to search SIRs and SENs within the possession of ICE for these search terms. As Plaintiff has repeatedly clarified, Part 6 is *not* limited to DHS OIG and OPR. *See* Plaintiff's Oct. 19, 2023 letter (noting that "or" is a grammatically disjunctive term, and citing *United States v. Nishiie*, 996 F. 3d 1013, 1023 (9th Cir. 2021). Defendants' failure to search SIR and SEN records is not supported by this strained reading of Plaintiff's request.

Plaintiff has also repeatedly addressed Defendants' claim that each ERO field office requires individual identifying information for cases to search SIR and SEN records. As Plaintiff has repeatedly noted, Defendants may conduct a search for SIR and SEN records compiled by the ICE Joint Intelligence Operations Center (JIOC), which "analyzes the SIRS and sends summaries of them to the appropriate . . . field offices." DHS, Privacy Impact Assessment for the Significant Event Notification (SEN) System 1-2, Oct. 15, 2021, https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice023a-sen-october2021.pdf (describing the Significant Incident Report system and those who have access to reports). *See* Dkt. 57-2 at 85-86 (Plaintiff's Jul. 12, 2023 letter); Dkt. 57-2 at 124 (Plaintiff's Sept. 14, 2023 letter, noting same); Plaintiff's Oct. 19, 2023 letter (stating same). Defendants have yet to explain why a search of JIOC for the SIR records is not possible.

### E. Part 7

Plaintiff reiterates its response regarding Parts 5 and 6 with respect to ICE's failure to search for responsive documents.

### F. Part 8

4

Plaintiff appreciates Defendants' search for responsive documents to Part 8. Plaintiff again reiterates that ICE has responsive documents regarding hospitalization and/or release of detainees with COVID-19 compiled for or utilized in *Fraihat v. ICE*. *See* Plaintiff's Jun. 12, 2023 letter at 6;  Plaintiff's Jun. 26, 2023 letter at 3 (citing to deposition of Jennifer Moon) ("I think the only place where we were actually capturing the hospitalization is on the Fraihat."). Any search that omits such sources is necessarily inadequate.

### G.  Part 9

Plaintiff agrees with the proposed approach to the search for Part 9 as described in Defendants' November 2, 2023 letter. Please provide a resulting hit count; Plaintiff reserves the right to further suggest alternative search terms or locations based upon the results.

Sincerely,

LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EUNICE CHO (pro hac vice)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017 Telephone: (213) 977-9500
Facsimile: (213) 915-0219

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

# EXHIBIT A

| | |
|---|---|
| **From:** | (b)(6); (b)(7)(C) |
| **Sent:** | Fri, 13 Feb 2015 11:01:11 -0500 |
| **To:** | (b)(6); (b)(7)(C) |

(b)(6); (b)(7)(C)

(b)(6); (b)(7)(C)

| | |
|---|---|
| **Cc:** | #IHSC FMC-EAST;#IHSC FMC-WEST;(b)(6); (b)(7)(C) |

(b)(6); (b)(7)(C)

| | |
|---|---|
| **Subject:** | ERO Short List 2/17/15 |
| **Attachments:** | ERO 02-17-15.xls |

Good morning,

Please find attached the ERO short list in preparation for next week's SDI meeting, 2/17/15.

(b)(6); (b)(7)(C)  **RN, BSN, CPHM**
Lieutenant Commander, US Public Health Service
Managed Care Coordinator
ICE Health Service Corps
Enforcement Removal Operations
500 12th St. SW, 2nd floor
Mail Stop # 5203
Washington DC 20536
Office: (b)(6); (b)(7)(C)
Cell:
Fax:
(b)(6); (b)(7)(C)  @ice.dhs.gov

Warning:  This document is UNCLASSIFIED/FOR OFFICIAL USE ONLY (U/FOUO) It contains information that may be exempt from public release under the Freedom of Information Act (5 USC. 552). It is to be controlled, stored, handled, transmitted, and disposed of in accordance with DHS policy relating to FOUO information and is not to be released to the public or other personnel who do not have a valid 'need-to-know' without prior approval of an authorized DHS official. No portion of this report should be furnished to the media, either in written or verbal form.

