# EXHIBIT M

| | |
|---|---|
| **From:** | Laboni Hoq |
| **To:** | Tursi, Joseph (USACAC) |
| **Cc:** | Axe, Jason (USACAC); Eunice Cho; Kyle Virgien; Michael Kaufman |
| **Subject:** | Re: [EXTERNAL] Re: ACLU SoCal v. DHS |
| **Date:** | Monday, December 11, 2023 5:18:50 PM |

---

**This Message Is From an External Sender**
This message came from outside your organization.

Hi Joe,

Thank you for your email.

First, because Plaintiff is unable to tell with certainty what information is hidden behind the redactions, Plaintiff requires *Vaughn* index information to determine whether or not to challenge a specific redaction. For that reason, we cannot at this point determine which specific redactions Plaintiff will challenge. However, Plaintiff will not challenge OIG's withholding of case numbers. Plaintiff, however, may challenge the improper withholding of names, where the withholding does not properly qualify for an exemption.

Second, thank you for the information regarding the draft MOAs that were redacted in full. Although OIG should identify the redacted documents and point to the final version that was released for the documents redacted in full, Defendants are required to, and should prepare *Vaughn* index entries for these documents. *See Founding Church of Scientology of Washington, D.C. v. Bell,* 603 F.2d 945, 949 (D.C. Cir. 1979) (specifying that a *Vaughn* index must "state the exemption claimed for each deletion or withheld document. . . and explain why the exemption is relevant"); *Transgender Law Ctr. v. Immigration and Customs Enforcement,* 46 F.4th 771, 783 (9th Cir.) ("simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege.").

Thank you,

Laboni

On Mon, Dec 11, 2023 at 10:52 AM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

> Good morning Laboni,
>
> We forwarded your December 8, 2023 correspondence to OIG, which had a chance to review and has two questions concerning the *Vaughn* index.
>
> First, are there specific exemptions that your client is challenging on each identified page in

your correspondence? OIG informs us, as an example, on page 15 of the November production, the majority of those redactions are 6/7C over names or 7E over an ICE case number. Is your client challenging OIG's withholding of names and/or case numbers?

Second, for the records withheld in full, OIG informs us that those are draft MOAs that were released in their final form in other productions. If OIG can identify the reacted document and point to the final version that was released, would that satisfy your client's concerns regarding those redactions?

Thanks,

-Joe

**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Friday, December 8, 2023 1:07 PM
**To:** Eunice Cho <echo@aclu.org>
**Cc:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>; Kyle Virgien <kvirgien@aclu.org>; Michael Kaufman <mkaufman@aclusocal.org>; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS

Hi Joe,

Following up on this, please see our attached letter regarding OIG related items.

Thanks.

On Fri, Dec 1, 2023 at 4:14 PM Laboni Hoq <laboni@hoqlaw.com> wrote:

Dear Joe,

We wanted to follow up on today's meet and confer discussion regarding the next steps with respect to a motion for summary judgment regarding OIG.

As we discussed, by December 8, 2023 Plaintiff will provide Defendants a list of OIG documents that we ask that OIG include on a Vaughn index. We requested that OIG produce the Vaughn index, as well as a search adequacy declaration by January 8, 2023. Defendants will confer with OIG to determine whether they will agree to this deadline, and provide us OIG's position at our next meet and confer we scheduled for December 14, 2023 at 1 pm PST.  Regarding the timing for production of the Vaughn index, in the event the Parties do not agree on a deadline, Defendants agreed that Plaintiff has met its Rule 7-3 meet and confer obligation in case it needs to move the Court to set an appropriate deadline.

Regarding the summary judgement briefing schedule for OIG, Plaintiff proposed that the parties file cross-motions, commencing with an Opening motion on January 19, Opposition and Cross motion on February 9, Opposition to Cross-Motion and Reply on March 1, and Reply to Cross motion on March 15. Given that the Parties have yet to agree on a deadline for production of the Vaughn index and search adequacy declaration, the Parties will revisit this schedule at the meet and confer on December 14.  At that time, we also ask that Defendants be prepared to discuss whether they wish to file the Opening motion, or the Cross motion.

Finally, regarding ICE, Defendants stated in their November 30, 2023 letter that there are 1,730 docs left for Gulema from after Oct. 2015. We asked whether the documents referred to ICE by OIG are included in the remaining production by ICE related to Mr. Gulema. Defendants agreed to inquire with ICE about this query.

We look forward to discussing these matters with you soon.

On Wed, Nov 29, 2023 at 6:53 AM Eunice Cho <echo@aclu.org> wrote:

Hi Joe,

The link for our zoom meeting on Friday, Dec. 1 at 2 pm PT is:
https://aclu.zoom.us/j/4213789345?omn=85823095205.

Take care,

Eunice

---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Tuesday, November 28, 2023 7:53 PM
**To:** Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov>
**Cc:** Kyle Virgien <kvirgien@aclu.org>; Michael Kaufman
<mkaufman@aclusocal.org>; Eunice Cho <echo@aclu.org>; Axe, Jason (USACAC)
<Jason.Axe@usdoj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS

Thanks Joe. We'll send a Zoom invite.

On Tue, Nov 28, 2023 at 4:50 PM Tursi, Joseph (USACAC)
<Joseph.Tursi@usdoj.gov> wrote:

> Good afternoon Laboni,
>
> Friday at 2pm works for us.
>
> Thanks,
>
> **Joseph W. Tursi | Assistant United States Attorney**
> United States Attorney's Office | Central District of California
> 300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
> O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Tuesday, November 28, 2023 4:03 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS

Dear Joe:

We had planned to discuss the timing of providing the information you request during the Rule 7-3 meeting, including by setting deadlines for Defendant OIG's production of a Vaughn Index for documents we identify and a search adequacy declaration in advance of commencing summary judgment briefing. While we would like to agree on a summary judgment briefing schedule for OIG now, we are amenable to building time into the schedule for extended Rule 7-3 discussions prior to the commencement of briefing to narrow issues on both exemptions and search adequacy.

Given this, we wanted to double check whether you have any availability to discuss these matters on Wednesday Nov. 29. If not, we are available on Friday, Dec. 1 at 5 ET/2 PT.

Thanks.

On Tue, Nov 28, 2023 at 12:34 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

> Laboni,
>
> We will have a response by December 1st.
>
> With respect to OIG and a summary judgment briefing, we believe that a Local Rule 7-3 meeting is premature at this point. We are certainly willing to conduct such a meeting so we can agree on a briefing schedule for both parties to file motions for summary judgment. However, prior to such a meeting, we ask that Plaintiff provide OIG in writing answers to the questions it has previously posed,

namely, (1) what specific pages/redactions Plaintiff is challenging, (2) by Bates number, what specific documents Plaintiff believes are incomplete, and (3) whether Plaintiff intends to challenge the adequacy of OIG's search, and if so, on what basis.  As we discussed with the Magistrate Judge, taking such steps will allow the parties to attempt to narrow any potential issues for summary judgment briefing. If Plaintiff is unwilling to provide OIG with this information in writing prior to a Local Rule 7-3 meeting, then we are available on Thursday after 10am and Friday after 11am for a Local Rule 7-3 meeting.


