# EXHIBIT R



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*JOSEPH W. TURSI*
*JASON K. AXE*
*Assistant United States Attorney*
*Phone: (213) 894-3989/8790*
*E-mail: Joseph.Tursi@usdoj.gov*
      *Jason.Axe@usdoj.gov*

*Federal Building*
*300 N. Los Angeles Street, Suite 7516*
*Los Angeles, California 90012*

January 19, 2024

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

      Re:    ACLU of SoCal v. ICE, et al.
               C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

      Pursuant to the Court's December 21, 2023 Order [Dkt. 64] and the parties' agreement, enclosed please find Defendant DHS-OIG's search summary. DHS-OIG will provide a *Vaughn* index by February 9, 2024.


Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

Encl.

cc: Ms. Eunice Cho (by email)
   Mr. Michael Kaufman (by email)
   Mr. Kyle Virgien (by email)



# OFFICE OF INSPECTOR GENERAL
## U.S. Department of Homeland Security
Washington, DC 20528 | www.oig.dhs.gov

January 19, 2024

*ACLU Foundation of Southern California v. U.S. Immigration and Customs Enforcement, et al.*, No. 22-cv-04760 (C.D. Cal. filed July 12, 2022); DHS OIG Freedom of Information Act Request No. 2022-IGFO-00158; DHS OIG's Search Summary

*Overview and Background*

Under the Inspector General Act of 1978, as amended[1], the Department of Homeland Security (DHS) Office of Inspector General (OIG) is responsible for conducting and supervising independent and objective audits, inspections, and investigations of programs and operations of DHS. DHS OIG promotes economy, efficiency, and effectiveness within DHS and prevents and detects employee corruption, fraud, waste, and abuse in its programs and operations.

Plaintiff American Civil Liberties Union Foundation of Southern California submitted a Freedom of Information Act (FOIA) request, dated April 29, 2022, by email on May 2, 2022, to the U.S. Immigration and Customs Enforcement (ICE), the DHS OIG, and the DHS Privacy Office. The request specifically sought:

1. Any and all documents, without limitation to date, including any communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals: Teka Gulema; Johana Medina Leon; Jose Ibarra Bucio; and/or Martin Vargas Arellano.

2. Any and all DHS OIG reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OIG reports of investigation.

3. Any and all ICE OPR reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OPR reports of investigation.

4. Any and all documents and communications, including ICE and IHSC directives, policies, procedures, protocols, or trainings that contain guidance, instructions, or standards about the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities. Detainees specified in (a) and (b) above shall

---

[1] 5 U.S.C. App. 3.

   include those being treated for COVID-19 during their hospitalization or treatment at external healthcare providers or facilities.

5. Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Services Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's her System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

6. Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

7. Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or ICE OPR that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

8. Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or

      treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

9. Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charged, or records of payment.

The date range requested for responsive records was January 1, 2016, to the present.

By letter dated May 16, 2022, DHS OIG acknowledged Plaintiff's request. Plaintiff filed the present lawsuit on July 12, 2022. Discussions between DHS OIG and Plaintiff regarding the request occurred before and after the filing of the lawsuit. Searches commenced shortly thereafter.

