# EXHIBIT Y



# United States Department of Justice

## United States Attorney's Office
## Central District of California

*JOSEPH W. TURSI*
*JASON K. AXE*
*Assistant United States Attorney*
*Phone: (213) 894-3989/8790*
*E-mail: Joseph.Tursi@usdoj.gov*
*Jason.Axe@usdoj.gov*

*Federal Building*
*300 N. Los Angeles Street, Suite 7516*
*Los Angeles, California 90012*

February 9, 2024

**VIA E-MAIL**

Laboni A. Hoq
Hoq Law, APC
P.O. Box 753
South Pasadena, CA 91030

Re:     ACLU of SoCal v. ICE, et al.
        C.D.CA Case No. 2:22-cv-04760-SHK

Dear Ms. Hoq:

Pursuant to the Court's December 21, 2023 Order [Dkt. 64] and the parties' agreement, enclosed please find Defendant DHS-OIG's *Vaughn* index.


Respectfully,

E. MARTIN ESTRADA
United States Attorney

/s/ *Joseph W. Tursi*

JOSEPH W. TURSI
Assistant United States Attorney

Encl.

cc: Ms. Eunice Cho (by email)
    Mr. Michael Kaufman (by email)
    Mr. Kyle Virgien (by email)

*American Civil Liberties Union Foundation of Southern California v. U.S. Immigration and Customs Enforcement, et al.*
Case No. 2:22-cv-04760-SHK

Department of Homeland Security, Office of Inspector General *Vaughn* Index

Hoq Decl. ISO MSJ
Exhibit Y
Page 174

1

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>        Plaintiff,<br><br>        v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>        Defendants. | Civil Action No. 2:22-cv-04760-SHK |

**DHS OIG Summary *Vaughn* Index**

This *Vaughn* Index describes DHS OIG's records produced in November 2022, December 2022, March 2023, June 2023, and July 2023, subject to the Freedom of Information Act ("FOIA") exemptions described more fully below, in FOIA case no. 2022-IGFO-00158.  This *Vaughn* Index is being provided in response to Plaintiff's challenges to certain DHS OIG withholdings, as identified in Plaintiff's December 8, 2023 correspondence, and provides the basis under which information has been withheld. This *Vaughn* Index is produced pursuant to the Court's December 21, 2023 Order. (Dkt. 64.)

Information that is being challenged by Plaintiff was withheld pursuant to four FOIA exemptions, 5 U.S.C. §552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).[1]

---

[1] Notwithstanding the markings made on the records that were previously produced, DHS OIG is no longer applying (b)(3) to the redactions made on the following pages. The application of any other exemptions included remains:
  1. November 2022 production, pages released in part - 23, 24, 28
  2. December 2022 production, pages released in part - 40, 42, 44, 67, 68, 75, 99
  3. June 2023 production:
      a. Pages released in part: 1, 118, 151, 157
      b. Pages withheld in full: 6, 8, 10, 19, 21, 23, 32, 34, 36, 42, 44, 46, 55, 57, 59, 66, 68, 70, 79, 81, and 83
  4. July 2023 production, pages withheld in full: 21, 34, 53, 66, 81, 111, 155, 170, 196, 198, 200, 215, 217, 219, 264, 265, and 267

Hoq Decl. ISO MSJ
Exhibit Y
Page 175

2

**EXEMPTION SUMMARIES AND EXPLANATIONS**[2] [3]

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|---|
| (1) | November 2022: <br><br> 15, 16, 20, 23, 24, 25, 26, 28, 29, 33, 41, 50 <br><br><br> December 2022: <br><br> 38, 39, 40, 41, 42, 43, 44, 45, 51, 55, 56, 67, 68, 70, 71, 75, 76, 84, 95, 96, 97 <br><br><br> June 2023: <br><br> 1, 96, 157, 164, 169, 171 | Partial | Redactions: These pages include those from DHS OIG's Reports of Investigation (ROIs), e-mails, and case summary reports. The information specifically withheld from these pages include the names of DHS OIG's witnesses and third parties mentioned or involved in the DHS OIG investigation or complaint/case summary report. The withheld information also includes the Alien Numbers (A Numbers) of the subjects of the complaints and/or ROIs. This information was withheld under FOIA Exemptions 6 and 7(C). <br><br> Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of individuals. <br><br> Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the names of DHS OIG witnesses, complainants, and other third parties, as well as the A Numbers of the subjects that were mentioned, involved, or the subject of a law enforcement investigation or complaint submitted to or conducted by DHS OIG. <br><br> Under (b)(6), DHS OIG determined that the disclosure of the names of third-party individuals, specifically DHS OIG's witnesses, complainants, other third parties, and the subject of investigations or complaints, would constitute a clearly unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity, and (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion. The disclosure of this information serves no public benefit and does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing. Moreover, none of the individuals named in these records have consented to the disclosure of their personal | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

---

[2] Please note that Plaintiff requested DHS OIG to *Vaughn* page 116 of the March 2023 production; however, there are no redactions on page 116. *See* Plaintiff's Dec. 8, 2023 correspondence at 2; *see also* March 2023 production at 116. Thus, there is no entry for that page.

[3] Please note that Plaintiff requested DHS OIG to *Vaughn* page 182 of the June 2023 production; however, there are no redactions on page 182. *See* Plaintiff's Dec. 8, 2023 correspondence at 2; *see also* June 2023 production at 182. Thus, there is no entry for that page.

