LABONI A. HOQ (SBN 224140)
*laboni@hoqlaw.com*
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

MICHAEL KAUFMAN (SBN 254575)
*MKaufman@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> *Defendants*. | Case No. 2:22-CV-04760-SHK <br><br> **PLAINTIFF'S *AMENDED* NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS DEPARTMENT OF HOMELAND SECURITY AND DEPARTMENT OF HOMELAND SECURITY – OFFICE OF INSPECTOR GENERAL** <br><br> Honorable Shashi H. Kewalramani <br> United States Magistrate Judge <br><br> Hearing Date: April 24, 2024 <br> Time:  10:00 a.m. <br> Place:  3470 12ᵗʰ St., Riverside, CA 92501, Courtroom 3 or 4 |

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO DEFENDANTS AND COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT on April 24, 2024, at 10:00 a.m., or as soon thereafter as the parties may be heard, in the courtroom of the Honorable Shashi H. Kewalramani, located at 3470 12th St., Riverside, CA 92501, Courtroom 3 or 4, or virtually, Plaintiff American Civil Liberties Union of Southern California ("ACLU-So Cal") will bring a hearing for summary judgment pursuant to Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") action on the ground that Defendants Department of Homeland Security ("DHS") and DHS Office of Inspector General ("DHS-OIG") are unlawfully withholding agency documents, and/or have conducted an inadequate search.

More particularly, Plaintiff seeks an order requiring Defendants DHS and DHS-OIG to (i) conduct a reasonable search responsive to Plaintiff's requests under FOIA, 5 U.S.C. § 552, and/or (ii) produce (or reproduce) responsive documents without improper redactions in legible form.

The grounds for this motion are that there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law on its First and Second Causes of Action as to Defendant DHS-OIG. This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Plaintiff's statement of uncontroverted facts, the declarations of Laboni Hoq and Eunice Cho, the pleadings and papers filed in this action, and such oral argument and evidence as may be presented at the hearing on the motion.

This motion is made pursuant to the conference of counsel pursuant to L.R. 7-3, which took place on December 14, 2023, and February 20, 2024, and the scheduling order issued by Magistrate Judge Hon. Shashi H. Kewalramani on December 21, 2023, ECF No. 64.

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

1

1    Dated: February 28, 2023          Respectfully submitted,

2
                                       */s/ Laboni Hoq*
3                                      LABONI A. HOQ (SBN 224140)
                                       laboni@hoqlaw.com
4                                      HOQ LAW APC
                                       P.O. Box 753
5                                      South Pasadena, California 91030
                                       Tel.: (213) 973-9004
6
                                       MICHAEL KAUFMAN (SBN 254575)
7                                      MKaufman@aclusocal.org
                                       ACLU FOUNDATION OF SOUTHERN
8                                      CALIFORNIA
                                       1313 West Eighth Street
9                                      Los Angeles, California 90017
                                       Tel.: (213) 977-9500
10                                     Fax: (213) 915-0219

11                                     EUNICE CHO (Pro Hac Vice)
                                       echo@aclu.org
12                                     AMERICAN CIVIL LIBERTIES
                                       UNION FOUNDATION
13                                     915 Fifteenth Street NW, 7th Floor
                                       Washington, DC 20005
14                                     Tel.: (202) 548-6616

15                                     KYLE VIRGIEN (SBN 278747)
                                       kvirgien@aclu.org
16                                     AMERICAN CIVIL LIBERTIES
                                       UNION FOUNDATION
17                                     425 California Street, Suite 700
                                       San Francisco, CA 94104
18                                     Tel.: (202) 393-4930

19
                                       *Attorneys for Plaintiff*
20

21

22

23

24

25

26

27
     *ACLU of Southern California v. U.S. ICE, et al.*,
28   Case No. 2:22-CV-04760-SHK
     PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

                                                                              2

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ....................................................................................... 2

    A.    ICE Releases People Facing Imminent Death from Detention Custody, Avoiding Accountability and Public Reporting Requirements ........................................................... 2

    B.    Plaintiff's FOIA Request and Procedural Background ...................... 4

    C.    DHS-OIG Withholdings at Issue ...................................................... 5

    D.    DHS and DHS-OIG's Inadequate Search ......................................... 6

III.  ARGUMENT ............................................................................................ 6

    A.    LEGAL STANDARD ...................................................................... 7

    B.    DHS-OIG Improperly Withheld Information Not Justified by FOIA Exemptions ...................................................................... 7

           1.    DHS-OIG Improperly Withheld Information Under FOIA Exemption 5 ............................................................... 9

           2.    DHS-OIG Improperly Withheld Information Under FOIA Exemption 6 and 7(c) ..................................................... 11

                 a.    The Legal Standard Under Exemptions 6 and 7(c) ........ 11

                 b.    Defendants Fail the Threshold Requirement for Exemption 7(c) to Show Law Enforcement Purposes ......................................................................... 12

                 c.    Defendants Fail to Show Privacy Interests that Outweigh the Public Policy Interest in Disclosure ..................................................................... 14

                        i.    Defendants Cannot Justify Redacting Medina-Leon's Widely Reported Health Information ............................................................ 14

                        ii.   Defendants Cannot Justify Redacting Medina-Leon and Gulema's Immigration Information ............................................................ 16

    C.    Defendants Have Improperly Withheld Documents Referred by DHS-OIG to ICE ......................................................................... 18

    D.    DHS and DHS-OIG Failed to Adequately Search for Responsive Records ......................................................................... 21

IV.  CONCLUSION ....................................................................................... 24

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
Plaintiff's *Amended* Motion for Summary Judgment

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. C.L. Union v. Dep't of Homeland Sec.,*
  No. CV-20-3204-RDM, 2023 WL 2733721 (D.D.C. Mar. 31, 2023) .......... 23, 24

*Avondale Indus. v. NLRB,*
  90 F.3d 955 (5th Cir. 1996) ................................................................................. 15

*Bartko v. United States Dep't of Just.,*
  898 F.3d 51 (D.C. Cir. 2018) ............................................................................. 13

*Bloomberg, L.P. v. Bd. of Governors,*
  601 F.3d 143 (2d Cir. 2010) ................................................................................. 7

*Cal. Native Plant Soc'y v. U.S. E.P.A.,*
  251 F.R.D. 408 (N.D. Cal 2008) ........................................................................ 10

*Church of Scientology v. Dep't of Army,*
  611 F.2d 738 (9th Cir. 1979) ................................................................................ 8

*Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Hum. Servs.,*
  844 F. Supp. 770 (D.D.C. 1993) ........................................................................ 20

*Dep't of State v. Ray,*
  502 U.S. 164 (1991) .............................................................................................. 7

*F.T.C. v. Warner Commc'ns Inc.,*
  742 F.2d 1156 (9th Cir. 1984) .............................................................................. 9

*Grove v. Dep't of Just.,*
  802 F. Supp. 506 (D.D.C. 1992) ........................................................................ 20

*Habeas Corpus Res. Ctr. v. Dep't of Justice,*
  No. C08–2649, 2008 WL 5000224 (N.D. Cal. 2008) ........................................... 9

*Hall v. C.I.A.,*
  668 F. Supp. 2d 172 (D.D.C. 2009) ................................................................... 21

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

ii

*Hayden v. Nat'l Sec. Agency*,
   608 F.2d 1381 (D.C. Cir. 1979) ........................................................ 8, 17

