LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

MICHAEL KAUFMAN (SBN 254575)
MKaufman@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>*Defendants*. | Case No. 2:22-CV-04760-SHK<br><br>**PLAINTIFF'S STATUS REPORT**<br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

EUNICE CHO (*pro hac vice*)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

## I. INTRODUCTION

Plaintiff American Civil Liberties Union of Southern California ("Plaintiff" or "ACLU SoCal") respectfully files this Status Report regarding its FOIA request ("Request") for records related to ICE's practice of releasing detained immigrants facing imminent death from custody. ECF No. 62 (Order). Since the Court ordered the parties to meet and confer, the parties have made some progress in narrowing the scope of documents to be produced. Plaintiff has waived production of a large category of documents related to Mr. Teka Gulema for Parts 1 through 3 of the Request and significantly narrowed search parameters for Parts 4 and 5. The parties have also come to agreement on search parameters for Parts 8 and 9.

Several issues regarding Defendants' search, however, remain unresolved, such that the Court's intervention is warranted to ensure timely resolution of this case. Defendants have declined to provide basic information such as search terms, locations, custodians, and hit counts necessary to narrow the scope of searches, finalize search parameters, and determine the number of pages left to be produced. This information is important to ensure Defendants' timely completion of searches and production of records.

To assist in the resolution of this matter, Plaintiff respectfully requests that the Court order:

1) That Defendants provide Plaintiff with responsive answers to the list of questions provided at Appendix A of this Status Report, and a final list of search terms, locations, dates, custodians (by name or title searched), and disaggregated hit count by search term, custodians, and locations for Parts 1-9 within 7 days of the order;

2) That Plaintiff provide Defendants with an updated position as to its waiver of documents regarding Teka Gulema dated before October 1, 2015 within 14 days of the order;

3) That ICE clarify whether or not it accepts Plaintiff's proposal for its searches in response to Parts 4 of the Request, and provide a final list of search terms,

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

1

custodians, locations, and date range included in its search within 14 days of the order;

4) That ICE clarify whether it will conduct a search of custodians from ICE leadership, Enforcement and Removal Operations ("ERO"), Office of the Principal Legal Advisor ("OPLA") and ICE Health Service Corps ("IHSC") that participate in the weekly Significant Detainee Illness meetings in response to Part 5 of the Request within 14 days of the order. If so, ICE should also provide a final list of search terms, custodians, locations, and date range included in its search in response to Part 5 at that time.

5) That ICE complete its production of records responsive to Parts 1-5, including all records referred to it by DHS's Office of Inspector General (DHS-OIG), by July 30, 2024, and thereafter commence production of records responsive to Parts 6, 7, 8, and 9 at a rate of 3,000 pages per month, ensuring that all documents produced are legible;[1]

6) That the Parties provide the Court with a proposed summary judgment briefing schedule as to Parts 1-5 of Plaintiff's Request within 30 days of the order.

## I.   FACTUAL BACKGROUND

On December 8, 2023, this Court ordered that the parties meet and confer to address ICE's search for and production of records. Order, ECF No. 62. Counsel for Plaintiff and Defendants met on December 14, 2023. During the conference, however, ICE took the position that it need only provide Plaintiff with the information that the Court specifically ordered it to provide in paragraph (1)(b) of its Order, ECF No. 62 at 15, and that it need only provide the hit counts of searches (not search terms used or locations searched) for Parts 4 and 6-9 of the Request. Defendants were unable to or refused to provide direct responses to Plaintiff's questions, and stated that Plaintiff must provide all its questions in a letter, and that

---

[1] Courts may agencies to prioritize the production of certain documents under FOIA. *See Urb. Air Initiative, Inc. v. Env't Prot. Agency*, 442 F. Supp. 3d 301, 309 (D.D.C. 2020) (ordering defendant "to prioritize any responsive emails"); *Leopold v. United States Dep't of Just.*, 487 F. Supp. 3d 1, 8 n.1 (D.D.C. 2020) (ordering government to "prioritize its processing and production of" specific documents).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

2

Defendants would thereafter respond in writing. Parties agreed that they would reconvene on January 17, 2024. *See* ECF No. 62 at 15 (Order); ECF No. 66-11 at 22-23 (Pl.'s Dec. 21, 2023 Letter). On January 17, however, Defendants canceled the Parties' conference scheduled for that day. ECF No. 66-8 ¶ 17 (Hoq Decl.).

