***American Civil Liberties Union Foundation of Southern California v. U.S. Immigration and Customs Enforcement, et al.***
Case No. 2:22-cv-04760-SHK

Department of Homeland Security, Office of Inspector General *Vaughn* Index

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>         Plaintiff,<br><br>     v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>         Defendants. | Civil Action No. 2:22-cv-04760-SHK |

### DHS OIG *Vaughn* Index

This *Vaughn* Index describes DHS OIG's records produced in November 2022, December 2022, March 2023, June 2023, and July 2023, subject to the Freedom of Information Act ("FOIA") exemptions described more fully below, in FOIA case no. 2022-IGFO-00158. This *Vaughn* Index is being provided in response to Plaintiff's challenges to certain DHS OIG withholdings, as identified in Plaintiff's Motion for Summary Judgment, and provides the basis under which information has been withheld.

Information that is being challenged by Plaintiff was withheld pursuant to three FOIA Exemptions, 5 U.S.C. §552(b)(5), (b)(6), and (b)(7)(C) [1].

---

[1] Notwithstanding the markings made on the records that were previously produced, DHS OIG is no longer applying (b)(3) to the redactions made on the following pages. The application of any other exemptions included remains:
1. November 2022 production, pages released in part - 23, 24, 28
2. December 2022 production, pages released in part - 40, 42, 44, 67, 68, 75, 99
3. June 2023 production:
   a. Pages released in part: 1, 118, 151, 157
   b. Pages withheld in full: 6, 8, 10, 19, 21, 23, 32, 34, 36, 42, 44, 46, 55, 57, 59, 66, 68, 70, 79, 81, and 83
4. July 2023 production, pages withheld in full: 21, 34, 53, 66, 81, 111, 155, 170, 196, 198, 200, 215, 217, 219, 264, 265, and 267

## EXEMPTION SUMMARIES AND EXPLANATIONS

| *Vaughn* Entry | Production Month and PDF Page Number(s) | Withholding Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemptions(s) Applied |
|---|---|---|---|---|
| (1) | November 2022: <br><br> 15, 16, 33 <br><br> December 2022: <br><br> 39, 55, 56 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Jonathan Medina-Leon, which includes the sensitive health diagnosis and private, personal activities of the subject (November 2022 production: last paragraph on page 15, first sentence on page 16, last paragraph on page 16, third and fifth paragraphs on page 33. December 2022 production: second, third, and fifth paragraphs on page 39; last paragraph on page 55; first, second, and fourth paragraphs on page 56). This information was withheld under FOIA Exemptions 6 and 7(C). <br><br> Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI. <br><br> Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the intimate, private details of the subject of a DHS OIG law enforcement investigation. | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Under (b)(6), DHS OIG determined that the disclosure of this sensitive, personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and details regarding private matters of the decedent. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information, including the sensitive health information, was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and details regarding their private activities outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt

| | | | | |
|---|---|---|---|---|
| | | | information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.<br><br>Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain, such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.<br><br>Lastly, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities. | |
| (2) | November 2022:<br><br>20<br><br>December 2022:<br><br>40, 95, 96 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes a specific, sensitive medical test offered to the subject of the ROI, Jonathan Medina-Leon (November 2022 production: second paragraph on page 20; last sentence on page 20; December 2022 production: second paragraph on page 40; last paragraph on page 95; eighth paragraph on page 96), and medical history of subject (November 2022: third paragraph on page 20). This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.

Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the specific, sensitive medical test given to the subject of a law enforcement investigation by DHS OIG.

Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal a specific, sensitive medical test offered to the subject of the ROI, Jonathan Medina-Leon. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin,

or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. Details identifying a specific, sensitive medical test which correlates to the subject's sensitive medical history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of this sensitive medical information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain, such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.

Lastly, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS

| | | | OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities. | |
|---|---|---|---|---|
| (3) | November 2022:<br><br>23, 24, 28<br><br>December 2022:<br><br>40, 42, 44, 67, 68, 75, 99<br><br>June 2023:<br><br>1 | Partial | Redactions: These pages include an e-mail, a case summary report, and pages from DHS OIG's Report of Investigation (ROI) all pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy immigration information relating to the subject of the e-mail, case summary report, and ROI – Jonathan Medina-Leon (November 2022 production: last two paragraphs on page 23; first paragraph, second paragraph, and last paragraph on page 24; last paragraph on page 28; December 2022 production: second to last paragraph on page 40; second paragraph on page 42; first bullet point on page 44; last two paragraphs on page 67; first paragraph, second paragraph, and last paragraph on page 68; last paragraph on page 75; second paragraph in the "Comments" section of page 99; June 2023 production: second redaction in the first paragraph of the first email). This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

requested.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected information that is inherently private and personal to the subject of a DHS OIG investigation.

