E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal. Bar No. 187101)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989 | 8790
    Facsimile: (213) 894-7819
    E-mail: Joseph.Tursi@usdoj.gov
          Jason.Axe@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.<br><br>Defendants. | No. 2:22-cv-04760-SHK<br><br>**DECLARATION OF CATRINA M. PAVLIK-KEENAN**<br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

1

I, Catrina M. Pavlik-Keenan, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Department of Homeland Security ("DHS") Privacy Office ("Privacy Office" or "DHS-PRIV").

2. In this capacity, I am the DHS official responsible for implementing FOIA policy across DHS and responding to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by the DHS Privacy Office in this capacity since July 4, 2021. Prior to holding that position, I worked for approximately four years in the FOIA office at the Transportation Security Administration - first as a Supervisory FOIA Analyst, then as Deputy Director for two years, and finally as Director.

3. I make this declaration in support of Defendant DHS's Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. The statements contained in this declaration are based upon my personal knowledge, my review of the documents kept by the DHS-PRIV in the ordinary course of business, and information provided to me by other DHS Headquarters ("DHS-HQ") employees in the course of my official duties.

4. Through the exercise of my official duties, I am familiar with DHS-PRIV's receipt and handling of the nine-part FOIA request dated April 29, 2022 (the "FOIA Request") submitted by the American Civil Liberties Union of Southern California ("SoCal ACLU" or "Plaintiff"), and the steps taken to respond to the FOIA Request, to include the determination that the United States Immigration and Customs Enforcement (ICE) and Office of Inspector General (OIG) were the appropriate components in receipt of the request.

I. **DHS FOIA PROCESS**

5. Section 5.1(c) of DHS's FOIA regulations provides that "DHS has a decentralized system for processing FOIA requests, with each component handling

requests for its records." 6 C.F.R. § 5.1(c). Accordingly, and except for the Cybersecurity and Infrastructure Security Agency ("CISA"), DHS-PRIV does not respond to or process FOIA requests on behalf of other operational DHS components.

6. DHS-PRIV receives and processes FOIA requests for the following DHS-HQ Offices only: Office of the Executive Secretary, Management Directorate, Office of Strategy, Policy, and Plans, Office of Operations Coordination, Office of Partnership and Engagement, Privacy Office, Center for Prevention Programs and Partnerships, Office of the General Counsel, Office of Legislative Affairs, Office of Public Affairs, Office of the Citizenship and Immigration Services Ombudsman, Office of the Immigration Detention Ombudsman, Office of the Secretary, and Office of Biometric Identity Management ("OBIM"). Additionally, as indicated in Paragraph 5 above, DHS-PRIV, in accordance with an internal agreement, receives and processes FOIA requests for operational component CISA.

7. The DHS FOIA regulations, available at https://www.dhs.gov/publication/federal-register-notice-freedom-information-act-and-privacy-act-procedures-interim-final, set out the steps for a FOIA requester to submit a FOIA request to DHS-HQ Offices as well as all DHS components. The DHS FOIA regulations also describe how DHS handles referrals to other agencies and to other DHS components.

8. Section 5.1(a)(1) of the DHS FOIA regulations states that "[t]his subpart contains the rules that the Department of Homeland Security follows in processing requests for records under the Freedom of Information Act."

9. Section 5.3(b) of the DHS FOIA regulations states: "Requesters must describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort. A reasonable description contains sufficient information to permit an organized, non-random search for the record based on the component's filing arrangements and existing retrieval systems. To the extent possible, requesters should include specific information that may assist a component in identifying

3

the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number." 6 C.F.R. § 5.3(b).

10. Section 5.3(a)(2) of the DHS FOIA regulations states that the "Privacy Office will forward the request to the component(s) that it determines to be the most likely to maintain the records that are sought" and that all referrals are to be handled consistent with subsection 5.4(d)(3), that is "the component may refer the responsibility for responding to the request or portion of the request to the component or agency best able to determine whether to disclose the relevant records, or to the agency that created or initially acquired the record as long as that agency is subject to the FOIA. Ordinarily, the component or agency that created or initially acquired the record will be presumed to be best able to make the disclosure determination. The referring component shall document the referral and maintain a copy of the records that it refers."

## II. FACTUAL BACKGROUND

11. The FOIA Request, which was dated April 29, 2022, sent via email, was received by DHS-PRIV on May 2, 2022, and stated in pertinent part:

> "REQUEST FOR INFORMATION
>
> "The Requestor seeks any and all records that were prepared, received, transmitted, collected, and/or maintained by Immigration and Customs Enforcement ("ICE") or the Department of Homeland Security that describe, refer, or relate to the release of hospitalized detainees from custody prior to their death; any records related to release of individual detainees once hospitalized; and any records related to the death of such detainees after their release from custody, including any communications or investigations. Unless otherwise noted, we request the records specified below from January 1, 2016 to the present…"
>
> "SPECIFIC RECORDS REQUESTED
>
> 1. Any and all documents, without limitation to date, including any communications, investigatory reports, and any and all exhibits, appendices, or attachments thereto, relating to the hospitalization, death, decision to release from custody, or release from custody of the following individuals.

4

2. Any and all DHS OIG reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OIG reports of investigation.

3. Any and all ICE OPR reports of investigation that are identified in any of the records responsive to Request #1. This includes any and all exhibits, appendices, or attachments to the DHS OPR reports of investigation.

4. Any and all documents and communications, including ICE and IHSC directives, policies, procedures, protocols, or trainings that contain guidance, instructions, or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities. Detainees specified in (a) and (b) above shall include those being treated for COVID-19 during their hospitalization or treatment at external healthcare providers or facilities.

5. Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

6. Spreadsheets, emails, significant incident reports (SIRs), significant event notification reports (SENs), or documents created by DHS OIG or ICE OPR that mention the release from custody of (a) hospitalized detainees; (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities; or (c) detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

7. Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or ICE OPR that mention the death of any detainee who had been previously released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility; or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

8. Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

9. Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment."

The FOIA Request also contained a spreadsheet that provided the names for specific individuals, their country of origin, their approximate date of death, the ICE detention facilities held in prior to hospitalization and death, and the location of death for each listed individual.

12.  DHS-PRIV carefully reviewed the FOIA Request, and in accordance with DHS regulations determined that ICE and OIG were the DHS components "most likely" to maintain responsive records. *See* 6 C.F.R. § 5.3(a)(2).  On May 18, 2022, DHS-PRIV provided Plaintiff with a final response in which DHS-PRIV acknowledged receipt of the FOIA request and notified Plaintiff of its determination that "the records sought, should they exist, would not be under purview of the DHS Privacy Office. Any responsive records would be held by the DHS Office of the Inspector General (OIG) and/or U.S. Immigration and Customs Enforcement (ICE)." A true and correct copy of

DHS-PRIV's May 18, 2022, correspondence is attached hereto as Exhibit 1. The notification explained that "As you have already submitted your request to the aforementioned office[s], we are closing your Privacy Office request and will defer to the OIG and ICE's response(s). We have included contact information for the OIG and ICE FOIA offices below for your convenience." *Id.*

13. Having properly determined that responsive records, should they exist, would most likely be held by OIG and/or ICE, and with the understanding that Plaintiff had already submitted its request to those offices, DHS-PRIV administratively closed this case on May 18, 2022, with no further action. At no time prior to administratively closing the FOIA Request did DHS-PRIV process the FOIA Request or supervise the processing of the FOIA Request by the referred components. Nor does DHS-PRIV have an ongoing obligation to supervise another component's processing of a FOIA request directed or referred to it.

14. After receiving DHS-PRIV's May 18, 2022 letter, Plaintiff did not object to DHS-PRIV's final determination that DHS-OIG and ICE would be the appropriate components to process the request, nor did Plaintiff object to DHS-PRIVs notification that it would administratively close the request. Thus, DHS-PRIV properly determined that its obligations to respond to the FOIA Request had terminated.

15. On January 24, 2023, Plaintiff, in email correspondence with defense counsel in this litigation, indicated that it did not consider the May 18, 2022 letter *"…by itself an adequate response to our request. However, we will hold off on potentially seeking a separate search from DHS HQ until after we have reviewed additional productions from ICE and OIG."* This letter did not trigger an obligation by DHS-PRIV to do anything further with respect to the FOIA Request because DHS-PRIV had already referred the FOIA Request to ICE and OIG and had administratively closed the request. Attached hereto as Exhibit 2 is a true and correct copy of Plaintiff's January 24, 2023 correspondence.

16. On December 13, 2023, in a letter sent to defense counsel, Plaintiff

requested that DHS-PRIV conduct a search and direct other DHS components and subcomponents to conduct searches. Plaintiff justified its demand for a search by pointing to records referred by DHS-OIG to other DHS components, claiming that such referrals required DHS to "…follow this "clear and certain" lead and search those components…" (Plaintiff's letter to AUSA dated Dec 13, 2023). Attached hereto as Exhibit 3 is a true and correct copy of Plaintiff's letter dated December 13, 2023. As of the date of the December 13, 2023 letter, the FOIA Request had already been administratively closed by DHS-PRIV for over a year.

17. On March 1, 2024, Plaintiff filed its Motion for Summary Judgment (MSJ). In its MSJ, Plaintiff states that DHS-OIG produced two documents that require DHS-PRIV to conduct a search. The first document is a letter "…sent to DHS by legal service providers representing detained immigrants as part of the National Qualified Representative Program ("NQRP")." *See* Dkt. 67 at 33. This letter, according to Plaintiff's MSJ, was produced by DHS-OIG after it referred the record to DHS-PRIV for consultation. The second document is a "…4-page Case Summary Report indicating that DHS-OIG and other DHS components had open investigations related to the letter." *Id.* Plaintiff claims that these two documents, produced by DHS-OIG, should have prompted DHS-PRIV to search "…the components to which NQPR providers sent the letter, including CRCL."

18. First, DHS-PRIV was not involved in, nor had knowledge about, the searches conducted by DHS-OIG or the production of records by DHS-OIG to Plaintiff because DHS-PRIV did not take any action to supervise or coordinate the search conducted by DHS-OIG. Second, the July 6, 2023 consultation by DHS-PRIV of documents referred to it by DHS-OIG happened after the administrative closure by DHS-PRIV of the FOIA Request.

19. Consultation of a record occurs when one component or agency, while processing records, determines that a record considered for production may contain equities or information belonging to another component or agency. The component or

agency receiving a request for consultation would review the document to ensure that its equities were properly treated or protected in accordance with the FOIA. DHS-PRIV does not review consultations received from other agencies or components and then cross references them against past received FOIA requests. To do so would be unreasonable and not feasible. Consultations are tracked differently than FOIA requests.

20. DHS has a decentralized system for processing FOIA requests, which means that most DHS components are independently responsible for handling and processing requests for their records. 6 C.F.R. § 5.1(c).

21. As previously highlighted, and in accordance with Section 5.3(a)(2) of the DHS FOIA regulations, DHS-PRIV carefully reviewed the FOIA Request and reasonably determined that any potentially responsive records would likely be under the purview of DHS-OIG or ICE. Nothing within the four corners of the FOIA Request suggested to DHS-PRIV that CRCL *may* have had responsive records.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Signed this 10th day of April 2024.

_____
Catrina M. Pavlik-Keenan
Deputy Chief FOIA Officer
Privacy Office
U.S. Department of Homeland Security