December 13, 2023

Joseph Tursi
Jason Axe
Alarice Medrano
United States Attorneys' Office
Central District of California
300 N. Los Angeles St. Suite 7516
Los Angeles, CA 90012
Joe.tursi@usdoj.gov
Jason.axe@usdoj.gov
Alarice.medrano@usdoj.gov

**SENT VIA EMAIL**

Re: *ACLU of Southern California v. United States Immigration and Customs Enforcement, et al.,* No. 2:22-cv-4760 (C.D. Cal.)

Dear Counsel:

This letter responds to Defendants' November 30, 2023 correspondence, as well as the District Court's order at Dkt. No. 62 (Dec. 8, 2023 Order). We had already scheduled a meeting on December 14, 2023 at 1:00 p.m. PT to discuss scheduling for a motion for summary judgment with respect to Defendant OIG. On December 8, 2023, the Court issued an order instructing the parties to meet and confer within two weeks "to address any outstanding issues regarding the search for records responsive to Plaintiff's request." Dec. 8, 2023 Order at 15. We are glad to discuss the following issues regarding the search on December 14, and also to schedule additional time necessary before December 22, 2023, to meet and confer. Please also ensure that Defendants' counsel have ready access to ICE technical staff , as required by the Court's Order. Dec. 8, 2023 Order at 12.

### I. DHS-OIG Production

#### A. Referral of Documents by DHS-OIG

Plaintiff has raised the issue of DHS-OIG's referral of documents to ICE in its letter regarding *Vaughn* index parameters on December 8, 2023. At this point in time, DHS-OIG has informed Plaintiff that it referred 1,420 pages to ICE.[1] First, please confirm which Defendant—DHS-OIG or ICE—will produce these 1,420 pages to Plaintiff, and by what date. Second, please

---

[1] DHS-OIG referred 220 pages to ICE in November 2022; 280 pages in December 2022; 9 pages in March 2023; 328 pages in June 2023; and 583 pages in July 2023, for a total of 1,420 pages. This does not include the 581 pages of documents described on page 182 of OIG's June 2023 production.

1

EXHIBIT 3
15

confirm whether Defendants will produce the 581 pages of documents described and reviewed by OIG at page 182 of OIG's June 2023 production, and if so, by which Defendant, and by what date. Third, please confirm whether ICE will produce documents described at page 144-46 of OIG's June 2023 production, which include ICE notifications, emails, and forms regarding Mr. Teka Gulema's release from custody, and by what date.

Please note that OIG's referral of documents to ICE "constitutes a 'withholding' under FOIA 'if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them.'" *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 67 (D.D.C. 2008). At this point, OIG's referral of documents to ICE has delayed production by at least five months or more. *See* Pl.'s Nov. 9, 2023 Letter (requesting that Defendants prioritize production of referred documents).

Regarding OIG's referral of records to ICE as the "originator of the records," we disagree that OIG followed the prescribed procedures set forth in *McGhee v. CIA*, 697 F.2d 1095, 1111 (D.C. Cir. 1983) to ensure "prompt and public" processing of the records for disclosure to Plaintiff. Among other things, OIG has never established that ICE had the "intent to control" those records, *id.*, such that OIG was justified in referring them to ICE for processing.

Regarding Defendants' refusal to search the specified DHS components to which OIG referred responsive records as their originator, it is irrelevant that on May 18, 2022 the DHS Privacy Office only referred Plaintiff's Request to OIG and ICE. That is because upon OIG's identification of responsive records in its possession that it deemed necessary to refer to other DHS components, particularly given the subject matter of Plaintiff's Request and Plaintiff's specific request that it do so, Defendants were required to follow this "clear and certain" lead and search those components. *Lawyers' Comm. for C.R. Under L. v. United States Dep't of Just.*, No. 18-CV-167 (EGS/GMH), 2020 WL 7319365, at *11 (D.D.C. Oct. 16, 2020), report and recommendation adopted, No. CV 18-167 (EGS/GMH), 2021 WL 1197730 (D.D.C. Mar. 30, 2021) (*quoting Kowalczyk v. DOJ*, 73 F.3d 386, 388–89 (D.C. Cir. 1996)).

