1    LABONI A. HOQ (SBN 224140)
     laboni@hoqlaw.com
2    HOQ LAW APC
     P.O. Box 753
3    South Pasadena, California 91030
     Telephone: (213) 973-9004
4
5    MICHAEL KAUFMAN (SBN 254575)
     MKaufman@aclusocal.org
6    ACLU FOUNDATION OF SOUTHERN CALIFORNIA
     1313 West Eighth Street
7    Los Angeles, California 90017
     Telephone: (213) 977-9500
8    Facsimile: (213) 915-0219

9    Attorneys for Plaintiff
     (additional counsel information on next page)

10                  UNITED STATES DISTRICT COURT
11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13   AMERICAN CIVIL LIBERTIES          Case No. 2:22-CV-04760-SHK
     UNION FOUNDATION OF
14   SOUTHERN CALIFORNIA,              **PLAINTIFF'S REPLY IN SUPPORT
                                       OF MOTION FOR SUMMARY
15                 Plaintiff,          JUDGMENT AND OPPOSITION
                                       TO DEFENDANTS' CROSS-
16          v.                         MOTION**

17   UNITED STATES IMMIGRATION         Honorable Shashi H. Kewalramani
     AND CUSTOMS ENFORCEMENT,          United States Magistrate Judge
18   et al.,
                                       Hearing Date: May 22, 2024
19                 Defendants.         Time:  10:00 a.m.
                                       Place:  3470 12th St., Riverside, CA
20                                     92501, Courtroom 3 or 4

21

22

23

24

25

26

27

28   ACLU of Southern California v. U.S. ICE, et al., Case No. 2:22-CV-04760-SHK
     PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
     DEFENDANTS' CROSS-MOTION

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

1

**TABLE OF CONTENTS**

2   I.   INTRODUCTION .............................................................................................. 1

3   II.   ARGUMENT ...................................................................................................... 2

4
    A.   DHS-OIG Has Failed to Meet Its Burden to Justify Its
5        Exemption Claims ..................................................................................... 2

6        1.   DHS-OIG Improperly Withheld Information Under
7             FOIA Exemption 5. ........................................................................ 2

8        2.   DHS-OIG Improperly Withheld Information Under
9             FOIA Exemptions 6 and 7(c)......................................................... 7

10            a.   Defendants Cannot Make the Threshold Showing
                   for Exemption 7(c) that They Compiled the
11                 Documents for Law Enforcement Purposes.................... 7

12            b.   Defendants Fall to Justify Redaction of
13                 Medina-Leon's Widely Reported Health Information ..... 9

14            c.   Defendants Fall to Justify Redacting Medina-Leon
15                 and Gulema's Immigration Information. ........................ 13

16   B.   DHS and DHS-OIG Failed to Adequately Search for
17        Responsive Records ................................................................................ 15

18        1.   Records Shows OIG Failed to Conduct an Adequate
19             Search........................................................................................... 16

20        2.   DHS Failed to Refer Plaintiff's Request to DHS-CRCL
             to Conduct an Adequate Search.................................................... 18
21
    III.  CONCLUSION ................................................................................................ 23
22

23

24

25

26

27

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
28  PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
    DEFENDANTS' CROSS-MOTION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*ACLU v. Dep't of Homeland Sec.,*
  No. CV-20-3204-RDM, 2023 WL 2733721 (D.D.C. Mar. 31, 2023) ............... 22

6

*ACLU v. U.S. Dep't of Justice,*
  655 F.3d 1 (D.C. Cir. 2011) ................................................................................ 12

7

8

*Aguirre v. U.S. Nuclear Regulatory Comm'n,*
  11 F.4th 719 (9th Cir. 2021) .............................................................................. 21

9

10

*Am. Oversight v. Dep't of Homeland Sec.,*
  F. Supp. 3d, No. 1:21-cv-3030, 2023 WL 5723459 (D.D.C. Sept. 5,
  2023) ........................................................................................................... 3, 4, 14

11

12

*Am. Oversight v. U.S. Gen. Servs. Admin.,*
  311 F. Supp. 3d 327 (D.D.C. 2018) ............................................................... 9, 10

13

14

*Ams. For Fair Treatment v. U.S. Postal Serv.,*
  663 F. Supp. 3d 39 (D.D.C. Mar. 23, 2023) ........................................................ 5

15

16

*Bartko v. United States Dep't of Justice,*
  898 F.3d 51 (D.C. Cir. 2018) ............................................................................... 8

17

18

*Bibles v. Oregon Natural Desert Ass'n,*
  519 U.S. 355 (1997) ........................................................................................... 12

19

20

*Black v. U.S. Dep't of Homeland Sec.,*
  No. 2:10-CV-2040, 2012 WL 3155142 (D. Nev. Aug. 2, 2012) .......................... 8

21

22

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ............................................................................................. 9

23

24

*Citizens for Responsibility & Ethics in Washington v. Fed. Election
  Comm'n,*
  711 F.3d 180 (D.C. Cir. 2013) ........................................................................... 20

25

26

27

28

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

ii

*Coastal Sales Gas Corp v. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980).................................................................6

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*
436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................4

*Dillon v. U.S. Dep't of Justice,*
No. CV 17-1716 (RC), 2019 WL 249580 (D.D.C. Jan. 17, 2019) ....................19

*Ecological Rights Found. v. U.S. Env't Prot. Agency,*
No. 19-cv-394, 2021 WL 2258554 (N.D. Cal. Jun. 3, 2021)...........................4

*EPA v. Mink,*
410 U.S. 73 (1973) ................................................................................6

*Frugone v. CIA,*
169 F.3d 772 (D.C. Cir. 1999)..............................................................10

*Hamdan v. U.S. Dep't of Justice,*
797 F.3d 759 (9th Cir. 2015) ..........................................................16, 17

*Hayden v. N.S.A.,*
608 F.2d 1381 (D.C. Cir. 1979) ...........................................................13

*Hernandez Roman v. Wolf,*
No. CV-20-00768-TJH, (C.D. Cal. Mar. 20, 2021) .................................15

*Hunt v. FBI,*
972 F.2d 286 (9th Cir. 1992) ...............................................................14

