E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-3989 | 8790
        Facsimile: (213) 894-7819
        E-mail: Joseph.Tursi@usdoj.gov
                Jason.Axe@usdoj.gov

Attorneys for Defendants DHS and DHS OIG

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., <br><br> Defendants. | No. 2:22-cv-04760-SHK <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Hearing Date:  May 22, 2024 <br> Hearing Time:  10:00 a.m. <br> Courtroom:  3 or 4 <br><br> Honorable Shashi H. Kewalramani <br> United States Magistrate Judge |

# TABLE OF CONTENTS

DESCRIPTION                                                                                          PAGE

I.      INTRODUCTION ................................................................................... 1

II.     ARGUMENT ......................................................................................... 1

        A.      DHS OIG's Redactions Were Proper Under Applicable FOIA
                Exemptions ............................................................................... 1

                1.      The Exemption 5 Redactions Were Proper ............................. 2

                2.      The Exemptions 6 and 7(C) Redactions Were Proper ..................... 5

        B.      DHS OIG and DHS Met Their Search Obligations Under The FOIA ......... 9

                1.      DHS OIG Has Met Its Search Obligations. ..................... 10

                2.      DHS Did Not Have an Obligation to Search CRCL ..................... 11

        C.      Plaintiff Has Abandoned Its Claims Over an Alleged Improper
                Withholding of Documents Referred to ICE ............................... 14

        D.      Plaintiff Has Not Challenged DHS OIG's Position That It Released
                All Reasonably Segregable Information ..................................... 14

III.    CONCLUSION ................................................................................... 14

1

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                    PAGE

**Federal Cases**

*ACLU v. U.S. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011) .................................................................8, 9

*Aguirre v. United States Nuclear Regul. Comm'n*,
   11 F.4th 719 (9th Cir. 2021) ..................................................................13

*Am. Oversight v. Dep't of Homeland Sec.*,
   --- F. Supp. 3d ---, 2023 WL 5723459 (D.D.C. Sept. 5, 2023) .....................3

*Am. Small Bus. League v. United States Off. of Mgmt. & Budget*,
   631 F. Supp. 3d 804 (N.D. Cal. 2022) ......................................................11

*Am. Oversight v. U.S. General Services Administration*,
   311 F. Supp. 3d 327 (D.D.C. 2018) ..........................................................6

*Cameranesi v. United States Dep't of,*
   *Def.*, 856 F.3d 626 (9th Cir. 2017) ...........................................................7

*Campbell v. U.S. Dep't of Just.*,
   164 F.3d 20 (D.C. Cir. 1998) ..................................................................10

*Charles v. Off. of the Armed Forces Med. Exam'r*,
   935 F. Supp. 2d 86 (D.D.C. 2013) ............................................................7

*Defs. of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) .........................................................2, 3

*Documentation Ctr. Corp. v. United States Coast Guard*,
   2024 WL 1007503 (9th Cir. Mar. 8, 2024) .................................................7

*Freedom of the Press Found. v. United States Dep't of Just.*,
   241 F. Supp. 3d 986 (N.D. Cal. 2017) .......................................................2

*Hamdan v. U.S. Dep't of Just.*,
   797 F.3d 759 (9th Cir. 2015) ............................................................1, 4, 9

*Hunt v. F.B.I.*,
   972 F.2d 286 (9th Cir. 1992) ...................................................................9

i

*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ..................................................................10, 11

*Jimenez v. United States Dep't of Homeland Sec.*,
   2022 WL 1642460 (S.D. Fla. Feb. 24, 2022), *report and recommendation adopted*,
   2022 WL 16700354 (S.D. Fla. Nov. 3, 2022) ...............................................12

*Lahr v. Nat'l Transp. Safety Bd.*,
   569 F.3d 964 (9th Cir. 2009) ...........................................................................7

*Lion Raisins v. Dep't* of Agric.,
   354 F.3d 1072 (9th Cir. 2004*)* ..............................................................1, 2, 9

*Machado Amadis v. United States Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ..........................................................................4

*Moorer v. U.S. Dep't of Just.*,
   2014 WL 853043 (S.D. Ind. 2014) .................................................................13

*Nat'l Archives & Recs. Admin. v. Favish*,
   541 U.S. 157 (2004) ..........................................................................................7

*Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*,
   646 F. Supp. 3d 1245 (S.D. Cal. 2022) .........................................................10

*Oglesby v. U.S. Dep't of the Army*,
   920 F.2d 57 (D.C. Cir. 1990) ..........................................................................13

