E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-3989 | 8790
Facsimile: (213) 894-7819
E-mail: Joseph.Tursi@usdoj.gov
Jason.Axe@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,

Plaintiff,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

Defendants.

No. 2:22-cv-04760-SHK

**DEFENDANTS' RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

Honorable Shashi H. Kewalramani
United States Magistrate Judge

Pursuant to Local Rule 56-3, Defendants submit this Response to Statement of Genuine Disputes of Material Fact.

| MOVING PARTIES' UNCONTROVERTED FACT & SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE TO CITED FACT AND SUPPORTING EVIDENCE |
|---|---|
| 1. On or about April 29, 2022, Plaintiff submitted a FOIA Request to DHS's Privacy Office, DHS OIG, and ICE.<br><br>*Evidence*: Dkt. 24 (First Amended Complaint), ¶ 35 & Ex. A thereto (Dkt. 24-1 at 2-14) | Undisputed. |
| 2. On May 2, 2022, DHS's Privacy Office received the FOIA Request.<br><br>*Evidence*: Pavlik-Keenan Decl., ¶ 11 | Undisputed for purposes of this motion. The transmittal email shows that this date was actually April 29, 2022, ECF No. 24-1 at 14, but this difference is immaterial. |
| 3. On May 2, 2022, DHS OIG received the FOIA Request.<br><br>*Evidence*: Chigewe Decl., ¶ 7. | Undisputed for purposes of this motion. The transmittal email shows that this date was actually April 29, 2022, ECF No. 24-1 at 14, but this difference is immaterial. |
| 4. DHS's Privacy Office reviewed the FOIA Request, and in accordance with DHS regulations, determined that ICE and DHS OIG were the DHS components "most likely" to maintain responsive records.<br><br>*Evidence*: Pavlik-Keenan Decl., ¶ 12 | Undisputed. |
| 5. On May 18, 2022, DHS's Privacy Office provided Plaintiff with a final response in which it acknowledged receipt of the FOIA request and informed Plaintiff of the determination that "the records sought, should they exist, would not be under purview of the DHS Privacy Office. Any | Disputed as to Defendants characterization of DHS Privacy Office's May 18, 2022 correspondence as a "final response," as this language is not included in the May 18, 2020 DHS Privacy Office letter to Plaintiff. |

| | |
|---|---|
| responsive records would be held by the DHS Office of the Inspector General (OIG) and/or U.S. Immigration and Customs Enforcement (ICE)." The May 18, 2022 correspondence went on to explain, "As you have already submitted your request to the aforementioned office[s], we are closing your Privacy Office request and will defer to the OIG and ICE's response(s)."<br><br>*Evidence*: Pavlik-Keenan Decl., ¶ 12, Ex. 1 | *Evidence*: Pavlik-Keenan Decl., ¶ 12, Ex. 1, ECF No. 79-6. |
| 5. Moving Parties' Response<br><br>Plaintiff offers no evidence contradicting the Declaration of the DHS Deputy Chief FOIA Officer that the May 18, 2022 letter represented DHS-PRIV's "final response." *See* L.R. 56-4 ("…the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) ***controverted by declaration or other written evidence*** filed in opposition to the motion.") (emphasis added). | |
| 6. Having properly determined that responsive records, should they exist, would most likely be held by OIG and/or ICE, and with the understanding that Plaintiff had already submitted its request to those offices, DHS-PRIV administratively closed this case on May 18, 2022 with no further action.<br><br>*Evidence*: Pavlik-Keenan Decl., ¶ 13 | Disputed that ICE's determination was "proper." To the contrary, upon learning from DHS-OIG and Plaintiff that DHS's component the Office of Civil Rights and Civil Liberties ("DHS CRCL") likely holds responsive records, the DHS Privacy Office ("DHS-PRIV") should have followed these leads and referred Plaintiff's Request to DHS-CRCL. *Transgender Law Center v. ICE*, 46 F.4th 771, 779-781 (9th Cir. 2022). The leads DHS, through its Privacy Office, failed to follow include the following: Between June 29, 2023 and August 2, 2023, DHS-OIG consulted with DHS, through its Privacy Office, about a letter in its possession that was submitted to the DHS Secretary (and copied to DHS-CRCL), from legal |

