LABONI A. HOQ (SBN 224140)
*laboni@hoqlaw.com*
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, *Plaintiff*, v. UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, *Defendants*. | Case No. 2:22-CV-04760-SHK **PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION FOR AN ORDER (1) STAYING IN PART THE COURT'S ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT [ECF 87] AND (2) REQUIRING *IN CAMERA* REVIEW OF 13 PAGES CONTAINING IMMIGRATION HISTORY REDACTIONS** Honorable Shashi H. Kewalramani United States Magistrate Judge |

---

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE
APPLICATION

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
Plaintiff's Opposition to DHS-OIG's Ex Parte Application

2

## I. INTRODUCTION

After full briefing and oral argument, the Court issued a comprehensive 36-page order addressing Plaintiff's and Defendants' cross-motions for partial summary judgment. ECF No. 87. In spite of the parties' lengthy briefing, including in Defendants' own summary judgment motion, Defendant OIG-DHS now takes the extraordinary step of filing an ex parte application to stay and alter the Court's well-considered order *after* the deadline to seek reconsideration has passed. L.R. 7-18. Defendant DHS-OIG now requests, in essence, that the Court revise its order granting summary judgment to the Plaintiff, and instead, reconsider its order for disclosure of documents based on an additional *in camera* review of documents, on the basis of an unspecified DHS regulation kept secret from Plaintiff. The Court should reject this unwarranted request: it is untimely, it fails to meet the high standard for reconsideration of an order, and it fails on its merits.

## II. ARGUMENT

### A. Defendants' Filing Should Be Construed as an Untimely and Improper Ex Parte Application for Reconsideration of the Court's Summary Judgment Order

Defendants style their filing as an "ex parte application for an order (1) staying in part the Court's order on parties' cross motions for summary judgment [ECF 87] and (2) requiring *in camera* review of 13 pages containing immigration history redactions." ECF No. 88. In short, the government requests that it may avoid producing documents that it withheld under FOIA Exemptions 6 and 7(c) as ordered by the Court.[1] Instead, the government requests that the Court reconsider its order, and inspect its redactions *in camera* in light of an unspecified agency regulation that

---

[1] The documents at issue, with the specific challenged redactions identified in highlighted format, are located at ECF 66-4 (Ex. A to Cho Decl.) at 5, 6, 9, 18, 20, 21, 26, 27, 30, 38, 39, 42, 43.
*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

1

is not disclosed to the Plaintiff. Defendants' application should be rejected on procedural grounds alone, but also fails on the merits as discussed below.

In their summary judgment briefing, Defendants argued that they should be able to withhold immigration information related to Teka Gulema and Johana Medina Leon under Exemptions 6 and 7(C). ECF No. 79 at 37-38. Defendants' cross-motion for summary judgment argued, citing evidence, that these exemptions apply because "the disclosure of this information would serve no public benefit and would not inform the public how DHS-OIG is executing its statutory responsibilities." *Id.* at 38. On reply, Defendants further argued that these exemptions do not apply because "the asserted public interest in the specific information withheld here does not rise to the level of overcoming the substantial privacy interests of Medina-Leon and Gulema." ECF No. 81 at 14 (citation omitted).

The Court rejected Defendants' Exemption 6 and 7(C) arguments. It found that exemption 7(C) does not apply because the facts did not support the threshold requirement that DHS-OIG's investigation represented law enforcement records. ECF No. 87[2] at 19-22. Turning to the substantive exemption 6 analysis, the Court analyzed the record before it and found that the balancing test favors disclosure:

> The redacted details of Medina Leon and Gulema's immigration history are likewise relevant to ICE's decision to release the decedents from its custody prior to their deaths, and DHS OIG's investigation into that decision. Such information is sufficiently important to the public's understanding of how Defendants handle the care of sick detainees, whether Defendants engage in practices intended to conceal the number of deaths of detainees in their custody, and goes to the public's right to know "what their government is up to." *Reporters Comm. For Freedom of Press*, 489 U.S. at 773. Disclosure of the withheld documents will shed light on Defendants' practices regarding [] releasing detainees facing imminent death.

