

# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

## MEMORANDUM OF ACTIVITY

**Type of Activity**: Personal Contact: Interview of [(b)(6); (b)(7)(C)] DO, ICE ERO, Otero, NM

| Case Number: I19-ICE ERO-ELP-16066 | Case Title: Death of Jonathan Alberto Medina-Leon, Non-Employee, ICE, El Paso, TX |
|---|---|

On June 5, 2019, Special Agents [(b)(6); (b)(7)(C)], Department of Homeland Security (DHS), Office of Inspector General (OIG), El Paso, TX, and [(b)(6); (b)(7)(C)] Immigration and Customs Enforcement (ICE), Office of Professional Responsibility (OPR), El Paso, TX, interviewed [(b)(6); (b)(7)(C)] Deportation Officer (DO), ICE, Enforcement and Removal Operations (ERO), Otero, NM. The interview was in regards to an allegation involving the circumstances surrounding the death of Jonathan Alberto Medina-Leon, Non-DHS Employee, El Paso, TX, prior to her release from the OCPC. [(b)(6);] agreed to a voluntary interview regarding the aforementioned allegation.

The following is from a Report of Investigation (ROI), provided by [(b)(6); (b)(7)(C)] which documented the interview of [(b)(6);]

"On June 2, 2019, ERO El Paso notified OIG El Paso of the death of Jonathan Medina-Leon, a 25-year-old transgender female, at a local El Paso hospital five days after being released from ICE custody. On June 2, 2019, OIG El Paso notified OPR El Paso of the death of the former ICE detainee.

On June 5, 2019, Senior Special Agent [(b)(6); (b)(7)(C)], OPR El Paso, and Special Agent [(b)(6); (b)(7)(C)] OIG El Paso, interviewed DO [(b)(6); (b)(7)(C)], ERO El Paso, at the Otero County Processing Center, in Chaparral, New Mexico.

DO [(b)(6);] stated that he was responsible for [(b)(6); (b)(7)(C); (b)(3):Unspecified Statute]
[(b)(6); (b)(7)(C); (b)(3):Unspecified Statute]

[(b)(6); (b)(7)(C); (b)(3):Unspecified Statute]   DO [(b)(6);] stated he never met Medina-Leon [(b)(6); (b)(7)(C); (b)(3):Unspecified Statute]

[(b)(6); (b)(7)(C); (b)(3):Unspecified Statute]

DO [(b)(6);] explained, although Medina was served in person by video conference, local policy

| Name, Title, Signature, and Date: [(b)(6); (b)(7)(C)] 7-8-2019 | Reviewing Official Name, Title, Signature, and Date: [(b)(6); (b)(7)(C)] 7-8-19 |
|---|---|
| [(b)(6); (b)(7)(C)] Special Agent | [(b)(6); (b)(7)(C)], Acting Special Agent in Charge |

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and is disseminated only on a need to know basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

# MEMORANDUM OF ACTIVITY

required that Medina-Leon (b)(6); (b)(7)(C); (b)(3):Unspecified Statute before it was filed with the ICE Executive Office of Immigration Review. DO (b)(6); stated that after Medina-Leon's (b)(6); (b)(7)(C); (b)(3):Unspecified Statute (b)(6); (b)(7)(C); USCIS sent Medina-Leon's file to ERO El Paso for processing.

DO (b)(6); advised he was not certain when ERO El Paso received the file after USCIS sent it. DO (b)(6); explained large volumes of cases are adjudicated by USCIS and ERO El Paso processes files as soon as possible after they are received. DO (b)(6); sated that based on Medina-Leon's (b)(6); (b)(7)(C); (b)(3):Unspecified Statute Medina-Leon would likely have been processed for a parole which would allow her to be released from ICE custody while she waited for a hearing before an immigration judge.

DO (b)(6); stated that on May 28, 2019, Supervisory Detention and Deportation Officer (SDDO) (b)(6); (b)(7)(C) ERO El Paso, called him and instructed him to prepare Medina-Leon's Notice to Appear (NTA) paperwork to be served. DO (b)(6); advised that SDDO (b)(6); told him that DO (b)(6); was preparing parole paperwork to release Medina-Leon from ICE custody.

DO (b)(6); stated that sometime during the afternoon of May 28, 2019, SDDO (b)(6); (b)(7)(C) instructed him to go with DO (b)(6); (b)(7)(C) ERO El Paso, to Del Sol Medical Center and serve Medina-Leon with NTA and parole documents.

