LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EVA BITRAN (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, *Plaintiff*, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> *Defendants*. | Case No. 2:22-CV-04760-SHK <br><br> **PLAINTIFF'S OPPOSITION TO DHS-OIG'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, TO ALTER, AMEND, OR OBTAIN RELIEF FROM THE COURT'S ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT [ECF 87]** <br><br> Hearing Date:    September 11, 2024 <br> Hearing Time:    10:00 am <br><br> Honorable Shashi H. Kewalramani <br> United States Magistrate Judge |

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................ 1

II.   FACTUAL AND PROCEDURAL HISTORY ................................. 3

III.  LEGAL STANDARD ...................................................................... 4

IV.   ARGUMENT ................................................................................... 6

    A.   The Government Provides No Valid Basis for the Extraordinary Relief of Reconsidering the Court's Well-Reasoned Order. ................ 6

    B.   DHS-OIG Fails to Raise Any New Third-Party Interest that Could Justify Reconsideration. ................................................ 8

    C.   DHS-OIG Presents No Legitimate Basis for In Camera Review of the Redacted Documents or a DHS Regulation. ........................... 11

        1.   DHS-OIG Has Failed to Comply with the Ninth Circuit's Requirement that It Set out as Much Detail as Possible in the Public Record Before Requesting In Camera Review in FOIA Cases. ........................................... 12

        2.   The Court Should Not Grant In Camera Review on the Hypothetical Basis that the Redacted Information May Not Serve the Public Interest. .................................... 15

        3.   The Court Should Not Permit DHS-OIG to Submit an Unspecified Regulation In Camera As the Basis for Reconsideration. ...................................................... 18

V.    CONCLUSION ............................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta-Huerta v. Estelle*,
  7 F.3d 139 (9th Cir. 1992) ..................................................................... 8

*America Unites for Kids v. Lyon*,
  No. CV 15-2124 PA, 2015 WL 5822578 (C.D. Cal. Sept. 30, 2015) .................. 4

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
  836 F.3d 987 (9th Cir. 2016) ................................................................ 11

*Aug. v. Fed. Bureau of Investigation*,
  328 F.3d 697 (D.C. Cir. 2003) ......................................................... 5, 10

*Billington v. U.S. Dep't of Just.*,
  301 F. Supp. 2d at 20 ...................................................................... 5, 10

*Columbia Riverkeeper v. Fed. Energy Regul. Comm'n*,
  650 F. Supp. 2d 1121 (D. Or. 2009) ....................................................... 17

*Computer Professionals for Social Resp. v. U.S. Secret Serv.*,
  72 F.3d 897 (D.C. Cir. 1996), *as amended* (Feb. 20, 1996) ..................... 5, 10

*Doyle v. FBI*,
  722 F.2d 554 (9th Cir.1983) ................................................................ 13

*Emeryville v. Robinson*,
  621 F.3d 1251 (9th Cir. 2010) .............................................................. 8

*Est. of Saunders v. Comm'r of Internal Revenue*,
  745 F.3d 953 (9th Cir. 2014) ............................................................... 8

*Founding Church of Scientology v. Bell*,
  603 F.2d 945 (D.C. Cir. 1979) ............................................................. 18

*Hamdan v. U.S. Dep't of Just.*,
  797 F.3d 759 (9th Cir. 2015) .............................................................. 13

*Hunt v. F.B.I.*,
   972 F.2d 286 (9th Cir. 1992) .............................................................. 15

*Jurewicz v. U.S. Dep't of Agric.*,
   741 F.3d 1326 (D.C. Cir. 2014) ......................................................... 16

*Kona Enters., Inc. v. Est. of Bishop*,
   229 F.3d 877 (9th Cir. 2000) ............................................................ 6, 7

*Lewis v. Dep't of Treasury*,
   No. 8:20-cv-00494-TDC, 2022 WL 20212255 (D. Md. Oct. 24,
   2022) ..................................................................................................... 9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ............................................................... 6

*Muchnick v. Dep't of Homeland Sec.*,
   225 F. Supp. 3d 1069 (N.D. Cal. 2016) ............................................... 8

*Pick v. Motorola Sols., Inc.*,
   No. 22-CV-011JWHPVCX, 2022 WL 409681 (C.D. Cal. Feb. 10,
   2022) ................................................................................................. 9, 10

*Powell v. Dep't of Justice*,
   584 F. Supp. 1508 (N.D. Cal. 1984) ................................................... 18

*Pub. Just. Found. v. Farm Serv. Agency*,
   538 F. Supp. 3d 934 (N.D. Cal. 2021) .................................................. 7

*Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*,
   No. EDCV182185JGBSHKX, 2020 WL 5792475 (C.D. Cal. Aug.
   27, 2020) ............................................................................................... 5

*Schanen v. U.S. Dep't of Justice*,
   789 F.2d 348 (9th Cir. 1985) ......................................................... 5, 10

*Tawfilis v. Allergan, Inc.*,
   No. SACV 15-307-JLS, 2015 WL 9982762 (C.D. Cal. Dec. 14,
   2015) ..................................................................................................... 5

*United States v. Alpine Land & Reservoir Co.*,
   984 F.2d 1047 (9th Cir. 1993) ............................................................. 5

*Vaughn v Rosen*,
484 F.2d 820 (D.C.Cir.1973).......................................................................*passim*

*Wiener v. F.B.I.*,
943 F.2d 972 (9th Cir. 1991)........................................................................*passim*

