LABONI A. HOQ (SBN 224140)
*laboni@hoqlaw.com*
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, <br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> *Defendants*. | Case No. 2:22-CV-04760-SHK <br><br> **STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE** <br><br> Honorable Shashi H. Kewalramani <br> United States Magistrate Judge |

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

2

## I. Introduction

Plaintiff files this Status Report and seeks a Status Conference with the Court because despite Plaintiff's robust efforts to meet and confer, Defendants have refused to provide necessary information routinely provided in other FOIA cases, and declined to agree to a reasonable schedule that will govern timely resolution of this case. Plaintiff seeks the Court's assistance in establishing a framework to address the Parties' disputes and in setting a case management order for prompt resolution of this matter.

Plaintiff ACLU of Southern California ("ACLU So Cal") filed suit in this Freedom of Information Act ("FOIA") Request over two years ago, on July 12, 2022, seeking information about Immigration and Customs Enforcement's ("ICE") practice of releasing immigrants facing immigrant death from its custody, which allows the agency to avoid accountability for their deaths. Throughout this case, Defendants have repeatedly delayed their searches for responsive records, refused to provide basic information such as hit counts necessary for parties to narrow search results to target responsive records and lessen Defendants' processing burden, and misrepresented technological capabilities to conduct targeted searches, provide information about their scope, and de-duplicate records. Order, ECF No. 62 at 11 (noting that "Defendants have accurately determined its abilities to carry out some of Plaintiff's technical suggestions or to compromise on search terms only recently, after Plaintiff sought court-intervention over the parties' disputes.").

Since the Court's partial grant of summary judgment to Plaintiff on July 8, 2024, ECF No. 87, Defendants have continued to delay resolution of this case. Plaintiff files this Status Report and respectfully requests the Court's assistance in resolving unresolved matters at a Case Management Conference. The unresolved issues include: (1) Defendants' production of documents held by the Department of Homeland Security Office of Civil Rights and Civil Liberties ("CRCL") as required

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

1

by the Court's summary judgment order, ECF No. 87; (2) Defendants' production of documents in response to Parts 1-3 of Plaintiff's FOIA Request; (3) Defendants' searches for Part 4 of the Request; (4) a schedule for summary judgment briefing regarding Parts 5-9 of Plaintiff's FOIA Request.

Defendants took the position that a Status Conference to address these matters was improper and unnecessary, and they declined to join this request or offer their positions on the issues below.[1]  However, they represented that they are available for a status conference regarding these matters at the following dates and times:

- November 12, 2024: 12:00-2:30 PM
- November 13, 2024: 9:00-10:30 AM; 12:00-1:30 PM
- November 14, 2024: 9:00-12:00; 1:30-3:00 PM
- November 15, 2024: 9:00-10:00 AM

**1. Defendants' Search for and Production of CRCL Records**

Plaintiff seeks assistance from the Court to help Parties resolve their dispute over the appropriate search parameters and processing rate and deadlines for CRCL records related to Martin Vargas Arellano.  On July 8, 2024, the Court granted summary judgment in favor of Plaintiff, concluding that Defendant DHS's search for CRCL documents was inadequate, and ordered the parties to meet and confer

---

[1] Defendants have taken the position that this filing is improper and that Plaintiff should instead file a noticed motion for the relief it seeks. Plaintiff disagrees. Through this request, Plaintiff seeks a status conference where the Court and parties can discuss what case-management framework will best achieve an efficient resolution of this case. Most of the issues Plaintiff raises in this filing stem from a lack of information from Defendants. For example, Plaintiff does not know the hit counts from Defendants' searches or when Defendants plan to move for summary judgment. Plaintiff hopes that, if the Court sets a status conference, that Defendants may come to Court prepared with this information. The Court also has authority to issue a case management order at this conference if it determines that to be the best way to move the case forward. If the Court determines at the status conference that briefing is required on any issue, Plaintiff requests that the Court order expedited briefing so that the issue can be resolved promptly.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

2

regarding its search. ECF No. 87. Over three months later, the parties have not been able to agree on search parameters or a workable timeframe for production.

Plaintiff has made a proposal that it believes will result in an efficient resolution of the outstanding issues for this production. Plaintiff proposed that Defendants conduct searches and provide Plaintiff with hit counts search terms, as Defendants have routinely provided in other FOIA cases. *See, e.g.* Ex. A (ICE hit count report in *ACLU v. ICE*, No. 1:20-cv-3204-RDM (D.D.C.)). Based on those hit counts, Plaintiff would modify the searches to ensure a reasonable number of hits. Defendants would then run the modified set of searches and process documents for production within two months.[2] After this production, Plaintiff would identify any further leads apparent from the production, and the parties would work together to develop further searches.

