# EXHIBIT B

**Eunice Cho**

| | |
|---|---|
| **From:** | Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> |
| **Sent:** | Tuesday, October 1, 2024 7:40 PM |
| **To:** | Laboni Hoq |
| **Cc:** | Eunice Cho; Kyle Virgien; Eva Bitran; Axe, Jason (USACAC) |
| **Subject:** | RE: [EXTERNAL] Re: ACLU SoCal v. DHS | CRCL Search |
| **Attachments:** | 2024-10-01 ICE Letter to OPC.pdf |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**This Message Is From an External Sender**
This message came from outside your organization.

Laboni,

Attached please find correspondence of today's date responding to the inquiries directed to ICE.

Taking the questions raised to CRCL in order, first, the search in CMS is in the Summary of Allegation field, which summarizes the incoming allegations.  CRCL uses that type of search to identify responsive case records (there are two types: (1) contacts (allegations received and recorded in CRCL's database but for which CRCL did not open a complaint investigation) and (2) complaints (allegations opened for a complaint investigation)).  CRCL then pulls all the documents for the case records it identified in the search.  The documents are then ingested into the FOIA processing software and yield a total number of pages contained in all the documents.

Second, the search for each individual search string may yield the same case record as responsive to multiple searches. However, CRCL pulls each file only once. The search is of the Summary of Allegations field in CRCL's database, as referenced above, not the documents that it downloads after finding responsive results. CRCL does not apply the search terms to the downloaded documents, but processes all documents contained in each case record.

Third, CRCL will agree to process and produce the CMS case records first.

Fourth, OCIO is the DHS Office of the Chief Information Officer (OCIO) which operates and maintains all IT resources for the DHS HQ Office, which includes CRCL. When CRCL needs an email or electronic search of the records of an individual or group, it submits a request to OCIO, which conducts the search in the systems it maintains.

Fifth, "Compliance" refers to the CRCL Compliance Branch, which is part of CRCL that investigates complaints from the public about civil rights or civil liberties related to DHS's public-facing programs.

Sixth, CRCL does not have the ability to provide hit counts but can de-duplicate and de-thread. While CRCL will make every effort to reduce the volume of records to be processed using the available software features, there may still be duplicates or similar records (threads) included in the full count.

Seventh, and last, CRCL proposes a processing rate of 250 pages per month and will begin doing so in November 2024. CRCL's FOIA office is overwhelmed with FOIA and litigation requests that are being processed on deadlines between now and into October.  It identified November 1 because it is the first date it can reasonably project being able to process a portion of the records and produce them.  The CRCL FOIA office is small, capacity is limited, and there are other requests and productions going on at the same time.  The FOIA office is also losing one of its support contractors who will not be replaced.

Thanks,

**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | F: 213.894.7819 | joseph.tursi@usdoj.gov

---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Monday, September 23, 2024 8:00 AM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** echo@aclu.org; kvirgien@aclu.org; Eva Bitran <EBitran@aclusocal.org>; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** Re: [EXTERNAL] Re: ACLU SoCal v. DHS | CRCL Search

Dear Joe and Jason,

We write to follow up on our recent communication of September 10 and 11, 2024, so that we can resolve outstanding issues in this case. Please provide us with a response by no later than October 1, 2024. We are also glad to meet over the phone to further discuss these matters.

Given the length of time that has elapsed in this case, and given that Defendants have produced minimal records during the August and September 2024 productions, we endeavor to quickly resolve remaining issues in this case. We note that ICE produced only 36 pages (determining that 4392 pages were duplicates) in August 2024, and 43 pages (after determining that 3,023 pages were duplicates) in September 2024. The Court ordered ICE to process 3,000 pages of documents per month. In doing so, it ordered ICE to "ensure that it has conducted email threading and de-duplication of records prior to processing to reduce the number of records to be processed and produced." ECF No. 62 at 14. ICE's productions of fewer than 50 de-duplicated pages per month falls well short of the rate this order contemplates.

