# EXHIBIT C

*Office for Civil Rights and Civil Liberties*
**U.S. Department of Homeland Security**
Washington, DC 20528



June 25, 2021

| | |
|---|---|
| MEMORANDUM FOR: | Tae D. Johnson<br>Acting Director<br>U.S. Immigration and Customs Enforcement |
| | John D. Trasviña<br>Principal Legal Advisor<br>Office of the Principal Legal Advisor<br>U.S. Immigration and Customs Enforcement |
| FROM: | Peter E. Mina<br>Deputy Office ... mpliance<br>Office for Civil Rights and Civil Liberties |
| | Susan Mathias /s/<br>Assistant General Counsel, Legal Counsel Division<br>Office of the General Counsel |
| SUBJECT: | Adelanto Processing Center<br>Complaint Nos. 21-ICE-07-0403, 20-09-ICE-0770, 21-07-ICE-0400, 20-03-ICE-0220 |

The Office for Civil Rights and Civil Liberties (CRCL) has opened complaints alleging that U.S. Immigration and Customs Enforcement (ICE) has potentially violated the civil rights and civil liberties of detainees in ICE custody at the Adelanto Processing Center (Adelanto) in Adelanto, CA. The purpose of this memorandum is to notify you of the complaints, describe the allegations, inform you that CRCL will retain the above-referenced complaints for investigation and conduct a virtual onsite investigation at Adelanto on July 12-16, 2021, and explain how CRCL will work with ICE during our investigation. As part of this investigation, and consistent with the authority described in the CRCL and Scope of Review sections below, CRCL will examine the allegations described in the complaints, and Adelanto's operations more generally, to determine if the individual allegations are indicative of systemic civil rights and civil liberties issues. CRCL will also review other areas of the facility's operations that often raise civil rights and civil liberties issues. In addition to the general review, based upon the specific instances identified below, CRCL will be reviewing Adelanto's COVID-19 policies, use of force policies, suicide prevention and intervention policies, and related policies during the virtual onsite.

*Protected by the Attorney-Client and Deliberative Process Privileges*

COMPLAINTS

   *1.    Complaint No. 21-07-ICE-0403*

On April 25, 2021, ERO Los Angeles reported in the ICE Daily Detainee Assault Report that a Chinese national detainee was allegedly the victim of a sexual assault by another Chinese national detainee while housed at Adelanto. The alleged victim claimed that in October of 2020, another detainee touched him inappropriately. According to the report, the alleged victim was provided the Detainee Assistance Alternatives Flyer and was given medical and mental health services. CRCL has received other sexual assault allegations involving detainees at Adelanto, which have been monitored by the Compliance PREA Program. [1]

   *2.    Complaint No. 21-07-ICE-0411*

On April 16, 2021, CRCL received postal correspondence from a group of 20 legal service providers that serve as National Qualified Representative Program (NQRP) providers regarding (b) (6) ███████, a former detainee at Adelanto who was represented by NQRP attorney (b) (6) ███████ of the Esperanza Immigrant Rights Project in Los Angeles. According to Ms. (b) (6) ███, she had been working with ICE on planning the safe release of Mr. (b) (6) ███ and was to be notified of her client's release from the hospital once he recovered from surgery.

The complainants allege that Mr. (b) (6) ███ was suffering from schizophrenia, diabetes, hypertension, gout, cellulitis, and Hepatitis C, and was hospitalized numerous times during his two years in ICE detention. He also contracted COVID-19 in December 2020. Mr. (b) (6) ███ suffered a stroke on March 3 and died on March 8, 2021, three days after he was released from ICE custody.

Ms. (b) (6) ███ alleges that ICE failed to inform her of her client's death and denied knowing where he was, leading her to believe that Mr. (b) (6) ███ had been released into the community. According to Ms. (b) (6) ███, she filed a missing person report, which prompted the police to compel ICE to disclose Mr. (b) (6) ███ last-known location, St. Jude Hospital in Victorville, CA. On March 18, Ms. (b) (6) ███ learned from the Orange County coroner that Mr. (b) (6) ███ had died at St. Jude Hospital on March 8.

