E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989 | 8790
    Facsimile: (213) 894-7819
    E-mail: Joseph.Tursi@usdoj.gov
         Jason.Axe@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | No. 2:22-cv-04760-SHK<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATUS REPORT AND REQUEST FOR CASE MANAGEMENT CONFERENCE [DKT. 101]**<br><br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

Defendants Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") submit the following response to Plaintiff ACLU of SoCal's "Status Report."

As an initial matter, Defendants do not believe that judicial intervention is either necessary or appropriate at this time. That is because none of Plaintiff's rationales for seeking relief through a "status conference" is persuasive. Plaintiff makes four principal arguments, each of which will be addressed in turn. However, the common thread running through each is that Plaintiff seeks, on what is essentially an ex parte basis, an exigent order from this Court. That is improper under the Federal Rules of Civil Procedure and the Court's Local Rules. The proper procedure for seeking *any* relief is through noticed motion or application – not via a putative Status Report that cites only general statements for the requested relief sought. Indeed, no civil litigant would ever bother with filing motions or applications if Plaintiff's procedural shortcut to judicial relief were permitted. Nor does Plaintiff even attempt to explain why it cannot bring a properly noticed motion to raise whatever concerns it may have so that the Court and Defendants have the benefit of full briefing on the issues. Just as the Court required Defendant to file a Motion for Reconsideration when it sought relief, *see* ECF 95, it should similarly require Plaintiff to do the same when it seeks relief.

As explained below, there are no disputes for which judicial intervention is necessary, let alone intervention on an improper ex parte basis. Rather it is part and parcel of Plaintiff's continuing effort to depart from typical resolution of FOIA cases and place onto ICE (and CRCL) an extra burden that the FOIA and case law does not – justification of its search terms, locations, and productions while the searches and processing are *ongoing*. *See* Dkt. 60 at 15.

As ICE explained previously, "In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA requests. Where the search terms are reasonably

calculated to lead to responsive documents, **a court should neither micromanage nor second guess the agency's search**." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (emphasis added); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (an agency "need not knock down every search design advanced by every requester[.]"). Nor is a search's adequacy determined by its fruits. *See Hoffman v. U.S. Border Prot.*, 2023 WL 4237096, at *5 (E.D. PA. 2023). Yet Plaintiff once again seeks to direct the searches and production of records here.

Defendants thus turn to each point raised in Plaintiff's Status Report:

### 1. Search and Production of CRCL Records

Pursuant to the Court's order [Dkt. 87], DHS referred Plaintiff's FOIA request to the DHS Office of Civil Rights and Civil Liberties (CRCL). Thereafter, the Parties met and conferred over search terms and parameters. *See* Dkt. 92 at 3. Through the undersigned counsel, CRCL provided Plaintiff with the specific search terms and parameters it would use based on Plaintiff's recommended terms. *See* Exhibit 1 hereto. The Parties continued to meet and confer over the search terms and parameters, with CRCL providing to Plaintiff, on September 10, 2024, hit counts with respect to the terms used in the search of CRCL's Complaint Management System ("CMS") for case records and the search conducted on CRCL's behalf by the DHS Office of the Chief Information Officer ("OCIO") for email and electronic documents. *See id.* CRCL also provided the initial results of its searches both in terms of the number of documents and pages. *Id.* Last, CRCL explained that it would begin processing the records on November 1, 2024. *Id.*

The Parties continued to meet and confer on these matters, with CRCL agreeing to process and produce records in the order requested by Plaintiff. *See* Exhibit 2 hereto.

More recently, on October 18, 2024, CRCL responded to all outstanding inquiries from Plaintiff.[1] *See* Exhibit 3 hereto.

Yet in its Status Report, Plaintiff complains that CRCL did not agree to all of its requested parameters and search terms. But there is no requirement that CRCL do so.

Plaintiff then complains that it has not received hit counts. CRCL is unable to provide hit counts at this juncture (though as noted above, it had previously provided hit counts to Plaintiff). That is not due to a lack of technical ability but because CRCL, by taking the search terms Plaintiff proposed, has already run those searches and is now processing the requested records. To provide hit counts would necessarily require CRCL to stop processing records found responsive to Plaintiff's requested search terms. Beyond disrupting CRCL's work and unjustifiably setting back the progress made to date, CRCL would have to run each search term combination to get hit results, and these separate results would require re-combination and re-processing to try to eliminate duplicates that appeared in multiple hit count searches. Even with tools to assist with the processing, each of these steps still requires manual review to confirm and remove duplicates. Moreover, the more times CRCL stops, runs counts, adjusts, and repeats, prolongs the entire process, and may even require going back to OCIO to conduct new searches—all of which would be based on guesswork about the precision of search terms. CRCL believes its searches have found records responsive to the Plaintiff's request, but the only way to fully evaluate this is to continue the process that is already underway and begin providing Plaintiff with the results.

On November 1, 2024, CRCL made its first production, as it had indicated it would. If, after reviewing the production, Plaintiff believes it has received records that it

---

[1] Plaintiff's Status Report gives the impression that this information was provided because it had stated it would seek a Status Conference. *See* Dkt. 101 at 6. This ignores that in correspondence dated October 15, 2024, Plaintiff was specifically informed that CRCL would respond to all outstanding inquires by October 22, 2024.

is not interested in, despite being responsive to the FOIA request, CRCL has stated that it is open to meet and confer on a narrowing of the records at that juncture. For its part, however, Plaintiff's Status Report indicates that it anticipates requesting that "the parties work together to develop further searches." Dkt. 101 at 5.

