E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989 | 8790
    Facsimile: (213) 894-7819
    E-mail: Joseph.Tursi@usdoj.gov
          Jason.Axe@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | No. 2:22-cv-04760-SHK<br><br>**DEFENDANTS' SUPPLEMENTAL RESPONSE**<br><br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

Defendants Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") submit the following supplemental response to Plaintiff ACLU of SoCal's "Status Report" [Dkt. 101], and as directed by the Court's November 13, 2024 Order [Dkt. 104] and inquiries raised during the November 13, 2024 Status Conference.

**A. CRCL**

**1. CRCL FOIA's Processing & Technical Capabilities**

The CRCL FOIA office includes a small staff of 4 employees and has 116 open FOIA requests, in addition to document productions for several different FOIA and non-FOIA litigation matters, congressional requests, and Government Accountability Office inquiries. CRCL FOIA received 450 new FOIA requests in FY24. The office was created in April 2021, taking over the processing for CRCL FOIA and information disclosure requests from the DHS Privacy Office (PRIV), which had previously processed CRCL's requests.

Generally, when CRCL reviews records determined to be potentially responsive to a given search but were created by a separate component (for example, ICE or DHS OIG), such records would be referred to the originating component. Withholdings would only be identified and applied by CRCL if there are CRCL equities within the given record(s). If an entire document only has another component's equities (for example, an ICE medical record) the document would be referred to that component without any withholdings identified on behalf of CRCL, and the receiving office would process and provide a response for those records.

In October 2022, CRCL FOIA, along with other DHS Headquarters and Component FOIA offices, began the transition from FOIA Express to Secure Release (SR) software to process record requests. CRCL completed the transition in Summer 2023. PRIV procured and is the owner of SR, and CRCL purchases licenses to use the software. In general, CRCL has access to the FOIA processing features of SR and has limited experience with SR's other capabilities. CRCL uses SR to manage disclosure

requests, receiving and tracking them, collecting information, reviewing, and preparing records, and documenting disclosures and communications related to each request.

      a.    **Search of CRCL Complaint Management System (CMS) Files**

Following the November 13, 2024 Status Conference, CRCL reviewed Exhibit A [Dkt. 101-1] to Plaintiff's Status Report and Request for Case Management Conference [Dkt. 101], which was a "Search Terms Report" (STR) from ICE in a different matter detailing information about a different records search.

Upon receiving the STR, CRCL attempted but was unsuccessful in locating the functionality in SR to generate this type of report. CRCL inquired with their contractor's software support team about whether there was a capability for CRCL to create a similar report and was advised as follows:

SR is built on the Relativity platform, so the software generally does have the capability to generate STRs. However, CRCL does not have permissions/access to the STR functionality because it is not typically used for FOIA processing, but instead is a feature commonly utilized for e-discovery. As a result, such searches can be conducted but that access to this feature requires a special request for assistance to the technical team to set it up because it is not part of CRCL's standard SR access.

After obtaining STRs[1] for the two universes of documents in this case (CMS complaint files and Office of Chief Information Officer (OCIO) electronic file searches) CRCL noted that a portion of the records CRCL had previously determined responsive through key word searches in SR were returning a smaller number of hits in the STR. For the CMS search, the terms were initially run against the summary of allegation, so the individual records obtained from each responsive complaint file do not necessarily contain the search terms in the summary of allegation. CRCL inquired about the discrepancy as it pertains to the email searches, and it was determined that although keyword searches can be performed in the document tab in SR, if proximity terms are

---

[1] Copies of the two STRs are attached hereto as Exhibit 1.

included, SR does not normally have the functionality to produce accurate proximity search results. CRCL would need to submit a ticket to the technical support contractor to request a "dtSearch index,"[2] which supports proper functioning of proximity searches. Otherwise, proximity term searches can produce false positives under the typical keyword search functionality.

While such a search can be conducted by CRCL, it would require CRCL to submit a special request in order to exceed the present function of SR available to it. CRCL was also advised that the process is "not straight and simple" and will necessitate additional technical staffing by contractors on an as-needed basis to generate the report and support searching the indexed collection of documents.

A special request must be made on a case-by-case basis and will require additional time for the software support team to create an "add-on" for the SR platform. The request requires a contractor to create a dtSearch index, including instances where there are proximity terms included in keywords. Furthermore, additional time will be needed for each request that requires the contractor to create a dtSearch index. Each such request must include the request number and search terms are placed as conditions, so that CRCL is able to identify the new set of responsive documents to that search.

