LABONI A. HOQ (SBN 224140)
*laboni@Hoqlaw.com*
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> *Defendants*. | Case No. 2:22-CV-04760-SHK <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT** <br><br> Honorable Shashi H. Kewalramani <br> United States Magistrate Judge <br><br> Hearing Date: May 7, 2025 <br> Time:  10:00 a.m. <br> Place:  3470 12th St., Riverside, CA 92501, Courtroom 3 or 4 |

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

2

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO DEFENDANTS AND COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT on May 7, 2025, at 10:00 a.m., or as soon thereafter as the parties may be heard, in the courtroom of the Honorable Shashi H. Kewalramani, located at 3470 12th St., Riverside, CA 92501, Courtroom 3 or 4, or virtually, Plaintiff American Civil Liberties Union of Southern California ("ACLU-So Cal") will bring a hearing for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") action on their second claim for relief against Defendant U.S. Immigration and Customs Enforcement ("ICE") on the grounds that ICE has conducted an inadequate search for agency records.

More particularly, because ICE has failed to make the requisite showing of the adequacy of its search, Plaintiff seeks an order requiring Defendant ICE to conduct a reasonable search and timely produce records responsive to Plaintiff's requests under FOIA, 5 U.S.C. § 552.

The grounds for this motion are that there is no genuine issue as to any material fact and Plaintiff is entitled to judgment as a matter of law on its Second Cause of Action as to Defendant ICE. This motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Plaintiff's statement of uncontroverted facts, the declarations of Eunice H. Cho and Kyle Virgien, the pleadings and papers filed in this action, and such oral argument and evidence as may be presented at the hearing on the motion.

This motion is made pursuant to the conference of counsel pursuant to L.R. 7-3, which took place on January 17, 2025, and this Court's Order, ECF No. 111.

///
///
///
///
///

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

3

1    Dated: February 26, 2025          Respectfully submitted,

2
                                       */s/ Laboni Hoq*
3                                      LABONI A. HOQ (SBN 224140)
                                       laboni@hoqlaw.com
4                                      HOQ LAW APC
                                       P.O. Box 753
5                                      South Pasadena, California 91030
                                       Tel.: (213) 973-9004
6
                                       EVA BITRAN (SBN 302081)
7                                      *ebitran@aclusocal.org*
                                       ACLU FOUNDATION OF SOUTHERN
8                                      CALIFORNIA
                                       1313 West Eighth Street
9                                      Los Angeles, California 90017
                                       Tel.: (213) 977-9500
10                                     Fax: (213) 915-0219

11                                     EUNICE CHO (Pro Hac Vice)
                                       echo@aclu.org
12                                     AMERICAN CIVIL LIBERTIES
                                       UNION FOUNDATION
13                                     915 Fifteenth Street NW, 7th Floor
                                       Washington, DC 20005
14                                     Tel.: (202) 548-6616

15                                     KYLE VIRGIEN (SBN 278747)
                                       kvirgien@aclu.org
16                                     AMERICAN CIVIL LIBERTIES
                                       UNION FOUNDATION
17                                     425 California Street, Suite 700
                                       San Francisco, CA 94104
18                                     Tel.: (202) 393-4930

19
                                       *Attorneys for Plaintiff*
20

21

22

23

24

25

26

27
     *ACLU of Southern California v. U.S. ICE, et al.*,
28   Case No. 2:22-CV-04760-SHK
     PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

                                                                                    4

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ............................................................................................... 2

A.    ICE Releases People Facing Imminent Death from
Detention Custody, Avoiding Accountability and Public
Reporting Requirements .......................................................................... 2

B.    ICE Has Conducted Overbroad Searches Yielding Large Page Counts,
and Failed to Follow Obvious Leads For Responsive Documents ....... 4

III. ARGUMENT ................................................................................................... 6

A.    Legal Standard ......................................................................................... 6

B.    ICE Has Failed to Conduct an Adequate Search
for Response Documents ......................................................................... 7

      1.  Parts 1-3 ............................................................................................. 8

          Search History ................................................................................ 8

          Relevance of Overlooked Materials ............................................ 9

      2.  Part 5 ................................................................................................ 12

          Search History .............................................................................. 12

          Relevance of Overlooked Materials .......................................... 12

      3.  Parts 6 and 7 .................................................................................... 14

          Search History .............................................................................. 15

          Relevance of Overlooked Materials .......................................... 15

      4.  Part 8 ................................................................................................ 17

          Search History .............................................................................. 17

          Relevance of Overlooked Materials .......................................... 17

      5.  Part 9 ................................................................................................ 19

          Search History .............................................................................. 20

          Relevance of Overlooked Materials .......................................... 20

IV. CONCLUSION ............................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Campbell v. U.S. Dep't of Just.*,
   164 F.3d 20 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) .................................................... 19

*Fraihat v. ICE*,
   No. 5:19-cv-1546 ................................................................................................... 5, 18, 19

*Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*,
   335 F. Supp. 3d 7 (D.D.C. 2018) .......................................................................................... 7

*Hernandez Roman v. Wolf*,
   No. 20-CV-00768, ECF No. 1220 (C.D. Cal. Jul.16, 2021) ................................................. 7

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ................................................................................................................ 6

*Nat'l Immigr. L. Ctr. v. ICE*,
   CV 14-9632 PSG, 2015 WL 12684437 (C.D. Cal. Dec. 11, 2015) ...................................... 20

*Nat'l Res. Def. Council v. Dep't of Def.*,
   388 F. Supp. 2d 1086 (C.D. Cal. 2005) ................................................................................. 6

*Nicholls v. U.S. Off. of Pers. Mgmt.*,
   863 F. Supp. 2d 4 (D.D.C. 2012) .......................................................................................... 7

*Pub. Just. Found. v. Farm Serv. Agency*,
   No. C 20-01103 WHA, 2020 WL 6787136 (N.D. Cal. Oct. 5, 2020) ................................... 19

*Transgender Law Ctr. v. Immigr. & Customs Enf't*,
   46 F.4th 771 (9th Cir. 2022) .................................................................................... 2, 6, 7, 22

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*,
   489 U.S. 749 (1989) ................................................................................................................ 6

*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) .............................................................................................. 21

