1  LABONI A. HOQ (SBN 224140)
2  laboni@hoqlaw.com
   HOQ LAW APC
3  P.O. Box 753
   South Pasadena, California 91030
4  Telephone: (213) 973-9004

5  EVA BITRAN (SBN 302081)
   ebitran@aclusocal.org
6  ACLU FOUNDATION OF SOUTHERN CALIFORNIA
   1313 West Eighth Street
7  Los Angeles, California 90017
   Telephone: (213) 977-9500
   Facsimile: (213) 915-0219
8
   Attorneys for Plaintiff
9  (additional counsel information on next page)

10              UNITED STATES DISTRICT COURT
11       FOR THE CENTRAL DISTRICT OF CALIFORNIA

12
13  AMERICAN CIVIL LIBERTIES          Case No. 2:22-CV-04760-SHK
    UNION FOUNDATION OF
    SOUTHERN CALIFORNIA,              **PLAINTIFF'S REPLY IN SUPPORT
14                                    OF MOTION FOR SUMMARY
                Plaintiff,            JUDGMENT AND OPPOSITION
15                                    TO DEFENDANTS' CROSS-
                                      MOTION**
16       v.

17  UNITED STATES IMMIGRATION         Honorable Shashi H. Kewalramani
    AND CUSTOMS ENFORCEMENT,          United States Magistrate Judge
18  UNITED STATES DEPARTMENT
    OF HOMELAND SECURITY,             Hearing Date: May 7, 2025
19                                    Time:  10:00 a.m.
                Defendants.           Place:  3470 12th St., Riverside, CA
20                                    92501, Courtroom 3 or 4
21
22
23
24
25
26
27
28
   *ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
   PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
   AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

# **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ....................................................................................... 1

      A.   Legal Standard ......................................................................... 1

      B.   ICE Has Failed to Conduct an Adequate Search for

           Responsive Documents ............................................................ 2

           1.   Parts 1 through 3 ............................................................ 2

           2.   Part 5 ............................................................................. 6

           3.   Parts 6 and 7 .................................................................. 8

           4.   Part 8 ........................................................................... 10

           5.   Part 9 ........................................................................... 12

III.  CONCLUSION ................................................................................. 14

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Dep't of Health & Hum. Servs.*,
   907 F.2d 936 (10th Cir. 1990) ..................................................................... 12

*Campbell v. United States Dep't of Justice*,
   164 F.3d 20 (D.C. Cir. 1998) ..................................................................... 6, 11

*Ctr. for Investigative Reporting v. United States Dep't of Just.*,
   14 F.4th 916 (9th Cir. 2021) ......................................................................... 14

*Fraihat v. U.S. Immigr. & Customs Enf't*,
   No. 5:19-cv-01546 (C.D. Cal. filed Aug. 19, 2019) ................................... 11, 12

*Hamdan v. Dep't of Just.*,
   797 F.3d 9 (9th Cir. 2015) ............................................................................. 3

*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) .................................................................... 5, 6

*Mattachine Soc'y of Washington, D.C. v. United States Dep't of Just.*,
   267 F. Supp. 3d 218 (D.D.C. 2017) ............................................................... 7

*Nolen v. Dep't of Justice*,
   146 F. Supp. 3d 89 (D.D.C. 2015) ................................................................. 6

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ........................................................................ 12

*Pub. Just. Found. v. Farm Serv. Agency*,
   No. C 20-01103 WHA, 2020 WL 6787136 (N.D. Cal. Oct. 5, 2020) ............... 11

*Stein v. CIA*,
   454 F. Supp. 3d 1 (D.D.C. 2020) ................................................................... 10

*Transgender Law Center v. Immigr. & Customs Enf't*,
   46 F.4th 771 (9th Cir. 2022) ................................................................*passim*

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

ii

**Statutes**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* ........................*passim*

**Other Authorities**

6 C.F.R. § 5.4(i)(2)(ii) ............................................................................. 14

U.S. Dep't of Homeland Sec., *Privacy Impact Assessment for the
    Significant Event Notification (SEN) System*, Oct. 15, 2021,
    https://www.dhs.gov/sites/default/files/publications/privacy-pia-
    ice023a-sen-october2021.pdf [https://perma.cc/7EEE-A6JW] ....................... 8, 9

