BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
JASON K. AXE (Cal, Bar No. 187101)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989 | 8790
    Facsimile: (213) 894-7819
    E-mail: Joseph.Tursi@usdoj.gov
            Jason.Axe@usdoj.gov

Attorneys for Defendant U.S. Immigration and Customs Enforcement

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | No. 2:22-cv-04760-SHK<br><br>**DEFENDANT UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  May 7, 2025<br>Hearing Time:  10:00 a.m.<br>Courtroom:  3 or 4<br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                    PAGE

I.   INTRODUCTION ................................................................................................1

II.  ARGUMENT......................................................................................................2

    A.   Plaintiff Does Not Identify a Genuine Dispute of Fact................................2

    B.   ICE Met Its Obligation Under The FOIA To Conduct An Adequate Search For Records In Response To Plaintiff's Nine-Part FOIA Request. ......................................................................................................3

        1.   Parts 1-3 ................................................................................................4

        2.   Part 4 .....................................................................................................5

        3.   Part 5 .....................................................................................................5

        4.   Parts 6 and 7 .........................................................................................6

        5.   Part 8 .....................................................................................................8

        6.   Part 9 .....................................................................................................8

III. CONCLUSION.................................................................................................11

# TABLE OF AUTHORITIES

## Federal Cases

*Am. Fed. of Gov't Emp. v. Dep't of Commerce*,
    907 F.2d 203 (D.C. Cir. 1990) .................................................................. 7, 9

*Am. Oversight v. U.S. Dep't of Just.*,
    401 F. Supp. 3d 16 (D.D.C. 2019) ................................................................ 1

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 2

*Assassination Archives & Rsch. Ctr. Inc. v. C.I.A.*,
    720 F. Supp. 217 (D.D.C. 1989) ............................................................... 7, 8

*Bigwood v. U.S. Dep't of Def.*,
    132 F. Supp. 3d 124 (D.D.C. 2015) .............................................................. 4

*Boyd v. Criminal Div. of U.S. Dep't of Justice*,
    475 F.3d 381 (D.C. Cir. 2007) ...................................................................... 1

*Campbell v. U.S. Dep't of Justice*,
    164 F.3d 20 (D.C. Cir. 1998) ...................................................................... 10

*DiBacco v. U.S. Army*,
    795 F.3d 178 (D.C. Cir. 2015) ................................................................... 2, 4

*Frost v. U.S. Dep't of Justice*,
    2018 WL 1626682 (N.D. Cal. Apr. 4, 2018) ................................................ 1

*Goland v. C.I.A.*,
    607 F.2d 339 (D.C. Cir. 1978) ...................................................................... 7

*Inter-Coop. Exch. v. United States Dep't of Com.*,
    36 F.4th 905 (9th Cir. 2022) .......................................................................... 4

*Johnson v. Exec. Off. for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) ...................................................................... 4

*Jud. Watch, Inc. v. Dep't of State*,
    177 F. Supp. 3d 450 (D.D.C. 2016) ......................................................... 3, 10

*Kowalczyk v. U.S. Dep't of Just.*,
    73 F.3d 386 (D.C. Cir. 1996) ........................................................................ 3

*Lahr v. Nat'l Transp. Safety Bd.*,
    569 F.3d 964 (9th Cir. 2009) ............................................................................. 5

*Lawyers' Comm. for C.R. of San Francisco Bay Area v. U.S. Dep't of the Treasury*,
    534 F. Supp. 2d 1126 (N.D. Cal. 2008) ...................................................... 1, 4

*Louise Trauma Ctr., LLC v. United States Immigr. & Customs Enf't*,
    2025 WL 637369 (D.D.C. Feb. 27, 2025) ...................................................... 10

*MacLeod v. DHS*,
    2017 WL 4220398 (D.D.C. Sept. 21, 2017) .................................................... 9

*Meeropol v. Meese*,
    790 F.2d 942 (D.C. Cir.1986) ......................................................................... 10

*Nat'l Sec. Couns. v. C.I.A.*,
    969 F.3d 406 (D.C. Cir. 2020) .................................................................. 3, 6, 7

