BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
Assistant United States Attorneys
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989
    Facsimile: (213) 894-7819
    E-mail: Joseph.Tursi@usdoj.gov

Attorneys for Defendant Department of Homeland Security

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | No. 2:22-cv-04760-SHK<br><br>**DEFENDANT DEPARTMENT OF HOMELAND SECURITY'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE**<br><br>(Filed concurrently with Supplemental Declaration of Catrina M. Pavlik-Keenan)<br><br>Hearing Date: To Be Set By The Court<br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge |

**TABLE OF CONTENTS**

| DESCRIPTION | PAGE |
|---|---|

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND & RELEVANT PROCEDURAL HISTORY ........................... 2

    A. The Court's Order and Defendant's Compliance Through Many Different and Separate Meet and Confer Efforts With Plaintiff, The Filing of Status Reports, Appearance at Status Conferences, And Expedited Processing of All 5,649 Pages of CMS Documents At Plaintiff's Request. ............................................................................. 2

    B. The Intervening DHS-FOIA Realignment and Reduction In Force Interrupted CRCL's Ability To Process the OCIO Records ........................ 4

    C. DHS-FOIA's Current Workload ................................................................. 5

    D. The May 27, 2025 Status Conference And Update On DHS-FOIA's Processing of the OCIO Records Following the Realignment And Reduction In Force. ................................................................................... 6

III. LEGAL STANDARD ........................................................................................ 8

IV. ARGUMENT ..................................................................................................... 8

    A. DHS-FOIA Has, And Continues, To Comply With The Express And Implied Terms Of The Order. ...................................................................... 9

    B. Plaintiff Ignores The Practical Effects of DHS-FOIA's Realignment And Chose To File Its Motion Even While On Notice That DHS-FOIA Was Unsure It Could Process The Original OCIO Records ............. 10

    C. The Court Should Not Order DHS-FOIA To Process At a Rate Beyond 700 Pages Per Month ..................................................................... 11

V. Conclusion ........................................................................................................ 13

# TABLE OF AUTHORITIES

Cases

*Al-Fayed v. C.I.A.*,
  254 F.3d 300 (D.C. Cir. 2001) ........................................................................... 12

*Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*,
  2021 WL 5449733 (S.D.N.Y. Nov. 19, 2021) .................................................... 13

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................................ 8

*Club v. EPA*,
  505 F. Supp. 3d 982 (N.D. Cal. 2020) .................................................................. 8

*Colbert v. FBI*,
  2018 WL 6299966 (D.D.C. Sept. 3, 2018) ......................................................... 12

*Haitian Bridge Alliance v. U.S. Dep't of Homeland Sec.*,
  2024 WL 476304 (S.D.N.Y. Feb. 7, 2024) .......................................................... 13

*Jud. Watch, Inc. v. U.S. Dep't of Com.*,
  No. 17-cv-1283 (EGS), 2020 WL 6939807 (D.D.C. Nov. 25, 2020) .................. 12

*Open Am. v. Watergate Special Prosecution Force*,
  547 F.2d 605 (D.C. Cir. 1976) ............................................................................ 12

*Radar Online LLC v. Fed. Bureau of Investigation*,
  692 F. Supp. 3d 318 (S.D.N.Y. 2023) ................................................................. 13

*Rolling Stone, LLC v. Dep't of Just.*,
  2024 WL 3862521 (S.D. N.Y. Aug. 19, 2024) .................................................... 12

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) .......................................................................... 12

*Spurlock v. FBI*,
  69 F.3d 1010 (9th Cir. 1995) .................................................................... 8, 10, 11

*N. Y. Times Co. v. Dep't of Defense*,
  2022 WL 1547989 (S.D. N.Y. April 21, 2022) .............................................. 12, 13

## I.   INTRODUCTION

The Court should deny Plaintiff American Civil Liberties Union of Southern California's ("ACLU SoCal") Motion to Enforce the Court's July 24, 2024 Order (Dkt. 87) because nothing in the record supports a finding that Defendant Department of Homeland Security ("DHS") failed to comply with the Order. Plaintiff's motion tries to cobble together a basis for "enforcement" by contending that because "Defendant DHS has yet to produce all documents the Court ordered it to produce" in its Order that an increased processing rate of 3,000 pages per month is appropriate. *See* Dkt. 125 at 4. Plaintiff is wrong.

