LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EVA BITRAN (SBN 302081)
ebitran@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>*Defendants*. | Case No. 2:22-CV-04760-SHK<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENFORCE JULY 8, 2024 ORDER ON MOTION FOR SUMMARY JUDGMENT (ECF NO. 87)**<br><br>Honorable Shashi H. Kewalramani<br>United States Magistrate Judge<br><br>Hearing Date: None Set Per Court Order |

EUNICE CHO (*pro hac vice*)
echo@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

## I.    Introduction

Plaintiff American Civil Liberties Union Foundation of Southern California ("Plaintiff") filed a motion on May 30, 2025 to enforce the Court's July 8, 2024 Summary Judgment Order related to Defendant Department of Homeland Security's ("DHS") inadequate search for and production of records from its component the Office of Civil Rights and Civil Liberties ("CRCL"). ECF No. 125. Plaintiff's motion sought to compel DHS to process and produce on an expedited basis the approximately 6,500 pages of documents that resulted from the parties' agreed-upon search parameters from CRCL through its Office of Chief Information Officer ("OCIO"), at a rate of 3,000 pages per month. *Id*. Defendant filed its opposition on June 6, 2025. ECF No. 128. In its opposition, Defendant DHS explained that it could no longer locate the 6,500 pages in question because the responsible staff were no longer employed at the agency, but that it had identified a significantly larger set of responsive documents based on the Parties' agreed upon search terms— approximately 596,000 pages—that it was considering for production, at a rate of no more than 700 pages per month. *Id.*

After Defendant filed its opposition brief, DHS unilaterally took steps, without consulting Plaintiff or the Court, to narrow the universe of documents for processing to 1,399 pages, relying on unspecified search parameters. This action ignored the Court's related Order issued on December 19, 2024, which held that "Plaintiff will provide search terms to Defendants" related to any narrowing of the OCIO search results and that the Court will "review the submitted information and schedule a hearing if deemed necessary." ECF No. 108. Indeed, after a series of *three* Status Conferences, Defendant was well aware that the Court would closely supervise DHS's compliance with its July 8, 2024 Order, including clarifying it to

-1-

include a processing rate and production completion date. *See* ECF Nos. 104, 106, 108. In the face of these Orders, DHS's unilateral culling of the responsive OCIO documents appears to be an improper attempt to "moot" out Plaintiff's request for an expedited processing rate.

As a result of DHS's unauthorized actions, the processing rate and schedule that Plaintiff initially requested in its motion is no longer an effective way to enforce the Court's July 8, 2024 Order, or to promote an efficient resolution of this case. DHS should continue producing the subset of 1,399 responsive pages. Additionally, in light of DHS's unauthorized actions, the Court should order DHS to identify the search terms and other parameters it used to reduce the universe of responsive OCIO documents to 1,399 pages, and engage in a Court-supervised meet and confer process to explore expanding the universe of responsive documents based on appropriate parameters that include input from Plaintiff, followed by the Court's issuance of a production rate and deadline for the production of the outstanding OCIO documents.

This approach to enforcing the Court's July 8, 2024 Order is necessary to ensure efficient resolution of this dispute, because DHS's approach would evade being subject to an appropriate production rate relative to the accurate universe of responsive documents to be processed. Defendant's approach would also unnecessarily prolong Plaintiff's access to documents that Defendant itself identified as responsive through its initial search parameters, but has unilaterally and without justification decided not to process and produce. Moreover, DHS's unauthorized actions illustrate the need for the Court to enforce and clarify its earlier orders by requiring Defendants to provide search term information with hit counts as part of

-2-

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
REPLY ISO MOTION TO ENFORCE SUMMARY JUDGMENT ORDER

any ordered meet and confer processes regarding search and production parameters to promote the efficient resolution of this case.

## II.     Procedural Background

In light of DHS's unauthorized actions that have necessitated altering the relief the Court should issue here, Plaintiff sets forth this expanded procedural history to assist the Court in understanding why the alternative relief Plaintiff now seeks is appropriate.

On July 8, 2024, the Court granted Plaintiff's motion for summary judgment, finding that "DHS's search was inadequate because it refused to search CRCL . . . ." ECF No. 87 at 35.[1] The Court's order specifically set out next steps to ensure efficient production, requiring the parties "to meet and confer within 21 days of the date of this Order regarding . . . the Privacy Office's referral of Plaintiff's Request to CRCL." *Id.* at 36.[2] The parties met and conferred as ordered, and over the course of these negotiations, CRCL agreed to search for specific agreed-upon terms in its records. ECF No. 103-2 at 4-6. However, CRCL stated that it would only be willing to process records at a rate of 250 pages per month. *Id.* at 1. On October 30, 2024, Plaintiff sought a status conference to, among other things, seek an expedited processing rate for the CRCL records. ECF No. 101. Thereafter, and with the Court's assistance, the parties agreed that CRCL would process a first set of CMS documents

---

[1] Plaintiff's citations of filings in this case use ECF page numbering.

