LABONI A. HOQ (SBN 224140)
*laboni@hoqlaw.com*
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004

EVA BITRAN (SBN 302081)
*ebitran@aclusocal.org*
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 915-0219

Attorneys for Plaintiff
*(additional counsel information on next page)*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>*Defendants*. | Case No. 2:22-CV-04760-BFM<br><br>**JOINT STATUS REPORT**<br><br>Honorable Brianna Fuller Mircheff<br>United States Magistrate Judge |

EUNICE CHO (*pro hac vice*)
*echo@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005
Telephone: (202) 548-6616

KYLE VIRGIEN (SBN 278747)
*kvirgien@aclu.org*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930

*Attorneys for Plaintiff*

Pursuant to this Court's September 22, 2025 Scheduling Notice (ECF No. 142), the Parties file this Joint Status Report ("JSR") describing (1) the status of the case, (2) the Parties' discussions about the relief ordered in the Court's August 15, 2025 Summary Judgment Order (ECF No. 132), (3) the Parties' discussion about Plaintiff's fully-briefed Motion to Enforce the Court's July 5, 2024 Summary Judgment Order (ECF Nos. 87, 125, 128, 129, 131), which the Court has yet to rule on, and (4) the Parties' proposed timeline for next steps in the case and further suggestions on case management.

## I. Report on Status of the Case

### A. Plaintiff's Report

Plaintiff ACLU of Southern California ("ACLU So Cal") filed this Freedom of Information Act ("FOIA") lawsuit over three years ago, on July 12, 2022, seeking information about Immigration and Customs Enforcement's ("ICE") practice of releasing immigrants facing imminent death in custody, which allows the agency to avoid accountability for their deaths. ECF No. 1 at ¶ 1. Under Department of Homeland Security ("DHS") policies and practices, when a detainee dies in custody, ICE is required to report the death and investigate it to assess and ensure adherence to standards related detainee medical care. *Id.* ¶¶ 30-32. In the wake of media reports and in the course of its advocacy, ACLU So Cal sought to learn more about the nature and extent of this problematic practice, *id.* ¶¶ 2-6, which was even more consequential during the COVID-19 pandemic, when ICE was under the pressure of several lawsuits related to its sub-standard COVID-19 mitigation practices. *Id.* ¶¶ 25-29. During the pandemic, record numbers of immigration detainees contracted COVID-19 at ICE detention centers, became critically ill, and were hospitalized, therefore potentially subjecting them to ICE's practice of deathbed releases resulting in hidden deaths. *Id.* ¶¶ 25-29.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

1

To better understand the nature and extent of ICE's problematic deathbed release practice, on April 29, 2022, Plaintiff ACLU So Cal issued a FOIA Request to Defendants DHS, ICE and DHS's Office of Inspector General ("DHS-OIG") seeking nine categories of documents, including information about (1) the circumstances of ICE's deathbed releases of four individual detainees (Parts 1-3), and (2) the broader nature and extent of these types of deathbed releases, including documents identifying additional immigrants released in this way (Parts 4-9). ECF No. 1 at ¶ 35; ECF No. 24 at ¶ 36. On July 12, 2022, when ACLU So Cal received no responsive records from the target agencies, Plaintiff filed this lawsuit, which it amended to add an additional Defendant on October 4, 2020. ECF Nos. 1, 24.

Over the course of the past three years, with significant assistance from the Court, Plaintiff has prevailed in requiring Defendants to conduct adequate searches for responsive documents and produce unjustifiably withheld information, and has obtained a significant number of documents related to the four individuals named in the Complaint who faced deathbed release. Plaintiff has prevailed on a motion for judgment on the pleadings (ECF No. 54), largely prevailed on two sets of summary judgment motions (ECF No. 87 as to Defendants OIG and DHS-CRCL; ECF No. 132 as to ICE), prevailed on a motion for reconsideration (ECF No. 100), and prevailed on a motion for an expedited production rate as to ICE (ECF No. 62, ordering ICE to process records at a rate of 3,000 pages/month). Although Plaintiff prevailed in its most recent summary judgment motion with respect to ICE's search adequacy, ECF No. 132, and the parties have met and conferred in accordance with the court's summary judgment order, two important categories of records remain outstanding. The parties may require further Court intervention to ensure that these categories of records—which the Court has already ordered the government to turn over—are produced in a complete and timely way.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

2

*First*, the Court's August 15, 2025 Summary Judgment Order (ECF No. 132) requires ICE to conduct additional searches for records responsive to Parts 1-3 and 5-9 of the Request. Searches for records responsive to Parts 5-9 are of particular importance as these Parts are tailored to reveal previously unknown ICE deathbed releases. However, while the Parties have met and conferred about the parameters of ICE's further searches on this topic, ICE has yet to confirm its capability to conduct searches for Parts 6 and 7, making it impossible for the Parties to discuss a timeframe for production of the outstanding documents.

