TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
JOSEPH W. TURSI (Cal. Bar No. 300063)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-3989
    E-mail: Joseph.Tursi@usdoj.gov

Attorneys for Defendants

(Additional Counsel Listed on Signature Page)

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> Defendants. | No. 2:22-cv-04760-BFM <br><br> **JOINT STATUS REPORT** <br><br> Honorable Brianna Fuller Mircheff <br> United States Magistrate Judge |

Pursuant to the Court's April 21, 2026, Scheduling Order [Dkt. 161], plaintiff American Civil Liberties Union Foundation of Southern California ("Plaintiff") and defendants U.S. Department of Homeland Security ("DHS"), U.S. Department of Homeland Security Office of Inspector General ("DHS OIG"), and U.S. Immigration and Customs Enforcement's ("ICE") (collectively, "Defendants") submit the following Joint Status Report providing: (1) a general update of from each party; (2) a list of issues, neutrally stated, to be discussed at the status conference; (3) each party's two-page discussion of each item (alternating, so that one party's position on each item is directly after the other party's position on that same item), citing any relevant portions of Judge Kewalramani's orders; and (4) to the extent that the parties' meet and confer results in agreements as to orders the Court should enter (with respect to scheduling or any other topic), jointly proposed language for such orders.

## 1. GENERAL UPDATE

### A. Plaintiff's Update

Plaintiff ACLU of Southern California ("ACLU So Cal") filed this Freedom of Information Act ("FOIA") lawsuit over three years ago, on July 12, 2022, seeking information about Immigration and Customs Enforcement's ("ICE") practice of releasing immigrants facing imminent death in custody, which allows the agency to avoid accountability for their deaths. ECF No. 1 at ¶ 1. Under Department of Homeland Security ("DHS") policies and practices, when a detainee dies in custody, ICE is required to report the death and investigate it to assess and ensure adherence to standards related detainee medical care. Id. ¶¶ 30-32. In the wake of media reports and in the course of its advocacy, ACLU So Cal sought to learn more about the nature and extent of this problematic practice, id. ¶¶ 2-6, which was even more consequential during the COVID-19 pandemic, when ICE was under the pressure of several lawsuits related to its sub-standard COVID-19 mitigation practices. Id. ¶¶ 25-29. During the pandemic, record numbers of immigration detainees contracted COVID-19 at ICE detention centers, became critically ill, and were hospitalized, therefore potentially subjecting them to

ICE's practice of deathbed releases resulting in hidden deaths. Id. ¶¶ 25-29.

To better understand the nature and extent of ICE's problematic deathbed release practice, on April 29, 2022, Plaintiff ACLU So Cal issued a FOIA Request to Defendants DHS, ICE and DHS's Office of Inspector General ("DHS-OIG") seeking nine categories of documents, including information about (1) the circumstances of ICE's deathbed releases of four individual detainees (Parts 1-3), and (2) the broader nature and extent of these types of deathbed releases, including documents identifying additional immigrants released in this way (Parts 4-9). ECF No. 1 at ¶ 35; ECF No. 24 at ¶ 36. On July 12, 2022, when ACLU So Cal received no responsive records from the target agencies, Plaintiff filed this lawsuit, which it amended to add an additional Defendant on October 4, 2020. ECF Nos. 1, 24.

Over the course of almost four years, with significant assistance from the Court, Plaintiff has prevailed in requiring Defendants to conduct adequate searches for responsive documents and produce unjustifiably withheld information, and has obtained a significant number of documents related to the four individuals named in the Complaint who faced deathbed release. After Plaintiff largely prevailed on a number of procedural motions (ECF Nos. 54, 62, 100), and two sets of summary judgment motions (ECF Nos. 87, 132), the following issues remain to be resolved or adjudicated in this case:

1. The adequacy of Defendant DHS-CRCL's search for responsive records, and the validity of its withholding of responsive records, in whole or in part, under purported FOIA exemptions;

2. The adequacy of Defendant ICE's search for records responsive to Parts 5-7 of the FOIA Request, and the validity of its withholding of records responsive to those Parts, in whole or in part, under purported FOIA exemptions;

3. The validity of Defendant ICE's withholding of records responsive to Parts 1-4 and 8-9 of the FOIA Request;

4. Plaintiff's entitlement to reasonable attorneys' fees and costs under FOIA for

2

substantially prevailing against Defendants in this case.