Hoq Decl. ISO MSJ
Exhibit H
Page 60

2022-ICLI-00048   2466

# EXHIBIT I

| | |
|---|---|
| **From:** | Tursi, Joseph (USACAC) |
| **To:** | Laboni Hoq |
| **Cc:** | Kyle Virgien; Michael Kaufman; Eunice Cho; Axe, Jason (USACAC) |
| **Subject:** | RE: [EXTERNAL] Re: ACLU SoCal v. DHS |
| **Date:** | Tuesday, November 28, 2023 7:50:06 PM |

**This Message Is From an External Sender**
This message came from outside your organization.

Good afternoon Laboni,

Friday at 2pm works for us.

Thanks,

**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Tuesday, November 28, 2023 4:03 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS

Dear Joe:

We had planned to discuss the timing of providing the information you request during the Rule 7-3 meeting, including by setting deadlines for Defendant OIG's production of a Vaughn Index for documents we identify and a search adequacy declaration in advance of commencing summary judgment briefing. While we would like to agree on a summary judgment briefing schedule for OIG now, we are amenable to building time into the schedule for extended Rule 7-3 discussions prior to the commencement of briefing to narrow issues on both exemptions and search adequacy.

Given this, we wanted to double check whether you have any availability to discuss these matters on Wednesday Nov. 29. If not, we are available on Friday, Dec. 1 at 5 ET/2 PT.

Thanks.

On Tue, Nov 28, 2023 at 12:34 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

Laboni,

We will have a response by December 1st.

With respect to OIG and a summary judgment briefing, we believe that a Local Rule 7-3 meeting is premature at this point. We are certainly willing to conduct such a meeting so we can agree on a briefing schedule for both parties to file motions for summary judgment.  However, prior to such a meeting, we ask that Plaintiff provide OIG in writing answers to the questions it has previously posed, namely, (1) what specific pages/redactions Plaintiff is challenging, (2) by Bates number, what specific documents Plaintiff believes are incomplete, and (3) whether Plaintiff intends to challenge the adequacy of OIG's search, and if so, on what basis.  As we discussed with the Magistrate Judge, taking such steps will allow the parties to attempt to narrow any potential issues for summary judgment briefing. If Plaintiff is unwilling to provide OIG with this information in writing prior to a Local Rule 7-3 meeting, then we are available on Thursday after 10am and Friday after 11am for a Local Rule 7-3 meeting.

Thanks,

**Joseph W. Tursi** | **Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Monday, November 27, 2023 3:18 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS

Hi Joe,

Hope you had a good Thanksgiving.

Regarding our November 9, 2023 correspondence, we ask that Defendants provide a response by Friday December 1, 2023, so that the next month's production can reflect any updated responses. If Defendants cannot provide a response by Dec. 1, Plaintiff will have to request a status conference to ensure the case moves forward expeditiously.

We also write to schedule a time to meet and confer under Local Rule 7-3 regarding a motion for summary judgment on the DHS OIG production. We are free after 1:30 PT on either Tuesday Nov.

28 or Wednesday Nov. 29. Please let us know which date and time works for you.

Thanks.

On Mon, Nov 20, 2023 at 2:49 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

Hi Laboni,

I wanted to acknowledge receipt of your November 9, 2023 correspondence. We are conferring with our clients and are working on a response that we will provide after Thanksgiving once everyone is back in their respective offices.

Thanks,
-Joe

**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Thursday, November 9, 2023 8:45 AM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** [EXTERNAL] Re: ACLU SoCal v. DHS

Hi Joe,

Please see the attached correspondence.

Thanks.

On Thu, Nov 2, 2023 at 4:34 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

Good afternoon Laboni,

Attached please find correspondence of today's date in response to Plaintiff's October 19, 2023 letter.