Thanks,


**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov


---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Monday, November 27, 2023 3:18 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS


Hi Joe,


Hope you had a good Thanksgiving.


Regarding our November 9, 2023 correspondence, we ask that Defendants provide a response by Friday December 1, 2023, so that the next month's production can reflect any updated responses. If Defendants cannot provide a response by Dec. 1, Plaintiff will have to request a status conference to ensure the case moves forward expeditiously.

We also write to schedule a time to meet and confer under Local Rule 7-3 regarding a motion for summary judgment on the DHS OIG production. We are free after 1:30 PT on either Tuesday Nov. 28 or Wednesday Nov. 29. Please let us know which date and time works for you.

Thanks.

On Mon, Nov 20, 2023 at 2:49 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

> Hi Laboni,
>
> I wanted to acknowledge receipt of your November 9, 2023 correspondence. We are conferring with our clients and are working on a response that we will provide after Thanksgiving once everyone is back in their respective offices.
>
> Thanks,
>
> -Joe
>
> **Joseph W. Tursi | Assistant United States Attorney**
> United States Attorney's Office | Central District of California
> 300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
> O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 | joseph.tursi@usdoj.gov
>
> ---
>
> **From:** Laboni Hoq <laboni@hoqlaw.com>
> **Sent:** Thursday, November 9, 2023 8:45 AM
> **To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
> **Cc:** kvirgien@aclu.org; MKaufman@aclusocal.org; echo@aclu.org; Axe, Jason

(USACAC) <JAxe@usa.doj.gov>
**Subject:** [EXTERNAL] Re: ACLU SoCal v. DHS

Hi Joe,

Please see the attached correspondence.

Thanks.

On Thu, Nov 2, 2023 at 4:34 PM Tursi, Joseph (USACAC)
<Joseph.Tursi@usdoj.gov> wrote:

    Good afternoon Laboni,

    Attached please find correspondence of today's date in response to Plaintiff's
    October 19, 2023 letter.

    Thanks,

    -Joe

    **Joseph W. Tursi** | **Assistant United States Attorney**
    United States Attorney's Office | Central District of California
    300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
    O: 213.894.3989 | C: 213.500.9355 | F: 213.894.7819 |
    joseph.tursi@usdoj.gov

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

# EXHIBIT N

December 13, 2023

Joseph Tursi
Jason Axe
Alarice Medrano
United States Attorneys' Office
Central District of California
300 N. Los Angeles St. Suite 7516
Los Angeles, CA 90012
Joe.tursi@usdoj.gov
Jason.axe@usdoj.gov
Alarice.medrano@usdoj.gov

**SENT VIA EMAIL**

>       Re:     *ACLU of Southern California v. United States Immigration and Customs
>               Enforcement, et al.,* No. 2:22-cv-4760 (C.D. Cal.)

Dear Counsel:

This letter responds to Defendants' November 30, 2023 correspondence, as well as the District Court's order at Dkt. No. 62 (Dec. 8, 2023 Order). We had already scheduled a meeting on December 14, 2023 at 1:00 p.m. PT to discuss scheduling for a motion for summary judgment with respect to Defendant OIG. On December 8, 2023, the Court issued an order instructing the parties to meet and confer within two weeks "to address any outstanding issues regarding the search for records responsive to Plaintiff's request." Dec. 8, 2023 Order at 15. We are glad to discuss the following issues regarding the search on December 14, and also to schedule additional time necessary before December 22, 2023, to meet and confer. Please also ensure that Defendants' counsel have ready access to ICE technical staff , as required by the Court's Order. Dec. 8, 2023 Order at 12.

## I.     DHS-OIG Production

### A.  Referral of Documents by DHS-OIG

Plaintiff has raised the issue of DHS-OIG's referral of documents to ICE in its letter regarding *Vaughn* index parameters on December 8, 2023. At this point in time, DHS-OIG has informed Plaintiff that it referred 1,420 pages to ICE.[1] First, please confirm which Defendant— DHS-OIG or ICE—will produce these 1,420 pages to Plaintiff, and by what date. Second, please

---

[1] DHS-OIG referred 220 pages to ICE in November 2022; 280 pages in December 2022; 9 pages in March 2023; 328 pages in June 2023; and 583 pages in July 2023, for a total of 1,420 pages. This does not include the 581 pages of documents described on page 182 of OIG's June 2023 production.

1

confirm whether Defendants will produce the 581 pages of documents described and reviewed by OIG at page 182 of OIG's June 2023 production, and if so, by which Defendant, and by what date. Third, please confirm whether ICE will produce documents described at page 144-46 of OIG's June 2023 production, which include ICE notifications, emails, and forms regarding Mr. Teka Gulema's release from custody, and by what date.

Please note that OIG's referral of documents to ICE "constitutes a 'withholding' under FOIA 'if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them.'" *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 67 (D.D.C. 2008). At this point, OIG's referral of documents to ICE has delayed production by at least five months or more. *See* Pl.'s Nov. 9, 2023 Letter (requesting that Defendants prioritize production of referred documents).

Regarding OIG's referral of records to ICE as the "originator of the records," we disagree that OIG followed the prescribed procedures set forth in *McGhee v. CIA*, 697 F.2d 1095, 1111 (D.C. Cir. 1983) to ensure "prompt and public" processing of the records for disclosure to Plaintiff. Among other things, OIG has never established that ICE had the "intent to control" those records, *id.*, such that OIG was justified in referring them to ICE for processing.

Regarding Defendants' refusal to search the specified DHS components to which OIG referred responsive records as their originator, it is irrelevant that on May 18, 2022 the DHS Privacy Office only referred Plaintiff's Request to OIG and ICE. That is because upon OIG's identification of responsive records in its possession that it deemed necessary to refer to other DHS components, particularly given the subject matter of Plaintiff's Request and Plaintiff's specific request that it do so, Defendants were required to follow this "clear and certain" lead and search those components. *Lawyers' Comm. for C.R. Under L. v. United States Dep't of Just.*, No. 18-CV-167 (EGS/GMH), 2020 WL 7319365, at *11 (D.D.C. Oct. 16, 2020), report and recommendation adopted, No. CV 18-167 (EGS/GMH), 2021 WL 1197730 (D.D.C. Mar. 30, 2021) (*quoting Kowalczyk v. DOJ*, 73 F.3d 386, 388–89 (D.C. Cir. 1996)).