*Search Conducted*

- Based on the information sought in Plaintiff's FOIA request, and discussions between the parties, OIG searched the Office of Investigations for responsive records. The Office of Investigations conducts investigations into allegations of criminal, civil, and administrative misconduct involving DHS employees, contractors, grantees, and programs. These investigations can result in criminal prosecutions, fines, civil monetary penalties, administrative sanctions, and personnel actions. Additionally, the Office of Investigations provides oversight and monitors the investigative activity of DHS's various internal affairs offices.
    - Specifically in the Office of Investigations, the Enforcement Data System (EDS) was searched. EDS is the official OIG electronic case management system for the Office of Investigations. OIG uses EDS to manage information relating to complaints and investigations of alleged criminal, civil, or administrative violations by DHS employees, contractors, grantees, beneficiaries, and other individuals and entities associated with DHS. OIG uses EDS to manage investigations born from those complaints to facilitate the tracking of the investigations' process.
    - In addition to EDS, if a complaint that was responsive to Plaintiff's FOIA request was investigated by DHS OIG, a search of the appropriate OIG Office of Investigations Field Office was conducted to ensure any additional, responsive records were obtained.
- **For subpart 1 of the request**:
    - The names of the four individuals, Teka Gulema, Johana Medina Leon aka Jonathan Medina Leon, Jose Ibarra Bucio, and Martin Vargas Arellano, were searched in the Narrative field as well as in the Complainant/Subject fields of EDS.
        - The A Number for Martin Vargas Arellano, as requested and provided by Plaintiff, was also searched.

3

- Because an investigation pertaining to two of the individuals was conducted – Teka Gulema and Jonathan Alberto Medina-Leon – additional searches in the appropriate Office of Investigations Field Offices were completed, as detailed below.
    - Additional Search for Teka Gulema
        - DHS OIG OCIO E-mail Search of the case agent for Teka Gulema's investigation (Special Agent in the Atlanta Field Office)
            - Date range of search: January 1, 2016 to December 31, 2018[2]
            - Search Terms:
                - "I16-ICE-ATL-17063[3]" AND "Teka Gulema"
                - "17063" AND "Teka Gulema"
                - "I16-ICE-ATL-17063" AND "Teka"
                - "I16-ICE-ATL-17063" AND "Gulema"
    - Additional Searches for Jonathan Alberto Medina-Leon
        - DHS OIG OCIO E-mail Search of the case agent for Jonathan Medina-Leon's investigation (Special Agent in the El Paso Field Office)
            - Date range of search: June 1, 2019 to September 30, 2020[4]
            - Search Terms:
                - "I19-ICE ERO-ELP-16066[5]" AND "Jonathan Alberto Medina-Leon"
                - "16066" AND "Jonathan Alberto Medina-Leon"
                - "I19-ICE ERO-ELP-16066" AND "Johana Alberto Medina-Leon"
        - Custodian Search – Special Agent in the El Paso Field Office
            - Custodian searched their e-mails and their network drive for records responsive to the investigation pertaining to Jonathan Alberto Medina-Leon, I19-ICE ERO-ELP-16066
            - Search Term:

---

[2] This date range encompasses the initiation and conclusion of Teka Gulema's investigation.

[3] This is the case number associated with Teka Gulema's investigation.

[4] This date range encompasses the initiation and conclusion of Jonathan Alberto Medina-Leon's investigation.

[5] This is the case number associated with Jonathan Alberto Medina-Leon's investigation.

4

- I19-ERO-ELP-16066
- Custodian Search – Special Agent-in-Charge in the El Paso Field Office
    - Custodian searched their e-mails and their network drive for records responsive to the investigation pertaining to Jonathan Alberto Medina-Leon, I19-ICE ERO-ELP-16066
    - Search Terms:
        - I19-ERO-ELP-16066
        - 16066
        - Search by individual's full name
        - Search by individual's last name
    - For the network drive search, an electronic folder for the investigation was maintained and searched.
- **For the remaining subparts of the request that were under OIG's purview**:
    - A search of the Office of Investigations was conducted, and specifically, a search of EDS was conducted.
        - Date range searched in EDS: January 1, 2016 to present (search was initiated on September 1, 2022, which is the search cutoff date. Thus, the timeframe was January 1, 2016 to September 1, 2022)
        - Search terms used in EDS:
            - "**detainee**" and one of the following terms:
                - "death" or "died" or "hospitalized" or "hospital" or "emergency room" or "emergency services" or "poor outcome" or "life support" or "coma" or "unconscious" or "ventilator" or "intensive care" or "hospice" or "palliative" or "fatal"
            - "**custody**" and one of the following terms:
                - "death" or "died" or "hospitalized" or "hospital" or "emergency room" or "emergency services" or "poor outcome" or "life support" or "coma" or "unconscious" or "ventilator" or "intensive care" or "hospice" or "palliative" or "fatal"
            - "**detainee**" and "**release**" and one of the following terms:
                - "medical" or "surgery" or "specialist" or "doctor"
            - "**custody**" and "**release**" and one of the following terms:
                - "medical" or "surgery" or "specialist" or "doctor"
            - "**detainee**" and "**transfer**" and one of the following terms:
                - "medical" or "surgery" or "specialist" or "doctor"
            - "**custody**" and "**transfer**" and one of the following terms:
                - "medical" or "surgery" or "specialist" or "doctor"
            - "**detainee**" and "**parole**" and one of the following terms:

5

Hoq Decl. ISO MSJ
Exhibit R
Page 134

- o "medical" or "surgery" or "specialist" or "doctor"
- **"custody"** <u>and</u> **"parole"** and one of the following terms:
  - o "medical" or "surgery" or "specialist" or "doctor"
- **"detainee"** <u>and</u> **"alternative detention"** and one of the following terms:
  - o "medical" or "surgery" or "specialist" or "doctor"
- **"custody"** <u>and</u> **"alternative detention"** and one of the following terms:
  - o "medical" or "surgery" or "specialist" or "doctor"

*Records Located*

Based on the above searches, a total of 7,402 pages of records were located[6]. Of those 7,402 pages, 957 pages were initially determined to be responsive and produced to the Plaintiff; 2,985 pages were not responsive to the request[7]; 1,589 pages were duplicates; and 1,871 pages were referred to another component(s) for processing.

Regarding the records that were produced to Plaintiff, a line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. Based on this review, DHS OIG released all reasonably segregable portions of records responsive to Plaintiff's request.

---

[6] Typically for requests that do not seek a specific investigation or complaint by name or case number, the Office of Investigations will run a search in EDS using specific parameters to pull all complaints, investigations, and/or referrals that may be related to the specific topic of the FOIA request in the format of an Excel spreadsheet. Once the Office of Investigations has compiled the list of potentially responsive complaints, investigation, and/or referrals, the spreadsheet is forwarded to the FOIA unit. The FOIA unit will then further review the spreadsheet to determine what records are responsive to the FOIA request and request that the Office of Investigations pull those specific records for processing and production. For the present case, to ensure a comprehensive review was conducted, all complaints, investigations, and/or referrals and any associated attachments that were initially located based on the search parameters were pulled and provided to the FOIA unit for review and processing.

[7] Pursuant to continuous reviews of this request throughout the litigation, it was determined that there was a total of 197 pages of records that were initially considered responsive and processed and produced to Plaintiff in November 2022 and December 2022. These pages, however, should have been marked as "not responsive." Thus, the total number of responsive pages should be 760, and the total number of non-responsive pages should be 3,182.

Specifically, in the November 2022 production, PDF pages 1-14 pertained to an individual who died while *in* ICE custody; PDF pages 52-107 pertained to an individual who died while *in* ICE custody; and PDF pages 108-121 pertained to an investigation into a retired employee with a mere reference to an ***in-custody*** death of a detainee.

In the December 2022 production, PDF pages 1-3 and 14-35 pertained to an individual who died while ***in*** ICE custody; PDF pages 8-10 and 107-170 pertained to an individual who died while ***in*** ICE custody; and PDF pages 11-13 and 171-188 pertained to an investigation into a retired employee with a mere reference to an ***in-custody*** death of a detainee.

6

Hoq Decl. ISO MSJ
Exhibit R
Page 135

If you have any questions, please contact Assistant United States Attorneys Jason Axe at Jason.Axe@usdoj.gov or Joseph Tursi at Joseph.Tursi@usdoj.gov.

7