Hoq Decl. ISO MSJ
Exhibit Y
Page 176

3

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | information. Further, as mentioned, DHS OIG compiled these records which included the names of these individuals for law enforcement purposes, i.e., the information was compiled within a DHS OIG report and/or DHS OIG e-mail discussing a law enforcement investigation that was conducted and completed. Under the FOIA, (b)(7)(C) provides protection of these individuals' privacy interests if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." DHS OIG's witnesses and complainants often provide sensitive information, including the names of other third parties, which may subject all of them to retaliation, harassment, and/or embarrassment if revealed. Also, based on the nature of the allegations involved, their involvement may result in harm to their personal and professional reputation. Sharing of this information may potentially place the complainants and/or witnesses in jeopardy of retaliation and has a chilling effect on candid disclosures to law enforcement personnel, which would hinder DHS OIG's ability to conduct future investigations, as OIG investigative personnel rely on truthful information provided by witnesses and complainants.

In accordance with the purpose of (b)(6) and (b)(7)(C), the disclosure of this personal information serves no public benefit, meaning the disclosure of this information would provide little to no understanding of how DHS OIG carries out its mission. The names, A Numbers, or other personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The personal privacy information is merely the names and other identifying information of witnesses and third parties, and the non-disclosure of this information outweighs any public interest in how the government is performing its statutory duties.  Also, and again, none of the individuals named in these records, nor the decedent's kin, have consented to the disclosure of their personal information.

Additionally, under the Inspector General Act of 1978, DHS OIG has a statutory obligation to protect a complainant's or witness's identity, which factored into DHS OIG's asserting Exemption 6 and Exemption 7(C) to protect the substantial privacy interest of DHS employees and third parties named in these records.

Lastly, regarding the A Numbers protected in these records, as already established, this information is personal privacy information, and these records were compiled for a law enforcement purpose, thus, both Exemptions 6 and 7(C) were applied. Although the A Numbers in these records pertain to individuals that are deceased, that does not mean their privacy interests are completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's A Number may be used to obtain the entire immigration history of a non-citizen. This means that any and everything associated with this A Number, to | |

Hoq Decl. ISO MSJ
Exhibit Y
Page 177

4

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | include the identities and activities of family members who have not provided their consent to disclosure of their information, could be disclosed. Also, releasing this number could potentially perpetuate fraud in the context of a bad actor attempting to obtain immigration benefits by false measures. Consequently, there is no public interest identified that is significant to override the substantial privacy interest established. Therefore, DHS OIG determined that the A numbers must be protected. | |
| (2) | November 2022: 15, 16, 20, 23, 24, 25, 26, 28, 29, 33, 37, 45, 50 December 2022: 37, 55, 56, 67, 68, 70, 75, 84, 92, 95, 99 March 2023: 4, 5, 37, 47 June 2023: 1, 157, 164, 171 July 2023: 3, 203 | Partial | Redactions: These pages contain witness interview documents, specifically Memorandum of Activities, pages from DHS OIG's Report of Investigation (ROI), case progress documentation, and e-mails all of which consist of the names of lower-level DHS OIG investigative and law enforcement personnel, their direct telephone numbers, email addresses, and signatures, which could reasonably be expected to identify law enforcement personnel. These pages also include the name of DHS Immigration and Customs Enforcement (ICE) law enforcement personnel which could reasonably be expected to identify them. This information is considered Personally Identifiable Information (PII) of federal employees and was withheld under FOIA Exemptions 6 and 7(C). Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of individuals. Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the names of lower-level DHS OIG investigative and law enforcement personnel, their direct telephone numbers, email addresses, and signatures, and the name of lower-level DHS Immigration and Customs Enforcement (ICE) law enforcement personnel. Under (b)(6), DHS OIG determined that the disclosure of the names of lower-level DHS-OIG and DHS ICE employees and any other information that could reasonably be expected to identify those individuals, would constitute a clearly unwarranted invasion of these individuals' personal privacy interests. Moreover, DHS OIG compiled the names and other identifying information of these individuals for law enforcement purposes, i.e., the information was compiled within a DHS OIG report and/or DHS OIG e-mails discussing a law enforcement investigation that was conducted and completed. Because of this, (b)(7)(C) was also applied, and DHS OIG determined that disclosure of these individuals' privacy | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 178

5

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | interests "could reasonably be expected to constitute an unwarranted invasion of personal privacy." <br><br> The nature of DHS OIG's work, which is coordinated with DHS ICE law enforcement personnel for some investigations, is often sensitive and contentious which may subject DHS OIG's and DHS ICE's investigative personnel and law enforcement officers to harassment if their identity or other PII is disclosed. Further, the disclosure of the names and contact information of these individuals could reasonably be expected to constitute an unwarranted invasion of personal privacy by: (1) conceivably subjecting OIG and ICE Investigative personnel and law enforcement officers to both harassment and annoyance in conducting their official duties and in their private lives; (2) potentially placing them in danger as law enforcement personnel involved with law enforcement investigations; and (3) possibly minimizing their ability to effectively conduct future investigations if their identities are known, and their ability to conduct their work is diminished because of unwarranted and unwanted interference. Thus, the foreseeable harm to disclosing this information is significant. Further, the disclosure of this PII serves no public interest and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. These names do not inform the public about the investigatory activities of DHS OIG, nor do these names and other identifying information explain audit, inspection, or evaluation activities conducted by DHS OIG. The protected information in this instance is strictly limited to the identity and other identifying information of DHS personnel. As a result, the privacy interest in this information outweighs any minimal public interest that could possibly exist in the disclosure of this information. Moreover, none of the individuals named in these records have consented to the disclosure of their personal information. | |
| (3) | November 2022: <br><br> 15, 16, 33 <br><br><br> December 2022: <br><br> 39, 55, 56 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Jonathan Medina-Leon, which includes the sensitive health diagnosis and private, personal activities of the subject (November 2022 production: last paragraph on page 15, first sentence on page 16, last paragraph on page 16, third and fifth paragraphs on page 33. December 2022 production: second, third, and fifth paragraphs on page 39; last paragraph on page 55; first, second, and fourth paragraphs on page 56). This information was withheld under FOIA Exemptions 6 and 7(C). <br><br> Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ<br>Exhibit Y<br>Page 179