*Hernandez Roman v. Wolf*,
   No. CV-20-00768-TJH, ECF No. 1031 (C.D. Cal. Mar. 20, 2021) ............... 3, 18

*Huddleston v. Fed. Bureau of Investigation*,
   No. 4:20-CV-00447, 2022 WL 4593084 (E.D. Tex. Sept. 29, 2022) ................ 15

*Hunt v. F.B.I.*,
   972 F.2d 286 (9th Cir. 1992) .............................................................. 18

*Jefferson v. Dep't of Just.*,
   284 F.3d 172 (D.C. Cir. 2002) ............................................................ 13

*Keys v. Dep't of Homeland Sec.*,
   570 F. Supp. 2d 59 (D.D.C. 2008) .................................................. 19, 21

*Lawyers' Comm. for C.R. Under L. v. U.S. Dep't of Just.*,
   No. 18-CV-167, 2020 WL 7319365 (D.D.C. Oct. 16, 2020) ......................... 22

*McGehee v. C.I.A.*,
   697 F.2d 1095 (D.C. Cir. 1983) .......................................................... 19

*Miller v. Casey*,
   730 F.2d 773 (D.C. Cir. 1984) ............................................................. 8

*Muchnick v. Dep't of Homeland Sec.*,
   225 F. Supp. 3d 1069 (N.D. Cal. 2016) .................................................. 7

*Nat'l Archives & Recs. Admin. v. Favish*,
   541 U.S. 157 (2004) ....................................................................... 12

*Nat'l Pub. Radio, Inc. v. U.S. Dep't of the Treasury*,
   No. CV-19-17(JDB), 2021 WL 1850696 (D.D.C. Mar. 31, 2021) ................... 20

*Nat'l Res. Def. Council v. Dep't of Def.*,
   388 F. Supp. 2d 1086 (C.D. Cal. 2005) .................................................. 7

*Pac. Fisheries, Inc. v. United States*,
   539 F.3d 1143 (9th Cir. 2008) ............................................................. 8

*Physicians for Human Rights v. U.S. Dep't of Defense*,
   675 F. Supp.2d 149 (D.C. Cir. 2009) ................................................... 17

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

iii

*Plunkett v. Dep't of Just.*,
  924 F. Supp. 2d 289 (D.D.C. 2013) .................................................. 19

*Powell v. Dep't of Justice*,
  584 F. Supp. 1508 (N.D. Cal. 1984) .......................................... 7, 8, 17

*Protect the Pub.'s Tr. v. U.S. Dep't of Homeland Sec.*,
  No. 22-cv-138-JEB, 2022 WL 3226275 (D.D.C. Aug. 10, 2022) .................... 23

*Rosenfeld v. U.S. Dep't of Just.*,
  No. C07-3240-MHP, 2010 WL 3448517 (N.D. Cal. Sept. 1, 2010) ................. 12

*Scarlett v. Off. of Inspector Gen.*,
  No. CV 21-819 (RDM), 2023 WL 2682259 (D.D.C. Mar. 29, 2023) ............... 13

*Tax Analysts v. I.R.S.*,
  294 F.3d 71 (D.C. Cir. 2002) ..................................................... 13

*TPS, Inc. v. Dep't of Def.*,
  330 F.3d 1191 (9th Cir. 2003) ..................................................... 7

*Transgender Law Ctr. v. Immigr. and Customs Enf't*,
  46 F.4th 771 (9th Cir. 2022) ............................................... 9, 10, 21

*Truesdale v. U.S. Dep't of Just.*,
  731 F. Supp. 2d 3 (D.D.C. 2010) .................................................. 21

*Watkins v. U.S. Bureau of Customs & Border Prot.*,
  643 F.3d 1189 (9th Cir. 2011) .................................................... 15

*Wessler v. U.S. Dep't of Justice*,
  381 F. Supp. 3d 253 (S.D.N.Y. 2019) .............................................. 14

*Wiener v. F.B.I.*,
  943 F.2d 972 (9th Cir. 1991) ....................................................... 8

*Yagman v. Pompeo*,
  868 F.3d 1075 (9th Cir. 2017) ...................................................... 7

*Yonemoto v. Dep't of Veterans Affs.*,
  686 F.3d 681 (9th Cir. 2012) ................................................... 12, 17

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

iv

**Statutes**

5 U.S.C. § 552(6) ............................................................. 11

5 U.S.C. § 552(a)(4)(B) .......................................8, 10, 16, 18

5 U.S.C. § 552(b) ..........................................................7, 8

5 U.S.C. § 552(b)(5) ............................................................ 9

5 U.S.C. § 552(b)(6) .......................................................... 11

5 U.S.C. § 552(b)(7) ...................................................... 11, 12

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 ...................*passim*

**Other Authorities**

6 C.F.R. § 5.3(a)(2) ......................................................... 23

6 C.F.R. § 5.4(c) ............................................................. 23

Adolfo Flores, *A Transgender Woman Died After Being Held for Weeks in ICE Custody*, BuzzFeed News, Jun. 3, 2019, https://www.buzzfeednews.com/article/adolfoflores/transgender-woman-dies-ice-custody-asylum ........................................... 3

Amy Taxin, *Family Seeks Answers in Immigrant's Death After Detention*, AP News, Apr. 10, 2019, https://apnews.com/article/8775303f79ee4d44a5959c34a8f3d99d ...................... 3

Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, LA Times, May 13, 2022, https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees ................................. 15, 16

Catherine Schoichet, *The Death Toll in ICE Custody Is the Highest It's Been in 15 Years*, CNN, Sept. 20, 2020, https://www.cnn.com/2020/09/30/us/ice-deaths-detention-2020/index.html ............................................................... 2

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

v

Complaint from CIVIC to John Roth, Inspector General, DHS, et al.,
Mar. 31, 2016, http://www.endisolation.org/blog/wp-
content/uploads/2016/02/Complaint-Etowah-Medical__1.pdf ............................ 4

Dan Glaun, *How ICE Data Undercounts COVID-19 Victims,* PBS
Frontline, Aug. 11, 2020,
https://www.pbs.org/wgbh/frontline/article/how-ice-data-
undercounts-covid-19-victims/ .................................................................... 2

Daniel Borunda, *Transgender Asylum Seeker from El Salvador Held
by ICE Dies at El Paso Hospital,* El Paso Times, Jun. 3, 2019,
https://www.elpasotimes.com/story/news/immigration/2019/06/03/t
ransgender-migrant-johana-medina-leon-dies-el-paso-
hospital/1332236001/ .................................................................................... 3

*Detainee Death Reporting*, ICE, Feb. 5, 2024,
https://www.ice.gov/detain/detainee-death-reporting ........................... 2

DHS OIG, *Frequently Asked Questions: What Type of Work Does the
Office of Investigations Conduct?,*
https://www.oig.dhs.gov/about/faqs .................................................. 13

*Immigration Detention Quick Facts*, Transnational Records Access
Clearinghouse,
https://trac.syr.edu/immigration/quickfacts/detention.html .................. 2

Nina Bernstein, *Officials Hid Truth of Immigrant Deaths in Jail*, N.Y.
Times, Jan. 9, 2010,
https://www.nytimes.com/2010/01/10/us/10detain.html ...................... 2