Plaintiff is open to proceeding by writing; however, Defendants have failed to answer questions necessary to finalize search parameters in their written correspondence. Defendants still have not responded to a number of Plaintiff's questions or provided basic information necessary to determine the number of pages to be produced. Defendants have not finalized search parameters, refusing to take a clear position as to whether or not they accept Plaintiff's suggestions for Parts 4 and 5, and have refused to conduct a search for Part 7 in the only location where responsive records are searchable. Although Plaintiff filed its Request almost two years ago, ICE has yet to complete its production of documents responsive to Parts 1-3, and still has not produced *any* documents responsive to Parts 4-9.

## II.   SEARCH STATUS SUMMARY

A summary of the status of the search for each Part is below.

**Parts 1-3.** Parts 1-3 seek information about four named detained immigrants who died shortly after ICE released them from custody. On January 22, 2024 Defendants reported that ICE has approximately 38,285 pages remaining to process, including 1,157 pages related to Jose Ibarra Bucio; 5,625 pages related to Martin Vargas Arellano, no pages related to Johana Medina Leon, and 31,865 pages related to Mr. Teka Gulema.[2] Defendants reported that with respect to Mr. Gulema, "all pages from October 1, 2015 and after have been processed." ECF No. 66-13 at 2 (Defs.' Jan. 22, 2024 Letter).

---

[2] Defendants' calculations appear to contain an arithmetic error. The sum of the page counts for Mr. Gulema, Mr. Vargas Arellano, and Mr. Ibarra Bucio is 38,647, but Defendants claim that the total page count remaining to be processed is 38,285.

On February 5, 2024, pursuant to the Court's Order, ECF No. 62 at 15, Plaintiff informed Defendants that it waived production of documents dated prior to October 1, 2015, with the exception of:

- Any records referred by DHS-OIG to ICE;
- Any records resulting from a search conducted of the following custodians: DHS Headquarters personnel; the New Orleans Field Office Director; Mr. Gulema's ERO Officer; or the custodian identified (but redacted) at Page 10542 of ICE's production, who was responsible for managing Mr. Gulema's case at ICE Headquarters.
- Any documents sent to or received from members of the Senate or their staff regarding Mr. Gulema.

ECF No. 66-13 at 27 (Pl.'s Feb. 5, 2024 Letter). These three exceptions are intended to ensure that the production targets the most relevant documents, even if they might bear a date before October 1, 2015. Plaintiff then requested that Defendants provide a page count of remaining pages responsive to Parts 1-3, a list of custodians searched, and whether or not records of the person identified at Page 10542 had been searched, noting that Plaintiff may be willing to further limit production based on Defendants' response. ECF No. 66-13 at 27-28.  (Pl's Feb. 5, 2024 Letter).

On February 21, 2024, Defendants confirmed that it had searched records for the New Orleans Field Office Director, and two other individuals in that office, but declined to provide a page count of remaining documents specific to those custodians. Defendants also declined to provide a list of other custodians searched, stating that it would continue to process documents potentially responsive to the Request "as ICE has interpreted them." ECF No. 66-15 at 6 (Defs.' Feb. 21, 2024 Letter).  ICE also claimed that it could not determine how many pages (if any) resulted from a search of DHS Headquarters personnel, because "the records are not

separated by custodian." *Id.* at 7. This thin excuse, like ICE's former claims regarding its inability to de-duplicate email records or sort by date, strains credulity.[3]

ICE's failure to provide clear, responsive information regarding its search, however, hampers Plaintiff's attempts to narrow the search and reduce Defendants' production burden. For example, Plaintiff does not know how many remaining records are the result of a search of the New Orleans Field Office Director, and whether, in light of its exceptions, Plaintiff's waiver materially reduced the number of pages regarding Mr. Gulema to be produced by Defendants. Plaintiff thus requests that the Court order ICE to provide a hit count disaggregated by search terms, custodians, and locations searched and respond to previously posed questions, *see* Appendix A. Plaintiff also requests that with this information, it be permitted to provide an updated position as to its waiver of documents regarding Teka Gulema dated before October 1, 2015.