Under (b)(6), DHS OIG determined that the disclosure of the privacy information of the decedent would constitute a clearly unwarranted invasion of this individual's personal privacy interests in being free from harassment, intimidation, legal consequences, embarrassment, physical harm, and derogatory inferences and suspicion.  The disclosure of this information would serve no public benefit and would not inform the public how DHS OIG is executing its statutory responsibilities. Further, as mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information was compiled in a DHS OIG report that stemmed from a law enforcement investigation. Under the FOIA, (b)(7)(C) provides protection for law enforcement information that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. Personal privacy details pertaining to the subject's life and immigration history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct

investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of this sensitive information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain, such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.

Moreover, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities.

Lastly, pursuant to (b)(6) and (b)(7)(C), these portions of the records are also withheld in compliance with a DHS immigration regulation that requires this information be protected from disclosure.

| (4) | June 2023:<br><br>118, 151, 157 | Partial | Redactions: These pages include an e-mail, a case summary report, and those from DHS OIG's Report of Investigation (ROI) all pertaining to the death of Teka Gulema. The information specifically withheld from these pages includes personal privacy immigration information relating to the subject of the ROI, Teka Gulema (third paragraph on page 118; fourth paragraph on page 151; third paragraph on page 157). This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information requested. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected information that is inherently private and personal to the subject of a DHS OIG investigation.<br><br>Under (b)(6), DHS OIG determined that the disclosure of the privacy information of the decedent would constitute a clearly unwarranted invasion of this individual's personal privacy interests in being free from harassment, intimidation, legal consequences, embarrassment, physical harm, and derogatory inferences and suspicion. The disclosure of this information would serve no public benefit and would not inform the public how DHS OIG is executing its statutory responsibilities. Further, as | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

mentioned, DHS OIG compiled this information for law enforcement purposes, i.e., the information was compiled in a DHS OIG report that stemmed from a law enforcement investigation. Under the FOIA, (b)(7)(C) provides protection for law enforcement information that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. Personal privacy details pertaining to the subject's life and immigration history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of this sensitive information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain,

| | | | | |
|---|---|---|---|---|
| | | | such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.<br><br>Moreover, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities.<br><br>Lastly, pursuant to (b)(6) and (b)(7)(C), these portions of the records are also withheld in compliance with a DHS immigration regulation that requires this information be protected from disclosure. | |
| (5) | November 2022:<br><br>25, 26, 29, 37, 41, 50<br><br>December 2022:<br><br>37, 38, 41, 44, 51, 70, 71, 76, 97, 99<br><br>March 2023:<br><br>37, 47<br><br>June 2023:<br><br>1 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Jonathan Medina-Leon, which includes the sensitive health diagnosis and a specific, sensitive medical test given to the subject of the ROI, Jonathan Medina-Leon (November 2022 production: third and fourth paragraph on page 25; first paragraph on page 26; second paragraph on page 29; first paragraph on page 37; second paragraph and third paragraph on page 41; last paragraph on page 50). December production: first paragraph on page 37; first paragraph on page 38; second and third paragraph on page 41; third and fourth paragraph on page 44; last paragraph on page 51; third and fourth paragraph on page 70; first paragraph on page 71; second paragraph on page 76; last two paragraphs on page 97; third paragraph on page 99; | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

March production: third paragraph on page 37; third paragraph on page 47; June production: paragraph in the first e-mail). This information was withheld under FOIA Exemptions 6 and 7(C).

Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.

Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the specific, sensitive medical test given to the subject of a law enforcement investigation by DHS OIG.

Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and a specific, sensitive medical test offered to the subject of the ROI, Jonathan Medina-Leon. Further, as mentioned, DHS OIG compiled the sensitive health or medical information for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an

unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and details identifying a specific, sensitive medical test which correlates to the subject's sensitive medical history outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain, such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information

| | | | | |
|---|---|---|---|---|
| | | | in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.<br><br>Lastly, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities. | |
| (6) | November 2022:<br><br>38<br><br>December 2022:<br><br>43, 45, 92, 93 | Partial | Redactions: These pages include those from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon and the Death Certificate of Jonathan Medina-Leon. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Jonathan Medina-Leon, which includes the sensitive health diagnosis and the sensitive contributing health factor for the death of the subject (for November production: redaction in the "cause of death" section of the death certificate; for December production: first, fourth, and fifth paragraphs on page 43; fourth and fifth bullet points on page 45; first paragraph on page 92, and redaction in the "cause of death" section of the death certificate). This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.

Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected. The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and the sensitive contributing health factor for the death of the subject of a law enforcement investigation by DHS OIG.

Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and the sensitive contributing health factor for the death of the decedent. Further, as mentioned, DHS OIG compiled these records for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and sensitive contributing health factors to their death outweighs any public interest. The

personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart the Plaintiff's understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain, such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency or component, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.

Lastly, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities. Moreover, the Death Certificate, itself, is not an OIG-created record, rather it is a

| | | | third-party record obtained to support DHS OIG's law enforcement investigation. | |
|---|---|---|---|---|
| (7) | December 2022:<br><br>84 | Partial | Redactions: This page from DHS OIG's Report of Investigation (ROI) pertaining to the death of Jonathan Medina-Leon. The information specifically withheld from this page includes sensitive medical history and the sensitive health diagnosis of the subject of the ROI, Jonathan Medina-Leon (third and fifth paragraph on page 84). This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI.<br><br>Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis and history of the subject of a law enforcement investigation by DHS OIG.<br><br>Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health information and the sensitive the sensitive medical history of the decedent. Further, as mentioned, DHS OIG compiled the sensitive medical | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

history and sensitive health diagnosis for law enforcement purposes, i.e., the information was compiled within a completed DHS OIG report that stemmed from a law enforcement investigation. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive medical history and sensitive medical diagnosis outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.

Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain,

| | | | such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.<br><br>Lastly, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities. | |
| (8) | March 2023:<br><br>49 | Partial | Redactions: This page reflects a Q&A between DHS OIG and a potential media outlet or other third-party organization pertaining to Jonathan Medina-Leon, the subject of an OIG ROI. The information specifically withheld from this page includes the sensitive health or medical diagnosis of the subject as well as a reference to sensitive health or medical diagnoses that directly relates to the subject. This information was withheld under FOIA Exemptions 6 and 7(C).<br><br>Explanation: Exemption 6 protects information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) is limited to information compiled for law enforcement purposes and protects such information when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Pursuant to the FOIA's foreseeable harm requirement, an agency may withhold information if the agency reasonably foresees that disclosure of the exempt information would harm the interest being protected, which in this instance, is the privacy interest of the subject of the ROI. | Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (b)(7)(C) |

Exemptions 6 and 7(C) are similar in that both protect individual privacy interests and require a balancing test weighing an individual's privacy interests against the public's interest in the disclosure of the information protected.  The information contained within these pages is personal privacy information and was compiled for law enforcement purposes, thus Exemptions 6 and 7(C) were both applied, and they protected the sensitive medical/health diagnosis as well as a reference to sensitive health or medical diagnoses that directly relates to the subject of a law enforcement investigation by DHS OIG.

Under (b)(6), DHS OIG determined that the disclosure of this personal privacy information about Jonathan Medina-Leon would constitute a clearly unwarranted invasion of the subject's personal privacy interests as disclosure would reveal sensitive health or medical diagnosis of the decedent. Further, as mentioned, DHS OIG compiled the sensitive health or medical information for law enforcement purposes, i.e., the information was compiled within a Q&A that relates and stems from the law enforcement investigation into Jonathan Medina-Leon's death. Under (b)(7)(C), DHS OIG determined that the disclosure of this personal privacy information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Not only does this protected information serve no public benefit because it does not inform the public how DHS OIG is executing its statutory responsibilities of investigating allegations of wrongdoing, but such disclosure may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner. Although the personal privacy information protected in these records pertain to an individual that is deceased, that does not mean their privacy interest is completely extinguished. There may be a diminishment to some extent, but there remains a substantial privacy interest that must be balanced against the public interest. An individual's sensitive health or medical diagnosis and references thereto outweighs any public interest. The personal privacy information protected does not reveal DHS OIG's techniques in conducting investigations, nor does it offer