Here, Plaintiff's Request did not identify only certain DHS components to be searched, and indeed it sent the Request to the DHS Privacy Office to ensure that all appropriate DHS components be searched. 6 C.F.R. § 5.3(a)(2); *see also Lawyers' Comm.* at 10-11 (finding agency obligation to search other components regardless of whether Requester sent the Request to a specified referral unit). Further, upon obtaining correspondence in March and June of 2023 that OIG had identified responsive records that originated in other DHS components, Plaintiff specifically asked Defendants to search these components. *See* Plaintiff's September 14, 2023 letter at 2. Plaintiff was more than justified in doing so because the records are admittedly responsive to Plaintiff's request, and coupled with Plaintiff's specific request to search the limited number of additional components where they originated, Defendants had "a lead so

apparent that the [agency] [could] not in good faith fail to pursue it." *Lawyers' Comm.* at 11 ("once the [Requester] informed the agency of the records at issue and identified by name and department the [component] who had them 'in their possession,' it provided 'a lead that [was] both clear and certain') (internal citations omitted).

For these reasons, Plaintiff again asks Defendants to search all DHS components to which OIG referred responsive records, including but not limited to CBP, DHS CRCL and the unidentified component specified in OIG's June 29, 2023 letter. If Defendants continue to refuse to do so, Plaintiff will seek appropriate Court intervention.

### B. Documents Remaining to Be Produced by DHS-OIG

On September 14, 2023, Plaintiff specifically requested that DHS-OIG produce the following responsive documents, which were referred to in documents produced by OIG. Pl.'s Sept. 14, 2023 Letter. On October 2, 2023, Defendants stated that "if they were in OIG's possession, they likely would have been referred to ICE for review and processing." Defs.' Oct. 2, 2023 Letter. Defendants have yet to produce these records. At our next conference, please confirm which Defendant will produce these documents, and by what date Defendants will produce them:

- December 2022 OIG production, pages 80-82, regarding Johana Medina Leon: Please provide the documents referenced in the report, where "copies of the final executive summary and emails documenting Medina's [sic] decision to release her from ICE ERO custody. Copies of the aforementioned documents will be placed in the case file."
- December 2022 OIG production, pages 83-85, regarding Johana Medina Leon. Please provide the documents referenced in the report, where "[a] copy of [REDACTED] emails between the MTC and ICE ERO management, the executive summary, and the OCPC final report of findings will be placed into the case file."
- March 2023 OIG production, page 48, regarding a question about the number of OIG's investigations into out-of-custody deaths, to which the El Paso ICE Field Office, responded, "approximately five investigations." Please provide documents related to these five investigations.
- June 2023 OIG production, page 180, regarding OIG's investigation into Teka Gulema's death, where OIG noted review of "an email dated November 24, 2015 from [REDACTED], Field Office Director, ICE, New Orleans, LA. The email was to [REDACTED], Field Medical coordinator, IHSC, New Orleans, LA. The email stated "FYI, HQ has directed we serve a release letter on Dr. [REDACTED] and release Gulema from ICE custody today." Please provide the document referenced here.

3

EXHIBIT 3
17

II.     ICE's Production

    A.     Parts 1-3

Thank you for the information about the number of remaining records for each of the individuals named in the Request. Regarding any medical records dated before October 1, 2015 that are attached to the post October 1, 2015 Gulema emails, we agree that ICE may process only the emails and may exclude the attachments at this time. Upon ICE's production of these documents, Plaintiff may identify specific email attachments that we would ask ICE to produce, but this will hopefully be no more than a few discrete attachments. As such, please provide us with any revised hit count for post-October 1, 2015 records related to Mr. Gulema that remain to be produced by ICE.[2]

In addition, to the extent that ICE has not produced documents related to Teka Gulema, Martin Vargas Arrellano, Jose Ibarra Bucio, and Johana Medina Leon in response to Parts 1-3 that were referred by DHS-OIG, please provide a hit count for the remaining number of pages to be produced, and the date by which Defendants plan to produce those documents at our next conference.