*Jefferson v. Dep't of Justice, Office of Prof'l Responsibility,*
284 F.3d 172 (D.C. Cir. 2002)................................................................8

*Kimberlin v. Dep't of Justice,*
139 F.3d 944 (D.C. Cir. 1998) ..............................................................8

*Kowalczyk v. Dep't of Justice,*
73 F.3d 386 (D.C. Cir. 1996)................................................................22

*Pacific Fisheries, Inc. v. U.S.,*
539 F.3d 1143 (9th Cir. 2008) ...............................................................6

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

iii

*Physicians for Human Rts. v. U.S. Dep't of Defense*,
  675 F. Supp.2d 149 (D.D.C. 2009) ...................................................... 13

*Powell v. Dep't of Justice*,
  584 F. Supp. 1508 (N.D. Cal. 1984) .................................................. 14

*Pub. Citizen Health Research. Grp. v. Food & Drug Admin.*,
  704 F.2d 1280 (D.C. Cir. 1983) .......................................................... 19

*Reed v. NLRB*,
  927 F.2d 1249 (D.C. Cir. 1991) .......................................................... 12

*Reporters Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ............................................................ 4, 5

*Reporters Comm. For Freedom of the Press v. U.S. Customs & Border Prot. ("Reps. Comm II")*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ........................................................ 5

*Sai v. Transp. Sec. Admin.*,
  No. CV 14-403, 2015 WL 13889866 (D.D.C. Aug. 19, 2015)...................... 20, 21

*Sea Shepherd Legal v. Nat'l Oceanic and Atmospheric Admin.*,
  516 F. Supp. 3d 1217 (W.D. Wash. 2021) .............................................. 7

*Sierra Club v. U.S. Fish and Wildlife Serv.*,
  523 F. Supp. 3d 24 (D.D.C. 2021) ........................................................ 5

*Stern v. FBI*,
  737 F.2d 84 (D.C. Cir. 1984)................................................................ 8

*Tax Analysts v. I.R.S.*,
  294 F.3d 71 (D.C. Cir. 2002).............................................................. 7

*Transgender Law Ctr. v. Immigr. and Customs Enf't*,
  46 F.4th 771 (9th Cir. 2022) .........................................................*passim*

*Truitt v. Dep't of State*,
  897 F.2d 540 (D.C. Cir. 1990).......................................................... 19

*Trust v. U.S. Dep't of Homeland Sec.*
  No. CV 22-138, 2022 WL 3226275 (D.D.C. Aug. 10, 2022)........................... 20

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

iv

*Wessler v. U.S. Dep't of Justice*,
    381 F. Supp. 3d 253 (S.D.N.Y. 2019) ................................................................ 11

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................................................................................... 1, 15

5 U.S.C. § 552(a)(6)(A)(i) ........................................................................................ 20

5 U.S.C. § 552(a)(8)(A)(i)(I) ............................................................................... 2, 4, 5

5 U.S.C. § 552(b)(5) ................................................................................................... 3

5 U.S.C. § 552(b)(7) ................................................................................................... 7

Freedom of Information Act, 5 U.S.C. § 552 ...................................................*passim*

**Other Authorities**

6 C.F.R. § 5.6(d) ....................................................................................................... 21

6 C.F.R. § 5.8(e) ....................................................................................................... 21

Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick
    Woman, Avoiding Responsibility for Her Death. She Isn't Alone*,
    LA Times, May 13, 2022,
    https://www.latimes.com/world-nation/story/2022-05-13/ice-
    immigration-detention-deaths-sick-detainees ..................................................... 10

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

v

## I.    INTRODUCTION

This FOIA lawsuit seeks records concerning ICE's[1] practice of releasing detained immigrants on the brink of death from its legal custody, which allows the agency to avoid public reporting and accountability requirements for their deaths. As detailed in the Plaintiff's opening brief, Defendants DHS and DHS-OIG have improperly withheld agency records and failed to conduct an adequate search for documents in response to its request. Specifically, Defendants have improperly withheld information regarding investigations into the deaths of Teka Gulema and Johana Medina-Leon, including details regarding the cause of death as listed on death certificates, medical treatment provided in detention facilities, and agency communications and justifications for these deathbed releases. Defendants have also improperly withheld in full hundreds of pages of draft investigatory reports and have failed to conduct an adequate search for records related to the death of Martin Vargas Arellano.[2]

Defendants have now filed a cross-motion for summary judgment. Defendants point to a Byzantine bureaucracy and an unsupported reading of agency regulations to argue that they need not conduct a complete search as required under statute. But this attempt to obfuscate their obligations does not change that Defendants have failed to meet their burden of proof under FOIA. In FOIA cases, the government bears the burden to show that records can be withheld subject to an exemption, and to prove that it has conducted an adequate search "beyond material doubt." 5 U.S.C. § 552(a)(4)(B); *Transgender Law Ctr. v. Immigr. and Customs Enf't*, 46 F.4th 771, 779-80 (9th Cir. 2022). The government has not done so. First, it has failed to show

---

[1] All capitalized terms shall have the same meaning ascribed to them in Plaintiff's Motion for Summary Judgment.

[2] After Plaintiff filed its Motion for Summary Judgment, Defendants produced records referred by DHS-OIG to ICE.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

1

that it can withhold draft records of investigation into Gulema and Medina-Leon's deaths under Exemption 5. Even a new *Vaughn* Index, submitted without permission from the court and without conferral with Plaintiff, does not cure Defendants' failure to show that foreseeable harm would result from disclosure of these documents. Defendants also fail to justify withholding of records under Exemptions 6 and 7(c). Defendants do not even meaningfully attempt to defend their redaction of immigration information related to Gulema and Medina-Leon. They fail to justify withholding of information related to Medina-Leon's death, including information that ICE has already broadly released to the media. Finally, Defendants rely on an incorrect and inapplicable standard to claim that it need not follow clear leads in their search for records related to Vargas Arellano and a separate DHS component. For these reasons, the Court should grant Plaintiff's motion for summary judgment, deny Defendants' cross-motion, and order the release of withheld information and new searches.