*Prison Legal News v. Lappin*,
   780 F. Supp. 2d 29 (D.D.C. 2011) ....................................................................6

*Protect the Pub.'s Tr. v. United States Dep't of Homeland Sec.*,
   2022 WL 3226275 (D.D.C. Aug. 10, 2022) ....................................................12

*Schrecker v. U.S. Dep't of Just.*,
   349 F.3d 657 (D.C. Cir. 2003) ..........................................................................7

*Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*,
   516 F. Supp. 3d 1217 (W.D. Wash. 2021) ........................................................4

*Transgender L. Ctr. v. Immigr. & Customs,*
   *Enf't*, 46 F.4th 771 (9th Cir. 2022) ..........................................................3, 9, 10

*Tuffly v. U.S. Dep't of Homeland Sec.*,
   870 F.3d 1086 (9th Cir. 2017) ...........................................................................7

ii

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ................................................................. 7

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    592 U.S. 261 (2021) ................................................................. 5

*Vietnam Veterans of Am. v. Dep't of*,
    *Def.*, 453 F. Supp. 3d 508 (D. Conn. 2020) ........................... 6

*Voice of San Diego v. Naval Crim. Investigative Serv.*,
    2023 WL 8704727 (S.D. Cal. Dec. 15, 2023) ..................... 4, 14

*Wiener v. F.B.I.*,
    943 F.2d 972 (9th Cir. 1991) ................................................ 2

**Federal Statutes**

5 U.S.C § 552(a)(4)(B) .................................................................. 8

**Federal Regulations**

6 C.F.R. § 5.4(c) ........................................................................... 12

6 C.F.R. § 5.3(a)(2) ...................................................................... 12

6 C.F.R. § 5.6(d) .......................................................................... 13

iii

## I.    INTRODUCTION

Defendants Department of Homeland Security ("DHS") and DHS's Office of the Inspector General ("DHS OIG") are entitled to summary judgment.

Plaintiff's FOIA request, dated April 29, 2022, was sent to DHS, DHS OIG, and U.S. Immigration and Customs Enforcement ("ICE"). Upon DHS's receipt of the FOIA request, its Privacy Office ("DHS PRIV") properly determined that DHS's response would be handled by DHS OIG and ICE, which it determined to be the components most likely to have responsive records. As a result, on May 18, 2022, DHS PRIV issued a final response to Plaintiff advising that it was administratively closing the request and deferring to DHS OIG and ICE's responses. Plaintiff's Opposition fails to establish that (a) it exhausted its administrative remedies with respect to its challenge to DHS's processing of the FOIA request, or (b) that DHS violated the FOIA in administratively closing its handling of the FOIA request. Therefore, DHS is entitled to summary judgment.

As for DHS OIG, it conducted an adequate search for records responsive to Plaintiff's FOIA request and appropriately redacted information under FOIA Exemptions 5, 6, and 7(C). Plaintiff's Opposition fails to establish that DHS OIG's actions violated the FOIA, and thus it too is entitled to summary judgment.

## II.   ARGUMENT

### A.    DHS OIG's Redactions Were Proper Under Applicable FOIA Exemptions

Under FOIA, the government has the burden to show that an exemption properly applies to the records it seeks to withhold. *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759 (9th Cir. 2015) (citation omitted). However, the government is not required to "disclose facts that would undermine the very purpose of [the] withholding." *See Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). Courts "give considerable deference to agency affidavits made in apparent good faith

1

where the affidavits reasonably describe the justifications for nondisclosure and show that the content withheld falls within one of FOIA's exemptions." *Id.* (citation omitted).

As detailed in Defendants' Motion, DHS OIG withheld information protected from disclosure pursuant to FOIA Exemptions 5, 6, and 7(C). Those limited redactions were applied, among other reasons, to protect governmental agency communications and private individuals' personal privacy information. Plaintiff contends that DHS OIG's redactions are overbroad and improper. Dkt. 80 at 9-22. However, for the reasons set forth herein and in Defendants' Motion, Dkt. 79 at 26-40, this Court should find that DHS OIG's redactions were appropriate.[1]

### 1.      The Exemption 5 Redactions Were Proper

DHS OIG asserted Exemption 5 (deliberative process privilege) in its withholding in full of draft Memorandums of Activity ("MOAs") from two Reports of Investigations ("ROIs") pertaining to the investigations into the death of Jonathan Alberto Medina

---

[1] Throughout its brief, Plaintiff complains about Defendants submitting an "updated *Vaughn* Index" with *their* motion for summary judgment. *See, e.g.*, Dkt. 80 at 10 n.4. "The purpose of a *Vaughn* index and any accompanying affidavits is to 'afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding,' and thus partially restore the adversary process to judicial review of the agency's decision." *Freedom of the Press Found. v. United States Dep't of Just.*, 241 F. Supp. 3d 986, 997 (N.D. Cal. 2017) (citing *Wiener v. F.B.I.*, 943 F.2d 972, 979 (9th Cir. 1991)).