| | |
|---|---|
| | services attorneys who are part of the National Qualified Representative Program ("NQRP letter"), asking that DHS-CRCL investigate the death of Martin Vargas Arellano, who is named in Plaintiff's FOIA Request, thereby providing DHS with "positive indications" that DHS-CRCL had responsive records. Chigewe Decl., ECF No. 79-4, ¶ 47; ECF No. 66-6 at 25. At that time, DHS-OIG also referred a separate document directly to DHS CRCL. Chigewe Decl., ECF No. 79-4, ¶ 35, n.3; ECF No. 66-6 at 25. Thereafter, as in *Transgender Law Ctr.,* 46 F.4th 771, 780 (9th Cir. 2022) Plaintiff provided DHS "additional search leads" through a series of "communiques" between September 14, 2023 and December 21, 2023, explaining why DHS should direct CRCL to search for responsive records. *Transgender Law Ctr.*, 46 F. 4th at 780; ECF No. 66-9 at 9, 28, 48–49; ECF No. 66-11 at 14, 26. Despite DHS's awareness of these leads, DHS's Pavlik-Keenan Declaration is devoid of any facts explaining why it failed to follow them. There is thus a genuine dispute of material fact as to the propriety of DHS's search. *Dillon v. U.S. Dep't of Justice*, No. CV 17- 1716 (RC), 2019 WL 249580, at *7 (D.D.C. Jan. 17, 2019) (agency's failure to "address[] [plaintiff's] evidence of unproduced" records "in and of itself demonstrat[ed] that there remain[ed] a genuine dispute regarding whether [defendant agency] conducted a good faith, reasonable search" for responsive records) (cleaned up); *Wilson v. U.S. Dep't of Just.*, 192 |

| | |
|---|---|
| | F. Supp. 3d 122, 128 n.3 (D.D.C. 2016) (same regarding agency's failure to explain why it did not follow up on plaintiff's suggestion that "three additional records systems … may … contain [] responsive records.").<br><br>Further disputed that DHS's Privacy Office took "no further action" on Plaintiff's Request. As discussed above, the DHS Privacy Office consulted with DHS-OIG between June 29, 2023 and August 2, 2023, and was involved in DHS-OIG's production of the NQRP letter to Plaintiff on or about August 2, 2023. Chigewe Decl., ECF No. 79-4 ¶¶ 47, n. 12; Pavlik- Keenan Decl., ECF No. 79-5, ¶ 18.<br><br>Otherwise undisputed.<br><br>*Evidence*: Chigewe Decl., ¶¶ 35, fn. 3; 47, n. 3, n. 12; Pavlik-Keenan Decl., ECF No. 79-5, ¶ 18; ECF No. 66-6 at 25; ECF No. 66-9 at 9, 18, 28, 48–49; ECF No. 66-11 at 14, 26. |
| 6. Moving Parties' Response<br><br>Plaintiff provides no facts or evidence, rather than argument, to dispute Uncontroverted Fact No. 6. *See* L.R. 56-4. Also, the determination was made by DHS-PRIV, *not* ICE. In addition, CRCL is not a component but rather an office within DHS.<br><br>The *argument* Plaintiff advances relies on correspondence dated well after May 18, 2022. The uncontroverted fact states that DHS-Priv made a determination of the DHS component(s) most likely to maintain the records that were sought as of the date of the request for information and administratively closed the case on May 18, 2022. | |
| 7. At no time prior to administratively closing the FOIA Request did DHS's | Disputed as to Defendants' characterization that DHS's Privacy |