---

[2] The Court's summary judgment order is also available at *ACLU Found. of S. California v. United States Immigr. & Customs Enf't*, --- F. Supp. 3d ---, No. 2:22-CV-04760-SHK, 2024 WL 3370532 (C.D. Cal. July 8, 2024).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

2

1  *Id.* at 25. In the Court's separate analysis for Exemption 5, it ordered *in camera*
2  review because the Defendants' arguments "lack[ed] . . . specificity" but raised a
3  "plausibl[e]" claim. *Id.* at 17-18. The Court clearly noted that it has the option and
4  authority to consider *in camera* review, instead of granting summary judgment
5  outright. *Id.* at 9 (citing 5 U.S.C. § 552(a)(4)(B)). But for Exemption 6, the Court
6  did not order an *in camera* inspection and reached a ruling on the record before it.
7  *Id.* at 26.

8      Now, in this filing, DHS-OIG seeks to relitigate the portion of the Court's
9  summary judgment order finding that "the public interest for disclosure outweighs
10 the privacy interests." ECF No. 87 at 25. Specifically, DHS-OIG asks the Court to
11 conduct an *in camera* review and "to determine that the redacted information does
12 not, in fact, serve the public interest." ECF No. 88 at 5. DHS-OIG's request that the
13 Court reconsider its summary judgment order should be properly construed as an
14 application for reconsideration. "A motion's nomenclature is not controlling."
15 *United States ex rel. Hoggett v. Univ. of Phoenix*, 863 F.3d 1105, 1108 (9th Cir.
16 2017) (quotation marks and citation omitted). Instead, courts "construe the motion,
17 however styled, to be the type proper for the relief requested." *Id.* (cleaned up). "To
18 determine the applicable legal standard, then, the Court must first decide how to best
19 construe" DHS-OIG's ex parte application. *Reed v. Paramo*, No. 18-CV-361 JLS
20 (DEB), 2023 WL 5985519, at *2 (S.D. Cal. Sept. 14, 2023). When a party "argu[es]
21 that the Court erred in applying the law to the facts of this case in [a partial grant of]
22 [s]ummary [j]udgment," this argument "is properly considered a Rule 59(e) motion
23 for reconsideration of the Court's [s]ummary [j]udgment [o]rder," even if raised in
24 a paper styled otherwise. *Id.* It is thus governed by Local Rule 7-18.

25     Because DHS-OIG has clearly failed to meet the deadline to apply for
26 reconsideration, this application should be dismissed as untimely. Local Rule 7-18
27 requires that "[a]bsent good cause shown, any motion for reconsideration must be

28 *ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

3

filed no later than 14 days after entry of the Order that is the subject of the motion or application." L.R. 7-18. The Court's summary judgment order was entered on July 8, 2024. ECF No. 87. Any motion or application for reconsideration was therefore due July 22, 2024. Defendants' deadline to meet and confer on a noticed motion for reconsideration was July 15. L.R. 7-3. DHS-OIG missed these deadlines in full. It first reached out to meet and confer on July 23, 2024. ECF No. 88 at 7. Plaintiff responded with its position the next day, on July 24. DHS-OIG filed its ex parte application on July 25. *Id.* at 6. DHS-OIG provided no good cause to have missed either the July 15 deadline to meet and confer or the July 22 deadline to move or apply for reconsideration.

DHS-OIG also violates the requirements for an ex parte application. "Ex parte applications are appropriate only in extremely limited circumstances." *Hernandez-Rojas v. Pinnell*, No. 213CV00669CASJCX, 2018 WL 654287, at *2 (C.D. Cal. Jan. 30, 2018). As a threshold requirement to raise this issue by an ex parte application, DHS-OIG must show that (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and (2) that it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). DHS-OIG can meet neither requirement. First, the timing creates no prejudice at all to DHS-OIG. The Court's order merely required the parties to meet and confer by July 29 "on a timeline for production" of the documents at issue. ECF No. 87 at 36. There is no production deadline that could create any prejudice. Second, any timing crisis that might exist stems from DHS-OIG's failure to timely respond to the Court's order, and DHS-OIG does not even attempt to explain this failure. DHS-OIG thus can show neither that it "is without fault" nor "excusable neglect." *Mission Power*, 883 F. Supp. at 492. The

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

4

Court should therefore also deny DHS-OIG's application for failure to comply with the requirements for ex parte applications.