DO (b)(6); advised that on May 28, 2019, at approximately 5:30 p.m., he and DO (b)(6); served Medina-Leon with NTA and parole paperwork at Del Sol Medical Center, in El Paso, Texas. DO (b)(6); stated that Medina-Leon looked through the documents and signed them in the appropriate locations acknowledging service. DO (b)(6); described Medina-Leon as alert and responsive at the time he and DO (b)(6); served the paperwork.

SSA (b)(6); (b)(7)(C) examined forms contained in MEDINA-Leon's file and observed that the file contained (b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute SSA (b)(6); (b)(7)(C) observed that the file contained a Form I-94, Arrival/Departure record. The Form I-94 was stamped indicating Medina-Leon was issued a parole on May 28, 2019 for humanitarian purposes and the parole was valid until May 28, 2020."

IMPORTANT NOTICE
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.



# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

## MEMORANDUM OF ACTIVITY

**Type of Activity:** Personal Contact: Interview of (b)(6); (b)(7)(C)

| Case Number: I19-ICE ERO-ELP-16066 | Case Title: Death of Jonathan Alberto Medina-Leon, Non-Employee, ICE, El Paso, TX |
|---|---|

On June 6, 2019, Special Agents (b)(6); (b)(7)(C) Department of Homeland Security (DHS), Office of Inspector General (OIG), El Paso, TX, and (b)(6); (b)(7)(C) Immigration and Customs Enforcement (ICE), Office of Professional Responsibility (OPR), El Paso, TX, interviewed (b)(6); (b)(7)(C) Supervisory Detention and Deportation Officer (SDDO), ICE, Enforcement and Removal Operations (ERO), Otero, NM. The interview was in regards to an allegation involving the circumstances surrounding the death of Jonathan Alberto Medina-Leon, Non-DHS Employee, El Paso, TX, prior to her release from the OCPC. (b)(6); agreed to a voluntary interview regarding the aforementioned allegation.

The following is from a Report of Investigation (ROI), provided by (b)(6); (b)(7)(C) which documented the interview of (b)(6); (b)(7)(C):

"On June 2, 2019, ERO El Paso notified OIG El Paso of the death of Jonathan Medina-Leon, a 25-year-old transgender female, at Del Sol Medical Center (DSMC) five days after being released from ICE custody. On June 2, 2019, OIG El Paso notified OPR El Paso of the death of the former ICE detainee.

On June 6, 2019, Senior Special Agent (b)(6); (b)(7)(C) OPR El Paso, and Special Agent (b)(6); (b)(7)(C), OIG El Paso, interviewed SDDO (b)(6); ERO El Paso, at the Otero County Processing Center (OCPC), in Chaparral, New Mexico. The following paragraphs contain a summary of statements made by SDDO (b)(6); (b)(7)(C) during the interview.

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute  SDDO (b)(6); stated that once the documents were received by ERO El Paso, the case would be referred to a docket officer who would personally serve Medina-Leon with the NTA, then file the document with the Executive Office of Immigration Review (EIOR). SDDO (b)(6); stated the EIOR requires an NTA be served in person and does not accept documents served telephonically.

| Name, Title, Signature, and Date: (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) Special Agent   8·12·19 | Reviewing Official Name, Title, Signature, and Date: for (b)(6); (b)(7)(C)   (b)(6); (b)(7)(C), Acting Special Agent in Charge   8/12/19 |
|---|---|

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and is disseminated only on a need to know basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-09                Page 1 of 2                Item #:

# REPORT OF INVESTIGATION

May 28, 2019, the parole he prepared and an NTA were served to Medina at DSMC by (b)(6); DO, ICE ERO, Otero, NM. (Exhibit 5)

DHS OIG interviewed (b)(6); (b)(7)(C) LVN, OCPC, Otero, NM. (b)(6); recalled that she assisted in medically evaluating Medina when Medina arrived at the OCPC on April 14, 2019. (b)(6); stated Medina notified her she was a transgender woman. (b)(6); said Medina refused a (b)(6); (b)(7)(C) test when she arrived. [Agent's note: An (b)(6) test is a blood test used to screen for (b)(6); ] (b)(6); stated Medina dealt with gastrointestinal issues throughout her detainment at the OCPC. (Exhibit 6)

DHS OIG interviewed (b)(6); RN, OCPC, Otero, NM. (b)(6); stated she medically examined Medina twice while Medina was at the OCPC. (b)(6); stated she first saw Medina on May 16, 2019, and provided her with antacids (Maalox and Zantac) for gastrointestinal discomfort. According to (b)(6); she next saw Medina on May 24, 2019, and noted Medina had suffered significant weight loss since she had last seen her. (b)(6); stated Medina complained of nasal congestion, a cough, lack of appetite, and gastrointestinal issues and asked to be examined as soon as possible. (b)(6); provided Medina with Tylenol and additional antacids. (b)(6); also stated she referred Medina to the one of the medical providers for further assessment.