*Yonemoto v. Dep't of Veterans Affs.*,
686 F.3d 681 (9th Cir. 2012).......................................................................... 11

**Statutes**

5 U.S.C. § 552(a)(4)(B) ...................................................................................... 19

5 U.S.C. § 552(b) ................................................................................................ 18

5 U.S.C. § 552(b)(3) ........................................................................................... 18

**Other Authorities – Treatises**

Steel on Immigration Law § 14:6 (2023 ed.) .......................................................... 16

**Other Authorities – Court Rules**

Federal Rule of Civil Procedure Rule 59(e) ....................................................... 4, 5

Federal Rule of Civil Procedure 60(b) .................................................................. 5

Federal Rule of Civil Procedure Rule 60(b)(1) ..................................................... 5

Federal Rule of Civil Procedure Rule 60(b)(6) ..................................................... 5

Central District of California Local Rule 7-18 ................................................... 5, 6

**Other Authorities – Internet Sources**

Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick
Woman, Avoiding Responsibility for Her Death. She Isn't Alone*,
LA Times, May 13, 2022, https://www.latimes.com/world-
nation/story/2022-05-13/ice-immigrationdetention-deaths-sick-
detainees .......................................................................................................... 7

Anna-Catherine Brigada, *"Preventable Tragedy": ICE Detention
Deaths Could Have Been Avoided, Report Finds*, Houston Landing,
June 25, 2024, https://houstonlanding.org/preventable-tragedy-ice-
detention-deaths-could-have-been-avoided-report-finds/; ................................. 17

Dan Glaun, *How ICE Data Undercounts COVID-19 Victims*, PBS
Frontline, Aug. 11, 2020,
https://www.pbs.org/wgbh/frontline/article/how-ice-data-
undercountscovid-19-victims/; ..................................................................................7

Daniella Silva, *ICE Detainee Deaths Could Have Been Prevented,
ACLU Report Says*, NBC News, Jun. 25, 2024,
https://www.nbcnews.com/news/us-news/ice-detainee-deaths-
prevented-aclu-report-says-rcna156815 ........................................................... 17

Isabela Dias, *ICE Detention Could Have Been Prevented*, Mother
Jones, Jun. 25, 2024,
https://www.motherjones.com/politics/2024/06/most-immigrant-
deaths-in-ice-detention-could-have-been-prevented/;........................................ 17

Jimmy Jenkins, *Most Deaths of People in ICE Custody Were
Preventable, New Report Says*, Arizona Republic, Jun. 25, 2024,
https://www.azcentral.com/story/news/politics/immigration/2024/0
6/25/most-deaths-in-ice-custody-were-preventable-new-report-
says/74201835007/ ............................................................................................. 17

Maurizio Guerrero, *Nearly All Deaths in ICE Custody Over 5 Years
Were Preventable, New Report Finds,* Prism, Jun. 25, 2024,
https://prismreports.org/2024/06/25/nearly-all-deaths-in-ice-
detention-over-5-years-were-preventable/ ........................................................ 17

Nina Bernstein, *Officials Hid Truth of Immigrant Deaths in Jail*, N.Y.
Times, Jan. 9, 2010,
https://www.nytimes.com/2010/01/10/us/10detain.html .....................................7

Senator Dick Durbin, *Durbin Launches Inquiry Into Medical And
Mental Health Care In ICE Detention Centers* (Jul. 16, 2024),
https://www.durbin.senate.gov/newsroom/press-releases/durbin-
launches-inquiry-into-medical-and-mental-health-care-in-ice-
detention-centers.................................................................................................. 18

## I.  INTRODUCTION

This Freedom of Information Act ("FOIA") case addresses unreported deaths of immigrants detained by Immigration and Customs Enforcement ("ICE") and released from custody on their deathbeds, a practice that has allowed the government to avoid full accountability for deaths of detained people. After full summary judgment briefing and oral argument, the Court ordered the Department of Homeland Security's Office of Inspector General ("DHS-OIG") to lift certain redactions challenged by the Plaintiff on 13 pages of its production. ECF No. 87 at 36. Throughout the case, DHS-OIG has only described the information subject to these challenged redactions as "personal privacy immigration information" regarding Johana Medina Leon and Teka Gulema, both of whom died shortly after their release from immigration detention, and have provided no other details regarding the content and nature of the redacted information.

After the court's order, Defendant DHS-OIG filed an untimely ex parte application asking the Court to reverse this ruling.  ECF No. 88. The Court rejected this attempt as procedurally improper and ordered DHS-OIG to brief the issue through a noticed motion for reconsideration. ECF No. 93.

DHS-OIG has now filed a motion, arguing that the court should reverse its order and instead, review the documents *in camera*, along with an unidentified DHS regulation to be withheld from the Plaintiff. DHS-OIG argues that reconsideration is appropriate here because "the privacy rights of a third party are at issue." ECF No. 95 at 15. While courts should carefully guard against overlooked third-party privacy interests, in the FOIA context they cannot do so in a vacuum, and must do so in the context of balancing those interests with the public interest in disclosure, and upon providing Plaintiff "as much information as possible" to articulate that interest and

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S MOTION FOR RECONSIDERATION

1

contextualize the stated privacy concerns, so the court can strike the right balance. *Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991).