Unfortunately, negotiations over this proposal have not been productive. At an initial conference on July 26, 2024, Plaintiff provided a proposed timeline for the parties to agree upon search parameters for CRCL documents. Plaintiff sent a list of proposed search parameters for CRCL on July 31, 2024. Pl.'s Status Rep., ECF No. 92. Plaintiff asked that Defendants provide hit counts for de-duplicated records by August 8, that the Parties meet and confer by August 14 to finalize search parameters, and that Defendants produce all responsive documents by October 31, 2024. *Id.* Defendants did not respond until August 21, 2024, when they stated that they would

---

[2] Courts have frequently ordered the production of all responsive documents to a FOIA request within a time-bound period, instead of relying on monthly production rate schedules. *See, e.g. ACLU v. Dep't of Defense*, 339 F. Supp.2d 501, 505 (S.D.N.Y. 2004) (requiring production or identification of all responsive documents within one month, represented by government to be 17,000 to 20,000 pages); *Aguilera v. FBI*, 941 F. Supp. 144, 153 (D.D.C. 1996) (ordering production of responsive records within one month); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (requiring production of all responsive documents within one month, along with index of exemptions).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

3

conduct searches of CRCL's Complaint Management System (CMS), and email accounts for the policy advisor who worked on Vargas Arellano's case, using specified search parameters. CRCL did not, however, provide a hit count. Plaintiff emailed Defendants on August 26, and again on September 5, requesting a hit count. On September 10, Defendants provided a hit count of over 23,454 pages from its email search, but not for records from CRCL's CMS database, and did not specify whether the page results were de-duplicated. On September 11, 2024, Plaintiff replied, requesting that Defendants provide the specific number of pages resulting from the CMS search, and hit counts for specific search terms and de-duplication and threading of emails, as it could not otherwise agree to a processing rate without understanding the quantity of records at issue. Defendants again failed to respond, so Plaintiff reached out again on September 23. On October 1, Defendants claimed that "CRCL does not have the ability to provide hit counts but can de-duplicate and de-thread," and proposed a processing rate of 250 pages per month, with production starting on November 1. Ex. B (Emails between Parties). After Plaintiff stated that it would seek a status conference with the Court, Defendants reported on October 18 that they were able to de-duplicate CMS and email records, with a total hit count of 12,155 pages for those searches.

Defendants' current course involves processing a total of 12,155 pages at a rate of 250 pages/month. At this rate, it would take almost **4 years** to complete processing these documents. Defendants have stated that they would only consider additional search terms or leads after this production is complete, meaning that the production will stretch into 2028 or beyond.[3] Defendants have refused to negotiate

---

[3] Defendants did not agree to all of the search parameters Plaintiff proposed for CRCL's search, but Plaintiff agreed to defer this issue until after CRCL produced a hit count, to determine whether a further search would be necessary. *See* Ex. B, Defendants' Aug. 21, 2024 Email; Plaintiff's Aug. 26, 2024 Email.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

4

on their position, and they have stated that they plan to follow this course over Plaintiff's objections.

Importantly, there is significant doubt as to whether all 36,000 pages CRCL located in response to the Court-ordered search are actually responsive. The Court limited the scope of that search to records related to Mr. Martin Vargas Arellano. ECF No. 87 at 36. Based on a CRCL memorandum in the public record, it appears CRCL investigated Mr. Vargas Arellano's deathbed-release from ICE custody with a broader investigation into deficient detention conditions at the Adelanto Detention Center. Ex. C, Memorandum from DHS Office of Civil Rights and Civil Liberties to Tae Johnson, Regarding Adelanto Processing Center, Jun. 25, 2021. To ensure the records CRCL located in response to the Court's order are not overinclusive, further delaying Defendants' processing of *actually* responsive records, it is imperative that Defendants provide Plaintiff with hit counts for individual search terms so it can narrow the search results for efficient production.

This Court has broad power and discretion to manage litigation in FOIA cases. "FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). "Unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Id.* (quoting *Lang v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)). *See also Jewell v. United States Dep't of Educ.*, No. 2:22-cv-53-KJD, 2022 WL 3367760, at *1 (D. Vt. Aug. 16, 2022) (modifying scheduling order to require agency to provide page counts of results to search in FOIA case).