First, as we wrote in our September 11, 2024 email, regarding the search of CRCL records, please provide a response to our questions:
- For CMS "case records," do the hits reflect single pages of documents, or number of pages in a single "record"?
- For each case record, please identify all of the search terms contained within it, or propose some other way to identify overlap between the results for each search term.
- What does "OCIO" stand for?
- Does "Compliance" mean CRCL's Compliance Branch?
- What is the hit count for the search terms provided by Defendants on September 10? Are these de-duplicated (with threading)?
- Will Defendants agree to a processing rate of 3,000 pages per month, after de-duplicating/threading?
- Will Defendants begin to produce responsive records from CRCL in their October 2024 production?

Second, as we discussed in our September 10, 2024 letter, regarding Part 4:
- Will ICE produce documents resulting from a search of ORAP using additional search terms ("death," "life support," "critical condition," "intensive care," "ICU," and "hospice")? Will Defendants produce these records in their October 2024 production?
- Will ICE produce a copy of Directive 11003.4?

2

Third, as we discussed in our September 10, 2024 letter, regarding Parts 4-9:

- Will ICE agree to the proposed schedule for summary judgment for Parts 4-9 in this case? If not, what is ICE's proposal?
  - October 4, 2024 (or two weeks after ICE responds to our scheduling proposal, whichever is later): Plaintiff will specify challenged redactions to Defendants
  - November 4, 2024: Defendants will produce a Vaughn Index and file a Motion for Summary Judgment regarding Parts 4-9
  - November 24, 2024: Plaintiff files Cross-Motion for Summary Judgment/Response
  - December 16, 2024: Defendant files Response/Reply brief
  - January 13, 2025: Plaintiff files Reply brief
  - January 20, 2025: Summary Judgment Hearing

Fourth, as stated before regarding Parts 1-3 of Plaintiff's FOIA request, Plaintiff will agree to waive production of the remaining approximately 25,471 pages regarding Mr. Gulema dated prior to October 1, 2015, if ICE produces documents according to the following search parameters, which have been significantly narrowed.

- Emails between the ICE New Orleans Field Office Director (FOD) and members of the Headquarters Removal and International Operations unit (HQRIO) regarding Mr. Gulema between June 30, 2015, and November 24, 2015. This could be performed by filtering emails of the FOD by date, and terms "Headquarters Removal and International Operations" or "HQRIO" and "Gulema."
- Emails between the ICE New Orleans Field Office Director (FOD) and members of the HQ ERO Post Order Custody Review Unit regarding Mr. Gulema between June 30, 2015, and November 24, 2015. This could be performed by filtering emails of the FOD by date, and terms "Post Order Custody Review" or "POCR" and "Gulema."
- Emails between the ICE New Orleans Field Office Director (FOD) and HQ ERO Domestic Operations between June 30, 2015, and March 30, 2016.
- Emails between the ICE New Orleans Field Office Director (FOD) and staff of the Ice Health Service Corps between June 30, 2015, and November 30, 2015. This could be performed by filtering emails of the FOD by date, the terms "ICE Health Service Corps," "IHSC," and "Gulema."

Please let us know:

- Will ICE agree to this narrowing of documents?
- Will ICE provide a hit count of documents according to these terms by October 10?
- Please ensure that the hit count is based on de-duplicated emails (including threading), and process only parent emails and non-email documents (suppressing email attachments); After Plaintiff has an opportunity to view this production excluding email attachments, Plaintiff will inform ICE whether it will waive any additional email attachments or whether it will request that specific email attachments be produced.

Thanks.

On Wed, Sep 11, 2024 at 11:50 AM Laboni Hoq <laboni@hoqlaw.com> wrote:

Hi Joe,

Thanks for these updates.