   *3.    Complaint No. 21-07-ICE-0400*

On March 19 and 22, 2021, CRCL received correspondence from (b) (6) ███ of Freedom for Immigrants on behalf of (b) (6) ████████████████████. The complainant alleged that the subject was physically attacked, choked, beaten, and coerced into signing deportation documents by ICE and GEO at Adelanto. According to the complaint, the incident occurred on September 8, 2020, when ICE guards took the subject to an intake room), changed his clothes, gave him his commissary account money, and asked him for his signature on a deportation document, which he refused to do. The letter alleges that a group of officers tackled the subject, put a knee on his neck and a foot on his head while other guards handcuffed him, which resulted in scars on his

---

[1] On 3/7/2021 ERO reported a Pakistani national who alleged sexual assault by medical staff during an exam; on 2/18/2021 ERO reported a Mexican national alleged sexual harassment by a facility officer; on 2/2/21 ERO reported a Senegalese national alleged sexual harassment by a staff member during a medical exam; and on 9/2020, ERO reported a Salvadorian national alleged sexual harassment by a GEO officer, who also attempted to extort him.

wrists. The letter further alleges that the officers placed a bag over the subject's head and threw him into a cell where he hit his head on the wall. The letter further alleges that more than six months later, on March 17, 2021, guards told the subject he would be deported on March 23, 2021 and threated that the same thing as last time would happen again if he refused to sign his removal documents. The subject was released on an Order of Supervision on April 2, 2021.

4. **Complaint No. 20-03-ICE-0220**[2]

On December 3, 2020, CRCL received direct correspondence from attorney (b) (6) (b) (6) on behalf of (b) (6) a detainee at Adelanto. The complainant alleges that Mr. (b) (6) has been housed in administrative segregation since December 13, 2019, and has not received necessary mental health care, which has resulted in a deterioration in his mental health to the point of suicidality. Moreover, the complainant alleges that her client was unable to communicate with family, friends, and legal counsel via telephone. In addition, the complainant alleges that since December 2, 2020, she has been unable to schedule private attorney-client calls as the subject's call privileges have been suspended.

5. **Complaint No. 21-03-ICE-0145**

On December 10, 2020, CRCL received direct correspondence from (b) (6) of Freedom for Immigrants on behalf of (b) (6) an ICE detainee at Adelanto. The complaint alleges that the subject was in medical isolation for 7 months due to his refusal to get a tuberculosis vaccine. The subject claims that he had received the injection about a month before coming to Adelanto; however, medical staff at Adelanto stated that they did not have proof of his inoculation. Additional allegations claim that security guards are constantly knocking on the subject's isolation cell door day and night, which results in painful headaches for him.

PRIOR CRCL ONSITES AND RECOMMENDATIONS

CRCL conducted previous onsite visits to Adelanto in 2015 and 2017, which resulted in numerous expert recommendations. CRCL then issued a Close Memo on January 21, 2021 noting various improvements but also citing serious remaining issues, including continued complaints from detainees at the facility regarding their treatment for medical and mental health issues. CRCL will be looking into these remaining issues during this onsite as well, which include the following:



- (b) (5)

- 

---

[2] CRCL has a separate complaint open covering the Sec. 504 allegations contained in this complaint. For purposes of this onsite, we will only be covering the non-504 allegations.



- 
- 
- 
- 

*CRCL Mission*. CRCL supports the Department's mission to secure the Nation while preserving individual liberty, fairness, and equality under the law. CRCL integrates civil rights and civil liberties into all the Department's activities:

- Promoting respect for civil rights and civil liberties in policy creation and implementation by advising Department leadership and personnel, and state and local partners;

- Communicating with individuals and communities whose civil rights and civil liberties may be affected by Department activities, informing them about policies and avenues of redress, and promoting appropriate attention within the Department to their experiences and concerns;

- Investigating and resolving civil rights and civil liberties complaints filed by the public regarding Department policies or activities, or actions taken by Department personnel;

- Leading the Department's equal employment opportunity programs and promoting workforce diversity and merit system principles.

*CRCL authorities*. Under 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, CRCL is charged with investigating and assessing complaints against DHS employees and officials of abuses of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. In investigating complaints, if CRCL believes that the complaints raise similar issues, CRCL may look into whether there are systemic problems that justify a broader investigation. Pursuant to its authority under 6 U.S.C. § 345(a)(3), CRCL shall assist components to "periodically review Department policies and procedures to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department programs and activities."[3] Additionally, pursuant to DHS Delegation Number 19003, issued October 26, 2012, the Secretary has delegated to the Officer of CRCL the authority to "assess new and existing policies throughout the Department for the policies' impact on civil rights and civil liberties" and "review . . . programs within any Component to ensure compliance with standards established by the Officer for CRCL to protect civil rights and civil liberties." Issues such as appropriate treatment by ICE officials, access to medical care, lack of arbitrary punishment, and religious accommodation for ICE detainees are examples that may raise civil rights and liberties concerns. The procedures for our investigations, and the recommendations they may generate, are outlined in DHS Management Directive 3500, DHS Instruction 046-01-001, and DHS Instruction 046-01-002.