CRCL also explained to Plaintiff that its search of CMS returned 577 documents which equals approximately 5,649 pages. *See* Exhibit 3 at 1. Its search by DHS OCIO returned 427 documents equaling about 6,506 pages. *Id.* These figures represent a de-duplicated and threaded count. *Id.*[2]

### 2. Parts 1-3 of Plaintiff's FOIA Request

ICE has repeatedly expressed its willingness to conduct the additional searches requested in Plaintiff's June 20, 2024 letter. Most recently, on October 1, 2024, ICE provided the search terms and custodians it would search in exchange for Plaintiff agreeing to waive production of the remaining approximately 25,000 pages of records related to Mr. Gulema dated before October 1, 2015, "regardless of whether the searches …produce responsive records." *See* Exhibit 4. Plaintiff has not agreed to do so. Instead, it maintains that ICE must conduct the searches and provide hit counts before Plaintiff can consider such a waiver.

When pressed, Plaintiff explains that it "needs hit count information from ICE to ensure that the result is neither voluminous nor empty." *See* Dkt. 101 at 9. This makes little sense as the resulting hit counts from supplemental searches in no way informs whether Plaintiff waives the approximately 25,000 pages of records related to Mr. Gulema dated before October 1, 2015. Indeed, Plaintiff has used a potential waiver of the processing and production of these records as the proverbial carrot for over a year. *See* Dkt. 57 at 15; *see also* Dkt. 62 at 11 (Ordering that "By February 5, 2024, Plaintiff shall inform ICE whether it waives production of documents related to Mr. Teka Gulema

---

[2] Subsequent to its initial deduplication and threading efforts, CRCL found additional duplicate documents resulting in a revised total of 427 OCIO documents, equaling 6,506 pages.

dated before October 1, 2015…"). Yet at every juncture, Plaintiff continues to claim it needs more information to determine whether it will waive production of these records. Plaintiff now conditions its mere further *consideration* of such a waiver on ICE conducting additional searches and providing the resulting hit counts. This continual moving of the goal posts is improper.[3]

In any event, the hit counts, following de-duplicating and email threading, are as follows:

- "Headquarters Removal and International Operations" or "HQRIO" and "Gulema."—0 pages

- "Post Order Custody Review" or "POCR" and "Gulema."—0 pages

- "ICE Health Service Corps," or "IHSC," and "Gulema."—Approximately 20,675 pages

- HQ ERO Domestic Operations"—0 pages

ICE thus hopes that with this information, Plaintiff will be able to state, finally, whether it will waive production of the remaining records related to Mr. Gulema prior to October 1, 2015.

With respect to Plaintiff's complaints over the number of duplicative documents, Dkt. 101 at 8 n.4 – this too has been explained. Each email is a "new email" that copies and pastes the earlier email into the body of the "new email." This is different than a thread and, because it is a "new email," is not captured as a duplicate either. There is an easy remedy for Plaintiff receiving such documents – Plaintiff could waive production of these records. Indeed, they largely contain only medical information related to Mr. Gulema of which Plaintiff is already well aware, and which Plaintiff has unnecessarily been burdening ICE with producing—while simultaneously complaining about the total volume of the records Plaintiff has received (as well as their time to produce). Notably,

---

[3] So too is Plaintiff's claim that ICE has not provided hit counts in this case, which is wholly inaccurate as reflected in the myriad correspondence between the parties.

5

1  Plaintiff does not argue that the records are not responsive to the FOIA Request.

2  Nor can Plaintiff require (as they seek) that ICE continually conduct searches,
3  provide hit counts, and give Plaintiff the discretion to "further reduce the volume of
4  records for production or add further search terms…." Dkt. 101 at 10. Indeed, "FOIA
5  was not intended to reduce government agencies to full-time investigators on behalf of
6  requesters." *Assassination Archives*, 720 F. Supp. at 219. In requesting to interject itself
7  into every part of the process as if it had been appointed a supervising agent, Plaintiff
8  attempts exactly that.

9  **3. Part 4**

10  As Plaintiff's Status Report confirms, ICE has agreed to conduct a search of
11  ORAP using the additional search terms of "death," "life support," "critical condition,"
12  "intensive care," "ICU," and "hospice," for the time period January 1, 2016 to the
13  present. ICE also agreed to search for Directive 11003.4, although ICE maintained that it
14  is not responsive to Plaintiff's FOIA request and has been superseded by Directive
15  11003.5.

16  ICE merely asked that Plaintiff confirm that it has no further issues with respect to
17  Part 4, and thus will agree not to challenge the searches conducted for Part 4. Nowhere
18  did ICE state that Plaintiff's waiver was a condition precedent to it conducting the
19  search.

20  Last, as ICE communicated to Plaintiff previously, it will endeavor to provide a
21  hit count for these searches by November 22, 2024.

22  **4. Summary Judgment With Respect to Parts 5-9**

23  Plaintiff's extraordinary request that the Court order ICE to move for summary
24  judgment at this juncture has no legal support (and indeed Plaintiff cites none).
25  Regardless of which party files a summary judgment first, proceeding to partial briefing
26  now would be inefficient and would likely have the effect of slowing ICE's ability to
27  process the outstanding portions of Plaintiff's FOIA requests because the key agency
28  staff responsible for completing the outstanding processing would also be responsible for

working with undersigned counsel on summary judgment briefing.

Dated: November 13, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

 /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attorneys for Defendants