CRCL's technical support contractor completed creating the dtSearch index for this matter on November 18, 2024, and indicated that additional proximity word searches can be completed as well. Specifically, two (2) searches for 2024-CRLI-00005 (CRCL requested that CRCL's technical support contractor create a separate case for a portion of the records, 2024-CR-Other-00011, which is being used so the searches do not interfere with the CMS/Complaint file records already reviewed). At present, CRCL FOIA still

---

[2] "Relativity's dtSearch engine provides advanced search functionality such as proximity, stemming, and fuzzy searches across any field type. It also supports the use of Boolean operators and custom noise word lists and the basic searching features available in keyword searches. After building your dtSearch index, the Dictionary search option becomes available….You can build custom dtSearch indexes for a subset of documents or for certain document fields in a workspace. You must have the appropriate permissions to complete this task." *See* https://help.relativity.com/RelativityOne/Content/Relativity/dtSearch/dtSearch.htm.

does not have access to the STR tab to generate STR reports because the request to grant access is still being processed. In the meantime, CRCL can contact its technical support contractor if an additional STR is required.

### b. OCIO Searches

The Office of Chief Information Officer (OCIO) is a separate component within DHS headquarters and is organized outside of CRCL. *See* https://www.dhs.gov/office-chief-information-officer. OCIO is "responsible for implementing the programs necessary to align DHS's Information Technology (IT) personnel, resources, and assets. This includes all systems and infrastructure that support Department-wide missions and activities." *See id.* Unlike the search capability of SR, which is provided under contract to PRIV and with the assistance of a technical support contractor, OCIO uses different, more rudimentary search tools to perform searches for electronic records on behalf of CRCL. These searches must be performed by OCIO because CRCL does not have control over, or access to, the larger DHS IT infrastructure used by CRCL and other DHS Headquarters offices. OCIO employs a very basic version of Microsoft eDiscovery Standard and that software does not provide hit counts, page numbers, term reports. Like the staff of CRCL, OCIO has a small staff and allows CRCL to use one (1) employee to perform ad hoc searches which OCIO may perform when available and able.

## B. ICE

### 1. ICE FOIA's Technical Capabilities

The FOIA processing software that ICE is using in this case is Casepoint and SecureRelease. Within the software, ICE can search individual documents and the software allows ICE to provide hit counts, as it has throughout this litigation. That said, page counts require that all documents resulting from a search be imaged.[3] So too can

---

[3] Documents collected for processing in Casepoint can be of many file types (emails, PowerPoint, spreadsheets, etc.). These documents are still in their native format which differ from one another. To determine the number of pages that a document has, each one must be imaged. Imaging creates a single page image (tif file format usually) whereby each image file corresponds to what a page of that document would constitute. The number of tif files for each document then represents the total pages of that
*(footnote cont'd on next page)*

search terms be modified. In order to obtain the results of a modified search within the software, ICE generally needs a couple of weeks due to, in part, the volume of FOIA requests it has.

**2. Parts 1-3 of Plaintiff's FOIA Request**

Plaintiff requested that ICE provide a document hit count for the date range of November 19, 2015 – November 30, 2015 following ICE's additional search in accordance with Plaintiff's June 20, 2024 letter. As reported to Plaintiff on November 19, 2024, limiting the date range as requested resulted in six Significant Event Notification ("SEN") Report Notifications. This is about 1,185 pages.

On November 21, 2024, Plaintiff informed ICE that is has now waived production of the remaining approximately 25,000 pages of documents regarding Mr. Gulema dated before October 1, 2015. This leaves the 1,185 pages noted above, meaning that processing for Parts 1-3 of the FOIA request should be concluded by January 2025.

**3. Part 4 of Plaintiff's FOIA Request**

As ICE represented previously, it conducted a search of its Office of Regulatory Affairs and Policy ("ORAP") using the additional search terms of "death," "life support," "critical condition," "intensive care," "ICU," and "hospice," for the time period January 1, 2016 to the present. It provided a document hit count to Plaintiff on November 19, 2024 as follows:

death – 202

"life support" – 56

"critical condition" – 8

"intensive care" – 41

ICU – 15

Hospice – 16

---

document. Every single document that is loaded into Casepoint is not automatically imaged as page counts are not always needed and it is time consuming to image every page and derive a page count.