**Statutes**

FOIA ............................................................................................................................... *passim*

## I.      INTRODUCTION

This Freedom of Information Act ("FOIA") lawsuit concerns Immigration and Customs Enforcement's ("ICE") practice of releasing from its custody detained immigrants facing imminent death, a practice that has allowed the agency to evade public reporting of these deaths and avoid accountability for dangerous detention conditions and inadequate medical care. Because the public has a vital interest in understanding this practice, the American Civil Liberties Union Foundation of Southern California ("ACLU So Cal" or "Plaintiff") submitted a FOIA request ("Request") in April 2022 to ICE, Department of Homeland Security's ("DHS") Privacy Office, and DHS's Office of Inspector General ("DHS-OIG") (collectively "Defendants"). Plaintiff's Statement of Uncontroverted Facts ("PSUF"), ¶ 1. Plaintiff filed this lawsuit on July 12, 2022, after the agencies failed to respond as FOIA requires.

Plaintiff requested nine categories of information regarding these deaths. Parts 1-3 of the Request sought records regarding four specific individuals, Teka Gulema, Johana Medina Leon, Jose Ibarra Bucio, and Martin Vargas Arellano, all of whom ICE released from its official custody, while hospitalized, shortly before their deaths. Parts 4-9 of the Request sought records regarding ICE's policies and practices of releasing critically-ill detainees from custody prior to their deaths, and documentation regarding detainees who met a similar fate.

Plaintiff brings this Motion for Summary Judgment because ICE has not performed a reasonable or adequate search for responsive documents. Although ICE's search efforts, on face, may appear comprehensive, a closer examination reveals that the agency has performed overbroad searches yielding voluminous, irrelevant results, of custodians unlikely to possess responsive records. Absent from ICE's account of its search history, however, is an accounting for Defendants' refusal to follow clear leads for relevant documents suggested by Plaintiff. Because the

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

government is required to "appropriately respond to 'positive indications of overlooked materials,'" and has a "duty" to "follow obvious leads" under FOIA, ICE's search is deficient. *Transgender Law Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022) (citations omitted).

ICE has failed to establish the adequacy of its search for responsive records. Plaintiff's motion for summary judgment addresses those missing and overlooked records. It narrowly targets five discrete areas where there is clear evidence of documents that ICE has neglected in its search efforts. This Court should grant Plaintiff's motion for summary judgment, and order ICE to timely conduct a search for and produce records responsive to Plaintiff's specific leads.

## II.    BACKGROUND

### A.    ICE Releases People Facing Imminent Death From Detention Custody, Avoiding Accountability And Public Reporting Requirements.

In FY 2024, ICE held 277,913 people in its detention facilities nationwide.[1] ICE is expected to detain even more people this year.[2] ICE has publicly claimed that it "prioritizes the health, safety, and well-being of all [noncitizens] in its custody," and that "any death that occurs in ICE custody is a significant cause for concern."[3] But as the media and families of formerly detained immigrants have reported, ICE has engaged in a disturbing practice: releasing detained immigrants nearing death

---

[1]    U.S. Immigration and Customs Enforcement, Detention Statistics, https://www.ice.gov/spotlight/statistics [https://perma.cc/6HMR-RC4K], last visited Feb. 26, 2024.

[2] Julia Ainsley, Laura Strickler, and Didi Martinez, *Incoming Trump Admin Is Eyeing New Immigrant Detention Centers Near Major U.S. Cities*, NBC News, Nov. 12, 2024, https://www.nbcnews.com/politics/immigration/incoming-trump-admin-eyeing-new-immigrant-detention-centers-major-us-c-rcna179843 [https://perma.cc/U8E4-XWKX].

[3]    *Detained Alien Deaths in ICE Custody*, ICE (Feb. 21, 2025), https://www.ice.gov/detain/detainee-death-reporting [https://perma.cc/7CQK-5AY2].

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

from custody, allowing the agency to avoid public reporting, accountability requirements, and investigation of deaths necessary to improve care. Unfortunately, this is not a new practice: in 2009, ICE admitted that it had omitted one in 10 deaths of detained immigrants from a list it had submitted to Congress, and that ICE had also discharged detainees shortly before they died, reducing the number of reported deaths.[4]

ICE's failure to account for these hidden deaths in recent years has taken on heightened importance in light of the likely undercount of detained immigrants who died during the recent COVID-19 pandemic.[5] The current administration's plans to lower detention standards,[6] and its efforts to dramatically expand immigration detention nationwide,[7] including at federal prisons,[8] military prisons at Guantanamo,

---

[4] Nina Bernstein, *Officials Hid Truth of Immigrant Deaths in Jail*, N.Y. Times, Jan. 9, 2010, https://www.nytimes.com/2010/01/10/us/10detain.html [https://perma.cc/E9AH-Y7YL].

[5] Dan Glaun, *How ICE Data Undercounts COVID-19 Victims,* PBS Frontline, Aug. 11, 2020, https://www.pbs.org/wgbh/frontline/article/how-ice-data-undercounts-covid-19-victims/ [https://perma.cc/ZQ97-86DA].

[6] Ted Hesson, *ICE Aims to Lower U.S. Immigration Detention Standards to Encourage More Sheriffs to Aid Crackdown*, Reuters, Feb. 1, 2025, https://www.reuters.com/world/us/trump-administration-aims-lower-immigration-detention-standards-let-more-jails-2025-02-01/.

[7] Laura Strickler, *New Immigration and Customs Enforcement Data Shows Administration Isn't Just Arresting Criminals*, NBC News, Feb. 19, 2025, https://www.nbcnews.com/politics/national-security/new-ice-data-shows-administration-isnt-just-arresting-criminals-rcna192656.

[8] Michael R. Sisak, *Federal Prisons Being Used to Detain People Arrested in Trump's Immigration Crackdown*, Associated Press, Feb. 7, 2025, https://apnews.com/article/immigration-federal-prisons-trump-25d676a6ebbff139ae04a75cd91be7e8.

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

3

Cuba,[9] and its planned use of military bases for immigrant detention further underscore the importance of public transparency regarding these hidden deaths.[10]

## B. ICE Has Conducted Overbroad Searches Yielding Large Page Counts, and Failed to Follow Obvious Leads For Responsive Documents.