U.S. Dep't of Just., *FOIA Update: OIP Guidance: Determining the
    Scope of a FOIA Request*, Jan. 1, 1995,
    https://www.justice.gov/archives/oip/blog/foia-update-oip-
    guidance-determining-scope-foia-request [https://perma.cc/NTZ6-
    RUZL] ............................................................................................... 12

U.S. Immigr. & Cust. Enf't, *Significant Detainee Illness (SDI)*, Dec. 3,
    2021,
    https://www.ice.gov/doclib/foia/policy/directive11853.3_Significan
    tDetaineeIllness.pdf [https://perma.cc/6RSN-BYSY] ........................................ 7

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

iii

## I.      INTRODUCTION

This Freedom of Information Act ("FOIA") suit seeks information about Immigration and Customs Enforcement's ("ICE") practice of releasing detained immigrants who are critically ill from custody prior to imminent death, which allows the agency to avoid public reporting and accountability for these deaths. ICE now moves for summary judgment, arguing that it has fully complied with its obligations to produce responsive records to a FOIA request filed by Plaintiff American Civil Liberties Union Foundation of Southern California ("ACLU-So Cal"), on the basis of an affidavit describing its search process. ICE's affidavit, however, does not show that it has searched for all appropriate files sufficient for the court to grant it summary judgment. While ICE purports to have conducted exhaustive searches for responsive records, a close examination of ICE's search history, as described in its motion and affidavit, reveals that the agency's search methods have resulted in significant numbers of irrelevant and duplicative documents. At the same time, ICE has flatly refused to conduct searches for highly responsive documents in response to "obvious leads for relevant documents," and "positive indications of overlooked materials" provided by Plaintiff. *Transgender Law Center v. Immigr. & Customs Enf't*, 46 F.4th 771, 780 (9th Cir. 2022). Because ICE has failed to meet its burden that it has conducted a search "reasonably calculated to uncover all relevant documents," *id.* at 779, its motion for summary judgment should be denied. Instead, the court should grant Plaintiff's motion, and order ICE to conduct a search and promptly produce responsive records.

## II.     ARGUMENT

### A.      Legal Standard

The parties agree that search adequacy issues are governed by the standard most recently set out by the Ninth Circuit in *Transgender Law Center.* 46 F.4th at

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

1

779; Def.'s Mot. Summ. J. ("Def's MSJ") at 13,[1] ECF No. 113 (citing *Transgender L. Ctr.* for the legal standard); *see also* Order at 26-27, ECF No. 87 (relying on *Transgender L. Ctr.* for the legal standard in the Court's prior summary judgment ruling on search adequacy). In keeping with the important "purpose and policy of FOIA," the law imposes a "heavy burden" on the government to demonstrate search adequacy "beyond material doubt." *Transgender L. Ctr.,* 46 F.4th at 779. Under this standard, a government agency bears the burden to "demonstrate[] that its search was reasonably calculated to uncover all relevant documents," accounting for "positive indications of overlooked materials" and "obvious leads." *Id.* at 779, 780 (internal quotation marks and citation omitted). Plaintiff has provided ample evidence of ICE's failure to diligently respond to leads and positive indications of overlooked materials, and ICE cannot carry its burden to demonstrate that it responded with adequate searches.

**B.    ICE Has Failed to Conduct an Adequate Search for Responsive Documents.**

**1.    Parts 1 through 3**

Defendants do not overcome the undisputed evidence that ICE failed to adequately search for documents responsive to Parts 1 to 3 of Plaintiff's Request, because it failed to follow up on "'positive indications of overlooked materials,'" and "'leads that emerge[d]'" in its initial searches. *Transgender L. Ctr.*, 46 F.4th at 780 (citations omitted). The overlooked materials include communications by ICE headquarters staff regarding Martin Vargas Arellano's deathbed release from ICE custody. These materials include email files of two ICE headquarters officials, and "expert recommendations" from the DHS Office of Civil Rights and Civil Liberties' ("CRCL") investigation into the propriety of Mr. Vargas Arellano's deathbed release.