*Oglesby v. U.S. Dep't of the Army*,
    920 F.2d 57 (D.C. Cir. 1990) ..................................................................... 2, 10

*People for Am. Way Found. v. U.S. Dep't of Just.*,
    451 F. Supp. 2d 6 (D. D.C. 2006) .................................................................... 7

*Perry v. Block*,
    684 F.2d 121 (D.C.Cir.1982) .......................................................................... 10

*SafeCard Services, Inc., v. Security Exchange Commission*,
    926 F.2d 1197 (D.C. Cir 1991) ......................................................................... 1

*Steinberg v. U.S. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) .......................................................................... 10

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ........................................................................ 10

*Weisberg v. U.S. Dep't of Just.*,
    705 F.2d 1344 (D.C.Cir.1983) ........................................................................ 10

*Whitaker v. Dep't of Com.*,
    970 F.3d 200 (2d Cir. 2020) .............................................................................. 9

*Wilbur v. C.I.A*,
    355 F.3d 675 (D.C. Cir. 2004) .......................................................................... 2

*Wolf v. C.I.A.*,
    569 F. Supp. 2d 1 (D. D.C. 2008) ..................................................................... 7

## I. INTRODUCTION

Defendant U.S. Immigration and Customs Enforcement ("Defendant" or "ICE") is entitled to summary judgment in its favor on Plaintiff American Civil Liberties Union of Southern California's ("Plaintiff" or "ACLU of SoCal") claim for failure to conduct an adequate search for responsive records in response to Plaintiff's nine-part FOIA Request, dated April 29, 2022 (the "FOIA Request").

As ICE argued in its moving papers (Dkt. 113), to prevail on a motion for summary judgment, it was required to "demonstrate 'beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Frost v. U.S. Dep't of Justice*, 2018 WL 1626682, at *4 (N.D. Cal. Apr. 4, 2018) (citation omitted). And ICE has done so through the declaration of Fernando Pineiro (Dkt. 113-1) which provides, in detail, the process by which the Defendant searched for records responsive to the FOIA Request by describing what was searched and by whom. Such is enough to establish an adequate search. *See Lawyers' Comm. for C.R. of San Francisco Bay Area v. U.S. Dep't of the Treasury,* 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008).

In its Opposition (Dkt. 114), Plaintiff's principal argument is, essentially, because ICE did not search certain locations that Plaintiff *speculates* may have responsive records or that certain records were not found, Defendant's search is inadequate. However, the adequacy of the search is determined by "the reasonableness of [an agency's] methods, not the quantity or quality of documents it unearths." *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 22 (D.D.C. 2019); *see also Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) ("the fact that a particular document was not found does not demonstrate the inadequacy of a search.") (citations omitted).

An agency's affidavit is accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). But that is what Plaintiff attempts to do through its Opposition. This is not sufficient to

defeat Defendant's showing on summary judgment. *See, e.g., Wilbur v. C.I.A.*, 355 F.3d 675, 678 (D.C. Cir. 2004) (noting that "mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records"); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 67 n.13 (D.C. Cir. 1990)) (this is a "losing claim put to bed ... years ago and age has not improved it.").

For the reasons explained below and in its moving papers, ICE respectfully requests that the Court grant this motion, deny Plaintiff's Motion (Dkt. 112) and enter judgment in Defendant's favor with respect to Plaintiff's second claim for failure to conduct an adequate search for responsive records (Dkt. 24, ¶¶ 54-59).

## II.   ARGUMENT

### A.   Plaintiff Does Not Identify a Genuine Dispute of Fact.

As an initial matter, Plaintiff does not identify a genuine dispute of material fact precluding the Court from granting ICE's motion. A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. The bare existence of a "scintilla" of evidence in support of the non-moving party's position is not sufficient. *Id*. at 252.

Reviewing Plaintiff's Statement of Genuine Disputes of Material Fact (Dkt. 114-1), it does not cite evidence to support any of its disputes. Rather, it provides speculative argument based on its slanted reading of the Pineiro Declaration before providing its subjective view as to why ICE's search was not adequate. But such is not enough to overcome summary judgment.