*First*, Plaintiff misstates what the Order required – which was that the parties meet and confer regarding the Privacy Office's referral of Plaintiff's request to the DHS Office of Civil Rights and Civil Liberties ("CRCL"). DHS met and conferred with Plaintiff as ordered, and then began processing the FOIA request, responded to Plaintiff's inquiries throughout the process, submitted status reports, and appeared at status conferences during which Defendant explained exactly how it was processing the FOIA request following referral to CRCL. There is thus no indication that DHS-FOIA has not complied with the Order.

*Second*, Plaintiff seeks an expedited processing rate based on the assumption that DHS-FOIA would be able to process the original OCIO record set despite Defendant's explicit caution – made a week before Plaintiff filed its motion and repeated at the status conference three days before – that it was unsure if it could do so and would be able to provide an update by today. As detailed below, DHS-FOIA was unable to locate the previous OCIO record set such that it needed to conduct a new search. It has now completed that search and will begin processing records next week, with a first response and production anticipated by July 15, 2025 and continuing thereafter on a rolling monthly basis. However, this new search uncovered a vastly greater number of records and DHS-FOIA is still in the process of narrowing those results. However, since Plaintiff elected to press its motion for reasons that remain unclear, DHS-FOIA was required to

1

divert resources to oppose the motion while simultaneously continuing its processing of the FOIA request along with the 122 others that are in litigation and the 42,853 requests currently in its backlog. Given the material change in circumstances, Plaintiff's motion is moot.

For the below reasons, the Court should deny the motion.

## II. BACKGROUND & RELEVANT PROCEDURAL HISTORY

### A. The Court's Order and Defendant's Compliance Through Many Different and Separate Meet and Confer Efforts With Plaintiff, The Filing of Status Reports, Appearance at Status Conferences, And Expedited Processing of All 5,649 Pages of CMS Documents At Plaintiff's Request.

In the Order, the Court found that DHS had not conducted an adequate search because it did not refer Plaintiff's FOIA request to the DHS Office of Civil Rights and Civil Liberties ("CRCL"). *See* Dkt. 87 at 30-35. The Court thus ordered the parties "to meet and confer within 21 days of the date of this Order regarding … the Privacy Office's referral of the Plaintiff's Request to CRCL[.]" *See* Dkt. 87 at 36. (cleaned up).

Pursuant to the Court's order, the parties met and conferred at the end of July. *See* Dkt. 92 at 3 ("In accordance with the Court's Summary Judgment Order, ECF No. 87, counsel for Plaintiff and Defendants met on July 26, 2024."). Those efforts continued by email as the parties conferred over search terms, parameters, and a production order. *See* Dkt. nos. 101-2, 103-1 & 103-2.

In correspondence dated October 18, 2024, CRCL explained that its search of its Complaint Management System ("CMS") Files complaint database returned 577 documents, which equaled approximately 5,649 pages. *See* Dkt. 103-3 at 1. Its search of Office of Chief Information Officer ("OCIO") email and OneDrive records returned 427 documents equaling about 6,506 pages. *Id.* These figures represented a de-duplicated and threaded count. *Id.* CRCL then stated, as it had prior, that it would make its first production on November 1, 2024, with its first processing and producing CMS case

records as requested by Plaintiff. Dkt. 103 at 4; Dkt. 103-2 at 1.

Despite being informed of CRCL's search terms, parameters, results of the searches, and a date by which it would make its production, on October 30, 2024, Plaintiff filed a Status Report and Request for Case Management Conference. *See* Dkt. 101. Therein, Plaintiff stated that it sought "assistance from the Court to help [the] Parties resolve their dispute over the appropriate search parameters and processing rate and deadlines for CRCL records…." *Id.* at 4.