[2] Defendant DHS argues that "ACLU SoCal misstates the Court's order by alleging that it 'granted Plaintiff's summary judgment as to DHS on the basis that DHS had failed to comply with its obligation under FOIA to produce responsive documents held by its component [CRCL].'" ECF No. 128 at 12. Instead, it frames the Court's order as simply "requir[ing] that DHS refer Plaintiff's FOIA request to CRCL after the parties met and conferred." *Id.* The Court's order included a meet and confer requirement, but it was not limited to this requirement alone. In characterizing the Court's order this narrowly, DHS ignores the Court's explicit finding that "DHS's search was inadequate because it refused to search CRCL . . . ." ECF No. 87 at 35.

(consisting of "case records" from CRCL's official case file) within 60 days. ECF No. 103 at 2; ECF No. 125-2 at 3. The Court also ordered that once Plaintiff received those CMS documents, it would propose search terms to CRCL to narrow the remaining OCIO documents (which consist of "email and electronic documents" that CRCL's relevant investigators kept as part of their work). ECF No. 103 at 3; ECF No. 108. At that point, the Court would set another status conference if necessary. ECF No. 108. Thereafter, while CRCL processed certain of the CMS documents as agreed, it referred the vast majority of them to other DHS components, and Plaintiff has yet to receive those referred documents from the other DHS components. ECF No. 122 at 18.[3]

The agreements the parties have reached with the Court's assistance place several obligations on DHS and its component CRCL for the OCIO documents. First, DHS and CRCL agreed to run specific search terms negotiated with Plaintiff to generate the set of OCIO documents. ECF No. 103-2 at 4-6. Second, DHS and CRCL agreed to accept narrowing search terms from Plaintiff and to appear before the Court—if the Court wishes—to discuss those narrowing search terms. ECF No. 108.

Unfortunately, recent developments have complicated the OCIO production. As the parties explained in their opening and opposition briefs, CRCL experienced

---

[3] Defendants' opposition claims that "on February 21, 2025, CRCL finished processing and producing all CMS records." ECF No. 128 at 7. This is wrong. Far from "producing all CMS records," CRCL has produced only 284 pages, referring 1,152 pages to other DHS components that have yet to produce them. ECF No. 122 at 18. CRCL suggests that Plaintiff was unduly delayed in its response, ECF No. 128 at 7 (citing ECF No. 122 at 15), but Plaintiff could not have provided a substantive response based on the CMS production because it was still missing the large majority of the production. Instead, Plaintiff's email inquired into the status of the referrals, which at that point had been pending for a month. ECF No. 122 at 15. There is nothing dilatory about Plaintiff's diligent attempts to follow up on these referrals.

a reduction in force ("RIF") and transferred its FOIA processing obligations to the DHS Privacy Office. ECF No. 125 at 6-7; ECF No. 128 at 7-8. As a result of these disruptions, the DHS Privacy Office represented that it was no longer able to identify the same set of OCIO documents that CRCL had originally identified using the agreed-on search terms. ECF No. 128 at 10. The DHS Privacy Office then stated that it had identified a significantly larger set of OCIO documents than CRCL (approximately 596,000 pages), ECF No. 128 at 10, but after the opening and opposition briefs were filed, DHS filed a notice explaining that it had narrowed those documents to just 1,399 pages using unspecified "keyword searching" and an "initial responsiveness review" to limit the results to those "that DHS CRCL would have in its possession and control that DHS Office of Inspector General and ICE would not have." ECF No. 129-1 at ¶ 3. DHS inexplicably did not disclose in its supplemental declaration the search terms or other parameters it used to unilaterally reduce the number of responsive records, or whether it referred documents to DHS Office of Inspector General and ICE, which FOIA requires it to do.

The 1,399 OCIO pages that DHS has agreed to process are under a quarter of the approximately 6,506 OCIO pages initially identified by CRCL, *see* ECF No. 103 at 5, and as a result they presumably are missing a significant amount of the content in CRCL's original 6,506-page OCIO collection, and omit other responsive records that should be produced to Plaintiff from the approximately 596,000 pages DHS located in its subsequent OCIO search. *See* ECF No. 128 at 10.

### III. The Court Should Issue an Order to Address DHS's Non-Compliance with the Agreement the Parties Negotiated with the Court's Supervision.

DHS has stated in a "notice" filed after its opposition that it has unilaterally narrowed from approximately 596,000 to just 1,399 pages the OCIO records it will

-5-

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
REPLY ISO MOTION TO ENFORCE SUMMARY JUDGMENT ORDER

process, and that it will process them before August 4, 2025. ECF No. 129 at 2. This unauthorized action alters the relief the Court should order in response to Plaintiff's motion to enforce its July 8, 2024 Summary Judgment Order, because it contravenes the Court's prior Orders related to the appropriate methodology to narrow the OCIO documents. In light of DHS's unauthorized actions, and lack of transparency in identifying how it narrowed the universe of responsive OCIO documents, the Court should order DHS to identify the search terms and other parameters it used to reduce the universe of responsive OCIO documents to 1,399 pages, and engage in a Court-supervised meet and confer process to adjust the universe of responsive documents based on appropriate parameters that include input from Plaintiff, followed by the Court's issuance of a production rate and deadline for the production of the outstanding OCIO documents.