*Second*, on May 30, 2025, Plaintiff filed a Motion to Enforce the Court's July 5, 2024 Summary Judgment Order (ECF No. 87) as to the additional search required of DHS-CRCL. ECF No. 125. That motion is fully briefed, has yet to be ruled on. *See* ECF Nos. 87, 125, 128, 129, 131). Parties have recently met and conferred on this pending motion, and are in the process of negotiating a potential resolution, as discussed below. However, as with the outstanding ICE records discussed above, depending on the nature of DHS-CRCL's withholding of responsive records, the Parties may need to litigate the validity of these withholdings as well.

Upon Defendants' full compliance with the above-referenced Summary Judgement Orders and the resolution of any disputes that arise involving the documents Defendants will newly produce, Plaintiff will be in a position to file a motion for fees under FOIA's prevailing party fee provision. *See* 5 U.S.C. § 552(a)(4)(E)(i). Plaintiff intends to meet and confer with Defendants regarding this motion in due course, and will attempt to negotiate a resolution without Court intervention if possible. However, should the parties be unable to reach agreement, the Court may need to be involved in resolving some aspect of Plaintiff's entitlement to fees for these summary judgment motions.

///

///

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

3

### B. Defendants' Report

By the express terms of the September 22, 2025 Scheduling Notice (Dkt. 142), the Court directed the parties to file a joint status report that described: (1) the status of the case and the parties' discussion about the relief ordered in the Court's August 15, 2025 Order on Parties' Cross Motions for Summary Judgment [Dkt. 132]. While it is Plaintiff's prerogative to provide the above exhaustive (and slanted) procedural history of this FOIA case, Defendants will not respond point by point but instead focus its portions of this report on those topics explicitly requested by the Court. While the below discussion provides the current status of the case with respect to deadlines by which Defendants had agreed to process and produce materials, **these dates were contingent on the Government averting a shutdown. The Federal government shutdown as of 12:01 a.m. EDT on October 1, 2025 due to a lapse in appropriations. The ICE FOIA team has been furloughed as a result of the shutdown**. ICE will be unable to process or produce any records until the Government reopens.

### II. Parties' Discussions Regarding Relief Ordered in Court's August 15, 2025 Order on Parties' Cross Motions for Summary Judgment (ECF No. 132)

In its August 15, 2025 Order on Parties' Cross Motions for Summary Judgment granting, in part, Plaintiff's motion against Defendant ICE for failure to conduct an adequate search (ECF No. 132), the Court ordered the Parties to (1) meet and confer by September 5, 2025, to discuss "the date by which ICE will conduct" searches with respect to Parts 1-3 (Dkt. 132 at 24); and (2) by September 15, 2025, ICE was to provide an update regarding its search of "the relevant database for charges associated with Procedure Codes 99291, A0427, A0431, and A0433" as well as "any issues that may arise from conducting such a search." Dkt. 132 at 29. In addition, the parties were ordered to meet and confer on a timeline for production of any responsive records from the supplemental searches. *Id.* at 30.

The parties met and conferred on September 5, 2025, during which time ICE confirmed that it had conducted the searches with respect to Parts 1-3. As for the items to be discussed with respect to the second portion of the Court's order, on September 11, 2025, the Parties met via videoconference. The Parties had subsequent discussions in-person at the last Status Conference on September 16, 2025, and through follow-up emails. The following are the Parties' agreements regarding next steps and timing on these matters, as well as open issues that have yet to be resolved.