**B. Defendants' Update**

As before, while it is Plaintiff's prerogative to provide the above exhaustive (and slanted) procedural history of this FOIA case, Defendants will not respond point by point but instead focus their portions of this report on those topics explicitly requested by the Court. To that end, and as agreed by Plaintiff below, Defendants have met all deadlines set by the Court.

Defendant ICE has completed producing records for Parts 1-4 and 6-9 of the FOIA Request. With respect to Part 5, Defendant ICE has produced all records requested by Plaintiff at this time. As background, the Court ordered ICE to conduct an additional search for records responsive to Part 5, specifically requiring it to search for and produce records held by Dr. Ada Rivera, Deputy Medical Director of IHSC. ECF No. 132 at 24-25. ICE conducted this search, and produced a set of hit counts based on agreed-upon search terms totaling 96,325 documents. Given this large volume of potentially responsive records, Plaintiff requested a breakdown of the potentially responsive records by year, which ICE provided on September 17, 2025. On January 6, 2026, Plaintiff requested that ICE re-run its search for Part 5. Therein, Plaintiff questioned the search terms used in ICE's initial search. ICE noted that it ran the exact search Plaintiff had requested via correspondence dated August 20, 2025. In response, Plaintiff indicated that it would "take a second look and send over a refined set of search terms that reflects our original intent." On January 12, 2026, Plaintiff submitted a further refined search request for ICE with respect to Part 5. On January 21, 2026, ICE provided an Excel spreadsheet that included the requested hit counts as requested by Plaintiff. On January 23, 2026, after review of the Excel spreadsheet, Plaintiff requested a further narrowing of ICE's search for Part 5. On February 2, 2026, ICE provided another Excel spreadsheet that included the results of the further search Plaintiff requested. On February 9, 2026, Plaintiff requested that ICE begin to process a certain subset of the further refined search results. ICE has done so. To date, Plaintiff has not requested that ICE process any

3

additional records for Part 5. Thus, it is ICE's position that it has produced all records responsive to Plaintiff's request.

Accordingly, Defendants agree with Plaintiff regarding the remaining outstanding issues in this case.

**C. Joint Update**

The Parties agree that all deadlines set forth in the Court's December 2, 2025, Scheduling Order [Dkt. 146], the Court's February 17, 2026, Order [Dkt. 149], and the Court's April 21, 2026, Scheduling Order [Dkt. 161] have been met. There are thus no outstanding deadlines in this case.

**D. Further Status Conference**

In the time since Defendants' FOIA offices reopened, the Parties have made progress in establishing their respective positions and determining what substantive disputes remain for resolution. The Parties thus request that the Court continue the Status Conference to June 30, 2026. The parties will file a further Status Report no later than June 23, 2026. Ahead of the continued Status Conference, the Parties will attempt to come to resolution of the issues discussed below, and streamline the issues for potential further litigation. At the subsequent Status Conference, the Parties may also be prepared to propose deadlines for filing any further summary judgement motions as to any outstanding claims related to the adequacy of Defendants' searches and validity of their withholding of FOIA records, including those identified in Part 1 of this Report.

Should the Court wish to hold the Status Conference as currently scheduled on May 19, 2026, Plaintiff requests that it enter an order on one item, as set out below in Plaintiff's discussion on Parts 6 and 7. However, Plaintiff also submits that it is likely a more efficient use of the Court's time to allow the Parties to continue to attempt to resolve this matter informally, and to address it if necessary at the continued Status Conference.

**2.  ISSUES TO BE DISCUSSED AT MAY 19, 2026, STATUS CONFERENCE**

    **A. Status of Defendant ICE's Search for Records Responsive to Part 5**

Part 5 of Plaintiff's request seeks documents providing information about people released from ICE custody while hospitalized. The Court ordered ICE to search the records of Dr. Ada Rivera, the chief medical officer of ICE Health Services Corps, for responsive documents. Dkt. 132 at 25.

On May 1, 2026, Defendant ICE produced 35 pages of records responsive to Part 5 of the FOIA request, including partial redactions under FOIA Exemptions (b)(6) and (b)(7)(c).

During a meet and confer discussion on May 7, 2026, and subsequent email communications, Plaintiff requested that ICE provide the following further information to assess the adequacy of ICE's search.