Thanks,
-Joe

**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

--

**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
www.hoqlaw.com

--

**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
www.hoqlaw.com

--

**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
www.hoqlaw.com

# EXHIBIT J

November 30, 2023

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

Re:     ACLU of SoCal v. ICE, et al.
        C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

The following responds to Plaintiff's November 9, 2023 correspondence. As before, Defendants respond to the issues raised by Plaintiff in order:

**I.      DHS-OIG Production**

The 911 pages will be released in due course from ICE as that entity was determined to be the originator of the records. Your citation to *McGehee v. CIA*, 697 F.2d 1095, 1111 (D.C. Cir. 1983) for the proposition that a referral be "prompt and public" describes what occurred in this case. By letters dated June 29, 2023 and July 31, 2023, Plaintiff was advised that 328 pages and 583 pages were being referred to ICE. Therefore, OIG's referral of those documents to ICE was proper. *See also* 6 C.F.R. § 5.4(d)(3) ("Ordinarily, the component or agency that created or initially acquired the record will be presumed to be best able to make the disclosure determination.").

Plaintiff identifies three disagreements with OIG's production. The first, "withholding pursuant to an 'unspecified statute'" was addressed in OIG's October 2, 2023 correspondence. Turning to the second, "improper redactions," please advise what specific pages/redactions Plaintiff is challenging. As we discussed with the Magistrate Judge, OIG requests that you identify the specific redactions Plaintiff is challenging so we can review them further to determine if it is possible to narrow any potential issues for summary judgment briefing. Third, OIG's position is that it has produced complete documents. If there are specific documents Plaintiff believes are incomplete, please identify them by the month produced and corresponding PDF page number.

As for Plaintiff's request that DHS ask other components to conduct independent searches for records, Defendants will not do so. Plaintiff directed its request to ICE, OIG, and the

DHS Privacy Office specifically. *See* Dkt. 24-1 at 2. In its May 18, 2022 correspondence, a copy of which is enclosed, the DHS Privacy Office advised that it "determined that the records sought, should they exist, would not be under purview of the DHS Privacy Office. Any responsive records would be held by the DHS Office of the Inspector General (OIG) and/or U.S. Immigration and Customs Enforcement (ICE). As you have already submitted your request to the aforementioned office, we are closing your Privacy Office request and will defer to the OIG and ICE's response(s)." Plaintiff did not object to the DHS Privacy Office's position, and Defendants' position is that DHS is not obligated to require other components to conduct independent searches.

Plaintiff cannot reasonably argue that because DHS is a named defendant, that would mean that *every* DHS component is required to conduct a search. Indeed, DHS "has a decentralized system for processing requests, with each component handling requests for its records." 6 C.F.R. § 5.1(c). As DHS's FOIA regulations provide, "a requester should write directly to the FOIA office of the component that maintains the records being sought." *Id.* at § 5.3(a)(1). That said a requestor "may also send his or her request to the Privacy Office … [which] will forward the request to the component(s) that it determines to be most likely to maintain the records that are sought." *Id.* Here, the Privacy Office did so, and if Plaintiff wishes to request that other components conduct searches, it is free to submit separate FOIA requests to those components.

## II.     ICE Production

### A.  Parts 1-3

ICE estimates that the remaining records for each individual are approximately as follows: 1,730 for Mr. Gulema from after October 2015, 1,100 for Mr. Bucio, and 5,200 for Mr. Arellano. Please note, the remaining Gulema records are mostly emails that attach medical records that predate October 2015. Does Plaintiff want ICE to process the attachments with the emails?

As addressed in our November 2, 2023 correspondence, ICE will produce Bates 7197-7200, 2648, 7504, and 8313 in due course. On that note, ICE expects to produced 8313 in its December production.