Here, Plaintiff's Request did not identify only certain DHS components to be searched, and indeed it sent the Request to the DHS Privacy Office to ensure that all appropriate DHS components be searched. 6 C.F.R. § 5.3(a)(2); *see also Lawyers' Comm.* at 10-11 (finding agency obligation to search other components regardless of whether Requester sent the Request to a specified referral unit). Further, upon obtaining correspondence in March and June of 2023 that OIG had identified responsive records that originated in other DHS components, Plaintiff specifically asked Defendants to search these components. *See* Plaintiff's September 14, 2023 letter at 2. Plaintiff was more than justified in doing so because the records are admittedly responsive to Plaintiff's request, and coupled with Plaintiff's specific request to search the limited number of additional components where they originated, Defendants had "a lead so

apparent that the [agency] [could] not in good faith fail to pursue it." *Lawyers' Comm.* at 11 ("once the [Requester] informed the agency of the records at issue and identified by name and department the [component] who had them 'in their possession,' it provided 'a lead that [was] both clear and certain') (internal citations omitted).

For these reasons, Plaintiff again asks Defendants to search all DHS components to which OIG referred responsive records, including but not limited to CBP, DHS CRCL and the unidentified component specified in OIG's June 29, 2023 letter. If Defendants continue to refuse to do so, Plaintiff will seek appropriate Court intervention.

### B.  Documents Remaining to Be Produced by DHS-OIG

On September 14, 2023, Plaintiff specifically requested that DHS-OIG produce the following responsive documents, which were referred to in documents produced by OIG. Pl.'s Sept. 14, 2023 Letter. On October 2, 2023, Defendants stated that "if they were in OIG's possession, they likely would have been referred to ICE for review and processing." Defs.' Oct. 2, 2023 Letter. Defendants have yet to produce these records. At our next conference, please confirm which Defendant will produce these documents, and by what date Defendants will produce them:

- December 2022 OIG production, pages 80-82, regarding Johana Medina Leon: Please provide the documents referenced in the report, where "copies of the final executive summary and emails documenting Medina's [sic] decision to release her from ICE ERO custody. Copies of the aforementioned documents will be placed in the case file."
- December 2022 OIG production, pages 83-85, regarding Johana Medina Leon. Please provide the documents referenced in the report, where "[a] copy of [REDACTED] emails between the MTC and ICE ERO management, the executive summary, and the OCPC final report of findings will be placed into the case file."
- March 2023 OIG production, page 48, regarding a question about the number of OIG's investigations into out-of-custody deaths, to which the El Paso ICE Field Office, responded, "approximately five investigations." Please provide documents related to these five investigations.
- June 2023 OIG production, page 180, regarding OIG's investigation into Teka Gulema's death, where OIG noted review of "an email dated November 24, 2015 from [REDACTED], Field Office Director, ICE, New Orleans, LA. The email was to [REDACTED], Field Medical coordinator, IHSC, New Orleans, LA. The email stated "FYI, HQ has directed we serve a release letter on Dr. [REDACTED] and release Gulema from ICE custody today." Please provide the document referenced here.

## II.     ICE's Production

### A.      Parts 1-3

Thank you for the information about the number of remaining records for each of the individuals named in the Request. Regarding any medical records dated before October 1, 2015 that are attached to the post October 1, 2015 Gulema emails, we agree that ICE may process only the emails and may exclude the attachments at this time. Upon ICE's production of these documents, Plaintiff may identify specific email attachments that we would ask ICE to produce, but this will hopefully be no more than a few discrete attachments. As such, please provide us with any revised hit count for post-October 1, 2015 records related to Mr. Gulema that remain to be produced by ICE.[2]

In addition, to the extent that ICE has not produced documents related to Teka Gulema, Martin Vargas Arrellano, Jose Ibarra Bucio, and Johana Medina Leon in response to Parts 1-3 that were referred by DHS-OIG, please provide a hit count for the remaining number of pages to be produced, and the date by which Defendants plan to produce those documents at our next conference.

It also appears that ICE has produced incomplete versions of certain documents in response to Parts 1-3, and that several of these missing or partially-scanned pages provide critical information regarding failures of medical treatment and decision to release the named individuals from custody. Plaintiff requested full, readable copies of these documents on September 14, 2023. On November 30, 2023, Defendants refused to state when these documents would be produced in full, stating only that they would be provided "in due course." The specific document deficiencies are as follows:

- ICE's December 2022 Production, page 2648: This email was only partially produced. The sender is a commander in the U.S. Public Health Service, responding to an email sent on July 29, 2015, with the subject line: Re: Follow-Up Requested RE: SDI update: Teka Gulema, discussing medical care deficiencies provided at the detention facility.

- ICE's July 2023 Production, pages 7197-7200. This document, titled "ERO New Orleans-Teka GULEMA, A28021556" is dated "November 10, 2022." However, it appears that this date is incorrect, perhaps an inadvertent automatic update of the processing date, as the document references a recommendation that ERO release Mr. Gulema on a letter of supervision, and because Mr. Gulema died in 2016.

---

[2] As Plaintiff has noted, any agreement regarding waiver of documents dated prior to October 2015 regarding Mr. Gulema does not apply to documents referred by DHS OIG to ICE.

4

- ICE's August 2023 Production, page 7504. This document, which contains only the bottom half of the document, appears to be a document dated Feb. 22, 2019, documenting the timeline for in-custody medical care provided to Mr. Ibarra Bucio immediately before he was transferred via ambulance to the hospital.

Please provide a specific date by which ICE will correct these deficiencies and produce the complete documents specified above.

### B. Part 4

Thank you for providing the latest results of ICE's search, separated by search term. At present, Defendants represent that it has conducted a search resulting over 142,000 potentially responsive email documents.

In order to narrow the scope of records searched by Defendants, Plaintiff suggests, as previously requested in our November 9, 2023 letter, that Defendants conduct a search for records responsive to Part 4 on ICE ERO and IHSC servers or shared drives where stand-alone directive, policy, practice, procedure, training, guidance and instruction documents are likely to be located. We believe that "a professional employee of the agency . . . familiar with the subject area of the request" can "locate the record[s] with a reasonable amount of effort. *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017). These professionals could, for example, include Deborah Fleischaker (Executive Secretary of DHS) and Stewart Smith and Ada Rivera (IHSC). We ask that ICE use the search terms specified in Plaintiff's October 19, 2023 letter at Part 4, and previously agreed upon by ICE, and provide hit counts for those files. Please provide the search terms used, search locations, and hit count (disaggregated by search terms and locations) for Part 4 by January 22, 2024. *See* Dec. 8, 2023 Order at 12. These terms are listed below for your convenience:

- Defendants first should search for the following keywords: (directive or policy or policies or protocol or procedure or training or guidance or instruction or standard) **AND** (custody or death or died or deceased or decedent or discharge or surgery or specialist or COVID-19 or hospital or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal). This search string is under 450 characters. Defendants should save the results of this Boolean search.
- After running this first Boolean search, Defendants should then conduct a search for documents that fall within these saved search results and include at least one of the following keywords: (release or transfer or benefits or parole or "alternative

detention" or discharge or OSUP or "order of supervision" or humanitarian). This second string, again, is under 450 characters.