6

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the intimate, private details of the subject of a DHS OIG law enforcement investigation.<br><br>Under (b)(6), DHS OIG determined that the disclosure of this sensitive, personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and details regarding private matters of the decedent. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information, including the sensitive health information, was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and details regarding their private activities outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |

Hoq Decl. ISO MSJ
Exhibit Y
Page 180

7

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| (4) | November 2022: <br><br> 20 <br><br><br> December 2022: <br><br> 40, 95, 96 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes a specific, sensitive medical test offered to the subject of the ROI, Jonathan Medina-Leon (November 2022 production: second paragraph on page 20; last sentence on page 20; December 2022 production: second paragraph on page 40; last paragraph on page 95; eighth paragraph on page 96), and medical history of subject (November 2022: third paragraph on page 20). This information was withheld under FOIA Exemptions 6 and 7(C). <br><br> Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI. <br><br> Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the specific, sensitive medical test given to the subject of a law enforcement investigation by DHS OIG. <br><br> Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal a specific, sensitive medical test offered to the subject of the ROI, Jonathan Medina-Leon. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

| _Vaughn_ Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | remains a substantial privacy interest that must be balanced against the public interest. Details identifying a specific, sensitive medical test which correlates to the subject's sensitive medical history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of this sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |
| (5) | November 2022: 23, 24, 28 December 2022: 40, 42, 44, 67, 68, 75, 99 June 2023: 1 | Partial | Redactions: These pages include an e-mail, a case summary report, and pages from DHS OIG's Report of Investigation (ROI) all pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy immigration information relating to the subject of the e-mail, case summary report, and ROI – Jonathan Medina-Leon. This information was withheld under FOIA Exemptions 6 and 7(C). Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI. Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information requested.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected information that is inherently private and personal to the subject of a DHS OIG investigation. Under (b)(6), DHS OIG determined that the disclosure of the privacy information of the decedent would constitute a clearly unwarranted invasion of this individual's personal privacy interests in being free from harassment, intimidation, legal consequences, | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 182

9

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | embarrassment, physical harm, and derogatory inferences and suspicion.  The disclosure of this information would serve no public benefit and would not inform the public how DHS OIG is executing its statutory responsibilities. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information was compiled in a DHS OIG report that stemmed from a law enforcement investigation. Under the FOIA, (b)(7)(C) provides protection for law enforcement information that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. Personal privacy details pertaining to the subject's life and immigration history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of this sensitive information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Moreover, pursuant to (b)(6) and (b)(7)(C), these portions of the records are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure. | |
| (6) | June 2023:

118, 151, 157 | Partial | Redactions: These pages include an e-mail, a case summary report, and those from DHS OIG's Report of Investigation (ROI) all pertaining to the death of Teka Gulema. The information specifically withheld from these pages includes personal privacy immigration information relating to the subject of the ROI, Teka Gulema.  This information was withheld under FOIA Exemptions 6 and 7(C).

Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 183

10

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information requested. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected information that is inherently private and personal to the subject of a DHS OIG investigation.<br><br>Under (b)(6), DHS OIG determined that the disclosure of the privacy information of the decedent would constitute a clearly unwarranted invasion of this individual's personal privacy interests in being free from harassment, intimidation, legal consequences, embarrassment, physical harm, and derogatory inferences and suspicion.  The disclosure of this information would serve no public benefit and would not inform the public how DHS OIG is executing its statutory responsibilities. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information was compiled in a DHS OIG report that stemmed from a law enforcement investigation. Under the FOIA, (b)(7)(C) provides protection for law enforcement information that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. Personal privacy details pertaining to the subject's life and immigration history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of this sensitive information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the | |

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. Moreover, pursuant to (b)(6) and (b)(7)(C), these portions of the records are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure. | |
| (7) | November 2022: 25, 26, 29, 37, 41, 50 December 2022: 37, 38, 41, 44, 51, 70, 71, 76, 97, 99 March 2023: 37, 47 June 2023: 1 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Jonathan Medina-Leon, which includes the sensitive health diagnosis and a specific, sensitive medical test given to the subject of the ROI, Jonathan Medina-Leon (November 2022 production: third and fourth paragraph on page 25; first paragraph on page 26. December production: first paragraph on page 37; first paragraph on page 38; second and third paragraph on page 41; third and fourth paragraph on page 44; last paragraph on page 51; third and fourth paragraph on page 70; first paragraph on page 71; second paragraph on page 76; last two paragraphs on page 99; March production: third paragraph on page 37; third paragraph on page 47; June production: paragraph in the first e-mail). This information was withheld under FOIA Exemptions 6 and 7(C). Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI. Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the specific, sensitive medical test given to the subject of a law enforcement investigation by DHS OIG. Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and a specific, sensitive medical test offered to the subject of the ROI, Jonathan Medina- | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 185

12

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | Leon. Further, as mentioned, DHS OIG compiled the names of these individuals for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and details identifying a specific, sensitive medical test which correlates to the subject's sensitive medical history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |
| (8) | November 2022:\n\n38\n\nDecember 2022:\n\n93 | Partial | Redactions: These pages include the Death Certificate for the subject of a DHS OIG investigation, Jonathan Medina-Leon. The information specifically withheld from these pages includes the names, signature, and professional license numbers of third parties, and the date of birth of the deceased, Jonathan Medina-Leon. This information was withheld under FOIA Exemptions 6 and 7(C).\n\nExplanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of individuals. | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 186

13

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the names, signature, and professional license number of third parties that were located on the death certificate and the date of birth and sensitive health diagnosis of the subject of the ROI that was also located on the death certificate.