Robert Moore, *Transgender Woman Who Had Been in ICE Custody
Dies After Falling Ill*, Washington Post, Jun. 2, 2019,
https://www.washingtonpost.com/immigration/transgender-woman-
migrant-who-had-been-in-ice-custody-dies-after-falling-
ill/2019/06/02/d194528a-85a6-11e9-98c1-
e945ae5db8fb_story.html ............................................................... 4, 15

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
Plaintiff's *Amended* Motion for Summary Judgment

vi

Sam Levin, *Trans Woman Who Died after Illness in U.S. Custody Had Asked to Be Deported, Family Says*, The Guardian, Jun. 12, 2019, https://www.theguardian.com/us-news/2019/jun/12/trans-woman-death-us-custody-ice-deportation ........................................................................ 3

Texas Dep't of State Health Servs., *Death Record FAQs*, https://www.dshs.texas.gov/vital-statistics/death-records/death-record-faqs#:~:text=Death%20certificates%20are%20not%20open,you%20are%20a%20qualified%20applicant ................................................................ 5

Tim Fitzsimons, *Transgender ICE Detainee Died of AIDS Complications, Autopsy Shows*, NBC News, April 17, 2019, https://www.nbcnews.com/feature/nbc-out/transgender-ice-detainee-died-aids-complications-autopsy-shows-n994836 ................................ 16

William Thornton, *"One Who Could Have Been You": Group Protests Former Detainee's Death*, Advance Local, Feb. 28, 2016, https://www.al.com/news/anniston-gadsden/2016/02/one_who_could_have_been_you_gr.html ................................ 4

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

vii

## I.      INTRODUCTION

This Freedom of Information Act ("FOIA") lawsuit concerns Immigration and Customs Enforcement's ("ICE") practice of releasing from custody detained immigrants facing imminent death, a practice that allows the agency to evade public reporting of these deaths and avoid accountability for dangerous detention conditions and inadequate medical care. Because the public has a vital interest in understanding this practice, the American Civil Liberties Union Foundation of Southern California ("ACLU So-Cal" or "Plaintiff") submitted a FOIA request to ICE, Department of Homeland Security's ("DHS") Privacy Office, and DHS's Office of Inspector General ("DHS-OIG") (collectively "Defendants"). Plaintiff filed this lawsuit after the agencies failed to respond as FOIA requires.

Since then, DHS-OIG has produced some records in response. However, DHS-OIG has withheld significant information based on unjustified exemptions, including details regarding cause of death listed on death certificates, medical treatment provided by ICE detention facilities, immigration case communications, and justifications for deathbed releases. DHS-OIG has also withheld documents related to its investigation of the deaths of Teka Gulema and Johana Medina-Leon[1] that shed important light on the agency's internal accountability and oversight practices, and has failed to adequately search for records related to Martin Vargas Arrellano. Defendant DHS, including its component Office of Civil Rights and Civil Liberties ("CRCL"), has failed to conduct any search at all, despite clear indication that they likely have responsive records.

Defendant DHS-OIG has failed to justify its withholdings under FOIA Exemptions 5, 6, and 7(C), and DHS and DHS-OIG have failed to establish the

---

[1] Johana Medina-Leon was transgender, and Plaintiff refers to her with her chosen name.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

1

adequacy of its search for responsive records. The Court should grant Plaintiff's motion for summary judgment.

## II.    BACKGROUND

### A.    ICE Releases People Facing Imminent Death from Detention Custody, Avoiding Accountability and Public Reporting Requirements.

Each day, ICE detains over 35,000 people in detention facilities nationwide.[2] ICE claims that it "prioritizes the health, safety, and well-being of all noncitizens in its custody," and that "any death that occurs in ICE custody is a significant cause for concern."[3] But ICE has engaged in a disturbing practice: releasing detained immigrants nearing death from custody, allowing the agency to avoid public reporting and accountability requirements. Unfortunately, this is not new: In 2009, ICE admitted that it had omitted one in 10 deaths of detained immigrants from a list it had submitted to Congress, and that ICE had also discharged detainees shortly before they died, reducing the number of reported deaths.[4] ICE's failure to account for these hidden deaths in recent years has taken on heightened importance in light of the record number of detainee deaths reported in 2020,[5] and the likely undercount of detained immigrants who died during the COVID-19 pandemic.[6]

---

[2] *Immigration Detention Quick Facts*, Transnational Records Access Clearinghouse, https://trac.syr.edu/immigration/quickfacts/detention.html (last visited Feb. 19, 2024).

[3] *Detainee Death Reporting*, ICE, Feb. 5, 2024, https://www.ice.gov/detain/detainee-death-reporting.

[4] Nina Bernstein, *Officials Hid Truth of Immigrant Deaths in Jail*, N.Y. Times, Jan. 9, 2010, https://www.nytimes.com/2010/01/10/us/10detain.html.

[5] Catherine Schoichet, *The Death Toll in ICE Custody Is the Highest It's Been in 15 Years*, CNN, Sept. 20, 2020, https://www.cnn.com/2020/09/30/us/ice-deaths-detention-2020/index.html.

[6] Dan Glaun, *How ICE Data Undercounts COVID-19 Victims,* PBS Frontline, Aug. 11, 2020, https://www.pbs.org/wgbh/frontline/article/how-ice-data-undercounts-covid-19-victims/.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

Martin Vargas Arellano was a class member in a case challenging ICE's failure to protect detainees from COVID-19 at ICE's Adelanto Detention Center. As part of this case, ICE was required to report deaths at the facility to class counsel and the court. Nonetheless, when he died after contracting COVID in detention, ICE chose not to report it, on the basis that it had released him from custody before his death. Order at 1, *Hernandez Roman v. Wolf*, No. CV-20-00768-TJH, ECF No. 1031 (C.D. Cal. Mar. 20, 2021). The court found that ICE "actively conceal[ed]" this death, raising "significant concerns regarding the Government's actions and lack of candor." *Id*.

Jose Ibarra Bucio died from a brain hemorrhage he suffered at the Adelanto Detention Center. ICE never reported his death. ICE's excuse was that it had released Mr. Ibarra Bucio while he was in a coma, so it had no reporting obligation.[7]

Johana Medina-Leon, a nurse, recognized that her worsening chest pain in ICE custody was a serious warning sign. She asked for an HIV test, received a positive result, and was sent to the hospital.[8] Within days, she passed away. ICE did not report her death, claiming that it "released" her the same day it sent her to the hospital.[9]

---

[7] Amy Taxin, *Family Seeks Answers in Immigrant's Death After Detention*, AP News, Apr. 10, 2019, https://apnews.com/article/8775303f79ee4d44a5959c34a8f3d99d.

[8] Adolfo Flores, *A Transgender Woman Died After Being Held for Weeks in ICE Custody*, BuzzFeed News, Jun. 3, 2019, https://www.buzzfeednews.com/article/adolfoflores/transgender-woman-dies-ice-custody-asylum.

[9] Sam Levin, *Trans Woman Who Died after Illness in U.S. Custody Had Asked to Be Deported, Family Says*, The Guardian, Jun. 12, 2019, https://www.theguardian.com/us-news/2019/jun/12/trans-woman-death-us-custody-ice-deportation.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

3

When asked about her death, ICE officials told reporters that she had died after testing positive for HIV.[10]

Teka Gulema suffered an infection while in ICE custody that left him paralyzed.[11] He eventually fell into a coma-like state and died shortly thereafter. ICE did not report this death because it had released him from custody shortly before he died.[12]

Plaintiff brought this case to shed light on these, and other, unknown and unreported deaths, in support of its advocacy on behalf of detained immigrants and their families.