Plaintiff has also repeatedly requested that Defendants produce records referred by DHS-OIG to ICE. *See, e.g.* ECF No. 50-2 at 201 (Pl's Jul. 12, 2023 Letter); ECF No. 66-10 at 3 (Pl's Dec. 8, 2023 Letter); ECF No. 66-13 at 28 (Pl.'s Jan. 26, 2024 Letter). These records include documents related to Mr. Gulema dated after October 1, 2015 that are likely highly responsive to Plaintiff's Request including ICE release notifications (Oct. 22, 2015); emails from Gulema's Case Officer

---

[3] Custodian metadata is commonly used in document processing. In the Relativity platform that Defendants use, *see* ECF No. 48-1 at ¶¶ 17, 19, the "Custodian" metadata filed is a "system-created metadata field [that is] always populated." Relativity One, *Mapping processing fields*, https://help.relativity.com/RelativityOne/Content/Relativity/Processing/Mapping_processing_fields.htm (last visited Feb. 28, 2024). Defendants have also admitted that their system includes "Email From" and "Email To" metadata. ECF No. 48-1 at ¶ 18.c. Even if they lack custodian metadata as they claim, they can use this "Email From" and "Email To" metadata to identify all documents in their production that were sent to or from the people Plaintiff has identified, which would approximate the custodial search Plaintiffs requested.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

5

regarding release notification emails (Oct. 22, 2015); an email dated Oct. 23, 2015 stating that "Gulema was not to be released at this time"; an email dated Nov. 9, 2015, regarding the hold on Gulema's release; and forms dated November 24, 2015, including DHS ICE Form I-216 (Records of Persons Transferred), and DHS ICE Form I-203 (Order to Release Alien). ECF No. 66-13 at 28 (Pl's Feb. 5, 2024 Letter).

Although ICE has now produced 583 of 1,420 pages referred by DHS-OIG to ICE on February 8, 2024, this release did not include documents specified above. ICE has also stated that with respect to documents related to Mr. Gulema, "[a]ll pages from October 1, 2015 and after have been processed." ECF No. 66-13 at 2 (Defs.' Jan. 22, 2024 Letter). Plaintiff has repeatedly inquired when these documents will be produced, but Defendants have declined to provide any clear response, stating only that "ICE will be processing them in due course." ECF No. 66-13 at 7 (Pl.'s Jan. 26, 2024 Letter); ECF No. 66-13 at 27-28 (Pl.'s Feb. 5, 2024 Letter); ECF No. 66-15 at 5 (Defs.' Feb. 21, 2024 Letter). The Court should require ICE to respond to Plaintiff's questions at Appendix A, and provide a final list of search terms, locations, dates, custodians, and disaggregated hit count.

**Part 4.** Part 4 seeks information related to ICE and ICE Health Service Corps ("IHSC") directives, policies, procedures, protocols, or trainings related to detainee deathbed releases. On February 5, 2024, Plaintiff waived Defendants' previous overbroad search, and agreed that ICE could search hard drive and server data of IHSC's Policy Office and ICE's Office of Regulatory Affairs and Policy ("ORAP"). ECF No. 66-13 at 28-29 (Pl.'s Feb. 5, 2024 Letter).

IHSC has located 27 pages of potentially responsive records, and ORAP has located 16 pages. Defs.' Jan. 22, 2024 Letter. Plaintiff, however, is concerned that the search terms used are underinclusive and fail to include key terms that are highly relevant to the subject matter, including terms that ICE had previously agreed upon, such as "death," "life support," "critical condition," "intensive care," "ICU," and

"hospice." Plaintiff requested that IHSC and ORAP conduct a search with these additional terms and provide a hit count of responsive documents. ECF No. 66-13 at 8-9 (Pl.'s Jan. 26, 2024); ECF No. 66-13 at 28-29 (Feb. 5, 2025 Letter). ICE, however, has refused to take a clear position as to whether or not they will conduct its searches according to Plaintiff's suggestion, stating only that it "will consider Plaintiff's request as it continues processing records and reviewing documents that were identified in response." ECF No. 66-15 at 6 (Defs.' Feb. 21, 2024 Letter). ICE's position not only delays the parties' ability to move for summary judgment regarding Part 4, but also strains credulity: even with deliberate speed, ICE should be able to review the 46 pages it has located thus far relatively quickly, and determine whether or not to conduct a search with Plaintiff's suggested terms. The Court should order ICE to clarify whether or not it accepts Plaintiff's proposal for its searches in response to Part 4, and provide a final list of search terms, custodians, locations, and date range included in its search, and a resulting hit count, if a supplemental search is conducted.