|  |  |  | insight into how DHS OIG determines when to open an investigation stemming from a complaint, nor does it provide information pertaining to any standards that must be followed to initiate and conduct investigations into wrongdoing, or initiate and conduct audits, inspections, or evaluations of DHS component programs or activities. The withholding of sensitive medical information does not thwart an understanding of these records in any way, and it does not inform or shed any additional light on the agency's activities. The information released by DHS OIG more than accomplishes the goal of responding to the FOIA request by releasing non-exempt information that explains the details of the investigation and the agency's actions throughout and releasing this personal privacy information would do nothing more than invade the subject's and potentially the subject's family's personal privacy interests.<br><br>Furthermore, although certain information pertaining to the subject of the investigation may be in the public domain, such information was not released by DHS OIG. Another component is permitted to release information in their own records that they believe requires disclosure or is discretionary. Disclosure by another agency, however, does not waive DHS OIG's obligations to withhold information in our own records that is properly exempt. Because the subject's privacy interest, as explained above, outweighs the public's interest, this personal privacy information was properly withheld.<br><br>Lastly, releasing this personal privacy information does nothing to increase the public's knowledge of the duties performed by DHS OIG. This personal privacy information may touch on ICE's activities regarding detention, but DHS OIG is not ICE, and neither our mission nor our duties are the same. This information does not shed light on how DHS OIG conducted its law enforcement investigation into the subject's death. Any claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in any way, increase the public's knowledge of DHS OIG's activities. |  |
| ***Vaughn* Entry** | **Production Month and PDF Page Number(s)** | **Withholding Full/Partial** | **Description of Records and Redactions, and Reasons for Redactions** | **Exemptions(s) Applied** |

| (9) | <u>March 2023</u>:<br><br>10-36, 38-46, 50-87, 89-93, 95-98, 100-101, 104-105,<br>110, 112, 114-116, 118, 120-121, 124-125, 129-130, 133-134, 140-141, 145-146, 148, 151, 154, 156, 159-161, 166-167 | Full | Redactions: These pages contain draft investigative material. The records are draft Memorandums of Activity ("MOAs"), which are enclosures to DHS OIG's Report of Investigations. The final version of each of these draft MOAs has already been released to Plaintiff unless noted. These pages were withheld in full under FOIA Exemption 5. FOIA Exemptions 6 and 7(C) were applied, in part, to relevant information within the draft.<br><br>Specific MOAs withheld in full (the final version was produced in the December 2022 production):<br><br>• Page 10 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI<br>• Page 11-12 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI<br>• Page 13 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI<br>• Page 14-15 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI<br>• Page 16-17 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI<br>• Page 18-19 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI<br>• Page 20-21 – Exhibit 8 of Jonathan Alberto Medina-Leon ROI<br>• Page 22-23 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI<br>• Page 24 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI<br>• Page 25-26 – Exhibit 11 of Jonathan Alberto Medina-Leon ROI<br>• Page 27-28 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI<br>• Page 29-30 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI<br>• Page 31 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI | Freedom of Information Act, 5 U.S.C. § 552(b)(5) – applied to entire page.<br><br>Freedom of Information Act, 5 U.S.C. § 552(b)(6), (b)(7)(C) applied, in part, to relevant, exempt information located on each page.[2] [3] |

[2] Pursuant to (b)(6) and (b)(7)(C), portions of the records on pages 20, 21, 25, 41, 42, 71, 72, 77, 129, 130, and 140 are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure.

[3] Support for the application of Exemptions 6 and 7(C), in part, can be found in *Vaughn* entries: 1-3, 5-7.

| | | | | |
|---|---|---|---|---|
| | | | <ul><li>Page 32 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI</li><li>Page 33 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 34-36 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI</li><li>Page 38-46 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI</li><li>Page 50 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI</li><li>Page 51-52 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 53-54 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 55-56 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 57 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI</li><li>Page 58 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI</li><li>Page 59-60 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI</li><li>Page 61-62 – Exhibit 5 of Jonathan Alberto Medina-Leon ROI</li><li>Page 63-64 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI</li><li>Page 65-66 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI</li><li>Page 67-68 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI</li><li>Page 69-70 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI</li><li>Page 71-72 – Exhibit 8 of Jonathan Alberto Medina-Leon ROI</li><li>Page 73-74 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI</li><li>Page 75 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI</li><li>Page 76 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI</li><li>Page 77-78 – Exhibit 11 of Jonathan Alberto Medina-Leon ROI</li></ul> | |

| | | | | | |
|---|---|---|---|---|---|
| | | | | <ul><li>Page 79 – Exhibit 12 of Jonathan Alberto Medina-Leon ROI</li><li>Page 80-81 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI</li><li>Page 82-83 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI</li><li>Page 84-85 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI</li><li>Page 86 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI</li><li>Page 87 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI</li><li>Page 89 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 90 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI</li><li>Page 91 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 92 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 93 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 95 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI</li><li>Page 96-98 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI</li><li>Page 100-101 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI</li><li>Page 104-105 – Exhibit 7 of Jonathan Alberto Medina-Leon ROI</li><li>Page 110 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI</li><li>Page 112 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI</li><li>Page 114-115 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI (page 116 was released in full)</li><li>Page 118 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI</li><li>Page 120-121 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI</li><li>Page 124-125 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI</li></ul> | |