It also appears that ICE has produced incomplete versions of certain documents in response to Parts 1-3, and that several of these missing or partially-scanned pages provide critical information regarding failures of medical treatment and decision to release the named individuals from custody. Plaintiff requested full, readable copies of these documents on September 14, 2023. On November 30, 2023, Defendants refused to state when these documents would be produced in full, stating only that they would be provided "in due course." The specific document deficiencies are as follows:

- ICE's December 2022 Production, page 2648: This email was only partially produced. The sender is a commander in the U.S. Public Health Service, responding to an email sent on July 29, 2015, with the subject line: Re: Follow-Up Requested RE: SDI update: Teka Gulema, discussing medical care deficiencies provided at the detention facility.

- ICE's July 2023 Production, pages 7197-7200. This document, titled "ERO New Orleans-Teka GULEMA, A28021556" is dated "November 10, 2022." However, it appears that this date is incorrect, perhaps an inadvertent automatic update of the processing date, as the document references a recommendation that ERO release Mr. Gulema on a letter of supervision, and because Mr. Gulema died in 2016.

---

[2] As Plaintiff has noted, any agreement regarding waiver of documents dated prior to October 2015 regarding Mr. Gulema does not apply to documents referred by DHS OIG to ICE.

- ICE's August 2023 Production, page 7504. This document, which contains only the bottom half of the document, appears to be a document dated Feb. 22, 2019, documenting the timeline for in-custody medical care provided to Mr. Ibarra Bucio immediately before he was transferred via ambulance to the hospital.

Please provide a specific date by which ICE will correct these deficiencies and produce the complete documents specified above.

### B. Part 4

Thank you for providing the latest results of ICE's search, separated by search term. At present, Defendants represent that it has conducted a search resulting over 142,000 potentially responsive email documents.

In order to narrow the scope of records searched by Defendants, Plaintiff suggests, as previously requested in our November 9, 2023 letter, that Defendants conduct a search for records responsive to Part 4 on ICE ERO and IHSC servers or shared drives where stand-alone directive, policy, practice, procedure, training, guidance and instruction documents are likely to be located. We believe that "a professional employee of the agency . . . familiar with the subject area of the request" can "locate the record[s] with a reasonable amount of effort. *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017). These professionals could, for example, include Deborah Fleischaker (Executive Secretary of DHS) and Stewart Smith and Ada Rivera (IHSC). We ask that ICE use the search terms specified in Plaintiff's October 19, 2023 letter at Part 4, and previously agreed upon by ICE, and provide hit counts for those files. Please provide the search terms used, search locations, and hit count (disaggregated by search terms and locations) for Part 4 by January 22, 2024. *See* Dec. 8, 2023 Order at 12. These terms are listed below for your convenience:

- Defendants first should search for the following keywords: (directive or policy or policies or protocol or procedure or training or guidance or instruction or standard) **AND** (custody or death or died or deceased or decedent or discharge or surgery or specialist or COVID-19 or hospital or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal). This search string is under 450 characters. Defendants should save the results of this Boolean search.
- After running this first Boolean search, Defendants should then conduct a search for documents that fall within these saved search results and include at least one of the following keywords: (release or transfer or benefits or parole or "alternative

>   detention" or discharge or OSUP or "order of supervision" or humanitarian). This second string, again, is under 450 characters.

**Please exclude:** Any version of ICE Detention Standards (NDS 2000, PBNDS 2008, PBNDS 2011, NDS 2019), or ICE's COVID-19 Pandemic Response Requirements.

To the extent that this search results in more precise, narrowly-tailored results, Plaintiff could agree to narrow its request to eliminate a search for "communications," and instead, limit the search to "ICE and IHSC directives, policies, procedures, protocols, and trainings that contain instructions or standards about the release from custody of (a) hospitalized detainees; or (b) detainees who at the time of release were patients in the care of external healthcare providers or facilities."

Regarding ICE's response that its prior search of email records was conducted by searching "the three custodians previously identified," Plaintiff assumes this means ICE only searched the email files of Tae Johnson, Deborah Fleischaker, and Scott Schuchart. *See* ICE November 11, 2023 letter at 3. As stated above, we ask that ICE conduct an independent search of non-email files, including servers or shared drives where stand-alone directive, policy, practice, procedure, training, guidance and instruction documents are likely to reside. Until this search is complete, we will hold off on our request that ICE search any additional custodians, including Tae Johnson's predecessors.