## II.     ARGUMENT

### A.     DHS-OIG Has Failed to Meet Its Burden to Justify Its Exemption Claims.

#### 1.     DHS-OIG Improperly Withheld Information Under FOIA Exemption 5.

DHS-OIG has withheld 367 pages of records in full under Exemption 5, comprised of draft Memoranda of Activity ("MOA") regarding the deaths of Teka Gulema and Johana Medina-Leon. Defendants fail to meet their burden of proof to justify these withholdings. Even upon presenting a new *Vaughn* Index, Defendants have not shown that "foreseeable harm" would result upon release of these documents, as required under FOIA. 5 U.S.C. § 552(a)(8)(A)(i)(I). Courts have routinely ordered the disclosure of draft records of investigation into deaths of detained immigrants, even where the government has claimed Exemption 5. *See, e.g.*

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

2

*Transgender Law Ctr.*, 46 F.4th at 783; *Am. Oversight v. Dep't of Homeland Sec.*, -- F. Supp. 3d --, No. 1:21-cv-3030, 2023 WL 5723459 at *6 (D.D.C. Sept. 5, 2023). The court should do the same here.

Exemption 5 allows the government to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates the deliberative process privilege. To withhold a document under the deliberative process privilege, the government must show that a document is "predecisional" or "antecedent to the adoption of agency policy," and "deliberative," where "it must actually be related to the process by which policies are formulated." *Transgender Law Ctr.,* 46 F.4th at 783.

Defendants failed to meet their burden of demonstrating that these documents are "deliberative" or "predecisional," as their initial *Vaughn* Index did not, in any meaningful way, identify any decision or policy process to which the withheld information applies. Pl.'s Mot. Summ. J., ECF No. 67 at 22;[3] Defs.' First *Vaughn* Index, ECF No. 66-14 at 24, 26, and 28.[4]

Even considering Defendants' new *Vaughn* Index, however, Defendants also fail to meet their burden of showing that foreseeable harm would result if the withheld documents were released. FOIA prohibits an agency from withholding information unless "the agency reasonably foresees that disclosure would harm an interest

---

[3] For clarity of reference, Plaintiff cites to ECF pagination throughout this brief.

[4] Without instruction from the court or agreement amongst the parties, Defendants have now submitted "an updated *Vaughn* Index" "[u]pon review of the arguments raised in the Plaintiff's Motion," to assert that the documents are "predecisional." Defs.' Br., ECF No.79 at 7; Defs.'s Second *Vaughn* Index, ECF No. 79-3. Plaintiff requests that the court strike any further attempts by Defendant DHS-OIG to alter the record of its justifications for withholding of documents upon reply, including via another new *Vaughn* Index or declarations.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

3

protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *Transgender Law Ctr.*, 46 F.4th at 782. Congress adopted this new requirement for all FOIA requests filed after 2016 out of concern that "some agencies [were] overusing FOIA exemptions," with particular concern for "increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting S. Rep. No. 4, 114th Cong., 1st Sess. 2 (2015); H.R. Rep. No. 391, at 9-10)). To meet this "independent and meaningful burden," "an agency must 'identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'" *Ecological Rights Found. v. U.S. Env't Prot. Agency*, No. 19-cv-394, 2021 WL 2258554, at *1 (N.D. Cal. Jun. 3, 2021) (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)). Agencies must "provide more than 'nearly identical boilerplate statements' and 'generic and nebulous articulations of harm,'" *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106, "cannot rely on mere speculative or abstract fears, or fear of embarrassment," and "must provide more than just 'generalized assertions.'" *Am. Oversight*, 2023 WL 5723459 at *6 (quoting *Reporters Comm.*, 3 F.4th at 369-70).

Defendants have failed to meet their burden. Defendants' description of the purported harm by release of these documents "is wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself." *Reporters Comm.*, 3 F.4th at 370. Defendants rely on the same boilerplate claims of harm for each group of deliberative process withholdings, generally claiming that release of the documents would result in a "chilling effect on interactions between agency employees," that would "reduce the free exchange of ideas" and "hamper the agency's ability to efficiently and effectively formulate law enforcement techniques,

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

4

strategies, and investigative reports." *See* Defs.'s Second *Vaughn* Index, ECF No. 79-3 at 28, 31, 35; Chigewe Decl., ECF No. 79-4 at ¶¶ 59-61. But Defendants provide "no link between the specified harm and the specific information contained in the material withheld," *Reporters Comm.*, 3 F.4th at 369 (quoting H.R. Rep. No. 391 at 9), instead "merely restat[ing] th[e] broad justifications for the privilege" that "undergird[] the privilege in every case." *Reporters Comm. For Freedom of the Press v. U.S. Customs & Border Prot. ("Reps. Comm II")*, 567 F. Supp. 3d 97, 115 (D.D.C. 2021).

Defendants further claim that "[i]f the final version differs from the draft version, it could confuse the public as to how and/or why one version says one thing while the final says something different." Defs.'s Second *Vaughn* Index, ECF No. 79-3 at 28, 31, 35; Chigewe Decl., ECF No. 79-4 at ¶¶ 60. Though guarding against public confusion can serve as an interest appropriately justifying foreseeable harm if the agency "provide[s] a situation-specific reason for withholding a nonfinal draft," a vague assertion that a draft report differs from the final version does not carry an agency's burden. *Ams. For Fair Treatment v. U.S. Postal Serv.*, 663 F. Supp. 3d 39, 61 (D.D.C. Mar. 23, 2023); *Sierra Club v. U.S. Fish and Wildlife Serv.,* 523 F. Supp. 3d 24, 38 (D.D.C. 2021) ("The Court remains unpersuaded that a non-specific fear of confusion suffices to meet the agency's burden [of showing foreseeable harm]."). Defendants have not, for example, shown whether the "differences are substantive in nature," or described "in concrete terms" how precisely the public would be confused by any differences. *Ams. For Fair Treatment*, 663 F. Supp. at 61. Defendants' generic assertions of harm do not meet their burden to establish that it is "reasonably foresee[able] that disclosure" of the draft MOAs withheld pursuant to the deliberative process privilege "would harm an interest protected" by that privilege. 5 U.S.C. § 552(a)(8)(A)(i)(I).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