Initially, the Court ordered Defendants to "provide a *Vaughn* index to Plaintiff" at the conclusion of their review and production of documents and prior to filing their motion for summary judgment. (Dkt. 39-1 at 3.) The parties had originally agreed that Defendants would file their motion for summary judgment first. (*Id.*) However, Plaintiffs subsequently sought and received an order from this Court amending the briefing schedule so they could file their motion for summary judgment first. (Dkts. 63, 64.) Based on arguments set forth in Plaintiff's motion for summary judgment, DHS OIG produced an updated *Vaughn* Index to be attached to *its* summary judgment motion. Notably, Plaintiff does not argue any prejudice regarding the updated *Vaughn* index. That is because Plaintiff had the opportunity to file an opposition to DHS OIG's motion. (Dkt. 80.) Because nothing in the Court's orders precluded DHS OIG from updating its *Vaughn* index to ensure that it appropriately provided Plaintiff with "a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding[s]," Plaintiff's complaints should be disregarded. That is especially the case here because a court may order an agency to amend or supplement its *Vaughn* index if it deems it to be legally insufficient for it to conclude that the agency has met its obligations under the FOIA. *See, e.g.*, *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 93 (D.D.C. 2009).

2

Leon and Teka Gulema. Plaintiff claims that DHS OIG failed to meet its burden of showing that the documents are "deliberative" or "predecisional." Dkt. 80 at 10. Not so. As explained in DHS OIG's Motion, the draft MOAs are predecisional because the records reflect drafts of a document that were ultimately included in an ROI. Dkt. 79 at 30. The drafts were "generated before DHS OIG finalized its determination as to whether the evidence supported a finding that a criminal, civil, or administrative violation occurred." *See id.* (citing Dkt. 79-3 (*Vaughn* Index), Entries (1)-(9)). Plaintiff, despite initially arguing otherwise, appears to concede that the withheld material is predecisional. *See* Dkt. 80 at 10.

Plaintiff has also failed to rebut Defendant's assertion that the information redacted was deliberative as reflecting the Special Agent's/Investigator's process in formulating whether the evidence collected and analyzed supported a finding of a criminal, civil, or administrative violation. Dkt. 79 at 30 (citing Chigewe Decl., ¶ 63). Indeed, one of the authorities Plaintiff cites supports the position taken by DHS OIG. *See Am. Oversight v. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, 2023 WL 5723459, at *6 (D.D.C. Sept. 5, 2023) ("So those preliminary drafts were part of ICE's process of determining what to include in its final report. That counts as an agency decision.").

Plaintiff argues that courts have "routinely ordered the disclosure of draft records of investigation into deaths of detained immigrants" over Exemption 5 claims. *See* Dkt. 80 at 9-10 (citations omitted). That proposition is not accurate. First, the documents at issue in the two cases cited by Plaintiffs were not DHS OIG Reports of Investigation. *See Am. Oversight*, 2023 WL 5723459, at *1 ("five types of reports that ICE generates when detainees die in its custody"); *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 783 (9th Cir. 2022) (ICE draft mortality review and press statement). Second, the appropriateness of a redaction is based not on the type of record itself, but on a case-by-case review of the *Vaughn* Index and supporting declarations demonstrating the grounds on which an exemption was applied. Notably, Plaintiff does not directly address the consultative process explained in the *Vaughn* Index and Chigewe Declaration or the

3

explanation of the grounds on which DHS OIG applied Exemption 5. *See* Dkt. 79-4 (Chigewe Declaration), ¶¶ 59-61.