| | |
|---|---|
| Privacy Office process the FOIA Request or supervise the processing of the FOIA Request by the referred components.<br><br>*Evidence*: Pavlik-Keenan Decl., ¶ 13 | Office did not "process" or "supervise the processing" of the FOIA Request—either before or after it determined that the "referred components" (DHSOIG and ICE) would likely have responsive records. The DHS Privacy Office's act of "deferring" to DHS-OIG and ICE's responses to the request is itself evidence that it was involved in processing the Request. Pavlik-Keenan Decl., ECF No. 79-5, ¶¶ 12–13. Further, the DHS Privacy Office consulted with DHS OIG between June 29, 2023 and August 2, 2023, and was involved in DHS-OIG's decision to produce the NQRP letter to Plaintiff on or about August 2, 2023. Chigewe Decl., ECF No. 79-4 ¶ 47, n.12; Pavlik-Keenan Decl., ECF No. 79-5, ¶ 18; ECF No. 66-6 at 25, 34. Defendants have never disclosed the nature and extent of DHS OIG's consultation with the DHS Privacy Office between June 29, 2023 and August 2, 2023, whether the DHS Privacy Office further consulted with the DHS Secretary's Office and DHS CLCR to obtain their approval to allow DHS-OIG to produce the NQRP letter to Plaintiff in August 2, 2023, and who made the ultimate decision to allow DHS-OIG to produce it. As such, there is no evidence to support the conclusion that the DHS Privacy Office did not "process" or "supervise the processing" of the FOIA Request after it "directed or referred" other DHS components to respond to it. Pavlik-Keenan Decl., ECF No. 79-5, ¶ 13.<br><br>Otherwise undisputed. |

| | |
|---|---|
| | *Evidence*: Chigewe Decl., ECF No. 79-4, ¶ 47, n.12; Pavlik-Keenan Decl., ECF No. 79-5, ¶ 18; ECF No. 66-6 at 25, 34. |
| 7. Moving Parties' Response<br><br>Plaintiff provides no facts, rather than argument, to dispute Uncontroverted Fact No. 7. *See* L.R. 56-4. The *argument* Plaintiff advances relies on *consultation* on records that DHS-PRIV was asked to do *after* the FOIA Request was administratively closed on May 18, 2022. *See* Dkt. 79-5 (Pavlik-Keenan Declaration), ¶ 13. | |
| 8. After receiving DHS-PRIV's May 18, 2022 letter, Plaintiff did not object to DHS-PRIV's final determination that DHS-OIG and ICE would be the appropriate components to process the request, nor did Plaintiff object to DHS-PRIVs notification that it would administratively close the request.<br><br>*Evidence*: Pavlik-Keenan Decl., ¶ 13 | Disputed. First, as discussed above, Defendants have produced no evidence that the DHS Privacy Office's May 18, 2022 "administrative closure" correspondence was its "final determination" that DHS-OIG and ICE would be the appropriate components to process the request, and as such Plaintiff disputes this unsupported characterization. Indeed, neither the May 18, 2022 letter nor the Pavlik-Keenan declaration states that the DHS Privacy Office made a "final determination" on Plaintiff's Request, nor could they as it constitutes an impermissible legal conclusion without factual support. Pavlik-Keenan Decl., ECF No. 79-5, ¶¶ 12–13; ECF No. 79-6 at 1–3; *see also Sai v. Transportation Sec. Admin.*, No. CV 14-403, 2015 WL 13889866, at *4 (D.D.C. Aug. 19, 2015) (citations and quotations omitted). Second, Plaintiff objected on multiple occasions to the May 18, 2022 correspondence, both as to DHS's decision to limit its referral of the Request to DHS-OIG and ICE on its "administrative closure" letter, and its claim that doing so satisfied its search adequacy obligations. Plaintiff has sent |