The Court should also deny the application for failure to address or meet the reconsideration standard. In the Central District of California, the reconsideration standard is set out in Local Rule 7-18, which courts interpret "to be coextensive with Rules 59(e) and 60(b)." *Tawfilis v. Allergan, Inc.*, 2015 WL 9982762, at *1 (C.D. Cal. Dec. 14, 2015). Local Rule 7-18 states that a motion for reconsideration of the decision on any motion may be made only on the grounds of: "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." L.R. 7-18.

Similarly, "[a]bsent other, highly unusual, circumstances, reconsideration pursuant to Rule 59(e) is appropriate only where (1) the court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was manifestly unjust; or (3) there is an intervening change in controlling law." *Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*, No. EDCV182185JGBSHKX, 2020 WL 5792475, at *1 (C.D. Cal. Aug. 27, 2020) (internal quotation marks and citation omitted). Indeed, courts have emphasized that Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotations omitted).

Importantly, motions for reconsideration "may ***not*** be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

5

1 Cir. 2000) (emphasis in original) (rejecting a Rule 59(e) motion for reconsideration because plaintiffs previously had numerous other opportunities to raise the choice-of-law issue before the judgment in favor of defendants); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (rejecting a motion to reconsider because the allegedly new evidence could have been introduced earlier in the litigation); *Trotter v. Exxonmobil Corp.*, No. CV 17-2279 PSG (JCX), 2019 WL 1578368, at *2 (C.D. Cal. Feb. 26, 2019) (rejecting a motion for reconsideration because the party could have brought its arguments when initially opposing summary judgment).

Here, DHS-OIG makes arguments that it could have—and did not—raise in briefing for its cross-motion for summary judgment. First, DHS-OIG "represents to this Court that *in camera* review of these limited redactions is likely to prove to the Court that the redacted information is not relevant to either" "'ICE's decision to release the decedents from its custody prior to their death,' or 'DHS OIG's investigation into that decision.'" ECF No. 88 at 4 (quoting ECF No. 87 at 25). DHS-OIG could have made this specific request for *in camera* review of these documents in summary judgment briefing, and it declined to do so. ECF No. 79 at 28-29; ECF No. 81 at 8-9.[3] Instead, it relied on boilerplate justifications for withholding, such as: "The disclosure of this information . . . would not inform the public how DHS OIG is executing its statutory responsibilities." ECF No. 79-3 at 9; *see also* ECF No. 79 (citing ECF No. 79-3 at 8-13). It even admitted that Ms. Medina-Leon's "personal

---

[3] DHS-OIG claims that it requested *in camera* review of these documents in its summary judgment briefing. ECF No. 88 at 3 (citing ECF No. 81 at 13 n.2). But this citation of a footnote requesting *in camera* review deals with a separate set of documents: Ms. Medina-Leon's medical records. ECF No. 81 at 13 n.2. Regardless, even if DHS-OIG already requested *in camera* review of these redactions in summary judgment briefing, that does not solve its problem under Local Rule 7-18 because a motion for reconsideration is not the right vehicle to raise an argument already made. L.R. 7-18 (requiring a "material difference" between the fact or law argued earlier and that argued on reconsideration).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

6

privacy information may touch on ICE's activities regarding detention." ECF No. 79-3 at 10. For these reasons, the Court correctly rejected Defendants' arguments on the merits, and DHS-OIG's new argument that it instead should review these redactions *in camera* comes too late (and lacks merit, as discussed below).