According to (b)(6); she placed Medina's referral into the referral inbox of (b)(6); (b)(6); Nurse Practitioner (NP), OCPC, Otero, NM, on May 24, 2019. (b)(6); explained that when an RN feels any detainee needs to see the NP or MD, the RN enters a written referral into the inbox of the NP or MD who is working that particular day. (b)(6); stated Medina was not seen by (b)(6); on May 24, 2019, and was not seen by a medical provider until May 27, 2019, when Medina was seen by (b)(6); . When asked why she did not contact a medical provider via a telephone call when Medina was not seen on May 24, 2019, (b)(6); stated she followed protocol for referrals. (b)(6); explained telephone calls are only placed if the patient is in acute distress and not in stable condition, a diagnosis Medina did not receive. (Exhibit 7)

DHS OIG interviewed (b)(6); , DO, ICE ERO, Otero, NM. (b)(6); stated that he was responsible for (b)(6); (b)(7)(C); (b)(3):Unspecified Statute
(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute (b)(6) stated that as Medina's docket officer, he received documents from (b)(6); (b)(7)(C); (b)(3):Unspecified Statute
(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); stated that on May 28, 2019, (b)(6); called him and instructed him to prepare Medina's NTA paperwork so it could be served on Medina. (b)(6); stated that on May 28, 2019, (b)(6); (b)(6); SDDO, ICE ERO, Otero, NM, instructed him to go with (b)(6); , DO, ICE ERO, Otero, NM, to the DSMC and serve Medina with the NTA and parole documents. According to

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

should have called him or (b)(6); on Saturday, May 26 and/or Sunday, May 27, 2019. (b)(6); stated he is on call 24 hours a day, seven days a week. (Exhibit 10)

DHS OIG interviewed (b)(6);, SDDO, OCPC, Otero, NM. (b)(6); stated that upon reviewing Medina's alien file on May 22, 2019, (b)(6); (b)(7)(C); (b)(3):Unspecified Statute telephonically notified Medina she was approved for an NTA. (b)(6); advised that the actual NTA and related documents are mailed to the OCPC, but could not state when Medina's documents arrived. (b)(6); explained that once ICE ERO receives the aforementioned documents, they are transferred to the docket officer, processed, and served 1 to 3 weeks later, depending on processing times.

(b)(6); stated that on May 28, 2019, he was notified via email from the OCPC that Medina was ill and had been transported to the DSMC emergency room by an ambulance. (b)(6); explained that one of the entities copied in the email was the ICE Health Service Corps (IHSC). (b)(6); stated he later received an email from the IHSC advising that Medina (b)(6); (b)(7)(C) (b)(6); (b)(b)( and the IHSC recommended alternative detention (release from ICE Custody) if Medina was not subject to mandatory detention.

(b)(6); stated he directed (b)(6); to prepare documents to release Medina on parole. (b)(6); further stated he received a telephone call from (b)(6);, Assistant Field Office Director, ICE ERO, Otero, NM, who instructed him to serve Medina with her NTA and parole documents. (Exhibit 11)

The DHS OIG reviewed all video provided by OCPC of Medina. The video provided was from May 24, 2019 to May 28, 2019. All video viewed by DHS OIG did not reveal evidence of malfeasance or employee misconduct involving Medina at the OCPC. (Exhibit 12)

DHS OIG interviewed (b)(6);, SDDO, ICE ERO, Otero, NM. (b)(6) stated that on May 28, 2019, medical personnel at the OCPC notified ICE ERO management via email that Medina was transported to the DSMC by ambulance for further evaluation due to uncontrolled hypertension, chest pain, dehydration, unusual weight loss, and an abnormal EKG. (b)(6); explained that (b)( (b)(6);, Field Medical Coordinator (FMC)/RN, IHSC, El Paso, TX, recommended they release Medina from custody, if possible, due to medical concerns.