Here, DHS-OIG raises no supposedly overlooked privacy interest in its motion. The Court already considered the third-party privacy concerns that these redactions raise and weighed them against the public interest in disclosure. ECF No. 87 at 22-26. DHS-OIG's motion provides no additional specifics or arguments related to the privacy interest the Court already considered, and it never mentions any new privacy interest that the Court did not already consider. Nor does it argue that the Court should have granted the privacy interests more weight than it did. Instead, DHS-OIG's sole argument on the Exemption 6 test speaks only to the public interest, stating vaguely that *in camera* review "would safeguard a violation of th[e third party] privacy interest if the Court were to ultimately determine upon review of the pages that the redacted information does not, in fact, serve the public interest." ECF No. 95 at 17. This argument falls exceedingly short. DHS-OIG provides no valid reasons why its request meets the high bar for reconsideration. DHS-OIG also fails to follow the Ninth Circuit's requirement that it set out as much detail as possible in the public record before requesting *in camera* review, and it fails on the merits of its argument that *in camera* review would alter the Court's decision.

The Court has recognized important concerns for the privacy interests of third parties, which it properly weighed based on the record DHS-OIG provided in its motion for summary judgment. Plaintiff shares a deep concern for the dignity of the deceased third party immigrants who suffered ICE detention, and the privacy of their families. It is for this reason that Plaintiff elected not to challenge many of DHS-OIG's redactions related to third-party privacy. But on the current record, the only procedurally proper course of action—as with DHS-OIG's ex parte application—is for the Court to deny DHS-OIG's motion. DHS-OIG can try once again to submit a

proper motion that spells out persuasive arguments justifying the withholdings based on concrete private interests and complies with Ninth Circuit requirements of public disclosure.

## II.      FACTUAL AND PROCEDURAL HISTORY

At issue in this motion are DHS-OIG's redactions on 13 pages of documents related to the DHS-OIG's investigation of the deaths of Johana Medina Leon and Teka Gulema, both of whom died in the hospital shortly after their release from ICE custody. Plaintiff attaches as Exhibit A to this brief a compilation of these specific 13 pages, with the redactions at issue highlighted, and Bates numbers indicating the date and page of production.[1] Defendants provided the following description of the redacted information at issue under Entries 3 and 4 of their *Vaughn* Index. ECF No. 79-3 at 8-11. These brief descriptions represent the *only* information provided to Plaintiff or the public regarding the content of the redacted documents at issue:

> "The information specifically withheld from these pages includes personal privacy immigration information relating to the subject of the e-mail, case summary report, and ROI – [Johana] Medina Leon." ECF No. 79-3 at 8.

> "These pages include an e-mail, a case summary report, and those from DHS OIG's Report of Investigation (ROI) all pertaining to the death of Teka Gulema. The information specifically withheld from these pages includes personal privacy information relating to the subject of the ROI, Teka Gukema." ECF No. 79-3 at 11.

DHS-OIG has provided no further description of the redacted information withheld. Notably, DHS-OIG originally claimed that these redactions were subject to Exemption 3 on the basis of an "unspecified statute" as well as Exemptions 6, 7(c) on the documents themselves. *See* Exhibit A. DHS-OIG, however, withdrew Exemption 3 as a reason for withholding, stating in its *Vaughn* index that

---

[1] In their production to Plaintiff, Defendants did not mark their documents with Bates Numbers. However, Plaintiff has marked the month of production and PDF page number of each corresponding document for convenience of reference. *See* ECF No. 66-3 at 8 (Cho Decl.) (explaining additional markings).

"notwithstanding the markings made on the records that were previously produced, DHS OIG is no longer applying (b)(3) to the redactions made on the [pages in question]." ECF No. 79-3 at 2.

In its motion for summary judgment, Plaintiff challenged only a small subset of the many tens of thousands of redactions made by DHS-OIG in its overall production. Plaintiff first provided DHS-OIG with a select list of documents for which it requested additional information regarding withholdings in a *Vaughn* Index. ECF No. 66-10 at 4. Plaintiff based its decision not to challenge most of the redactions in DHS-OIG's production on several factors, including a desire not to disturb redactions that legitimately protect the private information of third parties. After Plaintiff received DHS-OIG's *Vaughn* index, Plaintiff further narrowed the set of challenged redactions, including several redactions that Plaintiff determined to be legitimately protected private information. For example, Plaintiff elected not to challenge redactions under Exemption 6 and 7(C) related to Mr. Vargas Arellano's medical information and related to the identities of detained people and DHS-OIG employees involved in an investigation of ICE's misconduct. *Compare* ECF No. 66-14 at 5-8 (Vaughn entries 1 and 2), 23-24 (*Vaughn* entry 16) *with* ECF No. 67 at 16-17 (electing not to challenge these withholdings).

## III.    LEGAL STANDARD

A motion for reconsideration under Federal Rule of Civil Procedure Rule 59(e) "is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." A*merica Unites for Kids v. Lyon*, No. CV 15-2124 PA, 2015 WL 5822578, at *3 (C.D. Cal. Sept. 30, 2015) (citation and quotation marks omitted). "Absent other, highly unusual, circumstances, reconsideration pursuant to Rule 59(e) is appropriate only where (1) the court is presented with newly discovered evidence; (2) the court committed clear error or the initial decision was

manifestly unjust; or (3) there is an intervening change in controlling law." *Riley's Am. Heritage Farms v. Claremont Unified Sch. Dist.*, No. EDCV182185JGBSHKX, 2020 WL 5792475, at *1 (C.D. Cal. Aug. 27, 2020) (internal quotation marks and citation omitted).