Plaintiff respectfully requests a status conference with the Court to assist the parties in understanding the universe of documents at issue, identifying potential ways to narrow Defendants' production (including by search terms with the

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

5

assistance of hit counts provided by Defendants), and establishing a deadline for CRCL's production, in light of the Court's summary judgment order.

### 2. Parts 1-3 of Plaintiff's FOIA Request

Plaintiff requests the Court's assistance in resolving the production of records by Defendants in response to Parts 1-3 of the Request.

Over a year ago, on October 23, 2023, Plaintiff submitted a Motion requesting a Scheduling Order, ECF No. 57, seeking the court's assistance in managing ICE's response to Parts 1-3 or the Plaintiff's Request. ICE had reported that it had over 41,000 pages of records, many of which Plaintiff had noted were duplicative. At Plaintiff's request to de-duplicate the records, ICE then reported that it had approximately 10,000 pages left to produce, after de-duplication. ICE, however, resisted Plaintiff's attempt to shrink that set of records for production and to begin production of records responsive to Parts 4-9 of the Request. ECF No. 62 at 3.

On December 8, 2023, this Court ordered Defendant ICE to increase its processing rate to 3,000 pages per month, provide Plaintiff with information necessary to try to reduce the number of pages to be produced regarding Mr. Teka Gulema, and for the parties to meet and confer to address outstanding issues. ECF No. 62 at 15. The Court also held Status Conferences on March 4, 2024 and March 20, 2024, and ordered Defendants to provide additional information regarding production of records related to Mr. Gulema, which formed the bulk of the records. ECF Nos. 72 and 75. On March 19, 2024, ICE newly reported that it had 31,865 pages remaining related to Mr. Gulema, and that it could not filter the documents by custodian due to ICE's failure to preserve metadata. ECF No. 74 at 2.[4]

---

[4] Notably, ICE has produced a total of only 131 pages total for the months of August, September, and October 2024 combined, all of which were un-threaded email duplicates of previously provided records regarding Mr. Gulema. ICE processed, but did not produce 10,405 other pages of records during that time, after determining that the records processed were duplicates.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

6

Since then, Plaintiff has continued to attempt to resolve the matter. On June 20, 2024, after DHS-OIG produced records referred to it by ICE related to Mr. Gulema, Plaintiff proposed a framework through which it could waive production of the remaining 31,865 pages. Plaintiff proposed that Defendants conduct targeted searches based on highly relevant leads that emerged in the DHS-OIG document production and provide Plaintiff with a hit count of responsive documents, broken down by custodian. Pl.'s Jun. 20, 2024 Letter at 2-3. Assuming that these hit counts indicated that these searches were successful and result in a smaller, more manageable number of documents, Plaintiff indicated that it would be willing to waive production of the remaining 31,865 pages. Plaintiff's proposal intended to significantly shrink the list of pages to be reviewed and speed this case toward a resolution. However, nearly four months later, Defendants have yet to provide a requested hit count to enable this negotiation to proceed.

On July 23, 2024, ICE stated that it was amenable to conducting an additional search, but did not provide a list of custodians, search terms, or a hit count, as requested. On September 10, 2024, Plaintiff further narrowed the search parameters, provided suggested search terms and custodians, and requested a hit count. On October 1, 2024, Defendants agreed to conduct a search with Plaintiff's proposed terms if Plaintiff agreed to waive the remaining records related to Mr. Gulema (now numbering approximately 25,000 pages), but again refused to provide a hit count of the de-duplicated records, as requested. After Plaintiff again requested a hit count, ICE refused to provide one on October 15, instead asking how a hit count would inform whether Plaintiff would agree to waive production of the approximately 25,000 pages. Plaintiff remains hopeful it can waive production of the remaining pages and speed this issue toward resolution, but—as it explained in June and again in October—needs hit count information from ICE to ensure that the result is neither voluminous nor empty before it can make any agreement. Notably, ICE routinely

provides hit counts for search terms in FOIA cases to enable parties to tailor production, but has not done so in this case. *See* Ex. A (ICE hit count report in *ACLU v. ICE*, No. 1:20-cv-3204-RDM (D.D.C.).

In light of the protracted negotiations over this matter, Plaintiff now requests the Court's assistance in establishing a framework to resolve this matter. Plaintiff believes that this matter could be quickly finalized if ICE provided a hit count for de-duplicated records under the terms proposed by Plaintiff, and to the extent that Plaintiff wanted to further reduce the volume of records for production or add further search terms, for ICE to timely provide hit counts in response to suggested search terms, as it regularly does in other FOIA cases, to enable productive negotiation, and a joint status report to the Court regarding the Parties' progress.