On CRCL, for the CMS "case records," can you clarify whether the hits reflect single pages of documents, or a number of pages comprising a single "record"?  We will also need to know whether the case records identified by each search term are unique hits or whether they overlap with the cases identified by other search terms. To this end, for each case record, please identify all of the search terms contained within it, or propose some other way to identify overlap between the results for each search term. In any event, given the apparent modest number of hits for the CMS search, we would ask that CRCL produce those first. Is there a reason CRCL needs to wait until November 1 to begin processing them? Absent good cause, we would also ask that it begin processing them now.

Regarding the email search, can you please explain what "OCIO" stands for?  And I assume "Compliance" mean's CRCL's Compliance Branch, but could you please clarify? Further, could CRCL provide us the hit counts for the search terms and confirm that the hit counts you list below are deduplicated (including threading)? That would be helpful to determine whether we can/need to narrow the search results.

Finally, we need to discuss the processing rate for CRCL's search.  We would propose 3,000 pages per month in line with what the Court ordered for ICE, given that this search is already significantly delayed.

Thanks.

On Tue, Sep 10, 2024 at 2:42 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

Hi Laboni,

For the CMS search, CRCL used the below search terms which returned the following hits:

- Vargas-Arellano
  - 1 case record
- Vargas-Arellano
  - no records
- Martin /3 (Vargas OR Arellano)
  - 2 case records
- "A#205718808" OR "A# 205718808" OR "A205718808" OR "A205 718 808" OR "205 718 808" or "205718808"
  - 2 case records
- National Qualified Representative Program OR NQRP
  - 7 case records
- detainee w/10 hospital
  - 15 case records
- Detainee w/10 death
  - 14 case records
- Detainee w/10 die
  - No records
- Detainee w/ 10 died
  - 1 case record
- Detainee w/10 dead

- ○ no records
- Detainee w/10 expire
  - ○ no records

- Directive 11003.5
    - No records
- Directive 11003.4
    - No records
- Directive 11003.2
    - No records


With respect to the email search,  CRCL used the same terms.


With these search terms they had the following results:


- OCIO Search
    - ○ # of docs - 567
    - ○ # of pages – 7,153


- Compliance Search
    - ○ # of docs - 993
    - ○ # of pages – 16,301


Additionally, CRCL did not agree to provide all responsive records by October 31, 2024. Rather, that was Plaintiff's proposal. As discussed during the July 26th call, discussions over a deadline were premature because until the searches were run, there was no way for CRCL to know how many potentially responsive records there would be. However, CRCL envisions beginning to process records starting November 1st.


Last, we are in receipt of Plaintiff's correspondence of this morning which responds to Defendant ICE's July 23, 2024 correspondence. Therein, Plaintiff offers a proposal with respect to resolution of Parts 4-9 as it relates to ICE and puts forth a summary judgment schedule which Plaintiff states it will raise during tomorrow's hearing. Please note that while we have forwarded Plaintiff's correspondence to ICE for its consideration, we will not be in a position to discuss it during tomorrow's motion hearing, which relates not to ICE but to OIG's motion for reconsideration.


Thanks,

-Joe

**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | F: 213.894.7819 | joseph.tursi@usdoj.gov

---

**From:** Laboni Hoq <laboni@hoqlaw.com>
**Sent:** Thursday, September 5, 2024 2:03 PM
**To:** Tursi, Joseph (USACAC) <JTursi@usa.doj.gov>
**Cc:** echo@aclu.org; kvirgien@aclu.org; Eva Bitran <EBitran@aclusocal.org>; Axe, Jason (USACAC) <JAxe@usa.doj.gov>
**Subject:** [EXTERNAL] Re: ACLU SoCal v. DHS | CRCL Search

Hi Joe,

Hope you are well.  We are still waiting on a response to our August 26 email.  Please respond by next Tuesday, in advance of the hearing in this case, when we can expect to receive the results of CRCL's search, as well as the other issues we raised.

Thanks.

On Mon, Aug 26, 2024 at 2:54 PM Laboni Hoq <laboni@hoqlaw.com> wrote:

Hi Joe,

Thanks for updating us on CRCL's response to Plaintiff's proposed search parameters. We have the following comments and questions.

First, regarding the CMS search, can you clarify which search terms CRCL will be using? Further, we believe applying the appropriate search terms to only the "Summary of Allegation field" of the CMS database may be too restrictive. It is not clear to us that searching this summary field will identify documents related to the *investigation* into the

allegation and its findings.  As such, we reserve the right to seek a broader search of the CMS database when CRCL provides us the results of the hit count (including the search terms utilized) and/or when CRCL produces the results of the search to Plaintiff.

Regarding the email search, we are likewise concerned that a search of only a single policy advisor and that individual's supervisory chain is not adequate. Because we are also seeking information regarding any policy changes at ICE/DHS made in response to any CRCL investigation/findings, a broader custodian search may be necessary.  As such, we again reserve our right to seek a search of additional custodians when CRCL provides us the results of the hit count (including the search terms utilized), and/or when CRCL produces the results of the search to Plaintiff.

Regarding discussing CRCL's hit counts, please let us know when we will receive them, so we can schedule a date to meet and confer about them.  At our July 26, 2024 meet and confer, we had discussed that Defendants would provide us their hit counts by August 8, 2024, and the Parties would meet and confer about them on or about August 14, 2024. See Dkt. 92. While we appreciate CRCL was delayed in responding to our search parameters, we would still like to schedule appropriate deadlines to meet and confer about the hit counts.

Finally, we had also discussed on July 26 that Defendants would produce all responsive documents by October 31, 2024. We would also like to keep to this schedule, so we can timely and concretely meet and confer about any further search adequacy issues. Please let us know if CRCL will commit to an October 31 production deadline.

Thanks.

On Wed, Aug 21, 2024 at 12:00 PM Tursi, Joseph (USACAC) <Joseph.Tursi@usdoj.gov> wrote:

Hi Laboni,

CRCL has reviewed Plaintiff's proposed search terms and parameters. It will conduct the following searches:

- CRCL will search in two locations that it thinks are most likely to have responsive records, if any:

  - CRCL Compliance Branch complaint management system (CMS), which is CRCL's system of record for incoming allegations and complaint investigations.
  - Email accounts for the policy advisor who worked on the Vargas-Arellano complaint, 21-07-ICE-0411 and the supervisory chain above that advisor (which includes three additional custodians).

- CRCL will search for the dates March 8, 2021, to search date.
- For CMS, CRCL will search each term individually and report hit results, which will be the number of CMS records with those terms in the Summary of Allegation field.

- For email, CRCL will conduct two searches using the strings below:

    - "Vargas Arellano" OR Vargas-Arellano OR (Martin /3 (Vargas OR Arellano)) OR "Martin Vargas-Arellano" OR "A#205718808" OR "A# 205718808" OR "A205718808" OR "A205 718 808" OR "205 718 808" or "205718808"
    - "National Qualified Representative Program" OR NQRP OR (detainee AND (hospital! OR death OR die OR died OR dead OR expire)) OR "Directive 11003.5" OR "Directive 11003.4" OR "Directive 11003.2"

Thanks,


**Joseph W. Tursi | Assistant United States Attorney**
United States Attorney's Office | Central District of California
300 N. Los Angeles Street, Suite 7516 | Los Angeles, CA 90012
O: 213.894.3989 | F: 213.894.7819 | joseph.tursi@usdoj.gov




--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com




--

**Laboni A. Hoq**

Hoq Law APC

P.O. Box 753

South Pasadena, CA 91030

Telephone: 213-973-9004

www.hoqlaw.com

--
**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
www.hoqlaw.com

--
**Laboni A. Hoq**
Hoq Law APC
P.O. Box 753
South Pasadena, CA 91030
Telephone: 213-973-9004
www.hoqlaw.com