*Access to information*. 42 U.S.C. § 2000ee-l(d) grants this Office access to the "information, material, and resources necessary to fulfill the functions" of the office, including the complaint investigation function; Management Directive 3500 further authorizes CRCL to:

- "Notify[] the relevant OHS component(s) involved of the matter and its acceptance by CRCL, and whether the matter will be handled by CRCL or by the component organization;"

- "Interview[] persons and obtain[] other information deemed by CRCL to be relevant and require[e] cooperation by all agency employees;" and

- "Access[] documents and files that may have information deemed by CRCL to be relevant."

Further guidance is contained in DHS Instruction 046-01-002, and, pursuant to section 3.3 of ICE Directive 8010.1, "Administration and Management of Inquiries from the Office for Civil Rights and Civil Liberties," this is a request for information or assistance. Under section 3.3 of Directive 8010.1, ICE will provide the requested information and materials to CRCL within the timeframe indicated below, and not edit or otherwise limit review of the information that is responsive to CRCL's request. Pursuant to section 2 of Directive 8010.1, CRCL understands that this request will be handled by the appropriate ICE program office or ICE's Office of Diversity and Civil Rights (ODCR).

---

[3] In addition, pursuant to 42 U.S.C. § 2000ee-l(a)(2), CRCL has the authority to "periodically investigate and review department, agency, or elements actions, *policies, procedures, guidelines*, and related laws and their implementation to ensure that such department, agency, or element is adequately considering privacy and civil liberties in its actions." (emphasis added)

*Reprisals forbidden*. In addition, 42 U.S.C. § 2000ee-l(e) forbids any Federal employee to subject a complainant or witness to any "action constituting a reprisal, or threat of reprisal, for making a complaint or for disclosing information to" CRCL in the course of this investigation.

This memorandum and its accompanying request for information are made pursuant to these authorities.

*Privilege and required transparency*. Our communications with ICE personnel and documents generated during this review, particularly the final report, will be protected to the maximum extent possible by attorney-client and deliberative process privileges. Under 6 U.S.C. § 345(b), however, we submit an annual report to Congress-also posted on CRCL's website-that is required to detail "any allegations of [civil rights/civil liberties] abuses . . . and any actions taken by the Department in response to such allegations."

We look forward to working with your staff on this matter and will report back to you our findings and any recommendations.

PURPOSE AND SCOPE OF REVIEW

The purpose of this review is to determine if the allegations in the complaints can be verified or disproven, determine whether the facts suggest that the Constitution, a federal statute, or a Departmental policy has been violated, and to recommend what steps, if any, should be taken by ICE to address the complaints both individually (if the problem is ongoing) and as a matter of policy.

We will review the following areas: medical care, mental health care, suicide prevention, detainee safety, segregation, the grievance system, and environmental health and safety. CRCL will also review the facility's COVID-19 practices during the review.

QUESTION(S) PRESENTED



INITIATING THE INVESTIGATION

CRCL Policy Advisors (b) (6) will be handling this review. We request that ICE ERO schedule an initial discussion about these complaints and CRCL's plans for reviewing the matters with Mr. (b) (6) and Ms. (b) (6) as soon as possible.

We look forward to working together to determine all the facts surrounding these matters and if appropriate, the best way forward. If you have any questions, please do not hesitate to contact Mr. (b) (6) by phone at (b) (6) or by email at (b) (6) ; or Ms. (b) (6) at (b) (6) or by email at (b) (6) .

*Protected by the Attorney-Client and Deliberative Process Privileges*   6

**Copy to:**

Corey A. Price
Acting Executive Associate Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Peter B. Berg
Acting Deputy Executive Associate Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Russell Hott
Assistant Director, Custody Management
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Dr. Stewart D. Smith
Assistant Director, ICE Health Service Corps
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Dr. Ada Rivera
Medical Director, ICE Health Service Corps
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Timothy C. Perry
Chief of Staff
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Jason Houser
Deputy Chief of Staff
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Claire Trickler-McNulty
Assistant Director
Office of Immigration Program Evaluation
U.S. Immigration and Customs Enforcement (ICE)
(b) (6), (b) (7)(C)

Dawn Daggett
Acting Chief of Staff, Custody Management
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)

Monica Burke
Deputy Assistant Director, Custody Programs
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
(b) (6), (b) (7)(C)