5

This is about 18,171 pages of emails. Additionally, Directive 11003.4 is 8 pages. The above hit counts reflect a de-duplicated and threaded count.

After providing the above to Plaintiff, it has requested more information. Specifically, Plaintiff now asks that ICE provide a revised page count of responsive documents that suppresses email attachments, that excludes copies of certain ICE detention standards, prioritizes production of certain records, and identifies which set of documents ORAP searched, and which particular custodians were searched.

ICE is reviewing these new requests and will respond to Plaintiff in due course.

### C. **Additional Considerations**

As Defendants have observed throughout this litigation, the nine-part FOIA request here is exceedingly broad. "[I]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome." *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. 1990). "Agencies must read FOIA requests as drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and thus are not obligated to construe FOIA requests to be less vague and less burdensome than the text of the requests.

At the outset of this litigation, the parties endeavored to confer over search terms and parameters for searches to uncover potentially responsive records to Plaintiff's request in the hopes of resolving this matter as efficiently as possible. Yet as the procedural history of the case shows, such efforts have not resulted in the efficient processing of Plaintiff's request because at every juncture, there have been requests for Defendants to run *additional* searches while productions are *ongoing*. Such has resulted in a ballooning universe of potentially responsive documents.

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA requests. Where the search terms are reasonably calculated to lead to responsive documents, **a**

**court should neither micromanage nor second guess the agency's search**." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (emphasis added); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (an agency "need not knock down every search design advanced by every requester[.]"). Nor is a search's adequacy determined by its fruits. *See Hoffman v. U.S. Border Prot.*, 2023 WL 4237096, at *5 (E.D. PA. 2023). Despite this, Plaintiff continually equates the fruits of Defendants' respective searches with the adequacy of their search efforts. Notably though, at no point has Plaintiff informed Defendants that any of the produced records were not responsive to the searches or, with few exceptions, that Plaintiff waives processing of certain records.

Instead, it appears that this matter is at the point where many of the remaining records may not be what Plaintiff is looking for specifically. To address that issue, Defendants propose that Plaintiff state, with specifics, the records they are most interested in, but have not received. Put another way, Defendants request that Plaintiff limit their requests to specifically identify what narrowed group of documents they are seeking. Without narrowing the requests, Defendants still have the obligation to respond to the existing requests, regardless of the search terms the parties agree to or Plaintiff proposes.

Rather than Plaintiff continually demanding that Defendants run additional searches (and threatening to seek judicial intervention if Defendants disagree), Defendants believe it is most efficient for them to complete the processing of all outstanding documents (with the hopes that the recently provided hit counts will enable

Plaintiff to state whether they waive processing of certain records). The parties may then turn to summary judgment briefing, where the Court will have the benefit of full briefing on the respective searches and withholdings – just as it did with respect to DHS OIG. If the Court determines, at that point, that certain searches were inadequate, it may then order specific searches to cure the defect.

But continually requiring Defendants to run supplemental searches and respond to inquiries pointed at the adequacy of such searches is neither practical nor efficient. That is because, given that Plaintiff will not waive its challenge to *any* of ICE's searches for *any* of the nine-part FOIA request, it all but guarantees that the Court will need to adjudicate the adequacy of Defendants' searches anyway. But Plaintiff's continued demands that Defendants perform supplemental searches only prolongs this case. It may well be that a given search is not perfect. But FOIA does not require that it be. In FOIA cases, "[t]he adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Hum. Rights v. State Dept.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (*citing Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). An agency's search for records is considered "adequate" if it was conducted "using methods which can be reasonably expected to produce the information requested." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (*quoting Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Lahr v. National Transp. Safety Bd.,* 569 F.3d 964, 986 (9th Cir. 2009); *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (the agency need only show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."); *see also Pomares v. Dep't of Veterans Affairs*, 113 F.4th 870, 881 (9th Cir. 2024) ("[Plaintiff] may have preferred a different search method, but her objections do not undermine the adequacy of the VA's search."). The "issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Citizens Comm'n on Human Right*, 45 F.3d

at 1328. An agency's search need not be exhaustive, merely reasonable. *Oglesby*, 920 F.2d at 68. But here, Plaintiff continually demands that Defendants prematurely justify their searches not only based on the fruits of the documents, but without the benefit of full briefing.

Dated: November 22, 2024

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

 /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attorneys for Defendants