ICE's Search Summary, provided to Plaintiff on February 19, 2025, provides for the first time comprehensive information regarding specific search terms, custodians, and resulting hit counts of ICE's searches. Search Summary, Ex. A, Declaration of Eunice Cho ("Cho Decl."). Plaintiff will not summarize the full procedural history of this case here, but it notes two common themes that help to place the Search Summary in context.

First, although ICE's search summary suggests that that it has conducted a number of productive searches, yielding large page counts, a closer examination reveals that ICE's overbroad search methods have frequently resulted in significant numbers of irrelevant and duplicative documents. For example, after ICE returned tens of thousands of responsive pages for Mr. Teka Gulema, it "resisted date-filtering" these records. Order at 11, ECF No. 62. ICE's "search for Part 4 initially resulted in over 530,000 documents," and ICE took the position that it "could not conduct a Boolean search proposed by Plaintiff" to narrow this universe. *Id.* at 3 (citation and quotation marks omitted). Likewise, ICE "conducted a search for Part 9 without Plaintiff's suggested [narrowing] Boolean search terms and yielded 16,000 emails," *Id.* at 11 (citation and quotation marks omitted), "most of which appeared not to be related"

---

[9] Carol Rosenberg, *What We Know About the Secretive Migrant Mission at Guantanamo Bay*, N.Y. Times, Feb. 19, 2025, https://www.nytimes.com/2025/02/19/us/politics/migrant-mission-guantanamo-bay.html.

[10] Zolan Kanno-Youngs, Hamed Aleaziz, and Eric Schmitt, *Trump Plans to Use Military Sites Across the Country to Detain Undocumented Immigrants*, N.Y. Times, Feb. 21, 2025, https://www.nytimes.com/2025/02/21/us/politics/migrants-military-sites.html.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

to the request, Defs.' Nov. 2, 2023 Letter, Ex. K, Cho Decl. at 5. The Court noted on December 8, 2023, that ICE had "accurately determined its abilities to carry out" the types of narrowing Plaintiff had suggested "only recently, after Plaintiff sought court-intervention over the parties' disputes." Order, ECF No. 62 at 11. ICE also initially reported to Plaintiff that its search for records responsive to Part 4 of the Request yielded 18,171 pages of records, Defs.' Nov. 19, 2024 Email, Ex. D, Cho Decl. at 1, but when ordered by the court to provide information regarding its search, revised its hit count to 1,641 pages. Minute Order, ECF No. 106; Email from Joseph Tursi to Court, Dec. 11, 2024, Ex. B, Cho Decl.

Second, even though ICE's Search Summary lists areas where it has conducted searches and produced documents, ICE has flatly refused to conduct further searches for highly responsive documents in response to the leads provided by Plaintiff. For example, although Plaintiff informed Defendants that documents related to ICE's Significant Detainee Illness list and meetings would be highly responsive to Part 5 of the Request, ICE refused to conduct any search, or compromise on narrowing Plaintiff's suggested search terms. Instead, counsel for ICE instructed Plaintiff that the issue "will need to be briefed." Pl.'s Dec. 21, 2023 Letter, Ex. G, Cho Decl. at 6. Even though Plaintiff has specifically explained that documents responsive to Parts 6 and 7 would have been compiled by ICE's Joint Intelligence Operations Center (JIOC), ICE takes the position that it need not search JIOC because the records "do not originate with JIOC." Defs.' Jan. 22, 2024 Letter, Ex. E, Cho Decl. at 2. And even though Plaintiff has pointed ICE to its employee's deposition testimony explaining that records it kept as part of reporting for its *Fraihat* litigation are "the only place" where it would have kept information responsive to Part 8, Pl.'s May 19, 2023 Letter, Excerpts of Deposition of Jennifer Moon, 163:4-10, Ex. T, Cho Decl. at 11, ICE has flatly refused to search there, Defs.' Oct. 10, 2023 Letter, Ex. L, Cho Decl. at 4.

## III.    ARGUMENT

### A.    Legal Standard

FOIA's core purpose is to inform citizens about "what their government is up to." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). FOIA "ensure[s] an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. Dep't of Def.,* 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (citation omitted). The underlying facts and possible inferences are construed in Plaintiff's favor. *Id.* at 1095 (citation omitted).

A government agency must meet its burden to "demonstrate[e] that its search was reasonably calculated to uncover all relevant documents." *Transgender Law Ctr.* 46 F.4th at 779 (internal quotation marks and citation omitted). In keeping with the important "purpose and policy of FOIA," the law imposes a "heavy burden" on the government to demonstrate search adequacy "beyond material doubt." *Id.* at 782. "Demonstrating adequacy 'beyond material doubt' is, to be sure, a heavy burden, but such a burden appropriately reflects the purpose and policy of FOIA, including transparency, public access, and an informed citizenry." *Id.* at 779 (internal citations omitted.)

As part of a reasonable search, the government must "appropriately respond to 'positive indications of overlooked materials[,]'" *id.* (quoting *Hamdan*, 797 F.3d at 771), and has a "duty" to "follow 'obvious leads,'" *id.* (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)). "Ultimately, the adequacy of a search is judged 'not by the fruits of the search, but by the appropriateness of the

methods used to carry out the search." *Id.* (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).

"FOIA requests are not a game of Battleship." *Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018). "The requester should not have to score a direct hit on the records sought based on the precise phrasing of his request," *id.*, and "a FOIA requester need not utilize the precise jargon employed by agency officials," *Nicholls v. U.S. Off. of Pers. Mgmt.*, 863 F. Supp. 2d 4, 10 (D.D.C. 2012). "Rather, the agency must liberally interpret the request and frame its search accordingly." *Gov't Accountability Project*, 335 F. Supp. 3d at 12.

**B.    ICE Has Failed to Conduct an Adequate Search for Responsive Documents.**

ICE has failed to conduct an adequate search for responsive documents because it has failed to follow "obvious leads" likely to yield overlooked records. *Transgender Law Ctr.*, 46 F.4th at 780. Plaintiff identifies five areas of inadequate search. First, ICE conducted an inadequate search for records related to Martin Vargas Arellano, in response to Parts 1-3 of the Request. Responsive records are likely to highlight systemic agency failures regarding ensuring accountability for detainee illness and death on ICE's watch. *See, e.g., Hernandez Roman v. Wolf*, No. 20-CV-00768, ECF No. 1220 (C.D. Cal. Jul.16, 2021). Second, ICE conducted an inadequate search for records related to ICE's Significant Detainee Illness ("SDI") list and meetings, in response to Part 5 of the Request. Third, ICE conducted an inadequate search for Significant Incident Reports ("SIR") related to the release of hospitalized detainees and the deaths of detainees previously released from custody while hospitalized, in response to Parts 6-7 of the Request. Fourth, ICE conducted an inadequate search for records related to the release and/or death of detainees critically ill with COVID-19, in response to Part 8 of the Request. Fifth, ICE conducted an

inadequate search for financial and billing records related to the release of detainees
prior to their deaths, in response to Part 9 of the Request.

### 1. Parts 1-3

Parts 1-3 of the request seek records related to four detainees who died, while
hospitalized, shortly after their release from ICE custody. Specifically, Part 1 seeks:

> Any and all documents, without limitation to date, including any communications,
> investigatory reports, and any and all exhibits, appendices, or attachments thereto,
> relating to the hospitalization, death, decision to release from custody, or release
> from custody of the following individuals: Teka Gulema, Johana Medina Leon,
> Jose Ibarra Bucio, and Martin Vargas Arrellano.

Part 2 seeks:

> Any and all DHS OIG reports of investigation that are identified in any of the
> records responsive to Request #1. This includes any and all exhibits, appendices,
> or attachments to the DHS OIG reports of investigation.

Part 3 seeks:

> Any and all DHS OPR reports of investigation that are identified in any of the
> records responsive to Request #1. This includes any and all exhibits, appendices,
> or attachments to the DHS OPR reports of investigation.

ECF No. 1-1 at 4-5.

**Search History**. ICE's search summary identifies custodians searched, which are
limited to two ICE headquarters level staff,[11] and five ICE Los Angeles Field Office
staff.[12] Search Summary, Ex. A, Hoq Decl. at 3-4.

---

[11] The custodians from ICE headquarters appear to include: (1) Office of Professional
Responsibility (OPR) External Reviews and Analysis Unit; and (2) Enforcement and
Removals Operations IHSC Investigations Unit Program Manager.

[12] The custodians at the Los Angeles Field Office appear to include four Los Angeles
Field Office Supervisory Deportation and Detention Officers, and the Acting Field
Office Director in the Los Angeles Field Office.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**__Relevance of Overlooked Materials__**. Plaintiff challenges the adequacy of ICE's search for Parts 1-3, as records produced in this case by ICE and the Office of Civil Rights and Civil Liberties ("CRCL") show that ICE failed to follow obvious leads and conduct a search for two categories of highly relevant records. First, ICE failed to search for and produce records related to a directive sent from ICE Headquarters to ICE Enforcement and Removal Operations' ("ERO") Adelanto Field Office to draft a Detainee Death Notice for detainee Martin Vargas Arellano in the days before his impending death, and the Adelanto Field Office's response. Second, ICE failed to search for and produce records related to ICE's response to CRCL's findings regarding its failure to conduct a Detainee Death Review for Mr. Vargas Arellano.

First, Defendant ICE produced an email chain dated March 4, 2021, discussing an ICE headquarters directive to the Adelanto Field Office to prepare a death notification for Mr. Vargas Arellano. The email chain was sent four days before Mr. Vargas Arellano's death on March 8, 2021. Email chain dated Mar. 4, 2021, Ex. V, Cho Decl. These emails show that ICE's Field Operations Division in Washington, D.C. directed the Adelanto Field Office "to begin the necessary paperwork for a death notification in the event of [Mr. Vargas's] demise." *Id.* at Bates 13390; PSUF ¶ 2. The email chain includes a powerpoint presentation, with instructions about how to complete the death notice, including inclusion of "a detailed, moment by moment account of the medical treatment the alien received, in particular after ICE became aware the alien was in crisis." Email chain dated Mar. 4, 2021, Ex. V, Cho Decl. at Bates 13389. Despite references in this email chain showing that Adelanto ICE officials agreed to prepare a death notification for Mr. Arellano, ICE has failed to produce any such document, or any other correspondence related to whether a notification was completed, and if not, why. Furthermore, while the March 4, 2021 email chain has redacted the names of the senders and recipients, these names are visible to the agency, and indicate relevant custodians who would likely have this

highly responsive information. Defendants should be ordered to disclose the senders and recipients of this email chain, and allow the parties to meet and confer about what subset of them should be searched for documents related to ICE's compliance with appropriate policies and practices related to terminally ill detainees.

Second, in response to this litigation, CRCL recently produced documents related to its July 12-16, 2021 investigation into a complaint about Mr. Vargas Arellano's hospitalization and deathbed release, which included CRCL's findings and recommendations to ICE. Memorandum from Dana Salvano-Dunn, Ex. W, Cho Decl. at 1. These documents are replete with leads for further searches ICE should have conducted to meet its search obligations. For example, CRCL issued a memo to 13 named ICE headquarters level staff, laying out its policy recommendations in response to the complaint related to Mr. Vargas Arellano, which asked that "ICE provide a response to CRCL 60 days whether it concur or non-concur with these recommendations. If ICE concurs, please include an action plan." *Id.* at 9; PSUF ¶ 3. This document identifies a number of responsive documents, including those discussing ICE's response to CRCL's recommendations.  ICE should be required to search some subset of ICE officials identified on this memo for responsive records, and as a starting point Plaintiff asks that the Court order a search of Corey Price, ICE's Executive Associate Director of Enforcement and Removal Operations.

Similarly, CRCL produced an email to unidentified "ICE Colleagues" dated August 16, 2021, the day it completed its investigation, outlining its findings and next steps, which provide additional search leads ICE was required to follow.  The email states in relevant part:

> As you are aware, CRCL recently conducted a virtual onsite investigation into the conditions of detention at the Adelanto ICE Processing Center in Adelanto, CA from July 12-16, 2021. In an effort to allow ICE to more quickly respond to the concerns we identified, CRCL is sending you a brief, informal summary of issues

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

10

> identified by our subject matter experts. The information below
> represents many, but not all, of the issues that we will be included in
> our forthcoming formal expert recommendations memo.

*Id.* at 12. Among the leads ICE should have—but failed to—follow based on this email excerpt, includes information regarding the preparation of an "expert recommendation memo," which ICE should have searched for and produced as well, but did not. *Id.*

For these reasons, Plaintiff asks that ICE conduct a further search for documents to locate and produce the documents discussed above, including but not limited to any draft death notification for Mr. Vargas Arellano or communication as to why one was not completed, any expert memoranda related to Mr. Vargas Arellano's and/or the issue of ICE's failure to carry out appropriate policies, practices and directives related to terminally ill detainees, and ICE's response to CRCL's finding that ICE improperly failed to complete a Detainee Death Review for Mr. Vargas Arellano. In addition to searching for these specific documents, ICE should be required to conduct a search of each of the ICE officials referenced above, Email chain dated Mar. 4, 2021, Ex. V, Cho Decl.; Memorandum from Dana Salvano-Dunn, Ex. W, Cho Decl., to locate further responsive records. To ensure ICE completes adequate searches of these custodians, Plaintiff asks that ICE be ordered to utilize the following search parameters:

- Search Terms (Non-Case Sensitive):
  - "Vargas Arellano" or "Vargas-Arellano" or Martin w/5 Vargas or Martin w/5 Arellano or "A205 718 808" or "205-718-808" or "205 718 808"
- Search Custodians:
  - Corey Price
  - At least three (3) custodians referenced on the March 4, 2021 email chain re "FW: VARGAS-Arellano, Martin, A205 718 808," to be identified through a meet and confer process between the parties, Ex. V, Cho Decl.
- Timeframe: March 1, 2021 to December 31, 2022.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

11

**2. Part 5**

Part 5 of the Request seeks records that identify other detainees released from custody while hospitalized. Specifically, it seeks:

> Spreadsheets, emails, documents, communications, databases, lists, and other data compilations in the possession of ICE Leadership, ICE Enforcement and Removal Operations, ICE Health Service Corps, and ICE Office of Professional Responsibility that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the full-time care of external healthcare providers or facilities (including for COVID-19 treatment), or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. Requested materials include, but are not limited to, dates of hospitalization of detainees, dates of hospital or external care facility discharge, name of treated detainees' detention facilities, and reasons for detainees' hospitalization or external medical care. These materials should further include Medical Transfer Summary documents from DHS's eHR System and Alien Medical Records System, and any versions of the Significant Detainee Illness Spreadsheet that identify detainees who were released from custody while (a) hospitalized (including for COVID-19 treatment); (b) in the care of external healthcare providers or facilities (including for COVID-19 treatment); or (c) released from custody immediately prior to transfer to an emergency room, hospital, or external care facility.

ECF No. 1-1 at 6.

**Search History**. Defendants have processed and produced 551 pages in response to this search, based on a search for records by Stewart Smith, Assistant Director of ICE Health Service Corps ("IHSC"). Search Summary, Ex. A, Cho Decl. at 7; Defs.' Nov. 2, 2023 Letter at 4, Ex. I, Cho Decl. at 4. On November 2, 2023, ICE informed Plaintiff that "it is ICE's position that this search is complete." *Id.*

**Relevance of Overlooked Materials**. Plaintiff has repeatedly requested that ICE conduct a search for records related to ICE's Significant Detainee Illness ("SDI") meetings and list, which are likely to be highly relevant to Plaintiff's Request. As described in ICE ERO Directive No. 11853.3, *Significant Detainee Illness* ("SDI

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

12

Directive"), ICE maintains an "SDI list" that includes cases of detainees where there is "significant coordination required to repatriate *or to release* a detainee/resident in the United States due to their medical condition."[13] PSUF ¶ 4. As the SDI directive notes, "the SDI list ensures that [ERO] HQ is aware of detainees/residents with significant medical conditions and the potential effect on enforcement actions."[14] The SDI Directive notes that ICE regularly holds a "SDI meeting," which is a "collaborative effort involving IHSC, ERO Field Operations, and the Office of the Principal Legal Advisor (OPLA)."[15] PSUF ¶ 5.

Plaintiff has repeatedly requested that ICE conduct a search for records related to the SDI list and meetings. *See, e.g.* Pl.'s Jun. 12, 2023 Letter, Ex. R, Cho Decl. at 4; Pl.'s Jul. 12, 2023 Letter, Ex. O, Cho Decl. at 3-4; Pl.'s Sept. 14, 2023 Letter, Ex. M, Cho Decl. at 6-7; Pl.'s Nov. 9, 2023 Letter, Ex. J, Cho Decl. at 3-4. Defendants, however, have wholly refused to conduct a search for records related to SDI meetings and list. *See, e.g.* Defs.' Letter of Oct. 10, 2023, Ex. L, Cho Decl. at 3; Defs.' Letter of Nov. 2, 2023, Ex. K, Cho Decl. at 4; Defs.' Letter of Jan. 17, 2024, Ex. F, Cho Decl. at 3. Defendants argue that Plaintiffs' request for SDI-related records is overbroad, and would require a search of "hundreds of custodians who attended the SDI meetings from 2016 to the present." Defs.' Resp. to Pl.'s Request for Status Conf. at 5, ECF No. 74 at 5. However, Defendants have categorically refused to consider Plaintiff's proposals to narrow the scope of the search, instead informing Plaintiff that the issue "will need to be briefed." Pl.'s Dec. 21, 2023 Letter, Ex. G, Cho Decl. at 7; *see also* Pl.'s Letter of Nov. 9, 2023, Ex. J, Cho Decl. at 3-4; Pl.'s Letter of Dec. 13, 2023, Ex. H, Cho Decl. at 6-7 (proposing a narrowed search). No records related to the SDI List or SDI meetings have been produced by ICE.

---

[13] Exhibit A to Pl.'s Jun. 26, 2023 Letter, ICE, ICE ERO Directive No. 11853.3, *Significant Detainee Illness*, Dec. 1, 2015, Ex. P, Cho Decl. Bates No. 2046.

[14] *Id.*

[15] *Id.*

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

13

ICE's refusal to search for and produce records related to the SDI list and SDI meetings is unreasonable. Participants in the SDI meetings possess the authority to determine the release of detainees with significant medical conditions.[16] It is thus highly likely that participants in these meetings will possess responsive records. It is also clear that ICE maintains a SDI list, and discusses cases highly responsive to this FOIA request. For example, as documents produced by Defendants related to Teka Gulema indicate, discussions regarding custody of critically-ill detainees take place at SDI meetings. Ex. A to Pl.'s Nov. 9, 2023 Letter, Ex. J, Cho Decl. Bates No. 2466 (Email from Managed Care Coordinator, IHSC/ERO, Feb. 13, 2015, regarding "ERO short list in preparation for next week's SDI meeting."). IHSC also reported that it had encountered 155 instances of Significant Detainee Illness in FY 2021 to Congress.[17] IHSC noted that IHSC's Medical Case Management Unit staff "report SDIs to . . . ICE Enforcement and Removal Operations Personnel."[18]

Accordingly, Plaintiff requests that the Court order ICE to timely conduct a search for and produce copies of SDI lists, as well as emails, agendas, and notes regarding from SDI meetings. Plaintiff suggests that ICE conduct a search of records belonging to Dr. Ada Rivera, Deputy Medical Director, IHSC; and staff from ICE's ERO Field Operations who regularly participate in the SDI meeting.

### 3. Parts 6 and 7

Part 6 of the Request seeks records, including spreadsheets, significant incident reports (SIRs), and significant event notification reports (SENs) that mention the release of hospitalized detainees from custody. Specifically, it seeks:

---

[16] *Id.*

[17] Dep't of Homeland Security, *Healthcare Costs for Noncitizens in Detention*, Jul. 22, 2022 at 22-23, https://www.dhs.gov/sites/default/files/2022-09/ICE%20-%20Healthcare%20Costs%20for%20Noncitizens%20in%20Detention.pdf [https://perma.cc/SF36-ZMNN].

[18] *Id.* at 23.

> Spreadsheets, emails, significant incident reports (SIRs), significant event
> notification reports (SENs), or documents created by DHS OIG or ICE
> OPR that mention the release from custody of (a) hospitalized detainees;
> (b) detainees who at the time of release were patients in the care of external
> healthcare providers or facilities; or (c) detainees released from custody
> immediately prior to transfer to an emergency room, hospital, or external
> care facility.

ECF No. 1-1 at 6-7.

Part 7 of the Request seeks records, including spreadsheets, SIRs, SENs, and other documents that mention the death of any detainee previously released from custody while hospitalized. Specifically, it seeks:

> Spreadsheets, emails, SIRs, SENs, or documents created by DHS OIG or
> ICE OPR that mention the death of any detainee who had been previously
> released from custody while (a) hospitalized; or (b) a patient in the care of
> an external healthcare provider or facility; or (c) released from custody
> immediately prior to transfer to an emergency room, hospital, or external
> care facility.

ECF No. 1-1 at 7.

**Search History**. The parties have agreed upon a list of search terms for Parts 6-7. Pl.'s Jun. 12, 2023 Letter, Ex. R, Cho Decl. at 4-6; Defs.' Jun. 22, 2023 Letter, Ex. Q, Cho Decl. at 3; Pl.'s Jul. 12, 2023 Letter, Ex. O, Cho Decl. at 4-5. Defendants, however, have produced one ICE Directive policy in response to Parts 6 and 7. Search Summary, Ex. A, Cho Decl. at 9-10.

**Relevance of Overlooked Materials**. ICE has argued that in order to conduct this search, ICE Enforcement and Removal Operations (ERO) "needs a date, or an event, or a location, or alien number" to search for a SIR. Defs.' Nov. 2, 2023 Letter, Ex. K, Cho Decl. at 4-5. For that reason, Plaintiff requested that ICE conduct a search for the agreed-upon terms from records generated by ICE Joint Intelligence Operations Center (JIOC). Pl.'s Nov. 9, 2023 Letter, Ex. J, Cho Decl. at 4. As the Department of Homeland Security has noted, ICE's JIOC "is a round-the-clock facility that monitors significant event reports from ICE personnel, distributes information as appropriate

throughout ICE, and briefs ICE leadership on significant past and prospective events."[19] PSUF ¶ 6. ICE's JIOC "analyzes the SIRs and sends summaries of them to the appropriate offices and divisions."[20] PSUF ¶ 7.

On November 30, 2023, ICE agreed to conduct a search of its JIOC, stating that "ICE has no objection to searching JIOC and has no objection to doing so." Defs.' Nov. 30, 2023 Letter, Ex. I, Cho Decl. 4. However, on January 17, 2024, ICE abruptly changed course, and stated that "ICE tasked JIOC to conduct a search, but it deferred to ERO because the data points requested do not originate with JIOC. ERO has tasked HSC and Custody Management to conduct searches, which are continuing." Defs.' Jan. 17, 2024 Letter, Ex. F, Cho Decl. at 3.

ICE's refusal to require JIOC to conduct a search for SIR reports, using the agreed-upon search terms, is unreasonable. JIOC is a unit of ICE that is subject to the requirements of FOIA. Plaintiff suggested that ICE search JIOC records because ICE had previously claimed that ERO could not search SIR records without individual identifying information. Because JIOC sends analyses of SIR reports to appropriate field offices, ICE does not require individual identifying information to conduct a search for responsive SIR reports, and instead, can conduct a search using the agreed-upon terms of the JIOC analyses. ICE's Kafkaesque position that they cannot search the only location where these records are searchable does not square with their obligations under FOIA.

ICE has since claimed that "the daily reports drafted by JIOC are not in a searchable format." Defs.' Resp. to Pl.'s Request for Futher [sic] Status Conf at 6, ECF No. 74. However, ICE's threadbare excuse strains credulity, particularly given

---

[19] DHS, *Privacy Impact Assessment for the Significant Event Notification (SEN) System* 2 n.4, Oct. 15, 2021, https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice023a-sen-october2021.pdf [https://perma.cc/7EEE-A6JW].
[20] *Id.* at 2.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
Plaintiff's Motion for Summary Judgment

16

ICE's record as to technological impossibility in its searches in this case. *See, e.g.* Order at 11, ECF No. 62 ("It appears to the Court that Defendants have accurately determined its abilities to carry out some of Plaintiff's technical suggestions . . . only recently, after Plaintiff sought court-intervention over the parties' disputes.").

Accordingly, Plaintiff requests that the Court order ICE JIOC to timely conduct a search for records responsive to Parts 6 and 7, using the parties' agreed-upon search terms, and to make available technical staff from ICE and JIOC to address any technical questions that may arise. *See* Order at 15, ECF No. 62.

4. **Part 8**

Part 8 of the Request seeks records, including those that identify detainees who were hospitalized for COVID-19, and subsequently released from custody. Specifically, the Request seeks:

> Any and all documents, communications, and other records, including databases, spreadsheets, lists, and other data compilations, that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID- 19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. Requested information includes, but is not limited to, dates of hospitalization, detention facility, medical condition/reason for hospitalization or treatment, name and location of hospital, date of return to detention (if any), date of release from custody or issuance of order of recognizance (if any), and/or reason for release from custody.

ECF No. 1-1 at 7.

**Search History**. ICE reports that it has located, processed, and produced "[a]pproximately 1,711 pages" in response to this Part. Search Summary, Ex. A, Cho Decl. at 11.

**Relevance of Overlooked Materials**. On June 1, 2023, Plaintiff informed ICE that information responsive to this request would likely be found in ICE's

"[s]preadsheets regarding hospitalization or release compiled for or utilized in *Fraihat v. ICE*, No. 5:19-cv-1546" (C.D. Cal.)—a case involving COVID protections across ICE's entire detention network that would have swept in information responsive to this request. Pl's Jun. 1, 2023 Letter, Ex. S, Cho Decl. at 6. As a result, Plaintiff suggested that ICE search those spreadsheets—among other locations—for responsive documents. *Id.* ICE rejected this request later that month, writing "[i]nformation related to *Fraihat* was not requested in your client's FOIA request and thus ICE will not agree to add it to this search." Defs.' Jun. 22, 2023 Letter, Ex. Q, Cho Decl. at 4.

ICE's refusal to search for and produce responsive records compiled for or utilized in *Fraihat* is unreasonable. *Fraihat* established COVID-19 procedures for medically vulnerable individuals at all detention facilities across ICE's detention network. For the peak years of the pandemic, the Fraihat court ordered ICE to report system-wide statistics on detainees with COVID risk factors—including hospitalizations. *Fraihat v. U.S. Immigr. & Customs Enf't*, No. EDCV 19-1546 JGB (SHKX), 2020 WL 2758553, at *6 (C.D. Cal. May 15, 2020).

The *Fraihat* Compliance System is the only place where ICE kept key responsive data. ICE policies mandated that when someone at risk for COVID complications tested positive for COVID, their "[d]ocumentation must be completed on the latest version of the IHSC *Fraihat* Compliance System spreadsheet."[21] PSUF ¶ 8. And an ICE employee explained in a 2021 deposition in another case that the data at issue here cannot be found anywhere else: the "only place where we were actually capturing the hospitalization [data] is on the *Fraihat* [spreadsheets]." Pl.'s May 19, 2023 Letter, Excerpts of Deposition of Jennifer Moon, 163:4-10, Ex. T, Cho

---

[21] ICE, *Pandemic Response Requirements* 17 (Version 8.0, Apr. 2, 2022), https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities-v8.pdf [https://perma.cc/3JDD-AQZ8].

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

18

Decl. at 11; PSUF ¶ 9. When Plaintiff noted this point, ICE reiterated the same response: "ICE will not agree to . . . specifically searching for documents from the *Fraihat* litigation as Plaintiff did not request these documents in its original FOIA request." Defs.' Oct. 10, 2023 Letter, Ex. L Cho Decl. at 4.

ICE argues that ICE need not search its *Fraihat* records because Plaintiff's request did not use the word "*Fraihat*." But there is no such exception to an agency's search obligations. In a case involving similar facts, an agency performed an initial search that resulted in documents "allud[ing] to potentially responsive . . . records" in additional locations, but argued that it need not search in those additional locations because the FOIA request had not specifically asked for such a search. *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). But an agency "must [conduct the supplemental search] in addition to [its initial search] in response to a general FOIA request for which [the supplemental search location] may be relevant." *Id.* at 28-29; *see also Pub. Just. Found. v. Farm Serv. Agency*, No. C 20-01103 WHA, 2020 WL 6787136, at *6 (N.D. Cal. Oct. 5, 2020).

Accordingly, Plaintiff requests that the Court order ICE to timely conduct a search for records responsive to Part 8 from records compiled for *Fraihat v. ICE*, No. 5:19-cv-1546 (C.D. Cal.), using the search methodology ICE already used to search records of Dr. Stewart Smith for this Part. *See* Search Summary, Exhibit A, Cho Decl, at 10-11.

5. **Part 9**

Part 9 of the Request seeks billing records related to detainees released while hospitalized. Specifically, it seeks:

> Bills, invoices, charges, or records of payment that reflect payments made for healthcare for any detainee who was released from custody while (a) hospitalized; or (b) a patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment[.]

ECF No. 1-1 at 7.

**Search History**. ICE reports that it has provided an Excel spreadsheet with claims information for the four individuals named in Parts 1-3 of Plaintiff's Request. Search Summary, Ex. A, Cho Decl. at 11.

**Relevance of Overlooked Materials**. Part 9 seeks billing records related to detainees released from custody while hospitalized. Part 9 is not limited to the four specific people named in Parts 1-3. Instead, through this request Plaintiff seeks to use billing records to learn who, beyond those four specific people, has been released while hospitalized. ICE responded by producing a single spreadsheet listing only the four people specifically named in Parts 1-3. In its search summary provided to Plaintiff just the week before this brief is due, ICE admitted that it never searched for anyone beyond those four people, and instead it simply produced a spreadsheet generated by searching "Sharepoint and eClinicalWorks for the alien numbers and referral authorization numbers of the four decedents." Search Summary, Ex. A, Cho Decl. at 11; *see also* PSUF ¶ 13.

ICE plainly falls short of its burden to show it has conducted an adequate search. In fact, ICE represented to Plaintiff a year ago that it would conduct a specific terms-and-connectors search that Plaintiff had proposed to target people who had been released while hospitalized, and this agreement has been cited in a Court order and a status report filed by Plaintiff. PSUF ¶¶ 10-12. Only now—in its search summary provided to Plaintiff just the week before this brief is due—does ICE admit that it never conducted this search. *Id.*; *see also* PSUF ¶ 13.

ICE bears the burden to justify search adequacy, and it "cannot limit its search if other places are reasonably likely to contain responsive documents." *Nat'l Immigr. L. Ctr. v. ICE*, CV 14-9632 PSG, 2015 WL 12684437 *8 (C.D. Cal. Dec. 11, 2015). Here, ICE has admitted that its nine "Regional Field Medical Coordinators and the Regional Health Service Administrators" are "the custodians most likely to possess

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

responsive records." Defs.' Nov. 2, 2023 Letter, Ex. K, Cho Decl. at 5; PSUF ¶ 10. It also proposed a targeted search to find responsive records in these custodians' possession. Defs.' Nov. 2, 2023 Letter, Ex. K, Cho Decl. at 5; PSUF ¶ 11. This search of these custodians is thus indisputably an "additional source[] that [is] likely to turn up the information requested," and ICE must conduct it. *Valencia-Lucena*, 180 F.3d at 326.

ICE attempts two justifications for its failure to conduct this additional search. Both fail. First, ICE tries to argue the search would return a large number of documents, stating that when these nine people were asked to conduct a search, "just one individual stated that they had over 16,000 emails." Search Summary, Ex. A, Cho Decl. at 11, Search Summary. But that set of over 16,000 emails was not generated by the narrow search at issue here. Instead, it resulted from a broad search for any document containing any of fifteen search terms. *Id.* (listing fifteen search terms); *see also* Defs.' Sept. 1, 2023 Letter, Ex. N, Cho Decl. at 3 (explaining that ICE had "utiliz[ed] the fifteen search terms" and that one custodian had returned "16,000 emails"). ICE therefore has never run the search at issue and has no idea what volume of responsive documents it would return. PSUF ¶ 13. ICE therefore has no basis to claim an unrealistic volume of responsive documents.

Second, ICE states that "it was determined that [the nine people identified as having responsive information] would not have information responsive to subpart 9 without having specific names to search for." Search Summary, Ex. A, Cho Decl. at 11. This bare statement leaves many unanswered questions: If these nine people do not have this information, why did "[i]ndividuals at ICE who are subject matter experts on the information requested" report that they believed these nine people were "the custodians most likely to possess responsive records"? Defs.' Nov. 2, 2023 Letter, Ex. K, Cho Decl. at 5. Why would the specific, narrow search that ICE agreed to run—but never ran—not result in responsive documents? Even if that search would

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

21

not work, could it not be fixed by removing search terms that might give broader results (like "hospital," "emergency," or "offsite referral") or adding search terms that might give more specific results (like "coroner")? And if these custodians could query their database using "specific names," Search Summary, Ex. A, Cho Decl. at 11, then why could they not query it using other fields, such as the billing codes that indicate critical care in a hospital or transports to hospitals involving heightened medical urgency?[22] This unsupported statement therefore falls well short of ICE's burden "to show that it has undertaken all reasonable measures to uncover all relevant documents." *Transgender Law Ctr.*, 46 F.4th at 780.

Accordingly, Plaintiff requests that the Court enter an order ensuring that ICE conducts the search it committed to run in November of 2023. PSUF ¶¶ 10-11.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Partial Summary Judgment should be GRANTED.

The undersigned counsel of record for Plaintiff certifies that this brief contains 6,922 words, including footnotes, which complies with the word limit of L.R. 11-6.1.

Respectfully submitted this February 26, 2025.

---

[22] The spreadsheet that Defendants produced, which only includes data for the four people specifically named in Plaintiff's FOIA request, contains a field for "Procedure Code," which includes entries such as "99291" (the first hour of critical care at a hospital), "A0431" (emergency helicopter transport), and "A0427" (advanced life support ambulance transportation). Ex. A, Decl. of Kyle Virgien (excerpting entries with these three codes for one of the four people named in Plaintiff's FOIA request). Another relevant code is A0433. This code does not appear in the spreadsheet, but also corresponds to advanced life support ambulance transportation. If these custodians could conduct a query for entries related to the four people named in Plaintiff's FOIA request, they likely could also conduct a query for these particular procedure codes. ICE's search summary is silent as to whether they considered this option, or whether it would work.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

22

1    Dated: February 26, 2025          Respectfully submitted,

2

3                                     /s/ Laboni Hoq
                                      LABONI A. HOQ (SBN 224140)
                                      laboni@hoqlaw.com
4                                     HOQ LAW APC
                                      P.O. Box 753
5                                     South Pasadena, California 91030
                                      Tel.: (213) 973-9004
6

7                                     EVA BITRAN (SBN 302081)
                                      ebitran@aclusocal.org
                                      ACLU FOUNDATION OF SOUTHERN
8                                     CALIFORNIA
                                      1313 West Eighth Street
9                                     Los Angeles, California 90017
                                      Tel.: (213) 977-9500
10                                    Fax: (213) 915-0219

11                                    EUNICE CHO (Pro Hac Vice)
                                      echo@aclu.org
12                                    AMERICAN CIVIL LIBERTIES
                                      UNION FOUNDATION
13                                    915 Fifteenth Street NW, 7th Floor
                                      Washington, DC 20005
14                                    Tel.: (202) 548-6616

15                                    KYLE VIRGIEN (SBN 278747)
                                      kvirgien@aclu.org
16                                    AMERICAN CIVIL LIBERTIES
                                      UNION FOUNDATION
17                                    425 California Street, Suite 700
                                      San Francisco, CA 94104
18                                    Tel.: (202) 393-4930

19                                    Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28    ACLU of Southern California v. U.S. ICE, et al., Case No. 2:22-CV-04760-SHK
      PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

                                                                                  23