---

[1] Citations to page numbers in briefs and exhibits are made in accordance with ECF-assigned pagination.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

2

See Exs. to Decl. Eunice Cho at 176-77; 176-177, 198-207, 208-216, ECF No. 112-4.

ICE does not dispute the existence of these overlooked materials, which should have triggered the agency to conduct further searches. *Transgender L. Ctr.* at 780; Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶¶ 2-3, ECF No. 113-3. Instead, it attempts to paint this evidence of its search inadequacy as "immaterial," ECF No. 113-3 ¶¶ 2-3, relying on a deficient and conclusory search adequacy declaration and misapplication of law. Because the "leads" Plaintiff identified provide a systematic roadmap to additional responsive documents, *see* ECF No. 112-4 at 176-77, 198-220, and Defendants have inexplicably failed to follow them, Defendants' search methodology is flawed and summary judgement should be granted in Plaintiff's favor.

First, ICE's Declaration of Fernando Pineiro ("Pineiro Decl."), ECF No. 113-1, fails to meet its burden for search adequacy because it does not explain why ICE failed to follow "new leads and indications of overlooked material." *Transgender L. Ctr.,* 46 F.4th at 781 (reversing grant of summary judgment on this ground); *see also Hamdan v. Dep't of Just.*, 797 F.3d at 759, 770 (9th Cir. 2015) (agency declarations must be "reasonably detailed" and "nonconclusory") (citations and quotations omitted). Importantly, the Pineiro Declaration fails to justify why ICE did not conduct a search of two headquarters officials Plaintiff identified as likely having responsive documents. One is an ICE headquarters Detention and Deportation Officer ("DDO") in the "Field Operations Division" at ICE headquarters, who in a March 4, 2021 email directed ICE Los Angeles Field Office staff ("LOS") at the Adelanto Detention Center to prepare "the necessary paperwork for a death notification in the event of [Mr. Vargas Arellano's] demise." ECF No. 112-4 at 177. Regarding this ICE headquarters DDO, whose name is redacted but whose headquarters "202" Washington, D.C. area code is identified, the Pineiro Declaration

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

3

attests, in conclusory fashion, that because it searched two of the other DDOs on the March 4, 2021 email chain, "[t]here is no reason to believe [the ICE headquarters DDO] … would have any additional information," and further searches "would likely turn up duplicative records." Pineiro Decl. ¶ 29. This speculation about what an additional search "would likely" turn up, *id.*, falls well short of ICE's burden— particularly because ICE's search of DDOs for Mr. Vargas Arellano was limited to those in the Los Angeles Field Office. *Id*. ¶ 19.  A search of a *headquarters* DDO would capture different, headquarters-level communications that the Los Angeles Field Office DDOs would not have been copied on, so that such a search of those emails would *not* result in duplicative documents. Importantly, the March 4, 2021 email makes clear that the ICE headquarters DDO, and likely others at ICE headquarters, had prior discussions regarding Mr. Vargas Arellano's case, which have not been produced. ECF No. 112-4 at 177 ("Field Ops has been notified that the detainee listed above is in serious medical condition."). These discussions likely prompted ICE headquarters to direct the Los Angeles Field Office staff to begin drafting a death notification for Mr. Vargas Arrellano. *Id*.  Yet ICE has failed to produce any correspondence following this direction, including any communications indicating whether or not its instruction to prepare a death notification was followed, and why. ICE should be ordered to search for and produce missing communications involving the ICE headquarters DDO.

Even more dispositive of ICE's search inadequacy is the fact that the Pineiro Declaration provides no justification for ICE's failure to search the emails of ICE headquarters official Corey Price.  Nor does it mention, let alone explain, why it failed to search for the "expert recommendations" CRCL shared with Mr. Price and other ICE officials regarding its investigation into the propriety of Mr. Vargas Arellano's deathbed release. Plaintiff has identified Mr. Price, ICE's Executive Associate Director for Enforcement and Removal Operations, as someone who

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

4

would likely have responsive documents, because he was copied on a CRCL memorandum seeking ICE's response to its recommendations on this issue. ECF No. 112-4 at 206. The Pineiro Declaration's silence is deafening, and warrants summary judgment against ICE and in Plaintiff's favor.

Second, Defendants misapply the holding in *Transgender Law Center*, 46 F.4th at 780, as to Parts 1-3, in an attempt to evade ICE's obligation to conduct additional searches based on the leads Plaintiff identifies. Def.'s MSJ at 11. *Transgender Law Center* noted that "an agency is not required to account for documents which the requester has in some way identified *if it has made a diligent search for those documents in the places in which they might be expected to be found*." *Id*. at 781 (emphasis added). Here, as discussed above, Plaintiff has plainly demonstrated ICE's failure to "ma[k]e a diligent search for [] documents in the places in which they might be expected to be found," *id*., including in a search of at least two ICE headquarters staff.  Further, the leads Plaintiff identified are not to a single document, but rather a key set of documents at the core of Plaintiff's FOIA request – ICE policies and practices related to terminally ill detainees. *See* ECF No. 112-4 at 193 (demonstrating the existence of ICE headquarters communications directing ICE field office staff to prepare a detainee death notification, including "a detailed moment by moment account of the medical treatment the alien received, in particular after ICE became aware the alien was in crisis."); ECF No. 112-4 at 211 (demonstrating the existence of CRCL "expert recommendations," noting that "From a Quality Assurance/Quality Improvement perspective, not doing a [Detainee Death Report] for patients who die shortly after release from custody who are hospitalized and subsequently die is a missed opportunity to improve the care provided and reduce liability.").

Moreover, *Iturralde v. Comptroller of Currency*, 315 F.3d 311 (D.C. Cir. 2003), which Defendants cite, Def.'s MSJ at 11, explicitly confirms that a further

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

5

search is warranted given the facts here. *Iturralde* specifically states, "In certain circumstances, a court may place significant weight on the fact that a records search failed to turn up a particular document in analyzing the adequacy of a records search." 315 F.3d at 315 (citing *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993)). *Iturralde* identifies circumstances that would overcome an agency search declaration, including where: (1) the agency "failed to search particular offices or files where the document might well have been found," *id*. (citing *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *Krikorian*, 984 F.2d at 468) (2) the agency "failed or refused to interview government officials for whom there was strong evidence that they might have been helpful in finding the missing documents," *id.* (citing *Valencia–Lucena*, 180 F.3d at 327–28) (3) the agency "ignored indications in documents found in its initial search that there were additional responsive documents elsewhere," *id*. (*citing Campbell v. United States Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998)), and (4) there is evidence of "distribution of responsive documents" between agencies, and Defendant agency was in possession of them, *id*. (*citing Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 834 (D.C. Cir. 1979)). As discussed above, each of these circumstances specified in *Iturralde* apply here, and militate that ICE be ordered to conduct additional searches for documents responsive to Parts 1-3 as to Mr. Vargas Arellano.

## 2.    Part 5.

Part 5 seeks records that identify detainees released from immigration custody while hospitalized. Pl.'s FOIA Request at 6, ECF No. 1-1. ICE's search is inadequate because the agency has refused to conduct any search for records related to ICE's Significant Detainee Illness ("SDI") list and ICE's SDI meetings. ICE has provided no justification as to why its SDI files "are not reasonably likely to contain responsive records." *Nolen v. Dep't of Justice*, 146 F. Supp. 3d 89, 97 (D.D.C. 2015) (citation

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

6

and quotation marks omitted). Nor can it: Part 5 specifically requested that ICE's search include "the Significant Detainee Illness Spreadsheet." ECF No. 1-1 at 6.

As Plaintiff has explained to ICE on multiple occasions, *see* ECF No. 112-4 at 64-65, 88-89, 100-01, 139, the SDI list is highly likely to identify detainees released from custody while hospitalized because criteria for detainee placement on the list includes "[c]ritical illness," placement "in intensive care for 24 hours or more," "[p]otentially life-threatening medical condition requiring urgent action," and "[s]ignificant coordination required to . . . release a detainee[] . . . due to their medical condition." ECF No. 112-4 at 125 (ICE's Significant Detainee Illness Directive (2015)).[2] Criteria for a detainee's removal from the SDI list includes if "[t]he detainee . . . is released from ICE custody" or "is deceased." *Id.* at 126. ICE's SDI Directive also specifies that "[t]he SDI meeting is a collaborative effort involving IHSC, ERO Field Operations," and others. *Id.* at 125.

Instead, ICE has flatly refused to conduct any search for records related to its SDI list and meetings. ECF No. 112-4 at 34, 73, 79. ICE claims only that the request is burdensome because of the large number of people who have participated in SDI meetings. Def.'s MSJ at 21. But the government cannot avoid a search on a claim that it would be "unduly burdensome" where it "has not reviewed any portion of this search." *Mattachine Soc'y of Washington, D.C. v. United States Dep't of Just.,* 267 F. Supp. 3d 218, 226 (D.D.C. 2017). Moreover, Plaintiff has never suggested that ICE conduct a search of the "hundreds of individuals" who participated in "the SDI process." Def.'s MSJ at 21. Indeed, Plaintiff repeatedly suggested ways to narrow the search, including limiting it only to custodians who attended SDI meetings themselves, ECF No. 112-4 at 65, and ICE has declined to engage with these

---

[2] *See also* ICE, *Significant Detainee Illness (SDI)*, Dec. 3, 2021, at 2-4 https://www.ice.gov/doclib/foia/policy/directive11853.3_SignificantDetaineeIllness .pdf [https://perma.cc/6RSN-BYSY] (specifying same).

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

7

attempts. Most importantly, ICE has not responded to Plaintiff's proposal at summary judgment to narrow the search to records of Dr. Ada Rivera and staff from ICE's ERO Field Operations who regularly participate in the SDI meeting, or indicated why such a search would be unduly burdensome. Pl.'s Mot. Summ. J. at 20, ECF No. 112.

ICE cannot meet its burden to show that its search for Part 5 was reasonably calculated to uncover all relevant documents, as it has not searched for SDI-related records. For that reason, ICE's summary judgment motion should be denied, and the court should order a further search.

### 3.    Parts 6 and 7

Parts 6 and 7 seek records, including significant incident reports (SIRs) that mention the release of hospitalized detainees from custody and the death of any detainee previously released from custody while hospitalized. ECF No. 1-1 at 6-7.[3] ICE's search is inadequate because it has refused to search and produce responsive records developed and possessed by ICE's Joint Intelligence Operations Center ("JIOC").

SIRs are created by ICE field agents "to provide information and awareness to ICE field and headquarters managers regarding field events."[4] Once submitted, the "SIRs are available to various [Significant Event Notification (SEN)] users including the appropriate ICE HSI Special Agent in Charge, the appropriate ERO Field Office Director (FOD), the appropriate ICE Field Intelligence Group (FIG), and the ICE

---

[3] ICE's summary of Parts 6 and 7 could be read to suggest that SIRs and SENs are created by ICE's OPR, which is not the case. Def.'s MSJ at 21. Indeed, Plaintiff has clarified this point to ICE. *See* ECF No. 112-4 at 65 (noting that Parts 6-7 requested SIRs and SENs and are not limited to records created by DHS OIG and OPR, and that "or" is a grammatically disjunctive term).

[4] DHS, *Privacy Impact Assessment for the Significant Event Notification (SEN) System* 1-2, Oct. 15, 2021, https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice023a-sen-october2021.pdf [https://perma.cc/7EEE-A6JW].

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

Joint Intelligence Operations Center (JIOC) which analyzes the SIRs and sends summaries of them to the appropriate . . . field offices."[5] ICE does not dispute this fact. Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶ 7, ECF No. 113-3. SIRs are not created by the Office of Professional Responsibility ("OPR"), nor are SIRs available to OPR staff as SEN users.[6]

In its motion, ICE identifies the staff it tasked to search for Parts 6-7, including three OPR employees, two IHSC employees, one Custody Programs Division employee, and an ERO Field Operations employee. Def.'s MSJ at 22-23. However, a close examination reveals that none of these custodians were ever likely to possess SIRs. None of these staff are in divisions to which SIRs are disseminated, as made clear by DHS's own assessment of the system.[7]  Indeed, ICE's Custody Management staff noted that it "does not manage SIRs or SENs . . . ." *Id.* at 23. Meanwhile, ICE also claimed that it could not search for responsive SIRs without individual identifying information such as names or A-numbers to enter into its system. For that reason, Plaintiff repeatedly suggested that ICE conduct a search for SIRs compiled by JIOC with the agreed-upon search terms, as no individual entry of identifying information would be necessary. ECF No. 112-4 at 65.

ICE claims that it has not refused to conduct a search of JIOC for responsive records. Def.'s MSJ at 23. Again, a close examination reveals the dodge: ICE states that it identified JIOC as among "the program offices likely to have responsive records (if such records existed)," Def.'s Statement of Uncontroverted Facts ¶ 19, ECF 113-2, and that it "tasked the JIOC 'to conduct a search for documents responsive to Subparts 6 and 7,'" Def.'s MSJ at 23 (quoting Pineiro Decl. ¶ 67). But JIOC (an ICE division) "'deferred its tasking'" (or in plain terms, did not conduct the

---

[5] *Id.*

[6] *Id.*

[7] *See id.*

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

9

search), "'because the information it receives originates with ERO'" (another ICE division). *Id.* at 24 (quoting ECF No. 74 at 5). ICE then falls back on its excuse that ERO cannot search records without individual identifying information—but never explains why ERO did not instruct JIOC to conduct a search of its summaries, using the agreed-upon search terms, and review the responsive records for production. *Id.* And ICE's excuse that "someone would have to go in and check search terms for each individual day" for JIOC records is not a credible reason to refuse to conduct a search. Def.'s MSJ at 24. ICE's argument is conclusory and unsupported with any specific information. Moreover, ICE has agreed to collect a broad number of responsive documents and then run a search in Relativity of those collected documents in other parts of the case. To the extent that ICE claims that such a search is not technologically feasible, Plaintiff is willing to confer with Defendants' technical staff to determine an efficient solution.

ICE JIOC cannot claim that a search is "futile," particularly given that it has admitted that it has identified and possesses responsive information that it has refused to search and process. *Compare Stein v. CIA*, 454 F. Supp. 3d 1, 23 (D.D.C. 2020) ("an agency can establish that a search would have been futile by showing that it does not maintain any records related to the subject of the request.") (cleaned up, citation omitted). For these reasons, ICE's motion for summary judgment fails, and the court should order that ICE conduct a search, process, and produce responsive JIOC records.

### 4.    Part 8

Part 8 seeks records involving people released from ICE detention while hospitalized with COVID. ECF No. 1-1 at 7. Through these records, Plaintiff can identify others who—like Mr. Vargas Arellano—died of COVID in ICE detention without appearing in ICE's official death statistics, as well as those who were released from custody while hospitalized for COVID-19. ICE has searched one

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

10

custodian for these documents, but it has refused to search within the records on COVID hospitalizations that it kept in connection with reporting in its *Fraihat v. ICE* litigation.[8] Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶¶ 8, 9, ECF No. 113-3; Pineiro Decl. ¶ 74.

ICE does not dispute that it required facilities to log information about COVID-related hospitalizations in its *Fraihat* records, or that these records were "the only place" where it was capturing COVID hospitalization data. Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶¶ 8, 9. ICE admits that it never searched its *Fraihat* records. Pineiro Decl. ¶ 74. The undisputed facts thus show that ICE has never searched in "the only place" where it has responsive information. Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶ 9. These facts are dispositive: ICE must search its *Fraihat* records "in response to a general FOIA request for which [these records] may be relevant." *Campbell*, 164 F.3d at 28-29; *see also Pub. Just. Found. v. Farm Serv. Agency*, No. C 20-01103 WHA, 2020 WL 6787136, at *6 (N.D. Cal. Oct. 5, 2020).[9]

ICE's counterargument is a red herring. ICE points to Plaintiff's tailored request involving only a specific subset of those hospitalized with COVID: those who were also released while hospitalized. *See* ECF No. 1-1 at 7. ICE assumes that

---

[8] *Fraihat v. U.S. Immigr. & Customs Enf't*, No. 5:19-cv-01546 (C.D. Cal. filed Aug. 19, 2019).

[9] ICE's declarant states that the "Office of the Principal Legal Advisor (OPLA) at ICE continues to litigate the *Fraihat* case and has done so since the beginning of the pandemic," and claims that "OPLA has not been responsible for tracking hospitalizations or releases of detainees." Pineiro Decl. ¶ 74. The statement that "OPLA has not been responsible for tracking hospitalizations . . ." is irrelevant, as it does not refute Plaintiff's undisputed evidence that ***someone*** at ICE has been tracking hospitalizations in the *Fraihat* records. Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶¶ 8, 9. The declarant is also wrong that OPLA "continues to litigate the *Fraihat* case": DOJ, not ICE OPLA, served as ICE's litigation counsel in *Fraihat*, and the case was dismissed before the declaration was signed. *Fraihat*, No. 5:19-cv-01546, ECF No. 431 (C.D. Cal. Mar. 17, 2025).

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

11

a search of its *Fraihat* records would identify documents that contain a mix of responsive information (for people who were released) and non-responsive information (for people who were not released). Def.'s MSJ at 25. ICE then argues that it would be burdensome to "cross compare" these hospitalization records with release records to go through the documents line-by-line and remove the non-responsive information from them. *Id.*; Pineiro Decl. ¶ 74. But this additional filtering is unnecessary, negating the burden it claims. In fact, this line-by-line excising of non-responsive information would go against DOJ guidance that "[i]f any of the information on a page of a document falls within the subject matter of a FOIA request, then that entire page should be included as within the scope of that request." *FOIA Update: OIP Guidance: Determining the Scope of a FOIA Request* (Jan. 1, 1995), https://www.justice.gov/archives/oip/blog/foia-update-oip-guidance-determining-scope-foia-request [https://perma.cc/NTZ6-RUZL].[10] All that Plaintiff seeks is a search "reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Transgender L. Ctr.*, 46 F.4th at 779. ICE needs only to conduct this search and produce the documents it obtains (subject to exemptions). It need not further filter within these documents.

### 5.    Part 9

Part 9 seeks hospital bills for people released from ICE custody while hospitalized, along with communications about these bills. ECF No. 1-1 at 7. Plaintiff can use these bills and communications to identify other people, beyond the four

---

[10] ICE also mentions that it produced its reports in *Fraihat* under a protective order. Def.'s MSJ at 25. If this is an argument against production, it fails. *See Anderson v. Dep't of Health & Hum. Servs.*, 907 F.2d 936, 945-46 (10th Cir. 1990) (rejecting an argument that information covered by a protective order in another case necessarily was exempt under FOIA). And regardless, the appropriate way to address confidentiality concerns in a FOIA case is not for an agency to refuse to search; it is through the FOIA exemptions.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

12

people named in Plaintiff's FOIA request, who were similarly released while hospitalized, and to understand the financial impact of ICE's practice of deathbed releases. ICE has fallen far short of adequately searching in response to this request. All it has done is to search its billing records for the four people named in Plaintiff's FOIA request. Pineiro Decl. ¶¶ 75-81.

The facts surrounding ICE's search are undisputed. ICE found two locations to search. First, its FOIA office conducted interviews and identified nine custodians. Def.'s Resp. to Pl.'s Statement of Uncontroverted Facts ¶ 10. Second, it identified responsive billing records in "Sharepoint and eClinicalWorks." Pineiro Decl. ¶ 76. ICE tried once to search the nine custodians and then gave up when that lone attempt hit a technical issue. Pineiro Decl. ¶ 80. It conducted a single search of Sharepoint and eClinicalWorks for the four people named in Plaintiff's FOIA request and then did absolutely nothing to search for records for others not named in Plaintiff's request. *Id.* at ¶ 76. On this undisputed factual record, ICE cannot carry its "burden to demonstrate adequacy beyond material doubt." *Transgender L. Ctr.*, 46 F.4th at 779 (citation and quotation marks omitted). Plaintiff thus should prevail on this issue.

The question, then, becomes what relief Plaintiff is due. Plaintiff's original proposed relief would have required ICE to run a search that it has previously represented it could run. ECF No. 112-2, 4. However, despite ICE's earlier representations that it could run this search, it now states it cannot. Pineiro Decl. ¶ 80.[11] As a result of ICE's change in position, Plaintiff's relief must change. Plaintiff therefore seeks the following relief:

---

[11] ICE accuses Plaintiff of "complain[ing] that ICE provided its search summary to Plaintiff just the week before this brief is due." Def.'s MSJ at 8 n.2 (citation, quotation marks, and alteration omitted). That is not Plaintiff's concern. Instead, Plaintiff takes issue with the fact that ICE misrepresented its search to Plaintiff for over a year, waiting until this search summary to admit that it had never run the search it committed to complete. Pl.'s Mot. Summ. J. at 31.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

13

1. Within two weeks of the Court's order, ICE should search the nine people it has identified as "most likely to possess responsive records," ECF No. 112-4 at 74, using each of the fifteen search terms identified in its November 2, 2023 search proposal, and should provide a hit count for each search term (or should state if any term resulted in so many hits that it, alone, caused a technical problem). ICE has stated that a search that includes documents that hit on any of these fifteen terms is so broad that it has caused these custodians' systems to crash. Pineiro Decl. ¶¶ 78, 80. Providing hit counts will allow the parties to narrow this search so it is technologically feasible. The parties can then discuss an appropriate Boolean search to further narrow the results.

2. Within two weeks of the Court's order, ICE should provide a declaration stating whether it can query its claims database to produce a spreadsheet of all claims involving the Procedure Codes 99291, A0427, A0431, and A0433— four codes related to high-level emergency transport to hospitals. *See* Pl.'s Mot. Summ. J. at 28 n.22. ICE can query this database by "alien number[] and referral authorization number[]." Pineiro Decl. ¶ 76. This spreadsheet includes Procedure Codes, indicating that the Procedure Codes are in the database. ECF No. 112-6 at 4. ICE should conduct this query for specific Procedure Codes if possible. *See Ctr. for Investigative Reporting v. United States Dep't of Just.*, 14 F.4th 916, 938 (9th Cir. 2021) (holding an agency's FOIA obligations encompass "a query to search for and extract a particular arrangement or subset of data already maintained in an agency's database"); 6 C.F.R. § 5.4(i)(2)(ii) (extracting "specific requested fields or records contained within a well-defined database structure usually is considered business as usual" for DHS FOIA responses).

3. The parties should meet and confer, and within two weeks of the court's order should provide a joint statement to the Court setting out either an agreed search or their separate positions on what search is appropriate for this Part.

## III.   CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Partial Summary Judgment should be GRANTED, and Defendants' Cross-Motion for Summary Judgment should be DENIED.

//

//

//

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

14

1    The undersigned counsel of record for Plaintiff certifies that this brief contains

2    4,630 words, including footnotes, which complies with the word limit of L.R. 11-6.1

3    (7000 words).

4

5    Respectfully submitted this April 9, 2025.

6    */s/ Laboni A. Hoq*

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| EVA BITRAN (SBN 302081)<br>ebitran@aclusocal.org<br>ACLU FOUNDATION OF<br>SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN (SBN 278747)<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-SHK
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANTS' CROSS-MOTION

15