**B.     ICE Met Its Obligation Under The FOIA To Conduct An Adequate Search For Records In Response To Plaintiff's Nine-Part FOIA Request.**

At no point does Plaintiff argue that the locations ICE searched were improper or not reasonably calculated to uncover potentially responsive records. Instead, the common thread running through Plaintiff's Opposition is its speculative belief that ICE should have conducted *additional* searches and, because it did not conduct each and every search Plaintiff may wish it did, the search was inadequate for eight of the nine sub-parts of the FOIA Request. In Plaintiff's view, because it subjectively believes ICE should have conducted specific searches Plaintiff thought up on its own and Defendant did not explain why it did not do so, ICE's motion fails. As ICE flagged nearly two years ago, Plaintiff's FOIA Request is composed of "springing" FOIA requests. *See* Dkt. 44 at 20. Plaintiff maintains that ICE is required not only to search for and produce responsive records but then review those records to determine whether further searches should be conducted based on the content of those records. But that is not how FOIA works.

Nor may Plaintiff recast its request by asking ICE to read subsequent modifications into it because the request must be read "as drafted, not as either agency officials or [the requestor] might wish it was drafted." *Nat'l Sec. Couns. v. C.I.A.*, 969 F.3d 406, 410 (D.C. Cir. 2020). An agency is not required "to search anew based upon a subsequent clarification." *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 388 (D.C. Cir. 1996). Imposing ongoing FOIA obligations "each time the agency receives a letter that clarifies a prior request could extend indefinitely the delay in processing new requests." *Id.* "FOIA was not intended to reduce government agencies to full-time investigators" responding to iterative fishing expeditions. *Jud. Watch, Inc. v. Dep't of State*, 177 F. Supp. 3d 450, 457 (D.D.C. 2016).

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request. Rather, a federal agency has discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA requests.

3

Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search." *Bigwood v. United States Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (emphasis added); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the court should attempt to micro manage the executive branch."); *see also Inter-Coop. Exch. v. United States Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022) ("For this reason, a FOIA requestor "cannot dictate the search terms for his or her FOIA request."); *DiBacco*, 795 F.3d at 191 (an agency "need not knock down every search design advanced by every requester[.]"). "[T]here is no requirement that an agency search every record system, or that a search be perfect ...." *See Lawyers' Comm. for C.R. of San Francisco Bay Area*, 534 F. Supp. 2d at 1130 (citations omitted).

Against this backdrop, the Pineiro Declaration establishes that ICE's search was adequate as explained below.

### 1. Parts 1-3

Parts 1-3 of the FOIA Request seeks documents related to the hospitalization, death, decisions regarding custody of four named individuals (Teka Gulema; Johana Medina Leon; Jose Ibarra Bucio; and/or Martin Vargas Arellano), as well as any related reports of investigation. *See* Dkt. 24-1 at 5-6. From the briefing, it appears Plaintiff's only challenge here is to the sufficiency of ICE's search with respect to records for Mr. Arellano.[1]

As an initial observation, Plaintiff argues that it has provided leads, with respect to Parts 1-3, "not to a single document, but rather a key set of documents at the core of Plaintiff's FOIA request – ICE policies and practices related to terminally ill detainees."

---

[1] As compared to searches for Teka Gulema, Plaintiff never demanded that ICE conduct additional searches for records related to Mr. Arellano.

4

(Dkt. 114 at 10.) But the Request with respect to Parts 1-3 did not seek any such policies. *See* Dkt. 24-1 (FOIA Request) at 5-6. As noted, these parts of the request were limited to four named individuals.

That aside, Plaintiff points to an alleged failure to search for a directive and then to the absence of a death notification for Mr. Arellano which it argues "ICE has failed to produce…or any other correspondence related to whether a notification was completed, and if not, why." (Dkt. 112 at 15.) Such an argument assumes that a death notification was either drafted or, if it was not, that there is correspondence explaining why. It is just as likely that no such records exist. Indeed, "[t]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964 (9th Cir. 2009).

Plaintiff's argument continues by claiming, based on its own assumption, that in addition to the twelve locations ICE searched (which included 11 separate individuals), Defendant should have also searched two ICE headquarters officials. Plaintiff speculates that these additional searches "would capture different, headquarters-level communications" not encompassed by ICE's well-documented searches. (Dkt. 114 at 9.) But the Pineiro Declaration explains why that is not so. (Dkt. 113-1, ¶ 29.)

The Pineiro Declaration explains, in detail, the locations searched and the search terms used by ICE to locate records responsive to Parts 1-3 of the FOIA Request which establishes that ICE's search was adequate. (Dkt. 113-1, ¶¶ 19-29.)

        **2.**     **Part 4**

Plaintiff does not challenge the sufficiency of ICE's search with respect to Part 4.

        **3.**     **Part 5**

Part 5 of the FOIA Request seeks documents in possession of ICE Leadership, ERO, IHSC, and ORAP that identify detainees released from custody while hospitalized, in full-time care of external healthcare providers or facilities, or released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. (Dkt. 24-1 at 6.)

As ICE has made clear to Plaintiff, on separate and different occasions, its demand that Defendant search for records related to the Significant Detainee Illness ("SDI") meetings and list is burdensome because there are 233 IHSC employees who participated in the SDI process from 2016 to present. Pineiro Decl., ¶ 47; *see also* Dkt. 74 at 3-4 (same). The number of ICE employees that were part of the Medical Case Management Unit from 2016 to present is 376. *Id.* But time and time again, Plaintiff claims ICE should merely limit a subsequent search to staff that participates in the weekly SDI meeting, and any custodian who possesses the SDI list. Indeed, it repeats that same argument in its Opposition (Dkt. 114 at 12), and, as a last-ditch effort to avoid entry of judgment in Defendant's favor, Plaintiff claims that ICE was somehow obligated to accept its proposal to conduct an additional search of specific custodians with respect to Part 5.

But the Pineiro Declaration explains why such is not feasible – because the "list includes hundreds of individuals and is overly burdensome." (Dkt. 113-1, ¶ 47.) When the request would require an "unreasonably burdensome search, the agency can decline to process the request." *Nat'l Sec. Couns.*, 969 F.3d at 410. ICE made this very point more than a year ago. (Dkt. 74 at 4-5.) Here again, ICE's search was adequate.

### 4. Parts 6 and 7

Parts 6-7 of the FOIA Request seeks documents, including significant incident reports ("SIRs"), significant event notifications ("SENs"), or other documents created by ICE OPR that mention the death or release from custody of hospitalized detainees, detainees who at the time of release were patients in the care of external healthcare providers, or detainees released from custody immediately prior to transfer to an emergency room, hospital, or external care facility. *See* Dkt. 24-1 at 6-7.

Contrary to Plaintiff's ad hominin, there has been no "dodge" by ICE with respect to the JIOC. (Dkt. 114 at 14.) ICE's moving papers and the Pineiro Declaration explain why the Plaintiff's arguments do not hold water. (Dkt. 113 at 23-24, Dkt. 113-1, ¶¶ 48-70.) ICE's explanation has remained unchanged for over a year since Plaintiff first

pressed this issue. *See* Dkt. nos. 69 at 3-4, 74 at 4-5, and 74-1 at 2-3. Although Plaintiff continues to disagree, that does not mean that ICE's search was inadequate.

Further, as explained in the moving papers, the summaries Plaintiff seeks are not stored in one place but are moved from emails to the Daily Enforcement Activity Report ("DEAR") system for which there is one DEAR for every 24-hour period. *See* Dkt. 113 at 24 (citing Dkt. 113-1, ¶ 53.). To search the DEAR system, ICE would need to go in and check search terms for each individual day to see if such is responsive. Bearing in mind that the FOIA Request seeks records spanning nine-years, this necessarily means that a search would require the manual pulling and review of 3,285 reports to determine if such is responsive. Moreover, that search would not prove productive. As ICE also addressed in the motion, the DEAR system does not keep track of when individuals are released from custody. *Id.* "An agency need not honor a [FOIA] request that requires 'an unreasonably burdensome search.'" *Am. Fed. of Gov't Emp. v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. C.I.A.*, 607 F.2d 339, 353 (D.C. Cir. 1978) (finding unreasonably burdensome a request for additional responsive records where "if they exist, could be found only through a page-by page search through the 84,000 cubic feet of documents in the [CIA] Records Center")); *Nat'l Sec. Couns.*, 969 F.3d at 410 (When the request would require an "unreasonably burdensome search, the agency can decline to process the request."). While "[a]n agency's search must be reasonably calculated to uncover all relevant documents, ... the agency need not search every conceivable record system." *Wolf v. C.I.A.*, 569 F. Supp. 2d 1, 8 (D. D.C. 2008) (internal quotation marks omitted) (CIA was not required to undertake search for "a single, specific record with an unknown title" in a poorly-catalogued microfilm archive in response to a FOIA request). "Moreover, 'agencies are not required to .... perform searches which are not compatible with their own document retrieval systems.'" *People for Am. Way Found. v. U.S. Dep't of Just.*, 451 F. Supp. 2d 6, 14 (D. D.C. 2006) (quoting *Assassination Archives & Rsch. Ctr. Inc. v. C.I.A.*, 720 F. Supp. 217, 218 (D.D.C. 1989).

Accordingly, ICE has met its burden of conducting an adequate search with respect to Parts 6 and 7 of the FOIA Request.

### 5. Part 8

This part seeks documents related to those that identify detainees who were hospitalized or transferred from detention for off-site medical care due to COVID-19, and were subsequently released from custody while hospitalized, or detainees who were released from custody immediately prior to transfer to an emergency room, hospital, or external care facility to receive treatment for COVID-19. (Dkt. 24-1 at 7.)

The only issue Plaintiff appears to have with the search here is over ICE's refusal to search records related to the *Fraihat* litigation. ICE provided its explanation for why it did not do so. (Dkt. 113-1, ¶ 74.) Specifically, the Office of the Principal Legal Advisor ("OPLA") has not been responsible for tracking hospitalizations or releases of detainees. *Id.* To the extent such records *might* exist, OPLA has no way of searching for such records and they would have no way of knowing if a detainee had been released while hospitalized with COVID. *Id.* The only way to find out which detainees were released would be to cross compare with ERO records but this is not required under the FOIA. *Id.*; *see also Assassination Archives*, 720 F. Supp. at 219 ("The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requestors.") ERO does not maintain a list of individuals who were released during hospitalization with COVID and ERO IHSC has already run several searches in this case. Lastly, OPLA noted that most of the reporting and discovery required under *Fraihat* was done under protective order. *See Fraihat v. ICE*, C.D. CA Case No. 19-cv-1546-JGB-SHKx, Dkt. 154 (Stipulated Protective Order).

ICE has met its obligation to conduct an adequate search for Part 8.

### 6. Part 9

Part 9 seeks documents related to those reflecting payments made for the healthcare for any detainee who was released from custody while hospitalized or a

8

patient in the care of an external healthcare provider or facility, and communications about such bills, invoices, charges, or records of payment. Dkt. 24-1 at 7.

Plaintiff ignores ICE's explanation of the search it conducted here and instead makes the extraordinary leap of claiming Defendant only searched "its billing records for the four people named in Plaintiff's FOIA request." (Dkt. 114 at 18 (citing Dkt. 113-1, ¶¶ 75-81)). Plaintiff's summary of ICE's search is belied by the Pineiro Declaration. (Dkt. 113-1, ¶¶ 75-81).

As stated, ICE searched ERO IHSC, the IHSC Resource Management Unit ("RMU"), and the IHSC Health Plan Management Unit. (Dkt. 113-1. ¶ 75.) As ICE had the names and alien numbers for the four decedents identified in the FOIA request, ERO IHSC was able to conduct a search of its Sharepoint and eClininicalWorks which identified a spreadsheet that was produced. *Id.*, ¶ 76. With respect to IHSC HPMU, it tasked the Regional Health Service Administrator and Regional Field Medical Coordinator. *Id.*, ¶ 80. Despite the search causing those units' systems to crash, the agency explored whether there was a way forward, but ultimately determined "that they would not be able to identify information responsive to subpart 9 without searching for specific names." *Id.* To that end, Plaintiff significantly misrepresents ICE's search efforts, claiming that ICE "mispresented its search to Plaintiff for over a year, waiting until this search summary to admit that it had never run the search it committed to complete." (Dkt. 114 at 18, n. 11.) However, as explained in the Pineiro Declaration, ICE attempted to search but determined such would be futile because without the names or alien numbers it could not find any additional information in response to part 9 other than what it had with respect to the four decedents named in the FOIA request. (Dkt. 113-1, ¶ 80.) "An agency need not honor a [FOIA] request that requires 'an unreasonably burdensome search.'" *Am. Fed. of Gov't Emp.*, 907 F.2d at 209; *see also, Whitaker v. Dep't of Com.*, 970 F.3d 200, 207 (2d Cir. 2020) ("[W]here the Government's declarations establish that a search would be futile, the reasonable search required by FOIA may be no search at all.'") (quoting *MacLeod v. DHS*, 2017 WL

9

1 | 4220398, at *11 (D.D.C. Sept. 21, 2017)).

2 |      Accordingly, ICE has met its burden of conducting an adequate search with
3 | respect to Part 9 of the FOIA Request.

4 |                                     *      *      *

5 |      Under the FOIA, an agency is not required to search every record system, *Truitt v.*
6 | *Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990), or establish that the search be
7 | perfect. *Meeropol v. Meese*, 790 F.2d 942, 955–56 (D.C. Cir.1986). An agency's search
8 | need not be exhaustive, merely reasonable. *Oglesby*, 920 F.2d at 68.  And agency
9 | declarations are accorded "a presumption of good faith, which cannot be rebutted by
10 | purely speculative claims about the existence and discoverability of other documents."
11 | *Id*. While the affidavits or declarations submitted by the agency need not "set forth with
12 | meticulous documentation the details of an epic search for the requested records," *Perry*
13 | *v. Block*, 684 F.2d 121, 127 (D.C.Cir.1982), they must "describe what records were
14 | searched, by whom, and through what processes," *Steinberg v. U.S. Dep't of Just.*, 23
15 | F.3d 548, 552 (D.C. Cir. 1994), and must show "that the search was reasonably
16 | calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d
17 | 1344, 1350–51 (D.C.Cir.1983); *see Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27
18 | (D.C. Cir. 1998). ICE has met its burden here in establishing that its search to locate
19 | responsive records to Plaintiff's nine-party FOIA request was adequate. That Plaintiff is
20 | dissatisfied with the result of the search has no bearing on the sufficiency of the search.
21 | And, to the extent Plaintiff complains that ICE's search was overbroad, "Plaintiff bears
22 | responsibility for failing to 'frame the request[ ] with sufficient particularity[.]'" *Louise*
23 | *Trauma Ctr., LLC v. United States Immigr. & Customs Enf't*, 2025 WL 637369, at *7
24 | (D.D.C. Feb. 27, 2025) (citing *Jud. Watch*, 177 F. Supp. 3d at 457).
25 | //
26 | //
27 | //
28 | //

## III. CONCLUSION

For the reasons discussed above and in the moving papers, Defendant ICE requests that the Court grant this Motion and enter judgment in its favor and deny Plaintiff's Motion (Dkt. 112).

Dated: April 23, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

/s/ *Joseph W. Tursi*
JOSEPH W. TURSI
JASON K. AXE
Assistant United States Attorneys

Attorneys for Defendant U.S. Immigration and Customs Enforcement

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Defendant, certifies that the memorandum of points and authorities contains 3,521 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 23, 2025

/s/ *Joseph W. Tursi*
JOSEPH W. TURSI
Assistant United States Attorney