In its November 13, 2024 Response to Plaintiff's Status Report and Request for Case Management Conference [Dkt. 103], DHS confirmed that it had referred Plaintiff's FOIA request to CRCL, Dkt. 103 at 3, and provided the Court with a full explanation concerning CRCL's efforts to search for and produce records in response to the FOIA request. *Id.* at 3-5. CRCL also confirmed that it had made its first production on November 1, 2024 as it had told Plaintiff it would. *See* Dkt. 103 at 4. CRCL also stated that "[i]f, after reviewing the production, Plaintiff believes it has received records that it is not interested in, despite being responsive to the FOIA request, CRCL has stated that it is open to meet and confer on a narrowing of the records at that juncture." *Id.* at 4-5.

Thereafter, on November 22, 2024, DHS provided, as directed in the Court's Minutes of Status Conference [Dkt. 104], a supplemental response in which it addressed, as relevant here, CRCL FOIA's Processing & Technical Capabilities, the Search of CMS Files, and OCIO Searches. Dkt. 105 at 2-5.

On December 19, 2024, the Court issued its Minutes of Status Conference in which it wrote: "1. The Plaintiffs will provide search terms to the Defendants after receiving the CMS documents. The Plaintiffs must also notify the Court once this step is completed. 2.Within 30 days, the Defendants are required to obtain an explanation related to the OCIO search, detailing the technical issues affecting the use of search terms, including how these issues impact the ability to obtain hit counts and page numbers of responsive materials. The Court will review the submitted information and schedule a hearing if deemed necessary." *See* Dkt. 108.

On January 21, 2025, DHS filed a second supplemental response as directed by the Court. *See* Dkt. 109.

Thereafter, on February 21, 2025, CRCL finished processing and producing all CMS records.[1] *See* Dkt. 122 at 17; *see also* Dkt. 125 at 2-3 ("CRCL completed its processing of CMS documents **according to this agreement**, processing 2,931 pages for a production in February of 2025.") (emphasis added). Yet it was a month later that Plaintiff first inquired on the status of CRCL's processing. *See* Dkt. 122 at 15.

### B. The Intervening DHS-FOIA Realignment and Reduction In Force Interrupted CRCL's Ability To Process the OCIO Records

In February 2025, DHS's Chief Privacy Officer and Chief FOIA Officer issued guidance notifying DHS Headquarters that in order to streamline FOIA activities, DHS-FOIA would assume responsibility for all FOIA work that was being handled by components located at DHS-HQ. *See* Dkt. 123, Exhibit 1 at ¶ 5. DHS-FOIA would serve as the only FOIA office for DHS-HQ. *Id.* Accordingly, the management and operations for CRCL-FOIA were scheduled to be transferred to DHS-FOIA by March 31, 2025. *Id.* Shortly thereafter, CRCL-FOIA began to migrate its FOIA operations to DHS-FOIA. *Id.* Additionally, CRCL-FOIA committed two full time employees to facilitate the migration process by processing CRCL-FOIA requests and working with DHS-FOIA to combine the two offices. *Id.*

However, on March 21, 2025, CRCL employees, including those working in CRCL-FOIA were notified that they were subject to a reduction in force and being placed on administrative leave until their final date of employment (May 23, 2025). *Id.*, ¶ 6. Defendant advised Plaintiff of this reduction in force on March 24, 2025. *See* Dkt. 122, Exhibit 1 at 2.

Because the majority of all CRCL employees were placed on administrative leave,

---

[1] As part of its processing, CRCL referred records to ICE, OIG, and the Privacy Office. ICE will complete processing of the referred documents it received by June 30, 2025 and OIG will complete the processing of the documents it received by July 3, 2025.

4

DHS-HQ has experienced significant challenges with completing FOIA tasks, including identifying appropriate custodians, conducting searches, identifying and retrieving responsive records, and ensuring timely productions. Dkt. 123, Exhibit 1 at ¶ 6. Furthermore, DHS-FOIA had not completed the HQ-FOIA realignment process before these CRCL employees were notified of CRCL's realignment, and therefore experienced additional system access and file location issues related to CRCL-FOIA's work. *Id.* With respect to CRCL, the Department is beginning to staff the office consistent with plans for executing statutory functions. *Id.* However, the management and operations for CRCL-FOIA will remain with DHS-FOIA. *Id.*

C.  **DHS-FOIA's Current Workload**

DHS-FOIA receives and processes FOIA requests for the following Department of Homeland Security Headquarter ("DHS-HQ") Offices: Office of the Executive Secretary, Management Directorate, Office of Strategy, Policy, and Plans, Office of Operations Coordination, Office of Partnership and Engagement, Privacy Office, CRCL, Center for Prevention Programs and Partnerships, Office of the General Counsel, Office of Legislative Affairs, Office of Public Affairs, Office of the Citizenship and Immigration Services Ombudsman, Office of the Immigration Detention Ombudsman, Office of the Secretary, Office of Biometric Identity Management ("OBIM"), Federal Protection Service ("FPS"), and the Office of Intelligence and Analysis ("I&A"). *See* Supplemental Declaration of Catrina M. Pavlik-Keenan ("Supp Decl."), ¶ 3. Additionally, DHS-FOIA, in accordance with an internal agreement, receives and processes FOIA requests for operational component Cybersecurity and Infrastructure Security Agency ("CISA"). *Id.*

Of those offices, CRCL, FPS, and I&A were offices that previously had independent FOIA offices. DHS's Science and Technology Directorate (S&T) also had an independent FOIA office. In March 2025, the FOIA responsibilities for these offices were reassigned to DHS-FOIA as explained previously. *See* Dkt. 123 at pp. 8-9. Those responsibilities occurred without the reassignment of the staff from those three offices –

though DHS-FOIA has received employees via a detail assignment to assist with processing I & A records only. *See* Supp Decl., ¶ 4.

Accordingly, DHS-FOIA has seen a substantial increase in workload without the corresponding increase in staff allocation. *Id.*, ¶ 5. In fact, DHS-FOIA has lost five full time FOIA analysts who elected to take early retirement. *Id.* In FY25, to date, DHS-FOIA Privacy Office has received 100,273 FOIA requests, of which 58,042 requests have been processed. *Id.*

The current backlog is approximately 42,853 FOIA requests. *Id.* DHS-FOIA also took on a total of 797 additional FOIA requests as a result of realignment, including 119 from CRCL. *Id.* On average, each FOIA analyst on its initial disclosure team is assigned to handle between 200-500 routine FOIA requests and 42 complex FOIA requests. *Id.* The FOIA request in this case is considered complex (e.g., various types of records, number of responsive records, etc.). *Id.*

Additionally, DHS-FOIA is the defendant in 122 cases in federal FOIA litigation. *Id.* Currently, DHS-FOIA's litigation team includes six (6) full time federal employees that help process records for cases in litigation, including coordinating litigation consultations to other agencies and making releases to plaintiffs; in addition, these employees coordinate FOIA appeals for DHS Headquarters and are also responsible for providing training, handling proactive disclosures to DHS's FOIA reading room, and other assigned special projects. *Id.*

**D.   The May 27, 2025 Status Conference And Update On DHS-FOIA's Processing of the OCIO Records Following the Realignment And Reduction In Force.**

With CRCL completing its processing of the CMS records, the next category of documents for processing was the OCIO records, which equaled about 6,506 pages. *See* Dkt. 103-3 at 1. As stated in the parties' May 23, 2025 Joint Status Report, DHS-FOIA was attempting to gain access to the OCIO records to certify that Defendant could still process that record set. Dkt. 123, ¶ 7. If it was able to do so, it indicated that it would

notify the Plaintiff and request additional search terms to further narrow the OCIO record set. Alternatively, if it could not gain access to the records, OCIO stated it would re-do the search. Dkt. 122 at p. 6. It further stated it would be able to provide that information by today, June 6, 2025. Dkt. 122 at 6.

Rather than wait less than two weeks to learn the results of DHS-FOIA's efforts, Plaintiff pressed ahead with filing its motion which is based on information it knew to be incomplete given DHS-FOIA's representations in the Joint Status Report and at the Status Conference. Nevertheless, Plaintiff's proposed order presumes that DHS-FOIA would be able to access the OCIO records despite Defendant's clear indication that, at the time of the Joint Status Report's filing, it did not know whether it could. *See* Dkt. 125-3 & Dkt. 122 at 9.

Just as it indicated it would by today's date, DHS-FOIA is able to report that, after expending a great deal of time with several DHS staff, DHS-FOIA was able to locate what were likely the records initially identified by CRCL, but were unable to ascertain how CRCL FOIA processed the records that resulted in 6,506 pages as previously reported to the Plaintiff and the Court. Supp. Decl., ¶ 6. DHS-FOIA searched the CRCL FOIA's officer's files and SharePoint, email communications about the search, and DHS-FOIA's FOIA case management system. *Id.* Additionally, the Office of General Counsel met with OICO to ascertain the history of the search and efforts made to comply with the Order. *Id.* DHS OCIO identified that the search results were placed and located on CRCL FOIA's SharePoint site, but were no longer there. *Id.* It appeared some of the records were placed in DHS-FOIA's FOIA case management system, but DHS-FOIA could not ascertain and verify whether *all* of the records responsive to the request were there. *Id.*

Given that DHS-FOIA was unable to verify the original search results, DHS-FOIA repeated the two searches with the previously agreed upon search terms. *Id.*, ¶ 7. These searches yielded roughly 596,000 pages after deduplication. *Id.* DHS-FOIA is currently conducting a more detailed and in-depth keyword search now of these search results, as

7

well as performing an initial responsiveness review, to ensure DHS-FOIA adequately processes records responsive to the request. *Id.* At present, DHS-FOIA has been able to reduce this number significantly to 270,000 pages and is confident it will be able to further narrow the results. *Id.* DHS-FOIA plans to complete the further narrowing process by June 13, 2025, and DHS-FOIA can then immediately begin to process these records on a rolling basis at a rate of 700 pages per month consistent with its present processing rate and ability, with the first production and response expected on July 15, 2025. *Id.*

With regard to processing records, on average, each analyst of the DHS-FOIA litigation team processes approximately 2,500 pages per month across all of the FOIA litigation cases with active productions. *Id.*, ¶ 5. As such, DHS-FOIA has limited ability to process more than seven hundred (700) pages a month for this matter given its resource limitations. *Id.*

### III. LEGAL STANDARD

"[F]ederal courts have long understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution," which "are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Club v. EPA*, 505 F. Supp. 3d 982, 988-89 (N.D. Cal. 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)) (cleaned up); *see also Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir. 1995) ("A district court possesses inherent power over the administration of its business [,]" including the "inherent authority … to promulgate and enforce rules for the management of litigation …").

### IV. ARGUMENT

Plaintiff's motion is properly denied because DHS-FOIA has and continues to comply with the express and implied terms of the Court's Order. Second, the specific relief Plaintiff seeks in its motion – expedited processing of the original OCIO record set of 6,506 pages – is moot. DHS-FOIA is unable to process those records because they

8

1  could not verify the records they did find as complete or responsive. Plaintiff was notice
2  of this possibility a week before it elected to file its motion. In the intervening time,
3  DHS-FOIA worked to obtain the previous record set and, when it determined it was
4  unable to verify the records, conducted the searches anew. Because the new searches
5  were run just last week and the results include significantly more pages that the first
6  search, DHS-FOIA is now in the process of trying to further narrow the results.
7       Should the Court nonetheless grant the motion, DHS-FOIA requests that it not be
8  required to process at a rate greater than 700 pages per month given its present workload
9  and limited resources.

### A. DHS-FOIA Has, And Continues, To Comply With The Express And Implied Terms Of The Order.

12      ACLU SoCal misstates the Court's Order by alleging that it "granted Plaintiff's
13 summary judgment as to DHS on the basis that DHS had failed to comply with its
14 obligation under FOIA to produce responsive documents held by its component
15 [CRCL]." *See* Dkt. 125 at 4 (cleaned up) (citation omitted). However, the Order states
16 that the parties were "to meet and confer within 21 days of the date of this Order
17 regarding … the Privacy Office's referral of the Plaintiff's Request to CRCL[.]" *See* Dkt.
18 87 at 36. (cleaned up). Put differently, the Order required that DHS refer Plaintiff's
19 FOIA request to CRCL after the parties met and conferred.
20      Of course, as the Court's docket confirms, DHS did not read the Order myopically
21 or take the position that it was required to *only* meet and confer over the referral of
22 Plaintiff's FOIA Request to CRCL. Plaintiff inherently concedes as much as it recounts
23 in its motion (1) meet and confer efforts over CRCL's search, (2) that "DHS used search
24 terms provided by Plaintiff to identify approximately 12,000 pages of responsive
25 documents", (3) that the parties appeared for many different and separate status
26 conferences, (4) that "the parties reached an agreement: CRCL would complete its
27 processing of the approximately 5,649 pages of CMS documents within 60 days", and
28 that (5) "CRCL completed its processing of CMS documents according to this

1 agreement." *See* Dkt. 125 at 5-6.

2     Indeed, from the time CRCL received the FOIA request through February 2025, it
3 complied with the Court's Order. Following its last production of the CMS records in
4 February 2025, it was Plaintiff's obligation, as directed by the Court, to provide search
5 terms to Defendant and inform it that such had occurred. *See* Dkt. 108. Plaintiff did
6 neither. Instead, on March 21, 2025, Plaintiff inquired for the first time about the CMS
7 production. *See* Dkt. 122 at 15. After being informed of the reduction in force, on May 5,
8 2025, Plaintiff took the position that DHS should merely process the remaining OCIO
9 records at a rate of 3,000 pages per month which is the same request they make in its
10 motion. *Id.* at 13-14. Plaintiff's request dismisses the practical effects of the realignment
11 on Defendant's ability to complete the processing of the CRCL records.

12     **B.    Plaintiff Ignores The Practical Effects of DHS-FOIA's Realignment
13     And Chose To File Its Motion Even While On Notice That DHS-FOIA
14     Was Unsure It Could Process The Original OCIO Records**

15     Plaintiff's motion is moot insofar as it seeks expedited processing of the original
16 OCIO records. This was a foreseeable outcome as DHS explicitly cautioned in the
17 parties' Joint Status Report [Dkt. 122], not only the significant impact of the realignment
18 on Defendant's resources, but also the steps it was taking – and by when – to meet its
19 processing obligations with respect to Plaintiff's FOIA Request. *See* Dkt. 122 at 8-9.
20 Specifically, Defendant stated that by the date of this filing – June 6, 2025 – it would
21 inform Plaintiff whether DHS-FOIA could rely on the original OCIO searches or if it
22 needed to re-conduct the search. *Id.* at 9. And, once DHS-FOIA identified the final
23 record set to process, it would notify Plaintiff to then negotiate a processing rate. *Id.*

24     Plaintiff chose to dismiss the practical effects of the recent CRCL realignment.
25 Rather than wait nine days from the May 28, 2025 status conference in this matter to
26 learn whether DHS-FOIA would need to re-conduct the search, Plaintiff charged ahead
27 with the filing of its motion. In so doing, Plaintiff elected to bring to the Court for
28 adjudication an issue that is now moot because the relief that Plaintiff seeks – expedited

processing of 6,506 OCIO records – was based on the premise that DHS-FOIA would be able to rely on the same record set CRCL had in its possession before realignment. Plaintiff did so despite being informed that the agency was working to determine by today whether it would need to re-run the search. And, as explained above, DHS-FOIA did need to conduct a new search in order to comply with its FOIA obligations thereby further underscoring its ongoing compliance with the Order. Stated differently, it cannot process the original OCIO records which were the materials over which Plaintiff's motion seeks expedited processing.

Before reaching this conclusion, however, DHS-FOIA took specific steps to try and locate the original OCIO records, including meeting with OCIO itself. Supp. Decl., ¶ 6. However, DHS-FOIA could not verify whether all of the records responsive to the first request were in the FOIA processing system. *Id.* This is important since merely processing what it did find would run afoul of the FOIA because, if Plaintiff challenged the search, there is no way DHS-FOIA could attest to the sufficiency of the search.

After running the search anew, DHS-FOIA has identified an initial universe of records that is larger than the record set CRCL anticipated processing before the realignment. Supp. Decl., ¶ 7. However, DHS-FOIA has not yet finished narrowing the universe which is not surprising since it has been less than two weeks since it ran the search. *Id.* Despite that, DHS-FOIA is moving swiftly and will be able to make its first production on July 15, 2025 and continue to do so on a rolling basis each month. *Id.* Given this material change though, Plaintiff's motion is moot for the reasons explained above.

    **C.    The Court Should Not Order DHS-FOIA To Process At a Rate Beyond 700 Pages Per Month**

To the extent the Court is inclined to grant Plaintiff's motion despite DHS-FOIA's ongoing compliance with the Order and the mootness issue addressed above, Defendant should not be ordered to process at a rate greater than 700 pages per month.

Agencies' standard release policies often warrant deference, although "[c]ourts

have broad discretion to determine a reasonable processing rate for a FOIA request." *Colbert v. FBI*, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018). Courts also presume that "non-conclusory" agency affidavits are offered in "good faith," and plaintiffs' cannot rebut their contents with "purely speculative claims." *See Jud. Watch, Inc. v. U.S. Dep't of Com.*, No. 17-cv-1283 (EGS), 2020 WL 6939807, at *2 (D.D.C. Nov. 25, 2020) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "Several factors inform the analysis" of the appropriate rate, "including the size and compelling need of the request compared to others, as well as the effect of the request on the [agency's] ability to review other FOIA requests." *Colbert*, 2018 WL 6299966, at *3.

"In exercising its judicial review, a court has 'broad discretion to determine a reasonable processing rate for a FOIA request.'" *N. Y. Times Co. v. Dep't of Defense*, 2022 WL 1547989, at *1 (S.D. N.Y. April 21, 2022) (quoting *Colbert v. Federal Bureau of Investigation*, 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018)). However, when a court orders one request to move to the head of the queue, it necessarily results in another, perhaps more time-sensitive request being moved further back in the queue. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615 (D.C. Cir. 1976) ("If any request for information can be the subject of a court order to the agency to place the request in a priority position, without any showing in court of urgency or exceptional need, then these court-ordered cases will take their places along with those court-ordered cases in which genuine urgency and need have been shown. The result will be that not only similar, prior, non-urgent requests will be displaced; even those requests with an urgent need will be unable to get to the head of the line, because of the crowd of miscellaneous requests already placed there by court order without any showing of urgency or need whatsoever"); *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001) ("an unduly generous approach would also disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none").

To that end, district courts have found that a processing rate of 500 pages per month "is fairly standard." *See Rolling Stone, LLC v. Dep't of Just.*, 2024 WL 3862521,

at *3 (S.D. N.Y. Aug. 19, 2024); *see also Radar Online LLC v. Fed. Bureau of Investigation*, 692 F. Supp. 3d 318, 333 (S.D.N.Y. 2023) (FBI produced documents at rate of 500 pages per month per stipulation with plaintiff); *N.Y. Times Co.*, 2022 WL 1547989, at *2 (ordering processing of 500 pages every 60 days); *Haitian Bridge Alliance v. U.S. Dep't of Homeland Sec.*, 2024 WL 476304, at *11 (S.D.N.Y. Feb. 7, 2024) (reasonable for various agency defendants to produce documents at rates of 400, 500 and 750 pages per month); *see also Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 2021 WL 5449733, at *1 (S.D.N.Y. Nov. 19, 2021) ("Courts have issued orders providing for the processing of 500 pages per month, even where that schedule will result in lengthy production periods.") (citing cases)).

As explained in the concurrently filed declaration, DHS-FOIA has limited resources. *See* Supp. Decl., ¶ 5 & 7. Each of the six FOIA analysts currently handling FOIA litigation processes 2,500 pages per month. *Id.*, ¶ 7. Yet Plaintiff's requested relief would result in its FOIA request receiving 20% of the DHS-FOIA office's monthly processing capacity and thus prioritizing its request over all others, including those who do not have the resources to litigate.

## V. Conclusion

For all of the reasons explained above, DHS respectfully requests that the Court deny Plaintiff's motion.

13

Dated: June 6, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

  /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
Assistant United States Attorney

Attorneys for Defendant Department of Homeland Security

## **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendant, certifies that the memorandum of points and authorities contains 4,420 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 6, 2025

   /s/ *Joseph W. Tursi*
JOSEPH W. TURSI
Assistant United States Attorney