   Here, DHS's new position that it will process only 1,399 pages of the OCIO documents ignores the parties' agreement regarding search terms to identify the set of OCIO documents for production, as negotiated with supervision from the Court. ECF No. 103-2 at 4-6. Contrary to that agreement, DHS has now used additional, unspecified "keyword searching" and "responsiveness review" to produce a smaller set of documents than agreed. ECF No. 129-1 at ¶ 3. The parties and Court also agreed on a process to narrow the OCIO results, where Plaintiff would provide CRCL with the narrowing search terms after reviewing the CMS production and where the Court would schedule a status conference if necessary to arrive at the appropriate narrowed set of documents. ECF No. 108. Instead of following this process, DHS has unilaterally narrowed the production with no input from Plaintiff

or the Court. ECF No. 129-1 at ¶ 3.[4] Notably, Plaintiff and the Court are left without any information about what narrowing search terms have been used or what responsiveness review has been conducted. *See id.* DHS has also engaged in a problematic process of narrowing the search results to exclude documents that, in its view, other components "would . . . have." *Id.* It has done so without regard to whether or not those other components actually identified or produced those documents. *Id.*

In light of DHS's unilateral decision to ignore the parties' agreement, as negotiated by the Court, Plaintiff respectfully requests that the Court use its broad authority to ensure the efficient resolution of this case and to enforce its own orders. *See* ECF No. 125 at 7 (listing caselaw supporting this broad authority). In addition to issuing the above-referenced relief to address the instant motion, Plaintiff proposes that the Court also enter a relatively modest standing order and to clarify that going forward, when the Court orders the parties to meet and confer on search parameters and production, Defendants must provide hit count information, broken down by proposed search terms, in order for the parties to attempt to reach agreement on the parameters of the Defendants' production. *See* ECF No. 112-2 at ¶ 6

---

[4] This process agreed to by the parties and Court has also proven problematic. The parties had agreed to meet and confer to narrow the production based on Plaintiff's review of CRCL's CMS production. However, although CRCL processed this CMS production within 60 days as agreed, it produced only 284 pages and referred over a thousand pages to other agencies for processing, *see* ECF No. 122 at 18, leaving Plaintiff without most CMS documents and without the ability to narrow the search as planned. Additionally, with the loss of all CRCL FOIA employees and their institutional knowledge, *see* ECF No. 123 at 8-9, any narrowing done at this point would be likely to risk losing responsive information. Plaintiff proposed in its motion that the Court address these issues by ordering CRCL to simply produce all OCIO documents without this narrowing on an expedited processing schedule. ECF No. 125 at 9 n.2. But even though other factors have complicated the process the parties and Court had previously agreed to, DHS has no basis to ignore the parties' and the Court's prior agreements and unilaterally conduct its own narrowing.

-7-
*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
REPLY ISO MOTION TO ENFORCE SUMMARY JUDGMENT ORDER

(requesting this relief in Plaintiff's proposed summary judgment order). Defendant ICE has routinely provided this search term and hit count information in meet and confer processes in other cases. *See* ECF No. 57-2 at 28-30 (DHS-ICE's search term and hit count report). Plaintiff further requests that the Court clarify that this order extends to the set of 1,399 pages of OCIO documents it has identified, and that DHS must provide, within 15 days of the Court's order, hit count information, broken down by search terms, and any additional methodology that DHS used to reduce the set of documents at issue here.

## I. Conclusion

For the foregoing reasons, and those set forth in Plaintiff's opening papers, the Court should grant Plaintiff the relief specified herein.

\*\*\*

The undersigned counsel of record for Plaintiff certifies that this brief contains 2,464 words, including footnotes, which complies with the word limit of L.R. 11-6.1 (7000 words).

Respectfully submitted this 13th of June, 2025.
/s/ *Laboni Hoq*

| | |
|---|---|
| LABONI A. HOQ (SBN 224140)<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO (pro hac vice)<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |

| EVA BITRAN (SBN 302081) | KYLE VIRGIEN (SBN 278747) |
| --- | --- |
| ebitran@aclusocal.org | kvirgien@aclu.org |
| ACLU FOUNDATION OF SOUTHERN CALIFORNIA | AMERICAN CIVIL LIBERTIES UNION FOUNDATION NATIONAL PRISON PROJECT |
| 1313 West Eighth Street | 425 California St., Suite 700 |
| Los Angeles, California 90017 | San Francisco, CA 94104 |
| Telephone: (213) 977-9500 | Telephone: (202) 393-4930 |
| Facsimile: (213) 915-0219 | |
| | *Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*,
Case No. 2:22-CV-04760-SHK
REPLY ISO MOTION TO ENFORCE SUMMARY JUDGMENT ORDER