### A.   Parts 1-3

#### 1. Plaintiff's Report

The Court ordered ICE to conduct additional searches for responsive records related to the deathbed release of Martin Vargas Arellano from two "leads": (1) Scott James, ICE's Detention and Deportation Officer in its Field Operations Division, and (2) Corey Price, ICE's former Executive Associate Director for Enforcement and Removal. ECF 132 at 22-24. Through the meet and confer process, ICE provided Plaintiff hits counts of potentially responsive records for these two leads. Based on that information, the Parties agreed that ICE would commence processing of the 1,696 pages of emails it located for Scott James, and that it would produce the 52 "unique documents" it located for Corey Price excluding attachments to those documents, except for any expert reports which it will process and produce.

Regarding the timing of ICE's processing of these records, ICE agreed that it would produce responsive records for Scott James by October 15, 2025, and then proceed to process the agreed-upon records from Corey Price after it produces records responsive to Part 9, discussed below. Considering the standing order in this case that ICE process records at a rate of 3,000 pages per month (ECF No. 62), Plaintiff anticipates that ICE should be able to produce both the records for Part 9 and at least some of the Price documents by October 15, 2025. To assess how long it will take ICE to complete production of the Price documents, Plaintiff requested that

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

ICE identify with this JSR the total number of pages it will be processing for him (including the 52 unique documents, excluding attachments but including expert reports). ICE states below that it will process just 597 pages of records, a number well within the 3,000 pages per month that the Court has previously ordered for ICE. However, Plaintiffs believe that ICE should be able to produce both the 3,000 pages of .pdf files, as well as Excel spreadsheets, in the same month. Notably, ICE routinely produces Excel spreadsheets as unitary documents in FOIA case—even in excess of 1,000,000 rows of data—without reference to page count designed for production of records in .pdf format. *See, e.g. Am. C.L. Union Immigrants' Rts. Project v. United States Immigr. & Customs Enf't*, 58 F.4th 643, 649 (2d Cir. 2023) (describing production of excel spreadsheet with over 1,000,000 rows); *Am. C.L. Union v. U.S. Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 312 (S.D.N.Y. 2013) (production of spreadsheet with 1,101,967 data points regarding ICE detainees). Because redactions of data categories can be achieved through batch processing in Excel, the administrative burden of processing such information is less onerous than individual word redaction. *See, e.g. Am. Immigr. Council v. U.S. Immigr. & Custom Enf't*, 464 F. Supp. 3d 228, 239 n.2 (D.D.C. 2020).

**2. Defendants' Report**

By October 15, 2025, ICE had planned to process the Scott James records and an Excel spreadsheet for Part 9 (in native format). The Excel spreadsheet contains 69,000 rows of data. If printed, that would equal about 20,000 pages. ICE also planned to begin processing the 40 Excel spreadsheets for Part 8 (in native format) for the October 15, 2025 production. ICE then planned to process the Corey Price materials (beginning in November 2025) and any remaining of the 40 Excel spreadsheets for Part 8 (in native format). Thus, Plaintiff is incorrect in saying that ICE "should be able to produce both the records for Part 9 and at least some of the Price documents by October 15, 2025."

With respect to the Corey Price materials, there are 587 pages of records. This figure does not include 88 pages which will need to be referred for consultation to DHS Headquarters.

### B. Part 5

#### 1. Plaintiff's Report

The Court ordered ICE to conduct an additional search for records responsive to Part 5, specifically requiring it to search for and produce records held by Dr. Ada Rivera, Deputy Medical Director of IHSC. ECF No. 132 at 24-25. ICE conducted this search, and produced a set of hit counts based on agreed-upon search terms totaling 96,325 documents. Given this large volume of potentially responsive records, Plaintiff requested a breakdown of the potentially responsive records by year, which ICE provided on September 17, 2025.

Based on this information, Plaintiff has proposed narrowing the universe of responsive records by excluding five search terms, and that ICE provided an updated page count after the results are deduplicated and threaded by October 3, 2025. Plaintiff anticipates that ICE can commence processing the Dr. Ada Rivera records after it completes production of the records responsive to Part 9, discussed above, but has asked ICE to meet and confer in this issue by October 10, 2025.

#### 2. Defendants' Report

In actuality, ICE provided the requested breakdown of records, in ten separate Excel Spreadsheets on September 17, 2025. Nine days later, Plaintiff proposed, for the first time, that ICE provide, by October 3, 2025, a total aggregate deduplicated and threaded hit count (in pages) for documents that are responsive to the search terms provided, excluding the following search terms: custody, surgery, specialist, hospital*, and emergency.

ICE excluded the requested terms. The number of documents did not change. That is because each of the excluded terms exist with a term that was not excluded.

### C. Parts 6 and 7

#### 1. Plaintiff's Report

The Court ordered ICE to conduct an additional search for records responsive to Part 5, specifically requiring ICE to search for and produce detainee Significant Incident Reports ("SIRs") held by ICE's Joint Intelligence Operations Center ("JIOC"), place those documents in the Relativity document management software program, and run a search for responsive records in Relativity. ECF No. 132 at 26. The Court also ordered that if ICE encounters technical difficulties, ICE must make its technical staff available to Plaintiff to meet and confer about potential ways to overcome the technical difficulties with conducting the search. *Id*. The Parties have agreed on a set of search terms and date parameters for this search.

On September 17, 2025, ICE proposed that "[it] will endeavor to provide an update on whether it is able to run the requested search for Parts 6-7. If it can, [ICE] will try to provide hit counts by September 30th, but do not yet know if such will be feasible. If ICE cannot conduct this search, [ICE] will so advise, and [the Parties] can then confer on setting up a call with the technical experts pursuant to the Court's order." Plaintiff is amenable to this approach, and would further propose that if ICE determines by September 30, 2025 that the search is not feasible, it will inform Plaintiff at that time and the Parties will schedule the call with ICE's technical expert no later than October 10, 2025.

#### 2. Defendants' Report

Following further discussions with ICE technical staff, it was able to conduct a search for potentially responsive records for Parts 6 and 7. It did so by searching a database behind the Significant Event Notification (SEN). It did so using the following terms proposed by Plaintiff: death; died; deceased; ambulance; emergency; "offsite referral"; "life support"; coma; ventilator; "intensive care"; "critical condition"; hospice; palliative; release, and then from that set of results, searching

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

8

with the following Boolean search terms: (release or transfer or benefits or parole or "alternative detention" or discharge or OSUP or "order of supervision" or humanitarian) AND (custody or death or died or deceased or "emergency department" or "emergency services" or "poor outcome" or "life support" or "offsite referral" or coma or unconscious or ventilator or "intensive care" or "medical observation" or ICU or "critical condition" or hospice or palliative or fatal).

This has resulted in 26,115 individual Significant Incident Reports (SIR) that are *potentially* responsive. The results populate as Excel spreadsheets that provide the date the SIR was created, a title of the report, a report narrative, a document number, and the report's author. However, the narrative summary of each report would need to be manually reviewed to determine whether it is responsive and then, if it is, processed. ICE is determining whether it is possible to further narrow the results without the need to manually review each and every of the 26,115 narrative summaries.

### D.   Part 8

#### 1.   Plaintiff's Report

The Court ordered ICE to conduct an additional search for records responsive to Part 8, specifically requiring it to produce spreadsheets regarding hospitalization of detainees from the *Fraihat* nationwide COVID-19 class litigation compliance system, along with records from ICE Enforcement and Removal Operations ("ERO") sufficient for Plaintiff to identify release dates for people noted in the spreadsheet as hospitalized with COVID-19. ECF No. 32 at 27-29. ICE conducted this search and located 41 spreadsheets, which it agreed to produce to Plaintiff in native "Excel" format. ICE agreed to commence processing these spreadsheets for production at the same time it processes the Corey Price records, but that it may not be producing them at the same time it produces the Corey Price records.

#### 2.   Defendants' Report

The Parties read the portion of the Court's Order on Parties' Cross Motions for Summary Judgment differently. By the express terms of the order, ICE was ordered to "conduct the search of the *Fraihat* spreadsheet as described by Plaintiff and allow Plaintiff to cross compare the responsive information with ERO release records." Dkt. 132 at 28-29. Nowhere in the order does it require ICE to search ERO release records and certainly not to produce ERO release records.

Separately, there are 40 Excel spreadsheets for Part 8, which ICE had agreed to begin producing in native format beginning in October 2025, and continuing to November 2025, if necessary.

### E.  Part 9

#### 1.  Plaintiff's Report

The Court ordered ICE to conduct an additional search of records responsive to Part 9, including a search of its claims database for medical charges incurred for detainees associated with four different Procedure Codes related to care for life-threatening conditions. ECF No. 132 at 29. ICE conducted this search, and located a single spreadsheet with responsive information. It has agreed to produce the spreadsheet in native "Excel" format once it completes production of the Scott James emails discussed above, presumably by October 15, 2025. As noted above, ICE should be able to readily produce Excel spreadsheets as a unitary file, without reference to rows of data. *See, e.g. Am. C.L. Union Immigrants' Rts. Project,* 58 F.4th at 649 (production of unitary excel spreadsheet with over 1,000,000 rows); *Am. C.L. Union*, 973 F. Supp. 2d at 312 (production of spreadsheet with 1,101,967 data points regarding ICE detainees); *Am. Immigr. Council,* 464 F. Supp. 3d at 239 n.2 (describing batch processing in Excel).

#### 2.  Defendants' Report

As stated above in portion A.2. of this Report, by October 15, 2025, ICE planned to process the Scott James records and an Excel spreadsheet for Part 9 (in native

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

10

format). The Excel spreadsheet contains 69,000 rows of data. If printed, that would equal about 20,000 pages.

### III. Parties' Discussions Regarding Plaintiff's Motion to Enforce the Court's July 5, 2024 Summary Judgment Order (ECF Nos. 87, 125-131)

**A. Plaintiff's Report**

In its July 5, 2024 Summary Judgment Order, ECF No. 87, the Court found that DHS-CRCL had failed to produce responsive records. With the Court's assistance, the Parties agreed on a process for searching for and arriving at the universe of potentially responsive records from two databases, DHS-CRCL's Case Management System ("CMS") and ICE's "OCIO" email database, utilizing agreed-upon search terms. Dkt. 125 at 6-7. While DHS-CRCL conducted the ordered searches, by May 30, 2025 it had yet to produce the responsive records, including 6,500 pages of OCIO records. Plaintiff therefore filed a motion to expedite the processing of those records to 3,000 pages per month, consistent with processing rate the Court had ordered for ICE. Dkt. 125.

However, in the midst of briefing this motion, Defendants informed Plaintiff that in light of a Reduction In Force at DHS-CRCL, DHS would take over this search. However, DHS could no longer locate the 6,500 pages of OCIO documents yet to be processed, and DHS's attempt to recreate the search had resulted in the universe of responsive documents ballooning to approximately 600,000 pages of records. ECF No. 128 at 10-11. DHS then unilaterally decided to cull those records using "a more detailed and in-depth keyword search," *Id*. at 10, in contravention of the process the Parties agreed to with the Court, ECF No. 108, 109, 122, which ultimately reduced the records to 1,399 pages (approximately over 5,000 less than DHS-CRCL previously located). ECF No. 130 at 3. DHS also determined to narrow the search results to exclude documents that, in its view, other components "would . . . have,"

*ACLU of Southern California v. U.S. ICE, et al*., Case No. 2:22-CV-04760-BFM
STATUS REPORT

11

*Id*. at 9 (citing ECF No. 129-1 at ¶ 3, without identifying who those components are, whether they have produced the documents in this litigation, or any other justification for excluding them from DHS-CRCL's production obligations).

In light of these developments, in its Reply brief Plaintiff asked the Court to order CRCL to "identify the search terms and other parameters it used to reduce the universe of responsive OCIO documents to 1,399 pages, and engage in a Court-supervised meet and confer process to explore expanding the universe of responsive documents based on appropriate parameters that include input from Plaintiff, followed by the Court's issuance of a production rate and deadline for the production of the outstanding OCIO documents." ECF No. 130 at 4.

As discussed, former presiding Judge Kewalramani did not rule on Plaintiff's motion, but the Parties recently met and conferred on it. On September 16, 2025, Plaintiff specifically asked that DHS-CRCL "identify[] how it culled the approximately 600,000 OCIO records down to 1,399" and provide a search summary including "what search terms CRCL used to arrive at the 1,399 responsive records, and any other methods it used to cull the records." Plaintiff also asked that DHS produce this search summary by September 30, and that the Parties meet and confer by October 7. On September 17, 2025 Defendants represented that they have "asked CRCL for a search summary" but do "not know whether CRCL will be able to provide such a summary by September 30th."

Moreover, DHS reports that it has completed its production of responsive records as of September 19, 2025, and has asked Plaintiff to identify a list of "exemptions Plaintiff may challenge" from this production, so that DHS can prepare a *Vaughn* index for them. Plaintiff agrees to do so by October 24, 2025.

///

///

///

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

12

### B. Defendant's Report

As a practical matter, the Court's July 8, 2024 Order did not find that DHS failed to produce responsive records as Plaintiff represents. Rather, it found that DHS's search was inadequate because it refused to search CRCL. *See* Dkt. 87 at 35.

Separately, in its Motion to Enforce, Dkt. 125, Plaintiff sought as relief an order requiring that DHS process "the approximately 6,500 remaining pages of OCIO records at a rate of at least 3,000 pages per month, with the first production taking place one month after the Court's order on this motion." Dkt. 125 at 10.

Among other things, DHS argued that Plaintiff's motion was moot. *See generally* Dkt. 128. In its Reply brief, Plaintiff took umbrage with DHS's processing of the FOIA request and sought materially different relief than originally requested in its moving papers. *See generally* Dkt. 131.

Judge Kewalramani (Ret.) did not issue an order on the motion and, despite making *ex parte* requests throughout this litigation, Plaintiff never requested that the Court adjudicate the motion, instead allowing it to remain under submission.

Unquestionably, the motion is moot. CRCL made a final supplemental production on October 1, 2025, following a review of 588 pages. There is thus nothing further for the Court to order in terms of processing/production from CRCL which is the relief Plaintiff originally sought in that motion. *See* Dkt. 125 at 10.

What remains is Plaintiff's demand that DHS explain its search for responsive records. The proper procedural vehicle for doing so is via a motion for summary judgment as both DHS OIG and ICE have done in this matter. To that end, DHS does not oppose providing a search summary to Plaintiff and was agreeable to doing so by October 24, 2025, as Plaintiff requested. However, the Government shutdown will likely delay DHS's ability to do so.

Last, on September 17, 2025, DHS requested that Plaintiff identity any exemptions or withholdings it may challenge with respect to CRCL's productions.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

13

Plaintiff has agreed to do so, but has requested until October 24, 2025. Yet Plaintiff then requests that DHS provide a *Vaughn* Index by November 24, 2025. Practically speaking, it should not take Plaintiff over a month to review the CRCL records and notify DHS whether it seeks to challenge any withholdings or exemptions. But CRCL does not oppose Plaintiff providing this information by October 24, 2025, so long as CRCL may have until December 15, 2025, to provide the requested *Vaughn* Index.

### IV. Parties' Proposed Case Timeline and Further Suggestions on Case Management

#### A. Plaintiff's Report

Regarding the case timeline, based on the agreements of the Parties and outstanding issues outlined above, Plaintiff proposes that the Court issue an Order as follows:

Regarding compliance with the Court's **August 15, 2025 Summary Judgment Order (ECF No. 132)**, the Court should order the following deadlines:

**Parts 1-3**: As to custodian Scott James, ICE shall complete its production of responsive records by October 15, 2025. As to custodian Corey Price, ICE shall commence its production once it completes its production of the Scott James documents and the Excel document responsive to Part 9.

**Part 5**: ICE shall run a narrowed search of the Dr. Ada Rivera documents based after exclusion of the five search terms identified by Plaintiff on September 26, 2025, and provide a page count of the universe narrowed documents to Plaintiff by October 3, 2020. The Parties shall further meet and confer on a schedule for production of the Dr. Ada Rivera documents by October 10, 2020.

**Parts 6-7**: Regarding the responsive SIRS, to the extent ICE cannot apply the agreed upon search terms using the Relativity software, the Parties shall meet and confer with ICE's technical staff no later than October 10, 2025 to assess whether other appropriate means of search are possible. The Parties shall report to the Court

whether a resolution is reached, and if not whether Court assistance is necessary to resolve any disputes.

**Part 8**: Defendants shall process the 41 responsive spreadsheets concurrently with the schedule for the Corey Price documents, and will produce them with its November 15, 2025 production.

**Part 9**: ICE shall produce the single excel spreadsheet by October 15, 2025.

Regarding compliance with the Court's **July 5, 2024 Summary Judgment Order (ECF No. 87)**, DHS-CRCL shall produce a search summary including the information Plaintiff identified its September 16, 2025 email by October 24, 2025. Also, by October 24, 2025 Plaintiff shall provide DHS-CRCL a list of documents which DHS-CRCL has redacted in whole or part subject to a purported FOIA exemption, and DHS-CRCL shall produce a Vaughn Index justifying those withholdings by December 15, 2025.

Further, if the Court believes it needs more information before it issues any order on the Parties' proposals regarding compliance with the August 5, 2025 and July 6, 2024 Summary Judgment Orders, Plaintiff suggests that it set a Status Conference. Plaintiff is available for a Status Conference on the following dates:

October 6, 2025: 10 am to 12 pm

October 7, 2025: 10 am to 2 pm

October 8, 2025: 10 am to 2 pm

October 9, 2025: 10 am to 2 pm

October 10, 2025: 10 am to 12 pm

Regarding further suggestions for case management, Plaintiff suggests that the Court order a further Status Conference approximately three months from October 3, 2025, with a Joint Status Report due a week prior, to address any issues that may be delaying final resolution of this case. At the Status Conference, the Parties may wish to propose deadlines for potential additional summary judgement motions as to the

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

15

adequacy of Defendants pending searches and productions, including the validity of their withholding of responsive documents on the basis of a purported FOIA exemption, and/or a schedule for Plaintiff's fee motions.

## B. Defendants' Report

Defendants are generally in agreement with the foregoing proposed timeline with respect to processing with respect to Parts 1-3, 8 (noting that there are 40 Excel spreadsheets), and Part 9. The processing order would therefore be as follows:

| Event | Deadline |
|---|---|
| ICE produces records from Scott James (1,696 pages), the Excel Spreadsheet for Part 9 (comprised of 69,000 rows of data that, if printed, would equal about 20,000 pages), and start of the 40 Excel Spreadsheets for Part 8 | October 15, 2025 |
| ICE produces records from Corey Price (587 pages of records) and any of the remaining 40 Excel Spreadsheets for Part 8 | November 15, 2025 |
| ICE begins producing records for Part 5 | December 15, 2025 |

In the interim, ICE will also work to determine whether it is possible to further narrow the results for Parts 6 and 7 without the need to manually review each and every of the 26,115 narrative summaries

With respect to the CRCL records, the following timeline is proposed:

| Event | Deadline |
|---|---|
| CRCL makes final production | October 1, 2025 |
| CRCL provides search summary to Plaintiff | October 24, 2025 |
| Plaintiff identifies any exemptions or withholdings it may seek to challenge and informs CRCL | October 24, 2025 |
| CRCL provides *Vaughn* Index to Plaintiff | December 15, 2025 |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

16

Again, the above timelines were contingent on the avoidance of a government shutdown. The ICE FOIA team has been furloughed because of the government shutdown.

Defendants do not believe an immediate status conference is necessary. However, it concurs with Plaintiff's proposal of a further Joint Status Report. Defendants propose that such a report be due by December 16, 2025 and that, after receiving the Joint Status Report, that Court could then determine whether a status conference was necessary.

Respectfully submitted this 1st day of October, 2025.

/s/ Laboni Hoq

| | |
|---|---|
| LABONI A. HOQ*<br>laboni@hoqlaw.com<br>HOQ LAW APC<br>P.O. Box 753<br>South Pasadena, California 91030<br>Telephone: (213) 973-9004 | EUNICE CHO<br>echo@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>915 Fifteenth Street NW, 7th Floor<br>Washington, DC 20005<br>Telephone: (202) 548-6616 |
| EVA BITRAN<br>ebitran@aclusocal.org<br>ACLU FOUNDATION OF<br>SOUTHERN CALIFORNIA<br>1313 West Eighth Street<br>Los Angeles, California 90017<br>Telephone: (213) 977-9500<br>Facsimile: (213) 915-0219 | KYLE VIRGIEN<br>kvirgien@aclu.org<br>AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION<br>NATIONAL PRISON PROJECT<br>425 California St., Suite 700<br>San Francisco, CA 94104<br>Telephone: (202) 393-4930<br><br>*Attorneys for Plaintiff* |

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

17

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI
Assistant United States Attorneys

 */s/ Joseph W. Tursi*
JOSEPH W. TURSI
Assistant United States Attorney

*Attorneys for Defendants*

*Pursuant to Local Rule 5-4.3.4(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*ACLU of Southern California v. U.S. ICE, et al.*, Case No. 2:22-CV-04760-BFM
STATUS REPORT

18