1. Identify search terms and parameters used.

2. Identify the end date of the search

3. Identify if custodian Ada Rivera is still employed by ICE in the same position (Medical Director, IHSC), and if not whether ICE will conduct a further search with her successor(s) through the date of search

In addition, Plaintiff requested the following information, including a request for a further targeted search for records responsive to Part 5:

1. Identify whether the 35 pages of emails produced have attachments, and if so, identify the total number of pages of attachments

2. Identify whether ICE will conduct a further search for information about six people newly identified in Defendants' productions as having been released from ICE custody while in serious medical condition, and seven additional people identified in reporting as having died shortly after release from ICE custody. On May 11, 2026, counsel for ICE stated that he would relay Plaintiff's above requests to ICE, and provide responses once received.

On May 11, 2026, counsel for ICE stated that he would relay Plaintiff's above requests to ICE, and provide responses once received. On May 12, 2026, counsel for ICE provided ICE's responses, which are set out below. Plaintiff may request relief from the

Court on this issue in the future, but in view of ICE's provision of the information Plaintiff requested on the date of this joint status report, Plaintiff presently does not request any order from the Court.

**Issues Related to Part 5 to Be Discussed at the Status Conference**: None.

**Defendant ICE's Response**

ICE responds as follows to Plaintiff's inquiries:

1. ICE utilized the search terms specifically requested by Plaintiff, which were: agenda, palliative, hospice, fatal, spreadsheet

2. The end date of the search was August 1, 2025.

3. Ada Rivera is no longer employed by ICE. ICE will not agree to run a search of her successor.

With respect to Part 5:

1. The records did not have any attachments.

2. ICE will not conduct further searches for the six individuals identified by Plaintiff.

**B. Status of Defendant ICE's Search for Records Responsive to Parts 6 and 7**

Defendant ICE keeps a database with a variety of information related to its operations, including information on hospitalizations and deaths. Parts 6 and 7 of Plaintiff's request seek records from this database that address hospitalizations of people in its custody and deaths occurring after release. After ICE initially searched and found no responsive records, the Court found it had failed to conduct a reasonable search. Dkt. 132 at 27. The Court ordered ICE to make its technical staff available for a meet and confer so the parties could work together to determine an efficient search to be run in the database. *Id.* The parties met and conferred and agreed on a search (which, in the technical parlance of the particular database type ICE technical staff had identified, is termed a "query" in "Structured Query Language," or "SQL"). On April 14, 2026, ICE reported that it had run this search, which returned no responsive records.

During a meet and confer discussion on May 7, 2026, and subsequent email

6

communications, Plaintiff requested that ICE provide the following further information to assess the adequacy of ICE's search.

1. Identify the SQL query used and any additional search terms used on the results of that query. Also identify the search process (e.g., applied search terms as part of the SQL query of the SIR/SEN database, or after documents were extracted from the database)

2. Identify the search's end date.

3. Identify whether ICE will conduct a further search for information about the detained people referenced above.

On May 11, 2026, counsel for ICE stated that he would relay Plaintiff's above requests to ICE, and provide responses once received. On May 12, 2026, counsel for ICE provided ICE's responses, which are set out below. These responses provide some of the information Plaintiff sought (items 2 and 3 below provide the end date of the search and ICE's refusal to conduct additional searches). However, item 1 below does not provide the SQL query run on the database, which would specifically identify the exact search run. Instead, it provides a bullet-point summary of the items involved in the search, which is insufficient to determine what search was actually run on the database. For example, it is not possible from this bullet-point summary to determine whether the search was erroneously run as an "AND" search requiring all boxes identified to be checked or a proper "OR" search requiring only one box to be checked, nor does it identify what text fields of the database were searched for the search terms listed. The actual SQL query run is necessary to evaluate the adequacy of ICE's search, and ICE can claim no burden in providing it because it is readily available to the ICE employee who ran the search.

**Issues Related to Part 6 to Be Discussed at the Status Conference**: Should the Court wish to hold this status conference, Plaintiff requests that the Court order a deadline of one week for ICE to provide the specific SQL query it ran on its database. In the alternative, Plaintiff is willing to attempt to further work with ICE to obtain this SQL

query and address this issue, if necessary, at a continued status conference.

**Defendant ICE's Response**

Plaintiff misstates the nature of the Significant Event Notification system ("SEN"). Contrary to Plaintiff's representation that it is "a database Defendant ICE keeps that address hospitalizations of people in its custody and deaths occurring after release" the SEN is a reporting and law enforcement intelligence transmission capability developed by ICE. The ICE Office of Homeland Security Investigations (HSI) developed this system to create reports for ICE field and headquarters managers to provide timely information about critical incidents, activities, and events that involve or impact ICE field staff. The system also handles law enforcement intelligence communication from the ICE Office of Enforcement and Removal Operations (ERO) field offices to field and headquarters managers and ERO and HSI intelligence personnel.

With respect to the inquiries raised by Plaintiff, ICE responds as follows:

1. ICE ran the following search:

a. Incident Identification List
- Detainee Health
- Death in Custody or Operations
- Suicide Attempt
- Significant Injury or Illness
- Hospital Admission
- Hospital Admission due to Suicidal Ideation
- Emergency Department Visit (ED)

b. Incident Identifiers
- Significant Injury or Illness
- Hospital Admission
- Significant Removal
- Death in Custody or Operations

- Hospital Admission due to Suicidal Ideation
- Suicide Attempt
- Non Citizen Injury / Death

SIR/ERO system that have any of the following fields checked:

- Fatalities- drop down – Yes

The search terms were applied beforehand to run the query, and then the results were extracted from the database via an Excel file. ICE has no objection to providing the search terms.

2. The end date was February 11, 2026.

3. ICE will not agree to conduct a further search.

**C. Status of CRCL's Removal of Redactions on Certain Responsive Records, and Further Search for Information About Certain Detainees Released Prior to Imminent Death**

On December 29, 2025 DHS-CRCL produced a search summary related to its search for records responsive to the FOIA Request, and on May 4, 20206, it produced a Vaughn index justifying its withholding of certain responsive records. In its *Vaughn* index, DHS-CRCL stated that it was still deliberating on whether it could release certain information currently withheld. At the May 7, 2026 meet and confer, DHS-CRCL's counsel stated DHS-CRCL will notify Plaintiff about removing redactions or withholdings from documents listed on the *Vaughn* index and provide a timeline for any release.

Moreover, on May 8, 2026, Plaintiff further asked that DHS-CRCL conduct a further search of its CMS and OCIO records systems for records referencing the above-referenced detained people. On May 11, 2026, counsel for Defendants represented that he has forwarded Plaintiff's request to DHS-CRCL, and will provide a response once received. On May 12, 2026, counsel for Defendants provided DHS-CRCL's response below, which refuses to conduct an additional search and states that DHS-CRCL expects to provide an update on its lifting of redactions by May 19, 2026. Plaintiff may request

relief from the Court on this issue in the future, but in view of DHS-CRCL's expectation that it will provide all information Plaintiff has requested by May 19, 2026, Plaintiff presently does not request any order from the Court.

**Issues to Related to DHS-CRCL's Search and Production Be Discussed at the Status Conference**: None.

**<u>DHS's Response</u>**

DHS will provide an update to Plaintiff regarding the withdrawing and reprocessing and reproduction of the records identified in the *Vaughn* index over which DHS represented it would lift the redactions. It expects to be able to provide such an update by May 19, 2026.  DHS will not agree to a further search.

Dated:  May 12, 2026

Respectfully submitted,

LABONI A. HOQ (SBN 224140)
laboni@hoqlaw.com
HOQ LAW APC
P.O. Box 753
South Pasadena, California 91030
Telephone: (213) 973-9004


 */s/ Laboni Hoq*
LABONI A. HOQ
Attorneys for Plaintiff

10

Dated:  May 12, 2026

KYLE VIRGIEN (SBN 278747)
kvirgien@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
NATIONAL PRISON PROJECT
425 California St., Suite 700
San Francisco, CA 94104
Telephone: (202) 393-4930


*/s/ Kyle Virgien*
KYLE VIRGIEN

Attorneys for Plaintiff


Dated:  May 12, 2026

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section


*/s/ Joseph W. Tursi*
JOSEPH W. TURSI
Assistant United States Attorney

Attorneys for Defendants


* Pursuant to Local Rule 5-4.3.4(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

11