### B.  Part 4

ICE's initial search returned over 416,000 hits as follows:

(1) Directive-38,230
(2) Policy-274,713
(3) Protocol- 15,594
(4) Procedure-24,661
(5) Training-82,704

(6) Guidance- 84,697
(7) Instructions-14,465
(8) Standard-65,208
(9) Death-37,003
(10)"offsite referral"-54
(11) "emergency room"-3,636
(12) "emergency department"-1,950
(13) "life support"- 1,811
(14) coma-867
(15) ventilator-2,050
(16) "intensive care"-2,348
(17) hospice- 715
(18) palliative-131
(19) release-209,752

Following the proposal put forth in Plaintiff's October 5, 2023 correspondence, ICE has narrowed the search to approximately 142,000 potentially responsive documents. The hit counts are as follows:

(1) Alternative detention – 403
(2) Order of supervisions – 3,093
(3) Benefits – 19,238
(4) OSUP – 1,864
(5) Parole – 21,791
(6) Release – 112,156
(7) Transfer – 37,255

ICE is unclear what Plaintiff means by "server files" or "non-custodial source". The searched locations were the three custodians previously identified.

As stated in ICE's November 2, 2023 correspondence, it has no objection to searching the emails of the Directors of ICE prior to Tae Johnson. Again, obtaining and searching their archived emails could take several weeks.

Finally, ICE has tasked this search to ORAP and IHSC as well.

## C. Part 5

ICE maintains its position at this time that this search is complete. The records will be processed in due course. After these records have been processed, ICE will consider whether additional searches are needed.

### D. Part 6

ICE has no objection to searching JIOC and will do so.

### E. Part 7

ICE has no objection to searching JIOC and will do so.

### F. Part 8

As previously stated, in responding to this Part, ICE will not "omit" documents that were compiled or utilized in *Fraihat v. ICE*. If documents pertaining to *Fraihat* appear in the responsive records, then they will be produced.

### G. Part 9

Thank you for confirming that Plaintiff agrees with the approach to the search as detailed in our November 2, 2023 correspondence. ICE will now conduct those searches and provide you with a resulting hit count in January 2024.


Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

Encl.

cc: Ms. Eunice Cho (by email)
    Mr. Michael Kaufman (by email)
    Mr. Kyle Virgien (by email)

May 18, 2022

Michael Kaufman
Senior Staff Attorney
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017

Re: **2022-HQFO-00989**

Dear Mr.Kaufman:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request to the
Department of Homeland Security (DHS), Privacy Office, dated April 29, 2022, and received in
this office on May 2, 2022.  You requested documents regarding any and all records that were
prepared, received, transmitted, collected, and/or maintained by Immigration and Customs
Enforcement (ICE) or the Department of Homeland Security that describe, refer, or relate to the
release of hospitalized detainees from custody prior to their death; any records related to release
of individual detainees once hospitalized; and any records related to the death of such detainees
after their release from custody, including any communications or investigations. Unless
otherwise noted, we request the records specified below from January 1, 2016 to the present.
Specifically:
1. Any and all documents, without limitation to date, including any communications,
investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the
hospitalization, death, decision to release from custody, or release from custody of the following
individuals: Teka Gulema, Johana Medina Leon, Jose Ibarra Bucio, Martin Vargas Arellano
2. Any and all DHS OIG reports of investigation that are identified in any of the records
responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the
DHS OIG reports of investigation.
3. Any and all ICE OPR reports of investigation that are identified in any of the records
responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the
DHS OPR reports of investigation.
4. Any and all documents and communications, including ICE and IHSC directives, policies,
procedures, protocols, or trainings that contain guidance, instructions, or standards about the
release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release
were patients in the care of external healthcare providers or facilities. Detainees specified in (a)

and (b) above shall include those being treated for COVID-19 during their hospitalization or treatment at external healthcare providers or facilities.

5. Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

6. Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that mention the release from custody of (continued in request PDF).

Upon review your request, our office has determined that the records sought, should they exist, would not be under purview of the DHS Privacy Office. Any responsive records would be held by the DHS Office of the Inspector General (OIG) and/or U.S. Immigration and Customs Enforcement (ICE). As you have already submitted your request to the aforementioned office, we are closing your Privacy Office request and will defer to the OIG and ICE's response(s).  We have included contact information for the OIG and ICE FOIA offices below for your convenience:

<u>ICE</u>
Freedom of Information Act Office
500 12th Street, SW, Stop 5009
Washington, D.C. 20536-5009
Phone: 866-633-1182 | Fax: 202-732-4265 | E-mail: ice-foia@dhs.gov

<u>OIG</u>
FOIA Public Liaison
DHS-OIG Counsel
STOP 0305
245 Murray Lane, SW
Washington, D.C. 20528-0305
Phone: 202-981-6100 | Fax: 202-245-5217 | E-mail: FOIA.OIG@oig.dhs.gov

If you need to contact our office again about this matter, please refer to **2022-HQFO-00989**. You may contact this office at 1-866-431-0486 or 202-343-1743 or at foia@hq.dhs.gov.

Sincerely,

Jimmy Wolfrey
Senior Director, FOIA Operations and Management
(Acting)

# EXHIBIT K

| From: | Laboni Hoq |
|---|---|
| To: | Eunice Cho |
| Cc: | Tursi, Joseph (USACAC); Kyle Virgien; Michael Kaufman; Axe, Jason (USACAC) |
| Subject: | Re: [EXTERNAL] Re: ACLU SoCal v. DHS |
| Date: | Friday, December 8, 2023 4:10:01 PM |
| Attachments: | 2023-12-8 ACLU SO Cal - Vaughn index letter_final.pdf |

**This Message Is From an External Sender**
This message came from outside your organization.

Hi Joe,

Following up on this, please see our attached letter regarding OIG related items.

Thanks.

On Fri, Dec 1, 2023 at 4:14 PM Laboni Hoq <laboni@hoqlaw.com> wrote:
> Dear Joe,
>
> We wanted to follow up on today's meet and confer discussion regarding the next steps with respect to a motion for summary judgment regarding OIG.
>
> As we discussed, by December 8, 2023 Plaintiff will provide Defendants a list of OIG documents that we ask that OIG include on a Vaughn index. We requested that OIG produce the Vaughn index, as well as a search adequacy declaration by January 8, 2023. Defendants will confer with OIG to determine whether they will agree to this deadline, and provide us OIG's position at our next meet and confer we scheduled for December 14, 2023 at 1 pm PST.  Regarding the timing for production of the Vaughn index, in the event the Parties do not agree on a deadline, Defendants agreed that Plaintiff has met its Rule 7-3 meet and confer obligation in case it needs to move the Court to set an appropriate deadline.
>
> Regarding the summary judgement briefing schedule for OIG, Plaintiff proposed that the parties file cross-motions, commencing with an Opening motion on January 19, Opposition and Cross motion on February 9, Opposition to Cross-Motion and Reply on March 1, and Reply to Cross motion on March 15. Given that the Parties have yet to agree on a deadline for production of the Vaughn index and search adequacy declaration, the Parties will revisit this schedule at the meet and confer on December 14.  At that time, we also ask that Defendants be prepared to discuss whether they wish to file the Opening motion, or the Cross motion.
>
> Finally, regarding ICE, Defendants stated in their November 30, 2023 letter that there are 1,730 docs left for Gulema from after Oct. 2015. We asked whether the documents referred to ICE by OIG are included in the remaining production by ICE related to Mr. Gulema. Defendants agreed to inquire with ICE about this query.
>
> We look forward to discussing these matters with you soon.
>
> On Wed, Nov 29, 2023 at 6:53 AM Eunice Cho <echo@aclu.org> wrote:

Hi Joe,

The link for our zoom meeting on Friday, Dec. 1 at 2 pm PT is:
https://aclu.zoom.us/j/4213789345?omn=85823095205.


Take care,

Eunice

---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Tuesday, November 28, 2023 7:53 PM
**To:** Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov>
**Cc:** Kyle Virgien <kvirgien@aclu.org>; Michael Kaufman <mkaufman@aclusocal.org>;
Eunice Cho <echo@aclu.org>; Axe, Jason (USACAC) <Jason.Axe@usdoj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS


Thanks Joe. We'll send a Zoom invite.


On Tue, Nov 28, 2023 at 4:50 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov>
wrote:

> Good afternoon Laboni,
>
>
> Friday at 2pm works for us.
>
>
> Thanks,
>
>
> **Joseph W. Tursi | Assistant United States Attorney**
> United States Attorney's Office | Central District of California
> 300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
> O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Tuesday, November 28, 2023 4:03 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS


Dear Joe:


We had planned to discuss the timing of providing the information you request during the Rule 7-3 meeting, including by setting deadlines for Defendant OIG's production of a Vaughn Index for documents we identify and a search adequacy declaration in advance of commencing summary judgment briefing. While we would like to agree on a summary judgment briefing schedule for OIG now, we are amenable to building time into the schedule for extended Rule 7-3 discussions prior to the commencement of briefing to narrow issues on both exemptions and search adequacy.


Given this, we wanted to double check whether you have any availability to discuss these matters on Wednesday Nov. 29. If not, we are available on Friday, Dec. 1 at 5 ET/2 PT.


Thanks.


On Tue, Nov 28, 2023 at 12:34 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

> Laboni,
>
>
> We will have a response by December 1st.
>
>
> With respect to OIG and a summary judgment briefing, we believe that a Local Rule 7-3 meeting is premature at this point. We are certainly willing to conduct such a meeting so we can agree on a briefing schedule for both parties to file motions for summary judgment. However, prior to such a meeting, we ask that Plaintiff provide OIG in writing answers to the questions it has previously posed, namely, (1) what

specific pages/redactions Plaintiff is challenging, (2) by Bates number, what specific documents Plaintiff believes are incomplete, and (3) whether Plaintiff intends to challenge the adequacy of OIG's search, and if so, on what basis.  As we discussed with the Magistrate Judge, taking such steps will allow the parties to attempt to narrow any potential issues for summary judgment briefing. If Plaintiff is unwilling to provide OIG with this information in writing prior to a Local Rule 7-3 meeting, then we are available on Thursday after 10am and Friday after 11am for a Local Rule 7-3 meeting.

Thanks,

**Joseph W. Tursi** | **Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Monday, November 27, 2023 3:18 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS

Hi Joe,

Hope you had a good Thanksgiving.

Regarding our November 9, 2023 correspondence, we ask that Defendants provide a response by Friday December 1, 2023, so that the next month's production can reflect any updated responses. If Defendants cannot provide a response by Dec. 1, Plaintiff will have to request a status conference to ensure the case moves forward expeditiously.

We also write to schedule a time to meet and confer under Local Rule 7-3 regarding a motion for summary judgment on the DHS OIG production. We are free after 1:30 PT on either Tuesday Nov. 28 or Wednesday Nov. 29. Please let us know which date and time works for you.

Thanks.

On Mon, Nov 20, 2023 at 2:49 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

> Hi Laboni,
>
> I wanted to acknowledge receipt of your November 9, 2023 correspondence. We are conferring with our clients and are working on a response that we will provide after Thanksgiving once everyone is back in their respective offices.
>
> Thanks,
>
> -Joe
>
>
> **Joseph W. Tursi | Assistant United States Attorney**
> United States Attorney's Office | Central District of California
> 300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
> O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov
>
> _____
>
> **From:** Laboni Hoq <laboni@hoqlaw.com>
> **Sent:** Thursday, November 9, 2023 8:45 AM
> **To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
> **Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason

(USACAC) <JAxe@usa.doj.gov>
**Subject:** [EXTERNAL] Re: ACLU SoCal v. DHS

Hi Joe,

Please see the attached correspondence.

Thanks.

On Thu, Nov 2, 2023 at 4:34 PM Tursi, Joseph (USACAC)
<Joseph.Tursi@usdoj.gov> wrote:

> Good afternoon Laboni,
>
> Attached please find correspondence of today's date in response to Plaintiff's
> October 19, 2023 letter.
>
> Thanks,
>
> -Joe
>
> **Joseph W. Tursi** | **Assistant United States Attorney**
> United States Attorney's Office | Central District of California
> 300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
> O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

[www.hoqlaw.com](www.hoqlaw.com)


--
**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
[www.hoqlaw.com](www.hoqlaw.com)


--
**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
[www.hoqlaw.com](www.hoqlaw.com)