**Please exclude:** Any version of ICE Detention Standards (NDS 2000, PBNDS 2008, PBNDS 2011, NDS 2019), or ICE's COVID-19 Pandemic Response Requirements.

To the extent that this search results in more precise, narrowly-tailored results, Plaintiff could agree to narrow its request to eliminate a search for "communications," and instead, limit the search to "ICE and IHSC directives, policies, procedures, protocols, and trainings that contain instructions or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities."

Regarding ICE's response that its prior search of email records was conducted by searching "the three custodians previously identified," Plaintiff assumes this means ICE only searched the email files of Tae Johnson, Deborah Fleischaker, and Scott Schuchart. *See* ICE November 11, 2023 letter at 3. As stated above, we ask that ICE conduct an independent search of non-email files, including servers or shared drives where stand-alone directive, policy, practice, procedure, training, guidance and instruction documents are likely to reside. Until this search is complete, we will hold off on our request that ICE search any additional custodians, including Tae Johnson's predecessors.

Finally, thank you for tasking a search of ORAP and IHSC. Please identify the locations being searched, and the search terms and any other parameters ICE is applying to this search.

### C.  Part 5

ICE has run a search of emails of Dr. Stewart Smith, resulting in a hit count of 551 pages. However, as Plaintiff has raised, this search is inadequate, as it consists only of one custodian from one subagency and is on its face incomplete. Pl.'s Nov. 9, 2023 Letter. As the Court noted in its Order, Plaintiff has "proposed a compromise that Defendants limit the search to staff . . . who participate in the weekly SDI meeting, and any custodian who possess[es] the SDI list." Dec. 8, 2023 Order at 11.

For this reason, Plaintiff requests that Defendants conduct a search of ICE (including IHSC, ICE ERO Field Operations, and OPLA) staff who participate in SDI meetings, as well as any custodian who possesses the SDI list. Please provide a hit count for this search, disaggregated by custodian (which can be identified by position) and by search term, to allow parties to work together cooperatively to narrow a search if necessary. Please provide this information by January 22, 2024. *See* Dec. 8, 2023 Order at 12. The previously agreed-upon search terms are listed below for your convenience:

6

(1) Death; (2) Died; (3) Deceased; (4) Ambulance; (5) Emergency; (6) "offsite referral"; (7) "life support"; (8) coma; (9) ventilator; (10) "intensive care"; (11) "critical condition"; (12) hospice; (13) palliative; and (14) release.

ICE should then perform the following Boolean search in Relativity:
(release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian) AND (custody or death or died or deceased or surgery or specialist or COVID-19 or hospital! or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal).

### D.  Parts 6 and 7

Plaintiff appreciates Defendants' agreement to search JIOC for SIRs and SENs not created by OIG or OPR. *See* Dec. 8, 2023 Order at 11.  Please identify specific search locations (i.e. names of custodians and/or records systems), and conduct a search with the following search terms, to which Parties have already agreed. *See* Pl.'s Jun. 12, 2022 letter at 6; Defs.'s Jun. 22, 2023 letter at 3. Please confirm the search terms used, search locations, and hit count (disaggregated by search terms and locations) for Parts 6 and 7 by January 22, 2024. *See* Dec. 8, 2023 Order at 12.

(1) Death; (2) Died; (3) Deceased; (4) Ambulance; (5) Emergency; (6) "offsite referral"; (7) "life support"; (8) coma; (9) ventilator; (10) "intensive care"; (11) "critical condition"; (12) hospice; (13) palliative; and (14) release.

ICE should then perform the following Boolean search in Relativity:
(release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian) AND (custody or death or died or deceased or surgery or specialist or COVID-19 or hospital! or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal).

### E.  Part 8

Thank you for your further commitment that ICE will not "omit" for its search results "documents that were compiled or utilized in *Fraihat v. ICE*." However, Plaintiff maintains that if there is a central repository of documents in that case that are likely to have responsive records, that repository should be searched. Please let us know if ICE has inquired with those

7

familiar with ICE's data-collection efforts relevant to the *Fraihat* litigation whether such a repository exists, and if so whether it will be searched for this case. Please confirm the search terms used, search locations/custodians (by position if names are not provided), and hit count (disaggregated by search terms and locations) for Part 8 by January 22, 2024. *See* Dec. 8, 2023 Order at 12.

### F.  Part 9

Thank you for agreeing to conduct the additional search for records responsive to Part 9. Please confirm the search terms used, search locations/custodians (by position if names are not provided), and hit count (disaggregated by search terms and locations) for Part 9 by January 22, 2024. *See* Dec. 8, 2023 Order at 12.

Sincerely,

LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EUNICE CHO (pro hac vice)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017 Telephone:
(213) 977-9500
Facsimile: (213) 915-0219

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
NATIONAL PRISON PROJECT
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

# EXHIBIT O

December 21, 2023
Re: *ACLU SoCal v. ICE*

December 21, 2023

Joseph Tursi
Jason Axe
Alarice Medrano
United States Attorneys' Office
Central District of California
300 N. Los Angeles St. Suite 7516
Los Angeles, CA 90012
Joe.tursi@usdoj.gov
Jason.axe@usdoj.gov
Alarice.medrano@usdoj.gov



***SENT VIA EMAIL***

Re:     *ACLU of Southern California v. United States Immigration and Customs Enforcement, et al.,* No. 2:22-cv-4760 (C.D. Cal.)

Dear Counsel:

Plaintiff's counsel writes with a summary of our meet and confer with you on December 14, 2023. Please let us know if you disagree with our understanding of the conversation as set out below so that we can address any inconsistencies.

As an initial matter, we would like to note our disappointment that Defendants are not acting more cooperatively in the meet and confer process ordered by the Court. We have repeatedly noted our disappointment in the past with the slow progress of this case because of Defendants' significant delays in providing information that would allow for an efficient resolution without creating unnecessary burdens on any party. We ultimately had to obtain a court order to address those delays. Dkt. 62. We are concerned that, in this latest meet and confer, while facially claiming to abide by the order, Defendants appear to be taking an approach that disregards both the letter and the spirit of the order and the Local Rules, that will further delay the resolution of the case.

For example, during the December 14 meet and confer, ICE repeatedly took the position that it need only provide Plaintiff's counsel the information that the Court ordered it to provide on January 22, 2024 in paragraph (1)(b) of the Court's order. *See* Dkt. 62 at 15. As a result, ICE took the position that it may elect to provide only the hit counts of searches (not the search terms used or the locations searched) for Parts 4 and 6-9 of Plaintiff's FOIA request. This position misreads the letter of Court's order. The order requires Defendants not just to provide the information set out in paragraph (1)(b) on January 22, but to "meet and confer … to address any outstanding issues regarding the search for records responsive to Plaintiff's Request." *Id.* The Court intended this discussion to be meaningful and substantive. The Court intended the parties to meet and confer to

December 21, 2023
Re: *ACLU SoCal v. ICE*

attempt to agree to searches (as set out in part (1)(a) of its order), and then for the Defendants to provide information on the "agreed-to searches (if any)" reached as part of this meet and confer (as set out in part (1)(b) of its order). This meaningful discussion requires ICE to provide information about which custodians it intends to search and what terms it intends to use so that the parties can attempt to reach an agreement before ICE provides its hit counts on January 22. ICE's position is that it need not provide any information beyond the final report set out in part (1)(b) thus violates the letter of the Court's order. More importantly, this position misreads the spirit of the Court's order. By refusing to provide any information beyond what the Court has specifically required in an order, ICE is setting up a pattern where Plaintiff must move the Court for an order every time Plaintiff has any questions about Defendants' search or production beyond those it has already specifically raised with the Court. This pattern will entail significant delay and will require the parties and the Court to expend significant resources. The Court has already expressed its concerns with Defendants' delays that have been resolved "only [] after Plaintiff sought court-intervention over the parties' disputes." Dkt. 62 at 11. Plaintiff hopes that ICE will not insist on another Court order before it will provide basic information about its searches.



As another example, you repeatedly refused to answer whether the documents that DHS-OIG had referred to other DHS components had been produced, stating that these questions did not involve the "outstanding issues regarding the search for records responsive to Plaintiff's Request" on which the Court had ordered the parties to meet and confer. Dkt. 62 at 15. This position violates the spirit of the Court's order as discussed above. It also violates the Local Rules. One of the purposes of this meet and confer was to attempt to narrow the issues for summary judgment under L.R. 7-3. One of the issues on which Plaintiff may need to move for summary judgment is Defendants' failure to produce documents referred by DHS-OIG to other components of Defendant DHS. If these documents have in fact been produced, then Plaintiff may be able to avoid moving on this issue. Your refusal to discuss whether these documents have been produced thus violates the L.R. 7-3 requirement that the parties attempt to narrow the issues that must go before the Court before a motion is filed. You eventually agreed to provide an accounting of which documents referred by DHS-OIG have been produced, after wasting a significant amount of the limited time Defendants had available for the meet and confer. Plaintiffs hope that Defendants do not let this position further complicate efforts to move this case forward.

We trust that Defendants will be more cooperative going forward.

Defendants, moreover, were unable or refused to provide direct responses to Plaintiff's questions, stating that all questions by Plaintiff must be provided in a letter, and that Defendants would respond via letter. Although we understand the need for Defendants' counsel to confer with counsel for ICE, we suggest that Defendants ensure that an agency employee (i.e. ICE counsel) who may be able to

December 21, 2023
Re: *ACLU SoCal v. ICE*

provide responsive information be available in a timely manner on our future calls.

The parties agreed that Defendants would respond to Plaintiff's December 12, 2023 letter in "early January," and that we will further meet and confer at 1:30 pm Pacific on January 17.

We set out the specific issues that we discussed below.

### Local Rule 7-3 Conference on Motion for Summary Judgment Involving DHS-OIG and DHS



*Vaughn* Index and Search Summary

We sent a letter on December 8, 2023 limiting the number of redactions and withholdings for which Plaintiff requests a *Vaughn* index, and we requested that DHS-OIG provide a *Vaughn* index and search adequacy declaration one month later, by January 8, 2024. You explained that DHS-OIG was not willing to provide a search adequacy declaration ahead of summary judgment briefing. Instead, DHS-OIG will agree to provide a search summary instead, which will contain dates of searches, all search terms used, custodians and file locations searched, and the number of pages produced by DHS-OIG. DHS-OIG committed to providing a *Vaughn* index and search summary by February 9, 2024, at the latest, and it also committed to endeavor to provide the search summary earlier.

Summary Judgment Briefing Schedule

The parties discussed Plaintiff's proposed briefing schedule for summary judgment. On our call, Defendants proposed a briefing schedule that did not account for cross-motions. The parties agreed to discuss this issue further by email to attempt to reach agreement on a briefing schedule that would account for cross-motions. We have since done so and have agreed on a briefing schedule to submit to the Court.

Referral of Documents by DHS-OIG

Plaintiff next attempted to discuss DHS-OIG's referral of documents to other DHS components—a topic that Plaintiff included in its December 8, 2023 and December 12, 2023 letters and that was appropriately part of this meet and confer because it related to the parties' continued Local Rule 7-3 conference. Specifically, Plaintiff reiterated its request from its December 8th and 12th letters that Defendants inform Plaintiff whether the documents DHS-OIG referred to other agencies have been produced. Defendants initially refused to provide this information on this call because it did not involve the "outstanding issues regarding the search for records responsive to Plaintiff's Request" on which the Court had ordered the parties to meet and confer. Dkt. 62 at 15. Later during the

December 21, 2023
Re: *ACLU SoCal v. ICE*

call, Defendants agreed to respond, stating that they were not prepared to answer this question on the call but would provide an answer in writing in early January.

<u>Leads Apparent from DHS-OIG's Production</u>

We next discussed whether Defendants would follow up on several obvious leads and positive indications of overlooked materials apparent from DHS-OIG's production.



First, page 182 of DHS-OIG's June 2023 production references 581 pages of documents that DHS-OIG reviewed in its investigation. Defendants explained that those 581 pages of documents have been referred to ICE, which will produce them, but then stated that it seemed that 230 pages had been referred. After again explaining the contents of page 182 (attached as Exhibit A for Defendants' convenience), Defendants stated that they will provide a response whether these documents have been provided, referred, or will be produced in early January. See Exh. A (DHS-OIG June 2023 Production, page 182)..

Second, pages 144-46 of DHS-OIG's June 2023 production reference forms regarding Mr. Gulema's release from custody. Defendants stated that they will provide a response whether these documents have been identified or referred in early January.

Third, pages 80-82 of DHS-OIG's December 2022 production refer to an executive summary and emails about the decision to release Ms. Medina Leon, which were placed on a case file. DHS-OIG did not have an answer, nor could it provide a date certain by which it will have an answer to this question. However, it committed to inform Plaintiff whether they would follow up on this lead. We hope you will provide this information in your early January letter.

Fourth, pages 83-85 of DHS-OIG's December 2022 production refer to emails, an executive summary, and the OCPC final report of findings, which were placed into the case file. Defendants agreed to inform Plaintiff whether they would follow up on this lead in writing in early January.

Fifth, Page 48 of the March 2023 OIG production notes that the El Paso ICE Field Office has conducted approximately five investigations into out-of-custody deaths, indicating that Defendants have possession of responsive documents related to these five investigations. Defendants agreed to inform Plaintiff whether they would follow up on this lead in writing in early January.

Sixth, page 180 of DHS-OIG's June 2023 production references "an email dated November 24, 2015 from [REDACTED], Field Office Director, ICE, New Orleans, LA" to "[REDACTED], Field Medical coordinator, IHSC, New Orleans, LA." Defendants did not have an answer, nor could they provide a date certain by which they will have an answer to this question. However, they committed to

December 21, 2023
Re: *ACLU SoCal v. ICE*

inform Plaintiff whether they would follow up on this lead. We hope that you will provide us this information in early January.

Seventh, pages 4-11 of DHS-OIG's August 2023 production show that the document was "received by ESEC at 3:44 pm, Apr 12, 2021." This statement appears to refer to the Secretary of the Department of Homeland Security. Based on this statement, the Office of the Secretary should also have been included in Defendant DHS's search for documents responsive to Plaintiff's request. Specifically, the Office of the Secretary should have been searched for the names and A#s of the four people identified in Parts 1-3 of the request, and the search terms that Plaintiff and DHS-OIG negotiated for its searches. Contrary to the authority Plaintiff provided in its December 12, 2023 letter, Defendants took the position that because Plaintiff named only DHS—not the Office of the Secretary of DHS—as a defendant in this case, it cannot require Defendant DHS to follow up on these leads by searching the Office of the Secretary. We believe that the parties are at an impasse on this issue, but we welcome further discussion.



Eighth, Plaintiff reiterated its request that Defendants search all DHS components to which OIG referred responsive records, including but not limited to CBP, DHS CRCL, and the unidentified component specified in OIG's June 29, 2023 letter. Defendants agreed that these searches would involve components of Defendant DHS. However, they took the position that because Plaintiff named only DHS—not these specific components of DHS—as defendants in this case, then it cannot require Defendant DHS to follow up on these leads by searching its components. Defendants disagreed, again taking the position that because Plaintiff named only DHS—not these other DHS components—as a defendant in this case, then it cannot require Defendant DHS to follow up on these leads by searching its components. We believe that the parties are at an impasse on this issue, but we welcome further discussion.

## <u>Court-Ordered Meet and Confer</u>

As you are aware, the Court ordered the parties to meet and confer, within two weeks of its December 8, 2023 order, "to address any outstanding issues regarding the search for records responsive to Plaintiff's Request." Dkt. 62 at 15. We attempted to have the discussion the Court ordered, as described below.

<u>Parts 1-3</u>

Plaintiff requested a revised page count for the records remaining to be produced that relate to Mr. Gulema, omitting documents dated before October 1, 2015, and omitting documents dated before October 1, 2015 that are attached to emails dated on or after October 1, 2015. ICE agreed to provide that revised page count on January 22.

December 21, 2023
Re: *ACLU SoCal v. ICE*

Plaintiff also requested a total page count for all records collected but not yet produced for each of Mr. Gulema, Mr. Vargas Arellano, Mr. Ibarra Bucio, and Ms. Medina Leon. ICE agreed to provide that page count on January 22.

Finaly, Plaintiff reiterated its request, originally made September 14, 2023, for full, readable copies of documents that were missing or partially scanned. These pages are: page 2648 of ICE's December 2022 production, pages 7197-200 of ICE's July 2023 production, and page 7504 of ICE's August 2023 production. Plaintiff asked for a date certain by which it could expect ICE to produce corrected versions of those documents. On our meet and confer, you took the position that ICE has the right to produce corrected versions of these documents in the manner and order in which it prefers, and that it need not provide Plaintiff any indication of when it will produce these corrected versions. However, you agreed to pass along to ICE Plaintiff's request that ICE prioritize the production of these corrected versions.



Part 4

We asked for ICE's response to Plaintiff's December 13 request that ICE narrow the set of documents to be produced by searching only ICE ERO and IHSC servers or shared drives where stand-alone directive, policy, practice, procedure, training, guidance and instruction documents are likely to be located. You explained that you had passed this request on to ICE, which took it into consideration. You also explained that ICE had tasked the search to ICE ORAP (Office of Regulatory Affairs and Policy) and IHSC, and that it would provide a page count of responsive documents, along with all other information required by the Court's order, on January 22. We asked whether ICE is clear as to what, specifically, we meant when we described ICE ERO and IHSC servers or shared drives in our letter. You explained that you had not yet spoken with ICE on the phone but that you would confirm with ORAP and IHSC that they understood this request. We requested that ICE inform us in its early January letter what locations it will search for this Part and what terms it will use.

Part 5

Our December 13 letter set out the specifics of a compromise that we proposed to reach an appropriately narrowed set of documents for review and production, and we asked for ICE's position. Namely, as the Court noted in its Order, we "proposed a compromise that Defendants limit the search to staff who participate in the weekly SDI meeting, and any custodian who possesses the SDI list." Dec. 8, 2023 Order at 11. You stated that ICE would not agree to our compromise, that the issue "will need to be briefed," and that Plaintiff will need to take its issues with the adequacy of ICE's search to the Court. However, you stated that you will provide ICE's final position in writing.

December 21, 2023
Re: *ACLU SoCal v. ICE*

<u>Parts 6 and 7</u>

Plaintiff and ICE had previously reached agreement that ICE will search JIOC for SIRs and SENS. On this meet and confer, we requested that you agree to provide the custodians or locations searched, the search terms used, and hit counts, broken down by search term. You agreed that ICE would provide all information about this search that is within the ambit of the Court's order, by the deadline set in the Court's order of January 22, and that to the extent any of the information Plaintiff requested is beyond the scope of the Court's order, you would determine with the agency whether or not to provide it.

<u>Parts 8-9</u>



Plaintiff and ICE had previously reached agreement on the scope of the searches for Parts 8 and 9. On this meet and confer, we requested that you agree to provide the custodians or locations searched, the search terms used, and hit counts, broken down by search term. You agreed that ICE would provide all information about this search that is within the ambit of the Court's order, by the deadline set in the Court's order of January 22, and that to the extent any of the information Plaintiff requested is beyond the scope of the Court's order, you would determine with the agency whether or not to provide it.

Sincerely yours,

Kyle Virgien
Senior Staff Attorney
ACLU National Prison Project

# EXHIBIT P



**Laboni Hoq <lhoq@hoqlaw.com>**

---

## ACLU of Southern California v. U.S. Immigration and Customs Enforcement

---

**Laboni Hoq** <lhoq@hoqlaw.com>                                                    Fri, Jan 5, 2024 at 1:13 PM
To: "Axe, Jason (USACAC)" <Jason.Axe@usdoj.gov>
Cc: Kyle Virgien <kvirgien@aclu.org>, Eunice Cho <echo@aclu.org>, Michael Kaufman <mkaufman@aclusocal.org>,
"Medrano, Alarice (USACAC)" <Alarice.Medrano@usdoj.gov>, "Tursi, Joseph (USACAC)" <Joseph.Tursi@usdoj.gov>

Dear Jason,

Happy New Year. Thank you for bringing these Guidelines to our attention. We respect the spirit of the Guidelines and will make every effort to heed them. That said, nothing in our December 21, 2023 correspondence "violated" the Guidelines, even if they were mandatory.  Our letter reflects our standard practice in this case to ensure both sides remain accountable to oral representations, and to that end it invites you to ensure we have a common understanding of those representations.

While we have no intention of "sending" the letter to the Judge, we will exercise our right to file it with the Court in support of any matter in this case as appropriate. We certainly hope we will not need to do so, and look forward to a cooperative working relationship to ensure prompt and efficient resolution of this case.

Thanks.

On Thu, Dec 21, 2023 at 6:16 PM Axe, Jason (USACAC) <Jason.Axe@usdoj.gov> wrote:

Kyle,


In your December 21st letter, you wrote, "Plaintiff's counsel writes with a summary of our meet and confer with you on December 14, 2023. Please let us know if you disagree with our understanding of the conversation as set out below so that we can address any inconsistencies."


We will not do so.


The Central District of California's Civility and Professionalism Guidelines ("Guidelines") state, in pertinent part:


*We will not write letters for the purpose of ascribing to opposing counsel a position he or she has not taken, or to create "a record" of events that have not occurred. Letters intended only to make a record should be used sparingly and only when thought to be necessary under all of the circumstances. **Unless specifically permitted or invited by the court, letters between counsel should not be sent to judges**.* (emphasis added)


https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines


The portions of your letter that attempt to characterize our discussion do not comply with the Guidelines, and therefore we will not respond to those portions.  To the extent that this letter was drafted so you could send it to the Court, as noted above, doing so would violate the Guidelines.


To the extent that you have raised additional questions in your letter, we will review them with our agency contacts and respond, as we indicated that we would and as we have consistently done.

In the future, we ask that you comply with the Guidelines and refrain from characterizing positions that we have not taken and/or attempting to create "a record" of events that did not occur.  We find such characterizations and accusations to not be productive.

Thank you,

Jason K. Axe

Assistant U.S. Attorney

300 North Los Angeles St., Suite 7516

Los Angeles, CA  90012

(213) 894-8790

(213) 894-7819 (FAX)

---

**From:** Kyle Virgien <kvirgien@aclu.org>
**Sent:** Thursday, December 21, 2023 5:30 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>; Axe, Jason (USACAC) <JAxe@usa.doj.gov>; Medrano, Alarice (USACAC) <AMedrano@usa.doj.gov>
**Cc:** Laboni Hoq <lhoq@hoqlaw.com>; Eunice Cho <echo@aclu.org>; Michael Kaufman <mkaufman@aclusocal.org>
**Subject:** [EXTERNAL] ACLU of Southern California v. U.S. Immigration and Customs Enforcement

Joe, Jason, and Alarice,

Please see the attached letter.

Thank you.

**Kyle Virgien**

Pronouns: he/him

Senior Staff Attorney

National Prison Project

American Civil Liberties Union Foundation

39 Drumm St., San Francisco, CA 94111

310.801.3459 | kvirgien@aclu.org



Hoq Decl. ISO MSJ
Exhibit P
Page 118

| | |
|---|---|
| **From:** | Laboni Hoq |
| **To:** | Axe, Jason (USACAC) |
| **Cc:** | Kyle Virgien; Eunice Cho; Michael Kaufman; Medrano, Alarice (USACAC); Tursi, Joseph (USACAC) |
| **Subject:** | Re: ACLU of Southern California v. U.S. Immigration and Customs Enforcement |
| **Date:** | Friday, January 5, 2024 4:14:13 PM |
| **Attachments:** | image001.png |

**This Message Is From an External Sender**
This message came from outside your organization.

Dear Jason,

Happy New Year. Thank you for bringing these Guidelines to our attention. We respect the spirit of the Guidelines and will make every effort to heed them. That said, nothing in our December 21, 2023 correspondence "violated" the Guidelines, even if they were mandatory. Our letter reflects our standard practice in this case to ensure both sides remain accountable to oral representations, and to that end it invites you to ensure we have a common understanding of those representations.

While we have no intention of "sending" the letter to the Judge, we will exercise our right to file it with the Court in support of any matter in this case as appropriate. We certainly hope we will not need to do so, and look forward to a cooperative working relationship to ensure prompt and efficient resolution of this case.

Thanks.

On Thu, Dec 21, 2023 at 6:16 PM Axe, Jason (USACAC) <Jason.Axe@usdoj.gov> wrote:

> Kyle,
>
> In your December 21st letter, you wrote, "Plaintiff's counsel writes with a summary of our meet and confer with you on December 14, 2023. Please let us know if you disagree with our understanding of the conversation as set out below so that we can address any inconsistencies."
>
> We will not do so.
>
> The Central District of California's Civility and Professionalism Guidelines ("Guidelines") state, in pertinent part:

> *We will not write letters for the purpose of ascribing to opposing counsel a position he or she has not taken, or to create "a record" of events that have not occurred. Letters intended only to make a record should be used sparingly and only when thought to be necessary under all of the circumstances.* ***Unless specifically permitted or invited by the court, letters between counsel should not be sent to judges****.*
> (emphasis added)

https://www.cacd.uscourts.gov/attorneys/admissions/civility-and-professionalism-guidelines

The portions of your letter that attempt to characterize our discussion do not comply with the Guidelines, and therefore we will not respond to those portions.  To the extent that this letter was drafted so you could send it to the Court, as noted above, doing so would violate the Guidelines.

To the extent that you have raised additional questions in your letter, we will review them with our agency contacts and respond, as we indicated that we would and as we have consistently done.

In the future, we ask that you comply with the Guidelines and refrain from characterizing positions that we have not taken and/or attempting to create "a record" of events that did not occur.  We find such characterizations and accusations to not be productive.

Thank you,

Jason K. Axe

Assistant U.S. Attorney

300 North Los Angeles St., Suite 7516

Los Angeles, CA  90012

(213) 894-8790

(213) 894-7819 (FAX)

---

**From:** Kyle Virgien <<u>kvirgien@aclu.org</u>>
**Sent:** Thursday, December 21, 2023 5:30 PM
**To:** Tursi, Joseph (USACAC) <<u>JTursi@usa.doj.gov</u>>; Axe, Jason (USACAC) <<u>JAxe@usa.doj.gov</u>>; Medrano, Alarice (USACAC) <<u>AMedrano@usa.doj.gov</u>>
**Cc:** Laboni Hoq <<u>lhoq@hoqlaw.com</u>>; Eunice Cho <<u>echo@aclu.org</u>>; Michael Kaufman <<u>mkaufman@aclusocal.org</u>>
**Subject:** [EXTERNAL] ACLU of Southern California v. U. S. Immigration and Customs Enforcement

Joe, Jason, and Alarice,

Please see the attached letter.

Thank you.

**Kyle Virgien**

Pronouns: he/him

Senior Staff Attorney

National Prison Project

American Civil Liberties Union Foundation

39 Drumm St., San Francisco, CA 94111

310.801.3459 | <u>kvirgien@aclu.org</u>



# EXHIBIT Q



# United States Department of Justice

## United States Attorney's Office
## Central District of California

*JOSEPH W. TURSI*
*JASON K. AXE*
*Assistant United States Attorney*
*Phone:  (213) 894-3989/8790*
*E-mail:  Joseph.Tursi@usdoj.gov*
*       Jason.Axe@usdoj.gov*

*Federal Building*
*300 N. Los Angeles Street, Suite 7516*
*Los Angeles, California 90012*

January 17, 2024

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

       Re:    ACLU of SoCal v. ICE, et al.
             C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

The following responds to Plaintiff's December 13, 2023 correspondence and the issues raised during the parties' December 14, 2023 telephone conference addressing outstanding issues regarding the search for records responsive to Plaintiff's request.

## I.      DHS-OIG Production

As we have previously advised, OIG's search for and production of responsive records is complete. Any records that were referred will be produced by the agency that created the records, i.e., the agency to which OIG referred the records. That includes the 581 pages referenced on page 182 of OIG's June 2023 production (*see* OIG's July 31, 2023 Second Supplemental Response Letter, identifying 583 pages referred to ICE), and the documents referenced at pages 144-46 of OIG's June 2023 production (*see* OIG's June 29, 2023 First Supplemental Response Letter, identifying 328 pages referred to ICE). The agencies to which records have been referred will review, process, and produce the records, if responsive and subject to applicable FOIA exemptions, in due course. OIG does not exercise any control over other agencies or DHS subcomponents and thus cannot dictate the manner in which the records are produced.

In response to your specific inquiry regarding CRCL and CBP, we have contacted them regarding the pages OIG referred to them (1 to CRCL and 32 to CBP). Upon further review by OIG, however, the records referred to CBP are not responsive to the request. These pages pertain to an individual who died while in ICE's custody. And the record referred to CRCL is also not responsive to Plaintiff's FOIA request. That single page is a response from CRCL to Mr. Gulema thanking him for bringing concerns to their attention, and the FOIA request sought, among other things, any documents "relating to the hospitalization, death, decision to release from custody, or release from custody of…Teka Gulema."

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
January 17, 2024
Page 2

As for the documents identified on page 3 of Plaintiff's correspondence, the records described in the December 2022 production were referred to ICE. With respect to the March 2023 production, the referenced page did not state that the El Paso Field Office conducted approximately five investigations of *out-of-custody* deaths. Rather, the document states that the El Paso Field Office conducted approximately five investigations "into the circumstances surrounding the deaths of migrants…" There was no specification regarding how many of those investigations were in-custody or out-of-custody. With respect to the records from the June 2023 production, the specific email referenced was referred to ICE. As for the referenced "release letter" in that email, OIG did not locate such a letter during its search and defers to ICE regarding its existence.

## II.     ICE Production

In its December 8, 2023 Order [Dkt. 62], the Court required ICE to provide the following information by January 22, 2024: (a) for Parts 1-3, the total number of pages of documents yet to be produced by ICE, disaggregated by individual; (b) for Parts 1-3, the total number of pages of documents yet to be produced regarding Mr. Teka Gulema dated on or after October 1, 2015; and (c) for Parts 4 to 9, a hit count, broken down by Part, for each of the agreed-to searches (if any). *Id.* at 15. ICE will provide that information by January 22nd, pursuant to the Court's order.

As the Court noted, Plaintiff cannot dictate the order in which records are produced and thus ICE will not provide a date by which specific records will be produced. *Id.* at 11.

### A.    Parts 1-3

Thank you for advising that regarding any medical records dated before October 1, 2015 that are attached to the post October 1, 2015 Gulema emails, "ICE may process only the emails and may exclude the attachments at this time." ICE will do so until you advise us otherwise.

As for the "specific document deficiencies" you noted in the letter, as we have previously advised, ICE is reviewing the issues you raised and will address them and produce updated versions of the documents in due course, if it is able to do so.

### B.    Part 4

As communicated previously, ICE used the search terms and connectors described in your December 13, 2023 letter for the emails of Scott Schuchart (Senior Advisor to the ICE Director), Deborah Fleischaker (Assistant Director for Regulatory Affairs and Policy at ICE), and Tae Johnson (former Acting Director of ICE). This yielded 142,000 documents, most of which are unlikely to be responsive.

ICE also tasked ORAP and IHSC with conducting a search for documents responsive to the Part 4 request. ORAP found 16 pages of responsive records by searching ICE's Policy Manual and the ICE Intranet server using the following terms: "hospital, health, release, COVID-

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
January 17, 2024
Page 3

19, accommodation, detainee treatment. ORAP also searched the ORAP Shared drive using the following terms: "hospital, health, release, COVID-19, accommodation, detainee treatment."

As for IHSC, its search is ongoing. So far, it has identified 27 pages as its search continues. The pages found so far were found by searching the Electronic Policy Development System-housed policies using the following terms: "transfer, discharge, covid-19, illness, medical care."

ICE did not use the search terms Plaintiff requested for the searches conducted by ORAP and IHSC because, as noted above, utilizing those search terms in the emails of just three custodians (Schuchart, Fleischaker, and Johnson) yielded over 142,000 documents. Instead, ICE has determined that allowing the expert analysts within ORAP and IHSC to determine themselves what terms and locations are most likely to produce responsive records would be best.

### C. Part 5

As ICE has previously stated, its position at this time is that its search for records responsive to Part 5 of the Request is complete. The records will be processed in due course. After these records have been processed and reviewed, ICE will consider whether additional searches are needed. ICE cannot conclude definitively at this point that further searches may not be necessary until the records identified to date have been processed and reviewed.

### D. Parts 6-9

For Parts 6 and 7, ICE tasked JIOC to conduct a search, but it deferred to ERO because the data points requested do not originate with JIOC. ERO has tasked HSC and Custody Management to conduct searches, which are continuing. They have been tasked with the language of the actual FOIA request because ICE has determined that allowing the expert analysts within ERO to determine themselves what terms and locations are most likely to produce responsive records would be best.

*       *       *

Pursuant to the Court's Orders and our agreements, OIG will provide Plaintiff with its search summary on January 19, 2024, and ICE will provide Plaintiff with further information on January 22, 2024. At this juncture, ICE believes it has sufficient understanding of the records Plaintiff seeks that further telephonic or video conferences, including the one tentatively scheduled for this afternoon, would not be productive. However, if Plaintiff does have further questions or issues, please feel free to raise them in writing.

Ms. Laboni A. Hoq
RE: ACLU of SoCal v. ICE
January 17, 2024
Page 4

Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

cc: Ms. Eunice Cho (by email)
    Mr. Michael Kaufman (by email)
    Mr. Kyle Virgien (by email)