Under (b)(6), DHS OIG determined that the disclosure of the names, signature, and professional license number of third-party individuals found on the death certificate would constitute a clearly unwarranted invasion of these individuals' personal privacy interests in: (1) not being associated unwarrantedly with alleged criminal activity, and (2) being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion. The disclosure of this information serves no public benefit and does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing. Moreover, none of the individuals named in these records have consented to the disclosure of their personal information. Further, as mentioned, DHS OIG compiled the names of these individuals for law enforcement purposes, i.e., the information was compiled within a DHS OIG report that investigated the death of the subject of the report. Under the FOIA, (b)(7)(C) provides protection of these individuals' privacy interests if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Similar to (b)(6), disclosure of the names of these third parties could reasonably be expected to constitute an unwarranted invasion of personal privacy in being free from undue public attention and harassment for simply having their names on the death certificate of a subject of a DHS OIG investigation. As part of the investigatory process, DHS OIG gathers various types of evidence to support its work, to include death certificates when necessary. The individuals on the death certificate are not associated with the investigation, and release would not shed light on the agency's activities.

In accordance with the purpose of (b)(6) and (b)(7)(C), the disclosure of this personal information serves no public benefit, meaning the disclosure of this information would provide little to no understanding of how DHS OIG carries out its mission. The third-party personal information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The personal privacy information is merely the names, signature, and professional license numbers of third parties, and the non-disclosure of this information outweighs any public interest in how the government is performing its statutory duties. Also, and again, | |

Hoq Decl. ISO MSJ
Exhibit Y
Page 187

14

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | none of the individuals named in these records have consented to the disclosure of their personal information.<br><br>Lastly, regarding the date of birth protected in this record, which, as already established, is a personal privacy interest, the record was compiled for a law enforcement purpose, so, both Exemptions 6 and 7(C) were applied. Although the date of birth in this record pertains to an individual that is deceased, that does not mean their privacy interests are completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's date of birth could potentially perpetuate fraud in the context of a bad actor attempting to obtain immigration benefits or non-immigration benefits by false measures. Consequently, there is no public interest identified that is significant to override the substantial privacy interest established.  Therefore, DHS OIG determined that the date of birth must be protected. | |
| (9) | November 2022:<br><br>45 | Partial | Redactions: This page contains an internal investigative checklist used by the Office of Investigations' (INV) to assist with closing an open investigation. This information was withheld under FOIA Exemption 7(E).<br><br>Explanation: Exemption (7)(E) exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."<br><br>This internal, investigative checklist presents step-by-step actions that must be taken and confirmed by a Case Agent when closing an open law enforcement investigation. Disclosure of this checklist would reveal internal procedures for law enforcement investigations. The specific actions that are taken during each investigation is not well-known to the public; it is a technique specific to DHS OIG INV. | Freedom of Information Act, 5 U.S.C. § 552(b)(7)(E) |
| (10) | November 2022:<br><br>38<br><br>December 2022:<br><br>43, 45, 92, 93 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon and the Death Certificate of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Jonathan Medina-Leon, which includes the sensitive health diagnosis and the sensitive contributing health factor for the death of the subject (for November production: redaction in the "cause of death" section of the death certificate; for December production: first, fourth, and fifth paragraphs on page 43; fourth and fifth bullet points on page 45; first paragraph on page 92, and redaction in the "cause of death" section of the death certificate). This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ<br>Exhibit Y<br>Page 188

15

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the sensitive contributing health factor for the death of the subject of a law enforcement investigation by DHS OIG.<br><br>Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and the sensitive contributing health factor for the death of the decedent. Further, as mentioned, DHS OIG compiled these records for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and sensitive contributing health factors to their death outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the | |

Hoq Decl. ISO MSJ
Exhibit Y
Page 189

16

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |
| (11) | December 2022: 84 | Partial | Redactions: This page from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from this page includes sensitive medical history and the sensitive health diagnosis of the subject of the ROI, Jonathan Medina-Leon (third and fifth paragraph on page 84). This information was withheld under FOIA Exemptions 6 and 7(C).

Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.

Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and history of the subject of a law enforcement investigation by DHS OIG.

Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and the sensitive the sensitive medical history of the decedent. Further, as mentioned, DHS OIG compiled the names of these individuals for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 190

17

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and sensitive medical diagnosis outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |
| (12) | March 2023: 4 | Partial | Redactions: This page contains an internal investigative checklist used by the Office of Investigations' (INV) to assist with closing an open investigation. This information was withheld under FOIA Exemption 7(E).<br><br>Explanation: Exemption (7)(E) exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."<br><br>This internal, investigative checklist presents step-by-step actions that must be taken and confirmed by a Case Agent when closing an open law enforcement investigation. Disclosure of this checklist would reveal internal procedures for law enforcement investigations since the specific actions that are taken during each investigation is not well-known to the public and is a technique specific to DHS OIG INV. | Freedom of Information Act, 5 U.S.C. § 552(b)(7)(E) |
| (13) | March 2023: 5 | Partial | Redactions: This page contains an internal investigative plan used by the Office of Investigations' (INV) to assist with a law enforcement investigation. This information was withheld under FOIA Exemption 7(E).<br><br>Explanation: Exemption (7)(E) exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."<br><br>This internal, investigative plan presents a number of investigative actions and anticipated completion dates for these actions that must be taken and confirmed by a Case Agent when | Freedom of Information Act, 5 U.S.C. § 552(b)(7)(E) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 191

18

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | conducting a law enforcement investigation. Disclosure of investigative actions would reveal internal procedures for law enforcement investigations since the specific steps that are taken during each investigation is not common knowledge among the public and is a technique specific to DHS OIG INV. | |
| (14) | March 2023: 49 | Partial | Redactions: This page reflects a Q&A between DHS OIG and a potential media outlet or other third-party organization pertaining to Jonathan Medina-Leon, the subject of an OIG ROI. The information specifically withheld from this page includes the sensitive health or medical diagnosis of the subject as well as a reference to sensitive health or medical diagnoses that directly relates to the subject. This information was withheld under FOIA Exemptions 6 and 7(C). | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |
| | | | Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI. | |
| | | | Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis as well as a reference to sensitive health or medical diagnoses that directly relates to the subject of a law enforcement investigation by DHS OIG. | |
| | | | Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health or medical diagnosis of the decedent. Further, as mentioned, DHS OIG compiled the names of these individuals for law enforcement purposes, i.e., the information was compiled within a Q&A that relates and stems from the law enforcement investigation into Jonathan Medina-Leon's death. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related | |

Hoq Decl. ISO MSJ
Exhibit Y
Page 192

19

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive health or medical diagnosis and references thereto outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |
| (15) | June 2023: 1 | Partial | Redactions: This page contains a non-public Office of Investigations' (INV) e-mail address that is associated with INV's investigative records system of records, the Enforcement Data System (EDS). This information was withheld under FOIA Exemption 7(E). Explanation: Exemption (7)(E) exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Disclosure of this internal, non-public law enforcement email address could disclose techniques and procedures used by law enforcement officers for DHS OIG law enforcement investigations. As mentioned, this e-mail address is not known to the public, therefore knowing to and from whom law enforcement officers can receive and/or send updates about an investigation could be compromised. This would permit third parties to inundate this email address and require law enforcement officers who have access and/or manage the inbox to sift through potential junk mail, misdirected correspondence, etc., which severely and negatively impacts time spent on investigatory matters. Moreover, disclosure of this e-mail address could risk circumvention of the law as bad actors who are currently or previously under investigation could manipulate, hack, or misuse this e-mail address to improperly change the initiation, processing, or updates of an on-going, completed, or future investigation. Such an action increases security risks, which would require new, technical enhancements to be continuously made while DHS OIG law enforcement investigations and missions are hindered. | Freedom of Information Act, 5 U.S.C. § 552(b)(7)(E) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 193

20

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| (16) | <u>June 2023</u>:<br><br>96 | Partial | Redactions: This page is from a DHS OIG Case Summary Report pertaining to the sensitive medical history and sensitive health diagnosis of the subject of the complaint, Martin Vargas Arellano. This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and history of the subject of a law enforcement complaint by DHS OIG.<br><br>Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Martin Vargas Arellano would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and the sensitive medical history of the decedent. Further, as mentioned, DHS OIG compiled the names of these individuals for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and sensitive health/medical diagnosis outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Hoq Decl. ISO MSJ<br>Exhibit Y<br>Page 194

21

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of the records and does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the complaint received by the agency and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests. | |
| (17) | July 2023: 3 | Partial | Redactions: This page contains an internal, deliberative discussion within an e-mail communication between DHS OIG employees. This communication relates to the draft ROI on Teka Gulema's death and discloses recommended language to be included in one of the paragraphs in the draft ROI. This information was withheld under FOIA Exemption 5.<br><br>Explanation: Exemption 5 allows for the withholding of information that is deliberative, draft and pre-decisional, attorney work product, and protected attorney-client privilege.  The information contained within these pages falls within the deliberative process privilege.<br><br>When considering the foreseeable harm in the release of internal, pre-decisional communications between the case agent and supervisor, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically between a subordinate employee and their supervisor. If employees are aware that their internal communications, pre-decisional thoughts, and recommended language or edits for a draft document may be released to the public, it will reduce the exchange of ideas, prevent employees from discussing edits openly, and reducing trust in the deliberative process that is necessary to ensure final products are accurate. This negative impact will hamper the agency's ability to efficiently and effectively formulate investigative techniques and strategies for drafting investigative reports. It would further lead to erroneous information being disseminated to the public as drafts are continuously updated until finalized, thus the public would feel a sense of confusion when what they are reading and comprehending is different than what was ultimately determined by the agency. | Freedom of Information Act, 5 U.S.C. § 552(b)(5) |
| (18) | July 2023: 203 | Partial | Redactions: This page contains an internal, deliberative discussion within an e-mail communication between DHS OIG employees. This communication relates to the draft ROI on Jonathan Alberto Medina-Leon's death and discloses an internal discussion recommending edits and changes to the synopsis of the ROI. This information was withheld under FOIA Exemption 5.<br><br>Explanation: Exemption 5 allows for the withholding of information that is deliberative, draft and pre-decisional, attorney work product, and protected attorney-client privilege.  The information contained within these pages falls within the deliberative process privilege. | Freedom of Information Act, 5 U.S.C. § 552(b)(5) |

Hoq Decl. ISO MSJ
Exhibit Y
Page 195

22

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | When considering the foreseeable harm in the release of internal, pre-decisional communications between the case agent and supervisor, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically between a subordinate employee and their supervisor. If employees are aware that their internal communications, pre-decisional thoughts, and recommended language or edits for a draft document may be released to the public, it will reduce the exchange of ideas, prevent employees from discussing edits openly, and reducing trust in the deliberative process that is necessary to ensure final products are accurate. This negative impact will hamper the agency's ability to efficiently and effectively formulate techniques and strategies for drafting investigative reports. It would further lead to erroneous information being disseminated to the public as drafts are continuously updated until finalized, thus the public would feel a sense of confusion when what they are reading and comprehending is different than what was ultimately determined by the agency. | |
| (19) | July 2023: <br><br> 54, 55, 67, 68, 82, 83, 110, 166, 171, 172, 182, 183 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Teka Gulema. The information specifically withheld from these pages includes law enforcement sensitive identifying numbers. This information was withheld under FOIA Exemption 7(E).[4] <br><br> Explanation: Exemption (7)(E) exempts from disclosure law enforcement records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." <br><br> Disclosure of these internal, non-public law enforcement sensitive identifying numbers could reasonably be expected to risk circumvention of the law. As mentioned, these numbers are not known to the public; they are used by DHS ICE or other federal law enforcement agencies to assist with conducting a law enforcement investigation. Disclosure could assist bad actors with attempting to gain access and information about a particular law enforcement case or investigation which could lead to manipulating facts about the case, recommendations, etc. Such disclosure also could increase security risks as it could be possible this number would be used to gain access to a law enforcement system. This would require new, technical enhancements to be continuously made while law enforcement investigations and missions are hindered. | Freedom of Information Act, 5 U.S.C. § 552(b)(7)(E) |

---

[4] Please note all of these pages are withheld in full pursuant to (b)(5), as further explained below. The (b)(7)(E) withholdings, however, are not applied to the pages in full. Thus, they are being addressed here. It should be noted that Plaintiff did not challenge these (b)(7)(E) redactions in the final ROI that was released; however, because the draft pages were challenged, DHS OIG was required to account for every redaction that was applied.

Hoq Decl. ISO MSJ
Exhibit Y
Page 196

23

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| (20) | <u>March 2023</u>:<br><br>10-36, 38-46, 50-87, 89-93, 95-98, 100-101, 104-105, 110, 112, 114-116, 118, 120-121, 124-125, 129-130, 133-134, 140-141, 145-146, 148, 151, 154, 156, 159-161, 166-167 | Full | Redactions: These pages contain draft investigative material. The records are draft Memorandums of Activity ("MOAs"), which are enclosures to DHS OIG's Report of Investigations. The final version of each of these draft MOAs has already been released to Plaintiff unless noted. These pages were withheld in full under FOIA Exemption 5. FOIA Exemptions 6 and 7(C) were applied, in part, to relevant information within the draft.<br><br>Specific MOAs withheld in full (the final version was produced in the December 2022 production):<br><br><ul><li>Page 10 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI</li><li>Page 11-12 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 13 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI</li><li>Page 14-15 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI</li><li>Page 16-17 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI</li><li>Page 18-19 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI</li><li>Page 20-21 – Exhibit 8 of Jonathan Alberto Medina-Leon ROI</li><li>Page 22-23 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI</li><li>Page 24 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI</li><li>Page 25-26 – Exhibit 11 of Jonathan Alberto Medina-Leon ROI</li><li>Page 27-28 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI</li><li>Page 29-30 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI</li><li>Page 31 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI</li><li>Page 32 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI</li><li>Page 33 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 34-36 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI</li><li>Page 38-46 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 50 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI</li><li>Page 51-52 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 53-54 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 55-56 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 57 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI</li><li>Page 58 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI</li><li>Page 59-60 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI</li><li>Page 61-62 – Exhibit 5 of Jonathan Alberto Medina-Leon ROI</li><li>Page 63-64 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI</li><li>Page 65-66 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI</li></ul> | Freedom of Information Act, 5 U.S.C. § 552(b)(5) – applied to entire page.<br><br>Freedom of Information Act, 5 U.S.C. § 552(b)(6), (b)(7)(C) applied, in part, to relevant, exempt information located on each page.[5] [6] |

---

[5] Pursuant to (b)(6) and (b)(7)(C), portions of the records on pages 20, 21, 25, 41, 42, 71, 72, 77, 129, 130, and 140 are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure.

[6] Support for the application of Exemptions 6 and 7(C), in part, can be found in *Vaughn* entries: 1-5, 7, and 10-11.

Hoq Decl. ISO MSJ
Exhibit Y
Page 197

24

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | • Page 67-68 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI<br>• Page 69-70 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI<br>• Page 71-72 – Exhibit 8 of Jonathan Alberto Medina-Leon ROI<br>• Page 73-74 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI<br>• Page 75 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI<br>• Page 76 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI<br>• Page 77-78 – Exhibit 11 of Jonathan Alberto Medina-Leon ROI<br>• Page 79 – Exhibit 12 of Jonathan Alberto Medina-Leon ROI<br>• Page 80-81 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI<br>• Page 82-83 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI<br>• Page 84-85 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI<br>• Page 86 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI<br>• Page 87 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI<br>• Page 89 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 90 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI<br>• Page 91 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 92 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 93 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 95 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 96-98 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI<br>• Page 100-101 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI<br>• Page 104-105 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI<br>• Page 110 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI<br>• Page 112 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI<br>• Page 114-115 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI (page 116 was released in full)<br>• Page 118 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI<br>• Page 120-121 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI<br>• Page 124-125 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI<br>• Page 129-130 – Exhibit 8 of Jonathan Alberto Medina-Leon ROI<br>• Page 133-134 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI<br>• Page 140-141 – Exhibit 11 of Jonathan Alberto Medina-Leon ROI<br>• Page 145-146 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI<br>• Page 148 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI<br>• Page 151 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI<br>• Page 154 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 156 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 159-161 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI<br>• Page 166-167 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI | |

Hoq Decl. ISO MSJ<br>Exhibit Y<br>Page 198

25

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | Explanation: Exemption 5 allows for the withholding of information that is pre-decisional and deliberative, which falls within the deliberative process privilege, and that information which falls within the attorney work product and attorney-client privileges. The information contained within these pages falls within the deliberative process privilege and consists of intra-agency draft MOAs that are pre-decisional and deliberative. Prior to finalization, DHS OIG's MOAs are reviewed by a "reviewing official," which may be more than one person, to comment and edit the draft. As evidenced by the accompanying parent email for many of these drafts, the case agent routinely requests review of the draft or is sending the draft back to the reviewing official with previously made edits and comments incorporated. Additionally, to support the draft nature of these records, none of them are finalized and signed as they are in the final ROI that was produced. Also, many of the drafts contain redline edits and comments on the draft either asking questions, making recommendations, or changing the language. | |
| | | | When considering the foreseeable harm in the release of these investigative draft MOAs, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent. If employees are aware that their internal communications, pre-decisional thoughts, and edited drafts may be released to the public, it will reduce the free exchange of ideas and the confidence that is necessary for open dialogue about draft language or a particular finding in the investigation. This hampers the agency's ability to efficiently and effectively formulate law enforcement techniques, strategies, and investigative reports. Moreover, draft documents go through a series of reviews which, as mentioned, may require multiple versions. If the final version differs from the draft version, it could confuse the public as to how and/or why one version says one thing while the final says something different, and it may lead to questions regarding the internal process of determining how decisions are made or questions are answered. Drafts are necessary and important for ensuring the final product is accurate and appropriate, and disclosing drafts inhibits an agency from freely having open discussions and making decisions for fear that their recommendations will be disclosed, scrutinized, or questioned prior to finalization. | |
| (21) | June 2023: 3-12, 16-25, 29-38, 39-48, 52-61, 63-72, 76-85, 89, 91, 93-94 | Full | Redactions: These pages contain draft investigative material. The records are draft Memorandums of Activity ("MOAs"), which are enclosures to DHS OIG's Report of Investigations. The final version of each of these draft MOAs has already been released to Plaintiff unless noted. These pages were withheld in full under FOIA Exemption 5. FOIA Exemptions 6 and 7(C) were applied, in part, to relevant information within the draft. Specific MOAs withheld in full (the final version was produced in the December 2022 production): <br><br> • Page 3-12 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI | Freedom of Information Act, 5 U.S.C. § 552(b)(5) – applied to entire page. <br><br> Freedom of Information Act, 5 U.S.C. § 552(b)(6), |

Hoq Decl. ISO MSJ
Exhibit Y
Page 199

26

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | <ul><li>Page 16-25 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 29-38 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 39-48 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 52-61 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 63-72 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 76-85 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 89 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI</li><li>Page 91 – draft MOA for Jonathan Alberto Medina-Leon ROI pertaining to corrections to previously submitted ICE OPR Reports. This MOA was not incorporated into the final report.</li><li>Page 93-94 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI</li><li>Page 181 was released in full.</li></ul><br>Explanation: Exemption 5 allows for the withholding of information that is pre-decisional and deliberative, which falls within the deliberative process privilege, and that information which falls within the attorney work product and attorney-client privileges. The information contained within these pages falls within the deliberative process privilege and consists of intra-agency draft MOAs that are pre-decisional and deliberative. Prior to finalization, DHS OIG's MOAs are reviewed by a "reviewing official," which may be more than one person, to comment and edit the draft. As evidenced by the accompanying parent email for many of these drafts, the case agent routinely requests review of the draft or is sending the draft back to the reviewing official with previously made edits and comments incorporated. Additionally, to support the draft nature of these records, none of them are finalized and signed as they are in the final ROI that was produced. Also, many of the drafts contain redline edits and comments on the draft either asking questions, making recommendations, or changing the language.<br><br>When considering the foreseeable harm in the release of these investigative draft MOAs, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent. If employees are aware that their internal communications, pre-decisional thoughts, and edited drafts may be released to the public, it | (b)(7)(C) applied, in part, to relevant, exempt information located on each page.[7][8] |

---

[7] Pursuant to (b)(6) and (b)(7)(C), portions of the records on pages 6, 8, 10, 19, 21, 23, 32, 34, 36, 42, 44, 46, 55, 57, 59, 66, 68, 70, 79, 81, and 83 are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure.
[8] Support for the application of Exemptions 6 and 7(C), in part, can be found in *Vaughn* entries: 1-5, 7, and 10-11.

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | will reduce the free exchange of ideas and the confidence that is necessary for open dialogue about draft language or a particular finding in the investigation. This hampers the agency's ability to efficiently and effectively formulate law enforcement techniques, strategies, and investigative reports. Moreover, draft documents go through a series of reviews which, as mentioned, may require multiple versions. If the final version differs from the draft version, or a draft is not adopted into the final version of the record as is the case here with the above-referenced MOA, it could confuse the public. The public may rely on the draft version which could reflect inaccurate information. The public could also be confused as to how and/or why one version says one thing and includes a draft that seemingly will be included in the final version of the record while the final version says something different or does not include or incorporate a responsive draft. This confusion will likely lead to impeding questions regarding the internal process of determining how decisions are made or questions are answered. Drafts are necessary and important for ensuring the final product is accurate and appropriate, and disclosing drafts inhibits an agency from freely having open discussions and making decisions for fear that their recommendations will be disclosed, scrutinized, or questioned prior to finalization. | |
| (22) | July 2023: <br><br> 1, 4-8, 10-12, 14-26, 28-39, 42-44, 46-58, 60-71, 75-86, 96-98, 103-107, 110-112, 123-124, 126-129, 131-132, 137-141, 149-151, 154-156, 159-161, 164-175, 182-184, 186-187, 190-191, 193-202, 206-207, 209-210, 212-221, 227-228, 230-232, 234, 236-237, 239, 241-242, 244, 246, 248-249, 251-252, 254, 256, 258-259, 261-269 | Full | Redactions: These pages contain draft investigative material. The records are draft Memorandums of Activity ("MOAs"), which are enclosures to DHS OIG's Report of Investigations. The final version of each of these draft MOAs has already been released to Plaintiff unless noted. These pages were withheld in full under FOIA Exemption 5. FOIA Exemptions 6, 7(C), and 7(E) were applied, in part, to relevant information within the draft. <br><br> Specific MOAs withheld in full (the final version was produced in the December 2022 production): <br><br> • Page 1 – Exhibit 12 of Teka Gulema ROI <br> • Page 4-8 – Exhibit 13 of Teka Gulema ROI <br> • Page 10-12 – Exhibit 14 of Teka Gulema ROI <br> • Page 14-26 – "Report of Investigation" synopsis for Teka Gulema ROI <br> • Page 28-39 – "Report of Investigation" synopsis for Teka Gulema ROI <br> • Page 42-44 – Exhibit 11 of Teka Gulema ROI <br> • Page 46-58 – "Report of Investigation" synopsis for Teka Gulema ROI <br> • Page 60-71 – "Report of Investigation" synopsis for Teka Gulema ROI <br> • Page 75-86 – "Report of Investigation" synopsis for Teka Gulema ROI <br> • Page 96-98 – Exhibit 11 of Teka Gulema ROI <br> • Page 103-107 – Exhibit 3 of Teka Gulema ROI | Freedom of Information Act, 5 U.S.C. § 552(b)(5) – applied to entire page[9]. <br><br> Freedom of Information Act, 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(E) applied, in part, to relevant, exempt information located on each page.[10] [11] |

[9] 5 U.S.C. § 552 (b)(5) is being added to page 210 as it was inadvertently not applied.

[10] Pursuant to (b)(6) and (b)(7)(C), portions of the records on pages 21, 34, 53, 66, 81, 111, 155, 170, 196, 198, 200, 215, 217, 219, 264, 265, and 267 are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure.

[11] Support for the application of Exemptions 6 and 7(C), in part, can be found in *Vaughn* entries: 1-7 and 10-11. Support for the application of Exemption 7(E), in part, can be found in *Vaughn* entry 19.

Hoq Decl. ISO MSJ
Exhibit Y
Page 201

28

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | • Page 110-112 – Exhibit 6 of Teka Gulema ROI<br>• Page 123-124 – Exhibit 7 of Teka Gulema ROI<br>• Page 126-129 – Exhibit 3 of Teka Gulema ROI<br>• Page 131-132 – Exhibit 4 of Teka Gulema ROI<br>• Page 137-141 – Exhibit 13 of Teka Gulema ROI<br>• Page 149-151 – Exhibit 11 of Teka Gulema ROI<br>• Page 154-156 – Exhibit 6 of Teka Gulema ROI<br>• Page 159-161 – Exhibit 11 of Teka Gulema ROI<br>• Page 164-175 – "Report of Investigation" synopsis for Teka Gulema ROI<br>• Page 182-184 – Exhibit 9 of Teka Gulema ROI<br>• Page 186-187 – Exhibit 5 of Teka Gulema ROI<br>• Page 190-191 – Exhibit 5 of Teka Gulema ROI<br>• Page 193-202 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI<br>• Page 206-207 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI<br>• Page 209-210 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI<br>• Page 212-221 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI<br>• Page 227-228 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI<br>• Page 230-232 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI<br>• Page 234 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI<br>• Page 236-237 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI<br>• Page 239 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 241-242 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI<br>• Page 244 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI<br>• Page 246 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI<br>• Page 248-249 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI<br>• Page 251-252 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI<br>• Page 254 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI<br>• Page 256 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI<br>• Page 258-259 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI<br>• Page 261-269 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI<br><br>Explanation: Exemption 5 allows for the withholding of information that is pre-decisional and deliberative, which falls within the deliberative process privilege, and that information which falls within the attorney work product and attorney-client privileges. The information contained within these pages falls within the deliberative process privilege and consists of intra-agency draft MOAs that are pre-decisional and deliberative. Prior to finalization, DHS OIG's MOAs are reviewed by a "reviewing official," which may be more than one person, to comment and edit the draft. As evidenced by the accompanying parent email for many of | |

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| | | | these drafts, the case agent routinely requests review of the draft or is sending the draft back to the reviewing official with previously made edits and comments incorporated. Additionally, to support the draft nature of these records, none of them are finalized and signed as they are in the final ROI that was produced. Also, many of the drafts contain redline edits and comments on the draft either asking questions, making recommendations, or changing the language.<br><br>When considering the foreseeable harm in the release of these investigative draft MOAs, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent. If employees are aware that their internal communications, pre-decisional thoughts, and edited drafts may be released to the public, it will reduce the free exchange of ideas and the confidence that is necessary for open dialogue about draft language or a particular finding in the investigation. This hampers the agency's ability to efficiently and effectively formulate law enforcement techniques, strategies, and investigative reports. Moreover, draft documents go through a series of reviews which, as mentioned, may require multiple versions. If the final version differs from the draft version, it could confuse the public as to how and/or why one version says one thing while the final says something different, and it may lead to questions regarding the internal process of determining how decisions are made or questions are answered. Drafts are necessary and important for ensuring the final product is accurate and appropriate, and disclosing drafts inhibits an agency from freely having open discussions and making decisions for fear that their recommendations will be disclosed, scrutinized, or questioned prior to finalization. | |

Hoq Decl. ISO MSJ
Exhibit Y
Page 203

30