**B.  Plaintiff's FOIA Request and Procedural Background**

Plaintiff submitted its FOIA request ("Request") to ICE, DHS's Privacy Office, and DHS-OIG on April 29, 2022. After they failed to timely produce responsive records, Plaintiff filed this lawsuit on July 12, 2022 against ICE and DHS, Compl., ECF No. 1-1, and added DHS-OIG as a Defendant on October 4, 2022, Am. Compl., ECF No. 24.  On February 9, 2023, this Court ordered Defendants to produce records to Plaintiff monthly with updated search information, and thereafter provide

---

[10] Daniel Borunda, *Transgender Asylum Seeker from El Salvador Held by ICE Dies at El Paso Hospital,* El Paso Times, Jun. 3, 2019, https://www.elpasotimes.com/story/news/immigration/2019/06/03/transgender-migrant-johana-medina-leon-dies-el-paso-hospital/1332236001/;  Robert Moore, *Transgender Woman Who Had Been in ICE Custody Dies After Falling Ill*, Washington Post, Jun. 2, 2019, https://www.washingtonpost.com/immigration/transgender-woman-migrant-who-had-been-in-ice-custody-dies-after-falling-ill/2019/06/02/d194528a-85a6-11e9-98c1-e945ae5db8fb_story.html.

[11] William Thornton, *"One Who Could Have Been You": Group Protests Former Detainee's Death*, Advance Local, Feb. 28, 2016 (updated Jan. 13, 2019), https://www.al.com/news/anniston-gadsden/2016/02/one_who_could_have_been_you_gr.html.

[12] Complaint from CIVIC to John Roth, Inspector General, DHS, et al., 3, Mar. 31, 2016, http://www.endisolation.org/blog/wp-content/uploads/2016/02/Complaint-Etowah-Medical__1.pdf.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

4

a *Vaughn* Index to justify any withholding of responsive records. Order, ECF No. 40. Defendant DHS-OIG has now completed its production of records, and has provided Plaintiff a *Vaughn* Index and a letter summarizing its search.  Declaration of Laboni Hoq ("Hoq Decl."), Ex. Y (*Vaughn* Index); Ex. R (search summary).[13] Defendant DHS has not searched its component, Office of Civil Rights and Civil Liberties ("CRCL"), despite concrete indication that it likely has responsive records.[14] DHS and DHS-OIG have failed to meet their obligations. The Court should grant summary judgment in Plaintiff's favor.

### C.   DHS-OIG Withholdings at Issue

Plaintiff seeks to challenge a limited set of redactions and withholdings in DHS-OIG's productions, as follows.[15]

1.  Withholding of draft Reports of Investigation ("ROI") and Memoranda of Activity ("MOA") regarding the deaths of Gulema and Medina-Leon. Plaintiff challenges DHS-OIG's use of Exemption 5 to withhold these documents.

2.  Redaction of DHS-OIG's ROIs and draft media statements related to Medina-Leon's death, including diagnostic questions and medical tests by ICE detention medical staff prior to her release from custody, and the cause of death listed on her death certificate.[16] Plaintiff challenges DHS-OIG's use of Exemptions 6 and 7(c) to withhold these documents.

---

[13] Citations to declaration exhibits reference page numbers within each exhibit.

[14] Plaintiff's Statement of Uncontroverted Facts provides a detailed summary of the procedural history and Defendants' production.

[15] In declining to further challenge certain redactions and withholdings, Plaintiff does not imply they were appropriate under FOIA.

[16] Ms. Medina-Leon's death certificate will not be publicly available until 25 years after her death. *See* Texas Dep't of State Health Servs., *Death Record FAQs*, https://www.dshs.texas.gov/vital-statistics/death-records/death-record-faqs#:~:text=Death%20certificates%20are%20not%20open,you%20are%20a%20qualified%20applicant.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

3.  Redaction of DHS-OIG ROIs and MOAs, which ICE describes as "immigration information" related to Gulema and Medina-Leon. This information appears to be statements made by ICE officers assigned to Medina-Leon regarding ICE's decision to release her from custody, information related to Medina-Leon's entry to the United States, and ICE's attempts to obtain travel documents to deport Gulema. Plaintiff challenges DHS-OIG's use of Exemptions 6 and 7(c) to withhold these documents.[17]

4.  Withholding of documents reviewed by DHS-OIG in its investigations, including attachments to MOAs and ROIs, which DHS-OIG referred to ICE for production. These documents include records documents and emails regarding Gulema's release from custody dated after October 1, 2015. DHS-OIG has claimed to have completed its production, and ICE has claimed to have completed its production of documents related to Gulema dated after October 1, 2015, but neither has produced these documents. Plaintiff challenges DHS-OIG's withholding of referred documents.

A copy and appendix of documents with challenged redactions are available at Exhibits A and B of the Declaration of Eunice Cho ("Cho Declaration").

**D.    DHS and DHS-OIG's Inadequate Search**

Plaintiff challenges DHS-OIG's failure to search for records related to a Case Summary Report related to Vargas Arellano. DHS-OIG failed to search correspondence regarding its decision to open and close that case, and documents associated with the case numbers referenced in the Report. Although Plaintiff identified records showing that a search of additional DHS components was warranted, DHS refused to do so.

---

[17] DHS-OIG previously claimed Exemption 3 for these documents on the basis of an "unspecified statute," but has since withdrawn that justification. *See* Hoq Decl. Y at 1 n.1.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

### III.    ARGUMENT

#### A.    LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Muchnick v. Dep't of Homeland Sec.*, 225 F. Supp. 3d 1069, 1072 (N.D. Cal. 2016) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). "The Supreme Court has observed that "[w]ithout question, [FOIA] is broadly conceived" and is animated by a "philosophy of full agency disclosure." *Id*. at 151 (citations omitted). "Liberal construction is warranted to achieve the core purpose of FOIA: allowing the public to find out what their government is up to." *Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017) (citation omitted). FOIA therefore sets a "strong presumption in favor of disclosure." *Ray*, 502 U.S. at 173.

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. Dep't of Def.,* 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (citation omitted). The underlying facts and possible inferences are construed in favor of the FOIA requester. *Id.* at 1095 (citation omitted).

#### B.    DHS-OIG Improperly Withheld Information Not Justified by FOIA Exemptions.

Where an agency locates a responsive document but withholds it under an exemption, the agency bears the burden to prove that the claimed exemption applies. "An agency may withhold a document only if the information contained in the document comes under one of the nine exemptions listed in § 552(b), which exemptions are to be construed narrowly." *Powell v. Dep't of Justice*, 584 F. Supp. 1508, 1512 (N.D. Cal. 1984). Courts should narrowly construe the exemptions in light of FOIA's preference for "disclosure over secrecy." *TPS, Inc. v. Dep't of Def.*, 330 F.3d 1191, 1196 (9th Cir. 2003). Doubts must be "resolved in favor of

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

7

disclosure." *Bloomberg, L.P. v. Bd. of Governors*, 601 F.3d 143, 147 (2d Cir. 2010) (citation omitted).

Because requestors necessarily face a disadvantage in arguing for disclosure where the agency withholds responsive documents, the government typically must both supply a declaration and a *Vaughn* index that identifies each document and explains their reason for withholding it. *See Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991). Agency affidavits should not "merely recit[e] statutory standards," be "too vague or sweeping," *Hayden v. Nat'l Sec. Agency,* 608 F.2d 1381, 1387 (D.C. Cir. 1979), or be "controverted by … contrary evidence in the record." *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).

Even where an agency properly withholds information within a record, it must disclose any "reasonably segregable" portions. 5 U.S.C. § 552(b); *Powell*, 584 F. Supp. at 1512 ("§ 552(b) specifically provides that any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt") (citations and alterations omitted). If an agency withholds a document in full, it bears the burden to demonstrate that no reasonably segregable information exists within the documents withheld. *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The Court may not "simply approve the withholding of an entire document without entering a finding on segregability." *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979).

Where a defendant's *Vaughn* index and declarations fail to provide sufficient information to resolve the dispute over disclosure, FOIA authorizes *in camera* review to determine whether documents have been properly withheld. 5 U.S.C. § 552(a)(4)(B). The court has broad discretion to conduct this review even where defendants' affidavits appear sufficient on their face. "The ultimate criterion is simply this: Whether the district judge believes that in camera inspection is needed

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

8

in order to make a responsible de novo determination on the claims of exemption." *Ray v. Turner*, 587 F.2d at 1195. The court may conduct *in camera* review merely "on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination," because an agency's decision to withhold documents may simply "reflect an inherent tendency to resist disclosure, and judges may take this natural inclination into account." *Id.*

**1.    DHS-OIG Improperly Withheld Information Under FOIA Exemption 5.**

Under Exemption 5, the government may withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To properly assert this privilege, an agency must show that a document is both '(1) "predecisional" or "antecedent to the adoption of agency policy" and (2) "deliberative," meaning "it must actually be related to the process by which policies are formulated."'" *Transgender Law Ctr. v. Immigr. and Customs Enf't*, 46 F.4th 771, 783 (9th Cir. 2022) (citation omitted). "Simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege." *Transgender Law Ctr*, 46 F.4th 771 (citation omitted). Exemption 5 "does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment." *Habeas Corpus Res. Ctr. v. Dep't of Justice*, No. C08–2649, 2008 WL 5000224, at *1 (N.D. Cal. 2008) (citation omitted). And "[p]urely factual material that does not reflect deliberative processes is not protected" at all. *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citing *Env't Prot. Agency v. Mink*, 410 U.S. 73, 88 (1973)).

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

9

Defendants withheld 367 pages of documents in full under Exemption 5.[18] In their *Vaughn* Index, Defendants identify the withheld documents as "draft Memorandums of Activity" that are "enclosures to DHS OIG's Report of Investigations," regarding Gulema and Medina-Leon. Hoq Decl. Ex. Y at 24, 26, and 28 (*Vaughn* Entries 20, 21, 22).

Defendants, however, have not met their burden of demonstrating that these records are deliberative or predecisional. In *Transgender Law Center*, the Ninth Circuit considered whether ICE had met its burden to demonstrate that draft mortality reports—like here, investigatory reports into the deaths of detained immigrants— were protected under Exemption 5. The Ninth Circuit concluded that it did not, as its *Vaughn* index "contain[ed] *no* references to any decision to which the document pertains." 46 F.4th at 783 (emphasis in original). A close examination of DHS-OIG's *Vaughn* index regarding the agency's draft Reports of Investigation and Memorandums of Activity reveals the same. Hoq Decl. Ex. Y at 24, 26, and 28 (*Vaughn* Entries 20, 21, 22). Although Defendants' *Vaughn* index recites a summary of the deliberative process privilege, Defendants do not ever meaningfully reference any decision or policy process to which the withheld information applies. *See Cal. Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 413 (N.D. Cal 2008) (citation omitted) (an "index of documents providing just basic information and a brief description is inadequate"). For this reason, the Court should order the complete release of the draft documents.

Moreover, even if the government can demonstrate that a record contains *some* predecisional and deliberative material, that does not render the entire record exempt. "Factual portions of documents covered by the deliberative process privilege must be segregated and disclosed unless they are 'so interwoven with the deliberative material that they are not segregable.'" *Pacific Fisheries, Inc. v. U.S.* 539 F.3d 1143,

---

[18] *See* Proposed Order at 1 for list of withheld documents.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

10

1148 (9th Cir. 2008) (citation omitted). The burden is on the government to establish that all reasonably segregable portions have been segregated and disclosed. 5 U.S.C. § 552(a)(4)(B), (b). To the extent that any of the records contain predecisional and deliberative material, Defendants' wholesale withholding of these draft documents, without consideration of its duty to segregate and disclose factual information, is improper. In that instance, the Court should order that the DHS-OIG produce a redacted version, with a *Vaughn* index that provides specific information about each redaction.

### 2. DHS-OIG Improperly Withheld Information Under FOIA Exemption 6 and 7(c).

Defendants assert FOIA Exemptions 6 and 7(c) to withhold supposedly private information involving Medina-Leon and Gulema. The redacted information appears to include an official cause of death on Medina-Leon's death certificate, diagnostic questions and medical tests conducted by ICE detention medical staff prior to her release from custody, statements describing ICE's decision to release her from custody, and information related to her initial entry to the United States. ICE has also redacted information apparently related to ICE's attempts to obtain travel documents to deport Gulema. The public interest in disclosure of this information greatly outweighs the diminished privacy interests, given the need for transparency into potential failures of medical care contributing to the deaths of detained immigrants, and ICE's ability to reduce the number of reported deaths by releasing people facing imminent death from custody.

### a. The Legal Standard Under Exemptions 6 and 7(c).

Under Exemption 6, an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(6). Under Exemption 7(c), an agency may withhold "records or information compiled for law enforcement purposes, but only

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

11

to the extent" that production "could reasonably be expected to constitute an invasion of personal privacy." Exemption 7(c) includes a threshold requirement that the records were "compiled for law enforcement purposes"; Exemption 6 does not. *Compare* 5 U.S.C. § 552(b)(7) *with* 5 U.S.C. § 552(b)(6). Other than this threshold requirement, Exemptions 6 and 7(c) involve similar analyses that "require balancing the public interest [in disclosure] with 'personal privacy.'" *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 693 n.7 (9th Cir. 2012) (citing 5 U.S.C. § 552(b)(7)(C)), *overruled on unrelated grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). For that reason, "cases interpreting the interest in 'personal privacy' with regard to one of the two exemptions are useful in the context of the other," and Plaintiff applies these parallel analyses together. *Id.*

Both the Exemption 6 and Exemption 7(c) analyses begin by determining whether "disclosure implicates a personal privacy interest that is 'nontrivial,' or, put differently, 'more than de minimis.'" *Yonemoto*, 686 F.3d at 693 (Exemption 6 analysis (citations omitted)); *accord Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 172 (2004) (Exemption 7(c)). If the government can point to a non-trivial privacy interest, both the Exemption 6 and Exemption 7(c) analyses then move to a second step. "At step two [courts] employ a balancing approach: [They] place the privacy interests identified at the first step on one end of the balance, and the public interest favoring disclosure on the other." *Yonemoto*, 686 F.3d at 693; *accord Favish*, 541 U.S. at 172 (Exemption 7(c)). The public interest asserted by the requestor must involve "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Yonemoto*, 686 F.3d at 694 (quotation marks and citation omitted).

### b. Defendants Fail the Threshold Requirement for Exemption 7(c) to Show Law Enforcement Purposes.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

12

Defendants fail the threshold requirement for Exemption 7(c) that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see also Rosenfeld v. U.S. Dep't of Just.*, No. C07-3240-MHP, 2010 WL 3448517, at *9 (N.D. Cal. Sept. 1, 2010). Although an agency whose sole function is law enforcement may be entitled to some deference, "a mixed-function agency" involved in activities beyond law enforcement is "subject to an exacting standard when it comes to the threshold requirement of Exemption 7." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002).

DHS-OIG is a mixed-function agency that must meet this more exacting standard. DHS-OIG itself describes its responsibilities as mixed in function, including law enforcement investigations that could result in prosecution and investigations that could result in personnel actions.[19] Like other OIG offices found to be a mixed-function agency, DHS-OIG's responsibilities "embrace not only investigations of violations of law and breaches of professional standards that may result in civil liability, but also more routine investigations … that may never result in civil or criminal referrals or proceedings." *Scarlett v. Off. of Inspector Gen.*, No. CV 21-819, 2023 WL 2682259, at *7 (D.D.C. Mar. 29, 2023) (concluding that "the [National Science Foundation]'s OIG is a mixed-function agency"); *Jefferson v. Dep't of Just.*, 284 F.3d 172, 179 (D.C. Cir. 2002) (same for Department of Justice's Office of Professional Responsibility). As a mixed-function agency, DHS-OIG "bears the burden of showing on a case-by-case basis that any requested records were actually compiled for law-enforcement … purposes." *Bartko v. United States Dep't of Just.*, 898 F.3d 51, 65 (D.C. Cir. 2018). It therefore must show that "the investigatory activity that gave rise to the documents is 'related to the enforcement

---

[19] DHS OIG, *Frequently Asked Questions: What Type of Work Does the Office of Investigations Conduct?*, https://www.oig.dhs.gov/about/faqs (last visited Feb. 20, 2024).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

13

of federal laws,' and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson*, 284 F.3d at 177 (citation omitted).

Defendants fall short. Their sole contention is boilerplate: "DHS OIG compiled this information for law enforcement purposes, i.e., the information, including the sensitive health information, was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation." Hoq Decl. Ex. Y at 7. This justification fails to even attempt to distinguish between DHS-OIG's law-enforcement role and its other roles or to show the required nexus between the investigation and law enforcement duties. The Court should reject Defendants' 7(c) objections outright.

**c.** **Defendants Fail to Show Privacy Interests that Outweigh the Public Policy Interest in Disclosure.**

**i.** **Defendants Cannot Justify Redacting Medina-Leon's Widely Reported Health Information.**

Plaintiff challenges three categories of redactions involving Medina-Leon's health information. First, Plaintiff challenges Defendants' redaction of the third cause of death listed on Medina-Leon's death certificate.[20] Second, Plaintiff challenges the redaction of the condition identified in a blood test taken by Medina-Leon and information about how she may have contracted it.[21] Third, Plaintiff challenges DHS-OIG's redaction of sample questions considered by its press office about its failure to screen Medina-Leon for this condition.[22] Defendants assert Exemptions 6 and 7(c).

There is a limited privacy interest in the redacted information. As a general matter, "an individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA." *Wessler v. U.S. Dep't of Justice*, 381 F. Supp. 3d 253, 259 (S.D.N.Y. 2019). Although surviving family members have privacy

---

[20] Cho Decl. Ex. A: November 2022, 37-38; December 2022: 92.

[21] *Id.*, November 2022: 15, 16, 20, 25-26, 33, 39, 41, 50; December 2022: 37, 41, 44-45, 51, 55-56, 70-71, 76, 84, 97, 99; June 2023: 1.

[22] *Id.*, March 2023: 49.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

14

interests recognizable under FOIA, courts have only found that these interests extend specifically to a deceased's death-scene images, autopsy reports, and audio files of final moments. *See Huddleston v. Fed. Bureau of Investigation,* No. 4:20-CV-00447, 2022 WL 4593084, at *23 (E.D. Tex. Sept. 29, 2022) (discussing cases).

Defendants' own disclosures to the public, moreover, have greatly diminished the privacy interest in question. "[W]hen an agency freely discloses to a third party confidential information covered by a FOIA exemption without limiting the third-party's ability to further disseminate the information then the agency waives the ability to claim an exemption to a FOIA request for the disclosed information." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1198 (9th Cir. 2011). Defendants themselves have disclosed the circumstances surrounding Medina-Leon's death to the media, including untreated HIV status that may have contributed to her death. Specifically, Defendants have redacted the third cause of death on Medina-Leon's death certificate—but apparently disclosed it to the Los Angeles Times in a separate FOIA request.[23] ICE officials themselves told national media outlets, including the *Washington Post*, that Medina-Leon was HIV-positive.[24] With these facts surrounding her death already widely disclosed by Defendants, there is no privacy interest in shielding these facts here. *See Avondale Indus. v. NLRB*, 90 F.3d 955, 961 (5th Cir. 1996) (holding that there is no privacy interest in information contained in "files [that] have long been available to any member of the public for inspection").

---

[23] Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, LA Times, May 13, 2022, https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees ("A death certificate listed sepsis … as the primary cause of death, with pneumonia and HIV as underlying causes.").

[24] Moore, *supra* note 10 ("Earlier that day, she had requested an HIV test, which came back positive, [ICE] officials said.").

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

15

The disclosure of this information, in contrast, would significantly serve the public interest. Medina-Leon was not the first transgender woman detained by ICE to die with HIV that year.[25] ICE apparently did not screen Medina-Leon for HIV on intake, nor did it provide any HIV screening when she reported serious symptoms.[26] The redactions at issue likely withhold information about ICE's failure to screen and treat Medina-Leon for HIV and the fact that it contributed to her death. This information will shed light on the ways in which ICE's screening systems of medically vulnerable detainees must be improved. For example, a DHS-OIG investigator looking into the circumstances of Medina-Leon's death noted that when she arrived in ICE custody, medical staff "checked 'Yes' to a question that asked Medina if she ever had a history of [redacted]." Cho Decl., Ex. A at Nov. 2022: 20. ICE's failure to screen someone for HIV whose records included this response is likely highly relevant to necessary reforms. The potential for unredacted versions of these records to bring about changes to protect others more than outweighs the diminished privacy interest here.

Defendants cannot justify these redactions, and the Court should order that the redactions be lifted. In the alternative, the Court should review these redactions *in camera* to weigh the public and private interests for the release of this information. 5 U.S.C. §552(a)(4)(B).

### ii.  Defendants Cannot Justify Redacting Medina-Leon and Gulema's Immigration Information.

Plaintiff challenges the following redactions involving Medina-Leon and Gulema's immigration information: witness statements made by ICE officers related

---

[25] Tim Fitzsimons, *Transgender ICE Detainee Died of AIDS Complications, Autopsy Shows*, NBC News, April 17, 2019, https://www.nbcnews.com/feature/nbc-out/transgender-ice-detainee-died-aids-complications-autopsy-shows-n994836 (discussing death of Roxana Hernandez).

[26] Castillo, *supra* n. 23.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

16

to the decision to release Medina-Leon from custody,[27] information related to her entry to the United States,[28] and ICE's attempts to obtain travel documents to deport Gulema from the United States. Notably, these redactions cover only select immigration-related information in the responsive documents. For example, Defendants produced a summary of records "related to [Gulema's] dealings with immigration" that provides various elements of his immigration history, redacting only one line. Cho Decl., Ex. A at Jun. 2023: 0157. Defendants assert Exemptions 6 and 7(c).[29]

Defendants have failed to meet their burden to show any non-trivial personal privacy interest. Defendants offer limited information as to what these redactions address. Their *Vaughn* index provides only vague descriptions of the information redacted as "personal privacy immigration information" and "[p]ersonal privacy details pertaining to the subject's life and immigration history." Hoq. Decl. Ex. Y at 9-11. These categorical, boilerplate descriptions fail to provide any meaningful clues that would allow Plaintiff or the court to evaluate the privacy interest of this information. *See Physicians for Human Rights v. U.S. Dep't of Defense*, 675 F. Supp.2d 149, 166 (D.C. Cir. 2009). Defendants' "vague or sweeping" descriptions cannot carry their burden to justify an exemption. *Hayden v. N.S.A.,* 608 F.2d 1381, 1387 (D.C. Cir. 1979). Defendants therefore fail at the first step of the Exemption 6

---

[27] Cho Decl. Ex. A, Nov. 2022: 23-24, 28; Dec. 2022: 40, 42, 44, 67-68, 75.
[28] *Id.* Jun. 2023: 1, 118, 151, 157.
[29] Defendants' *Vaughn* index indicates that Defendants have also made these redactions pursuant to an unspecified regulation: "pursuant to (b)(6) and (b)(7)(C), these portions of the records are also withheld ***in compliance with a DHS regulation*** that requires this information be protected from disclosure." Hoq Dec. Ex. Y at 12 (#6) (emphasis added). To the extent that Defendants intend these references to indicate an independent basis for withholding, Defendants' reference to an unspecified statute or DHS regulation cannot satisfy their burden under FOIA. *Powell*, 584 F. Supp. at 1512.

ACLU of Southern California v. U.S. ICE, et al., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

17

and 7(c) analysis to show any "non-trivial personal privacy interest." *Yonemoto*, 686 F.3d at 694.

Even if the Court finds that the Defendants have asserted a non-trivial personal privacy interest, the strong public policy interests in disclosure outweigh these privacy interests. Although Defendants' *Vaughn* index provides little clarity about what type of information these redactions conceal, the relevance of this information to important policy issues is apparent from the records themselves. DHS-OIG investigators prepared these documents as they examined and distilled facts that they believed were most important. That this redacted information appears repeatedly throughout two DHS-OIG investigation reports demonstrates its importance. Additionally, although Defendants provide no clarity as to what "immigration history" information they have redacted, Hoq. Decl. Ex. Y at 9-11, such information is likely relevant to the policy issues surrounding ICE's determinations to release Medina-Leon and Gulema before their deaths.

Further, where records at issue indicate potential "wrongdoing on the part of the government official[s]," public interest in disclosure is particularly great. *Hunt v. F.B.I.*, 972 F.2d 286, 289-90 (9th Cir. 1992). Here, one court has already found that ICE's practice of releasing people nearing death constituted an attempt to "actively conceal" a death, raising "significant concerns regarding the Government's actions and lack of candor." Order at 1, *Hernandez Roman*, No. CV-20-00768-TJH, ECF No. 1031. These policy concerns outweigh any privacy interest in the redacted information.

Defendants fail to offer any justification for these redactions, and the Court should order them lifted. In the alternative, the Court should review these redactions *in camera* to weigh the private and public interests for the release of this information. 5 U.S.C. §552(a)(4)(B).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:2-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

18

**C. Defendants Have Improperly Withheld Documents Referred by DHS-OIG to ICE.**

DHS-OIG has also improperly withheld documents that it has referred to ICE, which the Court should order DHS-OIG to produce now. Although an agency in possession of potentially responsive FOIA records may refer them to the agency where they originated for processing, the referral constitutes an unlawful withholding if the "net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 67 (D.D.C. 2008). The agency making the referral may only do so once it determines the originating agency had an "intent to control," and the referral must be "prompt and public." *McGehee v. C.I.A.*, 697 F.2d 1095, 1111 (D.C. Cir. 1983). Further, the referring agency continues to be "ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request," regardless of its referral of the documents to another agency. *Plunkett v. Dep't of Just.*, 924 F. Supp. 2d 289, 305 (D.D.C. 2013).

Here, none of these criteria are met, such that DHS-OIG's referral of documents to ICE constitutes an unlawful withholding. DHS-OIG informed Plaintiff of its anticipated referral of responsive records to ICE on August 18, 2022, but ignored Plaintiff's request that it demonstrate that ICE had an intent to control the records before it made the referral. Hoq Decl. Ex. A at 2 (DHS-OIG's Aug. 18, 2022 Letter). Between November 23, 2022 and July 31, 2023, DHS-OIG referred a total of 1,420 pages to ICE. Cho Decl. ¶¶ 5-13. On February 8, 2024, ICE informed Plaintiff that it had processed 583 of the 1,420 pages referred by DHS-OIG, producing 567 pages in part, and deeming 16 pages as nonresponsive. Hoq Decl. Exs. W and X (Defs.' Jan. 31, 2024 Letter and Feb. 8, 2024 Email).  In response to Plaintiff's request that it produce these 16 pages, ICE conceded they were responsive to the Request, and agreed to produce them. Hoq Decl. Exs. Z, AA (Pl.'s Feb. 13,

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

19

2024 Letter, Defs.' Feb. 21, 2024 Letter). However, ICE provided no timeframe for its production, and now claims that these 16 pages "are largely illegible." Hoq Decl. Ex. AA. Defendants should not be permitted to avoid production of documents in legible form.[30]

Plaintiff has requested production of the remaining 853 pages referred by DHS-OIG to ICE, which, to the best of Plaintiff's knowledge, Defendants have not produced. Hoq Decl. Ex. Z (Pl.'s Feb. 13, 2024 Letter). Plaintiff has repeatedly asked Defendants to produce these referred records, or at least identify when they would do so. Hoq Decl. Exs. C, F, H, L, N, P, Z (Pl.'s Sept. 14, 2023, Oct. 19, 2023, Nov. 9, 2023, Dec. 8, 2023, Dec. 13, 2023, Dec. 21, 2023, and Feb. 13, 2024 Letters). Defendants, however, have failed to provide clear information about the status of these documents. Hoq Decl. Exh. AA (Defs.' Feb. 21, 2024 Letter). For example, several documents referred by DHS-OIG to ICE appear to be dated after October 1, 2015 and relate to Mr. Gulema's release. Cho Decl. Ex. A, Jun. 2023: 0145-46. Defendants have stated that all referred documents "will be produced by the agency that created the records, i.e. the agency to which OIG referred the records." Hoq Decl. Ex. Q at 1 (Defs.' Jan. 17, 2024 Letter). But ICE has also stated that with respect to documents related to Mr. Gulema, "[a]ll pages from October 1, 2015 and after have been processed." Hoq Decl. Ex. S at 1 (Defs.' Jan. 22, 2024 Letter). Plaintiff has repeatedly asked when these referred documents will be produced, but Defendants have declined to provide any clear response. Hoq Decl. Ex. T and V (Plaintiff's Jan. 26 and Feb. 5, 2024 Letters; Defs.' Feb. 21, 2024 Letter).

Given Defendants' unjustified and prolonged withholding of the documents referred to ICE, the Court should order their expedited production by DHS-OIG. *Nat'l*

---

[30] "Without question, a FOIA respondent has a duty to release legible, complete records." *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Hum. Servs.*, 844 F. Supp. 770, 779–80 (D.D.C. 1993); *see also Grove v. Dep't of Just.*, 802 F. Supp. 506, 519 (D.D.C. 1992).

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

20

*Pub. Radio, Inc. v. U.S. Dep't of the Treasury*, No. CV-19-17(JDB), 2021 WL 1850696, at *2 (D.D.C. Mar. 31, 2021). Agencies do not have "carte blanche to let the consultation process play out without any time restraints" and are "not absolved of [their] obligations under FOIA to timely produce the requested records solely because [they have] refer[red] the documents elsewhere for consultation." *Id.* (internal quotations and citations omitted). Here, it has been a year and a half since DHS-OIG anticipated referring responsive records to ICE, and 16 months since it first informed Plaintiff it would be referring the first batch of records to ICE.[31] Courts have ordered expedited production of referred records in similar circumstances. *Keys*, 570 F.Supp.2d at 70 (one year delay); *Hall v. C.I.A.*, 668 F. Supp. 2d 172, 182 (D.D.C. 2009) (two-year delay); *see also Truesdale v. U.S. Dep't of Just.*, 731 F. Supp. 2d 3, 7–8 (D.D.C. 2010) (denying government summary judgment where it failed to account for delayed processing of referred records). The Court should also order the production of these documents in legible form.

**D.     DHS and DHS-OIG Failed to Adequately Search for Responsive Records.**

Records produced by DHS-OIG relating to DHS's investigations into the death of Martin Vargas Arellano clearly show that DHS-OIG and DHS (including its component CRCL) failed to conduct an adequate search for records as required by FOIA.  Where a FOIA requestor claims an agency has failed to adequately search for responsive records, "[t]he trial court must assess whether the Government has met its burden of demonstrating that its search was 'reasonably calculated to uncover all relevant documents.'" *Transgender L. Ctr.* 46 F.4th at 779 (citation omitted). Agencies must demonstrate the adequacy of their search "beyond material doubt." *Id*. Where agencies have "positive indications of overlooked materials," they have a

---

[31] See Cho Decl. ¶ 13 for summary of DHS-OIG's referrals to ICE.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
Plaintiff's *Amended* Motion for Summary Judgment

21

"duty to follow obvious leads" including searching other agency components for responsive records. *Id*. (quotations and citations omitted).

At issue here are two documents produced by DHS-OIG in its June and August 2023 productions.  First, DHS-OIG produced an April 5, 2021 letter sent to DHS Secretary Alejandro Mayorkas, CRCL, and ICE by legal services providers representing detained immigrants as part of the National Qualified Representative Program ("NQRP"). Cho Decl. Ex. A, Aug. 2023: 4-11. The letter "demand[ed] that your office holds ICE accountable for the death of [Martin Vargas Arellano]," and asked that CRCL "initiate an investigation into [Mr. Vargas Arellano's death]." *Id*. at 0007. DHS-OIG produced this letter to Plaintiff after it consulted with the DHS Privacy Office. Hoq Decl. Ex. D (Defs.' Oct. 2, 2023 Letter). Second, DHS-OIG produced a 4-page Case Summary Report indicating that DHS-OIG and other DHS components had opened investigations related to the letter. Cho Decl. Ex. K. It appears OIG "[o]pened" an inquiry into the matter on April 26, 2021, "Refer[red]" the matter on June 30, 2021, and "Closed" the matter on July 27, 2021. *Id*. The Case Summary Report also identifies three "Ref Case[]" numbers related to the matter, including "C21-ICE-DO-17226," "Contact-DHS-21-2188," and "HLCN1618517941207." *Id*.

Each of these references in these records provide "clear and certain" leads for additional searches. *See Lawyers' Comm. for C.R. Under L. v. U.S. Dep't of Just.*, No. 18-CV-167, 2020 WL 7319365, at *11 (D.D.C. Oct. 16, 2020). For example, DHS-OIG should have searched for records, including email and other correspondence, related to who referred the NQRP letter to DHS-OIG, how the letter resulted in DHS-OIG opening a case in response to it, and where and why DHS-OIG referred the matter out. DHS should have searched the components to which the NQRP providers sent the letter, including CRCL. DHS-OIG and DHS should have searched each of the case numbers referenced on the Case Report. By failing to

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

22

conduct additional searches based on these "clear leads," Defendants have plainly failed to meet FOIA's search adequacy requirements.

Plaintiff repeatedly requested that Defendants DHS-OIG and DHS conduct additional searches related to the NQRP letter. Hoq Decl. Exs. C, F, H, N (Pl.'s Sept. 14, 2023, Oct. 19, 2023, Nov. 9, 2023, Dec. 13, 2023 Letters). Defendants refused. Hoq Decl. Exs. G, J (Defs.' Nov. 2, 2023 and Nov. 30, 2023 Letters). DHS-OIG's Search Adequacy Letter is devoid of any explanation for why it refused to conduct additional searches. Hoq Decl. Ex. R (Defs.' Search Summary).

Defendants take the erroneous position that because Plaintiff originally submitted its FOIA Request to the DHS Privacy Office, which determined that only Defendants DHS-OIG and ICE would likely have responsive records, it now has no further obligation to search other DHS components. Hoq Decl. Ex. J (Defs.' Nov. 30, 2023 Letter). But this position is plainly wrong. According to DHS's own FOIA regulations, "[t]he Privacy Office will forward the request to the component(s) that it determines to be most likely to maintain the records that are sought." 6 C.F.R. § 5.3(a)(2). "[T]here is no indication [in the regulations] that the Privacy Office must make that determination once and for all time when it makes its initial referral. *Am. C.L. Union v. Dep't of Homeland Sec.*, No. CV-20-3204-RDM, 2023 WL 2733721, at *6 (D.D.C. Mar. 31, 2023); *see also Protect the Pub.'s Tr. v. U.S. Dep't Homeland Sec.*, No. 22-cv-138-JEB, 2022 WL 3226275, at *4 (D.D.C. Aug. 10, 2022). The regulations also contemplate that if "a component's FOIA office determines that a request was misdirected within DHS, the receiving component's FOIA office shall route the request to the FOIA office of the proper component(s)." 6 C.F.R. § 5.4(c). Even if the DHS FOIA Office did not initially believe components other than ICE and DHS-OIG were likely to have responsive records, it became aware that it should refer the Request to other DHS components including CRCL as early as August 2023, when DHS-OIG consulted with the Privacy Office. Hoq Decl. Ex. D (Defs.' Oct. 2,

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

23

2023 Letter). Defendants also became aware that DHS should refer the Request to CRCL when Plaintiffs specifically reminded it of its obligation to do so. Hoq Decl. Exs. C, F, H, N (Pl.'s Sept. 14, 2023, Oct. 19, 2023, Nov. 9, 2023, Dec. 13, 2023 Letters). Consequently, either through its Privacy Office or otherwise, DHS was "duty-bound to forward the request to [CRCL]." *Am. C.L. Union*, 2023 WL 2733721, at *6.

## IV.   CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment should be GRANTED.

The undersigned counsel of record for Plaintiff certifies that this brief contains 6,997 words, including footnotes and tables, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted this 28th of February, 2024.

*/s/ Laboni Hoq*

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| MICHAEL KAUFMAN (SBN 254575)<br>MKaufman@aclusocal.org<br>ACLU FOUNDATION OF<br>SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S *AMENDED* MOTION FOR SUMMARY JUDGMENT

24