**Part 5.** Part 5 originally sought a number of categories of documents in the possession of ICE leadership, ICE Enforcement and Removal Operations ("ERO"), IHSC, and ICE Office of Professional Responsibility regarding deathbed releases, including from several ICE database systems. ECF 1-1 at 6. The Parties have already agreed to search terms. Plaintiff has agreed to significantly narrow the scope of Part 5, waiving searches of Medical Transfer Summary Documents from DHS's eHR System and Alien Medical Records system.

Plaintiff also agreed to significantly narrow the list of custodians searched to "all staff who participate in the weekly Significant Detainee Illness (SDI) meeting and any custodian who possesses the SDI list." ECF No. 66-13 at 29 (Pl.'s Feb. 5 Letter); *see also* ECF No. 62 at 1 (Order) (noting same). As ICE ERO' Directive No. 11853.3, *Significant Detainee Illness*, states, "the SDI list ensures Enforcement and Removal Operations (ERO) HQ is aware of detainees/residents with significant

1  medical conditions and the potential effect on enforcement operations." The criteria
2  to be included on the SDI list includes cases where there is "significant coordination
3  required to repatriate *or to release* a detainee/resident in the United States due to their
4  medical condition." *See* ECF No. 50-2 at 161, 165. The Directive notes that the "SDI
5  meeting is a collaborative effort involving IHSC, ERO Field Operations, and the
6  Office of the Principal Legal Advisor (OPLA)." *Id.*

ICE has conducted a search of *one* custodian, the Assistant Director of IHSC, and has located 551 pages. ECF No. 66-13 at 3 (Defs.' Jan. 22, 2024 Letter). However, this search is inadequate on its face, as Part 5 requests records from other ICE offices that participate in the SDI meeting, including ICE leadership and ERO. ECF No. 66-13 at 9 (Pl.'s Jan. 26, 2024 Letter). ICE again states that it will "consider … Plaintiff's request for further searches" after it has processed the 551 pages it has already located, but argues that Plaintiff's proposal to search all staff who "participate" in the SDI meeting and custodians who possess the SDI list is unduly burdensome. ECF No. 66-15 at 6 (Defs.' Feb. 21, 2024 Letter). But Defendants' position again delays the Court's ability to determine whether or not ICE's search is adequate and to order production of the appropriate custodians.

ICE should be able to review 551 pages without undue difficulty and determine what, if any, additional custodians it will search. The Court should order ICE to clarify whether it will conduct a search of custodians from ICE leadership, ERO, OPLA, and IHSC who participate in the weekly SDI meetings, and if so, provide a final list of search terms, custodians, locations, and date ranges.

**Parts 6 and 7.** Parts 6 and 7 seek Significant Incident Reports ("SIR") and Significant Event Notification reports ("SEN") related to the release or death of hospitalized detainees. ECF No. 1-1 at 6-7. The Parties have agreed to search terms. ECF No. 50-2 at 160-61 (Pl.'s Jun. 26, 2023 Letter). However, ICE argued that its ERO component could not search for SIR and SEN records without entering specific

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

8

1 names, dates, or A numbers. ECF No. 66-15 at 7-8 (Defs.' Feb. 21, 2024 Letter). Plaintiff thus repeatedly pointed out that ICE can search the records of the ICE Joint Intelligence Operations Center ("ICE-JIOC"), which "analyzes the SIRS and sends summaries to the appropriate … field offices."[4] *See* ECF No. 61 at 10 (summarizing Plaintiff's repeated requests that Defendants search ICE-JIOC files). On November 30, 2023, ICE stated that it "has no objection to searching JIOC and will do so." ECF No. 66-9 at 64 (Defs.' Nov. 30, 2023 Letter). On January 22, 2024, however, Defendants reversed course, stating that ICE-JIOC has now "deferred the search tasking to ERO because the data points requested do not originate with JIOC" and that "[e]ven if JIOC were to conduct a search for SIRs and SENs, they too would need identifying information." ECF No. 66-13 at 3.

Defendants' constantly shifting position with respect to its search of ICE-JIOC is not reasonable. First, ICE's position that ICE-JIOC need not conduct this search because the records did not ***originate*** within ICE-JIOC is wrong. FOIA requires agencies to search for and produce not only records it created but also "all nonexempt information received by an agency as it carries out its mandate." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 147 (1989). This position is particularly unsupportable here, where ICE contends that ERO, its component where the records originated, is unable to search them by search terms. *See* ECF No. 66-15 at 6-7 (Defs.' Feb. 21, 2024 Letter). Defendants' further unsupported claim that ICE-JIOC "would need identifying information" to conduct a search is simply untrue. As DHS's own privacy assessment notes, ICE-JIOC analyzes and sends summaries of the SIRs to ICE's field offices.[5] ICE could conduct a search, using the agreed-upon search

---

[4] DHS, Privacy Impact Assessment for the Significant Event Notification (SEN) System 1-2, Oct. 15, 2021, https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice023a-sen-october2021.pdf.

[5] *Id.*

terms, of these summaries, without identifying information. ICE's Kafkaesque position that they need not search the only location where these records are searchable does not square with their obligations under FOIA.

ICE states that for Part 6 and 7, its Custody Management Acting Deputy Assistant Director of the Custody Programs Division located 304 pages and 9 pages of documents, respectively using the terms "detainee death directive;" and 93 pages of documents using the terms "release, hospital, emergency room, long-term, facility, and rehab." Defs.' Feb. 21, 2024 Letter. Although these records are relevant, Defendants' search is inadequate as it does not address SIR and SEN reports, as specified in the Request.

**Part 8.** Part 8 addresses records identifying detainees who were hospitalized due to COVID-19 and subsequently released from custody, or were released from custody prior to hospitalization. The parties have currently agreed to search terms and locations for Part 8. Defendants have conducted a search of Dr. Stewart Smith of IHSC, and have located 1,171 pages of potentially responsive records, which they have yet to produce. ECF No. 61 at 10.

**Part 9.** Part 9 addresses bills, charges, and records of payment made for detainees released from custody while hospitalized. The parties have currently agreed to search terms and locations. Defendants have conducted a search and located 1 excel spreadsheet, which they have yet to produce.

Respectfully submitted this 1st day of March, 2024.

*/S/ Laboni Hoq*

| LABONI A. HOQ (SBN 224140) | EUNICE CHO (pro hac vice) |
|---|---|
| laboni@hoqlaw.com | echo@aclu.org |
| HOQ LAW APC | AMERICAN CIVIL LIBERTIES |
| P.O. Box 753 | UNION FOUNDATION |
| South Pasadena, California 91030 | NATIONAL PRISON PROJECT |
| Telephone: (213) 973-9004 | 915 Fifteenth Street NW, 7th Floor |
|  | Washington, DC 20005 |
|  | Telephone: (202) 548-6616 |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

| | |
|---|---|
| MICHAEL KAUFMAN (SBN 254575)<br>MKaufman@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT

11

**Appendix A**

Parts 1-3

1. Has ICE completed its production of documents related to Mr. Gulema dated after October 1, 2015? If not, how many pages remain?
2. How many of the 1,420 pages referred from OIG to ICE refer to Mr. Gulema? Of those pages, how many are dated on or after October 1, 2015? (From Pl.'s Jan. 26, 2023 Letter).
3. Who is the officer referred to at Document 10542 (redacted name)? If ICE declines to provide her name, what is her title and department? Did ICE conduct a search for her records? If so, how many pages of these records are included in the 31,865 remaining pages? (From Pl.'s Jan. 26, 2023 Letter).
4. Did ICE conduct a search of records belonging to: the New Orleans ICE Field Office Director? Mr. Gulema's ICE Enforcement and Removal Operations (ERO) Officer? ICE Headquarters Staff? (From Pl.'s Jan. 26, 2023 Letter).
5. If ICE conducted a search of these custodians, please provide a page count for remaining documents originating from these custodians. Please omit any pages including duplicate copies of SEN Report Notifications already produced to Plaintiff. Please provide a page count including attachments to these emails, and a page count excluding attachments to these emails. (From Pl.'s Jan. 26, 2023 Letter).
6. Of the 31,865 pages remaining, how many pages (not documents) include: 1) medical records regarding Mr. Gulema; 2) emailed SEN daily or biweekly reports regarding Mr. Gulema's health status? (From Pl.'s Jan. 26, 2023 Letter).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SB-AFM
PLAINTIFF'S STATUS REPORT – APPENDIX

1