- Page 129-130 – Exhibit 8 of Jonathan Alberto Medina-Leon ROI
- Page 133-134 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI
- Page 140-141 – Exhibit 11 of Jonathan Alberto Medina-Leon ROI
- Page 145-146 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI
- Page 148 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI
- Page 151 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI
- Page 154 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI
- Page 156 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI
- Page 159-161 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI
- Page 166-167 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI

Explanation: Exemption 5 allows for the withholding of information that is pre-decisional and deliberative, which falls within the deliberative process privilege, and that information which falls within the attorney work product and attorney-client privileges.  The information contained within these pages falls within the deliberative process privilege and consists of intra-agency draft MOAs that are pre-decisional and deliberative.   Pre-decisional because these records reflect drafts of a document that were ultimately included in an ROI. This ROI reviews the evidence and circumstances surrounding the death of Jonathan Alberto Medina-Leon. These drafts were created and generated before DHS OIG finalized its determination as to whether the evidence supported a finding that a criminal, civil, or administrative violation occurred. And deliberative because the draft MOAs reflect the Special Agent's/Investigator's process, which includes the various interviews and review of data sets, in formulating whether the evidence collected and analyzed supported a finding of a criminal, civil, or administrative violation.

Prior to finalization of these drafts, DHS OIG's MOAs are reviewed by a "reviewing official," which may be more than one person, to comment and edit the draft. As evidenced by the accompanying parent email for many of these drafts, the case agent routinely requests review of the draft or is sending the draft back to the reviewing official with previously made edits and comments incorporated. Additionally, to support the draft nature of these records, none of them are finalized and signed as they are in the final ROI that was produced. Also, many of the drafts contain redline edits and comments on the draft either asking questions, making recommendations, or changing the language.

When considering the foreseeable harm in the release of these investigative draft MOAs, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent. If employees are aware that their internal communications, pre-decisional thoughts, and edited drafts may be released to the public, it will reduce the free exchange of ideas and the confidence that is necessary for open dialogue about draft language or a particular finding in the investigation. This hampers the agency's ability to efficiently and effectively formulate law enforcement techniques, strategies, and investigative reports. Moreover, draft documents go through a series of reviews which, as mentioned, may require multiple versions. If the final version differs from the draft version, it could confuse the public as to how and/or why one version says one thing while the final says something different, and it may lead to questions regarding the internal process of determining how decisions are made not only in regards to the language of a draft, but also whether a finding of a violation is supported, and how questions are answered. Drafts are necessary and important for ensuring the final product is accurate and appropriate, and disclosing drafts inhibits an agency from freely having open discussions and making decisions for fear that their recommendations will be disclosed, scrutinized, or questioned prior to finalization.

Moreover, to the extent that factual information is included within the drafts, it is unreasonable for DHS OIG to

| | | | | |
|---|---|---|---|---|
| | | | segregate such information.  First, the factual information used by the DHS OIG Special Agent/Investigator assisted with the development of recommendations to the agency decisionmaker as to whether criminal, civil, or administrative wrongdoing was found as part of the investigation. Second, the information included in the draft MOAs derives from interviews of various witnesses and the collection of information, data sets, and documents from ICE as well as any other appropriate party. The selection of facts to include in the MOA is, itself, deliberative in nature. In general, when conducting an investigation, DHS OIG receives a large amount of information not only in the way of data sets and documents but also during interviews of witnesses. It is incumbent on the Special Agent/Investigator involved in the investigation and drafting the report to determine what information, including facts, should be made part of the report to ensure the decisionmaker is fully informed on the investigation in order to agree or disagree on the recommendations provided.<br><br>Based on DHS OIG's review of all of the records, including the draft MOAs, all reasonably segregable information was released. | |
| (10) | June 2023:<br><br>3-12, 16-25, 29-38, 39-48, 52-61, 63-72, 76-85, 89, 91, 93-94 | Full | Redactions: These pages contain draft investigative material. The records are draft Memorandums of Activity ("MOAs"), which are enclosures to DHS OIG's Report of Investigations. The final version of each of these draft MOAs has already been released to Plaintiff unless noted. These pages were withheld in full under FOIA Exemption 5. FOIA Exemptions 6 and 7(C) were applied, in part, to relevant information within the draft.<br><br>Specific MOAs withheld in full (the final version was produced in the December 2022 production):<br><br>• Page 3-12 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI<br>• Page 16-25 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI | Freedom of Information Act, 5 U.S.C. § 552(b)(5) – applied to entire page.<br><br>Freedom of Information Act, 5 U.S.C. § 552(b)(6), (b)(7)(C) applied, in part, to relevant, exempt information located on each page.[4] [5] |

[4] Pursuant to (b)(6) and (b)(7)(C), portions of the records on pages 6, 8, 10, 19, 21, 23, 32, 34, 36, 42, 44, 46, 55, 57, 59, 66, 68, 70, 79, 81, and 83 are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure.
[5] Support for the application of Exemptions 6 and 7(C), in part, can be found in *Vaughn* entries: 1-3, 5-7.

29

- Page 29-38 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 39-48 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 52-61 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 63-72 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 76-85 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 89 – Exhibit 15 of Jonathan Alberto Medina-Leon ROI
- Page 91 – draft MOA for Jonathan Alberto Medina-Leon ROI pertaining to corrections to previously submitted ICE OPR Reports. This MOA was not incorporated into the final report.
- Page 93-94 – Exhibit 4 of Jonathan Alberto Medina-Leon ROI
- Page 181 was released in full.

Explanation: Exemption 5 allows for the withholding of information that is pre-decisional and deliberative, which falls within the deliberative process privilege, and that information which falls within the attorney work product and attorney-client privileges. The information contained within these pages falls within the deliberative process privilege and consists of intra-agency draft MOAs that are pre-decisional and deliberative. Pre-decisional because these records reflect drafts of a document that were ultimately included in an ROI. This ROI reviews the evidence and circumstances surrounding the death of Jonathan Alberto Medina-Leon. These drafts were created and generated before DHS OIG finalized its determination as to whether the evidence supported a finding that a criminal, civil, or administrative violation occurred. And deliberative because the draft MOAs reflect the Special Agent's/Investigator's process, which includes the various interviews and review of data sets, in formulating whether the evidence collected and analyzed supported a finding of a criminal, civil, or administrative violation.

Prior to finalization of these, DHS OIG's MOAs are reviewed by a "reviewing official," which may be more than one person, to comment and edit the draft. As

evidenced by the accompanying parent email for many of these drafts, the case agent routinely requests review of the draft or is sending the draft back to the reviewing official with previously made edits and comments incorporated. Additionally, to support the draft nature of these records, none of them are finalized and signed as they are in the final ROI that was produced. Also, many of the drafts contain redline edits and comments on the draft either asking questions, making recommendations, or changing the language.

When considering the foreseeable harm in the release of these investigative draft MOAs, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent. If employees are aware that their internal communications, pre-decisional thoughts, and edited drafts may be released to the public, it will reduce the free exchange of ideas and the confidence that is necessary for open dialogue about draft language or a particular finding in the investigation. This hampers the agency's ability to efficiently and effectively formulate law enforcement techniques, strategies, and investigative reports. Moreover, draft documents go through a series of reviews which, as mentioned, may require multiple versions. If the final version differs from the draft version, or a draft is not adopted into the final version of the record as is the case here with the above-referenced MOA, it could confuse the public. The public may rely on the draft version which could reflect inaccurate information. The public could also be confused as to how and/or why one version says one thing and includes a draft that seemingly will be included in the final version of the record while the final version says something different or does not include or incorporate a responsive draft. This confusion will likely lead to impeding questions regarding the internal process of determining how decisions are made not only in regards to the language of a draft, but also whether a finding of a violation is supported, and how questions are answered. Drafts are necessary and important for ensuring the final product is accurate and appropriate, and disclosing drafts inhibits an agency from freely having open discussions and

| | | | | |
|---|---|---|---|---|
| | | | making decisions for fear that their recommendations will be disclosed, scrutinized, or questioned prior to finalization. Moreover, to the extent that factual information is included within the drafts, it is unreasonable for DHS OIG to segregate such information.  First, the factual information used by the DHS OIG Special Agent/Investigator assisted with the development of recommendations to the agency decisionmaker as to whether criminal, civil, or administrative wrongdoing was found as part of the investigation. Second, the information included in the draft MOAs derives from interviews of various witnesses and the collection of information, data sets, and documents from ICE as well as any other appropriate party. The selection of facts to include in the MOA is, itself, deliberative in nature. In general, when conducting an investigation, DHS OIG receives a large amount of information not only in the way of data sets and documents but also during interviews of witnesses. It is incumbent on the Special Agent/Investigator involved in the investigation and drafting the report to determine what information, including facts, should be made part of the report to ensure the decisionmaker is fully informed on the investigation in order to agree or disagree on the recommendations provided.<br><br>Based on DHS OIG's review of all of the records, including the draft MOAs, all reasonably segregable information was released. | |
| (11) | July 2023:<br><br>1, 4-8, 10-12, 14-26, 28-39, 42-44, 46-58, 60-71, 75-86, 96-98, 103-107, 110-112, 123-124, 126-129, 131-132, 137-141, 149-151, 154-156, 159-161, 164-175, 182-184, 186-187, 190-191, 193-202, 206-207, 209-210, 212-221, 227-228, 230-232, 234, 236-237, 239, 241-242, 244, 246, 248-249, 251-252, 254, 256, 258-259, 261-269 | Full | Redactions: These pages contain draft investigative material. The records are draft Memorandums of Activity ("MOAs"), which are enclosures to DHS OIG's Report of Investigations. The final version of each of these draft MOAs has already been released to Plaintiff unless noted. These pages were withheld in full under FOIA Exemption 5. FOIA Exemptions 6, 7(C), and 7(E) were applied, in part, to relevant information within the draft.<br><br>Specific MOAs withheld in full (the final version was produced in the December 2022 production): | Freedom of Information Act, 5 U.S.C. § 552(b)(5) – applied to entire page[6].<br><br>Freedom of Information Act, 5 U.S.C. § 552(b)(6), (b)(7)(C), (b)(7)(E) applied, in part, to relevant, exempt information located on each page.[7] [8] [9] |

[6] 5 U.S.C. § 552 (b)(5) is being added to page 210 as it was inadvertently not applied.
[7] Pursuant to (b)(6) and (b)(7)(C), portions of the records on pages 21, 34, 53, 66, 81, 111, 155, 170, 196, 198, 200, 215, 217, 219, 264, 265, and 267 are also withheld in compliance with a DHS regulation that requires this information be protected from disclosure.
[8] Support for the application of Exemptions 6 and 7(C), in part, can be found in *Vaughn* entries: 1-7.
[9] Plaintiff's Motion for Summary Judgment does not indicate a challenge to the application of Exemption 7(E); thus, it is not addressed.

- Page 1 – Exhibit 12 of Teka Gulema ROI
- Page 4-8 – Exhibit 13 of Teka Gulema ROI
- Page 10-12 – Exhibit 14 of Teka Gulema ROI
- Page 14-26 – "Report of Investigation" synopsis for Teka Gulema ROI
- Page 28-39 – "Report of Investigation" synopsis for Teka Gulema ROI
- Page 42-44 – Exhibit 11 of Teka Gulema ROI
- Page 46-58 – "Report of Investigation" synopsis for Teka Gulema ROI
- Page 60-71 – "Report of Investigation" synopsis for Teka Gulema ROI
- Page 75-86 – "Report of Investigation" synopsis for Teka Gulema ROI
- Page 96-98 – Exhibit 11 of Teka Gulema ROI
- Page 103-107 – Exhibit 3 of Teka Gulema ROI
- Page 110-112 – Exhibit 6 of Teka Gulema ROI
- Page 123-124 – Exhibit 7 of Teka Gulema ROI
- Page 126-129 – Exhibit 3 of Teka Gulema ROI
- Page 131-132 – Exhibit 4 of Teka Gulema ROI
- Page 137-141 – Exhibit 13 of Teka Gulema ROI
- Page 149-151 – Exhibit 11 of Teka Gulema ROI
- Page 154-156 – Exhibit 6 of Teka Gulema ROI
- Page 159-161 – Exhibit 11 of Teka Gulema ROI
- Page 164-175 – "Report of Investigation" synopsis for Teka Gulema ROI
- Page 182-184 – Exhibit 9 of Teka Gulema ROI
- Page 186-187 – Exhibit 5 of Teka Gulema ROI
- Page 190-191 – Exhibit 5 of Teka Gulema ROI
- Page 193-202 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 206-207 – Exhibit 14 of Jonathan Alberto Medina-Leon ROI
- Page 209-210 – Exhibit 13 of Jonathan Alberto Medina-Leon ROI
- Page 212-221 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI
- Page 227-228 – Exhibit 6 of Jonathan Alberto Medina-Leon ROI
- Page 230-232 – Exhibit 18 of Jonathan Alberto Medina-Leon ROI

- Page 234 – Exhibit 1 of Jonathan Alberto Medina-Leon ROI
- Page 236-237 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI
- Page 239 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI
- Page 241-242 – Exhibit 2 of Jonathan Alberto Medina-Leon ROI
- Page 244 – Exhibit 17 of Jonathan Alberto Medina-Leon ROI
- Page 246 – Exhibit 16 of Jonathan Alberto Medina-Leon ROI
- Page 248-249 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI
- Page 251-252 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI
- Page 254 – Exhibit 3 of Jonathan Alberto Medina-Leon ROI
- Page 256 – Exhibit 10 of Jonathan Alberto Medina-Leon ROI
- Page 258-259 – Exhibit 9 of Jonathan Alberto Medina-Leon ROI
- Page 261-269 – "Report of Investigation" synopsis for Jonathan Alberto Medina-Leon ROI

Explanation: Exemption 5 allows for the withholding of information that is pre-decisional and deliberative, which falls within the deliberative process privilege, and that information which falls within the attorney work product and attorney-client privileges. The information contained within these pages falls within the deliberative process privilege and consists of intra-agency draft MOAs that are pre-decisional and deliberative. Pre-decisional because these records reflect drafts of a document that were ultimately included in an ROI. These ROIs review the evidence and circumstances surrounding the death of Jonathan Alberto Medina-Leon and Teka Gulema. These drafts were created and generated before DHS OIG finalized its determination as to whether the evidence supported a finding that a criminal, civil, or administrative violation occurred. And deliberative because the draft MOAs reflect the Special Agent's/Investigator's process, which includes the various interviews and review of data

sets, in formulating whether the evidence collected and analyzed supported a finding of a criminal, civil, or administrative violation.

Prior to finalization of these drafts, DHS OIG's MOAs are reviewed by a "reviewing official," which may be more than one person, to comment and edit the draft. As evidenced by the accompanying parent email for many of these drafts, the case agent routinely requests review of the draft or is sending the draft back to the reviewing official with previously made edits and comments incorporated. Additionally, to support the draft nature of these records, none of them are finalized and signed as they are in the final ROI that was produced. Also, many of the drafts contain redline edits and comments on the draft either asking questions, making recommendations, or changing the language.

When considering the foreseeable harm in the release of these investigative draft MOAs, it was determined that the release of this material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent. If employees are aware that their internal communications, pre-decisional thoughts, and edited drafts may be released to the public, it will reduce the free exchange of ideas and the confidence that is necessary for open dialogue about draft language or a particular finding in the investigation. This hampers the agency's ability to efficiently and effectively formulate law enforcement techniques, strategies, and investigative reports. Moreover, draft documents go through a series of reviews which, as mentioned, may require multiple versions. If the final version differs from the draft version, it could confuse the public as to how and/or why one version says one thing while the final says something different, and it may lead to questions regarding the internal process of determining how decisions are made not only in regards to the language of a draft, but also whether a finding of a violation is supported, and how questions are answered. Drafts are necessary and important for ensuring the final product is accurate and appropriate, and disclosing drafts inhibits an agency from freely having open discussions and making decisions for

| | | | | fear that their recommendations will be disclosed, scrutinized, or questioned prior to finalization.<br><br>Moreover, to the extent that factual information is included within the drafts, it is unreasonable for DHS OIG to segregate such information.  First, the factual information used by the DHS OIG Special Agent/Investigator assisted with the development of recommendations to the agency decisionmaker as to whether criminal, civil, or administrative wrongdoing was found as part of the investigation. Second, the information included in the draft MOAs derives from interviews of various witnesses and the collection of information, data sets, and documents from ICE as well as any other appropriate party. The selection of facts to include in the MOA is, itself, deliberative in nature. In general, when conducting an investigation, DHS OIG receives a large amount of information not only in the way of data sets and documents but also during interviews of witnesses. It is incumbent on the Special Agent/Investigator involved in the investigation and drafting the report to determine what information, including facts, should be made part of the report to ensure the decisionmaker is fully informed on the investigation in order to agree or disagree on the recommendations provided.<br><br>Based on DHS OIG's review of all of the records, including the draft MOAs, all reasonably segregable information was released. | |
|---|---|---|---|---|---|