Finally, thank you for tasking a search of ORAP and IHSC. Please identify the locations being searched, and the search terms and any other parameters ICE is applying to this search.

### C. Part 5

ICE has run a search of emails of Dr. Stewart Smith, resulting in a hit count of 551 pages. However, as Plaintiff has raised, this search is inadequate, as it consists only of one custodian from one subagency and is on its face incomplete. Pl.'s Nov. 9, 2023 Letter. As the Court noted in its Order, Plaintiff has "proposed a compromise that Defendants limit the search to staff . . . who participate in the weekly SDI meeting, and any custodian who possess[es] the SDI list." Dec. 8, 2023 Order at 11.

For this reason, Plaintiff requests that Defendants conduct a search of ICE (including IHSC, ICE ERO Field Operations, and OPLA) staff who participate in SDI meetings, as well as any custodian who possesses the SDI list. Please provide a hit count for this search, disaggregated by custodian (which can be identified by position) and by search term, to allow parties to work together cooperatively to narrow a search if necessary. Please provide this information by January 22, 2024. *See* Dec. 8, 2023 Order at 12. The previously agreed-upon search terms are listed below for your convenience:

(1) Death; (2) Died; (3) Deceased; (4) Ambulance; (5) Emergency; (6) "offsite referral"; (7) "life support"; (8) coma; (9) ventilator; (10) "intensive care"; (11) "critical condition"; (12) hospice; (13) palliative; and (14) release.

ICE should then perform the following Boolean search in Relativity: (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian) AND (custody or death or died or deceased or surgery or specialist or COVID-19 or hospital! or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal).

### D.  Parts 6 and 7

Plaintiff appreciates Defendants' agreement to search JIOC for SIRs and SENs not created by OIG or OPR. *See* Dec. 8, 2023 Order at 11.  Please identify specific search locations (i.e. names of custodians and/or records systems), and conduct a search with the following search terms, to which Parties have already agreed. *See* Pl.'s Jun. 12, 2022 letter at 6; Defs.'s Jun. 22, 2023 letter at 3. Please confirm the search terms used, search locations, and hit count (disaggregated by search terms and locations) for Parts 6 and 7 by January 22, 2024. *See* Dec. 8, 2023 Order at 12.

(1) Death; (2) Died; (3) Deceased; (4) Ambulance; (5) Emergency; (6) "offsite referral"; (7) "life support"; (8) coma; (9) ventilator; (10) "intensive care"; (11) "critical condition"; (12) hospice; (13) palliative; and (14) release.

ICE should then perform the following Boolean search in Relativity: (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian) AND (custody or death or died or deceased or surgery or specialist or COVID-19 or hospital! or ambulance or "emergency room" or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal).

### E.  Part 8

Thank you for your further commitment that ICE will not "omit" for its search results "documents that were compiled or utilized in *Fraihat v. ICE*." However, Plaintiff maintains that if there is a central repository of documents in that case that are likely to have responsive records, that repository should be searched. Please let us know if ICE has inquired with those

familiar with ICE's data-collection efforts relevant to the *Fraihat* litigation whether such a repository exists, and if so whether it will be searched for this case. Please confirm the search terms used, search locations/custodians (by position if names are not provided), and hit count (disaggregated by search terms and locations) for Part 8 by January 22, 2024. *See* Dec. 8, 2023 Order at 12.

### F. Part 9

Thank you for agreeing to conduct the additional search for records responsive to Part 9. Please confirm the search terms used, search locations/custodians (by position if names are not provided), and hit count (disaggregated by search terms and locations) for Part 9 by January 22, 2024. *See* Dec. 8, 2023 Order at 12.

Sincerely,

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| MICHAEL KAUFMAN (SBN 254575)<br>MKaufman@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017 Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: (202) 393-4930 |

*Attorneys for Plaintiff*

EXHIBIT 3
22