5

Based on the record, the court can stop here, and reject Defendants' withholding. But even if the court concludes that the government has met its burden to show that the agency will suffer foreseeable harm from disclosure relevant to deliberative process, Exemption 5 does not permit the wholesale withholding of documents. Exemption 5 "requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *EPA v. Mink*, 410 U.S. 73, 89 (1973). Instead, the "privilege applies only to the 'opinion' or 'recommendary' portion of a document, not to factual information which is contained in the document." *Coastal Sales Gas Corp v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980). Instead, "[f]actual portions of documents covered by the deliberative process privilege must be segregated and disclosed unless they are 'so interwoven with the deliberative material that [they are] not [segregable]." *Pacific Fisheries, Inc. v. U.S.*, 539 F.3d 1143, 1148 (9th Cir. 2008) (citation omitted) (alterations in original). The government bears the burden "to establish that all reasonably segregable portions of a document have been segregated and disclosed," and courts should "apply that burden with an awareness that the plaintiff, who does not have access to the withheld materials, is at a distinct disadvantage in attempting to controvert the agency's claims." *Id.* (quoting *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997)). To do so, the government may provide an affidavit "with reasonably detained descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Id.* "The affidavits must not be conclusory," but should disclose 'as much information as possible without thwarting the claimed exemption's purpose.'" *Id.* at 1148-49 (quotations and citations omitted).

The government fails to meet its burden. The government only briefly and very generally describes the entirety of the 367 pages withheld in full, stating that the

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

6

"information included in the draft MOAs derives from interviews of various witnesses and the collection of information, data sets, and documents from ICE as well as any other appropriate party." Defs.'s Br., ECF No. 79 at 31; Chigewe Decl., ECF No. 79-4 at ¶ 63 (same). But this is not enough to give credence to Defendants' broad claim that the redacted facts, in their entirety, are "deliberative in nature." ECF No. 79 at 31. Unlike other cases where the government "describe[d] the withheld information in sufficient detail such that the court can take it at face value," Defendants have not done so here. *Sea Shepherd Legal v. Nat'l Oceanic and Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1242 (W.D. Wash. 2021) (noting that the declaration "describes the withheld documents individually . . . reviewed each responsive record on a page by page and line by line basis to identify reasonably segregable, non-exempt information," and "rather than withhold the entire document, the Government took the correct view that it was required to release any information that was not classified, even if it was a single sentence.") (cleaned up, citations omitted). For these reasons, the Court should grant Plaintiff's Motion, and deny Defendants' Cross-Motion.

> ### 2.    DHS-OIG Improperly Withheld Information Under FOIA Exemptions 6 and 7(c).
>
> #### a.    Defendants Cannot Make the Threshold Showing for Exemption 7(c) that They Compiled the Documents for Law Enforcement Purposes.

FOIA exemption 7(c) applies only to documents "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Defendants fail to satisfy this threshold requirement. As Plaintiff has explained, DHS-OIG is a "mixed-function agency" with activities beyond law enforcement, so it is "subject to an exacting standard when it comes to the threshold requirement of Exemption 7." *Tax Analysts v. I.R.S.*, 294

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

7

F.3d 71, 77 (D.C. Cir. 2002). Defendants cite to no contrary law, and even admit that the DHS-OIG office of investigations' work is not limited to law enforcement.   ECF No. 79 at 34 ((citing Chigewe Decl., ECF No. 79-4 ¶ 66) (noting that DHS-OIG's work includes internal investigations of employees that "can result . . . in personnel actions.")). This admission shows that DHS-OIG is a mixed-function agency. *See Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 179 (D.C. Cir. 2002) (finding the DOJ-OIG a "mixed function agency" because it investigated not just "violations of law" but also employees' violations of internal guidelines "that may lead to disciplinary proceedings" against those employees).

Because DHS-OIG is a "mixed-function agency," Defendants must meet "the burden of showing on a case-by-case basis that any requested records were actually compiled for law-enforcement . . . purposes." *Bartko v. United States Dep't of Justice*, 898 F.3d 51, 65 (D.C. Cir. 2018). But their sole support is a boilerplate statement by an employee that the withheld "records all reflect and relate to law enforcement investigations conducted by Special Agents to determine what, if any, misconduct occurred that resulted in the death of two individuals." ECF No. 79-4 at 25; *see also* ECF No. 79 at 34-35. This type of "conclusory" declaration cannot meet the government's burden. *Black v. U.S. Dep't of Homeland Sec.*, No. 2:10-CV-2040, 2012 WL 3155142, at *3 (D. Nev. Aug. 2, 2012) (rejecting the "conclusory" assertions in a declaration that did "not discuss: (1) the underlying [ICE Office of Professional Responsibility ("OPR")] investigation to show that the investigation was conducted pursuant to OPR's law enforcement duties, or (2) how ICE determined that the underlying investigation was for law enforcement purposes"); *see also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 947 (D.C. Cir. 1998) (holding it is not "law enforcement" when an agency "simply supervises its own employees"); *Stern v. FBI*, 737 F.2d 84, 89 (D.C. Cir. 1984) (same). In light of Defendants' failure

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

8

to meet their burden on this threshold question, the Court must grant summary judgment that exemption 7(c) does not apply. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendants assert Exemption 6 with their 7(c) witholdings, so even after the Court rejects Defendants' use of Exemption 7(c), it will still need to review these redactions for purposes of Exemption 6.  As Defendants acknowledge, Exemption 6 applies a more permissive standard: "unless the invasion of privacy is clearly unwarranted, the public interest in disclosure must prevail." *Am. Oversight v. U.S. Gen. Servs. Admin.*, 311 F. Supp. 3d 327, 345 (D.D.C. 2018) (citations omitted); ECF No. 79 at 33-34.

Plaintiff has limited its Exemption 6 and 7(c) challenges to two specific categories of information where privacy interests are limited, and where disclosure of the information furthers transparency on a matter of significant public interest and could lead to meaningful policy changes.

### b.      Defendants Fall to Justify Redaction of Medina-Leon's Widely Reported Health Information.

Plaintiff first challenges Defendants' redaction of information related to Johana Medina-Leon. Specifically, Plaintiff challenges redactions of the third cause of death listed on Medina-Leon's death certificate,[5] a health condition identified in a blood test,[6] and information about a health screening question relevant to this condition.[7] The Los Angeles Times has already reported that the third cause of death on Medina-Leon's death certificate is HIV, based on ICE's release of this information

---

[5] ECF No. 66-4, November 2022, 37-38; December 2022, 92.

[6] *Id.* at November 2022: 15, 16, 20, 25-26, 33, 39, 41, 50; December 2022: 37, 41, 44-45, 51, 55-56, 70-71, 76, 84, 97, 99; June 2023: 1.

[7] *Id.* at March 2023: 49.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

9

in another FOIA case.[8] ICE also informed multiple media outlets that Medina-Leon was HIV-positive. *See* ECF No. 67 at 3-4 n.9, 10 (listing stories).

The parties agree that the Exemption 6 analysis (and Exemption 7(c) analysis if the court finds the government has met the threshold law enforcement requirement) involve a two-step process: first, the Court examines whether the government has identified a non-trivial privacy interest, and second, the Court weighs that privacy interest against the public interest in disclosure. ECF Nos. 67 at 23, 79 at 32-33.

The privacy interests at issue here are minimal. Although this type of health information might in other circumstances give rise to a privacy interest, there can be no privacy interest in Medina-Leon's HIV-positive status because it is already widely known. Defendants do not dispute that ICE itself disclosed Medina-Leon's HIV-positive status to the media, which has widely reported that fact. ECF No. 79 at 37. Instead, they argue that the Court can consider public knowledge of her HIV-positive status only if DHS-OIG was the entity that disclosed this information. But public availability of information defeats an agency's claim of an Exemption 6 privacy interest even when someone other than the defendant disclosed that information. *E.g.*, *Am. Oversight*, 311 F. Supp. 3d at 346. Defendants cite to *Frugone v. CIA*, 169 F.3d 772 (D.C. Cir. 1999), to argue that the disclosure must come from the same agency. But *Frugone* addressed an issue entirely unrelated to Exemption 6 or the balance of privacy interests, and instead considered technical requirements for national security-related exemptions.  Defendants' argument also fails because ICE itself is a component of Defendant DHS. Plaintiff served this FOIA request on DHS (along with DHS-OIG and ICE), and DHS determined it would respond to the request by

---

[8] Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, LA Times, May 13, 2022, https://www.latimes.com/world-nation/story/2022-05-13/ice-immigration-detention-deaths-sick-detainees.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
Plaintiff's Reply in Support of Motion for Summary Judgment and Opposition to Defendants' Cross-Motion

10

"defer[ring] to the OIG and ICE's response(s)." ECF No. 79-5 at 7. Defendant DHS now attempts to avoid disclosing a fact that its own component disclosed to the media.

Defendants do not dispute that Medina-Leon's privacy interests diminished upon her death. *See Wessler v. U.S. Dep't of Justice*, 381 F. Supp. 3d 253, 259 (S.D.N.Y. 2019) ("[A]n individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA." (citation omitted)); ECF No. 79 at 35 (admitting that "[t]here may be a diminishment" in Median-Leon's privacy interests after her death).[9]

If the Court finds a non-trivial personal privacy interest in Medina-Leon's health information and moves to step two of the analysis, it should find that the significant public interest in disclosure outweighs the limited personal privacy interests here. Plaintiff has explained the significant public interest in information related to HIV-related deaths of transgender people detained by ICE, and how disclosure could help to prevent similar deaths in the future. ECF No. 67 at 27. Defendant DHS-OIG does not dispute the importance of this public interest, admitting that the withheld "personal privacy information may touch on ICE's activities regarding detention." ECF No. 79-4 at 28. Instead, DHS-OIG disregards this public interest because the information would shed light on ICE's activities, rather than DHS-OIG's. This argument fails. Courts must consider "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties *or otherwise let citizens know what their*

---

[9] Defendants fault Plaintiff for not providing documentation "executed by the family members or next of kin of the deceased individuals," and for not "explaining whether they attempted to obtain" this documentation. ECF No. 79 at 36 n.5. But Exemption 6 and 7(c) analysis does require any such documentation, and Plaintiff need not present it to obtain responsive information.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

11

***government is up to***." *Bibles v. Oregon Natural Desert Ass'n*, 519 U.S. 355, 355–56 (1997) (cleaned up, emphasis added). Defendants argue that the test is narrower, quoting an out-of-circuit opinion that phrases the test more narrowly as focusing on information that "sheds light on an agency's performance of its statutory duties." *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (citation omitted); *see also* ECF No. 79 at 33 (quoting *Reed*). But the redacted documents provide important information as to government activity, including whether DHS has provided adequate medical care to detained immigrants in its custody prior to death.[10] Moreover, *Reed* does not limit the court from considering whether the redacted information would shed light on ICE's performance of its statutory duties, rather than DHS-OIG, when considering the public interest in disclosure of the records. Rather, *Reed* rejected an argument that courts should find a public interest where the interest in disclosure was entirely unrelated to shedding light on government activities. *Reed*, 927 F.2d at 1251-52. *Reed* emphasized that the public-interest inquiry must be grounded in claims that "the public would learn something directly about the workings of the ***Government,***" which is met here. *Id.* (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)) (emphasis in original).[11]

---

[10] Defendant DHS's attempt to wave away the privacy interest as shedding light only on ICE's activities also fails because ICE is a component of DHS, and when ICE detains people, they are in DHS custody. What happens in immigration detention sheds light on DHS's activities.

[11] Defendants also argue that "[a]ny claim that some of this information is already well-known only supports DHS OIG's position that releasing it does not, in anyway, increase the public's knowledge of DHS OIG's activities." ECF No. 79 at 37. Defendants cite no law for this proposition. They cannot, because courts reject this "Catch-22 argument: if public attention were not already focused, the government would argue that shows there is no public interest in disclosure; because there is public attention, it argues that no more is needed." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011).

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

12

**c.** **Defendants Fall to Justify Redacting Medina-Leon and Gulema's Immigration Information.**

Second, Plaintiff challenges Defendants' redaction of information related to Medina-Leon and Gulema's immigration history. Specifically, Plaintiff challenges the redaction of witness statements made by ICE officers related to the decision to release Medina-Leon from custody and information related to her entry to the United States,[12] and ICE's attempts to obtain travel documents to deport Gulema from the United States.[13]

Defendants do not even try to meaningfully defend these redactions in their brief, pointing only to the justifications made in their *Vaughn* Index. ECF No. 79 at 37-38. But that does not suffice to meet Defendants' burden to justify redaction of this information. *Hayden v. N.S.A.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("[A]ffidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards . . . ."); *see also Physicians for Human Rts. v. U.S. Dep't of Defense*, 675 F. Supp.2d 149, 166 (D.D.C. 2009) ("agency statements are not accorded deference if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping") (cleaned up). Both versions of Defendants' *Vaughn* Index provide only vague descriptions of the redacted information as "personal privacy immigration information." Defendants' boilerplate language fails to provide any context or specificity for their redactions, and their brief does not even attempt to explain what material is redacted or why that specific material was redacted, out of all of the immigration information in the records they did produce. ECF No. 79 at

---

[12] ECF No. 66-4, Nov. 2022: 23-24, 28; Dec. 2022: 40, 42, 44, 67-68, 75.
[13] *Id.,* Jun. 2023: 1, 118, 151, 157.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

13

37-38. [14] Defendants thus fail at step one to show a non-trivial privacy interest, ending the analysis.

Even if the Court proceeds to the second step of the test, strong public policy interests outweigh whatever marginal privacy interests may exist. ICE's decisions to release people from custody on their deathbeds have broad public importance and have received significant public attention. ECF No. 67 at 13-15, n.4-11. The context of these redactions demonstrates that DHS-OIG investigators believed this information was important enough that they included it multiple times in their compiled reports. Moreover, whatever immigration information is concealed is likely highly relevant to ICE's determinations to detain and then release Medina-Leon and Gulema. The specifics of this immigration-related information will be important in determining why ICE changed its view as to whether they must be detained or released. Finally, public interest is heightened because there are suggestions that these documents involve "wrongdoing on the part of the government official[s]." *Hunt v. FBI*, 972 F.2d 286, 289-90 (9th Cir. 1992). One court has already found ICE's practice of releasing people nearing death constituted an attempt to "actively

---

[14] Defendants assert that, in addition to Exemptions 6 and 7(c), "a DHS immigration regulation" requires that some immigration information "be protected from disclosure" and claim that they are "not permitted to disclose the specific regulation as a disclosure of it would also be a violation in this context." ECF No. 79, 35 n.4. This unspecified regulation cannot serve as a basis to withhold information. To the contrary, "[a]n agency may withhold a document only if the information contained in the document comes under one of the nine exemptions listed in § 552(b)." *Powell v. Dep't of Justice*, 584 F. Supp. 1508, 1512 (N.D. Cal. 1984). Another court addressed—and quickly rejected—a related argument. In that case, also involving deaths in ICE custody, ICE claimed Exemption 3, based on an "unspecified statute." *Am. Oversight*, 2023 WL 5723459, at *2. Like here, the government provided "no support at all" for this assertion, and the court found that the government had not met its burden of justifying its withholdings. *Id.*

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

14

conceal" a death, raising "significant concerns regarding the Government's actions and lack of candor." Order at 1, *Hernandez Roman v. Wolf*, No. CV-20-00768-TJH, ECF No. 1031 (C.D. Cal. Mar. 20, 2021).

Defendants do not address any of these reasons, relying instead on a conclusory statement in their *Vaughn* Index that there is no public interest in disclosure. ECF No. 79, 38. This does not suffice, and this Court should order disclosure of the redacted information. In the alternative, the Court should review these redactions *in camera* to weigh the private and public interests for the release of this information. 5 U.S.C. §552(a)(4)(B).

### B.   DHS and DHS-OIG Failed to Adequately Search for Responsive Records.

DHS and DHS-OIG have failed to conduct an adequate search for records, including those related to the death of Martin Vargas Arellano. In moving for summary judgment on Plaintiff's search adequacy claims, Defendants fail to cite, let alone apply, the controlling Ninth Circuit search adequacy standard set forth in *Transgender Law Ctr.,* 46 F.4th at 779. There, the Ninth Circuit joined "[c]ircuit courts across the country" to hold that agencies must "demonstrate [search] adequacy "beyond a material doubt." *Id*. (*citations omitted)*. The Ninth Circuit rejected the agency's claim that "the court must simply determine whether the agency's search was 'adequate,'" and instead it clarified that its approach "properly places a concrete burden of proof on the Government, requiring an agency to show that it has undertaken *all reasonable measures* to uncover *all relevant documents*." *Id*. at 779-80 (emphasis added). To meet this burden, the agency's briefing and declarations must "appropriately respond to positive indications of overlooked materials provided by [plaintiff]" and "hew to their duty to follow obvious leads." *Id*. at 780 (cleaned up).

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

15

In their motion, Defendants entirely ignore these binding standards, and their agency affidavits fail to state facts demonstrating that they have met them. Importantly, both DHS and DHS-OIG failed to comply with their obligation to follow "leads" contained in documents located by DHS-OIG showing that DHS's Office of Civil Rights and Civil Liberties ("DHS-CRCL") and DHS-OIG both likely have additional responsive records. *Id.* at 780. Where, as here, "a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 771 (9th Cir. 2015) (citations and quotation omitted).

### 1.    Records Shows OIG Failed to Conduct an Adequate Search

In its motion for summary judgment, Plaintiff made the concrete showing that a further search by DHS-OIG into leads identified in a Case Summary Report would likely yield additional responsive records. ECF No. 66-7 at 2-5. That Report references a complaint letter sent to the DHS Secretary by immigration service providers under the National Qualified Representative Program ("NQRP"), which discusses the death of Martin Vargas Arellano, and asks that DHS-CRCL investigate it. ECF No. 66-4 at 45-52.  In their motion, Defendants acknowledge the limited scope of the additional search Plaintiff proposes, including a search of "email and other correspondence" of DHS-OIG staff involved in addressing the complaint and "refer[ring] the matter out." ECF No. 79 at 21. However, rather than agreeing to Plaintiff's proposed search, and despite its responsibility to "uncover all relevant documents," *Transgender Law Ctr.*, 46 F. 4th at 780, Defendants instead embark on a largely irrelevant explanation of "how case summary reports are generated by the Enforcement Data System ('EDS')." *See* ECF No. 79 at 21, ECF No. 79-4 ¶ 40. For

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

16

this reason, and those discussed below, the Court should deny Defendants' motion, grant summary judgment to Plaintiff, and require DHS-OIG to conduct the requested search. ECF No. 67 at 33-34, 66-2.

Importantly, even Defendants' explanation of the information in the Case Summary Report identifies leads" that DHS-OIG should have followed in its search for responsive records. For example, DHS-OIG acknowledges that the "Date Opened" reference in the Report indicates the "first date that the complaint was reviewed." Chigewe Decl., ECF No. 79-4 ¶ 40(a)(3)(b)(iii). However, the Chigewe Declaration fails to identify who reviewed the complaint on that date, and why a search of that individual's email and other correspondence, or other files, would not yield additional responsive records. Similarly, DHS-OIG acknowledges that the "Date Closed" field on the Report indicates the "date on which the complaint was referred for consideration." *Id*. The Chigewe Declaration, however, also fails to identify who at DHS-OIG "referred" the complaint "for consideration," and why a search of that individual's files would not yield responsive records.

The same unanswered questions remain as to DHS-OIG's refusal to search for the case numbers referenced in the Report. ECF No. 67 at 33. DHS-OIG offers at best conclusory explanations for why such a search was not conducted, making summary judgment inappropriate. *Hamdan*, 797 F.3d at 770. For example, the Chigewe Declaration states that the "second number identified is not a DHS OIG-generated number, thus there would conceivably be no reason to search for a DHS number in an OIG system." ECF No. 79-4 ¶ 40(a)(3)(b)(iv). However, simply because the "second" reference case number was not generated by DHS-OIG does not explain why a search for that number in DHS-OIG's records systems would not yield responsive records. Indeed, the Chigewe Declaration admits that "[DHS-OIG] provides oversight and monitors the investigative activity of DHS's various internal

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

17

affairs offices," *Id*. ¶ 37, making clear that DHS-OIG likely keeps track of non-OIG generated case numbers all the time. Further, as to the "final number" on the Report, which DHS-OIG aptly describes as relating "directly to this particular complaint and case report," *Id*. ¶ 40(a)(3)(b)(iv), DHS-OIG fails to provide *any* explanation for why a search for that number would not yield responsive records.

Based on these leads in the Case Summary Report, DHS-OIG's limitation of its search related to Vargas Arellano to a single records system, the EDS, *id*. ¶ 40(3)(a), was inadequate. DSH-OIG should have performed additional searches, including of its email systems and the DHS-OIG Field Office in Los Angeles where Vargas Arellano was detained, as it did for Medina-Leon and Gulema. *Id*. ¶ 40(3)(a)(b)(v).

**2.    DHS Failed to Refer Plaintiff's Request to DHS-CRCL to Conduct an Adequate Search**

Ninth Circuit caselaw also refutes Defendants' erroneous claim that when DHS, through its Privacy Office, referred Plaintiff's Request to DHS-OIG and ICE, its obligation to respond to Plaintiff's FOIA Request ended.[15] *Transgender Law Ctr*., 46 F.4th 771, 780. In fact, DHS had an obligation at various stages of the litigation to task DHS-CRCL to search for those records based on "leads that emerge[d] during [the agencies'] inquiry," *Id.* at 780, as well as "in particular, the leads provided by [Plaintiff]," *id*. at 781. DHS has failed to explain "beyond a material doubt" why it failed to do so, such that Plaintiff's motion for summary judgment should be granted and DHS should be ordered to task DHS-CRCL to conduct a search.

Tellingly, DHS has never taken the position that DHS-CRCL is not likely to have responsive records, nor could it. Importantly, between June 29, 2023 and

---

[15] Defendants treat Defendant DHS and its Privacy Office ("DHS-PRIV") as one and the same, and never argue that DHS did not have authority to task CRCL to conduct a search, either through DHS-PRIV or otherwise. *See* Declaration of Patricia M. Pavlik-Keenan ("Pavlik Decl."), ECF No. 79-5 ¶¶1-2.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

18

August 2, 2023, DHS-OIG consulted with DHS, through its Privacy Office, about the NQRP letter, thereby providing it with "positive indications" that DHS-CRCL had responsive records. Chigewe Decl., ECF No. 79-4 ¶¶ 47, 49, n.12; Pavlik Decl., ECF No. 79-5 ¶ 18; ECF No. 66-6 at 25. DHS-OIG also referred a separate document directly to DHS-CRCL. ECF No. 79-4 ¶ 35, n.3, ECF Nos. 66-6 at 25, 66-9 at 18. Thereafter, as in *Transgender Law Center*, Plaintiff provided DHS "additional search leads" through a series of "communiques," explaining why DHS should direct CRCL to search for responsive records. *Transgender Law Ctr*., 46 F. 4th at 780; ECF Nos. 66-9 at 9, 28, 48; 66-11 at 14, 26. Despite DHS's awareness of these leads, Ms. Pavlik-Keenan's Declaration lacks any facts explaining why it failed to follow them, making summary judgment for Defendants particularly inappropriate here. ECF No. 79-5; *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990) Where the "record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper"); *Dillon v. U.S. Dep't of Justice*, No. CV 17-1716 (RC), 2019 WL 249580, at *7 (D.D.C. Jan. 17, 2019) (agency's failure to "address[] [plaintiff's] evidence of unproduced" records "in and of itself demonstrat[ed] that there remain[ed] a genuine dispute regarding whether [defendant agency] conducted a good faith, reasonable search" for responsive records) (cleaned up).

DHS's reliance on its FOIA regulations to justify its failure to task DHS-CRCL to conduct a search lacks merit. First, nothing in those regulations exempts DHS from conducting an adequate search, as outlined by the Ninth Circuit in *Transgender Law Center*, nor could they. *Pub. Citizen Health Research. Grp. v. Food & Drug Admin*., 704 F.2d 1280, 1287 (D.C. Cir. 1983) ("Congress has made clear []that the federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA"). Moreover, DHS erroneously claims that its "decentralized" FOIA processing system, and the DHS Privacy's Office's decision

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

19

on May 18, 2022 to "administratively close" Plaintiff's Request—after it had referred it to OIG and ICE—excuses its refusal to refer the request to DHS-CRCL. However, Defendants cite no language in the FOIA regulations to support this claim. To the contrary, cases interpreting those regulations have determined that "requests may not always come from the requester," and when one component determines another component was the intended addressee, "one would assume that it would have a duty to forward the request on." *Protect the Pub.'s Trust v. U.S. Dep't of Homeland Sec.* No. CV 22-138, 2022 WL 3226275, at *4 (D.D.C. Aug. 10, 2022) (citing 6 C.F.R. § 5.4(c)).

Further, contrary to Defendants' unsupported contention, Plaintiff was not required to "object" to or "administratively appeal" the DHS Privacy Office's "administrative closure" of its Request before DHS was obligated to refer the Request to DHS-CRCL. A FOIA requester has "no duty" to file an administrative appeal if the agency has not yet "made a 'determination'" on the request as required by 5 U.S.C. § 552(a)(6)(A)(i). *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n,* 711 F.3d 180, 188 (D.C. Cir. 2013).[16] An "administrative closure letter" like the one the DHS Privacy Office issued Plaintiff does not constitute a "determination" or "denial" that would trigger administrative appeal obligations because the "agency fails to provide a timely answer to a request" under 552(a)(6)A)(i), and therefore "FOIA deems the requester to have constructively exhausted administrative remedies and permits immediate judicial review." *See Sai*

---

[16] "[I]n order to make a "determination" and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the "determination" is adverse." *Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
DEFENDANTS' CROSS-MOTION

20

*v. Transp. Sec. Admin.*, No. CV 14-403, 2015 WL 13889866, at \*4 (D.D.C. Aug. 19, 2015) (citations and quotations omitted).[17]

      The DHS FOIA regulations confirm that the Privacy Office's "administrative closure" letter did not trigger Plaintiff's administrative appeal or exhaustion obligations prior to filing suit. As set forth in 6 C.F.R. § 5.8(e), only "adverse determinations" of a FOIA request would trigger the obligation to administratively appeal before a requester can proceed to court. Here, the Privacy Office's decision in its closure letter to refer the Request only to DHS-OIG and ICE does not constitute an adverse determination under the regulations. *See* 6 C.F.R. § 5.6(d) (defining "adverse determinations," none of which apply here).[18] *C.f. Aguirre v. U.S. Nuclear Regulatory Comm'n*, 11 F.4th 719, 726 (9th Cir. 2021) (finding failure to exhaust when a commercial FOIA requester failed to respond to an "administrative closure"

---

[17] The court in *Sai* ultimately determined that because the plaintiff failed to respond to the agency's request in the closure letter to provide a valid verification, he had not made a "valid request" and had failed to exhaust administrative remedies for that separate reason. *Sai*, 2015 WL 13889866, at \*4 (citations and quotations omitted). Here, the DHS Privacy Office's closure letter did not ask Plaintiff to perfect its request in any way, let alone did it make any final "determination" or "denial" of the request. In addition, the letter also did not identify that Plaintiff was required to appeal its determination that only DHS-OIG and ICE had responsive records, which under the DHS FOIA regulations is a prerequisite for a "denial" of a request that triggers appeal obligations prior to filing suit. *See* ECF No. 79-6; 6 C.F.R. §§ 5.6(d) and 5.8(e).

[18] 6 C.F.R.§ 5.6(d), states in pertinent part "Adverse determinations, or denials of requests, include decisions that the requested record is exempt, in whole or in part; the request does not reasonably describe the records sought; the information requested is not a record subject to the FOIA; the requested record does not exist, cannot be located, or has been destroyed; or the requested record is not readily reproducible in the form or format sought by the requester. Adverse determinations also include denials involving fees, including requester categories or fee waiver matters, or denials of requests for expedited processing."

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

21

1    requiring it to pay required processing fees, as specifically required by agency

2    regulations).

3        With respect to the Privacy Office's ongoing obligations to refer a FOIA

4    request to additional components, Defendants' attempt to distinguish *ACLU v. Dep't*

5    *of Homeland Sec.*, No. CV-20-3204-RDM, 2023 WL 2733721, at *6 (D.D.C. Mar.

6    31, 2023), also fails.  Regardless of whether the Privacy Office affirmatively agreed

7    to continue to oversee or coordinate Plaintiff's FOIA Request, as it did in that case,

8    it is still obligated under *Transgender Law Center* to refer a search to other

9    components once it received "positive indications" that another component likely had

10   responsive records. *Transgender Law Ctr.,* 46 F. 4th at 780-81. And simply because

11   the court in that case was persuaded by the fact that DHS knew before it commenced

12   its search that another component also likely had responsive records and should

13   conduct a search, this is no reason why that precondition must apply here. ECF No.

14   79 at 24. Indeed, such a precondition would conflict with *Transgender Law Center*,

15   which makes clear that an agency should follow leads, even after it completes its

16   search (or in this case determine not to commence a search). It would also be

17   inconsistent with the court's own determination in *ACLU v. Dep't of Homeland Sec.*,

18   that the Privacy Office need not "make th[e] determination once and for all time

19   [which agency likely has responsive records] when it makes its initial referral."

20   *ACLU*, 2023 WL 2733721, at *6.[19]

21

22

23    _____

24    [19] Defendants' attempt to analogize this case to *Kowalczyk v. Dep't of Justice*, 73
      F.3d 386 (D.C. Cir. 1996) is also meritless. Unlike in that case, Plaintiff never

25    submitted a "subsequent clarification of its request," such that "[t]he concern
      identified by the D.C. Circuit []—that plaintiffs would indefinitely extend their

26    FOIA requests by sending clarification letters—is not present here." *ACLU*, 2023
      WL 2733721, at *10 (distinguishing case).

27
      *ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK

28    PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
      DEFENDANTS' CROSS-MOTION

## III.   CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Summary Judgment should be GRANTED, and the Cross-Motion for Summary Judgment from Defendants DHS and DHS-OIG should be DENIED.

The undersigned counsel of record for Plaintiff certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted this 1st of May, 2024.
*/s/ Laboni Hoq*

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| MICHAEL KAUFMAN (SBN 254575)<br>MKaufman@aclusocal.org<br>ACLU FOUNDATION OF<br>SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

23