Instead, Plaintiff focuses much of its argument related to DHS OIG's assertion of Exemption 5 on its contention that DHS OIG has failed to meet its burden of showing that the documents' release would cause foreseeable harm. *See* Dkt. 80 at 10-14. In support of its withholdings, DHS OIG produced a *Vaughn* Index and declaration offering *specific* explanations about how DHS OIG balanced the foreseeable harm in the release of the investigative draft MOAs. *See* Dkt. 79-3 (*Vaughn* Index), Entries (9)-(11); Dkt, 79-4 (Chigewe Decl.), ¶¶ 59-61. For example, with respect to Entry 9, DHS OIG explained that in considering the foreseeable harm in the release of the investigative draft MOAs, "it was determined that the release of *this* material would result in a chilling effect on interactions and communications between agency employees, and specifically a case agent and supervising or reviewing agent." Dkt. 79-3 (*Vaughn* Index) at 28 (emphasis added). This was precisely the same explanation that the district court found sufficient in a case cited by Plaintiff in its brief (Dkt. 80 at 14), *i.e.*, *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1242 (W.D. Wash. 2021) (agency met "foreseeable harm" requirement by "focus[ing] on 'the information at issue' . . . and conclud[ing] that disclosure of that information 'would' chill future internal discussions.") (quoting *Machado Amadis v. United States Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)); *see also Voice of San Diego v. Naval Crim. Investigative Serv.*, 2023 WL 8704727, at *14-15 (S.D. Cal. Dec. 15, 2023) (citing "example of an Exemption 5 explanation that was found to be adequate").

DHS OIG's offered justification for invoking Exemption 5 for these records is logical. *See Hamdan*, 797 F.3d at 774 (Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears "logical" or "plausible.") (citations omitted). And such justifications support "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news. To encourage candor, which improves agency decision-making, the

4

privilege blunts the chilling effect that accompanies the prospect of disclosure." *See United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) (citation omitted).

Last, Plaintiff argues that even if Exemption 5 does apply, DHS OIG must nonetheless segregate and disclose any factual information that is not predecisional or deliberative. *See* Dkt. 80 at 13-14. Here, DHS OIG did just that, with its personnel having conducted a careful page-by-page, line-by-line review of all records and disclosing all reasonably segregable information. *See* Chigewe Decl., ¶¶ 87-90. Furthermore, DHS OIG's *Vaughn* Index and the Chigewe Declaration both explain why, to the extent factual information is included within the drafts, it is unreasonable for DHS OIG to segregate such information. *See* Dkt. 79-3 (*Vaughn* Index), Entries (9)-(11); Dkt, 79-4 (Chigewe Decl.), ¶¶ 62-63.).

Therefore, this Court should find that DHS OIG properly withheld certain records under Exemption 5 pursuant to the deliberative process privilege.

### 2. The Exemptions 6 and 7(C) Redactions Were Proper

#### a. Exemption 7(C) Was Properly Applied to the Records Compiled for Law Enforcement Purposes

Plaintiff incorrectly argues that DHS OIG has failed to make the requisite showing that Exemption 7(C) applies to documents "compiled for law enforcement purposes." Dkt. 80 at 14-15. Although Plaintiff does correctly describe DHS OIG as a "mixed function agency," it ignores the paragraph in the Chigewe Declaration explaining why the information withheld pursuant to Exemption 7(C) in this case was compiled for a law enforcement purpose:

> When determining whether to withhold information pursuant to Exemption 7(C), DHS OIG first assessed whether the records were compiled for a law enforcement purpose. The records at issue here are ROIs, the MOAs included therein, e-mails pertaining to the investigations, a Question-and-Answer record pertaining to the investigation, and case summary reports

5

pertaining to the subjects of the investigations. These records all reflect and relate to law enforcement investigations conducted by Special Agents to determine what, if any, misconduct occurred that resulted in the death of two individuals. The records also include investigatory material that was provided to DHS OIG by either ICE or another third party as part of the investigation. Therefore, it was determined that the records were compiled for a law enforcement purpose. As a result, Exemption 7(C) was applied in tandem with Exemption 6.

Dkt. 79-4 (Chigewe Decl.), ¶ 67. Thus, DHS OIG properly applied Exemption 7(C).

### b.  Exemptions 6 and 7(C) Were Properly Asserted to the Redactions Related to Medina-Leon's Health Information

Individuals have "substantial" privacy interests in their medical histories. *See, e.g.*, *Prison Legal News v. Lappin*, 780 F. Supp. 2d 29, 41 (D.D.C. 2011); *see also Vietnam Veterans of Am. v. Dep't of Def.*, 453 F. Supp. 3d 508, 517–18 (D. Conn. 2020) (noting the privacy interests of deceased veterans and their survivors). Contrary to Plaintiff's assertion in its Opposition (Dkt. 80 at 18), DHS OIG does *not* concede that Medina-Leon's privacy interests diminished upon her death. DHS OIG merely noted that generally, when an individual dies, there "may be a diminishment to some extent, but there remains a substantial privacy interest." Dkt. 79 at 35. Here, DHS OIG's position is that Medina-Leon's privacy interests have not diminished and are certainly not *de minimus*.

Nonetheless, Plaintiff makes the extraordinary argument that "the privacy interests at issue here are minimal" because, according to Plaintiff, much of the information "is already widely known," and thus there is no reason why that information should not be disclosed here. Dkt. 80 at 17. In support of its position, Plaintiff cites *American Oversight v. U.S. General Services Administration*, 311 F. Supp. 3d 327 (D.D.C. 2018). Yet the issue in that case concerned the redaction of already-public *names*, not a third-party's sensitive medical history. *See id.* at 346. Therefore, as explained, DHS OIG

1  correctly found that the personal privacy information pertaining to Medina Leon's health
2  and medical diagnoses was substantial.

3      As for consideration of the public interest under FOIA, when disclosure could
4  result in an invasion of personal privacy, it is a requester's burden to establish that
5  disclosure would serve a FOIA public interest. *Nat'l Archives & Recs. Admin. v. Favish*,
6  541 U.S. 157, 172 (2004). The "*only* relevant public interest in the FOIA balancing
7  analysis is the extent to which disclosure of the information sought would shed light on
8  an agency's performance of its statutory duties or otherwise let citizens know what their
9  government is up to." *Mar. Documentation Ctr. Corp. v. United States Coast Guard*,
10 2024 WL 1007503, at *2 (9th Cir. Mar. 8, 2024) (citing *Cameranesi v. United States
11 Dep't of Def.*, 856 F.3d 626, 639–40 (9th Cir. 2017) (emphasis original)). This inquiry
12 focuses not on the "general public interest in the subject matter of the FOIA request," but
13 on the "additional usefulness" of the specific information withheld." *Tuffly v. U.S. Dep't
14 of Homeland Sec.*, 870 F.3d 1086, 1094 (9th Cir. 2017) (quoting *Schrecker v. U.S. Dep't
15 of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003), *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d
16 964, 978 (9th Cir. 2009)).

17     There is no public interest in disclosure that reveals "little or nothing about an
18 agency's own conduct." *Charles v. Off. of the Armed Forces Med. Exam'r*, 935 F. Supp.
19 2d 86, 97 (D.D.C. 2013) (citing *U.S. Dep't of Just. v. Reps. Comm. For Freedom of
20 Press*, 489 U.S. 749, 773 (1989)). Here, the disclosure by DHS OIG of any sensitive
21 medical information for Medina-Leon would not shed light on DHS OIG's statutory
22 duties, nor would it otherwise let citizens know what their government is up to. Instead,
23 it would merely invade Medina-Leon's privacy interests.

24     As one example, Plaintiff seeks disclosure of redacted information in a
25 Memorandum of Activity signed on June 21, 2019. *See* Dkt. 66-4 at 2-3. When reviewed
26 in context of the entire record, the highlighted portions (which represent Plaintiff's
27 challenges) are limited and do not impair the public's ability to understand DHS OIG's
28 performance of its statutory duties. As Plaintiff is aware from reviewing all of the

1    redacted documents which they now challenge, the limited, specific information

2    withheld would not add anything to the public's interest in these documents.[2]

3         Plaintiff also argues that "DHS now attempts to avoid disclosing a fact that its

4    own component disclosed to the media." Dkt. 80 at 18. First, DHS OIG, not DHS,

5    argued that it is not required to disclose material merely because another DHS

6    component did. Dkt. 79 at 36-37. Thus, Plaintiff's attempt to interweave DHS OIG and

7    *its* activities with the entirety of DHS is improper as a basis to argue that the information

8    must be disclosed. Also improper is Plaintiff's response to DHS OIG's observation that

9    the information is, according to Plaintiff, already public such that it is unclear what the

10   public interest would then be in duplicative information contained in OIG records. That

11   is because Plaintiff's reliance on *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1 (D.C. Cir.

12   2011) is misplaced. In the same paragraph of the opinion Plaintiff cites, Dkt. 80 at 19,

13   n.11, the district court noted "the information the plaintiffs seek to develop from the

14   FOIA disclosure here … ***is not*** currently in the public domain." *ACLU*, 655 F.3d at 15

15   (emphasis added). That is not the case here, by Plaintiff's own representation.

16       *c.*    **Exemptions 6 and 7(C) Were Properly Asserted to the**

17              **Redactions Related to Medina-Leon and Gulema's**

18              **Immigration Information**

19        Plaintiff challenges the redaction of immigration information specifically related

20   to Medina-Leon and Gulema. The limited redactions of information from within an

21   email, a case summary report, and DHS OIG's Report of Investigations pertaining to the

22   death of Medina-Leon and Gulema were described at entries (3) and (4) of the *Vaughn*

23   index. Dkt. 79-3 at 8-13. The *Vaughn* index explained that disclosure of the redacted

24   information "would constitute a clearly unwarranted invasion of this individual's

25   personal privacy interests in being free from harassment, intimidation, legal

26   _____

27   [2] If the Court wishes to review any of the specific information that Plaintiff
     contends is being improperly withheld, DHS OIG can make either redacted or
28   unredacted versions of those documents available for review by the Court *in camera*. See
     5 U.S.C § 552(a)(4)(B).

8

consequences, embarrassment, physical harm, and derogatory inferences and suspicion." *Id.* As noted above, the government is not required to "disclose facts that would undermine the very purpose of [the] withholding." *See Lion Raisins*, 354 F.3d at 1082. Therefore, this Court should give deference to DHS OIG's good faith review of the documents at issue and assertion in its *Vaughn* index and affidavit that Medina-Leon and Gulema have a privacy interest in the redacted information. *See id.*

As for the public interest in the information sought, Plaintiff argues that "whatever immigration information is concealed is likely highly relevant to ICE's determinations to detain and then release Medina-Leon and Gulema. The specifics of this immigration-related information will be important in determining why ICE changed its view as to whether they must be detained or released." Dkt. 80 at 21. But the asserted public interest in the specific information withheld here does not rise to the level of overcoming the substantial privacy interests of Medina-Leon and Gulema. *See Hunt v. F.B.I.*, 972 F.2d 286, 289 (9th Cir. 1992) (observing that disclosure of single internal investigation file "will not shed any light on whether all such FBI investigations are comprehensive or whether sexual misconduct by agents is common.")

For the reasons explained in Defendants' moving papers, the *Vaughn* Index, the Chigewe Declaration, and above, DHS OIG properly withheld certain records under Exemptions 6 and 7(C) such that it is entitled to summary judgment.

## B. DHS OIG and DHS Met Their Search Obligations Under The FOIA

Because Plaintiff has challenged the adequacy of the search for records by DHS and DHS OIG, this Court "must assess whether the Government has met its burden of demonstrating that its search was "reasonably calculated to uncover all relevant documents." *Transgender Law Center*, 46 F.4th at 779 (citing *Hamdan*, 797 F.3d at 770). The Government "may demonstrate the adequacy of its search through 'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Id.* at 780 (citing *Hamdan*, 797 F.3d at 770). Defendants DHS and DHS OIG have done so.

### 1.     DHS OIG Has Met Its Search Obligations

In its Opposition, Plaintiff argues, without support, that "a further search by DHS-OIG into leads identified in a Case Summary Report would likely yield additional responsive records" related to the death of Martin Vargas Arellano Dkt. 80 at 23. However, as explained in DHS OIG's motion and the Chigewe Declaration, because DHS OIG did not conduct an investigation into the death of Vargas Arellano, the Office of Investigations' electronic case management system, EDS, would house all relevant material pertaining to Mr. Vargas Arellano. Dkt. 79-4 at 14. Therefore, Plaintiff's characterization of DHS OIG's explanation of the EDS system as "largely irrelevant," Dkt. 80 at 23, misses the point that the information contained in the Case Summary Report was solely derived from the submitted complaint. Dkt. 79 at 21. Thus, the mere fact that a Case Summary Report was generated by EDS when the system was searched provides no support for Plaintiff's assertion that an email search of "DHS-OIG staff" would likely yield additional records. Similarly, the numbers that Plaintiff references in its Opposition that it believes DHS OIG should have searched for are not "case numbers," as explained in the Chigewe Declaration, and therefore would not likely yield additional responsive documents. Dkt. 79-4 at 16.

"When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return." *Nat'l Pub. Radio, Inc. v. U.S. Cent. Command*, 646 F. Supp. 3d 1245, 1252 (S.D. Cal. 2022) (citing *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (1999)). Moreover, the adequacy of a search is judged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Transgender Law Center*, 46 F.4th at 780 (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)). Unlike the plaintiff in *Transgender Law Center*, which identified "positive indications of overlooked materials," *id.* at 780, here, Plaintiff has only provided unsupported conjecture about the *possibility* of additional responsive records that *might* be yielded

through an email search of DHS OIG staff or through a search for numbers that are not DHS OIG complaint numbers. And, as explained in the Chigewe Declaration, if there was an indication that additional, responsive records may be available, either for Mr. Vargas Arellano or Mr. Bucio, the FOIA Unit would have performed additional searches, as shown by the additional steps and searches the FOIA Unit requested of the Office of Investigations' appropriate Field Offices and IT for records pertaining to Jonathan Alberto Medina Leon and Teka Gulema. Dkt. 79-4 (Chigewe Decl.), ¶ 40(a)(b)(v). Yet there were no such indications here.

Plaintiff's unsupported assertions have been directly rebutted by DHS OIG in its detailed affidavit explaining its EDS system, which is the location most likely to contain records responsive to the FOIA request. *See* Dkt. 79-4 (Chigewe Decl.), ¶ ¶ 38-40. It has also explained the difference between a case number and serial numbers that are not indicative of case numbers. *Id.*, ¶ 40. Therefore, DHS OIG has met its burden of demonstrating adequacy beyond a material doubt through its reasonably detailed and non-conclusory declaration establishing that it conducted an adequate search that was reasonably calculated to uncover all relevant documents. *See, e.g.*, *Am. Small Bus. League v. United States Off. of Mgmt. & Budget*, 631 F. Supp. 3d 804, 823 (N.D. Cal. 2022).

## 2.    DHS Did Not Have an Obligation to Search CRCL

As explained in its Motion, DHS, through its Privacy Office (DHS PRIV), did not process the FOIA Request or supervise the processing of the FOIA Request by the components that it deemed most likely to have maintained potential responsive records. Dkt. 79 at 13 (citing UF 7). Rather, consistent with DHS's FOIA Regulations, DHS PRIV properly administratively closed its processing of the FOIA request in May 2022 after determining that Plaintiff had already also submitted its request to the two offices that most likely maintained potentially responsive records.

To the extent that Plaintiff submitted its request directly to DHS because it sought "assistance from the DHS Privacy Office with identifying the proper component that

most likely maintains any potential responsive records," DHS PRIV complied with the applicable regulations in its determination, *as of the date of the request for information*, that DHS OIG and ICE were the most likely components to maintain the records that are sought. *See* 6 C.F.R. § 5.3(a)(2) (emphasis added). Nothing in DHS's FOIA regulations require that subsequent to the date of the request for information, and subsequent to administratively closing the request, DHS PRIV must *continually* ascertain whether its analysis, as of the date of the request for information, remained accurate or must be revised and/or reopened. Indeed, Plaintiff cites to none.

In its Opposition, Plaintiff argues that DHS PRIV should have referred a search to CRCL after being put on notice in *June 2023*, over one year after DHS PRIV administratively closed the request, of a document that DHS OIG sent to it for consultation. In so doing, Plaintiff essentially argues that during such consultation, DHS PRIV had the additional and separate obligation to reassess its determinations over the components most likely to maintain the records that are sought. But the Declaration of Catrina M. Pavlik-Keenan explains why that is not accurate. *See* Dkt. 79-5 (Pavlik-Keenan Declaration), ¶¶ 19 (Explaining the consultation process and that they are tracked differently than FOIA Requests).[3] Ignoring this, Plaintiff argues that Pavlik-Keenan declaration "lacks any facts explaining why [the Privacy Office] failed to follow" additional search leads. Dkt. 80 at 26. But once again, the declaration *does* provide the agency's explanation. *See* Dkt. 79-5 (Pavlik-Keenan Declaration), ¶¶ 17-21. Moreover, while Plaintiff argues that "DHS has never taken the position that DHS-CRCL is not likely to have responsive records," Dkt. 80 at 25, Plaintiff has never explained why, to date, it has failed to submit a new, specific, FOIA request to DHS-

---

[3] The same authority on which Plaintiff relies also rejected the very argument that it makes over an unfounded theory of "partial misdirection." *See Protect the Pub.'s Tr. v. United States Dep't of Homeland Sec.*, 2022 WL 3226275 (D.D.C. Aug. 10, 2022) (*citing Jimenez v. United States Dep't of Homeland Sec.*, 2022 WL 1642460 (S.D. Fla. Feb. 24, 2022), *report and recommendation adopted,* 2022 WL 16700354 (S.D. Fla. Nov. 3, 2022). As the *Jimenez* Court explained, "the text of [6 C.F.R. § 5.4(c)] does not encompass 'partial misdirection' or require 'referral'; it addresses 'misdirection' and requires 'routing.'" *Id*. The same is true here.

CRCL seeking the records it believes DHS CRCL has, as it was so advised in November 2023. *See* Dkt. 66-8, ¶ 10 Ex. J.

Plaintiff also argues that DHS PRIV's May 2022 letter did not constitute a "final determination" of the FOIA request triggering an administrative exhaustion requirement because it was not an "adverse determination" as defined at 6 C.F.R. § 5.6(d). Dkt. 80 at 28. However, Plaintiff cannot have it both ways. It cannot argue that DHS failed to adequately respond to its FOIA request when it administratively closed its file in May 2022 while also arguing that it had no obligation to administratively appeal what it appears to argue now was a denial of its request. *See Aguirre v. United States Nuclear Regul. Comm'n*, 11 F.4th 719, 726 (9th Cir. 2021) (requester's failure to administratively exhaust after agency closure "cut off the agency's power to correct or rethink initial misjudgments or errors") (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 64 (D.C. Cir. 1990)); *see also Moorer v. U.S. Dep't of Just.*, 2014 WL 853043, at *3 (S.D. Ind. 2014) (administrative closure of FOIA request triggered obligation to administratively exhaust by appealing).

Rather, the undisputed facts support DHS's contention that Plaintiff was satisfied with DHS's response in May 2022 that it had received Plaintiff's request but that it was closing its file because ICE and DHS OIG were going to process the request as the components most likely to have responsive records. It was not until one year later, upon apparently deciding that CRCL *might* have responsive records, that rather than submitting a new FOIA request directly to CRCL, Plaintiff attempted to "reopen" DHS PRIV's processing of the FOIA request with an argument suggesting that DHS PRIV could *never* close the processing of a file as long as a component was still processing a portion of a FOIA request. This approach is inconsistent with DHS's FOIA regulations and applicable caselaw.

Therefore, this Court should find that DHS PRIV properly determined that its obligations to respond to the FOIA Request had terminated as of May 2022 and enter judgment in DHS's favor.

**C.    Plaintiff Has Abandoned Its Claims Over an Alleged Improper Withholding of Documents Referred to ICE**

In its moving papers, Plaintiff argued that DHS OIG improperly withheld documents that it referred to ICE. Dkt. 67 at 30-32. Defendant DHS OIG explained why Plaintiff was wrong. Dkt. 79 at 38-39. In a footnote, Plaintiff only acknowledges that ICE has produced the records but does not address DHS OIG's arguments head on. Dkt. 80 at 8, n 2. Nor does Plaintiff respond to Defendants' arguments over Plaintiff's selective and inaccurate quoting of correspondence between the parties or that ICE had already determined that it had produced the best copies of records available and communicated same to Plaintiff *before* Plaintiff filed its Motion. *See* Dkt. 79 at 38.

**D.    Plaintiff Has Not Challenged DHS OIG's Position That It Released All Reasonably Segregable Information**

DHS OIG also moved for summary judgment on the ground that it had complied with its obligation to segregate and release all reasonably segregable, non-exempt information related to Plaintiff's Request. *See* Dkt. 79 at 39. Plaintiff does not offer any opposition arguments on this point.

**III.    CONCLUSION**

For the reasons discussed above and in their moving papers, Defendants DHS and DHS OIG request that the Court grant this Motion and enter judgment in their favor and deny Plaintiff's Motion (Dkt. Nos. 66 & 67). However, if this Court determines that Defendants' submissions are insufficient to support their assertions of the adequacy of their searches and their description of asserted withholdings, Defendants request that the Court order them to provide supplemental submissions (i.e., a supplemental *Vaughn* index and supporting declaration) addressing any of the Court's concerns regarding the asserted FOIA exemptions. *See, e.g., Voice of San Diego*, 2023 WL 8704727, at *15.

14

Dated: May 15, 2024                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney
                                       DAVID M. HARRIS
                                       Assistant United States Attorney
                                       Chief, Civil Division
                                       JOANNE S. OSINOFF
                                       Assistant United States Attorney
                                       Chief, Complex and Defensive Litigation Section


                                        /s/ Joseph W. Tursi
                                       JOSEPH W. TURSI
                                       JASON K. AXE
                                       Assistant United States Attorneys
                                       Attorneys for Defendants DHS and DHS OIG


## L.R. 11-6.1 Certification

The undersigned counsel of record for the Defendants certifies that this brief contains 5,361 words, which complies with the word limit set in the Court's February 9, 2023 Case Management Order. *See* Dkt. 40 at 3.

Dated: May 15, 2024                      /s/ Joseph W. Tursi
                                       JOSEPH W. TURSI
                                       Assistant United States Attorney