| | |
|---|---|
| | multiple letters to Defendants explaining its aforementioned objections, both as to the May 18, 2022 letter in particular, *see* Pavlik-Keenan Decl., ¶ 15; ECF No. 79-7 at 1, as well as to DHS's failure to refer the Request to CRCL based on obvious leads that it has responsive records, *see* ECF No. 66-9 at 9, 28, 48–49, ECF No. 66-11 at 14, 26.<br><br>Finally, Plaintiff notes that it is immaterial whether Plaintiff "objected" to the DHS Privacy Office's May 18, 2022 "administrative closure" letter, as Plaintiff was never obligated to do so before pursuing litigation to challenge DHS's search adequacy. *See* 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).<br><br>*Evidence*: Pavlik-Keenan Decl., ECF No. 79-5, ¶¶ 12, 3, 15; ECF No. 66-9 at 9, 28, 48–49, ECF No. 66-11 at 14, 26; ECF No. 79-6 at 1–3; ECF No. 79-7 at 1. |
| 8. Moving Parties' Response<br><br>Plaintiff offers no facts, rather than mere argument, to dispute Uncontroverted Fact No. 8. *See* L.R. 56-4. Plaintiff merely argues that an "administrative closure" is not the same as a "final determination." Furthermore, the "evidence" cited by Plaintiff is letters their counsel send during the course of litigation and not objections by Plaintiff to DHS-PRIV to the May 18, 2022 letter. | |
| 9. Pursuant to the request's specific language, which again sought ICE and OIG records, the DHS OIG FOIA Unit initially determined that the request was properly | Disputed as to whether DHS OIG determined that Plaintiff's FOIA request "was not misdirected." There is evidence that DHS-OIG determined that |

| | |
|---|---|
| under DHS OIG's purview, i.e., it was not misdirected.<br><br>*Evidence*: Chigewe Decl., ¶ 34. | it was partially misdirected, as on June 29, 2022, it referred at least one document to DHS CLCR, Chigewe Decl., ECF No. 79-4, ¶ 47, and referred another document to the DHS Privacy Office for consultation, *id*. The Chigewe Declaration states that only after March 28, 2024, a time period not at issue in this case, did the DHS FOIA regulations specify that a Request was not "misdirected" if the receiving DHS component may maintain records responsive to any portion of the request." *Id.* at n.2 (citing amendment to DHS regulation 6 C.F.R. § 5.4(c), 89 FR 14371 (February 27, 2024)). Based on DHSOIG's referral of two documents to two separate DHS components (CRCL and the DHS Privacy Office), there is evidence that it determined that the Request was at least partially misdirected to DHS-OIG.<br><br>*Evidence*: Chigewe Decl., ECF No. 79-4, ¶ 47, n 2. |
| 9. Responding Parties' Response<br><br>Plaintiff offers no facts, rather than mere argument, to dispute Uncontroverted Fact No. 9. *See* L.R. 56-4. The uncontroverted fact merely states that the DHS OIG FOIA Unit determined that the FOIA Request was properly submitted to it. | |
| 10. Based on the FOIA Unit's knowledge of the DHS FOIA Regulations and the various program offices' missions, it was determined that the DHS OIG Office of Investigations may be in possession of potentially responsive records that fall under OIG's purview. The Office of Investigations conducts investigations into allegations of criminal, civil, and | Undisputed. |

| | |
|---|---|
| administrative misconduct involving DHS employees, contractors, grantees, and programs.<br><br>*Evidence*: Chigewe Decl., ¶¶ 36, 37. | |
| 11. As investigatory reports, Reports of Investigations, and other similar records sought in the request would have been created by the Office of Investigations, a search tasking was sent on September 1, 2022. The Office of Investigations conducts investigations into allegations of criminal, civil, and administrative misconduct involving DHS employees, contractors, grantees, and programs. These investigations can result in criminal prosecutions, fines, civil monetary penalties, administrative sanctions, and personnel actions. Additionally, the Office of Investigations provides oversight and monitors the investigative activity of DHS's various internal affairs offices.<br><br>*Evidence*: Chigewe Decl., ¶¶ 36, 37. | Undisputed. |
| 12. To gather records responsive to Plaintiff's FOIA request, the Office of Investigations searched for records located in the electronic case management system, EDS, with parameters set forth in paragraph 40 of the Declaration of Okechi Chigewe.<br><br>*Evidence*: Chigewe Decl., ¶ 40. | Undisputed. Plaintiff notes that Paragraph 40 of the Declaration of Okechi Chigewe contains both the search parameters and some characterizations of the adequacy of DHS-OIG's search (for example, stating that "the Office of Investigations' electronic case management system, EDS, would house all relevant material pertaining to" Vargas Arellano and Ibarra Bucio). By noting that this fact is undisputed, Plaintiff admits only that the parameters of the search set out in paragraph 40 of the Declaration of Okechi Chigewe are accurate, not that |

| | |
|---|---|
| | the characterizations of the adequacy of the search in that paragraph are accurate. |
| 13. As a result of the searches conducted by DHS OIG, a total of 7,402 pages of records was located.<br><br>*Evidence*: Chigewe Decl., ¶ 41. | Undisputed. |
| 14. DHS OIG produced records in response to Plaintiff's FOIA request from November 2022 – March 2023 and June-August 2023.<br><br>*Evidence*: Chigewe Decl., ¶¶ 42-49 | Undisputed. |
| 15. On November 23, 2022, DHS OIG issued its first interim response to the Plaintiff. In that response and corresponding production, the FOIA Unit reviewed 701 pages of records. Of the 701 pages, 4 pages were released in full; 117 pages were released in part; 127 pages were duplicates; 233 pages were referred to the U.S. Department of Justice, Executive Office for United States Attorney for processing and direct response; and 220 pages were referred to the U.S. Immigration and Customs Enforcement for processing and direct response.<br><br>*Evidence*: Chigewe Decl., ¶ 42. | Undisputed. |
| 16. On December 21, 2022, DHS OIG issued its second interim response to the Plaintiff. In that response and corresponding production, the FOIA Unit processed 653 pages of records. Of the 653 pages, 60 pages were released in full; 128 pages were released in part; 185 pages were referred to the U.S. Department of Justice, Executive | Undisputed. |

| | |
|---|---|
| Office for United States Attorney for processing and direct response; and 280 pages were referred to the U.S. Immigration and Customs Enforcement for processing and direct response.<br><br>*Evidence*: Chigewe Decl., ¶ 43. | |
| 17. On January 30, 2023, DHS OIG issued its third interim response to the Plaintiff. In that response and corresponding production, the FOIA Unit reviewed 1,078 pages of records. Of the 1,078 pages, 5 pages were released in full; 1 page was released in part; and 1,072 pages were non-responsive.<br><br>*Evidence*: Chigewe Decl., ¶ 44. | Undisputed. |
| 18. On February 27, 2023, DHS OIG issued its fourth interim response to the Plaintiff. In that response, the FOIA Unit reviewed 1,140 pages of records. Based on the review, none of the records were determined to be responsive to Plaintiff's request.<br><br>*Evidence*: Chigewe Decl., ¶ 45. | Undisputed. |
| 19. On March 30, 2023, DHS OIG issued its fifth interim response to the Plaintiff. In that response and corresponding production, DHS OIG indicated that the FOIA Unit reviewed 1,005 pages of records. Of the 1,005 pages, 10 pages were released in full; 44 pages were released in part; 113 pages were withheld in full; 736 pages were non-responsive; 61 pages were duplicates; 9 pages were referred to the U.S. Immigration and Customs Enforcement for processing and direct response; and 32 pages were referred to the U.S. Customs and Border Protection for processing and direct | Undisputed. |

| | |
|---|---|
| response.<br><br>*Evidence*: Chigewe Decl., ¶ 46. | |
| 20. Pursuant to continuous reviews of the records and other related information during the course of this litigation, it was determined that the 32 pages of records referred to the U.S. Customs and Border Protection (CBP) were not responsive to Plaintiff's request. DHS OIG issued a supplemental response letter, dated February 2, 2024, to Plaintiff, explaining that coordination with CBP and continued review of the records assisted in the determination that the records were not responsive.<br><br>*Evidence*: Chigewe Decl., ¶ 46, n. 11. | Undisputed. |
| 21. On June 29, 2023, DHS OIG issued its sixth interim (first supplemental) response to the Plaintiff. In that response and corresponding production, DHS OIG indicated that the FOIA Unit reviewed 1,307 pages of records. Of the 1,307 pages, 48 pages were released in full; 74 pages were released in part; 74 pages were withheld in full; 17 pages were non-responsive; 757 pages were duplicates; 328 pages were referred to the U.S. Immigration and Customs Enforcement for processing and direct response; 1 page was referred to the DHS Office for Civil Rights and Civil Liberties for processing and direct response; and 8 pages were sent to the DHS Privacy Office on a consultation.<br><br>*Evidence*: Chigewe Decl., ¶ 47 | Undisputed. |
| 22. On July 31, 2023, DHS OIG issued its | Undisputed. |

| | |
|---|---|
| seventh interim (second supplemental) response to the Plaintiff. In that response and corresponding production, DHS OIG indicated that the FOIA Unit reviewed 1,518 pages of records. Of the 1,518 pages, 91 pages were released in part; 180 pages were withheld in full; 20 pages were non-responsive; 644 pages were duplicates; and 583 pages were referred to U.S. Immigration and Customs Enforcement for processing and direct response.<br><br>*Evidence*: Chigewe Decl., ¶ 48 | |
| 23. On August 2, 2023, DHS OIG issued its final (supplemental) response to the Plaintiff. In that response and corresponding production, the FOIA Unit reviewed 11 pages of records. Of the 11 pages, 6 pages were released in full, and 5 pages were released in part. These 11 pages were comprised of the 8 pages that were previously sent to the DHS Privacy Office for consultation and 3 pages that were required to be re-processed as an incorrect FOIA Exemption was applied to some of the redactions.<br><br>*Evidence*: Chigewe Decl., ¶ 49 | Undisputed. |
| 24. Following the conclusion of all productions by DHS OIG, and in an attempt to narrow any outstanding issues, and pursuant to the Court's December 21, 2023 Order [Dkt. 64], DHS OIG sent a search summary to Plaintiff on January 19, 2024. The search summary provided an overview of DHS OIG's search, which included a description of the program office searched, specifications of the custodians searched, search terms used, and the date range for the | Undisputed. |

| | |
|---|---|
| records, where applicable (if no date range was specified, the date range was January 1, 2016 to September 1, 2022).<br><br>*Evidence*: Chigewe Decl., ¶ 50 | |
| 25. Pursuant to the Court's December 8, 2023 Order [Dkt. 62], DHS OIG provided a Summary *Vaughn* Index to Plaintiff's counsel on February 9, 2024.<br><br>Evidence: Chigewe Decl., ¶ 50 | Undisputed. |
| 26. On December 8, 2023, Plaintiffs' Counsel sent a letter to Defendants' Counsel identifying the specific pages that it intended to challenge in this FOIA action.<br><br>*Evidence*: Hoq Decl., Ex. L [Dkt. 66-8]. | Undisputed. |
| 27. DHS has a decentralized system for responding to FOIA requests. This means that each component within DHS has a designated FOIA office that processes records from that specific component. *See* 6 C.F.R. § 5.3(a)(1). One DHS component does not process records for all DHS components, and one DHS component does not run searches of another DHS component's systems, databases, etc. for records.<br><br>*Evidence*: Chigewe Decl., ¶ 19 | Disputed in that this statement interpreting the DHS FOIA regulations constitutes legal conclusions that do not constitute facts or evidence. |
| 27. Moving Parties' Response<br><br>Plaintiff offers no evidence to dispute the facts set forth in the Chigewe Declaration. *See* L.R. 56-4. | |
| 28. When DHS OIG receives a FOIA request, the FOIA Unit evaluates it to determine whether it is a proper FOIA | Disputed as to the role of the DHS-OIG FOIA Unit in determining whether a Request is a "proper FOIA request." |

| | |
|---|---|
| request under DHS FOIA regulation 6 C.F.R. § 5.3.<br><br>*Evidence*: Chigewe Decl., ¶ 18. | Nothing in 6 C.F.R. § 5.3 supports this broad, and undefined role for the DHSOIG FOIA Unit, and the statement lacks foundation. |
| 28. Moving Parties' Response<br><br>Plaintiff offers no evidence to dispute Uncontroverted Fact 28 and the underlying facts set forth in the Chigewe Declaration. *See* L.R. 56-4. | |
| 29. If a FOIA request is determined to be misdirected, meaning if DHS OIG's FOIA Unit first received the FOIA request, reviewed it, and made the determination that the request should have been submitted or sent to another component within DHS, DHS OIG's FOIA Unit routes the request to the proper component's FOIA office. The FOIA Unit then informs the requestor to contact that agency or component directly and DHS OIG will administratively close the FOIA request. *See* 6 C.F.R. § 5.4(c).<br><br>*Evidence*: Chigewe Decl., ¶ 23. | Undisputed, but with the added clarification that, as referenced above, prior to March 28, 2024, DHS components like DHS-OIG maintained this obligation to route requests to other DHS components even if they determine that "any portion of the requests" was misdirected. Chigewe Decl., ECF No. 79-4, n.2 (citing amendment to DHS regulation 6 C.F.R. § 5.4(c), 89 FR 14371 (February 27, 2024)). |
| 29. Moving Parties' Response<br><br>Plaintiff's legal argument regarding DHS's FOIA regulations is irrelevant to the question whether the fact is uncontroverted and has been rejected by at least one court. *See Jimenez v. U.S. Dep't of Homeland Sec.*, 2022 WL 1642460, at *7 (S.D. Fla. 2022) ("the text of the regulation does not encompass 'partial misdirection' or require 'referral'; it addresses 'misdirection' and requires 'routing'"). | |
| 30. Based on a requestor's description of the records being sought, and the FOIA Unit's knowledge of the various program offices' missions, the FOIA processor identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches. | Undisputed. |

| | |
|---|---|
| *Evidence*: Chigewe Decl., ¶ 24. | |
| 31. As the program offices are best positioned to determine where responsive records are located, they are responsible for searching all locations and by all keywords that the program office reasonably believes would produce responsive records. The POC then reviews the FOIA request, along with any case-specific instructions that may have been provided, and based on the POC's experience and knowledge of the program office's practices and activities, forwards the request and instructions to the individual employee(s) within the program office that the POC believes is reasonably likely to have responsive records, if any. Once those searches are completed, the individual(s) and program offices provide any potentially responsive records along with a completed search form to the assigned FOIA processor. The FOIA processor then reviews the collected records for responsiveness, application of appropriate FOIA exemptions, and the necessity of any referrals and/or consultations.<br><br>*Evidence*: Chigewe Decl., ¶ 26. | Disputed that "the program offices are best positioned to determine where responsive records are located." Although this may sometimes be the case, in certain cases others in the organization may be better positioned to identify responsive records. For example, in this case, DHS OIG identified a Case Summary Report referencing a complaint letter sent to the DHS Secretary requesting an investigation into the death of Vargas Arellano by DHS CRCL. ECF No. 66-4 at 45– 52, 66-7 at 2–5. This report—housed outside of DHS CRCL—identified a search that DHS-CRCL could perform with a significant chance of uncovering relevant documents.<br><br>Otherwise undisputed.<br><br>*Evidence*: ECF No. 66-4 at 45–52; ECF No. 66-7 at 2-5. |
| 31. Moving Parties' Response<br><br>Plaintiff offers no evidence other than legal argument to dispute this fact. *See* L.R. 56-4. | |

Dated: May 15, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

/s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attornevs for Defendants