Second, DHS-OIG seeks to "provide this Court [*in camera*] with a citation to [a] DHS immigration regulation that it has contended also requires this information be protected from disclosure. . . ." ECF No. 88 at 5. DHS-OIG referenced this regulation in a footnote in its opening brief but did not ask the Court to review the regulation *in camera*. ECF No. 79 at 26 n.4.[4] By making this cryptic reference only in a footnote, DHS-OIG waived whatever argument it was attempting to make. *Est. of Saunders v. Comm'r*, 745 F.3d 953, 962 (9th Cir. 2014) ("Arguments raised only in footnotes . . . are generally deemed waived."). However, this reference demonstrates that DHS-OIG could have sought in its initial briefing to submit the regulation *in camera*. It cannot now make this request for the first time in a request for reconsideration.

### B. Defendants' Ex Parte Application for Reconsideration Fails on the Merits

As explained above, the Court need not reach the merits of DHS-OIG's arguments for reconsideration, as they fail on procedural grounds alone. However, these arguments also fail on their merits.

First, all aspects of Ms. Medina-Leon's and Mr. Gulema's immigration histories—including the information DHS-OIG has redacted—are important to the public's understanding of the circumstances of their detention and subsequent release. DHS-OIG's ex parte application is sparse on the specifics of its argument, but DHS-OIG appears to base its argument on the assumption that immigration

---

[4] DHS-OIG contends that it also raised this argument on reply. ECF No. 88 at 2-3 (purporting to quote ECF No. 81 at 8-9). But this argument does not appear on the cited pages. ECF No. 81 at 8-9.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

7

information is of interest to the public only if ICE actually considered such information in its release decisions. ECF No. 88 at 4. This assumption misses the mark: the public interest lies in the factors that ICE should consider to release medically vulnerable people, making all immigration information about these two people whom ICE should have released highly relevant. In fact, this immigration information is likely of even more interest to the public if ICE did not—but should— consider it. Other courts addressing Exemption 6 have similarly found that the public interest lies precisely in the information that the government may ***not*** be considering. *E.g.*, *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1334 (D.C. Cir. 2014) (citing a public interest in "whether the Department is properly pursuing any significant discrepancies" that would be apparent from the redacted portions of the records); *Columbia Riverkeeper v. Fed. Energy Regul. Comm'n*, 650 F. Supp. 2d 1121, 1130 (D. Or. 2009) (requiring production of a government mailing list because of a public interest in identifying anyone left off of the list).

The public interest in immigration information that could help determine when to release medically vulnerable people from ICE detention has only grown since the parties' summary judgment briefing. The ACLU and partners released a report after the close of briefing on deaths in ICE detention, which generated significant attention.[5] Citing this report, Senator Durbin launched an inquiry into

---

[5] *E.g.*, Daniella Silva, *ICE Detainee Deaths Could Have Been Prevented, ACLU Report Says*, NBC News, Jun. 25, 2024, https://www.nbcnews.com/news/us-news/ice-detainee-deaths-prevented-aclu-report-says-rcna156815; Isabela Dias, *Most Immigrant Deaths in ICE Detention Could Have Been Prevented*, Mother Jones, Jun. 25, 2024, https://www.motherjones.com/politics/2024/06/most-immigrant-deaths-in-ice-detention-could-have-been-prevented/; Jimmy Jenkins, *Most Deaths of People in ICE Custody Were Preventable, New Report Says*, Arizona Republic, Jun. 25, 2024, https://www.azcentral.com/story/news/politics/immigration/2024/06/25/most-deaths-in-ice-custody-were-preventable-new-report-says/74201835007/; Anna-Catherine Brigada, *"Preventable Tragedy": ICE Detention Deaths Could Have Been Avoided, Report Finds*, Houston Landing, June 25, 2024,

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

8

1  medical and mental health care in ICE detention, and he recommended that ICE issue
2  a directive to "ensure rapid medical screening of detained immigrants to identify
3  those who would face increased medical and/or mental health risk in detention and
4  outline procedures to enable their prompt release from custody."[6] Information about
5  immigration information for those who have died in detention, and in particular those
6  whose deaths ICE has concealed, will be important to this effort to identify the steps
7  that will protect others in the future. The Court should not disturb its ruling that the
8  public interest outweighs any privacy interest in this immigration information. *See*
9  ECF No. 87 at 25.

10  Second, the Court should not permit DHS-OIG to submit its unspecified
11  regulation for *in camera* review. This regulation—however worded—cannot
12  possibly render documents exempt from FOIA. "An agency may withhold a
13  document only if the information contained in the document comes under one of the
14  nine exemptions listed in § 552(b)." *Powell v. Dep't of Justice*, 584 F. Supp. 1508,
15  1512 (N.D. Cal. 1984). None of these nine exemptions permits an agency to exempt
16  its own records by regulation, 5 U.S.C. § 552(b). Although Exemption 3 permits
17  withholding of information "specifically exempted from disclosure by statute," 5
18  U.S.C. § 552(b)(3), this exemption does not apply to regulations. *Founding Church*
19  *of Scientology v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979) (excluding from Exemption

---

22  https://houstonlanding.org/preventable-tragedy-ice-detention-deaths-could-have-
23  been-avoided-report-finds/; Maurizio Guerrero, *Nearly All Deaths in ICE Custody Over 5 Years Were Preventable, New Report Finds,* Prism, Jun. 25, 2024,
24  https://prismreports.org/2024/06/25/nearly-all-deaths-in-ice-detention-over-5-years-were-preventable/.

26  [6] Senator Dick Durbin, *Durbin Launches Inquiry Into Medical And Mental Health Care In ICE Detention Centers* (Jul. 16, 2024),
27  https://www.durbin.senate.gov/newsroom/press-releases/durbin-launches-inquiry-into-medical-and-mental-health-care-in-ice-detention-centers.
28  *ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

9

1  3 rules that "are not affirmatively adopted by the legislature, as all statutes must
2  be.").[7] The Court therefore need not review this regulation *in camera*.

3  And even if there were some chance that this unspecified regulation could
4  generate a FOIA exemption, DHS-OIG's proposed course of action—which would
5  deny Plaintiff any information about the regulation cited against it or an opportunity
6  to address that regulation—wildly violates Plaintiff's procedural due process rights.
7  Although FOIA permits courts to conduct *in camera* inspections of "the contents of
8  . . . agency records," 5 U.S.C. § 552(a)(4)(B), the circumstances under which courts
9  should do so are circumscribed consistent with FOIA's public transparency
10 mandates. Further, Plaintiff is aware of no provision that permits the government to
11 raise new legal arguments *in camera,* and DHS-OIG cites none. In recognition of
12 these due process concerns, the Ninth Circuit has warned that "resort to *in camera*
13 review is appropriate only after the government has submitted as detailed public
14 affidavits and testimony as possible." *Wiener v. F.B.I.*, 943 F.2d 972, 979 (9th Cir.
15 1991) (internal quotation marks and citation omitted). It is therefore particularly
16 inappropriate for DHS-OIG to seek *in camera* review via an ex parte application that
17 attaches no public affidavits or revised *Vaughn* index, which are necessary "to afford
18 the requester an opportunity to intelligently advocate release of the withheld
19 documents and to afford the court an opportunity to intelligently judge the contest."
20 *Id*.

21 **III.  CONCLUSION**
22 For the foregoing reasons, DHS-OIG's ex parte application should be denied.
23                                              \*\*\*
24 The undersigned counsel of record for Plaintiff certifies that this brief contains
25 3,265 words, which complies with the word limit of L.R. 11-6.1.

---

[7] Although DHS-OIG marked the redactions at issue here with Exemption 3, it elected to withdraw its argument under Exemption 3 ahead of summary judgment briefing. ECF No. 88 at 3 n.2.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION

10

Respectfully submitted this 29th of July, 2024.

/S/ Laboni Hoq

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| EVA BITRAN (SBN 302081)<br>ebitran@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S EX PARTE APPLICATION