(b)(6); stated (b)( sent him an email, which stated ICE ERO should attempt to get Medina released from ICE ERO custody based on (b)(6); recommendation. (b)(6) stated an immigration parole was prepared by (b)(6); and he ((b)(6);) approved the parole. (Exhibit 13)

DHS OIG interviewed (b)(6); (b)(7)(C) FMC/RN, IHSC, El Paso, TX. (b)(6); recalled receiving an email on May 28, 2019, from OCPC medical personnel stating Medina was transported to the DSMC for uncontrolled hypertension, chest pains, an abnormal EKG, and significant weight loss.

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08

gastritis for which Medina had previously taken medication. During this medical examination, Medina was prescribed omeprazole (antacids) and a bland diet as a result.

On May 14, 2019, Medina was examined by (b)(6); who documented that Medina complained of loss of appetite and continuous pain in her stomach. Medina was prescribed Maalox and Zantac (antacids) as a result. On May 24, 2019, (b)(6): evaluated Medina and reported she suffered from nasal congestion, runny nose, dry cough, lack of appetite, sore throat, abdominal pain, nausea, vomiting, weakness, weight loss, and acid reflux. (b)(6); documented Medina's weight was 125.6 pounds on April 14, 2019, 110 pounds on May 14, 2019, and 103.4 pounds on May 24, 2019. Staff notes reflected Medina's visit on May 24, 2019, was her second visit within 10 days and her third visit within that month. The notes for this visit stated Medina was concerned there may have been something wrong with her and she wanted to be evaluated by the provider as soon as possible. Documentation indicated Medina was referred on May 24, 2019, to either the MD or NP for further evaluation.

On May 27, 2019, Medina submitted a medical request for an examination of a rash on her forehead. (b)(6); evaluated Medina, and found her weak and with a 22-pound weight loss. (b)(6); ordered numerous lab tests to include tests for Hepatitis, (b)(6, and Varicella IGM (Chicken Pox).

On May 28, 2019, Medina experienced chest pains, which radiated to her left arm and shoulder. (b)(6); ordered an EKG and when presented with the results, ordered that Medina be transported to the DSMC. While she was waiting for Emergency Medical Services (ambulance) to arrive, her bloodwork results became available which showed Medina (b)(6); (b)(7)(C) (b)(6 (Exhibit 18)

A timeline of events revealed:

- On April 11, 2019, Medina arrived at the Paso Del Norte Port of Entry, El Paso, TX, and requested entry into the United States (b)(6); (b)(7)(C); (b)(3):Unspecified Statute
- On April 12, 2019, Medina was transferred to the Marcelino Serna Port of Entry, Tornillo, TX, for processing. Upon arrival, Medina told Customs and Border Protection Officers she was not ill, injured, or taking medication.
- On April 14, 2019, Medina was transferred to the OCPC, Otero, NM. During her initial medical assessment, Medina gave negative responses to questions about having any prior medical issues. Medina was found to be in good health at the conclusion of this medical assessment.
- On April 16, 2019, Medina was seen by OCPC medical personnel, who determined she suffered from chronic gastritis for which she had previously taken medication. Consequently, Medina was prescribed omeprazole (antacids) and a bland diet.

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-08



# OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

## MEMORANDUM OF ACTIVITY

**Type of Activity**: Personal Contact: Interview of (b)(6);, DO, ICE ERO, Otero, NM

| *Case Number:* I19-ICE ERO-ELP-16066 | *Case Title:* Death of Jonathan Alberto Medina-Leon, Non-Employee, ICE, El Paso, TX |
|---|---|

On June 5, 2019, Special Agents (b)(6); (b)(7)(C) Department of Homeland Security (DHS), Office of Inspector General (OIG), El Paso, TX, and (b)(6); (b)(7)(C), Immigration and Customs Enforcement (ICE), Office of Professional Responsibility (OPR), El Paso, TX, interviewed (b)(6);, Deportation Officer (DO), ICE, Enforcement and Removal Operations (ERO), Otero, NM. The interview was in regards to an allegation involving the circumstances surrounding the death of Jonathan Alberto Medina-Leon, Non-DHS Employee, El Paso, TX, prior to her release from the OCPC. (b)(6); agreed to a voluntary interview regarding the aforementioned allegation.

The following is from a Report of Investigation (ROI), provided by (b)(6);, which documented the interview of (b)(6);.

"On June 2, 2019, ERO El Paso notified OIG El Paso of the death of Jonathan Medina-Leon, a 25-year-old transgender female, at a local El Paso hospital five days after being released from ICE custody. On June 2, 2019, OIG El Paso notified OPR El Paso of the death of the former ICE detainee.

On June 5, 2019, Senior Special Agent (b)(6); (b)(7)(C), OPR El Paso, and Special Agent (b)(6); (b)(7)(C) OIG El Paso, interviewed DO (b)(6);, ERO El Paso, at the Otero County Processing Center, in Chaparral, New Mexico.

DO (b)(6); stated that he was responsible for (b)(6); (b)(7)(C); (b)(3):Unspecified Statute
(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute        DO (b)(6) stated he never met Medina-Leon (b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

DO (b)(6) explained, although Medina was served in person by video conference, local policy

| Name, Title, Signature, and Date: (b)(6); (b)(7)(C) Special Agent  7·8·2019 | Reviewing Official Name, Title, Signature, and Date: for (b)(6); (b)(7)(C)  7-8-19  Acting Special Agent in Charge |
|---|---|

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and is disseminated only on a need to know basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-09                Page 1 of 2                Item #:

# MEMORANDUM OF ACTIVITY

required that Medina-Leon (b)(6); (b)(7)(C); (b)(3):Unspecified Statute before it was filed with the ICE Executive Office of Immigration Review. DO (b)(6); stated that after Medina-Leon's (b)(6); (b)(7)(C); (b)(3):Unspecified Statute (b)(6); (b)(7)(C); USCIS sent Medina-Leon's file to ERO El Paso for processing.

DO (b)(6) advised he was not certain when ERO El Paso received the file after USCIS sent it. DO (b)(6) explained large volumes of cases are adjudicated by USCIS and ERO El Paso processes files as soon as possible after they are received. DO (b)(6) sated that based on Medina-Leon's (b)(6); (b)(7)(C); (b)(3):Unspecified Statute Medina-Leon would likely have been processed for a parole which would allow her to be released from ICE custody while she waited for a hearing before an immigration judge.

DO (b)(6) stated that on May 28, 2019, Supervisory Detention and Deportation Officer (SDDO) (b)(6); ERO El Paso, called him and instructed him to prepare Medina-Leon's Notice to Appear (NTA) paperwork to be served. DO (b)(6) advised that SDDO (b)(6); told him that DO (b)(6); was preparing parole paperwork to release Medina-Leon from ICE custody.

DO (b)(6) stated that sometime during the afternoon of May 28, 2019, SDDO (b)(6); instructed him to go with DO (b)(6); (b)(7)(C) ERO El Paso, to Del Sol Medical Center and serve Medina-Leon with NTA and parole documents.

DO (b)(6) advised that on May 28, 2019, at approximately 5:30 p.m., he and DO (b)(6); served Medina-Leon with NTA and parole paperwork at Del Sol Medical Center, in El Paso, Texas. DO (b)(6); stated that Medina-Leon looked through the documents and signed them in the appropriate locations acknowledging service. DO (b)(6) described Medina-Leon as alert and responsive at the time he and DO (b)(6); served the paperwork.

SSA (b)(6); examined forms contained in MEDINA-Leon's file and observed that the file contained (b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute SSA (b)(6); observed that the file contained a Form I-94, Arrival/Departure record. The Form I-94 was stamped indicating Medina-Leon was issued a parole on May 28, 2019 for humanitarian purposes and the parole was valid until May 28, 2020."

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.



**OFFICE OF INSPECTOR GENERAL**

Department of Homeland Security

## MEMORANDUM OF ACTIVITY

**Type of Activity:** Personal Contact: Interview of (b)(6);

| *Case Number:* I19-ICE ERO-ELP-16066 | *Case Title:* Death of Jonathan Alberto Medina-Leon, Non-Employee, ICE, El Paso, TX |
|---|---|

On June 6, 2019, Special Agents (b)(6); (b)(7)(C), Department of Homeland Security (DHS), Office of Inspector General (OIG), El Paso, TX, and (b)(6); (b)(7)(C) Immigration and Customs Enforcement (ICE), Office of Professional Responsibility (OPR), El Paso, TX, interviewed (b)(6); Supervisory Detention and Deportation Officer (SDDO), ICE, Enforcement and Removal Operations (ERO), Otero, NM. The interview was in regards to an allegation involving the circumstances surrounding the death of Jonathan Alberto Medina-Leon, Non-DHS Employee, El Paso, TX, prior to her release from the OCPC. (b)(6); agreed to a voluntary interview regarding the aforementioned allegation.

The following is from a Report of Investigation (ROI), provided by (b)(6); which documented the interview of (b)(6);:

"On June 2, 2019, ERO El Paso notified OIG El Paso of the death of Jonathan Medina-Leon, a 25-year-old transgender female, at Del Sol Medical Center (DSMC) five days after being released from ICE custody. On June 2, 2019, OIG El Paso notified OPR El Paso of the death of the former ICE detainee.

On June 6, 2019, Senior Special Agent (b)(6); (b)(7)(C), OPR El Paso, and Special Agent (b)(6); (b)(7)(C) OIG El Paso, interviewed SDDO (b)(6) ERO El Paso, at the Otero County Processing Center (OCPC), in Chaparral, New Mexico. The following paragraphs contain a summary of statements made by SDDO (b)(6); during the interview.

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

(b)(6); (b)(7)(C); (b)(3):Unspecified Statute SDDO (b)(6); stated that once the documents were received by ERO El Paso, the case would be referred to a docket officer who would personally serve Medina-Leon with the NTA, then file the document with the Executive Office of Immigration Review (EIOR). SDDO (b)(6); stated the EIOR requires an NTA be served in person and does not accept documents served telephonically.

| Name, Title, Signature, and Date: (b)(6); (b)(7)(C) 8·12·19 (b)(6); Special Agent | Reviewing Official Name, Title, Signature, and Date: for (b)(6); (b)(7)(C) 8/12/19 (b)(6); Acting Special Agent in Charge |
|---|---|

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and is disseminated only on a need-to-know basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-09   Page 1 of 2   Item #:

**To:** [(b)(6); (b)(7)(C)]@oig.dhs.gov]
**From:** (b)(6); (b)(7)(C) (b)(6); (b)(7)(C) (b)(6):
**Sent:** Tue 7/14/2020 11:52:51 AM (UTC-04:00)
**Subject:** FW: Enhanced Reporting - I19-ICE ERO-ELP-16066, Death of Jonathan Alberto Medina-Leon/Non-Employee/ICE ERO/El Paso, TX

FYI

(b)(6); (b)(7)(C)

Assistant Special Agent in Charge

DHS Office of Inspector General, Investigations

El Paso Field Office

(b)(6); (b)(7)(C)

**From:** EDS Notifications <(b)(7)(E)@oig.dhs.gov>
**Sent:** Tuesday, July 14, 2020 7:20 AM
**To:** (b)(6); (b)(7)(C)@oig.dhs.gov; (b)(6); (b)(7)(C)@oig.dhs.gov>; (b)(6); (b)(7)(C)@oig.dhs.gov>; (b)(6); (b)(7)(C)@oig.dhs.gov>(b)(6); (b)(7)(C)@OIG.DHS.GOV>(b)(6); (b)(6);@oig.dhs.gov>(b)(6);@oig.dhs.gov>(b)(6); (b)(7)(C)@oig.dhs.gov>; (b)(6);@oig.dhs.gov>(b)(6); (b)(7)(C)@oig.dhs.gov;(b)(6); (b)(7)(C)@oig.dhs.gov>
**Subject:** Enhanced Reporting - I19-ICE ERO-ELP-16066, Death of Jonathan Alberto Medina-Leon/Non-Employee/ICE ERO/El Paso, TX

7/14/2020

The case in subject line is no longer marked for enhanced reporting.

Narrative:

On June 3, 2019, the Department of Homeland Security (DHS), Office of Inspector General (OIG), El Paso, TX, became aware of the death of a 25 year old transgender female at an El Paso local hospital five days after being released from Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) custody. It was reported by ICE ERO that on April 11, 2019, Jonathan Alberto Medina-Leon (b)(6); (b)(7)(C) applied for admission into the United States at the Paso Del Norte Port of Entry in El Paso, TX, (b)(6); (b)(7)(C); (b)(3):Unspecified On April 14, 2019, ICE ERO, El Paso, TX, took custody of Medina at placed her at the Otero County Processing Center (OCPC) located in Chaparral, NM. According to ICE ERO, on May 28, 2019, the OCPC conducted an (b)(6); (b)(7)(C) for Medina, at her request, (b)(6); (b)(7)(C) The OCPC referred Medina to a local hospital for further evaluation and subsequently served Medina with a Notice to Appear document and released her from ICE ERO custody on parole prior to her release. On June 2, 2019, ICE ERO Domestic Operations informed ICE ERO El Paso of a Facebook post reporting the death of a transgender female allegedly in ICE custody. ICE ERO El Paso later determined that the Facebook post was referring to Medina. On June 3, 2019, ICE

10

REPORT OF INVESTIGATIONS

Gulema was booked into the ECDC on July 2, 2011. Gulema's health conditions at booking stated "Detainee claims good health." The records indicated that Gulema was released from ICE ERO custody on an order of supervision (OSUP) on November 24, 2015. Gulema was released to the RRMC. The book out comment showed "Subject was released on OSUP per HQ RIO and NOL FOD. Subject does not have any reporting requirements."

A review of the custody actions and decisions in the detention module contained comments from April 2007 through November 2015. It was noted in the comments section that Gulema was in the Post Order Custody Report (POCR) process and was served multiple ICE Forms I-229s (Warning for Failure to Depart) and Notices of Failure to Comply (FTC).

Based on a review of the case summary in the removal module, it appeared that several attempts to obtain travel documents were unsuccessful, contributing to Gulema's FTC status. (b)(6); (b)(7)(C); (b)(6); (b)(7)(C); (b)(3):Unspecified Statute

There were multiple comments in the removal module from May 2007 through November 25, 2015. The comments indicated that Gulema was ordered removed and refused to sign the I-229 forms placing him in an FTC status. On November 25, 2008, it was noted in the comments section that Gulema stated he was not going back to Ethiopia. There was another comment that on July 8, 2009, that the Ethiopian consulate refused to issue travel documents based on pending litigation. Gulema remained in FTC status and the ICE ERO Headquarters Travel Document Unit (HQTDU) continued to attempt to obtain travel documents.

On July 23, 2009, Gulema refused to speak with the Ethiopian consulate for a telephonic interview.

Another notation on June 4, 2010, indicated that the consulate needed identification documents for Gulema in order to issue travel documents without a telephone interview. On June 22, 2010, the first notation regarding medical complaints was entered.

There were notations on July 9 through July 20, 2010, regarding Gulema's prosecution for failure to comply. Gulema was indicted on one count of Title 8 U.S. Code (USC) § 1253 Failure to Comply and was booked by the United States Marshals Service. The case was dismissed on May 9, 2011. On June 30, 2011, Gulema signed the I-229, but would only comply for any country except Ethiopia and would not complete the Ethiopian passport application, which is required for an HQTDU travel document package. There were several additional comments regarding dealings with Gulema and his failure to comply. On March 7, 2013, ICE ERO presented a case to the United States Attorney's Office (USAO) for prosecution under 8 USC § 1253. The USAO declined the case for prosecution. Gulema continued to decline to cooperate, declined to speak with the Ethiopian Embassy, and continued to remain in an FTC status.

Gulema remained uncooperative and on February 17, 2015 it was noted that Gulema was taken to the emergency room where he suffered from cardiopulmonary arrest and was revived by

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and will be disseminated only on a "Need to Know" basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

## MEMORANDUM OF ACTIVITY

Gulema as a having any aggravated felony convictions. The records did show a total of ten convictions. The records indicated that based on the charges, Gulema did have at least one conviction of a crime involving moral turpitude.

Gulema was initially detained as a deportable alien into a federal agency on July 20, 2010. Gulema was booked into the ECDC on July 2, 2011. The records indicated that Gulema was released from ICE ERO custody on an order of supervision (OSUP) on November 24, 2015. Gulema was released to the RRMC. There were no specific comments when Gulema was booked into ECDC other than the health condition observed on July 2, 2011, which stated "Detainee claims Good Health." The book out comment showed "Subject was released on OSUP per HQ RIO and NOL FOD. Subject does not have any reporting requirements."

A review of the custody actions and decisions in the detention module contained comments from April 2007 through November 2015. It was noted in the comments section that Gulema was in the Post Order Custody Report (POCR) process and was served multiple ICE Forms I-229s (Warning for Failure to Depart) and Notices of Failure to Comply (FTC).

Based on a review of the case summary in the removal module, it appeared that several attempts to obtain travel documents were unsuccessful. This would have contributed to Gulema's FTC status. (b)(6); (b)(7)(C); (b)(3):Unspecified Statute
(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

There were multiple comments in the removal module from May 2007 through November 25, 2015. The comments indicated that Gulema was ordered removed and refused to sign the I-229 forms placing him in an FTC status. On November 25, 2008, it was noted in the comments section that Gulema stated he was not going back to Ethiopia. There was another comment that on July 8, 2009, that the Ethiopian consulate refused to issue travel documents based on pending litigation. Gulema remained in FTC status and the ICE ERO Headquarters Travel Document Unit (HQTDU) continued to attempt to obtain travel documents.

On July 23, 2009, Gulema refused to speak with Ethiopian consulate for telephone interview. Another notation on June 4, 2010, indicated that the consulate needed identification documents for Gulema in order to issue travel documents without a telephone interview. On June 22, 2010, the first notation regarding medical complaints was entered.

There were notations on July 9-July 20, 2010, regarding prosecution for failure to comply. Gulema was indicted on one count of 8 United States code 1253 (Failure to Comply) and was booked by the United States Marshals Service. The case was dismissed on May 9, 2011. On June 30, 2011, Gulema signed the I-229, but would only comply for any country except Ethiopia and would not complete the Ethiopian passport application, which is required for an HQTDU travel document package. There were several additional comment regarding dealings with Gulema and his failure to comply.

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.



## OFFICE OF INSPECTOR GENERAL
Department of Homeland Security

## MEMORANDUM OF ACTIVITY

**Type of Activity:** Records Review: Person Centric Query System

| Case Number: I16-ICE-ATL-17063 | Case Title: Etowah County Detention Center |

On Tuesday, November 1, 2016, (b)(6);, Special Agent, Department of Homeland Security (DHS), Office of Inspector General (OIG), Atlanta Field Office, completed a review of records contained in the Person Centric Query System (PCQS) which is maintained by U.S. Citizenship and Immigration Services (CIS). The records were in regards to a DHS OIG investigation into detainee care and operating policy and procedure at the Etowah County Detention Center (ECDC), Gadsden, AL. This investigation was initiated by a Congressional request. According to the request, Teka Gulema spent over eight years in the physical custody of U.S. Immigration and Customs Enforcement (ICE) with several of those years at ECDC. On February 7, 2015, Gulema was transported to an emergency room at the Riverview Regional Medical Center (RRMC), Gadsden, AL. Gulema remained hospitalized at RRMC until his death on January 18, 2016. The request also called for a review of Gulema's ICE detention records and medical records at ECDC.

The records reviewed here are not specifically related to Gulema's detention; however, they were related to his dealings with immigration and the review was to determine if any information contained in these records that could provide any investigative information.

The records review is summarized below:

The PCQS records showed that Gulema was born in Ethiopia (Alien Number (b)(6);     ). The records in PCQS were queried using this alien number. The information indicated that Gulema had several applications to obtain benefits from CIS and legacy Immigration and Naturalization Services. These benefits included applications for employment authorization, permanent residence status, application to replace permanent residence card. The reason for the replacements cards were listed as change of data. The records indicated that Gulema had been a legal permanent residence (CIS Form I-551 Permanent Residence Card) since October 1, 1989
(b)(6); (b)(7)(C); (b)(3):Unspecified Statute

The records showed where Gulema's alien file (A-File) was listed as a lost file. The date of the last action was August 8, 2012, and the last action is listed as lost. The responsible party and section was listed as Etowah (Detained File Room), ICE, Deportation. The records also had information on the T-File (Temporary A-File) and where the file was requested for DHS OIG in late August 2016.

| Name, Title, Signature, and Date: | Reviewing Official Name, Title, Signature, and Date: |
|---|---|
| (b)(6); (b)(7)(C)  11/01/2016  Special Agent | (b)(6); (b)(7)(C)   (b)(6)  Lead Criminal Investigator |

**IMPORTANT NOTICE**
This report is intended solely for the official use of the Department of Homeland Security, or any entity receiving a copy directly from the Office of Inspector General, and is disseminated only on a need to know basis. This report remains the property of the Office of Inspector General, and no secondary distribution may be made, in whole or in part, outside the Department of Homeland Security, without prior authorization by the Office of Inspector General. Public availability of the report will be determined by the Office of Inspector General under 5 U.S.C. 552. Unauthorized disclosure of this report may result in criminal, civil, or administrative penalties.

INV FORM-09                          Page 1 of 2                          Item #: 8