Federal Rule of Civil Procedure 60(b) allows a party to seek relief from an order for "(1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Importantly, the government does not indicate anywhere in its motion which provision of Rule 60(b) forms the basis of its request.[2] It has not provided any specific information as to what "mistake, inadvertence, surprise, or excusable neglect" would form the basis of this motion under Rule 60(b)(1). Rule 60(b)(6) is "used sparingly as an equitable remedy to prevent manifest injustice. The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)

In the Central District of California, courts interpret Local Rule 7-18 "to be coextensive with Rules 59(e) and 60(b)." *Tawfilis v. Allergan, Inc.*, No. SACV 15-307-JLS, 2015 WL 9982762, at *1 (C.D. Cal. Dec. 14, 2015). Local Rule 7-18 states that a motion for reconsideration of the decision on any motion may be made only on the grounds of: "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or

---

[2] The cases to which DHS-OIG cites in its brief regarding Rule 60(b) appear to rely on Rule 60(b)(1) and (b)(6). *Schanen v. U.S. Dep't of Justice*, 789 F.2d 348, 349 (9th Cir. 1985), *Billington v. U.S. Dep't of* Justice, 301 F. Supp. 2d 15, 18 (2004), and *Computer Professionals for Social Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 901-02 (D.C. Cir. 1996), *as amended* (Feb. 20, 1996) addressed Rule 60(b)(1) and (b)(6) motions. *Aug. v. Fed. Bureau of Investigation*, 328 F.3d 697, 698 (D.C. Cir. 2003), does not concern a Rule 60(b) motion, but rather, a motion to stay proceedings.

(b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." L.R. 7-18.[3]

Importantly, motions for reconsideration "may ***not*** be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880-81 (9th Cir. 2009) (rejecting a motion to reconsider a grant of preliminary injunction because the allegedly new evidence could have been introduced earlier in the litigation).

## IV.    ARGUMENT

### A. The Government Provides No Valid Basis for the Extraordinary Relief of Reconsidering the Court's Well-Reasoned Order.

Although the government requests reconsideration or relief from the Court's well-reasoned order, it does not provide any valid bases for doing so. Instead, the government seeks to present new arguments for withholding of the documents that it could reasonably have made, but failed to raise, and waived, earlier in the litigation. This is not a valid basis for reconsideration. *Kona Enters*, 229 F.3d at 890. In addition, the government has failed to establish any clear error that would form a valid basis for reconsideration.

First, DHS-OIG argues that reconsideration is "appropriate to the extent it is necessary to present evidence 'previously unavailable' to the Court, i.e., unredacted versions of the relevant documents for this Court's *in camera* review." ECF No. 95

---

[3] With its noticed motion for reconsideration, DHS-OIG now includes a declaration providing its contention that it has good cause to file after the Local Rule 7-18 deadline. Plaintiff will not dispute this good cause.

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S MOTION FOR RECONSIDERATION

at 17.[4] However, DHS-OIG could have requested—and chose not to request—*in camera* review of the redactions at issue in its initial briefing. DHS-OIG's claim that it requested *in camera* review of the documents at issue in the summary judgment briefing, ECF No. 95 at 9 (citing ECF No. 81 at 13 n.2), is belied by the record. *Compare* ECF No. 79 at 37-38 (not seeking *in camera* review); ECF No. 81 at 13-14 (same) *with id.* n.2 (suggesting, but not seeking, *in camera* review of a different set of documents, "[i]f the Court wishes").

Second, DHS-OIG argues the court manifestly erred when it found a public interest in disclosure of the redacted information because "there is no factual basis in the record for this Court to make such a finding." ECF No. 95 at 17. This argument fails. Plaintiff's briefing cites multiple news articles and a court opinion calling into question ICE's practice of releasing people close to death and the potential for this practice to hide information from the public.[5] This strong evidence of a public interest was a part of the record the Court considered when it reached its summary judgment ruling.

Further, regardless of this evidence, the Court correctly based its finding of a public interest on the nature of the requested information itself. Courts regularly find a public interest on this basis, without requiring additional factual evidence that the public is interested. *E.g.*, *Pub. Just. Found. v. Farm Serv. Agency*, 538 F. Supp. 3d

---

[4] DHS-OIG's motion uses quotation marks around "'previously unavailable,'" ECF No. 95, but it is unclear to Plaintiff what DHS-OIG is quoting.

[5] The Plaintiff's brief cites to several articles, including Nina Bernstein, *Officials Hid Truth of Immigrant Deaths in Jail*, N.Y. Times, Jan. 9, 2010, https://www.nytimes.com/2010/01/10/us/10detain.html; Dan Glaun, *How ICE Data Undercounts COVID-19 Victims*, PBS Frontline, Aug. 11, 2020, https://www.pbs.org/wgbh/frontline/article/how-ice-data-undercountscovid-19-victims/; Andrea Castillo and Jie Jenny Zou, *ICE Rushed to Release a Sick Woman, Avoiding Responsibility for Her Death. She Isn't Alone*, LA Times, May 13, 2022, https://www.latimes.com/world-nation/story/2022-05-13/ice-immigrationdetention-deaths-sick-detainees). ECF No. 67 at 13 n.4 & n.6, 26 n.23. It also cites a court order. *Id.* at 29 (citing Order at 1, Hernandez Roman v. Wolf, No. CV-20-00768-TJH, ECF No. 1031 (C.D. Cal. Mar. 20, 2021)).

934, 945 (N.D. Cal. 2021) (finding that the "public interest in administration of FSA programs that disburse taxpayer dollars" outweighed the privacy interest at issue without citing record evidence supporting that identified public interest); *Muchnick v. Dep't of Homeland Sec.*, 225 F. Supp. 3d 1069, 1077 (N.D. Cal. 2016) (identifying that the public had a strong interest in understanding how and why the government permitted a swim coach with a substantial history of sexual abuse to enter and stay in the United States, without citing additional evidence in support of that supposed public interest).

Third, DHS-OIG seeks to "provide this Court [*in camera*] with a citation to [a] DHS immigration regulation that it has contended also requires this information be protected from disclosure. . . ." ECF No. 95 at 17 n.4. DHS-OIG referenced this unspecified regulation in a footnote in its opening brief but did not ask the Court to review the regulation *in camera*. ECF No. 79 at 35 n.4. By making this cryptic reference only in a footnote, DHS-OIG waived whatever argument it was attempting to make. *Est. of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953, 962 (9th Cir. 2014) ("Arguments raised only in footnotes . . . are generally deemed waived."); *Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (same); *Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992) (a contention raised only in a footnote in opening brief, without supporting argument and citation to relevant authorities, are deemed abandoned). Moreover, this reference also demonstrates that DHS-OIG could have sought in its initial briefing to submit the regulation *in camera*. It cannot now make this request for the first time in a request for reconsideration.

**B. DHS-OIG Fails to Raise Any New Third-Party Interest that Could Justify Reconsideration.**

DHS-OIG also argues that, even if it cannot meet the reconsideration standard, the Court should nonetheless reconsider its ruling to the extent it involves the privacy

interests of third parties. However, unlike the other cases cited in its brief, the government in this case provides no clearly articulated reason that the court's analysis of the privacy interests at stake have changed since the summary judgment briefing in this case. Instead, DHS-OIG only generally makes broad gestures to "third party privacy rights," which the court has already considered. ECF No. 95 at 16.

DHS-OIG attempts to analogize this case to *Lewis v. Dep't of Treasury* to justify rehearing. ECF No. 95 at 16 (citing *Lewis v. Dep't of Treasury*, No. 8:20-cv-00494-TDC, 2022 WL 20212255, at *1 (D. Md. Oct. 24, 2022)). Although the court order does not provide great detail as to the changed privacy considerations at play in that case, the government's brief in *Lewis* makes clear that the circumstances there sharply differed from those here. In *Lewis*, the pro se plaintiff made no arguments objecting to any of the government's claimed exemptions, and the court sua sponte found a public interest in disclosure of the requested records. *Lewis v. Dep't of Treasury*, No. 8:20-cv-00494-TDC, ECF No. 52-1 at 4 (attached as Exhibit B). As a result, the government had no opportunity in the initial briefing to address that public interest, and reconsideration was necessary to permit the government to make that argument for the first time. *Id.* In its motion for reconsideration, the government fully described the third-party privacy interest at stake and the specific information it asked the court to protect. Citing to the privacy interest of the third party individual in their employment records, the government explained that the files for reconsideration consisted of a disciplinary investigation file of another lower-level government employee, and that the file included "names, addresses, potential conduct violations, posts of duty, and internal reference numbers" related to the "third-party employee.," *Id.* at 5, 7. The requestor in the case did not dispute the characterization. *Id.* at 7.

The government similarly cites *Pick v. Motorola Sols., Inc.* ECF No. 95 at 16 (citing *Pick v. Motorola Sols., Inc.*, No. 22-CV-011JWHPVCX, 2022 WL 409681

(C.D. Cal. Feb. 10, 2022)). But in that case, the court merely noted that the reconsideration process would be available on "an appropriate motion," and it did not decide whether reconsideration was actually warranted. *Pick*, 2022 WL 409681, at *7. In this case, DHS-OIG had ample opportunity to raise the arguments it seeks again to present. Moreover, DHS-OIG fails to offer any clarifying description of the redacted information, or any coherent or articulated reason as to why the third-party privacy interest may be at risk.

DHS-OIG cites several opinions permitting the government to belatedly raise new FOIA exemptions or new bases for withholding when doing so would protect third-party privacy, ECF No. 95 at 18, but the critically important distinction is that, unlike here, the government introduced new, specific information about a privacy interest for the court to consider. *See Aug.*, 328 F.3d at 697 (noting that the new assertion of an exemption was supported by new "evidence that wholesale disclosure of the requested information would endanger" third parties involved in an investigation); *Schanen*, 798 F.2d at 349 (recognizing new exemptions after, "[f]or the first time, the government argued in explicit terms that release of the documents would endanger the lives of DEA agents and confidential informants"); *Billington v. U.S. Dep't of Just.*, 301 F. Supp. 2d at 20 (withholding a journalist's identity on reconsideration based on new evidence that "the journalist did not intend nor expect [the documents at issue] to become public" and feared retaliation based on a "personal experience"); *Computer Pros. for Soc. Resp.,* 72 F.3d at 903 (holding reconsideration was necessary when the government submitted "previously undisclosed evidence confirm[ing] that one source [whose identity the government sought to protect] had indeed provided information under an expectation of confidentiality").

Here, in contrast, DHS-OIG provides no new information or assertion involving the privacy interests at stake. Instead, it only argues that the Court erred in finding a ***public*** interest in disclosure. ECF No. 95 at 17 (arguing only that the Court should reverse its order if it "were to ultimately determine upon review of the pages that the redacted information does not, in fact, serve the public interest"). This is significant because the public interest must be *balanced* against the privacy interest, which the Court has already weighed. *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 693 (9th Cir. 2012) (citing 5 U.S.C. § 552(b)(7)(C)), overruled on unrelated grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016)). With no new information about the claimed privacy interest at stake, reconsideration of whether the court struck the right balance is not appropriate. The narrow exception drawn by these other courts permitting the government to raise third-party privacy interests based on new information on reconsideration does not apply here.

## C. DHS-OIG Presents No Legitimate Basis for *In Camera* Review of the Redacted Documents or a DHS Regulation.

Even if the Court determines that DHS-OIG has met the requirements for a motion for reconsideration, DHS-OIG fails to support its arguments for *in camera* review. DHS-OIG's request for *in camera* review has two parts. First, DHS-OIG asks for an opportunity to submit the pages at issue *in camera* on the hypothetical outcome that the Court may "ultimately determine upon review of the pages that the redacted information does not, in fact, serve the public interest." ECF No. 95 at 17. Second, DHS-OIG asks the Court to permit an *in camera* submission citing a regulation that DHS-OIG "has contended also requires this information be protected from disclosure (or at the very least, would be relevant to the Court's analysis of Exemption 6)." *Id.* at 17 n.4. Both arguments fail.

**1. DHS-OIG Has Failed to Comply with the Ninth Circuit's Requirement that It Set out as Much Detail as Possible in the Public Record Before Requesting *In Camera* Review in FOIA Cases.**

DHS-OIG falls well short of the requirement that it provide as much information in the public record as possible before seeking *in camera* review. DHS-OIG's initial motion for summary judgment did not request *in camera* review for these documents. *Compare* ECF No. 79 at 37-38 (not seeking *in camera* review); ECF No. 81 at 8-9 (same) *with id.* n.2 (seeking *in camera* review of a different set of documents). DHS-OIG raises this request for the first time on reconsideration, triggering the disclosure requirements that come with such a request.

In *Weiner v, F.B.I,*, a key Ninth Circuit opinion, a U.C. Irvine Professor sought records related to the FBI's investigation into John Lennon, a deceased member of the Beatles. *Wiener*, 943 F.2d 972. Wiener sought the information to "to bolster his thesis that the investigation of Mr. Lennon by the FBI in the late 1960s and early 1970s reflected the use of executive agency power to suppress political dissent." *Id*. After the FBI submitted public declarations explaining its justification for withholding the records "in general terms," the district court ordered the FBI to submit "*in camera* further justification for the withholdings," after which the court granted the FBI's motion for summary judgment. *Id*. Wiener appealed, contending that the public affidavits were inadequate for him to effectively advocate for the release of the documents.

The Ninth Circuit agreed, and in doing so set forth important prerequisites before district courts can conduct in camera review, focusing on whether the agency has submitted adequate public disclosure about the justification for the withholding to ensure informed advocacy and decision-making. Relying on the landmark FOIA case *Vaughn v Rosen*, 484 F.2d 820, 823–25 (D.C.Cir.1973), the Court explained that

"'lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system[ ],'" because "[t]he party requesting disclosure must rely upon his adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments." *Wiener* at 977. Moreover, "[i]t is simply 'unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case.'" *Id*.

To address these asymmetries unique to FOIA cases, *Wiener* imposed requirements on what must be included in agency explanations of withholdings, sometimes referred to as *Vaughn* indices, including that they "identify[] each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Id*. (citations omitted). Regarding the level of specificity of the "particularized explanation," Wiener held that the agency must "disclose[] as much information as possible without thwarting the [claimed] exemption's purpose."[6] *Id*. at 977, 979.

As such, *Wiener* made clear that "[i]n camera review of the withheld documents by the court is not an acceptable substitute for an adequate Vaughn index," and that "[i]n camera review may supplement an adequate Vaughn index, but may not replace it." *Id*. at 979; *see also Doyle v. FBI*, 722 F.2d 554, 556 (9th Cir.1983) ("Once the government has submitted as detailed public affidavits and testimony as possible, the district court may resort to '*in camera* review of the

---

[6] This rule is only relaxed in certain types of cases, including cases involving national security, which is not at issue here. *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 773 (9th Cir. 2015).

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S MOTION FOR RECONSIDERATION

13

documents themselves and/or *in camera* affidavits,'" and "recogni[sing] that in *some* instances, affidavits alone may suffice.") (quotations omitted).[7]

In its motion for reconsideration, OIG fails to establish that it "disclose[d] as much information as possible" about the immigration history documents to justify withholding them. *Wiener*, 943 F.2d at 979 (citation and quotation marks omitted). The entry in its Vaughn index merely describes the withholdings as "personal privacy immigration information" and "[p]ersonal privacy details pertaining to the subject's life and immigration history." ECF No. 79-3 at 8, 11. It does not provide any "particularized explanation of how disclosure of [this information] would damage the [privacy] interest protected by the claimed exemption." *Wiener*, 943 F.2d at 977. Rather, it provides boilerplate and nonsensical claims that the information would impact *deceased* individuals' interests in "being free from harassment, intimidation, legal consequences, embarrassment, physical harm, and derogatory inferences and suspicion." ECF No. 79-3 at 9, 11. OIG also claims the information "may also reignite undue public attention, embarrassment, harassment, and derogatory inferences and suspicion regarding the decedent which could potentially impact the decedent's family, kin, or related individuals in a negative manner." *Id*. at 9, 12. This "[c]ategorical description[] of redacted material coupled with categorical indication of anticipated consequences of disclosure" cannot be the basis for withholding, *Wiener*, 943 F.2d at 979 (citations and quotations omitted), and is also untethered from reality. The Court should thus additionally reject DHS-OIG's request that it review these documents *in camera* for failure to satisfy the *Weiner* requirement that

---

[7] The case law that DHS-OIG cites is in accord. *Ctr. for Biological Diversity v. Off. of the U.S. Trade Rep.* quotes *Weiner* for the proposition that "resort to *in camera* review is appropriate only after the government has submitted as detailed public affidavits and public testimony as possible." 450 F. App'x 605, 608 (9th Cir. 2011) (quoting *Weiner*, 943 F.2d at 979). The opinion goes on to hold that "*[i]n camera* review of the withheld documents by the court is not an acceptable substitute for an adequate *Vaughn* index" and to remand for the government to produce an adequate *Vaughn* index. *Id.* (quotation marks and citation omitted).

it set out as much information as possible in the public record before asking the Court to resort to *in camera* review.

> ### 2. The Court Should Not Grant *In Camera* Review on the Hypothetical Basis that the Redacted Information May Not Serve the Public Interest.

DHS-OIG argues that the Court should review the redacted information *in camera* and reconsider its order to release the information to the public on the hypothetical basis that this information may not serve the public interest. This argument is not a legitimate basis for *in camera* review. DHS-OIG does not request that the Court reconsider the level of private interest it found in the protection of the information or reevaluate its weighing of the private and public interests. Nor does DHS-OIG challenge the Court's recognition that Plaintiff cited an opinion in another case finding "ICE's practices concerning, which raises questions about potential wrongdoing by ICE." ECF No. 87 at 25 (citing ECF No. 66 at 31). The government thus does not contest that the public interest is heightened because "there is some evidence of wrongdoing on the part of the government official[s]." *Hunt v. F.B.I.*, 972 F.2d 286, 289–90 (9th Cir. 1992) (citation omitted). DHS-OIG's sole argument is that the Court may "ultimately determine upon review of the pages that the redacted information does not, in fact, serve the public interest." ECF No. 95 at 17.

DHS-OIG's argument that the Court should review redactions *in camera* on the hypothetical basis that release of the redacted information would not serve the public interest fails. Most importantly, DHS-OIG is wrong that the Court might not find a public interest in the disclosure of this information. No matter what specific type of immigration information is concealed behind the redactions, the Court's correctly found a public interest because ***all*** aspects of Ms. Medina-Leon's and Mr. Gulema's immigration histories are important to the public's understanding of the

circumstances of their detention and subsequent release. In opposing DHS-OIG's ex parte application, Plaintiff noted that the application was "sparse on the specifics of [DHS-OIG's] argument," but that "DHS-OIG appears to base its argument on the assumption that immigration information is of interest to the public only if ICE actually considered such information in its release decisions." ECF No. 90 at 9-10 (citing ECF No. 88 at 4). DHS-OIG's noticed motion for reconsideration is even more vague as to why DHS-OIG contends the Court should not find a public interest in its release. However, if DHS-OIG continues to contend that there is only a public interest in information ICE actually considered in its decision to release Mr. Gulema and Ms. Medina Leon from custody, and that an *in camera* review will show ICE did not consider the redacted information, then this contention misses the mark. The public interest lies in the factors that ICE **should** consider to release medically vulnerable people, making all immigration information about these two people whom ICE should have released highly relevant.[8] In fact, this immigration information is likely of even more interest to the public if ICE did not—but should—consider it. Other courts addressing Exemption 6 have similarly found that the public interest lies precisely in the information that the government may **not** be considering. *E.g.*, *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1334 (D.C. Cir. 2014) (citing a public interest in "whether the Department is properly pursuing any significant discrepancies" that would be apparent from the redacted portions of the records);

---

[8] Plaintiff is unaware what type of immigration information DHS-OIG has redacted, which prevents Plaintiff from providing specific reasons why the redacted information could be relevant. The following examples may be illustrative to the court if it conducts an *in camera* review. ICE's custody determination could involve consideration of information about a detained person's "amount and strength of ties to the community," or whether they "voluntarily ma[de] [them]self available to the Immigration Service" or are "a threat to national security or a poor bail risk." § 14:6. Initiation—Custody and bond, Steel on Immigration Law § 14:6 (2023 ed.). Also relevant is information about "[t]he availability of immigration benefits"—which could come in the form of facts relevant to their eligibility for asylum, for relief as a trafficking or crime victim, or for various other types of relief. *Id.*

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S MOTION FOR RECONSIDERATION

16

*Columbia Riverkeeper v. Fed. Energy Regul. Comm'n*, 650 F. Supp. 2d 1121, 1130 (D. Or. 2009) (requiring production of a government mailing list because of a public interest in identifying anyone left off of the list). The context surrounding this information suggests that ICE should have considered whatever information is redacted and should have released Medina-Leon before she became seriously ill—a measure that likely would have saved her life. Exhibit A at Nov. 2022 0024 (indicating that "based on Medina-Leon's [REDACTED] Medina-Leon would likely have been processed for a parole which would allow her to be released from ICE custody").

The public interest in immigration information that could help determine when to release medically vulnerable people from ICE detention has only grown since the parties' summary judgment briefing. Only weeks ago, the ACLU and partners released a report on deaths in ICE detention, which generated significant attention.[9] Citing this report, Senator Durbin launched an inquiry into medical and mental health care in ICE detention, and he recommended that ICE issue a directive to "ensure rapid medical screening of detained immigrants to identify those who would face increased medical and/or mental health risk in detention and outline procedures to

---

[9] *E.g.*, Daniella Silva, *ICE Detainee Deaths Could Have Been Prevented, ACLU Report Says*, NBC News, Jun. 25, 2024, https://www.nbcnews.com/us-news/ice-detainee-deaths-prevented-aclu-report-says-rcna156815; Isabela Dias, *Most Immigrant Deaths in ICE Detention Could Have Been Prevented*, Mother Jones, Jun. 25, 2024, https://www.motherjones.com/politics/2024/06/most-immigrant-deaths-in-ice-detention-could-have-been-prevented/; Jimmy Jenkins, *Most Deaths of People in ICE Custody Were Preventable, New Report Says*, Arizona Republic, Jun. 25, 2024, https://www.azcentral.com/story/news/politics/immigration/2024/06/25/most-deaths-in-ice-custody-were-preventable-new-report-says/74201835007/; Anna-Catherine Brigada, *"Preventable Tragedy": ICE Detention Deaths Could Have Been Avoided, Report Finds*, Houston Landing, June 25, 2024, https://houstonlanding.org/preventable-tragedy-ice-detention-deaths-could-have-been-avoided-report-finds/; Maurizio Guerrero, *Nearly All Deaths in ICE Custody Over 5 Years Were Preventable, New Report Finds*, Prism, Jun. 25, 2024, https://prismreports.org/2024/06/25/nearly-all-deaths-in-ice-detention-over-5-years-were-preventable/.

enable their prompt release from custody."[10] Immigration information for those who have died in detention, and in particular those whose deaths ICE has concealed, will be important to this effort to identify the steps that will protect others in the future. An *in camera* review of the redacted portions of these documents could not alter the Court's finding of a public interest, so the Court should reject DHS-OIG's request for *in camera* review.

### 3. The Court Should Not Permit DHS-OIG to Submit an Unspecified Regulation *In Camera* As the Basis for Reconsideration.

The Court should not permit DHS-OIG to submit an unspecified regulation for *in camera* review. This regulation—however worded—cannot possibly render documents exempt from FOIA. "An agency may withhold a document only if the information contained in the document comes under one of the nine exemptions listed in § 552(b) . . . ." *Powell v. Dep't of Justice*, 584 F. Supp. 1508, 1512 (N.D. Cal. 1984). None of these nine exemptions permits an agency to exempt its own records by regulation, 5 U.S.C. § 552(b). Although Exemption 3 permits withholding of information "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), this exemption does not apply to regulations. *Founding Church of Scientology v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979) (excluding from Exemption 3 rules that "are not affirmatively adopted by the legislature, as all statutes must be").[11] The Court therefore need not review this regulation *in camera*.

Even if there were some chance that this unspecified regulation could generate a FOIA exemption, DHS-OIG's proposed course of action—which would deny

---

[10] Senator Dick Durbin, *Durbin Launches Inquiry Into Medical And Mental Health Care In ICE Detention Centers* (Jul. 16, 2024), https://www.durbin.senate.gov/newsroom/press-releases/durbin-launches-inquiry-into-medical-and-mental-health-care-in-ice-detention-centers.
[11] Although DHS-OIG marked the redactions at issue here with Exemption 3, it elected to withdraw its argument under Exemption 3 ahead of summary judgment briefing. ECF No. 88 at 3 n.2.

Plaintiff any information about the regulation cited against it or an opportunity to address that regulation—wildly violates Plaintiff's procedural due process rights. Although FOIA law permits courts to conduct *in camera* inspections of "the contents of . . . agency records," 5 U.S.C. § 552(a)(4)(B) and—in closely circumscribed circumstances—of additional factual evidence, Plaintiff is aware of no provision that permits the government to raise new legal arguments *in camera,* and DHS-OIG cites none. To the contrary, given the apparent centrality of the regulation to DHS-OIG's argument, it should be disclosed to Plaintiff to ensure Plaintiff is "afford[ed] the [] opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Wiener*, 943 F.2d at 979.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny DHS-OIG's motion. First, the Court should decline to consider the redactions at issue *in camera* because the briefing before it fails to support this *in camera* review. DHS-OIG may elect to file another, procedurally proper, motion for reconsideration, or it may produce versions of these documents with the challenged redactions lifted to Plaintiff. Second, the Court should reject DHS-OIG's request to submit a citation of an immigration regulation *in camera*, which is procedurally improper and which could not possibly affect the outcome of the Court's determination.

The undersigned counsel of record for Plaintiff certifies that this brief contains 6,129 words, including footnotes, which complies with the word limit of L.R. 11-6.1. Respectfully submitted this 26th of August, 2024.

*/s/ Laboni Hoq*

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005 |

1

2

3

4

5

6

| | Telephone: (202) 548-6616 |
|---|---|
| EVA BITRAN (SBN 302081) | KYLE VIRGIEN (SBN 278747) |
| ebitran@aclusocal.org | kvirgien@aclu.org |
| ACLU FOUNDATION OF | AMERICAN CIVIL LIBERTIES |
| SOUTHERN CALIFORNIA | UNION FOUNDATION |
| 1313 West Eighth Street | NATIONAL PRISON PROJECT |
| Los Angeles, California 90017 | 425 California St., Suite 700 |
| Telephone: (213) 977-9500 | San Francisco, CA 94104 |
| Facsimile: (213) 915-0219 | Telephone: (202) 393-4930 |
| | *Attorneys for Plaintiff* |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S OPPOSITION TO DHS-OIG'S MOTION FOR RECONSIDERATION
20