### 3. Part 4

Plaintiff requests the Court's assistance in resolving a dispute over Defendants' response to Part 4 of its Request. Part 4 of the Request relates to directives, policies, procedures, protocols, or trainings regarding ICE's deathbed releases. Defendants have conducted a narrow search, but Plaintiff requested that Defendants search ICE's Office of Regulatory Affairs and Policy (ORAP) with search terms "death," "life support," "critical condition," "intensive care," "ICU," and "hospice," as well as for ICE Directive 11003.4. On October 1, 2024, ICE agreed to search for these records, but on the condition that Plaintiff "will agree not to challenge the searches conducted for Part 4 in this litigation." Plaintiff declined to waive its ability to challenge the adequacy of search for Part 4, as it still lacks full information as to responsive records within ICE's possession without seeing the results of the search. On October 15, Defendants stated it would "endeavor" to provide a hit count for this search by November 22, 2024, but repeated its condition that Plaintiff "will agree not to challenge the searches conducted for Part 4 in this litigation."

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

8

Plaintiff respectfully requests the Court's assistance in resolving this matter. Plaintiff believes that the matter could be quickly resolved if Defendants provided a hit count of the agreed-upon search terms within 7 days of the conference, and begin production of responsive records within 30 days of the conference, or if the Defendant made clear that they would not conduct a search on the agreed-upon terms so that the issue can be briefed at summary judgment, within 7 days of the conference.

**4. Summary Judgment for Parts 5-9 of Plaintiff's FOIA Request**

Plaintiff also requests the Court's assistance in establishing a schedule for summary judgment briefing. On July 23, 2024, ICE stated that it had completed production of documents responsive to Parts 4-9 of Plaintiff's Request. Other than the outstanding discussions between the parties for Part 4, ICE has declined to perform additional searches for responsive documents that Plaintiff has proposed. On September 23, 2024, Plaintiff proposed a summary judgment briefing schedule for Defendant ICE and Parts 4-9 in this case. On October 1, 2024, ICE declined to agree to a briefing schedule for Part 4 as it is conducting an additional search, but agreed to stipulate to a briefing schedule. On October 7, 2024, Plaintiff proposed that the parties enter a summary judgment schedule for Parts 5-9 and provided proposed dates. On October 15, 2024, ICE stated, without explanation, that it did not agree to Plaintiff's proposal.

Plaintiff requests the court's assistance in setting a briefing schedule. Plaintiff proposes the briefing schedule as detailed below. Plaintiff requests that Court limit ICE to one version of the *Vaughn* index during briefing. Defendant DHS-OIG filed a modified version of the *Vaughn* index with its cross-motion for summary judgment, prejudicing Plaintiff. Specifically, to ensure this does not occur again, Plaintiff proposes that ICE file the first brief and that the Court explicitly limit it to the *Vaughn* index filed with that brief.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

9

- November 27, 2024: ICE produces a search summary, including dates of searches, search terms used, custodians and file locations searched, and number of pages produced
- November 27, 2024: Plaintiff provides Defendants with a list of withholdings for inclusion in a *Vaughn* index
- December 20, 2024: Defendants will produce a *Vaughn* index and file a Motion for Summary Judgment regarding Parts 5-9
- January 20, 2025: Plaintiff files Cross-Motion for Summary Judgment/Response
- February 10, 2025: Defendant files Response/Reply brief
- March 3, 2025: Plaintiff files Reply brief
- March 17, 2025: Summary Judgment Hearing

If Defendants decline to file a cross-motion for summary judgment, Plaintiff is amenable to filing a partial motion for summary judgment on Defendants' inadequate search of documents for Parts 5-9, and will reserve a summary judgment challenge to challenge Defendants' exemptions in a separate round of briefing. If that is the case, Plaintiff proposes the following briefing schedule:

- Plaintiff's Partial Summary Judgment Brief: December 13, 2024
- Defendants' Response Brief; January 10, 2025
- Plaintiff's Reply Brief: January 24, 2025
- Summary Judgment Hearing: January 31, 2025

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE

10

Respectfully submitted this 30th day of October, 2024.

/S/ Laboni A. Hoq

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| EVA BITRAN (SBN 302081)<br>ebitran@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE